UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
-----------------------------------X
John GARLAND,
et al,

                Plaintiffs,

       - against -

NEW YORK CITY FIRE DEPARTMENT, DANIEL A.
NIGRO, in his official and individual
capacities, JOHN DOE #1-10, in their
official and individual capacities; and
JANE DOE #1-10 in their official and
individual capacities,

              Defendants.
-----------------------------------X

**MEMORANDUM AND ORDER**

21-cv-6586 (KAM)(CLP)

**MATSUMOTO, United States District Judge:**

      Named Plaintiffs are employees of the New York City Fire Department ("FDNY")[1] who have not received at least one dose of a COVID-19 vaccine.[2]  Plaintiffs filed this action on November 24, 2021, on their behalf and on behalf of those who are similarly situated (together, "Plaintiffs").  (ECF No. 1, Compl.) Defendants are the FDNY, Daniel A. Nigro, the Commissioner of the FDNY, and unnamed John and Jane Does ("Defendants").

      Defendants are responsible for implementing the order issued by David A. Chokshi, the Commissioner of the New York City

---

[1] Named Plaintiffs include FDNY officers, firefighters, and employees of the Emergency Medical Service ("EMT").  (Compl. ¶ 62.)

[2] Defendants' counsel represented to the Court at the November 30, 2021 show cause hearing that 9 or 10 of the named Plaintiffs have been restored to pay status upon providing proof of vaccination to the FDNY.  Plaintiffs' counsel is directed to advise the Court whether these 9 or 10 Plaintiffs have indeed been vaccinated and, if so, why their claims should not be dismissed as moot.

Department of Health and Mental Hygiene ("DOHMH"), dated October 20, 2021 (the "Order"), requiring that all City employees show documentation of having received one dose any COVID-19 vaccine by 5:00 P.M. on October 29, 2021. (ECF No. 14, Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for TRO/PI ("Defs. Opp."), at 8.) Pursuant to the Order, any City employee who failed to provide the requisite proof of vaccination by October 29, was "excluded from the premises at which they work beginning on November 1, 2021." (ECF No. 15-1, Exhibit A to the Declaration of Andrea O'Connor ("O'Connor Decl."), at 3.) The Order also provided that it did not "prohibit any reasonable accommodation otherwise required by law." (*Id.* at 5.)

Plaintiffs assert four claims in their Complaint. First, Plaintiffs claim that the Order violates their procedural due process rights because they have property interests in their continued employment and pay. (Compl. ¶¶ 67–71.) Second, they assert that the Order violates their statutory and contractual rights, as Plaintiffs are entitled to certain process prior to removal pursuant to N.Y.C. Admin. Code § 15-113, or the applicable collective bargaining agreement ("CBA").[3] (Compl. ¶ 103; ECF No. 5-8, Memorandum of Law in Support of Plaintiffs' Motion for TRO/PI

---

[3] Though the Complaint alleges that Plaintiffs have a contractual right to charges and a hearing, Plaintiffs do not make the same argument in their memorandum of law. (*See* Compl. ¶ 77.) Therefore, the Court does not consider this allegation as part of its preliminary injunction analysis.

("Pls. Mem."), at 9-11.) Third, Plaintiffs assert a § 1983 claim, arguing that Defendants, acting under color state of law, violated their procedural due process rights. (Compl. ¶¶ 99-109.) Fourth, Plaintiffs allege direct participation in, and aiding and abetting violations under 42 U.S.C. § 1983 against Defendant Nigro. (Compl. ¶¶ 110-15.)

Plaintiffs seek a mandatory injunction restoring them to pay status and a prohibitory injunction against Defendants from disciplining Plaintiffs without first proffering charges and providing a pre-deprivation hearing, during which the person against whom the charges are brought can defend themselves before a neutral hearing officer.

For the reasons stated below, Plaintiffs' motion for injunctive relief is respectfully DENIED.

## BACKGROUND

### I. Factual Background

On October 20, 2021, the Commissioner of the DOHMH issued the Order, requiring all New York City employees to show documentation of receiving at least one dose of any COVID-19 vaccine by 5:00 P.M. on October 29, 2021. (Defs. Opp. at 1.) Pursuant to the Order, any City employee who failed to provide the requisite proof of vaccination was "excluded from the premises at which they work beginning on November 1, 2021." (Exhibit A to O'Connor Decl. at 3.)

All FDNY personnel were informed of the Order via a notice sent on October 21, 2021 from John J. Hodgens, the Chief of Operations of the FDNY (*see* ECF No. 17-1, Exhibit 1 to Plaintiffs' Reply Memorandum of Law ("Pls. Reply"), at 4).[4]  The October 21 notice advised that any FDNY employee who wishes to seek an exemption from the vaccine mandate based on a sincerely held religious belief or medical contraindication must submit a request to the Equal Employment Office by October 27, 2021, and that employees who fail to comply with the Order and do not submit an exemption request by the October 27 deadline would be placed on leave without pay ("LWOP") status on November 1, 2021.

Plaintiffs filed the Complaint in this action on November 24, 2021, just shy of a month after the October 29, 2021, deadline to demonstrate compliance with the vaccine mandate in the Order. (Compl.)

## II.   Procedural Background

Plaintiffs filed their class action Complaint on November 24, 2021, on their behalf and on behalf of all persons similarly situated. (Compl.)  That same day, Plaintiffs moved for a temporary

---

[4] Plaintiffs contend in their reply brief, and Plaintiffs' counsel argued at the show cause hearing, that although the FDNY provided official notice of the Order on October 21, 2021, "some of the Plaintiffs did not receive it until much later because they do not work every day." (Pls. Reply at 2 n.1.)  However, upon further inquiry by the Court, counsel for Plaintiffs failed to proffer any evidence detailing how many Plaintiffs were affected by the alleged delay and the circumstances surrounding the delay.  The Court declines to find that there was a delay in notice of the Order based on counsel's mere say-so.

restraining order and a preliminary injunction. (ECF No. 5, Proposed Order to Show Cause.)  The Court, also on November 24, 2021, issued an Order to Show Cause, ordering: (1) personal service on all named Defendants to be made on or before 9:00 A.M., Friday, November 26, 2021; (2) Defendants to respond to the Order to Show Cause via ECF by Monday, November 29, 2021, at 5:00 P.M.; and (3) counsel for named Plaintiffs and Defendants to appear for a hearing before the Court on Tuesday, November 30, 2021, at 3:00 P.M. (ECF No. 9, Order to Show Cause.)

Named Defendants filed papers in opposition to Plaintiffs' motion for injunctive relief on November 29, 2021, including a memorandum of law, the Declaration of Andrea O'Connor, and attached exhibits.  (Defs. Opp.; ECF No. 15, O'Connor Decl.) Defendants noted that all Plaintiffs, except one, have exemption requests pending, and nine Plaintiffs received the vaccine and have been restored to payroll.  (Defs. Opp. at 4.)

Counsel for the parties appeared before the Court on November 30, 2021, for a show cause hearing, but they did not present witness testimony.  During the show cause hearing, Plaintiffs requested, and the Court granted, supplemental briefing on the issue of whether those Plaintiffs whose bargaining agent is District Council 37 ("DC 37"), have standing to challenge the agreement negotiated between the City and their union, DC 37, with respect to the leave and separation procedures for City employees

who did not comply with the Order ("DC 37 Agreement").[5]

## LEGAL STANDARD

A party seeking a preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

Where, as here, the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits." *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citation omitted) (internal quotation marks omitted). Here, Plaintiffs, having been on LWOP for over a month due to their failure to seek an exemption by October 27, 2021, or comply with the Order by October 29, seek a

---

[5] The DC 37 Agreement established, in relevant part: (1) the processes by which an employee may request an exemption or accommodation based on religious and/or medical grounds, and appeal an adverse determination on their request before an independent arbitration panel (while remaining on payroll and maintaining health benefits pending their request or appeal, as long as the request was made prior to 11:59 P.M. on October 27, 2021); (2) options to either voluntarily separate from service with certain compensation benefits, or elect extended LWOP status while maintaining health benefits until June 30, 2022; and (3) that as of December 1, 2021, the FDNY may seek to unilaterally separate employees who have not provided proof of vaccination, have not obtained or requested an accommodation, and have not opted for either separation option. (*See* ECF No. 21-1, Exhibit C to O'Connor Decl.) The DC 37 Agreement further provides that employees who opt to extend their LWOP to June 30, 2022, may return to their positions upon demonstrating compliance with Order. (*Id.*)

mandatory injunction, asking the Court to alter the status quo by restoring them to FDNY payroll.[6] Accordingly, Plaintiffs must meet the higher standard for a mandatory injunction by showing a "clear" or "substantial" likelihood of success on the merits. *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995); *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).

## DISCUSSION[7]

### I. Necessary Parties

As a threshold matter, Plaintiffs named as Defendants only the FDNY, Commissioner Nigro, and unnamed Jane and John Does. Plaintiffs thus have failed to name necessary parties whose joinder is required under Fed. R. Civ. P. 19, namely, the City of New York, the Uniformed Firefighters Association ("UFA"), the Uniformed Fire Officers Association ("UFOA"), and District Council 37 ("DC 37"), as explained *infra*.

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue

---

[6] Plaintiffs state in their reply that "[p]rior to November 12, 2021, the Plaintiffs had received full pay." (Pls. Reply at 3.) Defendants' counsel represented to the Court during the show cause hearing that Plaintiffs were indeed placed on LWOP status starting November 1 and that Plaintiffs continued to receive pay until November 12 due to the 2-week lag in pay for City employees.
[7] Plaintiffs' only potential reference to their Section 1983 claims in their memorandum of law is as follows: "The Plaintiffs have a high likelihood of success on the merits of their 42 U.S.C. 1983 causes of action . . . and therefore should be granted the relief they request." (Pls. Mem. at 9.) Plaintiffs do not cite to any case law in support of this argument, and the Court will not address these allegations as part of its preliminary injunction analysis.

or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). As such, the City of New York should have been named instead of the FDNY. Plaintiffs do not contest this point. (*See* Pls. Reply at 5 ("The Plaintiffs will file an Amended Complaint naming the City as a defendant.").)

In addition, given the allegation that the UFA and the UFOA have breached their duty of fair representation by allegedly refusing to process Plaintiffs' grievances, (*see* Pls. Mem. at 7), and to the extent Plaintiff members of DC 37 ("DC 37 Plaintiffs") are challenging the DC 37 Agreement, the UFA, the UFOA, and DC 37 are also necessary parties to this action. *See* Fed. R. C. P. 19 (a)(1)(B) ("A person . . . must be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest.").

## II.  Standing as to DC 37 Plaintiffs

On December 1, 2021, Plaintiffs filed a letter briefing the Court on the issue of whether DC 37 Plaintiffs have standing to challenge the DC 37 Agreement. (ECF No. 22, Plaintiffs' Sur-Reply ("Pls. Sur-Reply").) Defendants, in turn, submitted a letter in response on December 2, 2021.

Generally, a union member has no standing to enforce the collective bargaining agreement between their employer and union

against the employer directly. *See Cummings v. City of N.Y.*, No. 19-cv-7723(CM), 2020 WL 882335, at *14 (E.D.N.Y. Feb. 24, 2020) ("By becoming a union member, an individual employee 'has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union.'") (citation omitted).

Plaintiffs argue that in *Kane v. De Blasio*, No. 21-2678, 2021 WL 5549403 (2d Cir. Nov. 22, 2021), the Second Circuit "briefly addressed" a standing argument made by Defendants that the Circuit Court, in fact, declined to address. (Pls. Reply at 1.) Notably, the passage cited by Plaintiffs begins with, "[n]or do we address certain arguments made by Defendants." *Id.* at *8 n.15. Nevertheless, Plaintiffs misread the cited footnote from *Kane*. In *Kane*, the plaintiffs challenged, on substantive Free Exercise grounds, not on procedural due process grounds, an arbitration award that purported to prescribe the procedure for seeking a religious accommodation. *Id.* at *8. The plaintiffs in *Kane* did not challenge, as DC 37 Plaintiffs do here, procedures specifically negotiated and agreed to by their union. And indeed, DC 37 Plaintiffs do not challenge the procedures on substantive grounds. Therefore, *Kane* is inapposite.

Even assuming that Plaintiffs do have standing and can appropriately challenge the DC 37 Agreement, Plaintiffs have not met the requisite showing for preliminary injunction.

## III. Preliminary Injunction

### A. Likelihood of Success on the Merits

The Court finds that Plaintiffs failed to establish a "clear" or "substantial" likelihood of success on the merits on any of their claims. *See Tom Doherty Assocs., Inc.*, 60 F.3d at 33-34; *Doninger*, 527 F.3d at 47 (2d Cir. 2008).

A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). The Court does not disagree that Plaintiffs, as public employees under the FDNY, have protected property interests in their pay and continued employment. Having found that Plaintiffs have protected property interests, the Court next looks to whether the process they have been afforded is constitutionally adequate.

Plaintiffs argue that Plaintiffs' procedural due process rights were violated because the FDNY failed to proffer charges and provide a pre-deprivation hearing in accordance with the procedures set forth in New York City Administrative Code § 15-113. (*See* Pls. Mem. 7-8.) As an initial matter, to determine whether process is adequate, the Court looks to "[f]ederal constitutional standards rather than state statutes [to] define the requirements of

10

procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987). *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute.") (internal citation and quotation marks omitted); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires.") (internal quotation marks and citation omitted). Thus, at issue is not whether state procedural law was correctly followed or applied, but whether the process provided satisfies the requirements imposed by the Constitution.

In addition, the Court need not consider whether section 15-113 of the New York City Administrative Code was correctly followed because under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth section 15-113. *See, e.g.*, *O'Connor v. Bd. of Educ. of City Sch. Dist. of City of Niagara Falls*, 852 N.Y.S.2d 537, 538 (4th Dep't 2008) (holding that petitioners, who were terminated for failing to comply with the residency policy in their employment agreements,

11

were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 3020, 3020-a because "[t]hose sections of the Education Law are inapplicable inasmuch as they address issues relating to a teacher's competency and the applicable disciplinary procedures and penalties attendant thereto, while the residency policy 'is a consideration unrelated to job performance, misconduct or competency . . . a qualification of employment . . . [that respondent] may impose it if chooses to do so without running afoul of the Constitution or general laws of the State.") (citation omitted), *appeal denied*, 892 N.E.2d 396 (2008); *Beck-Nichols v. Bianco*, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency requirement defines eligibility for employment . . . unrelated to job performance, misconduct or competency" and thus concluding that the plaintiffs were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a); *Felix v. N.Y.C. Dept. of Citywide Admin. Servs.*, 3 N.Y.3d 498, 505 (2004) ("the act of failing to maintain one's residence within the municipality is separate and distinct from an act of misconduct by a municipal employee in the performance of his or her work. Failure to maintain residence renders an individual ineligible for continued municipal employment . . . while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures . . . .").[8]

---

[8] To the extent Defendants argue that the FDNY need not provide Plaintiffs with process that comports with the Constitution because vaccination is a qualification of employment for City employees, (*see* Defs. Opp. at 25 ("Thus,

Like the state statutory provisions that were considered in *O'Connor*, *Beck-Nichols*, and *Felix*, section 15-113 of the New York City Administrative Code is related to discipline of FDNY members based on their job performance, misconduct, or competency. Discipline of Plaintiffs for job performance, misconduct, or competency is not at issue here. *See* N.Y.C. Admin. Code § 15-114 ("The commissioner shall have power, in his or her discretion on conviction of a member of the force of any legal offense or neglect of duty, or violation of rules, or neglect or disobedience of orders or incapacity, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct, or conduct unbecoming an officer or member, or other breach of discipline, to punish the offending party . . . ."). Therefore, section 15-114 is not implicated when an FDNY officer is terminated based on his or her failure to satisfy a qualification of employment.

As Defendants correctly point out, the Second Circuit has held that "[v]accination is a condition of employment in the

_____

it is clear that a public employer may lawfully, and summarily, separate employees from service without process due to the employee's legal ineligibility to maintain their employment.")), the Court need not reach this issue, as Plaintiffs were provided constitutionally adequate process, as discussed below. The Court, nevertheless, notes that the New York Court of Appeals, separate and apart from its finding that termination based on an employee's failure to satisfy a qualification of employment does not invoke disciplinary procedures set forth in state statutes, analyzed whether the process that was actually provided comported with state and federal due process requirements. *See, e.g.*, *Beck-Nichols*, 20 N.Y.3d at 558–59 (holding that the notice-and-hearing procedures provided to petitioners "easily comply with due process."); *Felix*, 3 N.Y.3d at 506 ("We next address the question whether the procedure itself comported with state and federal due process requirements.").

13

healthcare field." *We The Patriots USA, Inc. v. Hochul*, Nos. 21-2179, 2102566, 2021 WL 5121983, at *18 (2d Cir. 2021). Given the state of public health emergency that our nation finds itself in due to the Coronavirus, the more transmissible Delta and Omicron variants, and the nature of Plaintiffs' job as firefighters and EMT employees, interacting with members of the public on an emergency basis, and living in close quarters during their shifts, the Commissioner was within his powers to require COVID-19 vaccination as a qualification of employment for FDNY employees.

Plaintiffs failed to satisfy this condition of employment, rendering themselves no longer qualified to serve as FDNY employees. *See We The Patriots USA, Inc.*, 2021 WL 5121983, at *18 ("Although individuals who object to receiving the vaccines on religious grounds have a hard choice to make, they do have a choice. Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers."). Because termination based on a failure to satisfy a qualification of employment does not trigger the proffer of charges and pre-deprivation hearing requirements of section 15-113, Plaintiffs' argument that Defendants violated their statutory rights is of no avail.

Turning to the issue of whether Plaintiffs' due process rights under the Constitution were violated, the Second Circuit has "held on several occasions that there is no due process violation

where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008). *See also Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 71—72 (2d Cir. 1988) (affirming the district court's dismissal of the plaintiff's procedural due process and its finding that, notwithstanding the plaintiff's decision not to avail himself of the "the grievance procedures established in the collective bargaining agreement between his union and his employer," such procedures "provided whatever process [plaintiff] was due as a matter of federal law."). "The Due Process Clause is implicated only when plaintiffs can establish that the grievance procedures in a collective bargaining agreement are an inadequate remedy." *Adams*, 517 F.3d at 129.

Plaintiffs have not asserted any reasonable basis for the Court to find that the grievance and arbitration procedures set forth in their CBAs are inadequate.[9] Plaintiffs had the option to challenge the enforcement of the Order through the grievance and

---

[9] Plaintiffs have failed to provide sufficient evidence in support of their allegation that their unions have refused to process their grievances. For example, the Court does not read Exhibit 2 to Garland Affidavit (ECF No. 5-2), an email communication from Andrew Ansbro, the President of the UFA, to Plaintiff Garland, as stating that the UFA will not file a grievance on Garland's behalf. Rather, the email, which states that the placement of FDNY employees on LWOP status based on their vaccination status "is the basis for [the UFA's] lawsuits against the City" and that "[the UFA] will continue to fight" evinces the UFA's willingness to represent Plaintiffs' interests against the City.

arbitration procedures provided in their CBAs, and their failure to do so "precludes consideration of the fairness of those proceedings in practice." *Narumanchi*, 850 F.2d at 72. Therefore, there is no due process violation for which relief may be granted where Plaintiffs failed to avail themselves of the grievance and arbitration procedures.

In any case, the Court finds that the process given to Plaintiffs satisfied the constitutional minimum.[10] Based on the record before the Court, the Court considers that both the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate. *See Loudermill*, 470 U.S. at 547 n.12 ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures."). Pre-deprivation processes "need not be elaborate," and the Constitution "mandates only that such process include, at a minimum, notice and the opportunity to respond." *See O'Connor*, 426 F.3d at 198 (citing *Loudermill*, 470 U.S. at 545). Here, Plaintiffs received ample pre-deprivation notice, via the October 2021 notice from Hodgens, the Chief of Operations of the FDNY, of: (1) the Order, (2) the requirement to submit proof of vaccination by October 29, 2021, (3)

---

[10] Plaintiffs argue, and the Court agrees, that the deprivation of Plaintiffs' right to continued employment and pay occurred when Plaintiffs failed to timely apply for a religious or medical exemption and were placed on LWOP status. *See Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019) ("Under this Circuit's precedents, an employee who is placed on *unpaid* leave has been deprived of a protected property interest . . . ."). As such, the Court considers what process was given to Plaintiffs both prior and subsequent to their placement on LWOP status.

their ability to seek reasonable accommodation by October 27, 2021,[11] and (4) their placement on LWOP status if they failed to comply with the Order and did not submit accommodation request by the October 27 deadline.

An employee's right to be provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991). Pursuant to the Order, any FDNY employees who believed that the Order should not apply to them had the opportunity to seek a religious or medical accommodation, and they would continue to remain on pay status pending the decision on their request or appeal, so long as their accommodation requests were submitted prior to October 27, 2021.[12] Therefore, the Court finds that there was sufficient pre-deprivation notice and opportunity to respond.

Forty-seven of forty-eight named Plaintiffs have requested an accommodation, but because they failed to meet the October 27 deadline, they were placed on LWOP status pending the determination on their accommodation requests. (*See* Defs. Opp. at

---

[11] The Order itself also stated, in plain language, that it should not be "construed to prohibit any reasonable accommodation otherwise required by law." (Exhibit A to O'Connor Decl. at 5.)
[12] Defendants' counsel represented to the Court during the show cause hearing that any FDNY member who has a pending accommodation request that was submitted by the October 27 deadline remains on active duty and is subjected to weekly PCR testing.

26–27.) Plaintiffs, not having availed themselves of the pre-deprivation opportunity to be heard, cannot now claim that they were deprived of their constitutional right to due process. *See Capul v. City of N.Y.*, No. 19-cv-4313(KPF), 2020 WL 2748274, at *13 (S.D.N.Y. May 27, 2020) ("Plaintiffs are not entitled to circumvent established due process protections and then claim they were never afforded such protections."), *aff'd* 832 F. App'x. 766 (2d Cir. 2021).[13]

The Court also finds that the post-deprivation procedures afforded by Defendants satisfy the constitutional minimum. Any employee who is denied a reasonable accommodation may file an appeal and any supporting materials within three days.[14] (ECF No. 15-10, Declaration of Don Nguyen ¶ 12.) If an appeal results in the grant of an accommodation, the employee would be restored to payroll and provided with back pay for the time they were on LWOP status. (*Id.* ¶ 13.) Alternatively, if an appeal is denied, the employee must submit proof of the first dose of a COVID-19 vaccine within three business days and, if required, of the second dose within 45 days

---

[13] Similarly, Plaintiff Taylor, who has not any sought any accommodation, cannot choose not to pursue the available post-deprivation procedures, and then rely on his choice to allege a lack of due process. Whether or not Plaintiffs found the process available to their liking has no bearing on whether that process is constitutionally sound.

[14] Although Defendants' counsel represented to the Court at the show cause hearing that Plaintiffs would have seven, not three, days to appeal, the Court, based on its review of the documents in the record to date, including the "FAQ on New York City Employees Vaccine Mandate" that was provided to FDNY employees along with the October 21, 2021 notice from the FDNY Chief of Operations, (see ECF No. 17-1 at 10–26), assumes that the time allotted to seek any appeals is three days.

thereafter.  (*Id.* ¶ 14.)  If the employee refuses to be vaccinated within the given timeframe after their appeal is denied, they would remain on LWOP status.  (*Id.*)

In the case of DC 37 Plaintiffs, they were provided the same notice that the other Plaintiffs had, by the October 21, 2021 notice from the Chief of Operations of the FDNY.  DC 37 Plaintiffs, unlike the other Plaintiffs, had the benefit of additional time to seek an accommodation beyond the October 27 deadline, as a result of the DC 37 Agreement.  (Exhibit C to O'Connor Decl.)  Pursuant to the DC 37 Agreement, executed on November 4, 2021, FDNY employees with DC 37 membership who submitted their initial reasonable accommodation requests by the end of the day, or 11:59 P.M., on November 2, remain on active duty and on payroll, subject to weekly COVID-19 testing, pending the initial determination of their requests or appeal.[15]  (*Id.*)  Those DC 37 Plaintiffs who submitted accommodation requests after November 2, but by the end of day, or 11:59 P.M. on November 5, remain on active duty and on payroll, subject to weekly COVID-19 testing, pending the initial determination of their requests, but may be placed on LWOP pending appeal.  (*Id.*)  DC 37 employees who submitted their request after November 5 were placed on LWOP starting November 1, and remain on

---

[15] To the extent such employees filed their accommodation requests after October 27 and were placed on LWOP on November 1, they were restored to active duty and payroll the day after execution of the DC 37 Agreement, or on November 5, and will remain working and on payroll, subject to weekly COVID-19 testing, pending the initial determination or appeal.  (*See* Exhibit C to O'Connor Decl.)

LWOP pending the determination of their accommodation requests. (*Id.*)  The DC Agreement also notified its members that as of December 1, 2021, the FDNY may uniliterally seek to separate employees who have not provided proof of vaccination, have not obtained or requested an accommodation, and have not opted for any separation option.  (*Id.*)

Finally, Plaintiffs, in addition to seeking an accommodation, had and continue to have, other avenues to challenge and address the actions taken against them as a result of the Order— the grievance and arbitration procedures set forth in their respective CBAs and an Article 78 proceeding in New York State Supreme Court.  The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy.  *See Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("an Article 78 proceeding is a perfectly adequate post-deprivation remedy.").  *See also Mobyed v. N.Y.C. Transit*, No. 07-cv-3292(ARR), 2011 WL 2847416, at *2 (E.D.N.Y. July 15, 2011) ("If a plaintiff chooses not to avail himself of the available post-deprivation procedures under a CBA, he cannot then rely on his choice to allege a lack of due process.").

## B. Irreparable Harm

The Court next considers to whether Plaintiffs have shown that they will likely suffer irreparable harm if not for the injunctive relief they seek.  At the outset, the Court cannot accept Plaintiffs' argument that where a deprivation of a constitutional

right is alleged, no further showing of irreparable harm is necessary, though Plaintiffs are correct that "a *presumption* of irreparable injury . . . flows from a violation of constitutional rights." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) (emphasis added). Where the movant alleges but fails to make a strong showing of constitutional harm that cannot be compensated through monetary damages, granting a preliminary injunction is inappropriate. *See A.H. by and through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) ("In cases alleging constitutional injury, a strong showing of a constitutional deprivation that results in *noncompensable damages* ordinarily warrants a finding of irreparable harm.") (emphasis added). *See also KM Enters., Inc. v. McDonald*, No. 11-cv-5098(ADS), 2012 WL 540955, at *3 (E.D.N.Y. Feb. 16, 2012) ("[E]ven if a constitutional claim was asserted, merely asserting a constitutional injury is insufficient to automatically trigger a finding of irreparable harm. . . . In other words, the Plaintiff must still convincingly show that a violation carries noncompensable damages in addition to money damages."). The Second Circuit has noted that "[i]rreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

The Court does not dispute that a loss of income is a

real, tangible harm. Even so, to demonstrate an entitlement to injunctive relief, Plaintiffs must identify a harm for which available legal remedies and monetary damages would be inadequate. As noted decades ago by the United States Supreme Court, the type of harm Plaintiffs allege, loss of employment and pay, are definitionally reparable. See *Sampson v. Murray*, 415 U.S. 61, 89-92 (1974) (holding that injuries generally associated with discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute "irreparable harm"). *See also Piercy v. Fed. Rsrv. Bank of N.Y.*, Nos. 02-cv-5005, 02-cv-9291(DC), 2003 WL 115230, at *3 (S.D.N.Y. Jan. 13, 2003) ("Plaintiffs wrongfully discharged from employment generally may be made whole by monetary damages and reinstatement after a full trial on the merits."). That loss of employment and pay constitute harm that may be remedied through money damages is demonstrated by the FDNY EEO Office's accommodation procedure, which provides that any FDNY employee granted a reasonable accommodation will be provided back pay for the time they were on LWOP status. As such, Plaintiffs have failed to make a sufficient showing of irreparable harm.

Additionally, the Court notes that Plaintiffs' claimed need for injunctive relief is belied by their own delay in seeking that relief. "[A]n unreasonable delay in seeking a preliminary injunction may preclude a finding of irreparable harm because 'the

failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief.'" *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-cv-407(NG), 2020 WL 5899879, at *9 (Feb. 28, 2020) (citing *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). *See also Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985) ("Lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief because it goes primarily to the issue of irreparable harm"). "Indeed, in this Circuit, preliminary injunctions have been denied on account of even relatively short delays." *Alcon Vision*, 2020 WL 5899879, at *9. Plaintiffs were given notice of the Commissioner's Order on October 21, 2021, requiring that all FDNY employees show proof of at least one dose of COVID-19 vaccination by 5 P.M. on October 29, 2021, and providing detailed information including procedures and dates for seeking exemptions. The Court declines to give credit to Plaintiffs' counsel's unsubstantiated representation that some Plaintiffs did not find out about the Order until days later (and counsel does not clarify exactly how many days later), because even if that were true, Plaintiffs still fail to explain why they waited until November 23 to seek relief.

Finally, as to the 47 Plaintiffs who have requested for an accommodation, the harm they allege is speculative, as it is not yet certain whether their requests will be granted and they will

be restored to pay status.  *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) ("[I]rreparable harm must be shown to be actual and imminent, not remote or speculative.")

      **C.**    **Balance of the Equities and D. The Public Interest**

      The Court finds that both the balance of equities and the public interest in protecting the public health disfavor the injunctive relief requested by Plaintiffs.  The Court also recognizes the heroic efforts that the FDNY has made throughout our City's history to protect the public.  In balancing the equities and the public interest, the Court notes that available scientific and medical data support vaccinations as effective tools to prevent the spread of COVID-19 and the development and transmission of new variants.  As Defendants note in their memorandum of law in opposition, according to the DOHMH, between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of hospitalizations, and 97.3% of COVID-19 deaths in New York City. (Defs. Opp. at 5–6.)

      The Court is sympathetic to the hardships Plaintiffs have experienced.  As noted above, loss of income and possible employment undoubtedly presents great challenges to the Plaintiffs, and these challenges remain so long as Plaintiffs continue to refuse to comply with the Order.  The role of the Court, however, is to "balance the competing claims of injury on each party of either granting or

withholding the requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 9. On balance, the equities at stake and the importance of safeguarding the public health and safety weigh in favor of denying the preliminary injunction.

Firefighters and EMT employees interact frequently with members of the public who are in a medical emergency or other vulnerable positions. Based on the available scientific and medical evidence, there is a significant, if not compelling, governmental interest in preventing the transmission of the Coronavirus and variants to members of the public with whom FDNY employees come into contact with. The FDNY thus requires its employees to receive the COVID-19 vaccine as an employment qualification during a rapidly changing global pandemic. Additionally, given the close proximity with which firefighters interact with one another while on duty, in their fire stations and fire houses, the City has a significant interest in ensuring that firefighters have the ability to carry out their task of protecting the public by preventing the transmission of the Coronavirus among its employees.

The Court recognizes the sacrifices firefighters and EMT employees have made to protect the public, especially over the course of the COVID-19 pandemic. Our nation is indebted to their efforts and sacrifices. However, the Court has the difficult task

of balancing the needs of the vast majority against the concerns of a few, and here, the public health and safety concerns far outweigh the concerns of Plaintiffs.

All of us have been navigating unchartered waters over the course of the pandemic, including health and government officials, who have been tirelessly pursuing and implementing the best means to provide for the health and safety of all. Ultimately, "it is up to local government, 'not the courts, to balance the competing public health and business interests[,]'" and here, the New York City government and the FDNY have done so in issuing and enforcing the vaccination requirement for employees of the FDNY. *Maniscalco v. N.Y.C. Dep't of Educ.*, No. 21-cv-5055(BMC), 2021 WL 4344267, at *4 (E.D.N.Y. Sept. 23, 2021)

## CONCLUSION

Accordingly, Plaintiffs' motion for a temporary restraining order and a preliminary injunction is DENIED.

**SO ORDERED.**

_____/s/_____
Kiyo A. Matsumoto
United States District Judge

Dated:  Brooklyn, New York
        December 6, 2021