# 23-663

## In the

## United States Court of Appeals

### For the Second Circuit

◆

JOHN GARLAND, VINCENT BOTTALICO, TIMOTHY A. HEATON,
JOSEPH BEVILACQUA, JOSEPH CICERO, JOSEPH COLUMBIA,
ANDREW COSTELLO, JAMES DANIEL DALY, III, VINCENT DEFONTE,
KENNETH DEFOREST, SALVATORE DEPAOLA, BRIAN F. DOYLE,
NATHAN EVANS, CHRISTOPHER FILOCAMO,

*Plaintiffs-Appellants,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
*(See inside cover for continuation of caption)*

## JOINT APPENDIX
## Volume II of III (Pages JA-235 – JA-446)

JESSE A. TOWNSEND, ESQ.,
  SENIOR COUNSEL
NEW YORK CITY LAW DEPARTMENT
  APPEALS DIVISION
*Attorney for Defendants-Appellees*
  *New York City Fire Department,*
  *Daniel A. Nigro and City of*
  *New York*
100 Church Street
New York, New York 10007

THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiffs-Appellants*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040

COHEN, WEISS AND SIMON LLP
*Attorneys for Defendants-Appellees*
  *Henry Garrido, District Council 37,*
  *AFSCME AFLCIO, Local 2507,*
  *District Council 37, AFSCME*
  *AFLCIO, Local 3621 and District*
  *Council 37, AFSCME AFL-CIO*
900 3rd Avenue, Suite 2100
New York, New York 10022
(212) 356-0216

————————————————

KEVIN GARVEY, CHARLES GUARNEIRI, DANIEL J. OSHEA, MARGOT LOTH,
MICHAEL LYNCH, DENNIS O'KEEFFE, BRIAN PATRICK SMITH, KURT
PFLUMM, CHRISTOPHER RAIMONDI, PAUL SCHWEIT, JOSEPH T. JOHNSON,
DAVID BUTTON, PAUL PARR, MARK SINCLAIR, DANIEL BAUDILLE,
JOHN DREHER, THOMAS OLSEN, GIUSEPPE ROBERT PENORO, MATTHEW
CONNOR, NICHOLAS MULLGAN, RANDALL SANTANA, ANTHONY PERRONE,
SCOTT ETTINGER, ANTHONY MASTROPIETRO, RASHAAD TAYLOR,
ANTHONY RUGGIERO, JOSEPH MURDOCCA, KEITH KLEIN, PAUL
VASQUENZ, MARK HENESY, RYAN K. HALL, JUDE PIERRE, MICHELLE
SANTIAGO, ROBERT DITRANI, BRIAN T. DENZLER, MICHAEL MCGOFF,
CHRISTOPHER INFANTE, GEORGE J. MURPHY, THOMAS FEJES, JOHN
COSTELLO, BRANDON PHILLIPS, JOSEPH DEPAOLA, BRENDAN MCGEOUGH,
JASON CHARLES, ANTHONY C. CARDAZONE, OWEN FAY, MICHAEL FADDA,
JOSEPH M. PALMIERI, JARED DYCHKOWSKI, JOHN TWOMLEY, MATT
KOVAL, GLENN CLAPP, ROBERT YULI, MATTHEW SINCLAIR, TIM RIVICCI,
JOHN ARMORE, MICHAEL SAMOLIS, FELICIA J. TSANG, WILLIAM JOHN
SAEZ, ROSARIO CURTO, DAVID SUMMERFIELD, KEVIN ERKMAN,
BERNADETTE MEJIA, DANIEL YOUNG, SEAN FITZGERALD, CRAIG LEAHY,
DANIEL STROH, STEPHEN INGUAGIATO, STEPHEN BUTTAFUCCO,
PHILLIP J. DARCEY, AINSLEY ATWELL and RODNEY COLON,

*Plaintiffs-Appellants,*

– v. –

NEW YORK CITY FIRE DEPARTMENT, DANIEL A. NIGRO, JOHN DOE #1-10,
JANE DOE #1-10, CITY OF NEW YORK, HENRY GARRIDO, DISTRICT COUNCIL
37, AFSCME AFLCIO, LOCAL 2507, DISTRICT COUNCIL 37, AFSCME AFLCIO,
LOCAL 3621 AND DISTRICT COUNCIL 37, AFSCME AFL-CIO,

*Defendants-Appellees,*

– and –

UNIFORMED FIRE OFFICERS ASSOCIATION, LOCAL 854 INTERNATIONAL
ASSOCIATION OF FIREFIGHTERS, AFFILIATED WITH THE AFL-CIO AND
UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK,

*Defendants.*

————————————————

i

# Table of Contents

**Page**

Docket Entries ............................................................... JA-1

Complaint, Dated November 24, 2021.........................................JA-38

Proposed Order to Show Cause by Plaintiffs for a Temporary
    Restraining Order and a Preliminary Injunction,
    Filed November 24, 2021..........................................JA-56

Emergency Affirmation of Austin Graff, for Plaintiffs, in
    Support of Motion, Dated November 24, 2021.......................JA-61

Affidavit of John Garland, Plaintiff, in
    Support of Motion, Sworn to November 22, 2021....................JA-64

    Exhibit 1 to Garland Affidavit -
    E-Mail Correspondence Between John Garland and Members
    of Uniformed Firefighters Association of Greater New York
    Local 94, I.A.F.F., AFL-CIO ("UFA"),
    Dated November 16, 2021  .......................................JA-67

Affidavit of Margot Phillips Loth, Plaintiff, in
    Support of Motion, Sworn to November 24, 2021....................JA-72

Affidavit of David Button, Plaintiff, in
    Support of Motion, Sworn to November 23, 2021....................JA-74

Affidavit of Christopher Raimondi, Plaintiff, in
    Support of Motion, Sworn to November 22, 2021....................JA-77

Memorandum of Law by Plaintiffs in Support of Motion,
    Dated November 24, 2021 .........................................JA-79

Order to Show Cause for a Preliminary Injunction,
    Dated November 24, 2021 .........................................JA-94

Memorandum of Law by Defendants New York City Fire
    Department and Daniel A. Nigro in Opposition to Motion,
    Dated November 29, 2021 .........................................JA-97

Declaration of Andrea O'Connor, for Defendants
    New York City Fire Department and Daniel A. Nigro,
    in Opposition to Motion, Dated November 29, 2021...............JA-134

    Exhibit A to O'Connor Declaration -
    Order of Dave A. Chokshi, M.D., Commissioner of Health
    and Mental Hygiene to Require COVID-19 Vaccination
    for City Employees and Certain City Contractors,
    Dated October 20, 2021 .........................................JA-137

ii

**Page**

Exhibit B to O'Connor Declaration -
Arbitration Award Decision in Board of Education of the
City School District of the City of New York and the United
Federation of Teachers, Local 2, AFT, AFL-CIO,
Dated September 10, 2021, with Cover Letter..........................JA-143

Exhibit C to O'Connor Declaration -
Memorandum of Agreement Between District Council 37,
City of New York and the Board of Education of the
City School District for the City of New York,
Dated October 3, 2021 ...........................................................JA-163

Exhibit D to O'Connor Declaration -
Verified Petition, in the Matter of *the Application of Andrew
Ansbro, as President of the Uniformed Firefighters
Association v. Bill de Blasio, et al.*, Index No. 159738/2021,
Dated October 28, 2021 ..........................................................JA-171

Exhibit E to O'Connor Declaration -
Order to Show Cause, with Temporary Restraining Order,
in the Matter of *the Application of Andrew Ansbro, as
President of the Uniformed Firefighters Association v.
Bill de Blasio, et al.*, Index No. 159738/2021,
Dated November 1, 2021 .........................................................JA-194

Exhibit F to O'Connor Declaration -
Verified Scope of Bargaining and Improper Practice Petition,
in the Matter of *the Improper Practice Petition Between
Uniformed Firefighters Association of Greater New York,
Local 94, IAFF, AFL-CIO v. City of New York, et al.*,
BCB-4461-21, Dated October 26, 2021 ...................................JA-198

Exhibit G to O'Connor Declaration -
Verified Petition for Injunctive Relief, in the Matter of *the
Petition for Injunctive Relief between Uniformed Firefighters
Association of Greater New York, Local 94, IAFF, AFL-CIO
v. City of New York, et al.*, Dated October 27, 2021 ................JA-221

Exhibit H to O'Connor Declaration -
Letter from Harry Greenberg to Steven E. Star,
Dated November 18, 2021 .......................................................JA-235

Exhibit I to O'Connor Declaration -
Notice of Board Determination and Request for Injunctive
Relief, in the Matter of *the Petition for Injunctive Relief
between Uniformed Firefighters Association of Greater
New York, Local 94, IAFF, AFL-CIO v. City of New York,
et al.*, Dated November 16, 2021 .............................................JA-237

iii

**Page**

Exhibit J to O'Connor Declaration -
Declaration of Don Nguyen, Dated November 29, 2021 .........JA-240

Emergency Reply Affirmation of Austin Graff, for Plaintiffs, in
Further Support of Motion, Dated November 30, 2021 ...........JA-245

Exhibit 1 to Graff Emergency Reply Affirmation -
Buckslip, Dated October 20, 2021 ...........................................JA-247

Reply Memorandum of Law by Plaintiffs in Further Support
of Motion, Dated November 30, 2021 .....................................JA-273

Supplemental Declaration of Andrea O'Connor, for Defendants
New York City Fire Department and Daniel A. Nigro,
in Opposition to Motion, Dated November 30, 2021 ...............JA-287

Exhibit K to O'Connor Supplemental Declaration -
Opposing Affidavit of Tricia Singh,
Sworn to November 30, 2021 ...................................................JA-289

Exhibit L to O'Connor Supplemental Declaration -
Opposing Affidavit of Mario Manna,
Sworn to November 30, 2021 ...................................................JA-292

Letter Regarding Corrected Exhibit C from Andrea O'Connor to
Honorable Kiyo A. Matsumoto, Dated November 30, 2021 ....JA-295

Exhibit C to O'Connor Declaration *(Corrected)* -
Memorandum of Agreement Between District Council 37
and the City of New York, Dated November 4, 2021 ...............JA-296

Sur-Reply Memorandum of Law by Plaintiffs in Further
Support of Motion, Dated November 30, 2021 ........................JA-303

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated December 2, 2021 ........................JA-311

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated December 6, 2021 ..........................................................JA-314

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated December 10, 2021 ........................................................JA-341

Amended Complaint, Dated January 5, 2022 ..............................JA-343

Exhibit A to Amended Complaint -
Order of Dave A. Chokshi, M.D., Commissioner of Health
and Mental Hygiene to Require COVID-19 Vaccination
for City Employees and Certain City Contractors,
Dated October 20, 2021
(Reproduced herein at pp. JA-138–JA-142) ............................JA-377

iv

**Page**

Exhibit B to Amended Complaint -
Memorandum of Agreement Between District Council 37,
City of New York and the Board of Education of the
City School District for the City of New York,
Dated October 3, 2021
(Reproduced herein at pp. JA-164–JA-170) ............................JA-377

Letter Regarding Replacing Exhibit B to Amended Complaint
from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated March 15, 2022 .................................................................JA-378

Exhibit B to Amended Complaint *(Corrected)* -
Memorandum of Agreement Between District Council 37
and the City of New York, Dated November 4, 2021
(Reproduced herein at pp. JA-297–JA-302) ............................JA-380

So-Ordered Stipulation of Dismissal of Honorable
Kiyo A. Matsumoto, with Prejudice, as to Defendant
Uniformed Fire Officers Association, Local 854,
International Association of Firefighters, Affiliated
with the AFL-CIO, Dated March 16, 2022 ...............................JA-381

So-Ordered Stipulation of Discontinuance of Honorable
Kiyo A. Matsumoto, with Prejudice as to Defendant
Uniformed Firefighters Association of Greater
New York, Dated March 16, 2022 .............................................JA-383

So-Ordered Stipulation of Discontinuance of Honorable
Kiyo A. Matsumoto, without Prejudice as to Defendant
District Council 37, AFSCME AFL-CIO, Local 2507,
Dated March 16, 2022 .................................................................JA-385

So-Ordered Stipulation of Discontinuance of Honorable
Kiyo A. Matsumoto, without Prejudice as to Defendant
District Council 37, AFSCME AFL-CIO, Local 3621,
Dated March 16, 2022 .................................................................JA-387

Notice of Motion by Defendants City of New York, New York
City Fire Department and Daniel A. Nigro to Dismiss
Amended Complaint, Dated April 14, 2022 ............................JA-390

Memorandum of Law by Defendants City of New York, New
York City Fire Department and Daniel A. Nigro,
in Support of Motion, Dated April 14, 2022 ...........................JA-393

Notice of Motion by Defendants District Council 37, AFSCME,
AFL-CIO and Henry Garrido to Dismiss Amended
Complaint, Filed April 14, 2022 ...............................................JA-426

v

**Page**

Memorandum of Law by Defendants District Council 37,
    AFSCME, AFL-CIO and Henry Garrido in Support
    of Motion, Dated April 14, 2022................................................JA-429

Memorandum of Law by Plaintiffs in Opposition to Motions,
    Dated May 18, 2022.................................................................JA-447

Reply Memorandum of Law by Defendants District
    Council 37, AFSCME, AFL-CIO and Henry Garrido,
    in Further Support of Motion, Dated June 9, 2022 ..................JA-483

Reply Memorandum of Law by Defendants City of New York,
    New York City Fire Department and Daniel A. Nigro, in
    Further Support of Motion, Dated June 13, 2022 ....................JA-498

Letter Motion to Amend/Correct/Supplement Memorandum
    in Opposition from Austin Graff to Honorable
    Kiyo A. Matsumoto, Dated September 28, 2022 .....................JA-513

    Attachment to Letter Motion -
    Decision and Order of Honorable Lyle E. Frank, in the Matter
    of *Police Benevolent Association of The City of New York,
    Inc. v. City of New York, et al.*, Index No. 151531/2022,
    Dated September 23, 2022 .......................................................JA-515

Letter of Response from Andrea O'Connor to Honorable
    Kiyo A. Matsumoto, Dated September 29, 2022 .....................JA-519

    Appendix A to Letter of Response -
    Decision and Order of Honorable Gina Abadi, in the Matter
    of *the Application of Andrew Ansbro v. Daniel Nigro, et al.*,
    Index No. 531749/2021, Dated September 13, 2022 ...............JA-522

Second Letter Motion to Amend/Correct/Supplement
    Memorandum in Opposition from Austin Graff to Honorable
    Kiyo A. Matsumoto, Dated October 10, 2022 .........................JA-531

    Attachment to Second Letter Motion -
    Decision of the Office of Collective Bargaining Board of
    Collective Bargaining, in the Matter of *the Improper Practice
    Petition between The New York City Municipal Labor
    Committee, et al. v. The City of New York, et al.*, Docket No.
    BCB-4458-21, Dated September 23, 2022................................JA-533

Letter of Response from Andrea O'Connor to Honorable
    Kiyo A. Matsumoto, Dated October 11, 2022 .........................JA-555

vi

**Page**

Third Letter Motion to Amend/Correct/Supplement
Memorandum in Opposition from Austin Graff to Honorable
Kiyo A. Matsumoto, Dated October 25, 2022 .........................JA-557

Attachment to Third Letter Motion -
Decision and Order of Honorable Ralph J. Porzio, in the
Matter of *George Garvey v. The City of New York, et al.*,
Index No. 85163/2022, Dated October 24, 2022 .....................JA-559

Letter of Response from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated October 25, 2022 .........................JA-572

Letter from Andrea O'Connor to Honorable
Kiyo A. Matsumoto, Dated February 16, 2023........................JA-574

Letter from Austin Graff to Honorable Kiyo A. Matsumoto,
Dated February 17, 2023.............................................JA-576

Exhibit 1 to Letter -
Mayor's Announcement Regarding End of the Vaccine
Mandate, Dated February 6, 2023 ...................................JA-578

Letter from Hanan B. Kolko to Honorable Kiyo A. Matsumoto,
Dated February 17, 2023.............................................JA-581

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated March 29, 2023 ...............................................JA-584

Amended Memorandum and Order of Honorable
Kiyo A. Matsumoto, Dated March 29, 2023............................JA-619

Judgment of The United States District Court, Eastern District
of New York, Dated March 31, 2023..................................JA-654

Notice of Appeal, Dated April 20, 2023 ............................JA-655

Letter from Joshua Feldman to Honorable Kiyo A. Matsumoto,
Dated May 18, 2023..................................................JA-658

Amended Notice of Appeal, Dated May 19, 2023 ......................JA-659

# EXHIBIT H

**JA-236**

LAW OFFICES OF
# GREENBERG BURZICHELLI GREENBERG P.C.

HARRY GREENBERG
ROBERT J. BURZICHELLI *
SETH H. GREENBERG *

DANIEL DOESCHNER
SANDY JAINAUTH-BARONE *

*ALSO ADMITTED IN NEW JERSEY

3000 MARCUS AVENUE, SUITE 1W7
LAKE SUCCESS, NEW YORK 11042
PHONE: 516-570-4343
FAX: 516-570-4348
* * * * *
225 BROADWAY, SUITE 1515
NEW YORK, NEW YORK 10007
PHONE: 516-570-4343

WWW.GBGLAWOFFICE.COM
E-MAIL: FIRST INITIAL AND
LAST NAME@GBGLAWOFFICE.COM

November 18, 2021

**VIA EMAIL & FIRST-CLASS MAIL**
Steven E. Star
Deputy Chair & General Counsel
NYC Office of Collective Bargaining
100 Gold Street, 4th Floor
New York, NY 10038
sstar@ocb.nyc.gov

Re:   **Request for the UFOA to Intervene in the Verified Scope of**
**Bargaining and Improper Practice Petition filed by the UFA**
**Docketed BCB-4461-21**

Dear Mr. Star:

    I write on behalf of the Uniformed Fire Officers Association ("UFOA") seeking to intervene in the above-mentioned matter filed by the Uniformed Firefighters Association ("UFA"), docketed BCB-4461-21. OCB Rules Section 1-12 k. Please be informed that I obtained the City of New York's consent to intervene in the above matter from Steven Banks, First Deputy Commissioner and General Counsel of the City's Office of Labor Relations and from Mr. Paul Linzer, Esq., Counsel to the UFA.

    The issues presented in the pleading affect the terms and conditions of the members of the UFOA. The UFOA adopts the UFA's pleadings.

    If anything more is needed to effect UFOA's intervention, please do not hesitate to contact me. I await the Board's decision to the UFOA's request to intervene.

Very truly yours,

Harry Greenberg

cc:   Steven Banks, First Deputy Commissioner & General Counsel, OLR
      Janet Insardi, Assistant General Counsel, OLR
      Paul S. Linzer, Esq., Certilman, Balin, Adler, Hyman, LLP
      Jennifer A. Bentley, Esq., Certilman, Balin, Adler, Hyman, LLP
      James McCarthy, President, UFOA
      Andrew Ansbro, President, UFA

JA-237

# EXHIBIT I



# OFFICE OF COLLECTIVE BARGAINING

**OFFICE ADDRESS**
100 Gold Street
Suite 4800
New York, New York 10038

**MAILING ADDRESS**
Peck Slip Station
PO Box 1018
New York, New York
10038-9991

November 16, 2021

212.306.7160
www.ocb-nyc.org

**IMPARTIAL MEMBERS**
Susan J. Panepento, Chair
Alan R. Viani

**LABOR MEMBERS**
Charles G. Moerdler

**CITY MEMBERS**
M. David Zurndorfer
Pamela S. Silverblatt

**DEPUTY CHAIRS**
Monu Singh
Steven Star

**Via E-Mail & Certified Mail**

Paul Linzer, Esq.
Certilman Balin Adler & Hyman, LLP
90 Merrick Avenue, 9th Floor
East Meadow, NY 11554

Steven Banks, General Counsel
Office of Labor Relations
22 Cortlandt Street, 14th Floor
New York, New York 10007

Re:   Notice of Board Determination
      Request for Injunctive Relief
      UFA, Local 94, IAFF v. City of New York, FDNY
      Docket No. BCB-4460-21 (INJ)

Dear Counselors:

On November 16, 2021, the Board of Collective Bargaining met pursuant to §1-07(d)(7) of the Rules of the Office of Collective Bargaining [61 RCNY §1-01 et. seq.]. After a thorough discussion of the issues raised in this matter, a majority of the Board voted to deny the petitioner's request for injunctive relief in the above-captioned matter on the grounds that it did not appear that "immediate and irreparable injury loss or damage will result" CSL § 209-a(5)(a). The Union's claims substantially mirror those of the petitioners in *MLC, et. al.*, BCB-4457-21 (INJ), for which the Board denied a petition for injunctive relief on November 9, 2021. To the extent the UFA's claims differ from those in *MLC, et al.*, they do not establish a basis for finding irreparable harm.

In this proceeding, Petitioner also seeks injunctive relief with respect to the claim that the City failed to bargain in good faith concerning its October 20, 2021 decision to mandate vaccines for all its employees. After a thorough discussion of this issue, a majority of the Board voted to deny the petitioner's request for injunctive relief on the additional ground that it did not appear that there is "a likelihood of success on the merits" CSL § 209-a(5)(a).

JA-239

Page 2

  The underlying improper practice charge raises issues concerning the duty to bargain under the New York City Collective Bargaining Law, and the City has acknowledged its willingness to negotiate the impact of the vaccine mandate for City workers.  The Board strongly encourages the parties to meet expeditiously to discuss these issues and attempt to resolve them through collective bargaining.

  The Office of Collective Bargaining is available to assist the parties in achieving a mutually acceptable outcome.

Very truly yours,

Steven E. Star
Deputy Chair/General Counsel

cc: Janet Insardi, Esq. (by email)
   Jennifer Bentley, Esq. (by email)

JA-240

# EXHIBIT J

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
JOHN GARLAND, et al., on behalf of themselves and all
other similarly situated employees of the New
York City Fire Department,

                                                                    No. 21 Civ. 6586 (KAM)(CP)

                                                Plaintiffs,

                        - against -

NEW YORK CITY FIRE DEPARTMENT, DANIEL A.
NIGRO, in his official and individual capacities, JOHN
DOE #1-10, in their official and individual capacities; and
JANE DOE #1-10 in their official and individual capacities,

                                                Defendants.
------------------------------------------------------------------------ x

          **DON NGUYEN** declares, pursuant to 28 U.S.C. § 1746 and subject to the penalties

of perjury, that the following is true and correct:

          1.        I have been the Assistant Commissioner of Equal Employment Opportunity

("EEO") at the New York City Fire Department ("FDNY") since January 2016.  Prior to January

2016, I was the Deputy Director of FDNY EEO beginning in September 2015.

          2.        I submit this declaration in opposition to Plaintiffs' application for a

preliminary injunction.

          3.        The sources of the information contained in this Declaration are my own

personal knowledge, the books and records of FDNY and from information received by certain

officers or agents of FDNY.

          4.        On October 20, 2021 the Commissioner of the New York City Department

of Health and Mental Hygiene ("DOHMH"), David A. Chokshi, issued a Commissioner's Order

requiring all employees of the New York City Fire Department to show proof of at least one dose

of vaccination against COVID-19 by 5:00 p.m. by October 29, 2021 ("COH Order").

5.      The COH Order requires that any City employee who has not provided the above-described proof must be excluded from their assigned work location beginning on November 1, 2021.

6.      The COH Order specifically provides that "Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law."

7.      The below-listed plaintiffs have reasonable accommodation requests to be exempt from the COH Order pending with FDNY EEO:

1)      FF John Garland
2)      Lt. Vincent Bottalico
3)      FF Joseph Cicero
4)      FF Michael Columbia
5)      FF Andrew Costello
6)      FF James Daly
7)      FF Vincent Defonte
8)      FF Kenenth Deforest
9)      FF Sal DePaola
10)     FF Brian Doyle
11)     FF Nathan Evans
12)     FF Christopher Filocamo
13)     FF Kevin Garvey
14)     FF Charles Guarnieri
15)     FF Daniel OShea
16)     EMT Margot Loth
17)     FF Michael Lynch
18)     FF Brian Smith
19)     FF Kurt Pflumm
20)     FF Christopher Raimondi
21)     FF Paul Schweitt
22)     Capt. Joseph Johnson
23)     FF David Button
24)     FF Paul Parr
25)     FF Mark Sinclair
26)     FF Daniel Baudille
27)     FF John Dreher
28)     FF Thomas Olsen
29)     FF Giuseppe Penoro
30)     FF Matthew Connor
31)     FF Nicholas Mulligan
32)     FF Anthony Perrone

|     |                        |
|-----|------------------------|
| 33) | FF Scott Ettinger      |
| 34) | FF Anthony Mastropietro |
| 35) | FF Anthony Ruggiero    |
| 36) | FF Joseph Murdocca     |
| 37) | FF Keith Klein         |
| 38) | FF Paul Vasquenz       |
| 39) | FF Mark Henesy         |
| 40) | FF Ryan Hall           |
| 41) | FF Jude Pierre         |
| 42) | FF Robert Ditrani      |
| 43) | FF Brian Denzler       |
| 44) | FF Michael McGoff      |
| 45) | LT Timothy Heton       |
| 46) | FF Joseph Bevilacqua   |
| 47) | FF Dennis O'Keefe      |

8.      Thus, all plaintiffs but for Plaintiff Taylor have accommodation requests to be exempt from the COH Order currently pending.

9.      Any plaintiff who is granted a reasonable accommodation by the FDNY to be exempt from the COH Order will be restored to FDNY payroll and provided with back pay for the period of time they were on Leave Without Pay ("LWOP") status.

10.     Any plaintiff who is denied a reasonable accommodation by the FDNY to be exempt from the COH Order will be provided with an opportunity to appeal that determination.

11.     Any plaintiff whose reasonable accommodation is denied with a written determination of the request will be provided with written information on the appeals process, including a link to the City's online appeals request portal.

12.     Plaintiffs must appeal the denial within three business days by submitting an appeal, and any materials supporting their appeal, via the online review request portal, which will automatically notify FDNY's EEO Office of the appeal.  Upon notification of the appeal, FDNY's EEO Office will upload all records concerning the Agency determination of the

JA-244

reasonable accommodation request within one business day. Supplemental material may be requested to make a determination on appeal.

13.    If an appeal results in the grant of an accommodation, the plaintiff will be restored to payroll and paid back pay for the time they were on LWOP status.

14.    If a plaintiff's appeal is denied, they must submit proof of the first dose of a vaccination within three business days, and if required, of a second dose within 45 days thereafter.  If an employee refuses to be vaccinated within this timeframe after an appeal is denied, they will continue on LWOP.

Dated: November 29, 2021
        Brooklyn, New York

By:    _____
                DON NGUYEN

JA-245

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOHN GARLAND, *et al.*, on behalf of themselves
and all other similarly situated employees of the New
York City Fire Department,

                                   Plaintiffs,

               -against-

NEW YORK CITY FIRE DEPARTMENT,
DANIEL A. NIGRO, in his official and individual
capacities, JOHN DOE #1-10, in their official and
individual capacities; and JANE DOE #1-10 in their
official and individual capacities,

                                 Defendants.
-------------------------------------------------------------------X

**INDEX NO. 21-cv-6586**

**EMERGENCY
AFFIRMATION OF AUSTIN
GRAFF IN SUPPORT OF
THE PLAINTIFFS' MOTION
FOR A TEMPORARY
RESTRAINING ORDER AND
A PRELIMINARY
INJUNCTION**

     **AUSTIN GRAFF**, an attorney admitted to practice law before this Court, who is not a party to this Actin, affirmed to be true under penalties of perjury says:

     1.     I am associated with The Scher Law Firm, LLP, the attorneys for the Plaintiffs, in the above-entitled Action, and am familiar with the relevant facts and circumstances surrounding the allegations that comprise this litigation based upon the records maintained by my office regarding this matter. I submit this Affirmation in further support of the Defendants' Motion for a Preliminary Injunction pursuant to FRCP Rule 65 and in reply to the Defendants' opposition to the Motion.

     2.     The Plaintiffs rely upon the following exhibits in support of their Motion: **Exhibit 1**, is a copy of the October 20, 2021 Buckslip.

     3.     For the reasons argued in the accompanying Memorandum of Law, and the papers submitted in support of the Motion, the Plaintiffs' Motion for an Injunction should be granted.

**WHEREFORE,** the Plaintiffs respectfully request that the Court grant this Motion, as well as such other and further relief as may be just and proper.

Dated:      Carle Place, New York
            November 30, 2021

Austin Graff

2

JA-247

# EXHIBIT 1

JA-248

**JA-249**



*New York City Fire Department*
*Bureau of Operations*

*When responding refer to Buckslip No.:* **OPS-21-10-08**        *Buckslip Date:* 10/21/2021
*Ref. No:*        *Date Logged:* 10/21/2021

| | |
|---|---|
| *To:* | All Borough Commands: Manh., Brx, Qns, Bklyn, S.I. SOC-Special Operations Command |
| *Subject:* | COVID Vaccine Mandate Update |
| *Action:* | For Your Information |
| *Remarks* | Please Follow The Directions Outlined In The Memo. |

*cc's:*

*Due Date:*

JOHN J. HODGENS
*Chief of Operations*

**Filed:** OPERATIONS
JH/gp

JA-250



# FDNY
## BUREAU OF OPERATIONS
FireOps@fdny.nyc.gov

| | |
|---|---|
| **TO:** | All Boroughs<br>Special Operations Command |
| **FROM:** | John J. Hodgens  |
| **DATE:** | October 21, 2021 |
| **SUBJECT:** | COVID Vaccine Mandate Update |

Chief of Operations

---

As announced by Mayor De Blasio on Wednesday October 21, 2021, NYC now has a vaccine mandate for City employees and certain contractors. The DOHMH Commissioner's Order, which is attached below, requires City employees to submit proof of vaccination by October 29 at 5 PM.

From October 20-29, 2021, employees will be eligible to receive $500 through payroll, in addition to a $100 gift card available at City operated vaccination sites, if they receive their first vaccine dose during that time period.

Members may be considered for exemption from the COVID-19 vaccine mandate under limited circumstances on the basis of a sincerely held religious belief or a medical contraindication. Requests for exemptions must be submitted by email to the EEO Office at EEORA@fdny.nyc.gov by 10/27 in order for the employee to not be placed on unpaid leave status on 11/1. The forms necessary to file a Reasonable Accommodation Request can be found in PA/ID 1-77, Addendum 2. Note there are separate forms for different types of Reasonable Accommodations.

All members who have been vaccinated outside of the FDNY shall follow procedures in Operations Buckslip 21-09-09 to provide proof of vaccination to the Department. Employees who were not vaccinated through the Department must submit proof of vaccination to HRVaxProof@fdny.nyc.gov.

Any member who wishes to schedule an appointment for COVID-19 Vaccination shall call Bureau of Health Services at 718-999-2683 between hours of 9am – 5pm, Monday through Friday.

With some limited exceptions, the FDNY will be guided by the attached documentation on Vaccine Mandate FAQs and Vaccine Reasonable Accommodation Process.

**Fire Department, City of New York**
9 MetroTech Center, Brooklyn, NY 11201
nyc.gov/fdny | connect @fdny

JA-251

# ORDER OF THE COMMISSIONER
# OF HEALTH AND MENTAL HYGIENE
# TO REQUIRE COVID-19 VACCINATION FOR
# CITY EMPLOYEES AND CERTAIN CITY CONTRACTORS

**WHEREAS**, on March 12, 2020, Mayor Bill de Blasio issued Emergency Executive Order No. 98 declaring a state of emergency in the City to address the threat posed by COVID-19 to the health and welfare of City residents, and such order remains in effect; and

**WHEREAS**, on March 25, 2020, the New York City Commissioner of Health and Mental Hygiene declared the existence of a public health emergency within the City to address the continuing threat posed by COVID-19 to the health and welfare of City residents, and such declaration and public health emergency continue to be in effect; and

**WHEREAS**, pursuant to Section 558 of the New York City Charter (the "Charter"), the Board of Health may embrace in the Health Code all matters and subjects to which the power and authority of the Department of Health and Mental Hygiene (the "Department") extends; and

**WHEREAS**, pursuant to Section 556 of the Charter and Section 3.01(c) of the Health Code, the Department is authorized to supervise the control of communicable diseases and conditions hazardous to life and health and take such actions as may be necessary to assure the maintenance of the protection of public health; and

**WHEREAS**, the U.S. Centers for Disease Control and Prevention ("CDC") reports that new variants of COVID-19, identified as "variants of concern" have emerged in the United States, and some of these new variants which currently account for the majority of COVID-19 cases sequenced in New York City, are more transmissible than earlier variants; and

**WHEREAS**, the CDC has stated that vaccination is an effective tool to prevent the spread of COVID-19 and the development of new variants, and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated; and

**WHEREAS,** the Department reports that between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of COVID-19 hospitalizations, and 97.3% of COVID-19 deaths in New York City; and

**WHEREAS,** a study by Yale University demonstrated that the Department's vaccination campaign was estimated to have prevented about 250,000 COVID-19 cases, 44,000 hospitalizations, and 8,300 deaths from COVID-19 infection since the start of vaccination through July 1, 2021, and by information and belief, the number of prevented cases, hospitalizations, and death has risen since then; and

**WHEREAS,** on August 16, 2021, Mayor de Blasio issued Emergency Executive Order No. 225, the "Key to NYC," requiring that patrons and employees of establishments providing indoor entertainment, dining, and gyms and fitness centers must show proof that they have received at least one dose of an approved COVID-19 vaccine, and such Order, as amended, is still in effect; and

**WHEREAS,** on August 24, 2021, I issued an Order requiring that Department of Education employees, contractors, and visitors provide proof of COVID-19 vaccination before entering a DOE building or school setting, and such Order was re-issued on September 12 and

**JA-252**

15, 2021, and subsequently amended on September 28, 2021, and such Orders and amendment were ratified by the New York City Board of Health on September 17, 2021 and October 18, 2021; and

**WHEREAS,** on August 26, 2021, the New York State Department of Health adopted emergency regulations requiring staff of inpatient hospitals and nursing homes to receive the first dose of a COVID-19 vaccine by September 27, 2021, and staff of diagnostic and treatment centers, hospices, home care and adult care facilities to receive the first dose of a COVID-19 vaccine by October 7, 2021; and

**WHEREAS,** on August 31, 2021, Mayor de Blasio issued Executive Order No. 78, requiring that, beginning September 13, 2021, City employees and covered employees of City contractors be vaccinated against COVID-19 or submit on a weekly basis proof of a negative COVID-19 PCR diagnostic test; and

**WHEREAS,** on September 9, 2021 President Biden issued an Executive Order stating that "It is essential that Federal employees take all available steps to protect themselves and avoid spreading COVID-19 to their co-workers and members of the public," and ordering each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees, with exceptions only as required by law"; and

**WHEREAS,** on September 12, 2021, I issued an Order requiring that staff of early childhood programs or services provided under contract with the Department of Education or the Department of Youth and Community Development provide proof of COVID-19 vaccination; and

**WHEREAS,** Section 17-104 of the Administrative Code of the City of New York directs the Department to adopt prompt and effective measures to prevent the communication of infectious diseases such as COVID-19, and in accordance with Section 17-109(b), the Department may adopt vaccination measures to effectively prevent the spread of communicable diseases; and

**WHEREAS,** City employees and City contractors provide services to all New Yorkers that are critical to the health, safety, and well-being of City residents, and the City should take reasonable measures to reduce the transmission of COVID-19 when providing such services; and

**WHEREAS,** a system of vaccination for individuals providing City services and working in City offices will potentially save lives, protect public health, and promote public safety; and

**WHEREAS,** there is a staff shortage at Department of Corrections ("DOC") facilities, and in consideration of potential effects on the health and safety of inmates in such facilities, and of the benefit to public health and employee health of a fully vaccinated correctional staff, it is necessary that the requirements of this Order for DOC uniformed personnel not assigned to posts in healthcare settings be delayed; and

**WHEREAS,** pursuant to Section 3.01(d) of the Health Code, I am authorized to issue orders and take actions that I deem necessary for the health and safety of the City and its residents when urgent public health action is necessary to protect the public health against an existing threat and a public health emergency has been declared pursuant to such Section;

**NOW THEREFORE** I, Dave A. Chokshi, MD, MSc, Commissioner of Health and Mental Hygiene, finding that a public health emergency within New York City continues, and that it is

necessary for the health and safety of the City and its residents, do hereby exercise the power of the Board of Health to prevent, mitigate, control and abate the current emergency, and order that:

1. My Order of August 10, 2021, relating to a vaccination or testing requirement for staff in City operated or contracted residential and congregate settings, shall be **RESCINDED** as of November 1, 2021. Such staff are subject to the requirements of this Order.

2. No later than 5pm on October 29, 2021, all City employees, except those employees described in Paragraph 5, must provide proof to the agency or office where they work that:

   a. they have been fully vaccinated against COVID-19; or
   b. they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or
   c. they have received the first dose of a two-dose COVID-19 vaccine

   Any employee who received only the first dose of a two-dose vaccine at the time they provided the proof described in this Paragraph shall, within 45 days after receipt of the first dose, provide proof that they have received the second dose of vaccine.

3. Any City employee who has not provided the proof described in Paragraph 2 must be excluded from the premises at which they work beginning on November 1, 2021.

4. No later than 5pm on October 29, 2021, City agencies that contract for human services contracts must take all necessary actions to require that those human services contractors require their covered employees to provide proof that:

   a. they have been fully vaccinated against COVID-19; or
   b. they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or
   c. they have received the first dose of a two-dose COVID-19 vaccine.

   Any covered employee of a human service contractor who received only the first dose of a two-dose vaccine at the time they provided the proof described in this Paragraph shall, within 45 days after receipt of the first dose, provide proof that they have received the second dose of vaccine.

   All such contractors shall submit a certification to their contracting agency confirming that they are requiring their covered employees to provide such proof. If contractors are non-compliant, the contracting City agencies may exercise any rights they may have under their contract.

5. Notwithstanding Paragraphs 3 and 4 of this Order, until November 30, 2021, the provisions of this Order shall not apply to uniformed Department of Corrections ("DOC") employees, including staff serving in Warden and Chief titles, unless such uniformed employee is assigned for any time to any of the following locations: Bellevue Hospital; Elmhurst Hospital; the DOC

infirmary in North Infirmary Command; the DOC West Facility; or any clinic staffed by Correctional Health Services.

Uniformed employees not assigned to such locations, to whom this Order does not apply until November 30, 2021, must, until such date, either:

   a. Provide DOC with proof that:
      i.   they have been fully vaccinated against COVID-19; or
      ii.  they have received a single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or
      iii. they have received the first dose of a two-dose COVID-19 vaccine, provided that they must additionally provide proof that they have received the second dose of vaccine within 45 days after receipt of the first dose; or

   b. On a weekly basis until the employee submits the proof described in this Paragraph, provide DOC with proof of a negative COVID-19 PCR diagnostic test (not an antibody test).

6. For the purposes of this Order:

   "City employee" means a full- or part-time employee, intern, or volunteer of a New York City agency.

   "Contract" means a contract awarded by the City, and any subcontract under such a contract, for work: (i) to be performed within the City of New York; and (ii) where employees can be expected to physically interact with City employees or members of the public in the course of performing work under the contract.

   "Contractor" means a person or entity that has a City contract, including a subcontract as described in the definition of "contract."

   "Covered employee" means a person: (i) employed by a contractor or subcontractor holding a contract; (ii) whose salary is paid in whole or in part from funds provided under a City contract; and (iii) who performs any part of the work under the contract within the City of New York. However, a person whose work under the contract does not include physical interaction with City employees or members of the public shall not be deemed to be a covered employee.

   "Fully vaccinated" means at least two weeks have passed after an individual received a single dose of a COVID-19 vaccine that only requires one dose, or the second dose of a two-dose series of a COVID-19 vaccine as approved or authorized for use by the Food and Drug Administration or World Health Organization.

   "Human services contract" means social services contracted by an agency on behalf of third-party clients including but not limited to day care, foster care, home care, health or medical services, housing and shelter assistance, preventive services, youth services, the operation of

senior centers, employment training and assistance, vocational and educational programs, legal services and recreation programs.

7. Each City agency shall send each of its human services contractors notice that covered employees of such contractors must comply with the requirement of Paragraph 4 of this Order and request a response from each such contractor, as soon as possible, with regard to the contractor's intent to follow this Order.

8. Nothing in this Order shall be construed to prohibit any reasonable accommodation otherwise required by law.

9. This Order shall not apply to individuals who already are subject to another Order of the Commissioner of Health and Mental Hygiene, Board of Health, the Mayor, or a State or federal entity that requires them to provide proof of full vaccination and have been granted a reasonable accommodation to such requirement.

10. This Order shall not apply to per diem poll workers hired by the New York City Board of Elections to conduct the election scheduled for November 2, 2021.

11. Subject to the authority of the Board of Health to continue, rescind, alter or modify this Order pursuant to Section 3.01(d) of the Health Code, this Order shall be effective immediately and remain in effect until rescinded, except that Paragraph 5 of this Order will be deemed repealed on December 1, 2021.

Dated: October 20, 2021

Dave A. Chokshi, M.D., MSc
Commissioner

JA-256

<u>FAQ on New York City Employees Vaccine Mandate</u>

<u>Policy Details</u>

1. <u>What is the Vaccine Mandate?</u>

   Per <u>DOHMH Commissioner's Order to Require COVID-19 Vaccination for City Employees and Certain City Contractors</u>, the New York City Vaccine Mandate requires that all City employees must provide verification that they are vaccinated against COVID-19 by October 29, 2021 at 5 PM.

   City employees or covered employees of a human services contractor who provide documentation of having received one dose of any COVID-19 vaccine before 5 PM on October 29, 2021 will be considered fully vaccinated even though two weeks have not passed since their final dose, so long as, for employees who received a two-dose vaccine, they provide documentation that that they have received the second dose of that vaccine within 45 days after receipt of the first dose.

   "Full vaccinated" means at least two weeks have passed after a person received a single-dose of an FDA- or WHO- approved COVID-19 vaccine or the second dose of an FDA- or WHO- approved two-dose COVID-19 vaccine.

   Weekly testing in lieu of vaccination is only allowed if an employer has granted an employee a reasonable accommodation allowing for testing in lieu of vaccination.

   Beginning November 1, City staff who are not in compliance with the vaccine mandate and have not applied for a reasonable accommodation will be placed on Leave Without Pay (LWOP). An employee may arrive at work with proof of one dose of vaccine in order to be removed from LWOP and if applicable, must submit proof of second dose within 45 days of the first shot.

2. **Which employees must be vaccinated under the Vaccine Mandate?**

   **All City employees, including interns, aides, fellows and volunteers:** The DOHMH Order (10/20) requires that proof of vaccination must be submitted by October 29, 2021 at 5 PM.

   **DOC Employees:** Civilian employees and uniformed members assigned to healthcare settings are also immediately subject to the mandate and must submit proof of vaccination by 5 PM on October 29. Healthcare settings include: Bellevue Hospital; Elmhurst Hospital; the DOC infirmary in North Infirmary Command; the DOC West Facility; and/or any clinic staffed by Correctional Health Services.

   Other uniformed members at DOC, including Wardens and Chief titles, will be subject to the mandate effective December 1st, as the City works diligently to address the ongoing staffing situation at Rikers Island.

   **Employees, including subcontracted employees, of human service contracts:** The DOHMH Commissioner's Order requires individuals whose salary is paid in whole or in part from funds provided under a City human services contract to be vaccinated. Contractors must certify they have received proof of vaccination from all employees no later than November 15, 2021.

JA-257

**Certain Employees in Public Health and Educational Settings are already required to be vaccinated:**

- **Hospital Employees:** Per State Department of Health regulation 10 NYCRR 2.61, employees of any facility or institution included in the definition of "hospital" in section 2801 of the Public Health Law, including but not limited to general hospitals, nursing homes, and diagnostic and treatment centers must be fully vaccinated, and must have received at least the first dose by September 27, 2021.
- **Other Public Health Settings:** Per State Department of Health regulation 10 NYCRR 2.61, employees of (i) any agency established pursuant to Article 36 of the Public Health Law, including but not limited to certified home health agencies, long term home health care programs, acquired immune deficiency syndrome (AIDS) home care programs, licensed home care service agencies, and limited licensed home care service agencies; (ii) hospices as defined in section 4002 of the Public Health Law; and (iii) adult care facility under the regulatory authority of the State Department of Health, as set forth in Article 7 of the Social Services Law:  must be fully vaccinated, and must  have received at least the first dose by October 7, 2021.
- **All DOE employees:** DOHMH Commissioner's Order related to DOE Employees, Contractors, and Others (9/15/21—effective date amended 9/28/21). Proof of vaccination was required as of October 1, 2021. Weekly testing is not an alternative for these employees, except where allowed as a reasonable accommodation. This DOHMH Commissioner's Order also applies to:
  - City employees who work in DOE settings or DOE buildings
  - Staff of any Charter school serving students up to grade 12
  - Employees of contractors hired by the City, the DOE, or a charter school to work in DOE settings or DOE buildings.
  - In addition, on September 2, 2021, the State Commissioner of Health issued a Determination on COVID Testing pursuant to 10 NYCRR 2.62 that requires all unvaccinated school staff in P-12 schools to be tested at least once a week.  For DOE employees and others covered by the DOHMH Commissioner's Order, this will effectively apply only to those who have been excused from vaccination as a reasonable accommodation.
- **Childcare Providers:** DOHMH Commissioner Order (9/12/2021). Proof of vaccination was required as of September 27, 2021 for staff of early childhood programs or services provided under contract with DOE for Birth-to-5 and Head Start services for infants, toddlers, and preschoolers including 3-k and pre-k services as well as early education programs serving young children with disabilities, Early Learn, pre-school special education pursuant to section 4410 of the Education Law, or by family home-based family child care providers contracted through family child care networks, or programs under contract with DYCD for after school, Beacon, and Cornerstone.

3. **Which employees of covered contractors may continue to submit proof of vaccination OR submit weekly negative test results?**

Per Executive Order 83 and Executive Order 78, City contractors' and subcontractors' employees may continue to submit one-time proof of vaccination OR test weekly if

- Their salary is paid in whole or in part from funds provided under a City contract;
- Their work includes physical interaction with City employees or members of the public; and
- They are not otherwise covered by a vaccine mandate because they work in a covered healthcare, educational, or human services setting.

Contractors were required to certify they have received proof of full vaccination or weekly negative test from all employees and subcontractor employees by October 1, 2021.

**School bus drivers:** Although they are not covered by orders issued by the City, on September 2, 2021, the State Commissioner of Health issued a <u>Determination on COVID Testing</u> pursuant to 10 NYCRR 2.62 that requires all unvaccinated school bus drivers to be tested at least once a week.

4. **For the purpose of this vaccine mandate, how are you defining "contracted employee" and "City contractor"?**
   For the purposes of this policy, a contracted employee and City contractor are, respectively, an individual or entity whose salary or funding is paid, in whole or part, by a human services contract with a New York City agency to perform work within New York City.

   Other contractors not otherwise listed in Questions 2 or 3 must still adhere to the COVID-Safe Vaccine or testing requirement detailed in <u>Executive Order 83</u> and <u>Executive Order 78</u>.

   The City strongly urges organizations to adopt this policy as broadly as possible and cover all of their employees, as the City has done. This policy is intended to keep your employees and the clients they serve safe.

5. **Does the vaccine mandate apply to the clients served by the City or its contractors?**
   No. This policy is specific to City employees and City contractors including their staff, volunteers and interns. City contractors should integrate this policy into their own COVID-19 return to office and health and safety policies. Clients must wear face coverings at all times.

6. **Does the vaccine mandate cover interns?**
   Yes, interns, aides, and fellows are covered by this policy.  All agencies should update their policies to include this requirement.

7. **Does the vaccine mandate cover volunteers?**
   Yes, volunteers are covered by this policy. All agencies should update their volunteer policies to include this requirement.

8. **Does this mandate extend to subcontractors?**
   Yes, this policy extends to subcontractors including building security, food service employees, and other subcontractors.

9. **Do these contractor requirements apply to micropurchase vendors?**
   Yes, micropurchase vendors are subject to this Commissioner's Order, however due to the small size of their contract and how difficult it would be to track compliance for so many small and short-term vendors, they do not need to submit a certification and policy. Agencies should check such contactors for proof of vaccination or a negative test (if a reasonable accommodation) prior to their entry to a job site. For example, a photographer who comes to the office for half a day would need to show proof of full vaccination or a negative test.

10. **Will the City be providing on-site vaccination at City worksites?**
    Vaccination is widely available and convenient for all New Yorkers. The City will continue to bring mobile vaccination clinics to select worksites, including certain City worksites.

<u>Vaccination</u>

11. **If an employee, intern, or volunteer gets their first dose prior to when they are subject to this requirement will they be required to provide weekly test results?**

A City employee who provides documentation of having received one dose of any COVID-19 vaccine on or before October 29, 2021 at 5 PM will not be required to undergo weekly testing.

An employee who receives the first dose of any COVID vaccine after October 29, 2021 will be required to undergo weekly testing until they have submitted proof of full vaccination.

Regardless of date of vaccine, if the City employee received a two-dose vaccine, the employee must provide documentation that the second dose has been administered within 45 days of the first dose.

12. **Where can people be vaccinated?**
Vaccination is free and convenient across the five boroughs and in bordering counties. Over 95% of all NYC residents live within half a mile of a public vaccination site. Convenient vaccination sites can be found via https://www.nyc.gov/vaccinefinder or by calling 877-VAX-4-NYC. For anyone who lives within the five boroughs (including City employees and contractors' employees), the City is also making at-home vaccination free and available; call 877-VAX-4-NYC or visit https://www.nyc.gov/homevaccine to sign up to have a team member come to your home to vaccinate you and any other household members, with any of the three FDA-authorized vaccines you choose.

13. **Which vaccines count? What if the employee has been vaccinated with a non-FDA approved vaccine?**
Only FDA-authorized and WHO-approved vaccines will be accepted.[1] As of the date of this FAQ, FDA-authorized vaccines include the Pfizer, Moderna, and Johnson & Johnson vaccines.

It is possible that someone was vaccinated outside of the country with a non-FDA approved vaccine. Only vaccines listed for emergency use by the World Health Organization (WHO) are acceptable and the person needs to have received a complete vaccine series. The current list of vaccines authorized by the WHO for emergency use is here.

People who have started, but not completed, a full series of a vaccine that is approved by the WHO, but not by the FDA, should receive a complete vaccine series with a U.S. FDA-authorized vaccine.

Employees, interns and volunteers who have been vaccinated outside the U.S. may submit their vaccine record from the place where it was administered.

---

[1] Exception: clinical trial participants who received two doses of Novavax are considered fully vaccinated although not authorized by FDA or WHO.

JA-260

**14. What counts as proof of vaccination?**

Employees, interns, and volunteers may submit, using secure means, proof of vaccination directly to their own agency or contract organization. Employers should maintain a confidential record of the employees who have demonstrated proof of vaccination.

Proof must be:

- An official CDC card or other official immunization card bearing the employee's name and date(s) of vaccine administration.  The employer must see this document or a photograph of it;
- An Excelsior Pass issued by the State of New York; or
- The NYC COVID SAFE app that clearly displays an image of the CDC card or other official immunization card with the above noted requirements. The NYC COVID SAFE app can be downloaded for Apple or Android (or by searching "NYC COVID Safe" on Apple app store or Google Play store).

Proof of vaccination for vaccines administered outside the U.S. must be an official immunization record and will include all of the following:

- First name and last name
- Date of birth
- Vaccine product name (ex: Moderna)
- Lot number (note: lot number may not be included on all official cards)
- Date(s) administered
- Site where the vaccine was administered or person who administered the vaccine or the country where the vaccine was administered.

**15. How will City agencies use the proof of vaccination?**

Agencies will collect vaccination proof from City employees using secure means. This information will be used to identify employees who have not submitted proof of full vaccination and to compile a list of employees who have not submitted proof of vaccination and must wear a face covering in both shared and non-shared spaces and must submit weekly negative COVID-19 test results until their vaccine series is complete.

See information below under "Enforcement and Compliance" regarding consequences for failure to comply.

**16. What if an employee, intern, or volunteer is vaccinated, but lost their CDC vaccination card?**

Employees, interns, and volunteers who lost their CDC vaccination card should contact the medical provider where they got vaccinated to get an official record of vaccination. If an employee, intern or volunteer was vaccinated in New York City, they can request their immunization record through the DOHMH self-service portal My Vaccine Record.

**17. Can employees take time from their shift to get vaccinated?**

All employees are allowed to take up to four hours to get vaccinated during their workday. Employees who get a vaccine may take up to four hours on each of the days they receive a vaccination. Please see PSB 600-4 Temporary Citywide Policy for Vaccination of City Employees against SARS-CoV-2 for more information. In addition, all employees may be entitled to paid excused leave for any side effects experienced due to the vaccination. Please see Updated

JA-261

Guidance for City Agencies on Leave Policy Applicable During the Outbreak of Coronavirus Disease 2019 (COVID-19) for more information.

It is suggested that City contractors adopt the same or similar policy. The City will reimburse contractors for costs associated with providing time off to employees getting vaccinated.

18. **Will the City be offering excused time off to get a booster dose? Will there be additional benefits (additional comp time) for employees that receive a booster shot?**
Time off to get a booster shot is covered under PSB 600-4 Temporary Citywide Policy for Vaccination of City Employees against SARS-CoV-2, but additional compensatory time is not offered for the booster.

19. **Will employees, interns, and volunteers be expected to pay out of pocket for vaccine?**
No. Vaccination is free to all New Yorkers including City and contracted employees; the majority of City employees have chosen to protect themselves and their community by getting vaccinated.

20. **What incentives are available for vaccination?**
From October 20-29, 2021, employees will be eligible to receive $500 through payroll, in addition to a $100 gift card available at City operated vaccination sites, if they receive their first vaccine dose during that time period.

FISA-OPA will provide agencies with a new PMS pay event code to enter when proof of vaccination is provided by an employee to their agency for the period of October 20-29, 2021.

Please visit https://www1.nyc.gov/site/coronavirus/vaccines/vaccine-incentives.page for a full list of incentives offered for vaccination.

In addition, City employees are eligible to receive up to three hours of compensatory time under PSB 600-4 Temporary Citywide Policy for Vaccination of City Employees against SARS-CoV-2.

**Reasonable Accommodations**

21. **Will there be any medical or religious accommodations?**
Medical or religious accommodations will only be granted in limited circumstances. If the employee, volunteer, or intern has medical or religious concerns that prevent them from complying with the vaccine mandate, they should speak to their EEO officer regarding a potential reasonable accommodation. Any employee who is awaiting a reasonable accommodation determination from their agency must continue to submit a negative test result within every seven day period.

23. **On what basis can an employee apply for a reasonable accommodation if they have reason not to be vaccinated?**
Reasonable accommodations may be granted only for documented medical or religious reasons.

The NYC Department of Health has indicated that the *medical basis* for a *permanent* medical exemption includes:

**Page 6 of 14**

- Documented contraindication such that an employee cannot receive any FDA-authorized vaccines, with contraindications delineated in <u>CDC clinical considerations for COVID-19 vaccine</u>.
- Limited cases in which, despite seeking vaccination, an individual is unable to mount an immune response due to preexisting immune conditions.

The NYC Department of Health has indicated that the *medical basis* for a temporary medical exemption includes:

- An employee who is within the isolation period after COVID-19 infection
- An employee who is within 90 days of monoclonal antibody or convalescent plasma treatment of COVID-19
- Treatments for conditions as delineated in CDC clinical considerations, with the understanding that CDC guidance can be updated to modify considerations over time, and/or determined by a treating physician with a valid medical license responsible for immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g. stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination
- Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination

*Note:* The length of *temporary* medical exemption will be determined on a case-by-case basis and with consideration for provided medical documentation. An employee will be required to be vaccinated at the end of the temporary period.

A sincerely held *religious, moral or ethical belief may be a basis* for a religious accommodation. A request based solely on a personal, political, or philosophical preference does not qualify for a religious accommodation.

24. **What alternative to vaccination is allowed if an employee is granted a reasonable accommodation?**
For requests filed after October 27, 2021, the only allowable accommodation from vaccination without causing an undue hardship and/or disruption is submission of a weekly negative test result.

25. **Is there a deadline for a City employee apply for a reasonable accommodation from being vaccinated?**
Yes, there is a deadline to apply:

- Existing City employees must apply for a reasonable accommodation with their agency EEO officer for this vaccine requirement no later than <u>October 27, 2021</u> in order to avoid Leave without Pay (LWOP) on November 1, 2021. Employees who seek reasonable accommodations from their agencies after October 27, 2021 will be place on LWOP until the reasonable accommodation is decided, included any appeals.
- New hires must apply for a reasonable accommodation before the start date of their new position.

JA-263

26. **How should an employee apply for a reasonable accommodation from being vaccinated?**
An employee seeking a reasonable accommodation from vaccination should apply to their EEO Office (although some agencies designate a different entity to handle these requests). Any employee who requests a reasonable accommodation from their agency on or before October 27, 2021 and is awaiting a reasonable accommodation determination from their agency or an appeal decision must continue to submit a negative test result within every seven day period.

27. **Can an employee appeal the reasonable accommodation of their agency?**
Yes. An agency that denies a reasonable accommodation request must provide written information to the employee whose request has been denied on the appeals process, including a link to the City's online appeals request portal (to be distributed to APOs).

If an employee is denied a reasonable accommodation by their agency, they may appeal the decision **within 3 business days**.

An employee may submit an appeal via the online review request portal (to be distributed to EEOs and APOs), which will automatically notify their agency EEO Officer of the appeal. The request for review must include a reason for the appeal.  Upon notification of the appeal, the Agency EEO Officer will upload all records concerning the Agency determination of the reasonable accommodation request within **one business day.**  Supplemental material may be requested to make a determination on appeal.

An agency must issue a written determination.  If the accommodation is denied or the employee disagrees with the accommodation granted, the written determination must also include information about the appeals process.

Review of all appeals will be completed before November 25, 2021.

28. **What is required of an employee while awaiting the determination of their reasonable accommodation and/or reasonable accommodation appeal?**

An employee who requested a reasonable accommodation from their agency on or before October 27, 2021 and is awaiting a reasonable accommodation appeal determination must continue to submit a weekly negative test result within every seven day period, as previously required. Employees who seek reasonable accommodations from their agencies after October 27, 2021 will be place on Leave Without Pay (LWOP) until the reasonable accommodation is decided, included any appeals.

29. **What is required of an employee if their appeal is denied?**
If an employee's appeal is denied, they must submit proof of the first dose of a vaccination **within 3 business days**, and if required, of a second dose within 45 days thereafter. If an employee refuses to be vaccinated within this timeframe after an appeal is denied, they will be placed on Leave Without Pay.

Case 23-663, Document 49, 08/01/2023, 3549864, Page38 of 220

**Testing**

**30. Who must submit to testing?**
Employees who are awaiting a determination on a reasonable accommodation request submitted on or before October 27 or who were granted a reasonable accommodation will be required to submit to weekly testing.  An employee who receives the first dose of any COVID after October 29, 2021 will be required to undergo weekly testing until they have submitted proof of full vaccination.

All contractors that are not covered by a vaccine mandate must continue to comply with the COVID-Safe vaccine or testing requirement.

**31. Where can people find testing?**
If an employee is seeking testing, the City of New York offers free COVID-19 testing in convenient locations across the five boroughs and will continue to do so, but employees may go to their trusted medical professionals as well. There are hundreds of PCR testing locations in the five boroughs; the list can be found at http://www.nyc.gov/covidtest. If employees prefer to receive a test specifically at a City-sponsored site, that list can be found here: https://www.nychealthandhospitals.org/test_and_trace/testing.

**32. When must employees who have been granted a reasonable accommodation submit a weekly test?**
Beginning November 1, for employees with a reasonable accommodation to submit a weekly negative test instead of submitting proof of vaccination, for each day that an employee reports to work onsite, they must have had a negative COVID-19 PCR test taken within the preceding seven days. This test result, which must be submitted to HR, must be negative. An employee who has been tested within the preceding seven days but is still waiting for the result may report to work with a pending test result as long as they meet the criteria of the health screening, and provided that the test result is submitted to HR as soon as it becomes available.

Ordinarily, results should be submitted within two to three days of specimen collection and an agency may follow up with an employee who has not yet submitted results to ensure compliance.

**33. For employees, interns, and volunteers who have a reasonable accommodation to do weekly testing, which tests qualify?**
Only polymerase chain reaction (PCR) tests processed by medical professionals qualify. These tests usually take one-two days to process at a lab, but some PCR tests are rapid tests. Both rapid and non-rapid PCR tests can be used. An employee may request a reasonable accommodation for a different type of test.

**34. For employees, interns, and volunteers who have a reasonable accommodation to do weekly testing, do rapid tests qualify?**
Rapid PCR tests will qualify for this requirement.

**35. For employees, interns, and volunteers who have a reasonable accommodation to do weekly testing, do at-home tests qualify?**
At-home tests will not be accepted at this time.

36. **What happens if an employee, intern, or volunteer tests positive?**
An employee, intern or volunteer who tests positive must not report to work until they meet all the criteria of the health screening and all of these conditions are met:
    a. **It has been at least 10 days since their symptoms began or, if asymptomatic, since a positive test result;**
    b. **They have not had a fever for at least 24 hours without the use of a fever reducer; and**
    c. Other respiratory symptoms (cough, shortness of breath) have improved.

An employee must also notify HR if they develop symptoms of COVID-19 while in the office or if they test positive for COVID-19 and were in the office during their infectious period. HR will then activate the Rapid Response Team, as detailed in Managing the Office in the Age of COVID-19.

For information on the City's Leave Policy during COVID-19, please see: Updated Guidance for City Agencies on Leave Policy Applicable During the Outbreak of Coronavirus Disease 2019 (COVID-19).

37. **Can an employee who is not vaccinated, has received a reasonable accommodation, and has tested positive for COVID-19 be exempt from the weekly testing requirement?**
Per the NYC Department of Health, unvaccinated staff who test positive should not get tested again until at least 90 days after their initial positive test and will need to be exempt from weekly testing during that time. However, they should be strongly encouraged to get vaccinated.

Employees who are subject to the weekly testing requirement because they have been granted a Reasonable Accommodation should seek a modification of their Reasonable Accommodation to be exempt from testing in these circumstances, and must provide appropriate documentation. They should get tested during this time if they develop new symptoms that are consistent with COVID-19.

See DOHMH guidance: https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-testing-recommendations.pdf.

38. **What happens if an employee continues to test positive within three months of recovering from COVID-19?**
Employees who test positive within three months after recovering from the first COVID infection will not receive COVID-19 excused leave during that three-month period unless they have new COVID-19 symptoms.

39. **What happens if an employee is supposed to come in, but says their test results are pending? Do we track how many times someone does this?**
Employees who have been tested, but whose test results are pending should come to work as long as they meet the criteria of the health screening. They must provide proof of test collection while they await the result. Repeated delays in compliance should be reviewed by applicable HR staff, with disciplinary action taken, as necessary.

40. **Can City and contracted employees take time from their shift to get tested?**
City employees subject to weekly testing under an approved reasonable accommodation may be tested during their work hours, but some restrictions apply:
- Employees should work with their supervisors to schedule a time for testing.
- Employees may be required to get tested at the beginning or end of their shift.
- If testing is offered at an employee's place of work, they may not use work hours to be tested off-site.
- If testing is not onsite at the workplace, employees should get tested in a place close to their home or work.
- Employees will be required to document time taken to seek testing and will be required to seek the fastest option available.
- Testing time should be scheduled so that it does not have any detrimental impact on operations.

Contracted organizations may develop their own policies and procedures with regards to testing. However, no additional funding will be provided associated with time off for testing.

41. **Are employees required to be tested at an onsite location?**
No, employees may choose where to be tested, but if testing is offered at an employee's place of work, they may not use work hours to be tested off-site.

42. **May employees use overtime to get tested?**
No, City employees may not use overtime to get tested.

43. **Will tests at City sites be billed to employees' insurance (which the City pays)?**
For many of the tests conducted, employee insurance will be billed. At City-run sites, FEMA requires that the City attempt to bill for all tests in order to seek federal reimbursement for any costs not covered by insurance. For this reason, the City will attempt to bill for most tests performed by a City provider regardless of the fact that the City pays for the insurance coverage. The City does provide some testing without billing for it because the testing is funded by sources of federal funds that are not subject to FEMA rules and regulations.

44. **Who is responsible for paying for tests at non-City sites (to the extent it isn't covered)?**
Tests are widely available at no cost to individuals across dozens of City-sponsored test sites. Private providers may charge for testing or charge a co-pay and all New Yorkers are strongly encouraged to ask about associated costs before being tested. Most providers across the City will attempt to bill insurance for test collection.

**Face Coverings**

45. **Do all employees and visitors have to wear a face covering, even if fully vaccinated?**
Yes. Anyone in a shared indoor City workspace able to medically tolerate a face covering must wear a face covering that covers their mouth and nose at all times (except when eating or drinking). A shared indoor City workspace is a communal or open office setting in which individuals cannot be separated by a closed door.

JA-267

An employee who has provided proof of full vaccination may remove their face covering when in an unshared indoor City workspace.

Any City employees and contractors conducting City business outside, who are able to medically tolerate a face covering, must wear a face covering at all times (except when eating and drinking) when interacting with members of the public. See <u>Executive Order 79</u>.

Further, a face covering is required for all individuals (including those who are fully vaccinated) at all times when interacting with the public or present in a pre-kindergarten to twelfth grade school, public transit, homeless shelter, correctional facility, nursing home, or health care setting.

46. **What additional face covering requirements apply to employees, volunteers and interns who are not fully vaccinated?**
Employees, interns, and volunteers who have not provided proof of full vaccination must wear a face covering at all times, even when alone in a non-shared space, unless they have an approved reasonable accommodation.

Agency HR staff will generate a list of employees, volunteers, and interns required to wear a face covering in non-shared spaces because they have not submitted proof of vaccination.  The list will be securely shared with designated supervisors and other designated agency personnel who will conduct audits of face covering compliance. Agencies should proactively audit for compliance on a regular basis. In the compliance support role, designated agency staff must never inquire about an employee's medical condition; such inquiries may be a violation of federal law. Refer to the guidance issued by the City's Chief Privacy Officer on 7/30/21 for further information about handling individuals' confidential vaccination status and related information, or email <u>PrivacyOfficer@cityhall.nyc.gov</u>.

<u>**Enforcement and Compliance**</u>

47. **Do staff have to tell the City whether or not they are vaccinated?**
Yes. Vaccination is required for all City employees covered by <u>the DOHMH Order</u> as a term of employment.

48. **How will City agencies track compliance?**
Each agency will track compliance for their employees, interns, and volunteers. Agencies are responsible for verifying individual vaccination status of each employee, intern, and volunteer, and monitoring compliance with vaccine and face covering requirements, and where applicable, with weekly testing.

49. **Are there privacy concerns with handling employee vaccination information, documents, and COVID-19 test results?**
Employee vaccination information and COVID-19 test results are considered confidential medical information under the federal Americans with Disabilities Act and are also types of identifying information that are protected under the City's privacy law. This information must be kept private and secure and may only be shared with designated agency staff and City officials. Refer to guidance issued by the City's Chief Privacy Officer on July 30, 2021 for further information on handling this information, or email <u>PrivacyOfficer@cityhall.nyc.gov</u>.

JA-268

50. **What tools can an agency use to collect and store vaccination or testing proof?**
Agencies developing or utilizing a survey tool to collect proof of employee vaccination status or COVID-19 test results, because it is confidential medical information, must only use tools that have successfully completed the citywide application security review and have the appropriate controls to support the storage, transmission, and handling of information classified as "Restricted" information under the NYC Cyber Command Policies & Standards. If an agency procures a vendor to develop its survey tool, the contract should include NYC3 security provisions and be reviewed by the Chief Privacy Officer to ensure appropriate privacy protections are included. For further information, contact PrivacyOfficer@cityhall.nyc.gov or legal@cyber.nyc.gov.

51. **What is the penalty for non-compliance? Will non-compliant employees be subject to termination?**
Beginning November 1, City staff who are not in compliance with the vaccine mandate and have not applied for a reasonable accommodation will be placed on Leave Without Pay (LWOP). An employee may arrive at work with proof of one dose of vaccine in order to be removed from LWOP and if applicable, must submit proof of second dose within 45 days of the first shot. Employees who refuse to comply will be terminated in accordance with procedures required by the Civil Service Law or applicable collective bargaining agreement.

It is important for agencies to establish a system to ensure that no employee who has been notified of non-compliance and Leave Without Pay returns to the worksite until they have submitted required proof of compliance.

It is suggested that contracted organizations adopt a similar policy. If providers are non-compliant, contracting agencies will exercise any rights they may have under their contract.

52. **How long should an employee be on Leave Without Pay (LWOP) before termination proceedings begin?**
Absent any collective bargaining agreement providing for other procedures, employees should be placed on LWOP effective November 1 and may be subject to discipline or other adverse employment action. Further guidance will be forthcoming.

53. **How will the Vaccine Mandate be enforced for contracted organizations?**
Except for micropurchase vendors, all City contractors with covered contracts must submit a certification signed by the organization's Executive Director or equivalent that they are complying with the City's Vaccine Mandate by uploading it directly to their PASSPort vendor profile or sending it to their contracting agency if they do not have a PASSPort account. Organizations must also submit their updated internal policies that reflect the mandate.

The Certification of Vaccine Mandate should be uploaded to the Miscellaneous Documents section of the Documentation tab in your PASSPort vendor profile, under the label "Vaccine Mandate." Vendor Policies Establishing Vaccine Mandate should be uploaded to PASSPort with Executive Order 78 (/Executive Order 83) and Executive Order 79 policies under the label "Vendor Vaccine and Face Covering Policies"

If an agency does not manage contracts via PASSPort, it must independently collect contractor certifications and policies and monitor them in an ongoing manner.

**Page 13 of 14**

**JA-269**

Note: this certification is in addition to the certification that they are complying with Executive Order 78 (/Executive Order 83) and Executive Order 79, which requires face coverings for unvaccinated employees and compliance with the COVID-Safe vaccine or test requirement.

Contractors are subject to reviews for compliance. Like all other contract provisions, if providers are non-compliant, contracting agencies will exercise any rights they may have under the contract.

54. **In City agencies, do staff have to show proof of vaccination or testing multiple times a day every time someone comes in and out of the workplace?**
No. HR will be responsible for monitoring proof of vaccination, or weekly test compliance for those who have a reasonable accommodation.

55. **Does a test have to be within the previous seven days or in the same calendar week?**
The test must be within the previous seven days and does not need to be in the same calendar week.

56. **Will employees be required to use the City's NYC COVID Safe application?**
No. The NYC COVID Safe application should be on every phone issued by the City of New York, if an employee wishes to use it. However, employees may choose to provide one-time documentation of vaccination or provide weekly documentation of a test via any proof acceptable to the employer and consistent with guidance provided above.

**Where can I find...**
- Vaccination sites: www.nyc.gov/vaccinefinder
- Vaccination appointments: www.vax4nyc.nyc.gov and 877-VAX-4-NYC
- How to schedule an at home vaccine appointment: www.nyc.gov/homevaccine and 877-VAX-4-NYC
- A testing site: www.nyc.gov/covidtest
- A City-run testing site: www.nychealthandhospitals.org/test-and-trace/testing/
- A doctor or nurse to talk with about my vaccination concerns: call 311 and ask to talk to a clinician about COVID-19 vaccination
- Assistance for New Yorkers experiencing Long COVID: www.nyc.gov/aftercare
- CPO Privacy Guidance dated 7/30/21 contact PrivacyOfficer@cityhall.nyc.gov

**Vaccine Mandate Timeline:**
- **10/20-10/29:** City employees may receive $500 incentive via payroll to receive first vaccine dose
- **10/27:** Last day to submit reasonable accommodation request to avoid being placed on Leave Without Pay (LWOP) on 11/1/2021.
- **10/29 at 5 PM:** Deadline to submit proof of vaccination to avoid being placed on LWOP 11/1/21.
- **11/1:** Employees placed on LWOP who have not submitted proof of at least one dose of vaccine.
- **11/25:** Final determinations of appeals

**Applying for a Reasonable Accommodation from the COVID-19 Vaccine Mandate**

Per DOHMH Commissioner's Order to Require COVID-19 Vaccination for City Employees and Certain City Contractors, City employees are required to be vaccinated against COVID-19 by October 29, 2021 at 5 PM, or by their employment start date. Employees may apply for a Reasonable Accommodation to be exempt from this requirement.

Reasonable accommodations may be granted only for documented medical or religious reasons.

The New York City Department of Health has indicated that the *medical basis* for a *permanent* medical exemption includes:
- Documented contraindication such that an employee cannot receive any FDA-authorized vaccines, with contraindications delineated in CDC clinical considerations for COVID-19 vaccine.
- Limited cases in which, despite seeking vaccination, an individual is unable to mount an immune response due to preexisting immune conditions.

The New York City Department of Health has indicated that the *medical basis* for a *temporary* medical exemption includes:
- An employee who is within the isolation period after COVID-19 infection
- An employee who is within 90 days of monoclonal antibody or convalescent plasma treatment of COVID-19
- Treatments for conditions as delineated in CDC clinical considerations, with the understanding that CDC guidance can be updated to modify considerations over time, and/or determined by a treating physician with a valid medical license responsible for immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g. stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination.
- Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

*Note:* The length of *temporary* medical exemption will be determined on a case-by-case basis and with consideration for provided medical documentation. An employee will be required to be vaccinated at the end of the temporary period.

A sincerely held *religious, moral or ethical belief may be a basis* for a religious accommodation. A request based solely on a personal, political, or philosophical preference does not qualify for a religious accommodation.

**Deadline to apply:**
- Existing City employees who opt to file a reasonable accommodation request must apply with their agency EEO Officer for an exemption from this vaccine requirement no later than October 27, 2021 to avoid being placed on Leave Without Pay (LWOP) on November 1, 2021. Employees who seek reasonable accommodations from their agencies after October 27, 2021 will be placed on LWOP until the reasonable accommodation is decided, including any appeals.
- For reasonable accommodation requests filed on or before October 27, 2021, employees will be permitted to continue to submit weekly negative PCR test results while their accommodation request is under consideration or on appeal.

JA-271

- New hires must apply for a reasonable accommodation before the start date of their new position.
- The only allowable accommodation from the vaccination mandate that will not cause undue hardship and/or disruption is weekly testing and submission of negative PCR results.

**Appeals Process:**

An agency that denies a reasonable accommodation request must provide written information to the employee whose request has been denied and include a link to an City's online appeals request portal (to be distributed to EEO Officers and APOs).

If an employee is denied a reasonable accommodation by their agency, they may appeal the decision **within 3 business days.**

An employee may submit an appeal via the  online review request portal (to be distributed to EEO Officers and APOs), which will automatically notify their agency EEO Officer of the appeal. Agencies must also facilitate submission via paper form for any employee who does not have access to a computer. The request for review must include a reason for the appeal.  Upon notification of the appeal, the agency EEO Officer will upload all records concerning the agency determination of the reasonable accommodation request within **one business day.**  Additional supplemental material to make a determination may be requested from the employee, including a release to permit contact with the employee's medical provider.

Review of all appeals will be completed before November 25, 2021. A written determination will be provided to the employee and the Agency EEO Officer. There is no further appeals process.

Any employee who requests a reasonable accommodation from their agency on or before October 27, 2021 and is awaiting a reasonable accommodation determination from their agency or on any appeal must continue to submit a negative test result within every seven day period, as previously required.

If an employee's appeal is denied, they must submit proof of the first dose of a vaccination **within 3 business days**, and if required, of a second dose within 45 days thereafter. If an employee refuses to be vaccinated within this timeframe after an appeal is denied, they will be placed on Leave Without Pay immediately and may be subject to termination.

**Timeline:**
- **10/20-10/29:** City employees may receive $500 incentive via payroll to receive first vaccine dose
- **10/27:** Last day to submit reasonable accommodation request to avoid being placed on LWOP 11/1/2021.
- **10/29 at 5 PM:** Deadline to submit proof of vaccination to avoid being placed on LWOP 11/1/21.
- **11/1:** Employees placed on LWOP who have not submitted proof of at least one dose of vaccine.
- **11/25:** Final determinations of appeals

JA-272

JA-273

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JOHN GARLAND, *et al.*, on behalf of themselves
and all other similarly situated employees of the New          **INDEX NO. 21-cv-6586**
York City Fire Department,

                                                    Plaintiffs,


                        -against-


NEW   YORK   CITY   FIRE   DEPARTMENT,
DANIEL A. NIGRO, in his official and individual
capacities, JOHN DOE #1-10, in their official and
individual capacities; and JANE DOE #1-10 in their
official and individual capacities,

                                                    Defendants.
-----------------------------------------------------------------------X




**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION**




THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT ............................................................................... 1

RESPONSE TO THE FDNY'S ARGUMENTS ...................................................... 2

    A.   Plaintiffs Have Not Unreasonably Delayed Seeking Judicial Intervention ............................................................................................. 2

    B.   Plaintiffs' Seeking Of Accommodations Does Not Impact The FDNY's Constitutional Violations .................................................... 3

    C.   Agreement With DC37 Does Not Impact Any Of The Plaintiffs ....................... 4

    D.   Plaintiffs Will Amend The Complaint To Name The Proper Defendant ................................................................................................ 5

    E.   Plaintiffs' Standing ................................................................................. 5

    F.   Plaintiffs Can Meet The Standard For A Mandatory Injunction ....................... 5

    G.   Determination Of Fitness For Duty Requires A Medical Examination ........................................................................................... 8

    H.   Balance Of The Equities ......................................................................... 9

    I.   Injunction In Public Interest .................................................................. 9

CONCLUSION ........................................................................................................ 10

JA-275

# TABLE OF AUTHORITIES

**Cases**

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) .................................................. 6

*Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir 1984) ................................................................. 7

*Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir 2019) ........................................................... 3, 5

*Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019) *cert. denied*, *Waronker v Hempstead Union Free Sch. Dist.*, 140 S.Ct 2669 (2020)................................................................................................................. 3, 5

**Statutes**

N.Y.C. Charter § 487(a) ............................................................................................................ 1

New York City Administrative Code, at § 15-113 ........................................................................ 6

**Other Authorities**

https://www1.nyc.gov/office-of-the-mayor/news/078-000/executive-order-78 (visited November 29, 2021) ............................................................................................... 2

ii

JA-276

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiffs and all others similarly situated in this Action in further support of their Motion, on an emergency basis, for a Temporary Restraining Order and Preliminary Injunction, enjoining the Defendant NEW YORK CITY FIRE DEPARTMENT ("FDNY") from violating the Plaintiffs' property interests and due process constitutional rights and in reply to the FDNY's opposition to the Motion.

The FDNY argues that New York City Charter Section 487(a) empowers the FDNY Commissioner to "have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire department and the premises and property in the custody thereof ..." N.Y.C. Charter § 487(a). Based upon this authority, the FDNY argues, the FDNY Commissioner "cannot permit unvaccinated employees, absent exemption or accommodation required by law, to perform their job functions when they lack fitness to do so under the [Commissioner of Health] Order." FDNY's Memorandum of Law, at page 23.

The Defendants' whole argument fails because only the FDNY Commissioner has "the sole and exclusive power" to manage, maintain, and direct the fire department, yet the FDNY does not produce a single document, an Order of the FDNY Commissioner, or any other writing in which the FDNY Commissioner, using his "sole and exclusive power" adopts the New York City Commissioner of Health's Mandate Order ("Order"). N.Y.C. Charter § 487(a).

What the Plaintiffs received was a Buckslip from the Chief of Operations dated October 21, 2021 adopting the Order. *See,* **Exhibit 1,** a copy of the October 21, 2021 Buckslip. The Chief of Operations is not the FDNY Commissioner and there is no indication on the document that the FDNY Commissioner using his "sole and exclusive power" has exercised his authority to implement a vaccine mandate upon the Plaintiffs and all other similarly situated employees of the FDNY.

If the Commissioner issued an Order adopting a vaccine mandate, then if the Plaintiffs failed to comply with the Commissioner's Order, the failure to comply with the Order would be a

1

disciplinary matter and N.Y.C. Administrative Code § 15-113 would be triggered, entitling the Plaintiffs to due process rights.

But, the FDNY Commissioner has not exercised his authority and therefore, placing the Plaintiffs on leave without pay ("LWOP") is a violation of their due process rights and violates their right to receive pay because the Plaintiffs have not violated anything that directed them to do anything.

The FDNY in opposition to the Plaintiffs' Motion does not explain the authority to impose the mandate upon FDNY employees without the Commissioner acting in his "sole and exclusive" authority granted to him pursuant to the N.Y.C. Charter.[1]

Without the authority to impose the vaccine mandate upon FDNY employees, the Plaintiffs' constitutional rights have been violated and the Court should issue an injunction to prevent the Plaintiffs from suffering constitutional violations.

## RESPONSE TO THE FDNY'S ARGUMENTS

### A.    Plaintiffs Have Not Unreasonably Delayed Seeking Judicial Intervention

While the FDNY argues that the Plaintiffs waited four weeks to seek judicial relief, the FDNY's statement is a misrepresentation.  The FDNY mandate was announced on October 20, 2021 through a Buckslip.  *See,* **Exhibit 1.**  The Plaintiffs were given eleven (11) days to comply before they were placed on Leave Without Pay ("LWOP").  *See,* **Exhibit 1.**[2]

---

[1] Interestingly, Mayor Bill DeBlasio ("Mayor") issued Executive Order No. 78 that required all New York City employees to provide proof of vaccine or must provide weekly negative COVID-19 PCR diagnostic tests.  *See,* https://www1.nyc.gov/office-of-the-mayor/news/078-000/executive-order-78 (visited November 29, 2021).  This Executive Order, imposing the vaccine with a test option is not what is being imposed upon the Plaintiffs, contradicting the Mayor's Executive Order.  The Plaintiffs do not have a testing option.

[2] While the Buckslip came out on October 20, 2021, some of the Plaintiffs did not receive it until much later because they do not work every day.  The delayed receipt gave them limited time to submit the accommodation request, some days later during their first tour.  No extensions were given for those on official vacation leave or even medical leave. The Plaintiffs and all others similarly situated were given just seven days to complete a request for an accommodation. What was the rush?  Now that applications for accommodations have been submitted it is taking weeks for

The Plaintiffs did not suffer any harm until they received a docked paycheck on November 12, 2021. Prior to November 12, 2021, the Plaintiffs had received full pay. So, it was from November 12, 2021 to November 24, 2021, a period of 12 days between the loss of pay and the commencement of this Action. This is not an unreasonable delay. If the Plaintiffs had sought judicial intervention before November 12, 2021, the FDNY would have argued that the Plaintiffs suffered no damage and therefore had no claim. The Plaintiffs waited until they were damaged before seeking judicial intervention.

The Plaintiffs have not unreasonably delayed seeking judicial intervention. They were only damaged less than two weeks before seeking judicial intervention. The FDNY's argument should be rejected.

### B.    Plaintiffs' Seeking Of Accommodations Does Not Impact The FDNY's Constitutional Violations

The FDNY argues that almost all of the Plaintiffs have sought accommodations for the vaccine mandate.[3] The fact that while the accommodation requested are being considered the Plaintiffs are not receiving pay is a violation of their constitutional right to pay. *See, Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir 2019); *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019) *cert. denied, Waronker v Hempstead Union Free Sch. Dist.*, 140 S.Ct 2669 (2020).[4]

There are however many FDNY employees who are on pay while the accommodations are being considered. These FDNY employees are actually working without a vaccine. The only

---

determinations to be rendered, leaving some of the Plaintiffs without pay while the accommodations are being considered.

[3] The FDNY argues that most of the Plaintiffs have requested accommodations. There are apparently hundreds of FDNY employees who are unvaccinated, on payroll, working on fire trucks, but testing weekly while the accommodation requests are being reviewed. Since these are the underlying facts, how can the FDNY argue that the Plaintiffs should be terminated for not taking the vaccine when there is another option granted many other members of the FDNY – being on payroll and weekly testing.

[4] Apparently, there are approximately 900 unvaccinated FDNY employees who are working while awaiting an accommodation request. The 47 out of 48 Plaintiffs who have sought an accommodation are without pay and cannot work because they did not get their requests for accommodations in by the arbitrary deadline of October 27 at 5:00 pm.

3

difference is that the Plaintiffs did not meet an arbitrary deadline of seven days to file for an accommodation. There has been unequal treatment amongst those who applied for accommodations.

The Plaintiffs' rights are being violated.

**C.      Agreement With DC37 Does Not Impact Any Of The Plaintiffs**

As recognized by the FDNY, the Plaintiffs' unions have not accepted the mandate. The union representing the fire fighters has sought judicial intervention to challenge the mandate. The union representing the fire officers have also challenged the mandate.

While DC37 has entered into an agreement with New York City regarding the COVID-19 vaccine mandate, it is our understanding that the component of the union that represents the Emergency Medical Service employees has not adopted the broader DC37 agreement with New York City.

While the FDNY references the DC37 agreement, most of the Plaintiffs are either fire fighters or officers and their unions have not entered into any agreement with New York City regarding to the COVID-19 mandate and have actually challenged it in Court.

Accordingly, unlike the United Federation of Teachers ("UFT") who purportedly bargained away their members' rights, the fire fighters' union and the uniformed officers' union have not entered into any agreement with the FDNY regarding the COVID-19 vaccine mandate.

The FDNY's reliance on an agreement with the Plaintiffs' unions is misplaced.

JA-280

**D.    Plaintiffs Will Amend The Complaint To Name The Proper Defendant**

The FDNY argues that the Plaintiffs' failure to name the City of New York as a defendant is a defect in the pleading.  The Plaintiffs will file an Amended Complaint naming the City as a defendant.

The FDNY does not argue that the City is prejudiced in any way by naming the FDNY instead of the City as a defendant.  Since there is no prejudice and the City would be represented by the same attorneys whether it was named instead of the FDNY, the Court should give the Plaintiffs an opportunity to re-plead the Complaint to name the City.

**E.    Plaintiffs' Standing**

The FDNY argues that because it entered into an agreement with DC37, the Plaintiffs lack standing.  However, most of the Plaintiffs are either fire fighters or uniformed officers whose unions did not enter into an agreement with the City regarding their members' COVID-19 vaccine mandate compliance.

The stranding issue is a red-herring argument designed to obfuscate the issues.

**F.    Plaintiffs Can Meet The Standard For A Mandatory Injunction**

The FDNY has violated the Plaintiffs' constitutional rights to due process.

First, the Plaintiffs have a property interest in their pay. *See, Tooly v. Schwaller*, 919 F.3d at 173.  The FDNY does not even address under what authority the FDNY can violate the Plaintiffs' property right in the Plaintiffs' pay without providing any due process. *See, Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 793.

Second, the Plaintiffs do not address how the Plaintiffs, tenured public employees can be terminated without due process. "The tenured public employee is entitled to oral or written notice

5

of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

The FDNY has violated the Plaintiffs' constitutional rights to due process by suspending them from their FDNY job without any charges or an opportunity for a hearing.

The FDNY argues that it is enforcing the Order. If this is true, then the enforcement of the Order triggers New York City Administrative Code, at § 15-113.

The New York City Administrative Code provides that if an officer or member of the uniformed force is convicted of violating the rules or disobeying an order, the Commissioner shall have the power to remove or otherwise discipline the employee. *See,* New York City Administrative Code, at § 15-113.

Before discipline can be imposed

> [o]fficers and members of the uniformed force shall be removable only after written charges shall have been preferred against them, and after the charges shall have been publicly examined into, upon such reasonable notice of not less than forty-eight hours to the person charged, and in such manner of examination as the rules and regulations of the commissioner may prescribe. The examination into such charges and trial shall be conducted by the commissioner, a deputy commissioner or other person designated by the commissioner in writing for that purpose; but no decision shall be final or be enforced until approved by the commissioner.

N.Y.C. Administrative Code § 15-113.

Assuming that the Order from the Commissioner of Health is adopted by the FDNY Commissioner, then the only way an officer or member of the uniformed force can be disciplined for not following the Order is through the due process procedure in N.Y. City Administrative Code § 15-113.

6

Since the FDNY has failed to comply with N.Y.C. Administrative Code § 15-113, thereby violating the Plaintiffs' constitutional right to due process, a mandatory injunction should issue to require the FDNY to comply with the due process procedure before disciplining the Plaintiffs and all others similarly situated.

The FDNY argues that "by virtue of Plaintiffs' unwillingness to comply with the COH Order, they are simply no longer fit and/or qualified to continue their public employment with the City." **Docket No. 14**, at page 22.

This argument fails because the mandate is an order and before an officer or uniformed member of the FDNY can be discharged for not following an order, the FDNY must comply with Administrative Code § 15-113.

The language of the Administrative Code is clear. It uses the word "order", the same word the FDNY uses to explain why the Plaintiffs are suspended without pay and are at risk of losing their jobs.

The Plaintiffs have a high likelihood of success on the merits because a purported violation of the Order triggers due process pursuant to N.Y. City Administrative Code § 15-113 by its terms.

With respect to irreparable harm, the FDNY has threatened that on December 1, 2021, the Plaintiffs will be terminated form their employment for failing to comply with an Order to become vaccinated. The FDNY does not address the fact that the Plaintiffs' due process rights and property interest right in their pay has been violated.

"When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary. *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir 1984) (internal quotation marks omitted).

JA-283

The FDNY fails to recognize or acknowledge that the FDNY is depriving the Plaintiffs of their constitutional rights to due process and their property interest in their pay. The deprivation of their constitutional rights is the irreparable necessary for the Court to act to protect those rights.

The FDNY has failed to comply with the Administrative Code section because no Plaintiff and no other similarly situated FDNY employee who has been suspended without pay because of their COVID-19 vaccination status, has received written charges nor has any Plaintiff or other similarly situated FDNY employee who has been suspended without pay because of their COVID-19 vaccination status been granted a hearing before they were suspended.

## G.   Determination Of Fitness For Duty Requires A Medical Examination

When an FDNY fire fighter is injured, before returning to work, he/she must be examined by an FDNY doctor in the Bureau of Health Services ("BHS"). There is a procedure to determine fitness for duty for an FDNY employee and failure to comply with the procedure is a further deprivation of the Plaintiffs' due process rights.

An examination by a doctor could reveal immunity to COVID-19 from a prior infection, meaning antibodies not linked to a vaccine could be present and therefore the FDNY employee is in fact fit for duty without the vaccine.

The whole point of the vaccine is not the needle in the arm, but antibodies and an ability to ward off infection.

The FDNY's intent to just terminate every FDNY employee who does not take a vaccine because there has been a declaration that those who do not take a shot are unfit for service ignores the due process rights of an FDNY employee. There is a long-standing procedure regarding determining fitness for duty. The COVID-19 vaccine is no different from any other injury or condition that an FDNY employee may have that prevents active employment. Why is the FDNY skipping over and ignoring the procedure?

8

The Plaintiffs' due process rights are too important to allow the FDNY to take a short cut.

**H.      Balance Of The Equities**

The Plaintiffs are heroes.  They are New York City's Bravest.

Providing the Plaintiffs with due process before terminating them is not too much to ask from the FDNY.

The FDNY intends to terminate the heroes when they fail to comply with the Order.  The failure to comply with the Order, triggers N.Y. City Administrative Code § 15-113.  While the FDNY wants to destroy the careers of the people who put their lives on the line for New Yorkers, this Court should balance out the proposed harsh treatment and grant the Plaintiffs their due process rights, due process rights that the FDNY wants to ignore in the name of "science".

The equities balance in favor of the Plaintiffs since their due process rights are being trampled upon by the FDNY.

**I.      Injunction In Public Interest**

Protecting and preserving public employees' constitutional due process rights is a public interest that should be protected.

A public employer should not be able to trample upon the public employees' constitutional rights to due process.

It is in the public interest to protect constitutional rights and against the public interest to permit an overreaching public employer to not follow its own Administrative Code.

9

JA-285

## CONCLUSION

For the reasons argued in this Reply Memorandum of Law and the papers submitted in support of the Motion, the Plaintiffs' Motion should be granted and the Plaintiffs' constitutional rights should be restored forthwith.

Dated:          Carle Place, New York
                November 30, 2021

                                    Respectfully submitted

                                    THE SCHER LAW FIRM, LLP

                                    Austin Graff, Esq.
                                    *Attorneys for the Plaintiffs*
                                    One Old Country Road, Suite 385
                                    Carle Place, New York 11514
                                    (516) 7460-5040

10

JA-286

JA-287

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
JOHN GARLAND, et al., on behalf of themselves and all
other similarly situated employees of the New
York City Fire Department,

Plaintiffs,

- against -

NEW YORK CITY FIRE DEPARTMENT, DANIEL A.
NIGRO, in his official and individual capacities, JOHN
DOE #1-10, in their official and individual capacities; and
JANE DOE #1-10 in their official and individual capacities,

Defendants.
------------------------------------------------------------------------ x

**SUPPLEMENTAL
DECLARATION OF
ANDREA O'CONNOR IN
OPPOSITION TO
PLAINTIFFS'
APPLICATION FOR A
PRELIMINARY
INJUNCTION**

No. 21 Civ 6586 (KAM)(CP)

      **ANDREA O'CONNOR** declares, pursuant to 28 U.S.C. § 1746 and subject to the penalties of perjury, that the following is true and correct:

      1.    I am an Assistant Corporation Counsel in the office of Georgia M. Pestana, Corporation Counsel of the City of New York, attorney for Defendants New York City Fire Department ("FDNY") and Daniel Nigro (collectively "FDNY Defendants") and as such I am familiar with the facts as set forth herein.

      2.    FDNY Defendants respectfully request that, despite being submitted after the deadline for FDNY Defendants' responsive papers, the Court consider this supplemental declaration and the affidavits annexed hereto in connection plaintiffs' application for a preliminary injunction.

      3.    Attached hereto as Exhibit "K" is the affidavit of Tricia Singh, dated November 30, 2021.

1

JA-288

   4. Also attached hereto as Exhibit "L" is the affidavit of Mario Manna, dated

November 30, 2021.

Dated:   New York, New York
      November 30, 2021

       **GEORGIA M. PESTANA**
       Corporation Counsel of the
        City of New York
       Attorney for Defendants FDNY and Nigro
       100 Church Street, Room 2-104
       New York, New York  10007
       (212) 356-4015
       aoconnor@law.nyc.gov

       By:     /s/
          Andrea O`Connor
          Assistant Corporation Counsel

2

JA-289

# EXHIBIT K

Case 1:21-cv-06586-KAM-CLP   Document 20-1   Filed 11/30/21   Page 2 of 3 PageID #: 323

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
JOHN GARLAND, et al., on behalf of themselves and all
other similarly situated employees of the New
York City Fire Department,

                                          Plaintiffs,         No. 21 Civ 6586 (KAM)(CP)

                       - against -

NEW YORK CITY FIRE DEPARTMENT, DANIEL A.
NIGRO, in his official and individual capacities, JOHN
DOE #1-10, in their official and individual capacities; and
JANE DOE #1-10 in their official and individual capacities,

                                    Defendants.
-------------------------------------------------------------------- x
STATE OF NEW YORK    )
                         ) SS.:
COUNTY OF KINGS     )

**TRICIA SINGH** being duly sworn, deposes and says:

        1.  I am the Assistant Commissioner of the Bureau of Human Resources at the New York City Fire Department. I submit this affidavit in opposition to Plaintiffs' application for a preliminary injunction.  I am familiar with the facts set forth herein based on my personal knowledge as well as discussions with other FDNY employees and the review of FDNY records.

        2.  In their Complaint, plaintiffs allege that Plaintiffs Bottalico, Filocamo, O'Keefe, Johnson, Baudille, Penoro, Mastropietro, Vasquenz and DiTrani were placed on Leave Without Pay ("LWOP") as of November 1, 2021 but have all since been restored to payroll as of various dates. See Complaint at ¶ 65.

        3.  Subsequent to their placement on LWOP, Plaintiffs Bottalico, Filocamo, O'Keefe, Johnson, Baudille, Penoro, Mastropietro, Vasquenz and DiTrani each provided proof to FDNY that: (1) they have been fully vaccinated against COVID-19; or (2) they have received a

1

JA-291

single-dose COVID-19 vaccine, even if two weeks have not passed since they received the vaccine; or (3) they have received the first dose of a two-dose COVID-19 vaccine.

Dated:          New York, New York
                November 30, 2021

                                                          TRICIA SINGH

Sworn to before me this
30th day of November, 2021

NOTARY PUBLIC



2

JA-292

# EXHIBIT L

JA-293

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- x
JOHN GARLAND, et al., on behalf of themselves and all
other similarly situated employees of the New
York City Fire Department,

                                        Plaintiffs,          No. 21 Civ 6586 (KAM)(CP)

                - against -

NEW YORK CITY FIRE DEPARTMENT, DANIEL A.
NIGRO, in his official and individual capacities, JOHN
DOE #1-10, in their official and individual capacities; and
JANE DOE #1-10 in their official and individual capacities,

                                        Defendants.
-------------------------------------------------------------------- x

STATE OF NEW YORK      )
                       ) SS.:
COUNTY OF KINGS        )

**MARIO MANNA** being duly sworn, deposes and says:

      1.   I am the Director of Payroll and Timekeeping at the New York City Fire

Department. I submit this affidavit in opposition to Plaintiffs' application for a preliminary

injunction. I am familiar with the facts set forth herein based on my personal knowledge as well

as discussions with other FDNY employees and the review of FDNY records.

      2.   In their Complaint, plaintiffs allege that Plaintiffs Bottalico, Filocamo,

O'Keefe, Johnson, Baudille, Penoro, Mastropietro, Vasquenz and DiTrani were placed on Leave

Without Pay ("LWOP") as of November 1, 2021 but have all since been restored to payroll as of

various dates. See Complaint at ¶ 65.

      3.   A review of FDNY records confirms that Plaintiffs Bottalico, Filocamo,

O'Keefe, Johnson, Baudille, Penoro, Mastropietro, Vasquenz and DiTrani were placed on Leave

Without Pay as of November 1, 2021.

1

JA-294

4.   These plaintiffs were subsequently restored to active duty status and returned to payroll on the following dates:

a.   Vincent A. Bottalico; currently active, returned to payroll on November 12, 2021;

b.   Christopher Filocamo; currently active; returned to payroll on November 8, 2021;

c.   Dennis O'Keefe; currently active; returned to payroll on November 16, 2021;

d.   Joseph Johnson; currently active; returned to payroll on November 9, 2021;

e.   Daniel Baudille; currently active; returned to payroll on November 13, 2021;

f.   Guiseppe Robert Penoro; currently active; returned to payroll on November 16, 2021;

g.   Anthony Mastropietro; currently active; returned to payroll on November 15, 2021;

h.   Paul Vasquenz; currently active; returned to payroll on November 17, 2021; and

i.   Robert DiTrani; currently active; returned to payroll on November 18, 2021.

Dated:      New York, New York
            November 30, 2021

MARIO MANNA

Sworn to before me this
30th day of November, 2021

NOTARY PUBLIC

CAROL L. MORAN ESQ.
STATE
OF NEW YORK
NOTARY PUBLIC
Qualified in Queens County
02MO6341971
MY COMMISSION EXPIRES MAY 2, 202_

2

**JA-295**



THE CITY OF NEW YORK

## LAW DEPARTMENT

100 CHURCH STREET
NEW YORK, NY 10007

GEORGIA M. PESTANA
*Corporation Counsel*

ANDREA O'CONNOR
Assistant Corporation Counsel
phone: (212) 356-4015
e-mail: aoconnor@law.nyc.gov

November 30, 2021

**By ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Garland, et al. v. New York City Fire Department, et al.
Docket No. 21 Civ. 6586 (KAM)(CP)

Dear Judge Matsumoto:

I am an Assistant Corporation Counsel in the Office of Georgia M. Pestana, Corporation Counsel of the City of New York, attorney for Defendants New York City Fire Department and Daniel Nigro (collectively "FDNY Defendants") in the above-referenced action. I write to provide the Court and counsel with a corrected version of FDNY Defendants' Exhibit C. The correct DC 37 Agreement applicable to plaintiffs herein is annexed hereto. FDNY Defendants apologize for any confusion this error caused.

Respectfully Submitted,

_____/s/_____
Andrea O'Connor
Assistant Corporation Counsel

cc:       Counsel of Record (by ECF)

JA-296

# EXHIBIT C

JA-297

**Memorandum of Agreement**
**Between District Council 37 (the "Union") and**
**the City of New York (the "City")**

**WHEREAS;** The Commissioner of the Department of Health and Mental Hygiene has issued an order (the "Order") mandating that all city employees be vaccinated against COVID-19 no later than 5pm on October 29, 2021 which was ratified by the Board of Health on November 1, 2021; and

**WHEREAS;** the parties desire to satisfy their bargaining obligations with regard to the processes and rules surrounding the implementation of the Order and desire to reach agreement regarding a process for requests for exemptions to this mandate and the leave status of those who do not comply with the mandate;

**NOW THEREFORE,** the parties agree as follows:

**I.**     **Exemption and Accommodation Requests & Appeal Process**

Employees who are seeking an exemption from the vaccine mandate based on religious and/or medical reasons shall follow their normal agency procedure for requesting a reasonable accommodation.   The Agency shall make a determination based upon applicable law. An employee who is unvaccinated and who is denied an exemption may appeal within three (3) business days of receipt of the agency determination by selecting one of the two options listed below:

A.  Employees may choose to appeal to a central City panel consisting of DCAS, Law and either DOHMH for medical exemptions or the City Commission on Human Rights (CCHR) for religious exemptions, subject to the terms set forth below:

1.     The City panel will make appeal decisions on medical and religious requests as required by law;
2.     The City panel shall decide the appeals based on the documentation submitted to the Agency and there shall be no live hearing;
3.     If the appeal is granted, the Panel will determine the nature of the reasonable accommodation to be provided, based on the nature of the employee's request and input from the employing agency;
4.     Employees who submitted their initial reasonable accommodation request to their Agency by end of day[1] on November 2nd, will remain working and on payroll, subject to weekly COVID testing, pending the initial determination of the Agency and/or the determination of the employee's appeal by the City panel[2]. Employees who submit

[1] For purposes of this agreement, "end of day" shall mean 11:59pm.
[2] To the extent such employees filed after October 27th and were placed on leave without pay on November 1st, they will be returned to payroll effective the day after execution of this agreement and will remain working and on payroll, subject to weekly COVID testing, pending the initial determination of the Agency and/or the determination of the employee's appeal by the City panel.

1

their request after November 2nd but by end of day on November 5th will remain working and on payroll, subject to weekly COVID testing, after the request has been submitted and pending the initial determination of the Agency, but may be placed on Leave without Pay pending appeal. Employees who submit their request after November 5th will be placed on Leave without Pay starting November 1st and will remain on such leave pending the determination of the employee's request.

5. For those employees who have been placed on leave without pay status, if their appeal is granted by the City panel, the employee shall be granted excused leave with pay retroactive to the date they were placed on leave without pay.

B. As an alternative to the above Option 1 appeal process, an employee seeking a medical or religious exemption to the vaccine mandate may choose to appeal to Scheinman Arbitration and Mediation Services (SAMS), subject to the terms set forth below:

1. As a condition of filing an appeal to arbitration, employees shall be required to affirmatively waive their individual right to seek an accommodation through any other legal means or process or to bring a legal challenge to the process or the denial of an accommodation request, except the employee may bring an Article 75 appeal.

2. Employees who submitted their initial reasonable accommodation request to their Agency by end of day on November 2nd, will remain working and on payroll, subject to weekly COVID testing, pending the initial determination of the Agency and/or the determination of the employee's appeal by SAMS. Employees who submit their request after November 2nd but end of day on November 5th will remain working and on payroll, subject to weekly COVID testing, after the request has been submitted and pending the initial determination of the Agency, but may be placed on Leave without Pay pending appeal. Employees who submit their request after November 5th will be placed on Leave without Pay starting November 1st and will remain on such leave pending the determination of the employee's request.

3. If an employee's appeal is granted by SAMS, the employee shall be granted excused leave with pay retroactive to the date they were placed on leave without pay.

4. Appeal decisions issued by SAMS will be final and binding and subject only to an Article 75 appeal.

5. SAMS will make appeal decisions on medical requests based on the following medical reasons:

a. Full Medical Exemptions to the vaccine mandate shall only be considered where an individual has a documented contraindication such that an individual cannot receive any of the 3 authorized vaccines (Pfizer, Moderna, J&J)—with contraindications delineated in CDC clinical considerations for COVID-19 vaccination. Note that a prior immediate allergic reaction to one type of vaccine will be a precaution for the other type of vaccine, and may require consultation with an allergist.

b. Temporary Medical Exemptions to the vaccine mandate shall only be based on the following valid reasons to defer or delay COVID-19 vaccination for some period:

i. Within the isolation period after a COVID-19 infection;

2

Case 23-663, Document 49, 08/01/2023, 3549864, Page73 of 220

**JA-299**

    ii.   Within 90 days of monoclonal antibody treatment of COVID-19;

    iii.  Treatments for  conditions as delineated in CDC clinical considerations, with understanding that CDC guidance can be updated to include new considerations over time, and/or determined by a treating physician with a valid medical license responsible for the immunosuppressive therapy, including full and appropriate documentation that may warrant temporary medical exemption for some period of time because of active therapy or treatment (e.g., stem cell transplant, CAR T-cell therapy) that would temporarily interfere with the patient's ability to respond adequately to vaccination;

    iv.  Pericarditis or myocarditis not associated with COVID-19 vaccination or pericarditis or myocarditis associated with COVID-19 vaccination.

Length of temporary medical exemptions for these conditions may vary, and staff member must get vaccinated after that period unless satisfying the criteria for a Full Medical Exemption described above.

6.    SAMS will only grant appeals based on religious exemptions if it is in writing by a religious official (e.g., clergy). Requests shall be denied where the leader of the religious organization has spoken publicly in favor of the vaccine, where the documentation is readily available (e.g., from an online source), or where the objection is personal, political, or philosophical in nature.  Exemption requests shall be considered for recognized and established religious organizations (e.g., Christian Scientists).

7.    A panel of arbitrators identified by SAMS shall hear these appeals and may request that the employee or the agency submit additional documentation. The assigned arbitrator may also request information from City doctors as part of the review of the appeal documentation.  The assigned arbitrator, at his/her discretion, will either issue a decision on the appeal based on the documents submitted or hold an expedited (virtual) factual hearing. If the panel requests a factual hearing, the employee may elect to have a union representative present but neither party shall be required to be represented by an attorney at the hearing.  The City will be represented at the hearing by attorneys from the Office of Labor Relations (OLR) and/or the NYC Law Department.  The expedited hearing shall consist of brief opening statements, questions from the arbitrator, and brief closing statements. Cross examination shall not be permitted. Any documentation submitted at the Arbitrator's request must be provided to the agency at least one business day before the hearing or the issuance of the written decision without hearing.

8.    Appeal decisions shall be expedited without full Opinion.

9.    The City shall cover all arbitration costs from SAMS under this process. To the extent that the arbitrator requests additional medical documentation or information from the agency, or consultation with City doctors, arranging and paying for such documentation and/or consultation shall be the responsibility of the City.

JA-300

10.   An employee who is granted a medical or religious exemption or medical accommodation by SAMS shall be allowed to continue working and remain on payroll, subject to a weekly COVID testing requirement.   No other exemption or reasonable accommodation alternatives shall be permitted.

II.   **Leave**

A.  Any unvaccinated employee who has not requested an exemption pursuant to Section I, or who has requested an exemption which has been denied, may be placed by the agency on leave without pay effective November 1, 2021 through November 30, 2021 except as provided under the terms of Section I above.  Such leave may be unilaterally imposed by the agency and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

B.  Except as otherwise noted herein, this leave shall be treated consistent with other unpaid leaves within the City for all purposes.

C.  During such leave without pay, employees shall continue to be eligible for health benefits. As with other City leaves without pay, employees are prohibited from engaging in gainful employment during the leave period.

D.  Employees who become vaccinated while on such leave without pay and provide appropriate documentation to the agency prior to November 30, 2021 shall have a right of return to the same work location as soon as is practicable but in no case more than one week following notice and submission of documentation to the agency. With regard to employees who become vaccinated while on such leave without pay and provide appropriate documentation to the agency of a first dose between November 1, 2021 and November 5, 2021, the parties will meet and confer under the jurisdiction of Mediator Martin F. Scheinman to address how to deal with the leave of absence for the period of November 1 through the employee's vaccination date.

E.  Pregnancy/Parental Leave
   i.   Any soon-to-be birth mother who starts the third trimester of pregnancy on or before October 29, 2021 (e.g. has a due date no later than January 29, 2022), may utilize sick leave, annual leave, and/or compensatory time prior to the child's birth date, but not before October 29, 2021. Upon giving birth, they shall be eligible for paid family leave ("PFL") or FMLA in accordance with existing law and rules.
   ii.  No documentation shall be necessary for this use of accrued leave, other than a doctor's written assertion that the employee is in her third trimester as of October 29, 2021.
   iii. In the event that an eligible employee exhausts accrued leave prior to giving birth and has not submitted proof of vaccination, that employee shall be placed on a leave without pay, but with medical benefits at least until the birth of the child.
   iv.  If not otherwise covered by existing FMLA or leave eligibility, an employee who exhausts their leave before the birth of the child will be eligible to be in an unpaid leave with medical benefits for the duration of the maternity recovery period (i.e., six weeks after birth or eight weeks after a birth via C-Section).

4

      v.    All other eligibility and use rules regarding use of sick leave, annual leave, compensatory time, paid family leave, and FMLA remain in effect.

F.  The parties agree that if an employee has a pre-scheduled use of annual leave scheduled after November 1st and the employee is on leave without pay due to the vaccine mandate through that period, that the annual leave will be restored for future use if the employee becomes vaccinated and returns to work. For example, if an employee is on leave without pay from November 1 through November 20 prior to being vaccinated, and had pre-scheduled vacation for the week of November 8, the five days of annual leave will be restored to the employee's bank. If an employee has a leave request which was approved prior to October 20th and covers November 1st and any consecutive days thereafter, the employee may continue on leave until they return to the office but must ensure vaccination information is submitted before their first day back at work in order to avoid being placed on Leave without Pay.

## III.   <u>Separation</u>

A.  During the period of November 2, 2021 through November 16, 2021 any employee who is on leave without pay due to vaccination status may opt to separate from the agency.  In order to separate under this Section and receive the commensurate benefits, an employee must file a form created by the agency which includes a waiver of the employee's rights to challenge the employee's involuntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. If an employee opts to separate consistent with this Section, the employee shall be eligible to be reimbursed for unused sick leave on a one-for-one basis, up to 100 days to be paid following the employee's separation with documentation including the general waiver and release. Employees who elect this option shall be deemed to have resigned involuntarily effective on the date contained in the general waiver as determined by the agency, for non-disciplinary reasons.  An employee who separates under this Section shall continue to be eligible for health benefits through June 30, 2022, unless they have health insurance available from another source (e.g., a spouse's coverage or another job).

B.  During the period of November 17, 2021 through November 30, 2021, any employee who is on leave without pay due to vaccination status may alternately opt to extend the leave through June 30, 2022. In order to extend this leave pursuant to this Section and continue to receive the commensurate benefits, an employee must file a form created by the agency which includes a waiver of the employee's rights to challenge the employee's voluntary resignation, including, but not limited to, through a contractual or statutory disciplinary process. Employees who select this option shall continue to be eligible for health benefits through June 30, 2022.  Employees who comply with the health order and who seek to return from this leave, and so inform the agency before June 30, 2022, shall have a right to return to the same work location as soon as is practicable but in no case more than two weeks following notice to the agency.  Existing rules regarding notice of leave intention and rights to apply for other leaves still apply. Employees who have not returned by June 30, 2022 will be deemed to have voluntarily resigned.

C.  If an employee submits a reasonable accommodation and an appeal under Section I(A) or I(B) above is pending on or after November 10th, the applicable "opt-in" period under Section III(A) and (B) shall be one week after conclusion of the appeal, i.e. the employee must "opt-in" by end of day on the 5th business day after the appeal decision is issued.

D.  Beginning December 1, 2021, the agency will seek to unilaterally separate employees who have not opted into separation under Sections III(A) and III(B). Except for the express provisions contained herein, all parties retain all legal rights at all times relevant herein.

E.  Employees may not use accrued time to cover periods of leave without pay due to the vaccination mandate. However, if an employee files an application for retirement with the applicable retirement system, and signs a waiver established by the City to reflect that the employee is irrevocably resigning from employment, then the employee shall be permitted to exhaust applicable leave balances prior to retirement in accordance with ordinary agency practices.

IV.  The parties recognize that the above terms and conditions satisfy any bargaining obligation related to the impact and/or procedures related to implementation of the vaccination mandate. The undersigned Union agrees to withdraw from participation in Case No. BCB-4457-21 (INJ) and BCB-4458-21. The City acknowledges its obligation to bargain the impact and/or procedures related to implementation of the vaccination mandate, which have been addressed by the terms of this Agreement.

FOR THE CITY OF NEW YORK           FOR DISTRICT COUNCIL 37

BY: _____        BY: _____
RENEE CAMPION                      HENRY GARRIDO
Commissioner of Labor Relations    Executive Director

Dated: 11/4/, 2021

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOHN GARLAND, *et al.*, on behalf of themselves and
all other similarly situated employees of the New York
City Fire Department,

INDEX NO. 21-cv-6586

                                                    Plaintiffs,

                            -against-

NEW YORK CITY FIRE DEPARTMENT, DANIEL A.
NIGRO, in his official and individual capacities, JOHN
DOE #1-10, in their official and individual capacities;
and JANE DOE #1-10 in their official and individual
capacities,

                                                    Defendants.
-------------------------------------------------------------------X

# PLAINTIFFS' SUR-REPLY MEMORANDUM OF LAW REGARDING STANDING IN FURTHER SUPPORT OF THE PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

JA-304

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

ARGUMENT ................................................................................................................ 1

CONCLUSION ............................................................................................................. 5

**JA-305**

## TABLE OF AUTHORITIES

**Cases**

*14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009) ................................................................ 2

*Barrentine v. Arkansas-Best Frgt. Sys.*, 450 U.S. 728, 744 (1981) ............................................... 2

*Fernandez v. Windmill Distrib. Co.*, 159 F.Supp.3d 351, 361 (S.D.N.Y. 2016) ........................... 2

*Kane v. De Blasio*, 2021 U.S. App. LEXIS 35102, (2d Cir Nov. 28, 2021) ................................. 1

*Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-81 (1998) ................................................ 3

JA-306

## ARGUMENT

This Sur-Reply Memorandum of Law is submitted on behalf of the Plaintiffs, and all others similarly situated, in this Action to address the single issue permitted to be briefed following oral argument on Tuesday, November 30, 2021, which is whether the individual employees herein have standing to challenge the City's COVID 19 vaccination mandate to the extent it infringes upon their due process rights under the United States Constitution, including particularly, those two (2) employees among the named Plaintiffs in this Action who are covered by the DC 37 agreement with the Defendant, New York City.

In *Kane v. De Blasio*, 2021 U.S. App. LEXIS 35102, (2d Cir Nov. 28, 2021), the Court briefly addressed New York City's argument that the Plaintiffs, fifteen teachers and school administrators challenging the New York City Commissioner of Health and Mental Hygiene COVID-19 vaccination mandate and the implementation of the mandate on religious-freedom grounds.

In *Kane*, the City made the argument that the Plaintiffs in the *Kane* case lacked standing because the Plaintiffs were challenging the terms of the arbitration award that came from the collective bargaining process between the Plaintiffs' union and the City.

The Second Circuit in *Kane*, in footnote 15 stated:

> Nor do we address certain arguments made by Defendants. In a single sentence in their brief, Defendants suggest that Plaintiffs do not "have standing to launch a direct attack on the terms of awards arising out of arbitrations initiated by their own unions without first alleging a breach of the duty of fair representation." Defendants Br. 35 (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 260, 129 S. Ct. 1456, 173 L. Ed. 2d 398 (2009)). But Defendants have not identified any provision in the relevant collective bargaining agreements that "clearly and unmistakably" requires union members, including Plaintiffs, to arbitrate their constitutional claims. *Pyett*, 556 U.S. at 274; *see Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 360 (S.D.N.Y. 2016); *see also Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728,

1

> 744, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981); *Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 79-80, 119 S. Ct. 391, 142 L. Ed. 2d 361 (1998) ….

*Kane v De Blasio*, 2021 U.S. App. LEXIS 35102, at *22, n 15.

A review of the cases cited by the Second Circuit in *Kane* reveals that the same legal principal, namely that DC37's agreement with the City does not "clearly and unmistakably" require union members (the Plaintiffs in this Action) to arbitrate their constitutional claims alleged in this Action.

In *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009), the Court held "that a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law."

In *Fernandez v. Windmill Distrib. Co.*, 159 F.Supp.3d 351, 361 (S.D.N.Y. 2016), the Court held that the collective bargaining agreement in that case was

> broad and requires arbitration for "all disputes," but its antidiscrimination section does not reference any specific antidiscrimination statutes that would be subject to exclusive arbitration, nor does it specify whether arbitration is required for state or federal claims at all. In view of post-Pyett precedent in this circuit, the court holds that the arbitration and antidiscrimination clauses above do not mandate arbitration of Fernandez's statutory claims.

In *Barrentine v. Arkansas-Best Frgt. Sys.*, 450 U.S. 728, 744 (1981), the Court held that

> Moreover, even though a particular arbitrator may be competent to interpret and apply statutory law, he may not have the contractual authority to do so. An arbitrator's power is both derived from, and limited by, the collective-bargaining agreement. *Gardner-Denver*, 415 U.S., at 53. He "has no general authority to invoke public laws that conflict with the bargain between the parties." *Ibid.* His task is limited to construing the meaning of the collective-bargaining agreement so as to effectuate the collective intent of the parties.

2

Accordingly, "[if] an arbitral decision is based 'solely upon the arbitrator's view of the requirements of enacted legislation,' rather than on an interpretation of the collective-bargaining agreement, the arbitrator has 'exceeded the scope of the submission,' and the award will not be enforced." *Ibid.*, quoting *Steelworkers* v. *Enterprise Wheel & Car Corp.*, 363 U.S., at 597.

Because the arbitrator is required to effectuate the intent of the parties, rather than to enforce the statute, he may issue a ruling that is inimical to the public policies underlying the FLSA, thus depriving an employee of protected statutory rights.

In *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79-81 (1998), the Court held

[n]ot only is petitioner's statutory claim not subject to a presumption of arbitrability; we think any CBA requirement to arbitrate it must be particularly clear. In *Metropolitan Edison Co.* v. *NLRB*, 460 U.S. 693, 75 L. Ed. 2d 387, 103 S. Ct. 1467 (1983), we stated that a union could waive its officers' statutory right under § 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(3), to be free of antiunion discrimination, but we held that such a waiver must be clear and unmistakable. "We will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable." 460 U.S. at 708; see also *Livadas* v. *Bradshaw*, 512 U.S. 107, 125, 129 L. Ed. 2d 93, 114 S. Ct. 2068 (1994) (dictum); *Lingle* v. *Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409, n. 9, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988) (dictum); cf. *Mastro Plastics Corp.* v. *NLRB*, 350 U.S. 270, 283, 100 L. Ed. 309, 76 S. Ct. 349 (1956).

We think the same standard applicable to a union-negotiated waiver of employees' statutory right to a judicial forum for claims of employment discrimination. Although that is not a substantive right, see *Gilmer*, 500 U.S. at 26, and whether or not *Gardner-Denver*'s seemingly absolute prohibition of union waiver of employees' federal forum rights survives *Gilmer*, *Gardner-Denver* at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against less-than-explicit union waiver in a CBA. The CBA in this case does not meet that standard. Its arbitration clause is very general, providing for arbitration of "matters under dispute," App. 43a -- which could be understood to mean matters in dispute under the contract. And the remainder of the contract contains no explicit incorporation of

3

**JA-309**

statutory antidiscrimination requirements. (Indeed, it does not even contain, as did the CBAs in *Austin* and *Gardner-Denver*, its own specific antidiscrimination provision.) The Fourth Circuit relied upon the fact that the equivalently broad arbitration clause in *Gilmer* -- applying to "any dispute, claim or controversy" -- was held to embrace federal statutory claims. But *Gilmer* involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees -- and hence the "clear and unmistakable" standard was not applicable.

Nowhere in DC 37's agreement with the City does the union clearly and unmistakably waive the Plaintiffs'-union members' constitutional rights and statutory rights to procedural due process rights or property interest rights in their pay.

Without a clear and unmistakable waiver of a union members' constitutional rights and statutory rights in the Collective Bargaining Agreement between DC37 and New York City, or in the regent Memorandum of Agreement regarding the COVID-19 vaccination mandate between DC37 and New York City, the Plaintiffs are not barred from asserting their individual constitutional rights were violated, and thus they do have standing to protect their individual liberties in federal court despite the fact that DC 37 reached an agreement with the City.

*

*

**[the remainder of this page is intentionally left blank]**

*

*

4

JA-310

## CONCLUSION

For the reasons argued in this Reply Memorandum of Law and the papers submitted in support of the Motion, the Plaintiffs' Motion should be granted and the Plaintiffs' constitutional rights should be restored forthwith.

Dated:           Carle Place, New York
                November 30, 2021

Respectfully submitted

**THE SCHER LAW FIRM, LLP**
*Attorneys for the Plaintiffs*

/s/
Austin Graff, Esq.

*Jonathan L. Scher*
Jonathan L. Scher, Esq.

The Scher Law Firm, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 7460-5040

5

JA-311



THE CITY OF NEW YORK
## LAW DEPARTMENT
100 CHURCH STREET
NEW YORK, NY 10007

**GEORGIA M. PESTANA**
*Corporation Counsel*

Andrea O'Connor
*Assistant Corporation Counsel*
Phone: (212) 356-4015
Email: aoconnor@law.nyc.gov

December 2, 2021

**BY ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re:   Garland, et al. v. The New York City Fire Department, et al.,
        Docket No. 21 Civ. 6586 (KAM)(CP)

Dear Judge Matsumoto:

I am an Assistant Corporation Counsel in the office of Georgia M. Pestana, Corporation Counsel of the City of New York, attorney for defendants New York City Fire Department and Daniel Nigro (collectively "FDNY Defendants") in the above-referenced action. I write today in response to Plaintiffs' Sur-Reply Memorandum of Law Regarding Standing in Further Support of the Plaintiffs' Motion for a Temporary Restraining order and Preliminary Injunction, dated December 1, 2021 ("Plaintiffs' Sur-reply"). See Dkt. No. 22. Plaintiffs' Sur-reply reflects a fundamental misunderstanding of the standing argument set forth by FDNY Defendants.

Plaintiffs Loth and Santiago are members of DC 37. The City and DC 37 successfully negotiated an agreement with respect to the leave and separation procedures for those DC 37 members who do not comply with the COH Order. See O'Connor Decl. at C, Memorandum of Agreement District Council 37, City of New York, and the Board of Education of the City School District for the City of New York, dated October 3, 2021 ("DC 37 Agreement").

The DC 37 Agreement provides that any unvaccinated employee who has not requested an exemption to the COH Order, or whose request and appeal has been denied, may be placed on Leave Without Pay ("LWOP") effective November 1, 2021. During the period of November 2, 2021 through November 16, 2021, any employee on LWOP may opt to separate from City employment by executing a waiver of the employee's rights to challenge the involuntary resignation. Id. In exchange, the employee would be eligible to maintain health benefits through June 30, 2022 and would be eligible to be reimbursed for unused sick leave on a one-for-one basis, up to 100 days. Id. During the period of November 17 through November 30, 2021, any employee on LWOP may opt to extend their leave through June 30, 2022 and maintain

their health benefits through that date in exchange for a waiver of the employee's rights to challenge the voluntary resignation.  Finally, the DC 37 Agreement provides that, for those employees who do not have an accommodation in place or a request or appeal pending, beginning December 1, 2021, the City will seek to unilaterally separate employees who have opted for any of the above-described separation options.  Id.

Plaintiffs Loth and Santiago are challenging their placement on LWOP and, potentially, their separation from the City. However, their placement on LWOP and their projected separation was the result of negotiations between the City and DC 37.  As such, because these processes are part of the collective bargaining agreement ("CBA") between DC 37 and the City, Plaintiffs Loth and Santiago have "no individual rights under a collective bargaining agreement which [they] can enforce against [their] employer except through the union." Berlyn v. Board of Ed. of E. Meadow Union Free Sch. Dist., 435 N.Y.S.2d 793, 794 (2d Dep't 1981), aff'd 55 N.Y.2d 912 (1982).  The remedy for an individual is to pursue a duty of fair representation claim against his or her union.  See id. at 24-25.  See also 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 260 (2009) (holding that unions were free to negotiate a departure from federal statutory scheme on behalf of their members).

FDNY Defendants are **not** arguing that DC 37 entered into an agreement setting forth that all § 1983 claims, such as this one, must be arbitrated via contractual processes and therefore Plaintiffs' Loth and Santiago do not have standing to bring such a claim on any grounds.  Rather, FDNY Defendants' position is that Plaintiffs' Loth and Santiago do not have standing to challenge the agreement entered into by DC 37 and the City regarding the impact of the COH Order.

The cases relied upon by plaintiffs' in their sur-reply are inapposite to FDNY Defendants' standing argument because they deal with sweeping clauses that require all disputes between an employer and employee be arbitrated.  For example, at issue in Fernandez v. Windmill Distrib. Co., 159 F. Supp. 3d 351 (S.D.N.Y. 2016) was a clause in the CBA that contained broad language that required "all disputes" between an employee and the employer be arbitrated via the grievance process contained in the CBA.  The Court found that this type of broad clause which requires any and all unidentified disputes to proceed only through arbitration was unenforceable.  Id. at 361.

Similarly, in Wright v. Universal Mar. Serv. Corp., 525 U.S. 70 (1998), the Supreme Court examined a clause in a CBA which provided that the CBA "is intended to cover all matters affecting wages, hours, and other terms and conditions of employment."  The District Court had dismissed the plaintiff's claims under the Americans with Disabilities Act without prejudice because the plaintiff had failed to pursue the arbitration procedure provided by the CBA and the Fourth Circuit affirmed.  The Supreme Court disagreed and held that the broad arbitration clause did not waive a covered employee's rights to pursue federal discrimination claims in federal court.  See id. at 81.

Again, FDNY Defendants are not arguing that Plaintiffs Loth and Santiago lack standing to bring any and all § 1983 claims against the City as was the position of the employer in Wright and Fernandez.  Plaintiffs Loth and Santiago lack standing to bring a challenge to the

JA-313

leave and separation procedures set forth in the DC 37 Agreement.  Finally, as detailed in FDNY Defendants' opposition to plaintiffs' preliminary injunction motion, the COH Order created a lawful job requirement and plaintiffs' placement on LWOP and potential separation due to their non-compliance with the COH Order is not disciplinary in nature.  However, even if the Court were to accept that Plaintiffs Loth and Santiago's placement on LWOP and projected separation were disciplinary in nature, thereby implicating Civil Service Law § 75, Civil Service Law § 76(4) permits public employers and union to supplement, modify or replace the disciplinary procedures set forth in § 75 via a CBA.

Given the above, FDNY Defendants respectfully submit that Plaintiffs Loth and Santiago do not have standing to challenge the LWOP and separation procedures set forth in the DC 37 Agreement.

Respectfully submitted,

/s/

Andrea O'Connor
Assistant Corporation Counsel

cc:     All Counsel (via ECF)

JA-314

UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
-----------------------------------X
John GARLAND,
et al,

                    Plaintiffs,

          - against -                     **MEMORANDUM AND ORDER**
                                          21-cv-6586 (KAM)(CLP)

NEW YORK CITY FIRE DEPARTMENT, DANIEL A.
NIGRO, in his official and individual
capacities, JOHN DOE #1-10, in their
official and individual capacities; and
JANE DOE #1-10 in their official and
individual capacities,

                    Defendants.
-----------------------------------X

**MATSUMOTO, United States District Judge:**

     Named Plaintiffs are employees of the New York City Fire

Department ("FDNY")[1] who have not received at least one dose of a

COVID-19 vaccine.[2]  Plaintiffs filed this action on November 24,

2021, on their behalf and on behalf of those who are similarly

situated (together, "Plaintiffs").  (ECF No. 1, Compl.)  Defendants

are the FDNY, Daniel A. Nigro, the Commissioner of the FDNY, and

unnamed John and Jane Does ("Defendants").

     Defendants are responsible for implementing the order

issued by David A. Chokshi, the Commissioner of the New York City

---

[1] Named Plaintiffs include FDNY officers, firefighters, and employees of the
Emergency Medical Service ("EMT").  (Compl. ¶ 62.)
[2] Defendants' counsel represented to the Court at the November 30, 2021 show
cause hearing that 9 or 10 of the named Plaintiffs have been restored to pay
status upon providing proof of vaccination to the FDNY.  Plaintiffs' counsel is
directed to advise the Court whether these 9 or 10 Plaintiffs have indeed been
vaccinated and, if so, why their claims should not be dismissed as moot.

1

Department of Health and Mental Hygiene ("DOHMH"), dated October 20, 2021 (the "Order"), requiring that all City employees show documentation of having received one dose any COVID-19 vaccine by 5:00 P.M. on October 29, 2021.  (ECF No. 14, Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for TRO/PI ("Defs. Opp."), at 8.)  Pursuant to the Order, any City employee who failed to provide the requisite proof of vaccination by October 29, was "excluded from the premises at which they work beginning on November 1, 2021."  (ECF No. 15-1, Exhibit A to the Declaration of Andrea O'Connor ("O'Connor Decl.), at 3.)  The Order also provided that it did not "prohibit any reasonable accommodation otherwise required by law."  (*Id.* at 5.)

Plaintiffs assert four claims in their Complaint.  First, Plaintiffs claim that the Order violates their procedural due process rights because they have property interests in their continued employment and pay.  (Compl. ¶¶ 67–71.)  Second, they assert that the Order violates their statutory and contractual rights, as Plaintiffs are entitled to certain process prior to removal pursuant to N.Y.C. Admin. Code § 15-113, or the applicable collective bargaining agreement ("CBA").[3]  (Compl. ¶ 103; ECF No. 5-8, Memorandum of Law in Support of Plaintiffs' Motion for TRO/PI

---

[3] Though the Complaint alleges that Plaintiffs have a contractual right to charges and a hearing, Plaintiffs do not make the same argument in their memorandum of law.  (*See* Compl. ¶ 77.)  Therefore, the Court does not consider this allegation as part of its preliminary injunction analysis.

2

("Pls. Mem."), at 9-11.)  Third, Plaintiffs assert a § 1983 claim, arguing that Defendants, acting under color state of law, violated their procedural due process rights.  (Compl. ¶¶ 99-109.)  Fourth, Plaintiffs allege direct participation in, and aiding and abetting violations under 42 U.S.C. § 1983 against Defendant Nigro.  (Compl. ¶¶ 110-15.)

Plaintiffs seek a mandatory injunction restoring them to pay status and a prohibitory injunction against Defendants from disciplining Plaintiffs without first proffering charges and providing a pre-deprivation hearing, during which the person against whom the charges are brought can defend themselves before a neutral hearing officer.

For the reasons stated below, Plaintiffs' motion for injunctive relief is respectfully DENIED.

<u>BACKGROUND</u>

**I.    Factual Background**

On October 20, 2021, the Commissioner of the DOHMH issued the Order, requiring all New York City employees to show documentation of receiving at least one dose of any COVID-19 vaccine by 5:00 P.M. on October 29, 2021. (Defs. Opp. at 1.)  Pursuant to the Order, any City employee who failed to provide the requisite proof of vaccination was "excluded from the premises at which they work beginning on November 1, 2021."  (Exhibit A to O'Connor Decl. at 3.)

3

All FDNY personnel were informed of the Order via a notice sent on October 21, 2021 from John J. Hodgens, the Chief of Operations of the FDNY (*see* ECF No. 17-1, Exhibit 1 to Plaintiffs' Reply Memorandum of Law ("Pls. Reply"), at 4).[4]  The October 21 notice advised that any FDNY employee who wishes to seek an exemption from the vaccine mandate based on a sincerely held religious belief or medical contraindication must submit a request to the Equal Employment Office by October 27, 2021, and that employees who fail to comply with the Order and do not submit an exemption request by the October 27 deadline would be placed on leave without pay ("LWOP") status on November 1, 2021.

Plaintiffs filed the Complaint in this action on November 24, 2021, just shy of a month after the October 29, 2021, deadline to demonstrate compliance with the vaccine mandate in the Order. (Compl.)

## II.   Procedural Background

Plaintiffs filed their class action Complaint on November 24, 2021, on their behalf and on behalf of all persons similarly situated.  (Compl.)  That same day, Plaintiffs moved for a temporary

---

[4] Plaintiffs contend in their reply brief, and Plaintiffs' counsel argued at the show cause hearing, that although the FDNY provided official notice of the Order on October 21, 2021, "some of the Plaintiffs did not receive it until much later because they do not work every day."  (Pls. Reply at 2 n.1.)  However, upon further inquiry by the Court, counsel for Plaintiffs failed to proffer any evidence detailing how many Plaintiffs were affected by the alleged delay and the circumstances surrounding the delay.  The Court declines to find that there was a delay in notice of the Order based on counsel's mere say-so.

4

restraining order and a preliminary injunction. (ECF No. 5, Proposed Order to Show Cause.)  The Court, also on November 24, 2021, issued an Order to Show Cause, ordering: (1) personal service on all named Defendants to be made on or before 9:00 A.M., Friday, November 26, 2021; (2) Defendants to respond to the Order to Show Cause via ECF by Monday, November 29, 2021, at 5:00 P.M.; and (3) counsel for named Plaintiffs and Defendants to appear for a hearing before the Court on Tuesday, November 30, 2021, at 3:00 P.M. (ECF No. 9, Order to Show Cause.)

Named Defendants filed papers in opposition to Plaintiffs' motion for injunctive relief on November 29, 2021, including a memorandum of law, the Declaration of Andrea O'Connor, and attached exhibits.  (Defs. Opp.; ECF No. 15, O'Connor Decl.) Defendants noted that all Plaintiffs, except one, have exemption requests pending, and nine Plaintiffs received the vaccine and have been restored to payroll.  (Defs. Opp. at 4.)

Counsel for the parties appeared before the Court on November 30, 2021, for a show cause hearing, but they did not present witness testimony.  During the show cause hearing, Plaintiffs requested, and the Court granted, supplemental briefing on the issue of whether those Plaintiffs whose bargaining agent is District Council 37 ("DC 37"), have standing to challenge the agreement negotiated between the City and their union, DC 37, with respect to the leave and separation procedures for City employees

5

who did not comply with the Order ("DC 37 Agreement").[5]

## LEGAL STANDARD

A party seeking a preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

Where, as here, the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits." *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citation omitted) (internal quotation marks omitted). Here, Plaintiffs, having been on LWOP for over a month due to their failure to seek an exemption by October 27, 2021, or comply with the Order by October 29, seek a

---

[5] The DC 37 Agreement established, in relevant part: (1) the processes by which an employee may request an exemption or accommodation based on religious and/or medical grounds, and appeal an adverse determination on their request before an independent arbitration panel (while remaining on payroll and maintaining health benefits pending their request or appeal, as long as the request was made prior to 11:59 P.M. on October 27, 2021); (2) options to either voluntarily separate from service with certain compensation benefits, or elect extended LWOP status while maintaining health benefits until June 30, 2022; and (3) that as of December 1, 2021, the FDNY may seek to unilaterally separate employees who have not provided proof of vaccination, have not obtained or requested an accommodation, and have not opted for either separation option. (*See* ECF No. 21-1, Exhibit C to O'Connor Decl.)  The DC 37 Agreement further provides that employees who opt to extend their LWOP to June 30, 2022, may return to their positions upon demonstrating compliance with Order. (*Id.*)

mandatory injunction, asking the Court to alter the status quo by restoring them to FDNY payroll.[6]   Accordingly, Plaintiffs must meet the higher standard for a mandatory injunction by showing a "clear" or "substantial" likelihood of success on the merits.  *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995); *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).

## DISCUSSION[7]

### I.   Necessary Parties

As a threshold matter, Plaintiffs named as Defendants only the FDNY, Commissioner Nigro, and unnamed Jane and John Does. Plaintiffs thus have failed to name necessary parties whose joinder is required under Fed. R. Civ. P. 19, namely, the City of New York, the Uniformed Firefighters Association ("UFA"), the Uniformed Fire Officers Association ("UFOA"), and District Council 37 ("DC 37"), as explained *infra*.

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue

---

[6] Plaintiffs state in their reply that "[p]rior to November 12, 2021, the Plaintiffs had received full pay." (Pls. Reply at 3.)  Defendants' counsel represented to the Court during the show cause hearing that Plaintiffs were indeed placed on LWOP status starting November 1 and that Plaintiffs continued to receive pay until November 12 due to the 2-week lag in pay for City employees.
[7] Plaintiffs' only potential reference to their Section 1983 claims in their memorandum of law is as follows: "The Plaintiffs have a high likelihood of success on the merits of their 42 U.S.C. 1983 causes of action . . . and therefore should be granted the relief they request." (Pls. Mem. at 9.)  Plaintiffs do not cite to any case law in support of this argument, and the Court will not address these allegations as part of its preliminary injunction analysis.

7

or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). As such, the City of New York should have been named instead of the FDNY. Plaintiffs do not contest this point. (*See* Pls. Reply at 5 ("The Plaintiffs will file an Amended Complaint naming the City as a defendant.").)

In addition, given the allegation that the UFA and the UFOA have breached their duty of fair representation by allegedly refusing to process Plaintiffs' grievances, (*see* Pls. Mem. at 7), and to the extent Plaintiff members of DC 37 ("DC 37 Plaintiffs") are challenging the DC 37 Agreement, the UFA, the UFOA, and DC 37 are also necessary parties to this action. *See* Fed. R. C. P. 19 (a)(1)(B) ("A person . . . must be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest.").

## II.  Standing as to DC 37 Plaintiffs

On December 1, 2021, Plaintiffs filed a letter briefing the Court on the issue of whether DC 37 Plaintiffs have standing to challenge the DC 37 Agreement. (ECF No. 22, Plaintiffs' Sur-Reply ("Pls. Sur-Reply").) Defendants, in turn, submitted a letter in response on December 2, 2021.

Generally, a union member has no standing to enforce the collective bargaining agreement between their employer and union

against the employer directly. *See Cummings v. City of N.Y.*, No. 19-cv-7723(CM), 2020 WL 882335, at *14 (E.D.N.Y. Feb. 24, 2020) ("By becoming a union member, an individual employee 'has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union.'") (citation omitted).

Plaintiffs argue that in *Kane v. De Blasio*, No. 21-2678, 2021 WL 5549403 (2d Cir. Nov. 22, 2021), the Second Circuit "briefly addressed" a standing argument made by Defendants that the Circuit Court, in fact, declined to address. (Pls. Reply at 1.) Notably, the passage cited by Plaintiffs begins with, "[n]or do we address certain arguments made by Defendants." *Id.* at *8 n.15. Nevertheless, Plaintiffs misread the cited footnote from *Kane*. In *Kane*, the plaintiffs challenged, on substantive Free Exercise grounds, not on procedural due process grounds, an arbitration award that purported to prescribe the procedure for seeking a religious accommodation. *Id.* at *8. The plaintiffs in *Kane* did not challenge, as DC 37 Plaintiffs do here, procedures specifically negotiated and agreed to by their union. And indeed, DC 37 Plaintiffs do not challenge the procedures on substantive grounds. Therefore, *Kane* is inapposite.

Even assuming that Plaintiffs do have standing and can appropriately challenge the DC 37 Agreement, Plaintiffs have not met the requisite showing for preliminary injunction.

9

JA-323

### III. Preliminary Injunction

#### A. Likelihood of Success on the Merits

The Court finds that Plaintiffs failed to establish a "clear" or "substantial" likelihood of success on the merits on any of their claims. *See Tom Doherty Assocs., Inc.*, 60 F.3d at 33-34; *Doninger*, 527 F.3d at 47 (2d Cir. 2008).

A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). The Court does not disagree that Plaintiffs, as public employees under the FDNY, have protected property interests in their pay and continued employment. Having found that Plaintiffs have protected property interests, the Court next looks to whether the process they have been afforded is constitutionally adequate.

Plaintiffs argue that Plaintiffs' procedural due process rights were violated because the FDNY failed to proffer charges and provide a pre-deprivation hearing in accordance with the procedures set forth in New York City Administrative Code § 15-113. (*See* Pls. Mem. 7—8.) As an initial matter, to determine whether process is adequate, the Court looks to "[f]ederal constitutional standards rather than state statutes [to] define the requirements of

10

procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987). *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute.") (internal citation and quotation marks omitted); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires.") (internal quotation marks and citation omitted). Thus, at issue is not whether state procedural law was correctly followed or applied, but whether the process provided satisfies the requirements imposed by the Constitution.

In addition, the Court need not consider whether section 15-113 of the New York City Administrative Code was correctly followed because under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth section 15-113. *See, e.g.*, *O'Connor v. Bd. of Educ. of City Sch. Dist. of City of Niagara Falls*, 852 N.Y.S.2d 537, 538 (4th Dep't 2008) (holding that petitioners, who were terminated for failing to comply with the residency policy in their employment agreements,

11

were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 3020, 3020-a because "[t]hose sections of the Education Law are inapplicable inasmuch as they address issues relating to a teacher's competency and the applicable disciplinary procedures and penalties attendant thereto, while the residency policy 'is a consideration unrelated to job performance, misconduct or competency . . . a qualification of employment . . . [that respondent] may impose it if chooses to do so without running afoul of the Constitution or general laws of the State.") (citation omitted), *appeal denied*, 892 N.E.2d 396 (2008); *Beck-Nichols v. Bianco*, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency requirement defines eligibility for employment . . . unrelated to job performance, misconduct or competency" and thus concluding that the plaintiffs were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a); *Felix v. N.Y.C. Dept. of Citywide Admin. Servs.*, 3 N.Y.3d 498, 505 (2004) ("the act of failing to maintain one's residence within the municipality is separate and distinct from an act of misconduct by a municipal employee in the performance of his or her work. Failure to maintain residence renders an individual ineligible for continued municipal employment . . . while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures . . . .").[8]

---

[8] To the extent Defendants argue that the FDNY need not provide Plaintiffs with process that comports with the Constitution because vaccination is a qualification of employment for City employees, (*see* Defs. Opp. at 25 ("Thus,

Like the state statutory provisions that were considered in *O'Connor*, *Beck-Nichols*, and *Felix*, section 15-113 of the New York City Administrative Code is related to discipline of FDNY members based on their job performance, misconduct, or competency. Discipline of Plaintiffs for job performance, misconduct, or competency is not at issue here. *See* N.Y.C. Admin. Code § 15-114 ("The commissioner shall have power, in his or her discretion on conviction of a member of the force of any legal offense or neglect of duty, or violation of rules, or neglect or disobedience of orders or incapacity, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct, or conduct unbecoming an officer or member, or other breach of discipline, to punish the offending party . . . ."). Therefore, section 15-114 is not implicated when an FDNY officer is terminated based on his or her failure to satisfy a qualification of employment.

As Defendants correctly point out, the Second Circuit has held that "[v]accination is a condition of employment in the

---

it is clear that a public employer may lawfully, and summarily, separate employees from service without process due to the employee's legal ineligibility to maintain their employment.")), the Court need not reach this issue, as Plaintiffs were provided constitutionally adequate process, as discussed below. The Court, nevertheless, notes that the New York Court of Appeals, separate and apart from its finding that termination based on an employee's failure to satisfy a qualification of employment does not invoke disciplinary procedures set forth in state statutes, analyzed whether the process that was actually provided comported with state and federal due process requirements. *See, e.g.*, *Beck-Nichols*, 20 N.Y.3d at 558-59 (holding that the notice-and-hearing procedures provided to petitioners "easily comply with due process."); *Felix*, 3 N.Y.3d at 506 ("We next address the question whether the procedure itself comported with state and federal due process requirements.").

**JA-327**

healthcare field." *We The Patriots USA, Inc. v. Hochul*, Nos. 21-
2179, 2102566, 2021 WL 5121983, at *18 (2d Cir. 2021). Given the
state of public health emergency that our nation finds itself in
due to the Coronavirus, the more transmissible Delta and Omicron
variants, and the nature of Plaintiffs' job as firefighters and EMT
employees, interacting with members of the public on an emergency
basis, and living in close quarters during their shifts, the
Commissioner was within his powers to require COVID-19 vaccination
as a qualification of employment for FDNY employees.

Plaintiffs failed to satisfy this condition of
employment, rendering themselves no longer qualified to serve as
FDNY employees. *See We The Patriots USA, Inc.*, 2021 WL 5121983,
at *18 ("Although individuals who object to receiving the vaccines
on religious grounds have a hard choice to make, they do have a
choice. Vaccination is a condition of employment in the healthcare
field; the State is not forcibly vaccinating healthcare workers.").
Because termination based on a failure to satisfy a qualification
of employment does not trigger the proffer of charges and pre-
deprivation hearing requirements of section 15-113, Plaintiffs'
argument that Defendants violated their statutory rights is of no
avail.

Turning to the issue of whether Plaintiffs' due process
rights under the Constitution were violated, the Second Circuit has
"held on several occasions that there is no due process violation

14

where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008). *See also Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 71–72 (2d Cir. 1988) (affirming the district court's dismissal of the plaintiff's procedural due process and its finding that, notwithstanding the plaintiff's decision not to avail himself of the "the grievance procedures established in the collective bargaining agreement between his union and his employer," such procedures "provided whatever process [plaintiff] was due as a matter of federal law."). "The Due Process Clause is implicated only when plaintiffs can establish that the grievance procedures in a collective bargaining agreement are an inadequate remedy." *Adams*, 517 F.3d at 129.

Plaintiffs have not asserted any reasonable basis for the Court to find that the grievance and arbitration procedures set forth in their CBAs are inadequate.[9]  Plaintiffs had the option to challenge the enforcement of the Order through the grievance and

---

[9] Plaintiffs have failed to provide sufficient evidence in support of their allegation that their unions have refused to process their grievances.  For example, the Court does not read Exhibit 2 to Garland Affidavit (ECF No. 5-2), an email communication from Andrew Ansbro, the President of the UFA, to Plaintiff Garland, as stating that the UFA will not file a grievance on Garland's behalf. Rather, the email, which states that the placement of FDNY employees on LWOP status based on their vaccination status "is the basis for [the UFA's] lawsuits against the City" and that "[the UFA] will continue to fight" evinces the UFA's willingness to represent Plaintiffs' interests against the City.

JA-329

arbitration procedures provided in their CBAs, and their failure to do so "precludes consideration of the fairness of those proceedings in practice." *Narumanchi*, 850 F.2d at 72. Therefore, there is no due process violation for which relief may be granted where Plaintiffs failed to avail themselves of the grievance and arbitration procedures.

In any case, the Court finds that the process given to Plaintiffs satisfied the constitutional minimum.[10] Based on the record before the Court, the Court considers that both the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate. *See Loudermill*, 470 U.S. at 547 n.12 ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures."). Pre-deprivation processes "need not be elaborate," and the Constitution "mandates only that such process include, at a minimum, notice and the opportunity to respond." *See O'Connor*, 426 F.3d at 198 (citing *Loudermill*, 470 U.S. at 545). Here, Plaintiffs received ample pre-deprivation notice, via the October 2021 notice from Hodgens, the Chief of Operations of the FDNY, of: (1) the Order, (2) the requirement to submit proof of vaccination by October 29, 2021, (3)

_____

[10] Plaintiffs argue, and the Court agrees, that the deprivation of Plaintiffs' right to continued employment and pay occurred when Plaintiffs failed to timely apply for a religious or medical exemption and were placed on LWOP status. *See Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019) ("Under this Circuit's precedents, an employee who is placed on *unpaid* leave has been deprived of a protected property interest . . . ."). As such, the Court considers what process was given to Plaintiffs both prior and subsequent to their placement on LWOP status.

16

their ability to seek reasonable accommodation by October 27, 2021,[11] and (4) their placement on LWOP status if they failed to comply with the Order and did not submit accommodation request by the October 27 deadline.

An employee's right to be provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991). Pursuant to the Order, any FDNY employees who believed that the Order should not apply to them had the opportunity to seek a religious or medical accommodation, and they would continue to remain on pay status pending the decision on their request or appeal, so long as their accommodation requests were submitted prior to October 27, 2021.[12] Therefore, the Court finds that there was sufficient pre-deprivation notice and opportunity to respond.

Forty-seven of forty-eight named Plaintiffs have requested an accommodation, but because they failed to meet the October 27 deadline, they were placed on LWOP status pending the determination on their accommodation requests. (*See* Defs. Opp. at

---

[11] The Order itself also stated, in plain language, that it should not be "construed to prohibit any reasonable accommodation otherwise required by law." (Exhibit A to O'Connor Decl. at 5.)

[12] Defendants' counsel represented to the Court during the show cause hearing that any FDNY member who has a pending accommodation request that was submitted by the October 27 deadline remains on active duty and is subjected to weekly PCR testing.

17

JA-331

26–27.)   Plaintiffs, not having availed themselves of the pre-
deprivation opportunity to be heard, cannot now claim that they
were deprived of their constitutional right to due process.   *See*
*Capul v. City of N.Y.*, No. 19-cv-4313(KPF), 2020 WL 2748274, at *13
(S.D.N.Y. May 27, 2020) ("Plaintiffs are not entitled to circumvent
established due process protections and then claim they were never
afforded such protections."), *aff'd* 832 F. App'x. 766 (2d Cir.
2021).[13]

The Court also finds that the post-deprivation procedures
afforded by Defendants satisfy the constitutional minimum.   Any
employee who is denied a reasonable accommodation may file an appeal
and any supporting materials within three days.[14]   (ECF No. 15-10,
Declaration of Don Nguyen ¶ 12.)   If an appeal results in the grant
of an accommodation, the employee would be restored to payroll and
provided with back pay for the time they were on LWOP status.   (*Id.*
¶ 13.)   Alternatively, if an appeal is denied, the employee must
submit proof of the first dose of a COVID-19 vaccine within three
business days and, if required, of the second dose within 45 days

---

[13] Similarly, Plaintiff Taylor, who has not any sought any accommodation, cannot
choose not to pursue the available post-deprivation procedures, and then rely
on his choice to allege a lack of due process.  Whether or not Plaintiffs found
the process available to their liking has no bearing on whether that process is
constitutionally sound.
[14] Although Defendants' counsel represented to the Court at the show cause hearing
that Plaintiffs would have seven, not three, days to appeal, the Court, based
on its review of the documents in the record to date, including the "FAQ on New
York City Employees Vaccine Mandate" that was provided to FDNY employees along
with the October 21, 2021 notice from the FDNY Chief of Operations, (see ECF No.
17-1 at 10–26), assumes that the time allotted to seek any appeals is three
days.

thereafter.  (*Id.* ¶ 14.)  If the employee refuses to be vaccinated within the given timeframe after their appeal is denied, they would remain on LWOP status.  (*Id.*)

In the case of DC 37 Plaintiffs, they were provided the same notice that the other Plaintiffs had, by the October 21, 2021 notice from the Chief of Operations of the FDNY.  DC 37 Plaintiffs, unlike the other Plaintiffs, had the benefit of additional time to seek an accommodation beyond the October 27 deadline, as a result of the DC 37 Agreement.  (Exhibit C to O'Connor Decl.)  Pursuant to the DC 37 Agreement, executed on November 4, 2021, FDNY employees with DC 37 membership who submitted their initial reasonable accommodation requests by the end of the day, or 11:59 P.M., on November 2, remain on active duty and on payroll, subject to weekly COVID-19 testing, pending the initial determination of their requests or appeal.[15]  (*Id.*)  Those DC 37 Plaintiffs who submitted accommodation requests after November 2, but by the end of day, or 11:59 P.M. on November 5, remain on active duty and on payroll, subject to weekly COVID-19 testing, pending the initial determination of their requests, but may be placed on LWOP pending appeal.  (*Id.*)  DC 37 employees who submitted their request after November 5 were placed on LWOP starting November 1, and remain on

---

[15] To the extent such employees filed their accommodation requests after October 27 and were placed on LWOP on November 1, they were restored to active duty and payroll the day after execution of the DC 37 Agreement, or on November 5, and will remain working and on payroll, subject to weekly COVID-19 testing, pending the initial determination or appeal.  (*See* Exhibit C to O'Connor Decl.)

JA-333

LWOP pending the determination of their accommodation requests. (*Id.*)  The DC Agreement also notified its members that as of December 1, 2021, the FDNY may unliterally seek to separate employees who have not provided proof of vaccination, have not obtained or requested an accommodation, and have not opted for any separation option.  (*Id.*)

Finally, Plaintiffs, in addition to seeking an accommodation, had and continue to have, other avenues to challenge and address the actions taken against them as a result of the Order— the grievance and arbitration procedures set forth in their respective CBAs and an Article 78 proceeding in New York State Supreme Court.  The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy.  *See Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("an Article 78 proceeding is a perfectly adequate post-deprivation remedy.").  *See also Mobyed v. N.Y.C. Transit*, No. 07-cv-3292(ARR), 2011 WL 2847416, at *2 (E.D.N.Y. July 15, 2011) ("If a plaintiff chooses not to avail himself of the available post-deprivation procedures under a CBA, he cannot then rely on his choice to allege a lack of due process.").

## B. Irreparable Harm

The Court next considers to whether Plaintiffs have shown that they will likely suffer irreparable harm if not for the injunctive relief they seek.  At the outset, the Court cannot accept Plaintiffs' argument that where a deprivation of a constitutional

20

JA-334

right is alleged, no further showing of irreparable harm is necessary, though Plaintiffs are correct that "a *presumption* of irreparable injury . . . flows from a violation of constitutional rights." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) (emphasis added). Where the movant alleges but fails to make a strong showing of constitutional harm that cannot be compensated through monetary damages, granting a preliminary injunction is inappropriate. *See A.H. by and through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) ("In cases alleging constitutional injury, a strong showing of a constitutional deprivation that results in *noncompensable damages* ordinarily warrants a finding of irreparable harm.") (emphasis added). *See also KM Enters., Inc. v. McDonald*, No. 11-cv-5098(ADS), 2012 WL 540955, at *3 (E.D.N.Y. Feb. 16, 2012) ("[E]ven if a constitutional claim was asserted, merely asserting a constitutional injury is insufficient to automatically trigger a finding of irreparable harm. . . . In other words, the Plaintiff must still convincingly show that a violation carries noncompensable damages in addition to money damages."). The Second Circuit has noted that "[i]rreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

The Court does not dispute that a loss of income is a

JA-335

real, tangible harm. Even so, to demonstrate an entitlement to injunctive relief, Plaintiffs must identify a harm for which available legal remedies and monetary damages would be inadequate. As noted decades ago by the United States Supreme Court, the type of harm Plaintiffs allege, loss of employment and pay, are definitionally reparable. See *Sampson v. Murray*, 415 U.S. 61, 89-92 (1974) (holding that injuries generally associated with discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute "irreparable harm"). *See also Piercy v. Fed. Rsrv. Bank of N.Y.*, Nos. 02-cv-5005, 02-cv-9291(DC), 2003 WL 115230, at *3 (S.D.N.Y. Jan. 13, 2003) ("Plaintiffs wrongfully discharged from employment generally may be made whole by monetary damages and reinstatement after a full trial on the merits."). That loss of employment and pay constitute harm that may be remedied through money damages is demonstrated by the FDNY EEO Office's accommodation procedure, which provides that any FDNY employee granted a reasonable accommodation will be provided back pay for the time they were on LWOP status. As such, Plaintiffs have failed to make a sufficient showing of irreparable harm.

Additionally, the Court notes that Plaintiffs' claimed need for injunctive relief is belied by their own delay in seeking that relief. "[A]n unreasonable delay in seeking a preliminary injunction may preclude a finding of irreparable harm because 'the

22

failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief.'" *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-cv-407(NG), 2020 WL 5899879, at *9 (Feb. 28, 2020) (citing *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). *See also Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985) ("Lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief because it goes primarily to the issue of irreparable harm"). "Indeed, in this Circuit, preliminary injunctions have been denied on account of even relatively short delays." *Alcon Vision*, 2020 WL 5899879, at *9. Plaintiffs were given notice of the Commissioner's Order on October 21, 2021, requiring that all FDNY employees show proof of at least one dose of COVID-19 vaccination by 5 P.M. on October 29, 2021, and providing detailed information including procedures and dates for seeking exemptions. The Court declines to give credit to Plaintiffs' counsel's unsubstantiated representation that some Plaintiffs did not find out about the Order until days later (and counsel does not clarify exactly how many days later), because even if that were true, Plaintiffs still fail to explain why they waited until November 23 to seek relief.

Finally, as to the 47 Plaintiffs who have requested for an accommodation, the harm they allege is speculative, as it is not yet certain whether their requests will be granted and they will

23

JA-337

be restored to pay status. *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) ("[I]rreparable harm must be shown to be actual and imminent, not remote or speculative.")

    **C.   Balance of the Equities and D. The Public Interest**

The Court finds that both the balance of equities and the public interest in protecting the public health disfavor the injunctive relief requested by Plaintiffs. The Court also recognizes the heroic efforts that the FDNY has made throughout our City's history to protect the public. In balancing the equities and the public interest, the Court notes that available scientific and medical data support vaccinations as effective tools to prevent the spread of COVID-19 and the development and transmission of new variants. As Defendants note in their memorandum of law in opposition, according to the DOHMH, between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of hospitalizations, and 97.3% of COVID-19 deaths in New York City. (Defs. Opp. at 5–6.)

The Court is sympathetic to the hardships Plaintiffs have experienced. As noted above, loss of income and possible employment undoubtedly presents great challenges to the Plaintiffs, and these challenges remain so long as Plaintiffs continue to refuse to comply with the Order. The role of the Court, however, is to "balance the competing claims of injury on each party of either granting or

24

withholding the requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 9.  On balance, the equities at stake and the importance of safeguarding the public health and safety weigh in favor of denying the preliminary injunction.

Firefighters and EMT employees interact frequently with members of the public who are in a medical emergency or other vulnerable positions.  Based on the available scientific and medical evidence, there is a significant, if not compelling, governmental interest in preventing the transmission of the Coronavirus and variants to members of the public with whom FDNY employees come into contact with.  The FDNY thus requires its employees to receive the COVID-19 vaccine as an employment qualification during a rapidly changing global pandemic. Additionally, given the close proximity with which firefighters interact with one another while on duty, in their fire stations and fire houses, the City has a significant interest in ensuring that firefighters have the ability to carry out their task of protecting the public by preventing the transmission of the Coronavirus among its employees.

The Court recognizes the sacrifices firefighters and EMT employees have made to protect the public, especially over the course of the COVID-19 pandemic.  Our nation is indebted to their efforts and sacrifices.  However, the Court has the difficult task

JA-339

of balancing the needs of the vast majority against the concerns of a few, and here, the public health and safety concerns far outweigh the concerns of Plaintiffs.

All of us have been navigating unchartered waters over the course of the pandemic, including health and government officials, who have been tirelessly pursuing and implementing the best means to provide for the health and safety of all. Ultimately, "it is up to local government, 'not the courts, to balance the competing public health and business interests[,]'" and here, the New York City government and the FDNY have done so in issuing and enforcing the vaccination requirement for employees of the FDNY. *Maniscalco v. N.Y.C. Dep't of Educ.*, No. 21-cv-5055(BMC), 2021 WL 4344267, at *4 (E.D.N.Y. Sept. 23, 2021)

**CONCLUSION**

Accordingly, Plaintiffs' motion for a temporary restraining order and a preliminary injunction is DENIED.

**SO ORDERED.**

                                        _____
                                                /s/
                                        Kiyo A. Matsumoto
                                        United States District Judge


Dated:   Brooklyn, New York
         December 6, 2021

# THE SCHER LAW FIRM, LLP

### ONE OLD COUNTRY ROAD, SUITE 385
### CARLE PLACE NY 11514

MARTIN H SCHER*
JONATHAN L SCHER*'

AUSTIN R GRAFF*

TEL 516-746-5040

FAX 516-746-5043

W SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P BRINT
COUNSEL

ADAM GANG
COUNSEL

* Also Admitted in District of Columbia
' Also Admitted in New Jersey

ROBERT S NAYBERG
(1959-2012)

December 10, 2021

**By ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Garland, *et al.*, v. New York City Fire Department, *et al.*
Docket No. 21-CV-06586-KAM-CLP

Dear Judge Matsumoto:

This law firm represents all of the Plaintiffs, in the above-referenced Action.

In the Court's Electronic Order accompanying the Court's Memorandum and Order, the Court directed the Plaintiffs to show cause "why the claims of those Plaintiffs who have been restored to pay status should not be dismissed as moot." Electronic Order, December 6, 2021.

The Plaintiffs have two 42 U.S.C. § 1983 claims in this Action.

The Plaintiff's first claim is for procedural due process, requiring the Defendants to comply with the Plaintiffs' due process rights pursuant to N.Y.C. Administrative Code § 15-113 before terminating the Plaintiff's employment for not taking a COVID-19 vaccine. *See,* **ECF Docket No. 1,** at ¶¶ 103, 104, 106, 107, 108, and 109.

The Plaintiffs' second claim is for a violation of the Plaintiffs' property interest in their pay that cannot be taken away from them without due process. *See,* **ECF Docket No. 1,** at ¶¶ 102, 105, 106, 107, 108, and 109.

The fact that a number of Plaintiffs were restored to pay, but were, for a period of time, on an unpaid status and lost wages means that those Plaintiffs remain damaged and entitled to relief through this Action if the Court ultimately decides that the Plaintiffs should not have been placed on leave without pay, which would have been a violation of the Plaintiffs' constitutional rights.

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
Eastern District of New York
December 10, 2021
Page 2 of 2

While those Plaintiffs who have been restored to pay status no longer have a claim that they should not be terminated without due process, they still have a claim for any unpaid back pay that they did not receive while on an unpaid leave status.

Accordingly, all Plaintiffs should remain as parties to this Action and none of them should be dismissed as moot.

Thank you for your courtesies in this matter.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JOHN GARLAND, VINCENT A. BOTTALICO,
TIMOTHY A. HEATON, JOSEPH BEVILACQUA,
JOSEPH CICERO, JOSEPH COLUMBIA, ANDREW
COSTELLO, JAMES DANIEL DALY III, VINCENT
DEFONTE, KENNETH DEFOREST, SALVATORE
DEPAOLA, BRIAN DOYLE, NATHAN EVANS,
CHRISTOPHER FILOCAMO, KEVIN GARVEY,
CHARLES GUARNEIRI, DANIEL J. OSHEA,
MARGOT LOTH, MICHAEL LYNCH, DENNIS
O'KEEFFE, BRIAN PATRICK SMITH, KURT
PFLUMM, CHRISTOPHER RAIMONDI, PAUL
SCHWEIT, JOSEPH T. JOHNSON, DAVID BUTTON,
PAUL PARR, MARK SINCLAIR, DANIEL
BAUDILLE, JOHN DREHER, THOMAS OLSEN,
GIUSEPPE ROBERT PENORO, MATTHEW
CONNOR, NICHOLAS MULLIGAN, RANDALL
SANTANA, ANTHONY PERRONE, SCOTT
ETTINGER, ANTHONY MASTROPIETRO,
RASHAAD TAYLOR, ANTHONY RUGGIERO,
JOSEPH MURDOCCA, KEITH KLEIN, PAUL
VASQUENZ, MARK HENESY, RYAN K. HALL,
JUDE PIERRE, MICHELLE SANTIAGO, ROBERT
DITRANI, BRIAN T. DENZLER, MICHAEL
MCGOFF, OWEN FAY, JOSEPH M. PALMIERI,
STEPHEN INGUAGIATO, GEORGE J. MURPHY,
JOSEPH DEPAOLA, STEPHEN BUTTAFUCCO,
MICHAEL SAMOLIS, AINSLEY ATWELL, JOHN
COSTELLO, MATTHEW SINCLAIR, GLENN
CLAPP, MATT KOVAL, JOHN ARMORE, ROSARIO
CURTO, DANIEL STROH, DANIEL YOUNG,
FELICIA J. TSANG, KEVIN ERKMAN, JOHN
TWOMLEY, CRAIG LEAHY, TIM RIVICCI,
MICHAEL FADDA, ANTHONY C. CARDAZONE,
DAVID SUMMERFIELD, BRENDAN MCGEOUGH,
BRANDON PHILLIPS, CHRISTOPHER INFANTE,
BERNADETTE MEJIA, JARED DYCHKOWSKI,
THOMAS FEJES, JASON CHARLES, WILLIAM
JOHN SAEZ, PHILLIP J. DARCEY, RODNEY
COLON, SEAN FITZGERALD, ROBERT YULI, on
behalf of themselves and all other similarly situated
employees of the New York City Fire Department,

                           Plaintiffs,


-against-


NEW YORK CITY FIRE DEPARTMENT, DANIEL A.
NIGRO, in his official and individual capacities, CITY
OF NEW YORK, UNIFORMED FIRE OFFICERS

**INDEX NO. 21-cv-6586**

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

1

ASSOCIATION, LOCAL 854 INTERNATIONAL
ASSOCIATION OF FIREFIGHTERS, AFFILIATED
WITH THE AFL-CIO, UNIFORMED FIREFIGHTERS
ASSOCIATION OF GREATER NEW YORK,
DISTRICT COUNCIL 37, AFSCME AFL-CIO,
HENRY GARRIDO, in his official and individual
capacities, DISTRICT COUNCIL 37, AFSCME AFL-
CIO, LOCAL 2507, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 3621, JOHN DOE #1-10,
in their official and individual capacities; and JANE
DOE #1-10 in their official and individual capacities,

Defendants.

-------------------------------------------------------------------X

The Plaintiffs by their attorneys, The Scher Law Firm, LLP, alleges the following as their
Amended Complaint:

## I.    PARTIES, JURISDICTION, AND VENUE

1.      The Plaintiff JOHN GARLAND ("Garland") was and still is a natural person who
resides in and is a domiciliary of the County of Richmond, State of New York and is employed
as a firefighter with the New York City Fire Department ("FDNY").

2.      The Plaintiff VINCENT A. BOTTALICO ("Bottalico") was and still is a natural
person who resides in and is a domiciliary of the County of Putnam, State of New York and is
employed as a lieutenant with the FDNY.

3.      The Plaintiff TIMOTHY A. HEATON ("Heaton") was and still is a natural
person who resides in and is a domiciliary of the County of New York, State of New York and is
employed as a lieutenant with the FDNY.

4.      The Plaintiff JOSEPH BEVILACQUA ("Bevilacqua") was and still is a natural
person who resides in and is a domiciliary of the County of Richmond, State of New York and is
employed as a firefighter with the FDNY.

2

5.     The Plaintiff JOSEPH CICERO ("Cicero") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

6.     The Plaintiff JOSEPH COLUMBIA ("Columbia") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

7.     The Plaintiff ANDREW COSTELLO ("Costello") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

8.     The Plaintiff JAMES DANIEL DALY III ("Daly") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a firefighter with the FDNY.

9.     The Plaintiff VINCENT DEFONTE ("Defonte") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

10.     The Plaintiff KENNETH DEFOREST ("DeForest") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

11.     The Plaintiff SALVATORE DEPAOLA ("DePaola") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

12.     The Plaintiff BRIAN DOYLE ("Doyle") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a firefighter with the FDNY.

13.    The Plaintiff NATHAN EVANS ("Evans") was and still is a natural person who resides in and is a domiciliary of the County of New York, State of New York and is employed as a lieutenant with the FDNY.

14.    The Plaintiff CHRISTOPHER FILOCAMO ("Filocamo") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

15.    The Plaintiff KEVIN GARVEY ("Garvey") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a firefighter with the FDNY.

16.    The Plaintiff CHARLES GUARNEIRI ("Guarneiri") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a firefighter with the FDNY.

17.    The Plaintiff DANIEL J. OSHEA ("OShea") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a firefighter with the FDNY.

18.    The Plaintiff MARGOT LOTH ("Loth") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a paramedic with the FDNY.

19.    The Plaintiff MICHAEL LYNCH ("Lynch") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a firefighter with the FDNY.

20.    The Plaintiff DENNIS O'KEEFFE ("O'Keeffe") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a firefighter with the FDNY.

4

JA-347

21.     The Plaintiff BRIAN PATRICK SMITH ("Smith") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a firefighter with the FDNY.

22.     The Plaintiff KURT PFLUMM ("Pflumm") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a firefighter with the FDNY.

23.     The Plaintiff CHRISTOPHER RAIMONDI ("Raimondi") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a lieutenant with the FDNY.

24.     The Plaintiff PAUL SCHWEIT ("Schweit") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a firefighter with the FDNY.

25.     The Plaintiff JOSEPH T. JOHNSON ("Johnson") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a Captain with the FDNY.

26.     The Plaintiff DAVID BUTTON ("Button") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a firefighter with the FDNY.

27.     The Plaintiff PAUL PARR ("Parr") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a lieutenant with the FDNY.

28.     The Plaintiff MARK SINCLAIR ("Sinclair") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

JA-348

29.     The Plaintiff DANIEL BAUDILLE ("Baudille") was and still is a natural person who resides in and is a domiciliary of the County of Orange, State of New York and is employed as a firefighter with the FDNY.

30.     The Plaintiff JOHN DREHER ("Dreher") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

31.     The Plaintiff THOMAS OLSEN ("Olsen") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a firefighter with the FDNY.

32.     The Plaintiff GIUSEPPE ROBERT PENORO ("Penoro") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a firefighter with the FDNY.

33.     The Plaintiff MATTHEW CONNOR ("Connor") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a lieutenant with the FDNY.

34.     The Plaintiff NICHOLAS MULLIGAN ("Mulligan") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

35.     The Plaintiff RANDALL SANTANA ("Santana") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a firefighter with the FDNY.

36.     The Plaintiff ANTHONY PERRONE ("Perrone") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a firefighter with the FDNY.

**JA-349**

37.     The Plaintiff SCOTT ETTINGER ("Ettinger") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a lieutenant with the FDNY.

38.     The Plaintiff ANTHONY MASTROPIETRO ("Mastropietro") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a firefighter with the FDNY.

39.     The Plaintiff RASHAAD TAYLOR ("Taylor") was and still is a natural person who resides in and is a domiciliary of the County of Orange, State of New York and is employed as a firefighter with the FDNY.

40.     The Plaintiff ANTHONY RUGGIERO ("Ruggiero") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

41.     The Plaintiff JOSEPH MURDOCCA ("Murdocca") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

42.     The Plaintiff KEITH KLEIN ("Klein") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a firefighter with the FDNY.

43.     The Plaintiff PAUL VASQUENZ ("Vasquenz") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

44.     The Plaintiff MARK HENESY ("Henesy") was and still is a natural person who resides in and is a domiciliary of the County of Orange, State of New York and is employed as a lieutenant with the FDNY.

**JA-350**

45.     The Plaintiff RYAN K. HALL ("Hall") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a firefighter with the FDNY.

46.     The Plaintiff JUDE PIERRE ("Pierre") was and still is a natural person who resides in and is a domiciliary of the State of New York and is employed as a firefighter with the FDNY.

47.     The Plaintiff MICHELLE SANTIAGO ("Santiago") was and still is a natural person who resides in and is a domiciliary of the County of Orange, State of New York and is employed as a lieutenant with the FDNY.

48.     The Plaintiff ROBERT DITRANI ("DiTrani") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a lieutenant with the FDNY.

49.     The Plaintiff BRIAN T. DENZLER ("Denzler") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a firefighter with the FDNY.

50.     The Plaintiff MICHAEL MCGOFF ("McGoff") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

51.     The Plaintiff OWEN FAY ("Fay") was and still is a natural person who resides in and is a domiciliary of the County of Westchester, State of New York and is employed as a lieutenant with the FDNY.

52.     The Plaintiff JOSEPH M. PALMIERI ("Palmieri") was and still is a natural person who resides in and is a domiciliary of the County of Rockland, State of New York and is employed as a firefighter with the FDNY.

53.    The Plaintiff STEPHEN INGUAGIATO ("Inguagiato") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a firefighter with the FDNY.

54.    The Plaintiff GEORGE J. MURPHY ("Murphy") was and still is a natural person who resides in and is a domiciliary of the County of Nassau, State of New York and is employed as a firefighter with the FDNY.

55.    The Plaintiff JOSEPH DEPAOLA ("Depaola") was and still is a natural person who resides in and is a domiciliary of the County of Rockland, State of New York and is employed as a firefighter with the FDNY.

56.    The Plaintiff STEPHEN BUTTAFUCCO ("Buttafucco") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a firefighter with the FDNY.

57.    The Plaintiff MICHAEL SAMOLIS ("Samolis") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a firefighter with the FDNY.

58.    The Plaintiff AINSLEY ATWELL ("Atwell") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a firefighter with the FDNY.

59.    The Plaintiff JOHN COSTELLO ("John") was and still is a natural person who resides in and is a domiciliary of the County of Rockland, State of New York and is employed as a firefighter with the FDNY.

60.    The Plaintiff MATTHEW SINCLAIR ("Matthew") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

61.     The Plaintiff GLENN CLAPP ("Clapp") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a firefighter with the FDNY.

62.     The Plaintiff MATT KOVAL ("Koval") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

63.     The Plaintiff JOHN ARMORE ("Armore") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a firefighter with the FDNY.

64.     The Plaintiff ROSARIO CURTO ("Curto") was and still is a natural person who resides in and is a domiciliary of the County of Suffolk, State of New York and is employed as a firefighter with the FDNY.

65.     The Plaintiff DANIEL STROH ("Stroh") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

66.     The Plaintiff DANIEL YOUNG ("Young") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a firefighter with the FDNY.

67.     The Plaintiff FELICIA J. TSANG ("Tsang") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a EMT with the FDNY.

68.     The Plaintiff KEVIN ERKMAN ("Erkman") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

**JA-353**

69.     The Plaintiff JOHN TWOMLEY ("Twomley") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

70.     The Plaintiff CRAIG LEAHY ("Leahy") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a lieutenant with the FDNY.

71.     The Plaintiff TIM RIVICCI ("Rivicci") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

72.     The Plaintiff MICHAEL FADDA ("Fadda") was and still is a natural person who resides in and is a domiciliary of the County of Putnam, State of New York and is employed as a firefighter with the FDNY.

73.     The Plaintiff ANTHONY C. CARDAZONE ("Cardazone") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a lieutenant with the FDNY.

74.     The Plaintiff DAVID SUMMERFIELD ("Summerfield") was and still is a natural person who resides in and is a domiciliary of the County of Orange, State of New York and is employed as a firefighter with the FDNY.

75.     The Plaintiff BRENDAN MCGEOUGH ("McGeough") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a firefighter with the FDNY.

76.     The Plaintiff BRANDON PHILLIPS ("Phillips") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a firefighter with the FDNY.

77.     The Plaintiff CHRISTOPHER INFANTE ("Infante") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

78.     The Plaintiff BERNADETTE MEJIA ("Mejia") was and still is a natural person who resides in and is a domiciliary of the County of Bronx, State of New York and is employed as a firefighter with the FDNY.

79.     The Plaintiff JARED DYCHKOWSKI ("Dychkowski") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a lieutenant with the FDNY.

80.     The Plaintiff THOMAS FEJES ("Fejes") was and still is a natural person who resides in and is a domiciliary of the County of Putnam, State of New York and is employed as a EMT with the FDNY.

81.     The Plaintiff JASON CHARLES ("Charles") was and still is a natural person who resides in and is a domiciliary of the County of Manhattan, State of New York and is employed as a firefighter with the FDNY.

82.     The Plaintiff WILLIAM JOHN SAEZ ("Saez") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

83.     The Plaintiff PHILLIP J. DARCY ("Darcy") was and still is a natural person who resides in and is a domiciliary of the County of Orange, State of New York and is employed as a lieutenant with the FDNY.

84.     The Plaintiff RODNEY COLON ("Colon") was and still is a natural person who resides in and is a domiciliary of the County of Richmond, State of New York and is employed as a firefighter with the FDNY.

85.     The Plaintiff SEAN FITZGERALD ("Fitzgerald") was and still is a natural person who resides in and is a domiciliary of the County of Queens, State of New York and is employed as a firefighter with the FDNY.

86.     The Plaintiff ROBERT YULI ("Yuli") was and still is a natural person who resides in and is a domiciliary of the County of Kings, State of New York and is employed as a firefighter with the FDNY.

87.     The Defendant NEW YORK CITY FIRE DEPARTMENT ("FDNY") was and still is a municipal corporation duly organized under the laws of New York State with its principal place of business is located in the County of Kings, State of New York.

88.     The Defendant DANIEL A. NIGRO ("Nigro") was and still is a natural person whose principal place of business is located in the County Kings, State of New York.

89.     The Defendant CITY OF NEW YORK ("NYC") was and still is a municipal corporation duly organized under the laws of New York State with its principal place of business is located in the County of New York, State of New York.

90.     The Defendant UNIFORMED FIRE OFFICERS ASSOCIATION, LOCAL 854 INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFFILIATED WITH THE AFL-CIO ("UFOA") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

91.     The Defendant UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK ("Uniformed Firefighters") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

92.     The Defendant DISTRICT COUNCIL 37, AFSCME AFL-CIO ("DC37") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

93.     The Defendant HENRY GARRIDO ("Garrido") was and still is a natural person whose principal place of business is located in the County of New York, State of New York.

13

94.     The Defendant DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 2507 ("Local 2507") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

95.     The Defendant DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 3621 ("Local 3621") was and still is a labor organization with its principal place of business located in the County of New York, State of New York.

96.     The Defendants JOHN DOE #1-10 ("John Doe") are unknown persons who have directly participated in, have knowledge of, and have had personal involvement in the deprivation of the Plaintiffs' constitutional rights.

97.     The Defendants JANE DOE #1-10 ("Jane Doe") are unknown persons who have directly participated in, have knowledge of, and have had personal involvement in the deprivation of the Plaintiffs' constitutional rights.

98.     This is a civil action seeking injunctive relief, declarative judgment relief to protect the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment).

99.     This is a civil action seeking a monetary damages award on behalf of the Plaintiffs and against the FDNY, Nigro, and NYC pursuant to 42 U.S.C. § 1983 for a violation of the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment).

100.    This is a civil action seeking a monetary damages award on behalf of the Plaintiffs and against the FDNY, Nigro, NYC, DC37, and Garrido pursuant to 42 U.S.C. § 1983 for a conspiracy to violate the Plaintiffs' constitutional rights to due process and property rights (U.S. Constitution, Fourteenth Amendment).

101.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

102.    This Court has personal jurisdiction over the Defendants.

103.   Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(d), because, the Defendants have offices within this judicial district.

## II.   FACTS

### A.   Plaintiffs

104.   Out of the eighty-six (86) Plaintiffs, sixty (60) Plaintiffs have not taken a COVID-19 vaccine.

105.   Twenty-seven (27) Plaintiffs have become vaccinated and have returned to active duty with the FDNY ("Vaccinated Plaintiffs")

106.   The twenty-seven (27) Plaintiffs are seeking back pay for any period of time that they were on a suspension without pay in violation of their constitutional rights.

107.   The Vaccinated Plaintiffs are: Bottalico, Baudille, Costello, DiTrani, Ettinger, Filocamo, Garvey, Mastropietro, Mulligan, O'Keefe, Perrone, Penoro, Ruggiero, Johnson, Vasquenz, Fay, Buttafuoco, Atwell, Koval, Curto, Stroh, Twomley, Fadda, Summerfield, McGeough, Colon, and Yuli.

108.   The Plaintiffs are either: (1) officers in the FDNY; or (2) uniformed firefighters in the FDNY; or (3) emergency medical services personnel employed by the FDNY, but in any event are entitled to due process pursuant to N.Y.C. Administrative Code § 15-113.

109.   The Plaintiffs are:

(a)   Officers (Bottalico, Heaton, Evans, Raimondi, Johnson, Parr, Connor, Ettinger, Henesy, Santiago, DiTrani, Fay, John, Leahy, Cardazone, Dychkowski, Darcy);

(b)   Fire fighters (Garland, Bevilacqua, Cicero, Columbia, Costello, Daly, Defonte, DeForest, DePaola, Doyle, Filocamo, Garvey, Guarneiri, OShea, Lynch, O'Keeffe, Smith, Pflumm, Schweit,

**JA-358**

> Button, Sinclair, Baudille, Dreher, Olsen, Penoro, Mulligan, Santana, Perrone, Mastropietro, Taylor, Ruggiero, Murdocca, Klein, Vasquenz, Hall, Pierre, Denzler, McGoff, Palmieri, Inguagiato, Murphy, Depaola, Buttafuoco, Samolis, Atwell, Matthew, Clapp, Koval, Amore, Curto, Stroh, Young, Erkman, Twomley, Rivicci, Fadda, Summerfield, McGeough, Phillips, Infante, Mejia, Charles, Saez, Colon, Fitzgerald, Yuli);

    (c)    Employees of the Emergency Medical Service (Loth, Tsang, Fejes)

**B.**     **Defendants**

    1.     <u>FDNY, Nigro, and NYC</u>

110.     The FDNY is a State actor.

111.     Nigro was the Commissioner of the FDNY during all relevant times that are at issue in this Action.

112.     Nigro is a State actor.

113.     NYC is a State actor.

    2.     <u>UFOA</u>

114.     The UFOA is the sole collective bargaining agent for the unit consisting of all Lieutenants, Captains, Battalion Chiefs, Deputy Chiefs except those Deputy Chiefs designated as Deputy Assistant Chief of Department, Assistant Chief of Department, and Chief in Charge and Fire Medical Officers, and Supervising Fire Marshals employed by the Employer in the Fire Department of the City of New York.

115.     Out of the 86 Plaintiffs, 17 Plaintiffs are members of the UFOA.

116.     The UFOA is named as a necessary party to this Action.

**JA-359**

      3.     <u>Uniformed Firefighters</u>

117.    The Uniformed Firefighters is the sole collective bargaining agent for the unit consisting of all firefighters and fire marshals (uniformed) employed by the FDNY.

118.    Out of the 86 Plaintiffs, 66 Plaintiffs are members of the Uniformed Firefighters.

119.    Uniformed Firefighters is named as a necessary party to this Action.

      4.     <u>DC37, Garrido, Local 2507, and Local 3621</u>

120.    DC37 is the sole collective bargaining agent for employees of the FDNY employed in emergency medical services.

121.    Garrido is the Executive Director of DC37.

122.    Out of the 86 Plaintiffs, 3 Plaintiffs are members of DC37.

123.    Local 2507 is the bargaining agent for uniformed emergency medical technicians, paramedics, and fire inspectors employed by the FDNY.

124.    Local 2507 is named as a necessary party to this Action.

125.    Local 3621 is the bargaining agent for the officers in the emergency medical services in the FDNY.

126.    Local 3621 is named as a necessary party to this Action.

17

**C.     New York Commissioner Of Health's COVID Vaccine Mandate**

127.    On October 20, 2021, the New York City Commissioner of Health issued an Order requiring all NYC employees and certain NYC contractors to obtain a COVID-19 NYC employees, contractors and others to obtain a COVID-19 vaccine. *See,* **Exhibit A**, a copy of the October 20, 2021 Order of the Commissioner of Health and Mental Hygiene ("Vaccine Mandate Order").

128.    The Vaccine Mandate Order required all NYC employees and certain NYC contractors to provide proof of vaccination no later than October 29, 2021. *See,* **Exhibit A**.

**D.     Impact Bargaining With UFOA, Uniformed Firefighters, and DC37**

129.    Pursuant to the Taylor Law (N.Y. Civil Service Law § 200, *et. seq.*), NYC was required to bargain with its unions the impact of the Vaccine Mandate Order.

130.    The UFOA did not reach a negotiated settlement with NYC regarding the impact of the Vaccine Mandate Order on their members.

131.    The Uniformed Firefighters did not reach a negotiated settlement with NYC regarding the impact of the Vaccine Mandate Order on their members.

132.    In fact, the Uniformed Firefighters, properly, challenged the Vaccine Mandate in numerous venues, including New York State Supreme Court and before the Public Employment Relations Board ("PERB").

133.    DC37 entered into an agreement with NYC regarding the impact of the Vaccine Mandate, which provides that on or after December 1, 2021, NYC may unilaterally separate DC37 members from their employment with the FDNY if the members have not obtained a COVID-19 vaccine. *See,* **Exhibit B**, a copy of the DC37 agreement, at page 10.

**E.**     **DC37's Agreement With NYC Violated The Plaintiffs' Constitutional Rights**

134.    DC37's Agreement with NYC authorized NYC to suspend without pay the members of DC37 who did not take a COVID vaccine, thus violating the DC37 members-Plaintiffs' constitutional rights to due process.

135.    DC37's Agreement, authorized NYC to suspend without pay the members of DC37 who did not take a COVID vaccine, thus the DC37 members-Plaintiffs' constitutional property right to their pay.

136.    DC37 conspired with NYC by entering into an agreement with NYC that violated the DC37 members-Plaintiffs' constitutional rights.

137.    Garrido conspired with the NYC by entering into an agreement with NYC that violated the DC37 members-Plaintiffs' constitutional rights.

138.    DC37 conspired with Nigro by entering into an agreement with NYC that violated the DC37 members-Plaintiffs' constitutional rights.

139.    Garrido conspired with Nigro by entering into an agreement with NYC that violated the DC37 members-Plaintiffs' constitutional rights.

140.    As a result of the conspiracy between the DC37 and NYC, the DC37 members-Plaintiffs' constitutional rights have been violated.

141.    As a result of the conspiracy between the DC37 and Nigro, the DC37 members-Plaintiffs' constitutional rights have been violated.

142.    As a result of the conspiracy between Garrido and NYC, the DC37 members-Plaintiffs' constitutional rights have been violated.

143.    The DC37-members-Plaintiffs have suffered without pay since on or about November 1, 2021 and continue every day in violation of their constitutional property right interest in their pay.

JA-362

**F.     Reasonable Accommodation Requests**

144.    As part of NYC's implementation of the Vaccine Mandate Order, NYC has offered those FDNY employees who have either a medical or religious reason for not taking a vaccine an opportunity to seek a reasonable accommodation to exempt the employee from the Vaccine Mandate Order.

145.    Out of the eighty-six (86) Plaintiffs, seventy-seven (77) have sought an exemption from the Vaccine Mandate Order.

146.    Out of the 77 Plaintiffs who have sought an exemption zero (0) Plaintiffs have received an exemption.

147.    Out of the 77 Plaintiffs who did not receive an exemption 71 Plaintiffs have been denied an exemption, 6 are awaiting an initial determination.

148.    Out of the 71 Plaintiffs who have been denied an exemption 37 Plaintiffs have appealed the denial of the reasonable accommodation exemption.

149.    Out of the 37 Plaintiffs who appealed the denial, zero (0) Plaintiffs have been granted the exemption on appeal.

150.    Out of the 37 Plaintiffs who appealed the denial, one (1) Plaintiff has been denied the exemption on appeal and the other 36 are awaiting a decision on their appeal.

**************

151.    The Plaintiffs' constitutional rights have been trampled on by the FDNY.

152.    The Plaintiffs' constitutional rights have been trampled on by Nigro.

153.    The Plaintiffs' constitutional rights have been trampled on by NYC.

154.    The Plaintiffs' constitutional rights have been trampled on by DC37.

155.   The Plaintiffs' constitutional rights have been trampled on by Garrido.

**G.      Class Allegations**

156.   NYC's suspension of the Plaintiffs without pay without due process was pursuant to policies, customs, and/or practices of NYC.

157.   FDNY's suspension of the Plaintiffs without pay without due process was pursuant to policies, customs, and/or practices of the FDNY.

158.   The decision by DC37 to enter into the agreement with NYC was pursuant to policies, customs, and/or practices of DC37.

159.   Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that NYC's unilateral decision to suspend the Plaintiffs without pay without due process was unconstitutional.

160.   Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the FDNY's unilateral decision to suspend the Plaintiffs without pay without due process was unconstitutional.

161.   Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that NYC's unilateral decision to suspend the Plaintiffs without pay without due process was illegal.

162.   Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the FDNY's unilateral decision to suspend the Plaintiffs without pay without due process was illegal.

163.   Plaintiffs, on behalf of themselves and of the class of similarly situated persons, seek an Order declaring that the agreement between NYC and DC37 was illegal and unenforceable.

164.    Plaintiffs bring this Action on their own behalf and on behalf of all persons similarly situated, pursuant to Federal Rule of Civil Procedure 23(b)(3).   Plaintiffs seek a certification of a class defined as follows: All FDNY employees suspended without pay for not taking the COVID-19 vaccine who have a statutory or contractual right to charges and a hearing before the employee is disciplined or terminated.

165.    Pursuant to Federal Rule of Civil Procedure 23(a), the members of the class are so numerous that joinder of all members is impractical.  Plaintiffs do not know the exact number of class members.  Plaintiffs are informed and believe, and thereupon allege that there are more than 100 persons in the class defined above.

166.    Pursuant to Federal Rule of Civil Procedure 23(a), Plaintiffs are informed and believe, and thereupon allege, that there are question of law and fact common to the class, including but not limited to:

    (a)    Whether a FDNY officer or member of the uniformed force possesses a property-based, procedural due process right to their pay pursuant to the Fourteenth Amendment to the United States Constitution;

    (b)    Whether a FDNY officer or member of the uniformed force possesses a procedural due process right to their jobs pursuant to the Fourteenth Amendment to the United States Constitution.;

167.    Pursuant to Federal Rules of Civil Procedure 23(a), Plaintiffs' claims are typical of the class they seek to represent.  The Plaintiffs have all been suspended without pay without due process.  Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class.   Each proposed class member suffered actual damages as a result of the challenged conduct.  Plaintiffs' claims arose because of the FDNY's policies, customs, and/or practices.

168.    Pursuant to Federal Rules of Civil Procedure 23(a), Plaintiffs' claims are typical of the class they seek to represent.  The Plaintiffs have all been suspended without pay without due process.  Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class.   Each proposed class member suffered actual damages as a result of the

22

challenged conduct. Plaintiffs' claims arose because of the FDNY's policies, customs, and/or practices.

169.    Pursuant to Federal Rules of Civil Procedure 23(a), Plaintiffs' claims are typical of the class they seek to represent. The Plaintiffs have all been suspended without pay without due process. Plaintiffs have the same interests and have suffered the same type of injuries as the proposed class. Each proposed class member suffered actual damages as a result of the challenged conduct. Plaintiffs' claims arose because of the FDNY's policies, customs, and/or practices.

170.    Plaintiffs' claims arose because of the DC37's policies, customs, and/or practices.

171.    Plaintiffs' counsel has the resources, experience, and expertise to successfully prosecute this Action against Defendants. Counsel knows of no conflicts among members of the class, or between counsel and any members of the class.

172.    Pursuant to Federal Rules of Civil Procedure 23(b)(3), upon certification, class members must be furnished with the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. If this action is certified as a class action, Plaintiffs contemplate that individual notice will be given to class members, at such last known address by first class mail, as well as notice by publication informing them of the following:

   i.      The pendency of the class action and the issues common to the class;

   ii.     The nature of the action;

   iii.    Their right to "opt-out" of the action within a given time, in which event they will not be bound by a decision rendered in the class action;

   iv.     Their right to "opt-out" to be represented by their own counsel and to enter an appearance in the case; otherwise they will be represented by the named class plaintiffs and their counsel; and

   v.      Their right, if they do not "opt-out" to share in any recovery in favor of the class, and conversely to be bound by any judgment on the common issues adverse to the class.

**JA-366**

### III.   CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR DECLARATORY JUDGMENT

173.   The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 172, as if fully set forth herein.

174.   The Plaintiffs are officers or members of the uniformed force.

175.   The Plaintiffs are employees that possess N.Y.C. Administrative Code § 15-113 rights.

176.   The Plaintiffs have been suspended without pay without due process in violation of their statutory rights.

177.   There is an actual controversy over whether what the FDNY did to the Plaintiffs, namely suspend the Plaintiffs without pay without due process violating the Plaintiffs' Fourteenth Amendment rights.

178.   There is an actual controversy over whether what NYC did to the Plaintiffs, namely suspend the Plaintiffs without pay without due process violating the Plaintiffs' Fourteenth Amendment rights.

179.   The Plaintiffs request an Order declaring that what the FDNY did to the Plaintiffs, namely suspend the Plaintiffs without pay without due process violating the Plaintiffs' Fourteenth Amendment rights to due process and to their pay without due process.

180.   The Plaintiffs request an Order declaring that what NYC did to the Plaintiffs, namely suspend the Plaintiffs without pay without due process violating the Plaintiffs' Fourteenth Amendment rights to due process and to their pay without due process.

181.   The Plaintiffs have no adequate remedy at law.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR DECLARATORY JUDGMENT

182.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 181, as if fully set forth herein.

183.    The Plaintiffs have been suspended without pay without due process in violation of their statutory and/or contractual rights and NYC relies upon the agreement between DC37 and NYC as the basis for the Plaintiffs' suspension without pay.

184.    There is an actual controversy over the contractual authority DC37 and NYC had to enter into the agreement.

185.    The Plaintiffs request an Order declaring that the agreement between DC37 and NYC was entered into without any contractual authority.

186.    The Plaintiffs request an Order declaring that the agreement between DC37 and NYC was entered into without any contractual authority and therefore, the NYC's suspension of the Plaintiffs without pay and without due process, violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay.

187.    The Plaintiffs have no adequate remedy at law.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR PERMANENT INJUNCTION

188.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 187, as if fully set forth herein.

189.    The Plaintiffs have a high likelihood of success on the merits because the Plaintiffs possess a property-based, procedural due process right to their pay pursuant to the Fourteenth Amendment to the United States Constitution.

JA-368

190.   The Plaintiffs have a high likelihood of success on the merits because the Plaintiffs possess a procedural due process right to their jobs pursuant to the Fourteenth Amendment to the United States Constitution.

191.   The Plaintiffs have a high likelihood of success on the merits because the FDNY has violated their property-based, procedural due process right to their pay.

192.   The Plaintiffs have a high likelihood of success on the merits because NYC has violated their property-based, procedural due process right to their pay.

193.   The Plaintiffs have a high likelihood of success on the merits because the FDNY has violated their property-based, procedural due process right to their pay.

194.   The Plaintiffs have a high likelihood of success on the merits because NYC has violated their property-based, procedural due process right to their pay.

195.   The violation of the Plaintiffs' constitutional rights constitutes irreparable harm.

196.   Without a permanent injunction, the Plaintiff will have no adequate remedy at law.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR VIOLATION OF 42 U.S.C. § 1983 AGAINST THE FDNY, NIGRO, NYC, JOHN DOE AND JANE DOE

197.   The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 196, as if fully set forth herein.

198.   NYC subjected the Plaintiffs to the foregoing acts and omissions without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution

199.   The FDNY subjected the Plaintiffs to the foregoing acts and omissions without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiffs of their rights,

privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

200.     NYC through its actions, violated the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute, namely, N.Y.C. Administrative Code § 15-113 under the Fourteenth Amendment of the United States Constitution.

201.     The FDNY through its actions, violated the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute, namely, N.Y.C. Administrative Code § 15-113 under the Fourteenth Amendment of the United States Constitution.

202.     The Plaintiffs were not provided the opportunity for a fair hearing prior to being deprived of a constitutionally protected property interest, namely their pay.

203.     NYC was barred by statute and/or contract from suspending the Plaintiffs without pay without due process.

204.     The FDNY was barred by statute and/or contract from suspending the Plaintiffs without pay without due process.

205.     The Plaintiffs, as public employees, who can only be discharged for cause, have a constitutionally protected property interest in his job, and could not be suspended without pay without due process.

206.     NYC has denied Plaintiff due process of law by not providing a hearing before an impartial hearing officer resulting in a wrongful, and unlawful leave of absence, and a termination of a constitutionally protected liberty or property interest.

207.     The FDNY has denied Plaintiff due process of law by not providing a hearing before an impartial hearing officer resulting in a wrongful, and unlawful leave of absence, and a termination of a constitutionally protected liberty or property interest.

208.   The FDNY, Nigro, NYC, John Doe and Jane Doe, acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Nigro, John Doe and Jane Doe.

209.   As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continue to suffer irreparable harm, loss of income, loss of other employment benefits, injury to reputation and good name, damage to their family status, being subjected to scandalous claims and investigations and have suffered and continues to suffer distress, humiliation, great expense, embarrassment, familial distress, and damages to their reputation.

210.   As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continues to suffer suspension, leave of absence, diminished employment, and have suffered and continues to suffer distress, humiliation, familial distress, great expense, embarrassment and damage to their reputation.

211.   As a result of NYC's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

212.   As a result of the FDNY's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

213.   As a result of the Nigro's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts

which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

214.    As a result of the John Doe's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

215.    As a result of the Jane Doe's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

## AS AND FOR A FIFTH CAUSE OF ACTION
## FOR VIOLATION OF 42 U.S.C. § 1983 AGAINST THE FDNY, NIGRO, NYC, DC37, and GARRIDO

216.    The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 215, as if fully set forth herein.

217.    The FDNY is a State actor.

218.    NYC is a State actor.

219.    Nigro is a State actor.

220.    DC37 conspired with NYC to enter into an agreement with NYC that resulted in a violation of the Plaintiffs' constitutional rights.

221.    Garrido conspired with NYC to enter into an agreement with NYC that resulted in a violation of the Plaintiffs' constitutional rights.

222.    The agreement between DC37 and NYC was the cover given to NYC to subject the Plaintiffs to suspension without pay without due process of law in a violation of 42 U.S.C. §

Case 23-663, Document 49, 08/01/2023, 3549864, Page146 of 220

1983 thereby depriving Plaintiffs of their rights, privileges and immunities secured by the Fourteenth Amendment of the United States Constitution.

223.   DC37 and Garrido conspired with NYC and Nigro to provide NYC and Nigro with a basis to suspend the Plaintiffs without pay even though the agreement between DC37 and NYC violated the Plaintiffs' constitutional rights.

224.   NYC through its actions, violated the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y.C. Administrative Code § 15-113) under the Fourteenth Amendment of the United States Constitution.

225.   DC37 conspired with NYC to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y.C. Administrative Code § 15-113) under the Fourteenth Amendment of the United States Constitution.

226.   Garrido conspired with NYC to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y.C. Administrative Code § 15-113) under the Fourteenth Amendment of the United States Constitution.

227.   NYC conspired with DC37 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y.C. Administrative Code § 15-113) under the Fourteenth Amendment of the United States Constitution.

228.   Nigro conspired with DC37 to violate the Plaintiffs' due process rights guaranteed to the Plaintiffs by statute (N.Y.C. Administrative Code § 15-113) under the Fourteenth Amendment of the United States Constitution.

229.   The Plaintiffs were not provided the opportunity for a fair hearing prior to being deprived of a constitutionally protected property interest, namely their pay.

230.   NYC is barred by statute and/or contract from suspending the Plaintiffs without pay without due process.

JA-373

231.   But-for the agreement between the DC37 and NYC, NYC would not have had any justification for the violation of the Plaintiffs' constitutional rights.

232.   The Plaintiffs, as public employees, who can only be discharged for cause, have a constitutionally protected property interest in his job, and could not be suspended without pay without due process.

233.   As a result of the DC37 and NYC conspiracy, NYC has denied Plaintiff due process of law by not providing a hearing before an impartial hearing officer resulting in a wrongful, and unlawful leave of absence, and a termination of a constitutionally protected liberty or property interest.

234.   NYC, Nigro, John Doe and Jane Doe, acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983. These actions were condoned, adopted and fostered by policy makers including but not limited to Nigro, John Doe and Jane Doe.

235.   NYC and Nigro in a conspiracy with DC37 and Garrido acting under color of law, and through their employees, servants, agents and designees, have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983.

236.   As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continue to suffer irreparable harm, loss of income, loss of other employment benefits, injury to reputation and good name, damage to their familial status, being subjected to scandalous claims and investigations and have suffered and continues to suffer distress, humiliation, great expense, embarrassment, familial distress,  and damages to their reputation.

237.   As a direct and proximate result of said acts, Plaintiffs and others similarly situated have suffered and continues to suffer suspension, leave of absence, diminished employment, and have suffered and continues to suffer distress, humiliation, great expense, embarrassment and damage to their reputation.

238.   As a result of the conspiracy between NYC, Nigro, DC37, and Garrido, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

239.   As a result of NYC's acts, Plaintiffs suffered and are entitled to, damage sustained to date and continuing in a sum in excess of the jurisdictional limits of all State Courts which might otherwise have jurisdiction and this Court, costs and attorney's fees as well as equitable and injunctive relief and any other relief this Court may find and just and proper.

## AS AND FOR A SIXTH CAUSE OF ACTION
## FOR DIRECT PARTICIPATION AND AIDING AND ABETTING IN VIOLATION OF 42 U.S.C. § 1983 AGAINST THE NIGRO, GARRIDO, JOHN DOE AND JANE DOE

240.   The Plaintiffs re-state and re-allege the allegations contained in ¶¶ 1 through 239, as if fully set forth herein.

241.   Nigro, Garrido, John Doe, and Jane Doe, individually and collectively did foster and encourage NYC to violate the Plaintiffs' constitutional rights.

242.   Nigro, Garrido, John Doe, and Jane Doe, individually and collectively, jointly and severally, violated the Plaintiffs' constitutional rights when they failed to stop NYC from suspending the Plaintiffs without pay without due process.

243.   Nigro, Garrido, John Doe, and Jane Doe, individually and collectively knew and had reason to know that NYC violated the Plaintiffs' constitutional rights when NYC suspended the Plaintiffs without pay without due process.

244.   Nigro, Garrido, John Doe, and Jane Doe, individually and collectively jointly and severally, did foster and encourage NYC to violate the Plaintiffs' constitutional rights by suspending the Plaintiffs without pay without due process.

245.   Based on the foregoing, Nigro, Garrido, John Doe, and Jane Doe directly participated in and/or tacitly condoned the violation of the Plaintiffs' constitutional rights, violating 42 U.S.C.§ 1983.

**WHEREFORE,** the Plaintiffs demand judgment:

(1)   on the First Cause of Action for a declaratory judgment, declaring that what: (1) the FDNY did to the Plaintiffs, namely suspend the Plaintiffs without pay without due process violating the Plaintiffs' Fourteenth Amendment rights to due process and to their pay without due process; and (2) NYC did to the Plaintiffs, namely suspend the Plaintiffs without pay without due process violating the Plaintiffs' Fourteenth Amendment rights to due process and to their pay without due process and

(2)   on the Second Cause of Action for a declaratory judgment, declaring that the agreement between DC37 and NYC was entered into without any contractual authority and therefore, the NYC's suspension of the Plaintiffs without pay and without due process, violated the Plaintiffs' Fourteenth Amendment rights to due process and to their pay; and

(3)   on the Third Cause of Action for a permanent injunction, enjoining the FDNY and NYC from violating the Plaintiffs' constitutional rights;

(4)   on the Fourth Cause of Action for violation of 42 U.S.C. § 1983 against the FDNY, Nigro, NYC, John Doe, and Jane Doe for violations of the Plaintiffs' Fourteenth Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial; and

(5)   on the Fifth Cause of Action for violation of 42 U.S.C. § 1983 against the FDNY, Nigro, NYC, DC37, Garrido, John Doe, and Jane Doe for violations of the Plaintiffs' Fourteenth Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial; and

(6)   on the Sixth Cause of Action for violation of 42 U.S.C. § 1983 against Nigro, Garrido, John Doe, and Jane Doe for direct participation in and aiding and abetting of the violation of the Plaintiffs' Fourteenth

33

JA-376

Amendment constitutional rights, seeking compensation for damages sustained by the Plaintiffs to date and continuing in a sum to be determined at trial; and

(7)     on all causes of action, an award of attorneys' fees, and costs; and

(8)     such other and further relief the Court deems just and fair.

Dated:     Carle Place, New York
           January 5, 2022

                                    Austin Graff
                                    THE SCHER LAW FIRM, LLP
                                    One Old Country Road, Suite 385
                                    Carle Place, New York 11514
                                    (516) 746-5040

34

JA-377

EXHIBIT A TO AMENDED COMPLAINT -
ORDER OF DAVE A. CHOKSHI, M.D., COMMISSIONER OF HEALTH AND
MENTAL HYGIENE TO REQUIRE COVID-19 VACCINATION FOR
CITY EMPLOYEES AND CERTAIN CITY CONTRACTORS,
DATED OCTOBER 20, 2021
(REPRODUCED HEREIN AT PP. JA-138-JA-142)

EXHIBIT B TO AMENDED COMPLAINT -
MEMORANDUM OF AGREEMENT BETWEEN DISTRICT COUNCIL 37,
CITY OF NEW YORK AND THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT FOR THE CITY OF NEW YORK,
DATED OCTOBER 3, 2021
(REPRODUCED HEREIN AT PP. JA-164-JA-170)

**JA-378**

# THE SCHER LAW FIRM, LLP

### ONE OLD COUNTRY ROAD, SUITE 385
### CARLE PLACE, NY 11514

MARTIN H SCHER*

JONATHAN L SCHER**

AUSTIN R GRAFF*

TEL  516-746-5040

FAX  516-746-5043

W SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P BRINT
COUNSEL

ADAM GANG
COUNSEL

\* Also Admitted in District of Columbia
' Also Admitted in New Jersey

March 15, 2022

ROBERT S NAYBERG
(1958-2013)

**By ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   Garland, *et al.*, v. New York City Fire Department, *et al.*
      Docket No. 21-CV-06586-KAM-CLP

Dear Judge Matsumoto:

This law firm represents all of the Plaintiffs, in the above-referenced Action. This letter shall serve as the Plaintiffs' request to the Court for permission to replace what is on the docket as Exhibit B to the Amended Complaint (**Docket Entry No. 27-2**), the agreement between the City of New York and DC37 with the attached document.

In response to the Plaintiffs' Motion for a Restraining Order in November 2021, the Defendant New York City Fire Department ("FDNY") produced an agreement between the City of New York and the Board of Education of the City School District, representing to the Court that it was the Agreement that controlled the issues addressed in that Motion. *See,* **Docket Entry No. 14**, at pages 9-10; **Docket Entry No. 15-3**.

Relying upon the FDNY's representation to the Court, the Plaintiffs, when they filed the Amended Complaint, used the same document referred to and produced by the FDNY as the DC37 Agreement.

On Friday, March 11, 2022, counsel for DC37 alerted to me to the fact that what the FDNY purported was the controlling Agreement between DC37 and the FDNY was in fact the wrong document. We agreed to seek judicial permission to change what we filed as Exhibit B to the Amended Complaint (**Docket Entry No. 27-2**) and replace it with the actual DC37 Agreement with the City, which DC37's counsel forwarded to me on March 11.

JA-379

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
Eastern District of New York
March 15, 2022
Page 2 of 2

Accordingly, on behalf the Plaintiffs, we request that the document attached to this letter and labeled "Exhibit B" replace what is on the Court's docket as 27-2.

Thank you for your courtesies.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

JA-380

**EXHIBIT B TO AMENDED COMPLAINT** *(CORRECTED)* **-**
**MEMORANDUM OF AGREEMENT BETWEEN DISTRICT COUNCIL 37**
**AND THE CITY OF NEW YORK, DATED NOVEMBER 4, 2021**
**(REPRODUCED HEREIN AT PP. JA-297-JA-302)**

JA-381

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| JOHN GARLAND, VINCENT A. BOTTALICO, TIMOTHY A. HEATON, JOSEPH BEVILACQUA, JOSEPH CICERO, JOSEPH COLUMBIA, ANDREW COSTELLO, JAMES DANIEL DALY III, VINCENT DEFONTE, KENNETH DEFOREST, SALVATORE DEPAOLA, BRIAN DOYLE, NATHAN EVANS, CHRISTOPHER FILOCAMO, KEVIN GARVEY, CHARLES GUARNEIRI, DANIEL J. OSHEA, MARGOT LOTH, MICHAEL LYNCH, DENNIS O'KEEFFE, BRIAN PATRICK SMITH, KURT PFLUMM, CHRISTOPHER RAIMONDI, PAUL SCHWEIT, JOSEPH T. JOHNSON, DAVID BUTTON, PAUL PARR, MARK SINCLAIR, DANIEL BAUDILLE, JOHN DREHER, THOMAS OLSEN, GIUSEPPE ROBERT PENORO, MATTHEW CONNOR, NICHOLAS MULLIGAN, RANDALL SANTANA, ANTHONY PERRONE, SCOTT ETTINGER, ANTHONY MASTROPIETRO, RASHAAD TAYLOR, ANTHONY RUGGIERO, JOSEPH MURDOCCA, KEITH KLEIN, PAUL VASQUENZ, MARK HENESY, RYAN K. HALL, JUDE PIERRE, MICHELLE SANTIAGO, ROBERT DITRANI, BRIAN T. DENZLER, MICHAEL MCGOFF, OWEN FAY, JOSEPH M. PALMIERI, STEPHEN INGUAGIATO, GEORGE J. MURPHY, JOSEPH DEPAOLA, STEPHEN BUTTAFUCCO, MICHAEL SAMOLIS, AINSLEY ATWELL, JOHN COSTELLO, MATTHEW SINCLAIR, GLENN CLAPP, MATT KOVAL, JOHN ARMORE, ROSARIO CURTO, DANIEL STROH, DANIEL YOUNG, FELICIA J. TSANG, KEVIN ERKMAN, JOHN TWOMLEY, CRAIG LEAHY, TIM RIVICCI, MICHAEL FADDA, ANTHONY C. CARDAZONE, DAVID SUMMERFIELD, BRENDAN MCGEOUGH, BRANDON PHILLIPS, CHRISTOPHER INFANTE, BERNADETTE MEJIA, JARED DYCHKOWSKI, THOMAS FEJES, JASON CHARLES, WILLIAM JOHN SAEZ, PHILLIP J. DARCEY, RODNEY COLON, SEAN FITZGERALD, ROBERT YULI, on behalf | INDEX NO. 21-cv-6586 <br><br> STIPULATION OF DISMISSAL, WITH PREJUDICE, AS TO DEFENDANT UNIFORMED FIRE OFFICERS ASSOCIATION, LOCAL 854, INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFFILIATED WITH THE AFL-CIO |

**JA-382**

of themselves and all other similarly situated
employees of the New York City Fire Department,

Plaintiffs,

-against-

NEW YORK CITY FIRE DEPARTMENT,
DANIEL A. NIGRO, in his official and individual
capacities, CITY OF NEW YORK, UNIFORMED
FIRE OFFICERS ASSOCIATION, LOCAL 854
INTERNATIONAL          ASSOCIATION          OF
FIREFIGHTERS, AFFILIATED WITH THE AFL-
CIO,        UNIFORMED        FIREFIGHTERS
ASSOCIATION OF GREATER NEW YORK,
DISTRICT COUNCIL 37, AFSCME AFL-CIO,
HENRY GARRIDO, in his official and individual
capacities, DISTRICT COUNCIL 37, AFSCME
AFL-CIO, LOCAL 2507, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 3621, JOHN DOE #1-
10, in their official and individual capacities; and
JANE DOE #1-10 in their official and individual
capacities,

Defendants.

-----------------------------------------------------------X

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned parties
and/or their respective attorneys, on the parties' behalf, that, pursuant to Fed. R. Civ. Proc.
41(a)(1)(A)(ii), the Plaintiffs' Action against Defendant Uniformed Fire Officers Association,
Local 854, International Association of Firefighters, affiliated with the AFL-CIO **ONLY** is
dismissed in its entirety, **with prejudice**. Each party shall bear its/their own costs, fees, and
attorneys' fees.

Dated:          Carle Place, New York
                March 15, 2022

Seth H. Greenberg, Esq.                    Austin Graff, Esq.
Greenberg Burzichelli Greenberg P.C.       The Scher Law Firm, LLP
Attorneys for Defendant UFOA               Attorneys for the Plaintiffs
3000 Marcus Avenue, Suite 1W7              One Old Country Road, Suite 385
Lake Success, New York 11042               Carle Place, NY 11514
Tel: # (516) 570-4343                      Tel. # (516) 746-5040

So Ordered:

2 of 2 K                    3/16/2022

JA-383

585

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

JOHN GARLAND, VINCENT A. BOTTALICO,
TIMOTHY   A.   HEATON,   JOSEPH
BEVILACQUA, JOSEPH CICERO, JOSEPH
COLUMBIA, ANDREW COSTELLO, JAMES
DANIEL DALY III, VINCENT DEFONTE,
KENNETH   DEFOREST,   SALVATORE
DEPAOLA, BRIAN DOYLE, NATHAN EVANS,
CHRISTOPHER FILOCAMO, KEVIN GARVEY,
CHARLES GUARNEIRI, DANIEL J. OSHEA,
MARGOT LOTH, MICHAEL LYNCH, DENNIS
O'KEEFFE, BRIAN PATRICK SMITH, KURT
PFLUMM, CHRISTOPHER RAIMONDI, PAUL
SCHWEIT, JOSEPH T. JOHNSON, DAVID
BUTTON, PAUL PARR, MARK SINCLAIR,
DANIEL BAUDILLE, JOHN DREHER, THOMAS
OLSEN,   GIUSEPPE   ROBERT   PENORO,
MATTHEW CONNOR, NICHOLAS MULLIGAN,
RANDALL SANTANA, ANTHONY PERRONE,
SCOTT   ETTINGER,   ANTHONY
MASTROPIETRO,   RASHAAD   TAYLOR,
ANTHONY RUGGIERO, JOSEPH MURDOCCA,
KEITH KLEIN, PAUL VASQUENZ, MARK
HENESY, RYAN K. HALL, JUDE PIERRE,
MICHELLE SANTIAGO, ROBERT DITRANI,
BRIAN T. DENZLER, MICHAEL MCGOFF,
OWEN FAY, JOSEPH M. PALMIERI, STEPHEN
INGUAGIATO, GEORGE J. MURPHY, JOSEPH
DEPAOLA,   STEPHEN   BUTTAFUCCO,
MICHAEL SAMOLIS, AINSLEY ATWELL,
JOHN COSTELLO, MATTHEW SINCLAIR,
GLENN CLAPP, MATT KOVAL, JOHN
ARMORE, ROSARIO CURTO, DANIEL STROH,
DANIEL YOUNG, FELICIA J. TSANG, KEVIN
ERKMAN, JOHN TWOMLEY, CRAIG LEAHY,
TIM RIVICCI, MICHAEL FADDA, ANTHONY C.
CARDAZONE,   DAVID   SUMMERFIELD,
BRENDAN MCGEOUGH, BRANDON PHILLIPS,
CHRISTOPHER   INFANTE,   BERNADETTE
MEJIA,   JARED   DYCHKOWSKI,   THOMAS
FEJES, JASON CHARLES, WILLIAM JOHN
SAEZ, PHILLIP J. DARCEY, RODNEY COLON,
SEAN FITZGERALD, ROBERT YULI, on behalf

INDEX NO. 21-cv-6586

STIPULATION OF
DISCONTIUANCE WITH
PREJUDICE AS TO
DEFENDANT UNIFORMED
FIREFIGHTERS
ASSOCIATION OF
GREATER NEW YORK
ONLY

1 of 2

7673007.1

of themselves and all other similarly situated
employees of the New York City Fire Department,

Plaintiffs,

-against-

NEW YORK CITY FIRE DEPARTMENT,
DANIEL A. NIGRO, in his official and individual
capacities, CITY OF NEW YORK, UNIFORMED
FIRE OFFICERS ASSOCIATION, LOCAL 854
INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS, AFFILIATED WITH THE AFL-
CIO, UNIFORMED FIREFIGHTERS
ASSOCIATION OF GREATER NEW YORK,
DISTRICT COUNCIL 37, AFSCME AFL-CIO,
HENRY GARRIDO, in his official and individual
capacities, DISTRICT COUNCIL 37, AFSCME
AFL-CIO, LOCAL 2507, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 3621, JOHN DOE #1-
10, in their official and individual capacities; and
JANE DOE #1-10 in their official and individual
capacities,

Defendants.

---------------------------------------------------------------X

IT IS HEREBY STIPULATED AND AGREED by and between the undersigned attorneys
for the parties that pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(ii), the Plaintiff's Action against
DEFENDANT UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK
**ONLY** is dismissed with prejudice. Each party shall bear its own costs, fees, and attorneys' fees,
except as otherwise agreed to by and between the parties.

Dated:      Carle Place, New York
            March __, 2022

_____
Joshua Feldman
Certilman Balin Adler & Hyman, LLP
Attorneys for Defendant
Uniformed Firefighters Association of
Greater New York
90 Merrick Avenue, 9th Floor
East Meadow, New York 11554
Tel: # (516) 296-7000

_____
Austin Graff
The Scher Law Firm, LLP
Attorneys for the Plaintiffs
One Old Country Road, Suite 385
Carle Place, NY 11514
Tel. # (516) 746-5040

So Ordered:

3/16/2022

2 of 2

7673007.1

JA-385

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOHN GARLAND, VINCENT A. BOTTALICO, TIMOTHY A. HEATON, JOSEPH BEVILACQUA, JOSEPH CICERO, JOSEPH COLUMBIA, ANDREW COSTELLO, JAMES DANIEL DALY III, VINCENT DEFONTE, KENNETH DEFOREST, SALVATORE DEPAOLA, BRIAN DOYLE, NATHAN EVANS, CHRISTOPHER FILOCAMO, KEVIN GARVEY, CHARLES GUARNEIRI, DANIEL J. OSHEA, MARGOT LOTH, MICHAEL LYNCH, DENNIS O'KEEFFE, BRIAN PATRICK SMITH, KURT PFLUMM, CHRISTOPHER RAIMONDI, PAUL SCHWEIT, JOSEPH T. JOHNSON, DAVID BUTTON, PAUL PARR, MARK SINCLAIR, DANIEL BAUDILLE, JOHN DREHER, THOMAS OLSEN, GIUSEPPE ROBERT PENORO, MATTHEW CONNOR, NICHOLAS MULLIGAN, RANDALL SANTANA, ANTHONY PERRONE, SCOTT ETTINGER, ANTHONY MASTROPIETRO, RASHAAD TAYLOR, ANTHONY RUGGIERO, JOSEPH MURDOCCA, KEITH KLEIN, PAUL VASQUENZ, MARK HENESY, RYAN K. HALL, JUDE PIERRE, MICHELLE SANTIAGO, ROBERT DITRANI, BRIAN T. DENZLER, MICHAEL MCGOFF, OWEN FAY, JOSEPH M. PALMIERI, STEPHEN INGUAGIATO, GEORGE J. MURPHY, JOSEPH DEPAOLA, STEPHEN BUTTAFUCCO, MICHAEL SAMOLIS, AINSLEY ATWELL, JOHN COSTELLO, MATTHEW SINCLAIR, GLENN CLAPP, MATT KOVAL, JOHN ARMORE, ROSARIO CURTO, DANIEL STROH, DANIEL YOUNG, FELICIA J. TSANG, KEVIN ERKMAN, JOHN TWOMLEY, CRAIG LEAHY, TIM RIVICCI, MICHAEL FADDA, ANTHONY C. CARDAZONE, DAVID SUMMERFIELD, BRENDAN MCGEOUGH, BRANDON PHILLIPS, CHRISTOPHER INFANTE, BERNADETTE MEJIA, JARED DYCHKOWSKI, THOMAS FEJES, JASON CHARLES, WILLIAM JOHN SAEZ, PHILLIP J. DARCEY, RODNEY COLON, SEAN FITZGERALD, ROBERT YULI, on behalf

INDEX NO. 21-cv-6586

STIPULATION OF DISCONTINUANCE WITHOUT PREJUDICE AS TO DEFENDANT DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 2507 ONLY

1 of 2

**JA-386**

of themselves and all other similarly situated employees of the New York City Fire Department,

                           Plaintiffs,

            -against-

NEW YORK CITY FIRE DEPARTMENT, DANIEL A. NIGRO, in his official and individual capacities, CITY OF NEW YORK, UNIFORMED FIRE OFFICERS ASSOCIATION, LOCAL 854 INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFFILIATED WITH THE AFL-CIO, UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK, DISTRICT COUNCIL 37, AFSCME AFL-CIO, HENRY GARRIDO, in his official and individual capacities, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 2507, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 3621, JOHN DOE #1-10, in their official and individual capacities; and JANE DOE #1-10 in their official and individual capacities,

                          Defendants.

-----------------------------------------------------------------X

      IT IS HEREBY STIPULATED AND AGREED by and between the undersigned attorneys for the parties that pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(ii), the Plaintiff's Action against DEFENDANT DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 2507 **ONLY** is dismissed without prejudice. Each party shall bear its own costs, fees, and attorneys' fees, except as otherwise agreed to by and between the parties.

Dated:       Carle Place, New York
              March _ , 2022

_/s/_

Peter D. DeChiara
Cohen Weiss and Simon LLP
Attorneys for Local 2507
900 Third Avenue, Suite 2100
New York, New York 10022-4869
Tel: # (516) 570-4343

Austin Graff
The Scher Law Firm, LLP
Attorneys for the Plaintiffs
One Old Country Road, Suite 385
Carle Place, NY 11514
Tel. # (516) 746-5040

SO Ordered:
3/16/2020

2 of 2

JA-387

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

| | |
|---|---|
| JOHN GARLAND, VINCENT A. BOTTALICO, TIMOTHY A. HEATON, JOSEPH BEVILACQUA, JOSEPH CICERO, JOSEPH COLUMBIA, ANDREW COSTELLO, JAMES DANIEL DALY III, VINCENT DEFONTE, KENNETH DEFOREST, SALVATORE DEPAOLA, BRIAN DOYLE, NATHAN EVANS, CHRISTOPHER FILOCAMO, KEVIN GARVEY, CHARLES GUARNEIRI, DANIEL J. OSHEA, MARGOT LOTH, MICHAEL LYNCH, DENNIS O'KEEFFE, BRIAN PATRICK SMITH, KURT PFLUMM, CHRISTOPHER RAIMONDI, PAUL SCHWEIT, JOSEPH T. JOHNSON, DAVID BUTTON, PAUL PARR, MARK SINCLAIR, DANIEL BAUDILLE, JOHN DREHER, THOMAS OLSEN, GIUSEPPE ROBERT PENORO, MATTHEW CONNOR, NICHOLAS MULLIGAN, RANDALL SANTANA, ANTHONY PERRONE, SCOTT ETTINGER, ANTHONY MASTROPIETRO, RASHAAD TAYLOR, ANTHONY RUGGIERO, JOSEPH MURDOCCA, KEITH KLEIN, PAUL VASQUENZ, MARK HENESY, RYAN K. HALL, JUDE PIERRE, MICHELLE SANTIAGO, ROBERT DITRANI, BRIAN T. DENZLER, MICHAEL MCGOFF, OWEN FAY, JOSEPH M. PALMIERI, STEPHEN INGUAGIATO, GEORGE J. MURPHY, JOSEPH DEPAOLA, STEPHEN BUTTAFUCCO, MICHAEL SAMOLIS, AINSLEY ATWELL, JOHN COSTELLO, MATTHEW SINCLAIR, GLENN CLAPP, MATT KOVAL, JOHN ARMORE, ROSARIO CURTO, DANIEL STROH, DANIEL YOUNG, FELICIA J. TSANG, KEVIN ERKMAN, JOHN TWOMLEY, CRAIG LEAHY, TIM RIVICCI, MICHAEL FADDA, ANTHONY C. CARDAZONE, DAVID SUMMERFIELD, BRENDAN MCGEOUGH, BRANDON PHILLIPS, CHRISTOPHER INFANTE, BERNADETTE MEJIA, JARED DYCHKOWSKI, THOMAS FEJES, JASON CHARLES, WILLIAM JOHN SAEZ, PHILLIP J. DARCEY, RODNEY COLON, SEAN FITZGERALD, ROBERT YULI, on behalf | **INDEX NO. 21-cv-6586**<br><br>**STIPULATION OF DISCONTIUANCE WITHOUT PREJUDICE AS TO DEFENDANT DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 3621 ONLY** |

1 of 2x

of themselves and all other similarly situated
employees of the New York City Fire Department,

                                                          Plaintiffs,

                          -against-

NEW YORK CITY FIRE DEPARTMENT,
DANIEL A. NIGRO, in his official and individual
capacities, CITY OF NEW YORK, UNIFORMED
FIRE OFFICERS ASSOCIATION, LOCAL 854
INTERNATIONAL        ASSOCIATION        OF
FIREFIGHTERS, AFFILIATED WITH THE AFL-
CIO,     UNIFORMED        FIREFIGHTERS
ASSOCIATION OF GREATER NEW YORK,
DISTRICT COUNCIL 37, AFSCME AFL-CIO,
HENRY GARRIDO, in his official and individual
capacities, DISTRICT COUNCIL 37, AFSCME
AFL-CIO, LOCAL 2507, DISTRICT COUNCIL 37,
AFSCME AFL-CIO, LOCAL 3621, JOHN DOE #1-
10, in their official and individual capacities; and
JANE DOE #1-10 in their official and individual
capacities,

                                                          Defendants.
------------------------------------------------------------------X

        IT IS HEREBY STIPULATED AND AGREED by and between the undersigned attorneys
for the parties that pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(ii), the Plaintiff's Action against
DEFENDANT DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 3621 **ONLY** is
dismissed without prejudice. Each party shall bear its own costs, fees, and attorneys' fees, except
as otherwise agreed to by and between the parties.

Dated:        Carle Place, New York
              March __, 2022

              /s/

_____           _____
Peter D. DeChiara                       Austin Graff
Cohen Weiss and Simon LLP               The Scher Law Firm, LLP
Attorneys for Local 3621                Attorneys for the Plaintiffs
900 Third Avenue, Suite 2100            One Old Country Road, Suite 385
New York, New York 10022-4869           Carle Place, NY 11514
Tel: # (516) 570-4343                   Tel. # (516) 746-5040

                                        So Ordered:

                                        3/16/2022

                                        2 of 2

JA-390

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------- x

JOHN GARLAND, et al., on behalf of themselves and all
other similarly situated employees of the New York City
Fire Department,

Plaintiffs,

- against -

NEW YORK CITY FIRE DEPARTMENT, et al.,

Defendants.

------------------------------------------------------------------------- x

**CITY DEFENDANTS'
NOTICE OF MOTION
TO DISMISS THE
AMENDED
COMPLAINT**

No. 21 Civ 6586 (KAM)(CP)

      **PLEASE TAKE NOTICE** that upon the accompanying City Defendants'
Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint, dated
April 14, 2022, and all the papers and proceedings previously had herein, the undersigned will
move this Court, before the Hon. Kiyo A. Matsumoto, United States District Judge, at the United
States Courthouse for the Eastern District of New York, located at 225 Cadman Plaza, Brooklyn,
New York, 11201, on a date and time to be determined by the Court, pursuant to Rule 12(b)(6)
of the Federal Rules of Civil Procedure, dismissing the Amended Complaint in its' entirety on
the grounds that, as a matter of law, the Complaint fails to adequately state a claim upon which
relief can be granted and for further relief as the Court may deem just and proper.

JA-391

**PLEASE TAKE FURTHER NOTICE THAT,** pursuant scheduling order issued by the Court on March 14, 2022, answering papers, if any, must be served upon the undersigned by on or before May 20, 2022, reply papers, if any, are to be served upon plaintiffs by on or before June 7, 2022 and on June 7, 2022, the parties shall file their respective motion papers via ECF.

Dated:        New York, New York
              April 14, 2022


                                        **HON. SYLVIA O. HINDS-RADIX**
                                        Corporation Counsel of the
                                          City of New York
                                        Attorney for City Defendants
                                        100 Church Street, Room 2-100
                                        New York, New York 10007-2601
                                        (212) 356-4015


                              By:  _____/s/_____
                                        Andrea O'Connor
                                        Assistant Corporation Counsel
                                        aoconnor@law.nyc.gov


TO:    All Counsel (via e-mail and ECF)

**JA-392**

Case 1:21-cv-06586-KAM-CLP   Document 68   Filed 06/13/22   Page 3 of 3 PageID #: 592

Docket No. 21 Civ. 6586 (KAM)(CP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN GARLAND, et al., on behalf of themselves and all
other similarly situated employees of the New York City
Fire Department,

                                                            Plaintiffs,

                                - against -

NEW YORK CITY FIRE DEPARTMENT, et al.,

                                                            Defendants.

**CITY DEFENDANTS' NOTICE OF MOTION TO
DISMISS THE AMENDED COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for City Defendants*
*100 Church Street, Room 2-100*
*New York, N.Y.  10007*

*Of Counsel:  Andrea O'Connor*
*Tel:  (212) 356-4015*

*Due and timely service is hereby admitted.*

*New York, N.Y.  ............................................................. , 20......*

*..........................................................................................., Esq.*

*Attorney for...................................................................................*

JA-393

No. 21 Civ 6586 (KAM)(CP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN GARLAND, et al., on behalf of themselves and all
other similarly situated employees of the New York City
Fire Department,

Plaintiffs,

- against -

NEW YORK CITY FIRE DEPARTMENT, et al.,

Defendants.

**CITY DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS
AMENDED COMPLAINT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York,*
*FDNY and Daniel Nigro*
*100 Church Street, Room 2-100*
*New York, N.Y.  10007*

*Of Counsel:  Andrea O'Connor*
*Tel:  (212) 356-4015*
*Matter No. 2021-039885*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ........................................................................................ 2

      A.  City and DOE Vaccination Mandates ................................................2

      B.  Impact Bargaining ...........................................................................2

      C.  Reasonable Accommodation Process.................................................6

      D.  Procedural History ...........................................................................7

ARGUMENT

      POINT I

            PLAINTIFFS' DUE PROCESS CLAIMS ARE
            BARRED BY THE LAW OF THE CASE
            DOCTRINE ................................................................................. 8

      POINT II

            PLAINTIFFS' DUE PROCESS CLAIMS MUST
            BE DISMISSED ........................................................................ 12

            A.  Applicable Law ..........................................................................12

            B.  Plaintiffs' Placement on LWOP and/or
                Terminations Is Not Discipline ........................................13

            C.  Plaintiffs' Have Been Afforded All Process
                Owed to Them ..................................................................16

      POINT III

            PLAINTIFFS' CONSPIRACY CLAIMS MUST BE
            DISMISSED ............................................................................. 23

      POINT IV

            PLAINTIFFS' CLASS CLAIMS MUST BE
            DISMISSED ............................................................................. 24

JA-395

**Page**

CONCLUSION ........................................................................................................... 25

## TABLE OF AUTHORITIES

**Cases**                                                                                                   **Pages**

Ansbro v. de Blasio, et al.,
    Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty) .................................................5, 6

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ...................................................................................24

Beck-Nichols v. Bianco,
    20 N.Y.3d 540 (2013) ................................................................................15

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)...................................................................................24

Broecker v. N.Y.C. Dep't of Educ.,
    No. 21-CV-6387(KAM)(LRM), 2022 U.S. Dist. LEXIS
    25104 (E.D.N.Y. Feb. 11, 2022)...................................................... 1, 10, 13-14

Cafeteria Workers v. McElroy,
    367 U.S. 886 (1961)....................................................................................18

Capul v. City of N.Y.,
    No. 19 CV 4313 (KPF), 2020 U.S. Dist. LEXIS 92727
    (S.D.N.Y. May 27, 2020),
    aff'd 832 F. App'x. 766 (2d Cir. 2021)...............................................................21

Carr v New York State Dep't of Transportation,
    70 A.D.3d 1110,
    lv to app. den., 14 N.Y.3d 709 (2010) .............................................................16

City School District v. McGraham,
    17 N.Y.3d 917 (2011) .................................................................................16

Clarke v. BOE, et al.,
    Index No. 160787/2021 .............................................................................10

Cleveland Bd. of Educ. v. Loudermill,
    470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)........................................17

Cornejo v. Bell,
    592 F.3d 121 (2d Cir. 2010).........................................................................12

Cravatta v New York State Dep't of Transportation,
    77 A.D.3d 1399 (4th Dep't 2010)..................................................................16

iii

**Cases**                                                                                            **Pages**

Dechberry v. N.Y.C. Fire Dep't,
   124 F. Supp. 3d 131 (E.D.N.Y. 2015) ................................................................12

Dwares v. N.Y.C.,
   985 F.2d 94 (2d Cir. 1993)................................................................................23

Ezekwo v. N.Y.C. Health & Hosps. Corp.,
   940 F.2d 775 (2d Cir. 1991)......................................................................19, 20, 21

Felix v. N.Y.C. Dept. of Citywide Admin. Servs.,
   3 N.Y.3d 498 (2004) ...........................................................................15, 17, 18

Garland v. N.Y.C. Fire Dep't,
   No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142
   (E.D.N.Y. Dec. 6, 2021) .................................................11, 14, 15, 17, 21

Giammarino v. BOE, et al.,
   Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty) ...................................................10

Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.,
   No. 21 CV 00038 (MKV) 2021 U.S. Dist. LEXIS 27205
   (S.D.N.Y. Feb. 12, 2021)......................................................................................9

Hogan v. Fischer,
   738 F.3d 509 (2d Cir. 2013).................................................................................24

In the Matter of the Improper Practice Petition between Uniformed Firefighters
   Association of Greater New York, Local 94, IAFF, AFL-CIO v. City of New
   York, et al.,
   dated October 27, 2021 ................................................................................ 4-5

In re Initial Pub. Offering Sec. Litig.,
   214 F.R.D. 117 (S.D.N.Y. 2002) .................................................................. 24-25

J.S. v. T'Kach,
   714 F.3d 99 (2d Cir. 2013)...................................................................................12

Johnson v. Holder,
   564 F.3d 95 (2d Cir. 2009)....................................................................................9

Johnston v. Tn. of Orangetown,
   562 F. App'x 39 (2d Cir. 2014) ...........................................................................23

Lanzer v. BOE, et al.,
   Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty) ............................................9, 14

iv

**Cases**                                                                                                                    **Pages**

Locurto v. Safir,
    264 F.3d 154 (2d Cir. 2001)...................................................................................23

Loiacono v. BOE, et al.,
    Index No. 161076/2021 ........................................................................................10

MacFall v. City of Rochester,
    495 F. App'x 158 (2d Cir. 2012) .........................................................................13

Maniscalco v. BOE, et al.,
    Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty) ...........................10, 14, 15, 20, 21

Marciano v. De Blasio,
    No. 21-cv-10752 (JSR), 2022 U.S. Dist. LEXIS 41151
    (S.D.N.Y. Mar. 8, 2022) ..................................10-11, 14, 15, 19-20, 21

Martz v. Inc. Vill. of Valley Stream,
    22 F.3d 26 (2d Cir. 1994) ....................................................................................13

Mathews v. Eldridge,
    424 U.S. 319 (1976)......................................................................................17, 22

Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.,
    631 F.3d 57 (2d Cir. 2011)...................................................................................24

McCray v. Patrolman N.A. Caparco,
    761 F. App'x 27 (2d Cir. 2019) ...........................................................................23

McPherson v. New York City Dep't of Educ.,
    457 F.3d 211 (2d Cir. 2006).................................................................................13

Morrissey v. Brewer,
    408 U.S. 471 (1972).............................................................................................18

Musacchio v. United States,
    577 U.S. 237 (2016)...............................................................................................8

Naliboff v. Davis,
    133 A.D.2d 632 (2d Dep't 1987),
    lv to app. den., 71 N.Y.2d 805 (1988) ................................................................16

Matter of New York State Off. of Children & Family Servs. v. Lanterman,
    14 N.Y.3d 275 (2010).........................................................................................16

O'Connor v. Pierson,
    426 F.3d 187 (2d Cir. 2005).................................................................................20

**Cases**            **Pages**

O'Reilly v. Bd. of Educ.,
 Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U)
 (N.Y. Sup. Ct. Jan. 20, 2022)...................................................................9, 14

In the Matter of the Petition for Injunctive Relief between Uniformed Firefighters
 Association of Greater New York, Local 94, IAFF, AFL-CIO v. City of New
 York, et al.,
 dated October 27, 2021; Dkt. No. 15-7 .................................................5

Robison v. Via,
 821 F.2d 913 (2d Cir. 1987)......................................................................17

Romero v. BOE, et al.,
 Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty) .......................................9, 14

Russell v. Coughlin,
 910 F.2d 75 (2d Cir. 1990).........................................................................17

Salas v. BOE, et al.,
 Index No. 160821/2021 ..............................................................................10

Schrimer v. Town of Harrison,
 98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292
 (S.D.N.Y. 1999)...........................................................................................16

Segal v. City of New York,
 459 F.3d 207 (2d Cir. 2006).......................................................................23

Sorano v. City of Yonkers,
 37 A.D.3d 839 (2d Dep't 2007)..................................................................18

Tessler v. Paterson,
 768 F. Supp. 2d 661 (S.D.N.Y. 2011).........................................................23

U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.,
 No. 15 CV 4961 (LTS)(JLC), 2020 U.S. Dist. LEXIS 87534
 (S.D.N.Y. May 19, 2020)............................................................................11

United States v. Quintieri,
 306 F.3d 1217 (2d Cir. 2002).......................................................................9

United States v. Tenzer,
 213 F.3d 34 (2d Cir. 2000)............................................................................8

Webb v. Goord,
 340 F.3d 105 (2d Cir. 2003)........................................................................23

**Cases**                                                                                                 **Pages**

<u>Zinermon v. Burch,</u>
    494 U.S. 113 (1990)..........................................................................................12

**Statutes**

42 U.S.C. § 1983 .........................................................................................23, 24

Fed. R. Civ. P. 12(b)(6)...................................................................................24

N.Y.C. Admin. Code § 14-115 .......................................................................15

N.Y.C. Admin. Code § 15-113 ...............................................................2, 8, 13

N.Y.C. Residency Requirement § 12-120 ......................................................17

N.Y. Civ. Serv. Law § 75...........................................................2, 13, 15, 16, 18, 22

N.Y. Educ. Law § 2509(2)..............................................................................15

N.Y. Educ. Law § 3020 ..................................................................................15

N.Y. Educ. Law § 3020-a .........................................................................9, 10, 14, 15

## PRELIMINARY STATEMENT

On October 20, 2021 the former Commissioner of the New York City Department of Health and Mental Hygiene ("DOHMH"), David A. Chokshi, issued a Commissioner's Order ("COH Order") requiring all New York City employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. by October 29, 2021. The COH Order, and the nearly identical order issued by the DOHMH Commissioner applicable to employees of the New York City Department of Education ("DOE Order"), has been repeatedly upheld as lawful by every Court that has considered it. Thus, the COH Order is unassailable and legally sound.

Critical to this case is that the COH Order creates a condition of employment for City employees, including Plaintiffs, to be vaccinated. On this point, the law of the case is clear. This Court has unequivocally held that the COH Order is a "condition of employment" for Plaintiffs. See Dkt. No. 24, Memorandum and Order, dated December 6, 2021 (hereinafter "December 6 Order"), at p. 14; see also Broecker v. N.Y.C. Dep't of Educ., No. 21-CV-6387(KAM)(LRM), 2022 U.S. Dist. LEXIS 25104, at *22 (E.D.N.Y. Feb. 11, 2022)(holding that the DOE Order created a "lawful condition of employment.").

The law of this case – as well as holdings in similar cases brought in the Southern District of New York and New York Supreme Court – is likewise clear that because vaccination against COVID-19 is a condition of employment, non-compliant employees can be terminated based on their failure to satisfy this condition without invoking applicable disciplinary procedures.

Despite these clear holdings, Plaintiffs, in their Amended Complaint, continue to press legal theories that have been considered and wholly rejected by this Court as well as every other court that has considered the same or similar arguments. Here, plaintiffs are 86 tenured employees of the New York City Fire Department ("FDNY"). Sixty plaintiffs, as of the filing of the Amended Complaint, claim that they have not been vaccinated and therefore have failed to

comply with the COH Order. All plaintiffs – regardless of vaccination status - challenge the consequences of non-compliance with the COH Order. Plaintiffs commenced this action on behalf of themselves and a putative class alleging, among other things, that the FDNY, Daniel A. Nigro and the City of New York (hereinafter "City Defendants"): (1) violated their procedural due process rights guaranteed by their collective bargaining agreements, New York City Administrative Code § 15-113, New York Civil Service Law Section 75 and the Fourteenth Amendment by "suspending" them without pay and subjecting them to potential separation; and (2) conspired to deprive plaintiffs of these due process rights. For the reasons set forth below, these claims are without merit and should be dismissed.

## STATEMENT OF FACTS

**A.      City and DOE Vaccination Mandates**

On August 24, 2021, former Commissioner Dave A. Chokshi, issued a lawful order requiring all DOE employees to show proof of at least one dose of vaccination against COVID-19 by October 1, 2021 (hereinafter "DOE Order"). <u>See</u> DOE Order at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-doe-3.pdf (last accessed April 7, 2022). Similarly, on October 20, 2021, Commissioner Chokshi issued an order requiring all City employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. on October 29, 2021. <u>See</u> City Order at https://www1.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-requirement-city-employees.pdf (last accessed April 7, 2022).

**B.      Impact Bargaining**

Following the issuance of the DOE Order, bargaining units for City and DOE employees met with the City to negotiate over the impact of the order. On September 1, 2021, the United Federation of Teachers filed a Declaration of Impasse with the Public Employment

2

Relations Board ("PERB") over the impact of the DOE Order. See Dkt. No. 15-2, O'Connor Decl., dated Nov. 30, at Exh. B (September 10, 2021 Arbitration Award Decision in Board of Education of the City School District of the City of New York and the United Federation of Teachers, Local 2, AFT, AFL-CIO (hereafter "Impact Arbitration Decision") at 4. PERB appointed an arbitrator and on September 10, 2021, the arbitrator issued a decision, which established: (1) a process for exemptions and accommodation requests; (2) options to voluntarily separate from service with certain benefits; and (3) that the DOE may "unilaterally separate employees" who have not complied with the Vaccination Mandate or have an approved exemption or accommodation and have not opted for either separation option. See id. at 6-13.

Following the issuance of the Impact Arbitration Decision, the City's Office of Labor Relations ("OLR") engaged in impact bargaining with the other unions representing City employees, including the unions representing Plaintiffs herein, i.e. the Uniformed Firefighters Association ("UFA"), the Uniformed Fire Officers Association ("UFOA") and District Council 37, City of New York ("DC 37").

The City and DC 37 were able to successfully negotiate an agreement with respect to the leave and separation procedures for those City employees for whom DC 37 is the bargaining agent who do not comply with the COH Order. See Dkt. No. 21, Corrected Ex. C, Memorandum of Agreement District Council 37, City of New York, and the Board of Education of the City School District for the City of New York, dated October 3, 2021 ("DC 37 Agreement"). The processes established by the DC 37 Agreement apply to medical and religious exemptions as well as accommodations for those who, having received a full course of vaccination, remain unable to mount an immune response. See id. It also set forth that employees who had not requested an exemption, or whose request was denied, were to be placed on leave without pay ("LWOP") by

3

their employing agency starting October 4, 2021.  See id.  While on LWOP, employees continued to be eligible for health insurance.  Id.  Employees who submitted proof of vaccination before November 30, 2021, were eligible to return to their position within one week of submitting their documentation to their agency.  Id.

The agreement also sets forth a process for separation from employment with enhanced payment of accrued paid time off, or extension of LWOP with health benefits.  See id. DC 37 members who did not comply with the COH Order could have opted to separate from service by October 29, 2021, and receive enhanced payment of accrued sick leave and health insurance through September 5, 2022.  Id.  Alternatively, as a second option, members could have opted to have their LWOP extended to September 5, 2022, and maintain health coverage.  Id. Members who chose to extend their LWOP and who do not comply with the COH Order by September 5, 2022, will be deemed to have voluntarily resigned as of that date.  Id.  In addition, the DC 37 Agreement provides that on or after December 1, 2021, the City shall seek to unilaterally separate members who remain out of compliance with the COH Order and have not applied for either the extended leave or separation.  Id.

Defendants UFA and UFOA either did not come to agreement with the City or chose not to engage in any negotiations at all concerning the impact of the City Order, and instead, unsuccessfully challenged the vaccination mandate at the Board of Collective Bargaining and in the Courts.  See Amended Complaint at ¶¶ 130-132.

Defendant UFA, who was later joined by Defendant UFOA, filed an Improper Practice Petition with the Board of Collective Bargaining and, in connection with that Petition, sought injunctive relief.  See Dkt. No. 15-6, Verified Scope of Bargaining and Improper Practice Petition In the Matter of the Improper Practice Petition between Uniformed Firefighters

4

Association of Greater New York, Local 94, IAFF, AFL-CIO v. City of New York, et al., dated October 27, 2021; Dkt. No. 15-7, Verified Petition for Injunctive Relief In the Matter of the Petition for Injunctive Relief between Uniformed Firefighters Association of Greater New York, Local 94, IAFF, AFL-CIO v. City of New York, et al., dated October 27, 2021; see also Dkt. No. 15-8, Letter, dated November 18, 2021 from Harry Greenberg to Steven E. Star.  In so doing, UFA argued that the COH Order "carries severe penalties that are disciplinary in nature by requiring members to go on [LWOP] and face termination which clearly implicates mandatory subjects of bargaining."  See Dkt. No. 15-7.  The Board of Collective Bargaining denied the request for injunctive relief on the grounds that the unions could not establish irreparable harm or a likelihood of success on the merits.  See Dkt. No. 15-9, Notice of Board Determination, Request for Injunctive Relief, dated November 16, 2021.

Additionally, on October 29, 2021, the UFA president, Andrew Ansbro sought an injunction in New York State Court on behalf of FDNY Firefighters to enjoin the City from "implementing [the COH Order] so as to . . . [p]revent the summary discipline, in the form of forced unpaid leave and eventual termination  of UFA members if they remain unvaccinated, which discipline would be arbitrary, capricious and unlawful and a violation of the members' due process rights."  See Dkt. No. 15-4, Verified Petition in Ansbro v. de Blasio, et al., Index No. 159738/2021, (N.Y. Sup, N.Y. Cnty) (hereinafter "Ansbro").  Following a hearing on November 1, 2021, this motion for injunction relief was denied.  See Dkt. No. 15-5, Order in Ansbro, dated November 1, 2021.  With respect to the underlying petition in that case, it sought to permanently enjoin and restrain the City from implementing and enforcing the COH Order as against UFA members, including plaintiffs herein, and to declare that the COH Order is violative of state and city law. See Ansbro, NYSCEF Doc. No. 1, Petition.  In granting the City's motion to dismiss the

5

petition, the Court held that UFA had not "demonstrated that UFA members' constitutional rights are violated by enforcement of the [City] Order." See Ansbro, NYSCEF, Doc. No. 30, Decision.

City employees that are members of UFA and UFOA are not entitled to the benefits negotiated by other unions, i.e. separation from employment with enhanced payment of accrued paid time off or extension of LWOP with health benefits, but did receive the below-described reasonable accommodation procedures available to all City employees. See Amended Complaint at ¶ 144.

C.      Reasonable Accommodation Process

All employees – regardless of whether their unions reached an agreement with the City – were permitted to avail themselves of the below-described reasonable accommodation process. See Amended Complaint at ¶ 144.

In response to the COH Order, the City established additional procedures specific to requests for vaccination-related accommodations in an effort to address the anticipated increase in accommodation requests. One day after the issuance of the City Order, on October 21, 2021, DCAS issued guidance in connection with the City Order, which included the "FAQ on New York City Employees Vaccine Mandate," (see https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/faq-vaccine-mandate.pdf (last accessed on April 7, 2022) and a document entitled "Applying for a Reasonable Accommodation from the Covid-19 Vaccine Mandate." See https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (last accessed April 7, 2022). These documents laid out the guidelines for seeking an exemption from the COH Order through a reasonable accommodation request. Any City employee who was denied a reasonable accommodation by their agency had the right to appeal that denial to the City of New York Reasonable Accommodation Appeals Panel

6

JA-407

("Citywide Panel"). See id. The Citywide Panel was created specifically in response to the DOHMH Order to consider appeals filed by employees whose accommodation requests had been denied by their respective agency. See id.

**Seventy-seven of the 86** plaintiffs applied for a reasonable accommodation with the FDNY pursuant to the above-described processes. See Amended Complaint at ¶ 145. Additionally, 37 of the 77 plaintiffs that applied for a reasonable accommodation appealed the denial of their request to the Citywide Panel. Id. at ¶ 149.

**D.     Procedural History**

Plaintiffs filed this action on November 24, 2021. See Dkt. No. 1. Plaintiffs are FDNY employees who seek to represent themselves and a class of other similarly situated FDNY employees who oppose the consequences of failing to comply with the COH Order. Along with the filing of their Complaint, Plaintiffs sought a preliminary injunction that would have prohibited FDNY from taking any action stemming from plaintiffs' refusal to comply with the lawful COH Order. See Dkt. No. 5. City Defendants opposed that motion on November 29, 2021, see Dkt. Nos. 14-15, and the Court held a hearing in connection with the motion on November 30, 2021. See Dkt. Rpt. Minute Entry for November 30, 2021. The parties were given the opportunity to present evidence and live testimony in connection with this hearing. See Dkt. No. 9. Following this hearing, the Court issued a Memorandum and Order, dated December 6, 2021, denying the preliminary injunction motion. See Dkt. No. 24.

Plaintiffs filed the Amended Complaint on January 5, 2022. See Dt. No. 27.

7

JA-408

**ARGUMENT**

**POINT I**

**PLAINTIFFS' DUE PROCESS CLAIMS ARE BARRED BY THE LAW OF THE CASE DOCTRINE**

On November 24, 2021, Plaintiffs filed an emergency motion for injunctive relief seeking, among other things, to enjoin their placement on LWOP and potential terminations during the pendency of this litigation.  <u>See</u> Dkt. No. 5.  Plaintiffs' November 24 motion was fully briefed and argued prior to it being denied by the Court via the December 6 Order.  <u>See</u> Dkt. No. 24.  Plaintiffs did not appeal the December 6 Order, and their time to do so has long expired.

With respect to Plaintiffs' due process claim, the December 6 Order made four critical holdings.  First, the December 6 Order held that the COH Order was lawfully issued and enforceable against City employees, including plaintiffs.  <u>See</u> December 6 Order at 14.  Second, the December 6 Order unequivocally held that the COH Order is a "lawful condition of employment."  <u>Id.</u>  Third, the December 6 Order held that because vaccination is a condition of employment, termination based on a failure to satisfy that condition "does not trigger the proffer of charges and pre-deprivation hearing requirements of section 15-113" and therefore "Plaintiffs' argument that Defendants violated their statutory rights is of no avail."  <u>Id.</u>  Fourth and finally, the December 6 Order held "that both the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate."  <u>Id.</u> at 16.

Under the law of the case doctrine, "when a court decides upon **a rule of law**, that decision should continue to govern the same issues in subsequent stages in the same case." <u>Musacchio v. United States</u>, 577 U.S. 237 (2016)(emphasis added); <u>see</u> <u>also</u> <u>United States v. Tenzer</u>, 213 F.3d 34, 39 (2d Cir. 2000) (explaining that although not binding, law of the case doctrine counsels a court against revisiting its prior rulings in subsequent stages of the same case

8

absent cogent and compelling reasons). A court "may depart from the law of the case for 'cogent' or 'compelling' reasons including an intervening change in law, availability of new evidence, or 'the need to correct a clear error or prevent manifest injustice.'" Johnson v. Holder, 564 F.3d 95, 99-100 (2d Cir. 2009) (quoting United States v. Quintieri, 306 F.3d 1217, 1230 (2d Cir. 2002)). Further, a written opinion issued in connection with a denial of a preliminary injunction is sufficient to invoke the law of the case doctrine. See Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P., No. 21 CV 00038 (MKV) 2021 U.S. Dist. LEXIS 27205, at *13-14 (S.D.N.Y. Feb. 12, 2021). Here, the Court's four critical holdings identified above wholly foreclose Plaintiffs' due process claims as a matter of law and there is no cogent or compelling reason for the Court to depart from these rulings.

There has been no intervening case law issued that would preclude this Court from adhering to its prior rulings. In fact, intervening law **supports** this Court's prior holdings. On January 20, 2022, decisions were issued in three Article 78 petitions filed by tenured DOE employees holding that vaccination against COVID-19 is a condition of employment for DOE employees and that tenured DOE employees may be terminated for failure to comply with the COH Order without resort to statutory disciplinary procedures. See O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022); Lanzer v. BOE, et al., Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty)(denying the petition and holding that petitioner is not entitled to a hearing under § 3020-a in advance of her placement on LWOP and/or termination because those employment actions are not a "disciplinary consequence" of the petitioner's failure to comply with the DOE Order); Romero v. BOE, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty)(same).

9

Similarly, on March 16, 2022, the Hon. Lynn R. Kotler in New York Supreme Court issued a decision in connection with four Article 78 proceedings filed by tenured teachers who failed to comply with the DOE Order and were challenging their placement on LWOP as "constructive terminations" without due process.  See Maniscalco v. BOE, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty); Giammarino v. BOE, et al., Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty); Clarke v. BOE, et al., Index No. 160787/2021; Salas v. BOE, et al., Index No. 160821/2021 (collectively "Maniscalco Art. 78 Decision").  In denying the petitions, the Court held that Education Law § 3020-a "does not apply here because the DOE mandate and subsequent IAA [i.e. Impact Arbitration Decision] create an employment qualification, not a disciplinary action." See Maniscalco Art. 78 Decision at p. 9.  Finally, just last week, the Hon. Lawrence Love reached the same conclusion in yet another Article 78 filed by a tenured teacher.  See Loiacono v. BOE, et al., Index No. 161076/2021, NYSCEF Doc. No. 35.

On February 11, 2022, this Court unequivocally held that "the [DOE] Vaccination Mandate is a lawful condition of employment and, thus, upon termination, Plaintiffs have been provided constitutionally adequate process under their applicable CBAs [i.e. collective bargaining agreement] as affected by the relevant Arbitration Awards or agreements and all relevant state statutes." Broecker v. N.Y.C. Dep't of Educ., No. 21 CV 6387(KAM)(LRM), 2022 U.S. Dist. LEXIS 25104, at *22 (E.D.N.Y. Feb. 11, 2022).

On March 8, 2022, the Hon. Jed S. Rakoff in the Southern District of New York held that the City Order created a "condition of employment" for City employees and that "the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the [applicable] disciplinary procedures." Marciano v. De Blasio, No. 21-cv-10752 (JSR), 2022 U.S.

10

JA-411

Dist. LEXIS 41151, at *25-26 (S.D.N.Y. Mar. 8, 2022) quoting Garland v. N.Y.C. Fire Dep't, No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 at * 14 (E.D.N.Y. Dec. 6, 2021).

      Notably, the plaintiffs here and the plaintiff in Marciano (a detective employed by the New York City Police Department) are members of unions that did not reach an agreement with the City regarding the impact of the COH Order.  Despite that, the Court in Marciano, in reliance on the December 6, Order, held that the COH Order created a condition of employment for the plaintiff such that he could be terminated for failure to comply with the order without resort to applicable disciplinary procedures contained in the Administrative Code.

      Likewise, there is no new evidence or allegations for the Court to consider in connection with deciding this motion to dismiss.  Plaintiffs had an opportunity to amend their complaint following the issuance of the December 6 Order.  Despite that, the Amended Complaint contains no new factual allegations that were not before the Court when it issued the December 6 Order.  Therefore, the law of the case doctrine applies.  See U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co., No. 15 CV 4961 (LTS)(JLC), 2020 U.S. Dist. LEXIS 87534, at *8 (S.D.N.Y. May 19, 2020)(where a party presents the same allegations or factual record previously deemed deficient by a court, the law of the case doctrine forecloses reconsideration of the court's conclusion).

      Finally, there is no clear error in the Court's prior decisions that requires correcting. This is a point that Plaintiffs concede as evidenced by their decision not to appeal the December 6, Order.  Nor is a departure from the Court's prior rulings necessary to "prevent manifest injustice."  As the recent case law contained in this memorandum makes clear, this Court's prior holdings in this case are exactly in line with the decisions of the other Courts that have considered the same or similar issues pertaining to the COH Order and/or the DOE Order.  Therefore, because

11

there is no "cogent and compelling reason" for the Court to revisit its prior holdings in this case, City Defendants respectfully submit that Plaintiffs' procedural due process claims are barred by the law of the case doctrine and therefore must be dismissed.

POINT II

**PLAINTIFFS' DUE PROCESS CLAIMS MUST
BE DISMISSED**

In the event the Court does not dismiss Plaintiffs' due process claims as barred by the law of the case doctrine, City Defendants respectfully submit that these claims are otherwise without merit and must be dismissed as a matter of law.

**A.      Applicable Law**

In order to state a procedural due process violation, a plaintiff must allege that (1) the challenged conduct was "committed by a person acting under color of state law;" and (2) such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." See Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010). "Where a plaintiff alleges violations of procedural due process, the deprivation by state action of a constitutionally protected interest in life, liberty, or property is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." Dechberry v. N.Y.C. Fire Dep't, 124 F. Supp. 3d 131, 158-60 (E.D.N.Y. 2015) (internal quotation marks omitted) (citing, among others, Zinermon v. Burch, 494 U.S. 113, 125 (1990)).

"To plead a violation of procedural due process, a plaintiff must plausibly allege that he was deprived of property without constitutionally adequate pre- or post-deprivation process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013). "[A plaintiff] must first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." Id. (internal citation and quotation marks

12

omitted). "Property interests protected by due process . . . are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." MacFall v. City of Rochester, 495 F. App'x 158, 159 (2d Cir. 2012) (quoting Martz v. Inc. Vill. of Valley Stream, 22 F.3d 26, 29 (2d Cir. 1994). In order to establish a protected property interest, a plaintiff must show that he had a "legitimate claim of entitlement" to the interest, and not just a "unilateral expectation" of it. Id. (quoting McPherson v. New York City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006)).

**B.      Plaintiffs' Placement on LWOP and/or Terminations Is Not Discipline**

As noted above, the December 6 Order conclusively ruled that Plaintiffs' placement on LWOP and their potential terminations do not constitute discipline. See December 6 Order at 14. Despite that ruling, the Amended Complaint adheres to the faulty notion that Plaintiffs are being subjected to "discipline" without the process owed to them via Administrative Code § 15-113 or Civil Service Law § 75. Not so. Rather, by virtue of certain Plaintiffs' unwillingness to comply with the COH Order, their inability or unwillingness to obtain an accommodation in connection with the COH Order and, for the plaintiffs that are DC 37 members, their unwillingness to opt for any of the separation or leave options offered in the DC 37 Agreement, they cannot continue their public employment with the FDNY.

On this point, every Court that has encountered this question – including this one – has unequivocally held that the COH Order, and the equivalent DOE Order, creates a lawful condition of employment and that the termination of a public employee for failure to satisfy that condition is unrelated to job performance, misconduct, or competency and therefore does not implicate applicable disciplinary procedures. See December 6 Order at 14; see also Broecker v. N.Y.C. Dep't of Educ., No. 21 CV 6387(KAM)(LRM), 2022 U.S. Dist. LEXIS 25104, at *22

13

(E.D.N.Y. Feb. 11, 2022); <u>Maniscalco</u> Art. 78 Decision at p. 9; <u>O'Reilly</u>, 2022 N.Y. Slip. Op.

30173(U), ¶ 3; <u>Lanzer</u>, Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); <u>Romero</u>, Index No.

160353/2021 (N.Y. Sup., N.Y. Cnty); <u>Garland</u>, 2021 U.S. Dist. LEXIS 233142 at *25; <u>Marciano</u>,

2022 U.S. Dist. LEXIS 41151, at *25-26 (same).

   In <u>O'Reilly</u>, the petitioner, a tenured teacher, argued that her placement on LWOP

was an effective "termination" and that her "dismissal" violated her due process rights because she

was not afforded "notice and evidentiary hearing required by Education Law § 3020-a."  22 N.Y.

Slip. Op. 30173(U) ¶ 2.  The Court, however, found that the petitioner "chose to ignore all of the[]

options" available to her in that "she did not show proof of vaccination, did not apply for an

accommodation and did not seek to extend her leave without pay in exchange for extended health

benefits."  <u>Id.</u>

   The Court therefore held that the employment actions taken by DOE as a result of

the petitioner's inaction was "not discipline under the Education Law and instead was merely a

response to petitioner's refusal to comply with a condition of employment."  <u>Id.</u> at ¶ 2.  Notably,

the Court further held that "[d]iscipline involves alleged misconduct, not a prerequisite to doing

the job in the first instance."  <u>Id.</u> at ¶ 3.  In denying the Article 78 petition, the Court noted that the

petitioner was "seek[ing] an end run around challenging the legality of the mandate by classifying

it [i.e. her placement and LWOP and termination] as discipline – [which is] a completely different

situation.  The requirement to follow the mandate at issue is, as stated above, a condition of

employment and petitioner admits that she did not satisfy that condition or seek an exemption."

<u>Id.</u> at ¶ 5.  Similarly, in denying the four separate petitions, the Court in the <u>Maniscalco</u> Art. 78

Decision, held that § 3020-a "does not apply here because the DOE mandate and subsequent IAA

[i.e. Impact Arbitration Decision] create an employment qualification, not a disciplinary action."
See Maniscalco Art. 78 Decision at p. 9.

In Marciano, a tenured NYPD detective argued that his procedural due process
rights were violated because the NYPD failed to adhere to the disciplinary procedures set forth in
Administrative Code § 14-115 and the NYPD Patrol Guide in enforcing the COH Order.  See
Marciano, 2022 U.S. Dist. LEXIS 41151, at *25-26.  In dismissing this claim, the Court held that
the COH Order created a "condition of [plaintiff's] employment, that is, that he be vaccinated
against COVID-19" and that his termination based on his failure to meet that condition did not
implicate applicable statutory or NYPD disciplinary procedures.  Id.

This recent precedent is in line with case law holding that "under New York law,
the termination of a public employee based on the employee's failure to satisfy a qualification of
employment unrelated to job performance, misconduct, or competency does not implicate the
disciplinary procedures set forth" in the applicable disciplinary statute.  See Garland, 2021 U.S.
Dist. LEXIS 233142 at *11-12 citing O'Connor, 852 N.Y.S.2d at 538; Beck-Nichols v. Bianco,
20 N.Y.3d 540, 558–59 (2013) (noting that "a residency requirement defines eligibility for
employment . . . unrelated to job performance, misconduct or competency" and thus concluding
that the plaintiffs were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 2509(2), 3020, and
3020-a); Felix v. N.Y.C. Dept. of Citywide Admin. Servs., 3 N.Y.3d 498, 505 (2004) ("the act of
failing to maintain one's residence within the municipality is separate and distinct from an act of
misconduct by a municipal employee in the performance of his or her work. Failure to maintain
residence renders an individual ineligible for continued municipal employment . . . while an act of
misconduct invokes Civil Service Law § 75 disciplinary procedures.").

15

Indeed, the Court of Appeals has upheld the distinction between issues of "job performance, misconduct or competency," which are subject to the applicable disciplinary procedures, from a "condition of employment" which is not subject to such procedures. <u>Matter of New York State Off. of Children & Family Servs. v. Lanterman</u>, 14 N.Y.3d 275, 282 (2010); <u>see also</u> <u>City School District v. McGraham</u>, 17 N.Y.3d 917, 918 n.1 (2011); <u>Cravatta v New York State Dep't of Transportation</u>, 77 A.D.3d 1399 (4th Dep't 2010)(failure to maintain commercial drivers' license [CDL] results in termination without Civil Service Law § 75 or contractual process); <u>Carr v New York State Dep't of Transportation</u>, 70 A.D.3d 1110 (3d Dep't), <u>lv to app. den.</u>, 14 N.Y.3d 709 (2010) (same; loss of CDL); <u>Moogan</u>, 8 A.D.3d at 69 (termination of EMT without Civil Service Law § 75 process for failure to maintain certification upheld against challenge that there was a violation of Civil Service Law § 75 and the Federal and State Due Process Clauses.  Court held that plaintiff did not have certification and, thus, there is no issue of fact to try at a hearing); <u>Naliboff v. Davis</u>, 133 A.D.2d 632 (2d Dep't 1987), <u>lv to app. den.</u>, 71 N.Y.2d 805 (1988); <u>Schrimer v. Town of Harrison</u>, 98 Civ. 2582 (AGS), 1999 U.S. Dist. LEXIS 1292 (S.D.N.Y. 1999) (Due Process Clause does not require a disciplinary hearing prior to termination for non-residency).

Thus, employment actions taken by the City, up to and including termination, with respect to City employees who failed to comply with the COH Order is not disciplinary action.

**C.    Plaintiffs' Have Been Afforded All Process Owed to Them**

As detailed above, the Court has already ruled "that both the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate," <u>see</u> December 6, Order at 16, and there is no basis to disturb this holding.  City Defendants respectfully submit that this is an end to Plaintiffs' due process claim.

16

However, to the extent the Court provides fresh consideration to the process provided to Plaintiffs in advance of their placement on LWOP and/or potential termination, it is clear that Plaintiffs were provided with all the process owed to them in advance of their placement on LWOP and/or potential termination.  Indeed, Plaintiffs conflate the process they believe they were owed under the various applicable disciplinary statutes with the constitutional minima required by the New York State and United States Constitutions.  Plaintiffs are incorrect.

"[T]o determine whether process is adequate, the Court looks to '[f]ederal constitutional standards rather than state statutes [to] define the requirements of procedural due process.'"  Garland, 2021 U.S. Dist. LEXIS 233142, at *11 (alternation in original) quoting Robison v. Via, 821 F.2d 913, 923 (2d Cir. 1987); also citing Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985) ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute."); Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires.").  Thus, "at issue is not whether state procedural law was correctly followed or applied, but whether the process provided satisfies the requirements imposed by the Constitution."  December 6 Order at 16.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Loudermill, 470 U.S. 532 at 546; Felix, 3 N.Y.3d at 504-06 ("A municipal employee must be afforded procedural due process before he or she is dismissed from employment for violating New York City's residency requirement"; here the process provided for in § 12-120, which provides for

17

notice and an opportunity to refute allegations of non-residence, are all the process due); Sorano v. City of Yonkers, 37 A.D.3d 839 (2d Dep't 2007)(in accordance with Felix, a police officer can be terminated for non-residency without a Civil Service Law § 75 process but due process requires that the employee be provided with notice of the non-compliance and an opportunity to respond prior to termination). Moreover, as the Supreme Court has held time and again, "'[d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Cafeteria Workers v. McElroy, 367 U.S. 886, 895 (1961). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands.' Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

All Plaintiffs were provided with ample advance notice that, if they chose not to comply with the COH Order, they would be placed on LWOP and/or potentially terminated. On October 21, 2021, FDNY Chief of Operations sent buck slip OPS-21-10-08 ("Buck Slip") to all FDNY commands informing employees of the COH Order. See Dkt. No. 17-1. The Buck Slip contained a summary of the COVID-19 vaccine mandate and a copy of the entire COH Order and FAQs. Id. The Buck Slip also set forth the process by which an employee could apply for a religious or medical exemption from the COH Order: "Members may be considered for exemption from the COVID-19 vaccine mandate under limited circumstances on the basis of a sincerely held religious belief or a medical contraindication. Requests for exemptions must be submitted by email to the EEO Office at EEORA@fdny.nyc.gov by 10/27 in order for the employee to not be placed on unpaid leave status on 11/1. The forms necessary to file a Reasonable Accommodation Request can be found in PA/ID 1-77, Addendum 2. Note there are separate forms for different types of Reasonable Accommodations." Id. Additionally, any City employee, including plaintiffs herein, who was denied a reasonable accommodation by their agency has the right to appeal that denial to

18

Citywide Panel. _See_ https://www1.nyc.gov/assets/dcas/downloads/pdf/guidelines/vaccine-reasonable-accommodation-process.pdf (last accessed April 7, 2022).

Notably, **77 of the 86** availed themselves of the above-described processes in applying for a reasonable accommodation with the FDNY pursuant to the above-described processes. _See_ Amended Complaint at ¶ 145. Additionally, 37 of the 77 plaintiffs that applied for a reasonable accommodation appealed the denial of their request to the Citywide Panel. _Id._ at ¶ 149. For those plaintiffs covered by the DC 37 Agreement, they could have also opted to separate from employment and continue their health benefits through September 5, 2022 or extend their LWOP through September 5, 2022 and also maintain health coverage during that time period. _See_ Dkt. No. 21, Corrected Ex. C.

Thus, any City employee had the opportunity to seek a religious or medical accommodation to the COH Order, and could continue to remain on pay status pending the outcome of that request and any subsequent appeal. Further, DC 37 members could have voluntarily separated from the City **or** extended their LWOP with health benefits. After this Buckslip was issued, Plaintiffs certainly could have sought relief via an Article 78 proceeding which would have provided them with a sufficient pre-deprivation remedy.

The Second Circuit has held that, prior to terminating an employee with a protected property interest in their employment, the employee need only be provided with "an opportunity to respond to [their] concerns before a final decision was made" and that this could be "accomplished through informal procedures; no formal hearing was required." _Ezekwo v. N.Y.C. Health & Hosps. Corp._, 940 F.2d 775, 786 (2d Cir. 1991).

In examining this exact issue, the Court in _Marciano_ held that "[i]n order to satisfy the constitutional minimum, the predeprivation proceedings 'need not be elaborate.'" _Marciano,_

19

2022 U.S. Dist. LEXIS 41151, at *27-28 quoting O'Connor v. Pierson, 426 F.3d 187, 198 (2d Cir. 2005). In Marciano, the plaintiff – an NYPD detective – was provided notice of the requirement to be vaccinated (or to seek an accommodation) and "was given the opportunity to be heard as to the application of the [City] Order against him by seeking an accommodation through the appropriate channels." Id. The Court held that these "informal procedures" satisfied constitutional due process and therefore dismissed the plaintiff's entire complaint, including his procedural due process claim. Id. ("Marciano fails to articulate how this process falls below the constitutional floor; and, given the case law making clear that 'informal procedures,' as opposed to a 'formal hearing,' are sufficient prior to an employee's termination, see Ezekwo v. N.Y.C. Health & Hosps. Corp., 940 F.2d 775, 786 (2d Cir. 1991), it appears that he was afforded constitutionally adequate process."). This holding, again, reiterates this Court's prior holding which found that the above-described notice and opportunities to be heard were constitutionally sufficient.

Similarly, in the Maniscalco Art. 78 Decision, regarding the petitioners' due process claims, the Court first found that the petitioners had the option to seek a reasonable accommodation from the vaccination mandate. Id. To the extent they did not seek an accommodation, or an accommodation request was denied, the petitioners then "had three choices:" (1) voluntarily separate and maintain health benefits; (2) extend their LWOP and maintain their health benefits; or (3) "do nothing" but risk that they "could be unilaterally separated from the DOE beginning on December 1, 2021." Id. The Court held that the petitioners "had ample notice of the consequences of any decision they made. All petitioners decided to make no decision at all." Id. The Court held that this was constitutionally sufficient notice. Id.

Regarding an opportunity to be heard, the Court in the Maniscalco Art. 78 Decision, held that the reasonable accommodation procedures, including the appeals process for denials of

20

accommodation requests, along with the leave and separation options sufficed as opportunities to be heard because such opportunities "can also be procedure[s] that permit[] a party to appeal a decision or to elect a course of action." See id. at 10 citing Garland 2021 U.S. Dist. LEXIS 233142, at *17-18. In sum, Plaintiffs were all afforded an opportunity to be heard via an accommodation request and via the separation or extended LWOP process. Notably, **77 of the 86** Plaintiffs herein availed themselves of either the above-described processes.

That Plaintiffs may not like these processes, and – in very limited circumstances - may have chosen not to avail themselves of these processes, does not change the fact that these processes were available to them. See December 6 Order at 16 ("Plaintiffs, not having availed themselves of the pre-deprivation opportunity to be heard, cannot now claim that they were deprived of their constitutional right to due process.") citing Capul v. City of N.Y., No. 19 CV 4313 (KPF), 2020 U.S. Dist. LEXIS 92727, at *39 (S.D.N.Y. May 27, 2020)("Plaintiffs are not entitled to circumvent established due process protections and then claim they were never afforded such protections."), aff'd 832 F. App'x. 766 (2d Cir. 2021); see also Maniscalco Art. 78 Decision at 10 (the petitioners decision not to avail themselves of any of the processes available to them "does not mean petitioners were denied due process.").

To the extent Plaintiffs contend that due process requires an adversarial and/or evidentiary hearing to be held, such contention is unsupported. Ezekwo and, recently, Marciano and the Maniscalco Art. 78 Decision, make clear that an "opportunity to be heard" does not equate to a "hearing." Ezekwo, 940 F.2d at 786; see also Marciano, 2022 U.S. Dist. LEXIS 41151, at *27-28; Maniscalco Art. 78 Decision ("An opportunity to be heard does not equate to a hearing")(internal quotations omitted). This is particularly true when there are no factual disputes that require resolution via a hearing. This is precisely the point of the Supreme Court's teaching

21

that "due process is flexible and calls for such procedural protections <u>as the particular situation</u> <u>demands.</u>" <u>Mathews</u>, 424 U.S. at 334 (emphasis added).   For example, in <u>Moogan</u>, it was undisputed that the plaintiff failed to maintain a qualification of employment; namely, his EMT certification.   See <u>Moogan</u>, 8 A.D.3d at 69.   Because of that, the Court held that there was "no factual issue to be determined at a hearing" and therefore neither "§ 75 or federal constitutional due process" required a hearing before his termination.   <u>Id.</u>   Here, the same is true.

Plaintiffs further contend that they are entitled to hearings pursuant to their respective collective bargaining agreements.   This argument again conflates the constitutional minimum required by the due process clause with contractual agreements that do not implicate the New York or United States Constitutions.

Further, the Second Circuit has held that "the Due Process Clause of the Fourteenth Amendment is not violated even when a state employer intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post[-]deprivation remedy." <u>Hellenic Am. Neighborhood Action Comm</u>, 101 F.3d at 880.   Here, the post-deprivation procedures available to Plaintiffs clearly satisfy the constitutional minimum.   As indicated above, for the Plaintiffs who sought exemptions from the vaccination requirement, the Citywide Panel further provided an additional review layer, allowing employees to challenge the denial of their accommodation to a designated panel.   Additionally, while an appeal was pending, the employee remained on payroll pending the appeal.   In the event an appeal was denied, the employee would be placed on LWOP.   If an employee became vaccinated while on LWOP prior to November 30, 2021, the employee had a right of return to their same assignment within a week of providing proof of vaccination to their agency.   These post-deprivation processes sufficiently satisfy the constitutional minimum for due process.   See December 6 Order at 15-17.

22

Finally, the availability of an Article 78 review further precludes any due process claims. Id. at 881 ("Where, as here, Article 78 gave . . . a meaningful opportunity to challenge [the debarment] . . ., [Plaintiff contractor] was not deprived of due process simply because [it] failed to avail [itself] of the opportunity."); Johnston v. Tn. of Orangetown, 562 F. App'x 39, 41 (2d Cir. 2014)("existence of [an Article 78] proceeding confirms that state law afforded him adequate process to defeat his constitutional claim"); Segal v. City of New York, 459 F.3d 207, 216-217 (2d Cir. 2006); Locurto v. Safir, 264 F.3d 154, 173-174 (2d Cir. 2001); Tessler v. Paterson, 768 F. Supp. 2d 661, 671 (S.D.N.Y. 2011)(dismissing plaintiff's procedural due process claim where Article 78 proceeding was available to contest termination of employment).

Given all the lengthy notice and repeated opportunities to be heard that Plaintiffs have been provided, and the availability of Article 78 proceedings, Plaintiffs have been afforded all constitutional process due to them. Therefore, Plaintiffs' due process claims must be dismissed.

## POINT III

### PLAINTIFFS' CONSPIRACY CLAIMS MUST BE DISMISSED

To state a viable § 1983 conspiracy claim, a plaintiff must allege "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." McCray v. Patrolman N.A. Caparco, 761 F. App'x 27,31 (2d Cir. 2019) (quotations omitted). Plaintiff "must [plead] some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb v. Goord, 340 F.3d 105, 110-11 (2d Cir. 2003) (internal quotation marks omitted). "[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." Dwares v. N.Y.C., 985 F.2d 94, 100 (2d Cir. 1993).

JA-424

Here, the Amended Complaint contains boilerplate allegations that City Defendants "in a conspiracy" with each of the other defendants "have engaged in a course of action and behavior rising to the level of a policy, custom, and condoned practice, which has deprived Plaintiffs of their rights, privileges and immunities secured by the Constitution and laws in violation of 42 U.S.C. § 1983." Beyond this recitation of the standard applicable to conspiracy claims, no factual allegations are contained in the Amended Complaint regarding the conspiracy claim.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Hogan v. Fischer, 738 F.3d 509, 514 (2d Cir. 2013) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ. of City Sch. Dist. of N.Y., 631 F.3d 57, 63 (2d Cir. 2011) (quoting Iqbal, 556 U.S. at 678) (internal quotation omitted). Thus, the pleading standard "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Here, beyond a recitation of the standard applicable to conspiracy claims, no factual allegations are contained in the Amended Complaint regarding the conspiracy claim. As such, this claim must be dismissed.

### POINT IV

### PLAINTIFFS' CLASS CLAIMS MUST BE DISMISSED

Because all of Plaintiffs' individual claims for damages and declaratory relief must be dismissed, Plaintiffs' class claims must be dismissed as well. See, e.g., In re Initial Pub.

Offering Sec. Litig., 214 F.R.D. 117, 122 (S.D.N.Y. 2002)("Courts in this circuit have repeatedly

held that, '[i]n order to maintain a class action, Plaintiffs must first establish that they have a valid

claim . . .  If the named plaintiffs have no cause of action in their own right, their complaint must

be dismissed, even though the facts set forth in the complaint may show that others might have a

valid claim.'") (citation omitted).

**CONCLUSION**

For the foregoing reasons, defendants respectfully request that their motion to

dismiss the Complaint in its entirety be granted, that judgment in favor of defendants be entered,

and that defendants be granted costs, fees, and disbursements together with such other and further

relief as the Court deems just and proper.

Dated:      New York, New York
            April 14, 2022

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
  City of New York
Attorney for Defendants DOE and Porter
100 Church Street, Room 2-100
New York, New York 10007
212-356-4015


By:      _____/s/_____
         Andrea O'Connor
         Assistant Corporation Counsel

JA-426

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
JOHN GARLAND, *et al.*                                     :
                     *Plaintiffs*,      :
            -against-                            :
NEW YORK CITY FIRE DEPARTMENT, *et al.*,   :      Case No.
                   *Defendants.*   :      1:21-cv-06586-KAM-CLP
                                  :
                                  :
-------------------------------------------------------------------- x

### NOTICE OF DC 37 DEFENDANTS' MOTION TO DISMISS

      *PLEASE TAKE NOTICE* that Defendants District Council 37, AFSCME, AFL-

CIO and DC 37 Executive Director Henry Garrido move the Court for an order, pursuant to

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), dismissing the claims against them in the

January 5, 2022 amended complaint [Docket Entry #27] and granting such other relief as is

proper.  The return date of the motion will be set by the Court.

                        Respectfully submitted,

                        /s/ *Peter D. DeChiara*
                        Peter D. DeChiara
                        Hanan B. Kolko
                        Melissa S. Woods
                        COHEN WEISS AND SIMON LLP
                        900 Third Avenue, Suite 2100
                        New York, N.Y. 10022
                        (212) 356 0216
                        pdechiara@cwsny.com
                        hkolko@cwsny.com
                        mwoods@cwsny.com

9797458.2

1

**JA-427**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused the forgoing motion and the accompanying memorandum of

law to be served this 14th day of April 2022, by email, upon:

Jonathan L. Scher
Austin R. Graff
The Scher Law Firm, LLP
One Old Country Road, Suite 385
Carle Place, NY 11514
Email: jscher@scherlawfirm.com
Email: agraff@scherlawfirm.com
*Attorneys for Plaintiffs*

Andrea Mary O'Connor
New York City Law Department
100 Church Street, Room 2-104
New York, NY 10007
Email: aoconnor@law.nyc.gov
*Attorney for Defendants*
*NYC Fire Department, Daniel A Nigro, and City of New York,*

Seth H. Greenberg
Greenberg Burzichelli Greenberg P.C.
3000 Marcus Avenue, Suite 1W7
Lake Success, NY 11042
516-570-4343
Fax: 516-570-4348
Email: sgreenberg@gbglawoffice.com
*Attorney for Defendant*
*Uniformed Fire Officer Association, Local 854 International*
*Association of Firefighters, Affiliated with the AFL-CIO*

Jennifer A. Bentley
Joshua Feldman
Paul S. Linzer
Certilman Balin Adler & Hyman
90 Merrick Avenue, 9th Floor
East Meadow, NY 11554
Tel: 516-296-7178
Fax: 516-296-7111
Email: jbentley@certilmanbalin.com
Email: jfeldman@certilmanbalin.com
Email: plinzer@certilmanbalin.com
Attorneys for Defendant
*Uniformed Firefighters Association of Greater New York*

2

_/s/ Peter D. DeChiara_
Peter D. DeChiara

JA-429

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
JOHN GARLAND, *et al.*                                          :
                                                               :
                        *Plaintiffs*,                          :
                                                               :
            -against-                                          :        Case No.
                                                               :        1:21-cv-06586-KAM-CLP
NEW YORK CITY FIRE DEPARTMENT, *et al.*,                        :
                                                               :
                        *Defendants.*                          :
                                                               :
                                                               :
                                                               :
------------------------------------------------------------------- x

**MEMORANDUM OF LAW OF DC 37 DEFENDANTS
IN SUPPORT OF THEIR MOTION TO DISMISS**

Peter D. DeChiara
Hanan B. Kolko
Melissa S. Woods
COHEN WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, N.Y. 10022
(212) 356-0216
pdechiara@cwsny.com
hkolko@cwsny.com
mwoods@cwsny.com

9797465.5

## TABLE OF CONTENTS

                                                                              Page(s)

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND ................................................................................................................. 3

    The Parties ...................................................................................................... 3

    The Vaccine Mandate ...................................................................................... 3

    The DC 37 Agreement ..................................................................................... 3

    Plaintiffs' Suit ................................................................................................. 4

    The Amended Complaint ................................................................................. 5

ARGUMENT ....................................................................................................................... 6

I.     STANDARD GOVERNING MOTION TO DISMISS ......................................... 6

II.    THE SECTION 1983 CLAIMS AGAINST DC 37 AND GARRIDO IN COUNTS
      5 AND 6 FAIL AS A MATTER OF LAW ......................................................... 6

      A.    The Court Has Held that FDNY Did Not Violate Plaintiffs' Constitutional
           Rights by Placing Them on Unpaid Leave ............................................ 6

      B.    The Amended Complaint Alleges No Facts Showing that the DC 37
           Defendants Acted Under Color of State Law .......................................... 7

      C.    The Amended Complaint Fails to Allege Facts Showing that DC 37 and
           Garrido Themselves Violated Plaintiffs' Constitutional Rights ......................... 12

III.   THE REQUEST FOR A DECLARATORY JUDGMENT IN COUNT 2 FAILS
      SINCE DC 37 HAD STATUTORY AUTHORITY TO ENTER INTO THE DC
      37 AGREEMENT ............................................................................................... 13

CONCLUSION.................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abrahamson v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*,
No. 01-cv-10859 (CM), 2002 WL 1354711 (S.D.N.Y. June 21, 2002) ...................................8

*Air Line Pilots Ass'n, Int'l v. O'Neill*,
499 U.S. 65 (1991)....................................................................................................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................6, 12

*Callaghan v. United Fed'n of Teachers*,
133 A.D.3d 412 (N.Y. App. Div. 2015) ...........................................................................7

*Ciambriello v. County of Nassau*,
292 F.3d 307 (2d Cir. 2002)....................................................................................7, 8, 9

*Civil Serv. Bar Ass'n, Local 237, Int'l Bhd. of Teamsters v. City of New York*,
64 N.Y.2d 188 (1984) ...............................................................................................10

*Civil Serv. Employees Ass'n v. New York State (Unified Court System)*,
73 Misc.3d 874 (N.Y. Sup. Ct. 2021) ............................................................................12

*Darby v. Greeman*,
14 F.4th 124 (2d Cir. 2021) .........................................................................................6

*Dolce v. Bayport-Blue Point Union Free School Dist.*,
286 A.D.2d 316 (App. Div. 2001) ................................................................................10

*Eaddy v. Jemiola*,
No. 3:11-cv-1081 (MPS), 2013 WL 441077 (D. Conn. Feb. 5, 2013) ............................7, 8, 9

*Kasper v. City of Middletown*,
352 F.Supp.2d 216 (D. Conn. 2005)............................................................................8, 9

*McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am.*,
107 F.Supp.2d 311 (S.D.N.Y. 2000).......................................................................8, 9, 10

*McIntyre v. Longwood Cent. School Dist.*,
658 F.Supp.2d 400 (E.D.N.Y. 2009), *aff'd*, 380 Fed. Appx. 44 (2d Cir. 2010) .......................8

*Polk County v. Dodson*,
454 U.S. 312 (1981)..........................................................................................8, 9, 10

*Rodriguez-Rivera v. City of New York*,
    No. 05-cv-10897 (LAP), 2007 WL 766195 (S.D.N.Y. Mar. 12, 2007)....................................7

*SAM Party of New York v. Kosinski*,
    No. 20-cv-323 (JGK), 2021 WL 6061301 (S.D.N.Y. Dec. 22, 2021) ................................6

*Steele v. Louisville & N.R. Co.*,
    323 U.S. 192 (1944)...........................................................................10

*Tangreti v. Bachman*,
    983 F.3d 609 (2d Cir. 2020).................................................................12

*Victory v. Pataki*,
    814 F.3d 47 (2d Cir. 2016)..................................................................12

**Statutes**

42 U.S.C. §1983........................................................................2, 6, 7

N.Y. Civ. Serv. L. §204(1)...............................................................13

N.Y. Civ. Serv. L. §209-a(2)(c)..........................................................10

**Other Authorities**

N.Y. C.P.L.R. §217(2)(a).................................................................10

New York City Administrative Code Section 15-113 .......................................5

Defendants District Council 37, AFSCME, AFL-CIO ("DC 37") and DC 37 Executive Director Henry Garrido ("Garrido") (together, the "DC 37 Defendants") submit this memorandum of law in support of their motion to dismiss the claims against them in the January 5, 2022 Amended Complaint ("Am. Compl.") [Docket Entry #27].

## PRELIMINARY STATEMENT

Many DC 37 members strongly believe that the COVID vaccine protects them in the workplace from a highly transmissible virus that has killed hundreds of thousands of Americans and that struck New York City with particular virulence early in the pandemic. Yet, after New York City ("City") enacted a vaccine mandate for City employees, including employees of the New York City Fire Department ("FDNY"), DC 37 bargained with the City to protect those of its members who refused to comply with the mandate.

In those negotiations, DC 37 and the City worked out a procedure for employees to seek medical or religious exemptions to the mandate. The City also agreed to forestall the termination of non-compliant employees, agreeing that they would only be placed on unpaid leave. According to the deal that DC 37 and the City struck, those on leave would continue to enjoy health benefits. The agreement also gave non-compliant employees the right to return to work if they changed their mind and got vaccinated. Moreover, the agreement ensured that the unpaid leave would not be considered discipline, so as not to tarnish a non-compliant employee's record.

In this action, FDNY employees whom the City placed on unpaid leave for refusing to comply with the vaccine mandate claim that DC 37 violated their constitutional rights by entering into the agreement. They contend that the agreement violated their constitutional rights because it did not require the City to give them a hearing before placing them on unpaid leave.

1

Plaintiffs' claims against the DC 37 Defendants fail, and should be dismissed, because this Court has already held in this case that FDNY's placing Plaintiffs on unpaid leave without first giving them a hearing did *not* violate their constitutional rights. Nothing in Plaintiffs' Amended Complaint gives the Court reason to revisit that prior ruling. Since the Court has already held that FDNY did not violate Plaintiffs' constitutional rights by placing them on unpaid leave, it would have no grounds to conclude that DC 37 violated Plaintiffs' rights by entering into an agreement allowing such employer action.

Plaintiffs' claims against the DC 37 Defendants, asserted under 42 U.S.C. §1983 ("Section 1983"), also fail because Plaintiffs fail to plead facts showing that the DC 37 Defendants are state actors or were otherwise acting "under color of" state law, as the statute requires. Plaintiffs allege only that the DC 37 Defendants entered into a negotiated agreement with the City. The law is well established that a negotiated agreement between a union and a governmental employer does not constitute a conspiracy with a state actor for Section 1983 purposes. Moreover, Plaintiffs' assertion that DC 37 colluded with City to sacrifice their rights ignores the significant protections that the agreement provided to non-compliant employees. In any event, their unhappiness with the deal does not make it a Section 1983 conspiracy, or otherwise give them a viable Section 1983 cause of action.

Employees aggrieved by their union's conduct do have a legal mechanism for seeking relief: they can assert a claim for breach of the duty of fair representation ("DFR"). Here, however, Plaintiffs have chosen not to pursue a DFR claim against the DC 37 Defendants, but rest their case entirely on their legally defective Section 1983 claims.

Plaintiffs' Section 1983 claims against the DC 37 Defendants also fail for lack of causation. The agreement was not self-executing. It was FDNY, not the DC 37 Defendants,

2

who put the Plaintiffs on unpaid leave.  Thus, if any party violated their constitutional rights, it was FDNY, not the DC 37 Defendants.

      For the foregoing reasons, discussed further below, the Court should grant the DC 37 Defendants' motion and dismiss with prejudice the claims against them.

## **BACKGROUND**

      For purposes of this motion only, the DC 37 Defendants assume the truth of the non-conclusory allegations in the Amended Complaint.

### The Parties

      FDNY is a state actor.  *See* Am. Compl. ¶110.  Plaintiffs are FDNY employees. *See  id.* ¶108.  DC 37 is a union that represents FDNY's emergency medical services employees, and Garrido is DC 37's Executive Director.  *See id.* ¶¶120-21.  The Amended Complaint does not allege that the DC 37 Defendants are state actors.

### The Vaccine Mandate

      On October 20, 2021, the City's Commissioner of Health issued an order ("Vaccine Mandate") requiring all employees of the City, by October 29, 2021, to provide proof that they had obtained a COVID-19 vaccine.  *See* Am. Compl. ¶127 & Exhibit A [Docket Entry #27-71], at 3.  The order explained that "vaccination for individuals providing City services and working in City offices will potentially save lives, protect public health, and promote public safety."  *Id.*, Exhibit A, at 2.

### The DC 37 Agreement

      On November 4, 2021, DC 37 entered into a negotiated agreement with the City ("the DC 37 Agreement") over implementation of the Vaccine Mandate.  *See* Am. Compl., Exhibit B.  The DC 37 Agreement provided a procedure by which City employees could seek a medical or religious exemption from the Vaccine Mandate.  *See id.*, Ex. B, at 1-4 (§1).  The

3

agreement forestalled until December 1, 2021 any termination of non-compliant employees;

before that date, the City would only place non-compliant employees on unpaid leave. *See id.,*

Ex. B, at 4 (§II(A)), at 6 (§III(D)).  Moreover, the agreement provided that such leave would be

considered non-disciplinary, and that those on leave would continue to enjoy health benefits. *See*

*id.*, Ex. B, at 4 (§II(A), (C)).  The DC 37 Agreement also gave non-compliant employees the

opportunity to return to active duty if they changed their minds and got vaccinated before

November 30, 2021. *See id.*, Ex. B, at 4 (§II(D)).  In addition, the agreement gave non-

compliant employees the option to extend their unpaid leave until June 30, 2022, during which

time they would continue to receive health benefits and continue to have the right to return to

active duty if they decided to get vaccinated. *See id.*, Ex. B, at 5 (§III(B)).  Employees opting for

this extension would be deemed to have voluntarily resigned if they remained on leave by June

30, 2022. *See id.*, Ex. B, at 5 (§III(B)).

 Garrido signed the agreement for DC 37. *See id.*, Ex. B, at 6.

Plaintiffs' Suit

 Sixty of the 86 Plaintiffs have refused to take the COVID-19 vaccine. *See* Am.

Compl. ¶104.  The rest of the Plaintiffs initially refused to take the vaccine, were put on leave

without pay, and then returned to active duty after getting vaccinated. *See id.* ¶105.

 Plaintiffs filed suit in this Court on November 24, 2021, against FDNY and its

Commissioner. *See* Docket Entry #1.  The same day, Plaintiffs filed a temporary restraining

order, requesting that the Court enjoin FDNY from placing them on leave without pay. *See*

Docket Entry #2. On December 6, 2021, the Court denied their injunction request. *See* Docket

Entry #24.  In doing so, the Court rejected Plaintiffs' claim that the leave without pay violated

their constitutional right to due process, concluding that the City's Commissioner of Health "was

within his powers to require COVID-19 vaccination as a qualification of employment for FDNY

4

employees." *Id.* at 14.  The court also concluded that FDNY did not violate Plaintiffs'

constitutional rights by placing them on leave without pay, *see id.* at 14-20, noting, among other

things, that the process given to Plaintiffs "satisfied the constitutional minimum." *Id.* at 16.

The Amended Complaint

        In their January 5, 2022 Amended Complaint, Plaintiffs claim that they were

entitled to a hearing under Section 15-113 of the New York City Administrative Code before

being placed on unpaid leave.  *See* Am. Compl. ¶¶175-76.

        Plaintiffs assert three counts relevant to the DC 37 Defendants.  In Count 2, they

request an order declaring that the DC 37 Agreement "was entered into without any contractual

authority," and therefore that FDNY's placing them on leave without pay violated their

constitutional rights.  Am. Compl. ¶185.  In Count 5, they claim under Section 1983 that DC 37

and Garrido "conspired with" the City by entering into the DC 37 Agreement.  *Id.* ¶¶220-21,

225-26.  They assert that, as a result of the DC 37 Agreement, FDNY denied their due process

rights by placing them on unpaid leave without first providing them a hearing.  *See id.* ¶¶199,

229, 233.  In Count 6, Plaintiffs claim, without alleging any supporting facts, that Garrido

encouraged the City to violate their constitutional rights, failed to stop the City from violating

their constitutional rights, and participated in or condoned the violation of their constitutional

rights.  *See id.* ¶¶241, 242, 245.[1]

        As we explain below, the claims against DC 37 and Garrido fail as a matter of

law.

---

    [1] The Amended Complaint also named DC 37 Locals 2507 and 3621, but Plaintiffs voluntarily dismissed those
two defendants from the action.  *See* Docket Entries ##65, 66.

JA-438

## ARGUMENT

**I.     STANDARD GOVERNING MOTION TO DISMISS**

       To survive a motion to dismiss, a complaint must contain sufficient factual allegations to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Darby v. Greeman*, 14 F.4th 124, 127 (2d Cir. 2021).  Conclusory allegations do not suffice.  *See Iqbal*, 556 U.S. at 678; *Darby*, 14 F.4th at 127.

**II.    THE SECTION 1983 CLAIMS AGAINST DC 37 AND GARRIDO IN COUNTS 5 AND 6 FAIL AS A MATTER OF LAW**

       Plaintiffs' Section 1983 claims against DC 37 and Garrido in Counts 5 and 6 fail as a matter of law for multiple reasons, as explained below.

    **A.     The Court Has Held that FDNY Did Not Violate Plaintiffs' Constitutional Rights by Placing Them on Unpaid Leave**

       Plaintiffs claim in Counts 5 and 6 that the DC 37 Agreement violated their constitutional rights by allowing FDNY to place them on unpaid leave. *See* Am. Compl. ¶¶229, 233.  The claims fail because the Court has already held, in its order denying Plaintiffs' preliminary injunction request, that FDNY's placing Plaintiffs on unpaid leave did *not* violate their constitutional rights. *See* Docket Entry #24, at 14-20.

       While the Court's preliminary injunction ruling may not, as a technical matter, establish the law of the case, no reason exists for the Court here to reach a conclusion different from the one it reached in denying Plaintiffs' preliminary injunction motion. *See, e.g., SAM Party of New York v. Kosinski*, No. 20-cv-323 (JGK), 2021 WL 6061301, at *7 (S.D.N.Y. Dec. 22, 2021) (court "reaches the same conclusions" because the facts remain "substantially unchanged from the time of the Court's preliminary injunction decisions").  The Amended Complaint alleges no facts that would require the Court to reconsider its conclusion that FDNY did not violate Plaintiffs' constitutional rights.  Accordingly, the Court's ruling that FDNY's

6

**JA-439**

action did not violate Plaintiffs' rights defeats Plaintiffs' claims in Counts 5 and 6 that DC 37 and Garrido acted unlawfully by allowing FDNY's action.[2]

**B.   The Amended Complaint Alleges No Facts Showing that the DC 37 Defendants Acted Under Color of State Law**

Even if the Court reconsidered its prior ruling, the Section 1983 claims against DC 37 and Garrido in Counts 5 and 6 would still fail as a matter of law, since the Amended Complaint alleges no facts showing that they acted "under color of" state law, as the statute requires. *See* 42 U.S.C. §1983.

Plaintiffs do not contend that DC 37 and Garrido are state actors, nor would there be any basis for such a contention. *See Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) (unions, including those representing public employees, "generally are not state actors," and plaintiff "does not argue otherwise"); *Callaghan v. United Fed'n of Teachers*, 133 A.D.3d 412, 412 (N.Y. App. Div. 2015) ("Courts in this State have consistently held that unions, even those representing public employees … are not state actors"). Rather, to try to establish that DC 37 and Garrido acted under color of state law, Plaintiffs allege that they conspired with the City, by entering into the DC 37 Agreement. *See* Am. Compl. ¶¶220-21, 225-26; *Rodriguez-Rivera v. City of New York*, No. 05-cv-10897 (LAP), 2007 WL 766195, at *3 (S.D.N.Y. Mar. 12, 2007) (union can be liable under Section 1983 if it "conspired with a state official to deprive her of a constitutional right").

However, it is well established that a union does not conspire with a public-sector employer for Section 1983 purposes simply by entering into a negotiated agreement with the employer. *See Eaddy v. Jemiola*, No. 3:11-cv-1081 (MPS), 2013 WL 441077, at *3 (D. Conn.

---

[2] The DC 37 Defendants do not necessarily endorse the Court's determinations regarding FDNY's actions, but argue simply that those determinations defeat Plaintiffs' claims.

Feb. 5, 2013) (allegation that union defendants negotiated agreement with employer "is not enough to plead that [they] conspired"); *Abrahamson v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 01-cv-10859 (CM), 2002 WL 1354711, at *11 (S.D.N.Y. June 21, 2002) ("The Union did sign a collective bargaining agreement with a public entity, the school district, however, this is not sufficient to establish state action on the part of a labor organization"); *McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am.*, 107 F.Supp.2d 311, 317 (S.D.N.Y. 2000) ("Mere negotiation in the course of completing a collective bargaining agreement does not rise to the level of an improper conspiracy."); *accord McIntyre v. Longwood Cent. School Dist.*, 658 F.Supp.2d 400, 424 (E.D.N.Y. 2009), *aff'd*, 380 Fed. Appx. 44 (2d Cir. 2010). A negotiated union-management agreement is not a Section 1983 conspiracy because the union has a role adverse to the employer. *See Kasper v. City of Middletown*, 352 F.Supp.2d 216, 236 (D. Conn. 2005); *McGovern*, 107 F.Supp.2d at 317; *McIntyre*, 658 F.Supp.2d at 424.

Plaintiffs argue that they are entitled to discovery to see whether the DC 37 Defendants in fact acted in a manner adversarial to the City in the negotiations. *See* Docket Entry #50, at 5. That argument fails. A Section 1983 claim fails as a matter of law, and may be dismissed without discovery, where, as here, the pleading alleges nothing more than an agreement between the union and employer. *See, e.g., Eaddy*, 2013 WL 441077, at *3 (dismissing Section 1983 claim against union defendants on motion to dismiss, when plaintiff alleged no more than negotiated agreement with employer); *see also Ciambriello*, 292 F.3d at 324 (affirming dismissal, on a motion to dismiss, of Section 1983 claim against union when plaintiff failed to adequately allege conspiracy); *Polk County v. Dodson*, 454 U.S. 312, 320 (1981) (sustaining dismissal, on motion to dismiss, of Section 1983 conspiracy claim against public defender, based on adversarial role public defender plays in criminal proceedings).

The particular circumstances of the negotiation, or particular terms negotiated, are not relevant to the Section 1983 analysis.  They are not relevant because it is the adversarial nature of the union's role that defeats the conspiracy claim, and that adversarial role stems from the union's position as representative of the employees.  *See Kasper*, 352 F.Supp.2d at 236 ("When a union represents city employees in contract negotiations … it is considered to be acting adversely to the city government and not acting under color of state law"); *McGovern*, 107 F.Supp.2d at 317 ("the Union here represents county employees, and *thus must be* considered to be an adversary of the county government") (emphasis added); *see also Ciambriello*, 292 F.3d at 324 (labor arbitration "placed [the union] and the County in adversarial positions"); *see generally Polk County*, 454 U.S. at 325 (concluding that, for purposes of Section 1983 analysis, public defender had an adversarial role, not based on particularities of the case, but simply based on her "functions as counsel to defendant").  There is no question here that DC 37 is the collective bargaining representative of the FDNY employees on whose behalf it made the DC 37 Agreement.  For Section 1983 purposes, it "thus must be considered," *McGovern*, 107 F.Supp.2d at 317, to have functioned in an adversarial role.

Plaintiffs argue that DC 37 could not have acted in an adversarial role because, they contend, the DC 37 Agreement sacrificed their rights by allowing FDNY to place them on leave without pay.  That argument cannot salvage Plaintiffs' Section 1983 claims because, as explained, the terms negotiated cannot negate the adversarial nature of the union's role.  *See Eaddy*, 2013 WL 441077, at *4 ("The allegation that, as a result of negotiations, an agreement was reached that did not include the adoption of a policy that, according to Plaintiffs, would have operated to prevent the harm they allegedly incurred, is not enough to plead that the Union Defendants conspired with their adversary"); *see also Polk County*, 454 U.S. at 325 (rejecting

**JA-442**

Section 1983 claim that public defender acted under color of state law, despite plaintiff's allegation that public defender failed to represent him adequately).

A legal mechanism does exist for employees challenging an agreement that they believe their union negotiated against their best interests: the DFR. *See, e.g., Steele v. Louisville & N.R. Co.*, 323 U.S. 192, 203 (1944); *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *see generally McGovern*, 107 F.Supp.2d at 319 (noting that New York law recognizes that public-sector unions have a duty of fair representation); *Civil Serv. Bar Ass'n, Local 237, Int'l Bhd. of Teamsters v. City of New York*, 64 N.Y.2d 188 (1984) (considering claim that union violated DFR by allegedly negotiating an agreement contrary to their interests); N.Y. Civ. Serv. L. §209-a(2)(c). Plaintiffs, however, have opted not to assert a DFR claim against the DC 37 Defendants. Instead, they are trying to use DFR contentions to make out a Section 1983 claim. That does not work. The two legal doctrines are different. In particular, Section 1983 requires a showing -- that defendants acted under color of state law -- that the Amended Complaint does not meet.[3]

Even though Plaintiffs' Section 1983 claims fail regardless of the terms of the DC 37 Agreement, we note that Plaintiffs are simply wrong in describing the agreement as a capitulation by their union. In the agreement, DC 37 achieved significant protections for those employees who refused to comply with the Vaccine Mandate. It delayed until December 1, 2021 any effort by the City to fire employees who refused to comply, stipulating that before that date

---

[3] Unfortunately for Plaintiffs, it would be too late for them to assert a DFR claim against the DC 37 Defendants in this case. The applicable four-month statute of limitations would bar a DFR challenge to the November 4, 2021 DC 37 Agreement. *See* N.Y. C.P.L.R. §217(2)(a); *Dolce v. Bayport-Blue Point Union Free School Dist.*, 286 A.D.2d 316, 316 (App. Div. 2001). The DC 37 Defendants reserve the right to raise any other defenses to a DFR claim, should Plaintiffs attempt to assert such a claim.

the City would only place them on unpaid leave.  *See* Am. Compl., Ex. B, at 4 (§II(A)), at 6

(§III(D)).  Moreover, the agreement provided that such leave would be considered non-

disciplinary, and would come with the critical benefit of continued health insurance.  *See id.*, Ex.

B, at 4 (§II(A), (C)).  The DC 37 Agreement also gave non-compliant employees the option to

return to active duty if they changed their minds and got vaccinated before November 30, 2021.

*See id.*, Ex. B, at 4 (§II(D)).  It also gave them the option of extending their leave until June 30,

2022, and with it their health benefits and their right to return to duty upon vaccination.  *See id.*,

Ex. B, at 5 (§III(B)).  Plaintiffs' glass-half-empty perspective on the DC 37 Agreement ignores

these protections achieved by DC 37 in exercising its role as their bargaining representative.

Plaintiffs argue that DC 37 could have gone further, and simply refused to agree

to the Vaccine Mandate.  They claim that such a refusal would have prevented the Vaccine

Mandate from taking effect.  *See* Docket Entry #50, at 4 ("But-for DC 37's agreement with the

FDNY Defendants, the FDNY would have no contractual authority to suspend the Plaintiffs in

the DC 37's bargaining unit or terminate their employment").  This criticism of DC 37 for not

taking a harder line in negotiations is nothing more than a DFR argument and, as explained, a

DFR argument cannot save Plaintiffs' Section 1983 claims.

Even if considered from a DFR point of view, Plaintiffs' argument would fail.

Their assertion that DC 37 should have refused to agree to any terms regarding the Vaccine

Mandate ignores the context in which DC 37 was operating:  much of DC 37's membership

*favored* the Vaccine Mandate as a critical measure for protecting their health on the job.  By

taking a balanced approach at the bargaining table, DC 37 did not abdicate its adversarial role,

but fulfilled it in a manner responsive to the conflicting views of its constituents.  Plaintiffs'

argument also rests on the dubious assumption that DC 37 held the power, by refusing to

11

negotiate terms, to effectively veto a city action aimed at combatting an unprecedent public health crisis.  The reality is that, however one interprets the state's bargaining laws, new legislative action could have overridden any attempted union "veto."  Moreover, if the City had imposed the Vaccine Mandate following a bargaining deadlock, a union would have had a slim chance obtaining timely injunctive relief to block it.  *See Civil Serv. Employees Ass'n v. New York State (Unified Court System)*, 73 Misc.3d 874, 892-96 (N.Y. Sup. Ct. 2021) (denying unions' request for preliminary injunction to block implementation of vaccine mandate, on ground that non-compliant employees faced no irreparable harm).

Because DC 37 and Garrido are not state actors, and because Plaintiffs fail to allege facts showing that they acted under color of state law, their Section 1983 claims against them fail as a matter of law.

**C.      The Amended Complaint Fails to Allege Facts Showing that DC 37 and Garrido Themselves Violated Plaintiffs' Constitutional Rights**

Plaintiffs' claims in Counts 5 and 6 also fail because the Amended Complaint contains no facts showing that DC 37 and Garrido *themselves* violated Plaintiffs' constitutional rights.  Vicarious liability does not exist under Section 1983; a Section 1983 plaintiff must plead that each defendant through its "own individual actions" violated the Constitution.  *Iqbal*, 556 U.S. at 676; *accord Tangreti v. Bachman*, 983 F.3d 609, 616 (2d Cir. 2020); *see also Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016) ("the 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983'") (citation omitted).  Plaintiffs claim that their constitutional rights were violated when they were placed on unpaid leave without a hearing.  *See* Am. Compl. ¶¶198, 274.  But it was FDNY that placed Plaintiffs on unpaid leave.  *See id.* ¶¶157, 177, 199.  DC 37 and Garrido did not take that action and thus cannot be liable for it under Section 1983.

12

Plaintiffs note that personal involvement for purposes of Section 1983 can mean not just direct participation in the constitutional violation, but also "failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Docket Entry #50, at 5 (*quoting Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)). However, none of these alternative bases for liability apply here. The Amended Complaint contains no allegations showing that DC 37 or Garrido failed to remedy a wrong after learning of it, created a policy or custom, or committed gross negligence.

Because the Amended Complaint fails to allege facts showing that DC 37 or Garrido themselves engaged in the action that allegedly violated Plaintiffs' constitutional rights, the Section 1983 claims against them fail for that reason as well.

**III.   THE REQUEST FOR A DECLARATORY JUDGMENT IN COUNT 2 FAILS SINCE DC 37 HAD STATUTORY AUTHORITY TO ENTER INTO THE DC 37 AGREEMENT**

Finally, the Court should dismiss Count 2, which seeks a declaration that the DC 37 Agreement was entered into "without any contractual authority." Am. Compl. ¶186. This claim makes no sense. The parties to the DC 37 Agreement had *statutory* authority to enter into it. *See* N.Y. Civ. Serv. L. §204(1) (authorizing public employers and union representing their employees "to negotiate and enter into written agreements" determining terms and conditions of employment). Because the parties had statutory authority, any purported lack of contractual authority is irrelevant.

13

JA-446

**CONCLUSION**

For the foregoing reasons, the Court should grant the DC 37 Defendants' motion

and dismiss with prejudice all the claims against them in the Amended Complaint.

April 14, 2022

Respectfully submitted,

*/s/ Peter D. DeChiara*
Peter D. DeChiara
Hanan B. Kolko
Melissa S. Woods
COHEN WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, N.Y. 10022
(212) 356 0216
pdechiara@cwsny.com
hkolko@cwsny.com
mwoods@cwsny.com

14