# 23-663

In the
## United States Court of Appeals
For the Second Circuit

JOHN GARLAND, VINCENT BOTTALICO, TIMOTHY A. HEATON, JOSEPH BEVILACQUA, JOSEPH CICERO, JOSEPH COLUMBIA, ANDREW COSTELLO, JAMES DANIEL DALY, III, VINCENT DEFONTE, KENNETH DEFOREST, SALVATORE DEPAOLA, BRIAN F. DOYLE, NATHAN EVANS, CHRISTOPHER FILOCAMO,

*Plaintiffs-Appellants,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

*(See inside cover for continuation of caption)*

## JOINT APPENDIX
## Volume III of III (Pages JA-447– JA-661)

JESSE A. TOWNSEND, ESQ.,
SENIOR COUNSEL
NEW YORK CITY LAW DEPARTMENT
APPEALS DIVISION
*Attorney for Defendants-Appellees New York City Fire Department, Daniel A. Nigro and City of New York*
100 Church Street
New York, New York 10007

THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiffs-Appellants*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040

COHEN, WEISS AND SIMON LLP
*Attorneys for Defendants-Appellees Henry Garrido, District Council 37, AFSCME AFLCIO, Local 2507, District Council 37, AFSCME AFLCIO, Local 3621 and District Council 37, AFSCME AFL-CIO*
900 3rd Avenue, Suite 2100
New York, New York 10022
(212) 356-0216

APPELLATE INNOVATIONS
(914) 948-2240

19689

---

KEVIN GARVEY, CHARLES GUARNEIRI, DANIEL J. OSHEA, MARGOT LOTH, MICHAEL LYNCH, DENNIS O'KEEFFE, BRIAN PATRICK SMITH, KURT PFLUMM, CHRISTOPHER RAIMONDI, PAUL SCHWEIT, JOSEPH T. JOHNSON, DAVID BUTTON, PAUL PARR, MARK SINCLAIR, DANIEL BAUDILLE, JOHN DREHER, THOMAS OLSEN, GIUSEPPE ROBERT PENORO, MATTHEW CONNOR, NICHOLAS MULLGAN, RANDALL SANTANA, ANTHONY PERRONE, SCOTT ETTINGER, ANTHONY MASTROPIETRO, RASHAAD TAYLOR, ANTHONY RUGGIERO, JOSEPH MURDOCCA, KEITH KLEIN, PAUL VASQUENZ, MARK HENESY, RYAN K. HALL, JUDE PIERRE, MICHELLE SANTIAGO, ROBERT DITRANI, BRIAN T. DENZLER, MICHAEL MCGOFF, CHRISTOPHER INFANTE, GEORGE J. MURPHY, THOMAS FEJES, JOHN COSTELLO, BRANDON PHILLIPS, JOSEPH DEPAOLA, BRENDAN MCGEOUGH, JASON CHARLES, ANTHONY C. CARDAZONE, OWEN FAY, MICHAEL FADDA, JOSEPH M. PALMIERI, JARED DYCHKOWSKI, JOHN TWOMLEY, MATT KOVAL, GLENN CLAPP, ROBERT YULI, MATTHEW SINCLAIR, TIM RIVICCI, JOHN ARMORE, MICHAEL SAMOLIS, FELICIA J. TSANG, WILLIAM JOHN SAEZ, ROSARIO CURTO, DAVID SUMMERFIELD, KEVIN ERKMAN, BERNADETTE MEJIA, DANIEL YOUNG, SEAN FITZGERALD, CRAIG LEAHY, DANIEL STROH, STEPHEN INGUAGIATO, STEPHEN BUTTAFUCCO, PHILLIP J. DARCEY, AINSLEY ATWELL and RODNEY COLON,

*Plaintiffs-Appellants,*

– v. –

NEW YORK CITY FIRE DEPARTMENT, DANIEL A. NIGRO, JOHN DOE #1-10, JANE DOE #1-10, CITY OF NEW YORK, HENRY GARRIDO, DISTRICT COUNCIL 37, AFSCME AFLCIO, LOCAL 2507, DISTRICT COUNCIL 37, AFSCME AFLCIO, LOCAL 3621 AND DISTRICT COUNCIL 37, AFSCME AFL-CIO,

*Defendants-Appellees,*

– and –

UNIFORMED FIRE OFFICERS ASSOCIATION, LOCAL 854 INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFFILIATED WITH THE AFL-CIO AND UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK,

*Defendants.*

---

## Table of Contents

**Page**

Docket Entries ........................................................................ JA-1

Complaint, Dated November 24, 2021.......................................JA-38

Proposed Order to Show Cause by Plaintiffs for a Temporary Restraining Order and a Preliminary Injunction, Filed November 24, 2021..........................................................JA-56

Emergency Affirmation of Austin Graff, for Plaintiffs, in Support of Motion, Dated November 24, 2021.........................JA-61

Affidavit of John Garland, Plaintiff, in Support of Motion, Sworn to November 22, 2021....................JA-64

Exhibit 1 to Garland Affidavit - E-Mail Correspondence Between John Garland and Members of Uniformed Firefighters Association of Greater New York Local 94, I.A.F.F., AFL-CIO (“UFA”), Dated November 16, 2021 .......................................................JA-67

Affidavit of Margot Phillips Loth, Plaintiff, in Support of Motion, Sworn to November 24, 2021....................JA-72

Affidavit of David Button, Plaintiff, in Support of Motion, Sworn to November 23, 2021....................JA-74

Affidavit of Christopher Raimondi, Plaintiff, in Support of Motion, Sworn to November 22, 2021....................JA-77

Memorandum of Law by Plaintiffs in Support of Motion, Dated November 24, 2021 .......................................................JA-79

Order to Show Cause for a Preliminary Injunction, Dated November 24, 2021 .......................................................JA-94

Memorandum of Law by Defendants New York City Fire Department and Daniel A. Nigro in Opposition to Motion, Dated November 29, 2021 .......................................................JA-97

Declaration of Andrea O’Connor, for Defendants New York City Fire Department and Daniel A. Nigro, in Opposition to Motion, Dated November 29, 2021................JA-134

Exhibit A to O’Connor Declaration - Order of Dave A. Chokshi, M.D., Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination for City Employees and Certain City Contractors, Dated October 20, 2021 ..........................................................JA-137

**Page**

Exhibit B to O'Connor Declaration -
Arbitration Award Decision in Board of Education of the City School District of the City of New York and the United Federation of Teachers, Local 2, AFT, AFL-CIO, Dated September 10, 2021, with Cover Letter..........................JA-143

Exhibit C to O'Connor Declaration -
Memorandum of Agreement Between District Council 37, City of New York and the Board of Education of the City School District for the City of New York, Dated October 3, 2021 ............................................................JA-163

Exhibit D to O'Connor Declaration -
Verified Petition, in the Matter of *the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. Bill de Blasio, et al.*, Index No. 159738/2021, Dated October 28, 2021 ..........................................................JA-171

Exhibit E to O'Connor Declaration -
Order to Show Cause, with Temporary Restraining Order, in the Matter of *the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. Bill de Blasio, et al.*, Index No. 159738/2021, Dated November 1, 2021 ........................................................JA-194

Exhibit F to O'Connor Declaration -
Verified Scope of Bargaining and Improper Practice Petition, in the Matter of *the Improper Practice Petition Between Uniformed Firefighters Association of Greater New York, Local 94, IAFF, AFL-CIO v. City of New York, et al.*, BCB-4461-21, Dated October 26, 2021...................................JA-198

Exhibit G to O'Connor Declaration -
Verified Petition for Injunctive Relief, in the Matter of *the Petition for Injunctive Relief between Uniformed Firefighters Association of Greater New York, Local 94, IAFF, AFL-CIO v. City of New York, et al.*, Dated October 27, 2021 .................JA-221

Exhibit H to O'Connor Declaration -
Letter from Harry Greenberg to Steven E. Star, Dated November 18, 2021 ......................................................JA-235

Exhibit I to O'Connor Declaration -
Notice of Board Determination and Request for Injunctive Relief, in the Matter of *the Petition for Injunctive Relief between Uniformed Firefighters Association of Greater New York, Local 94, IAFF, AFL-CIO v. City of New York, et al.*, Dated November 16, 2021 .............................................JA-237

**Page**

Exhibit J to O'Connor Declaration - Declaration of Don Nguyen, Dated November 29, 2021 .......... JA-240

Emergency Reply Affirmation of Austin Graff, for Plaintiffs, in Further Support of Motion, Dated November 30, 2021 ........... JA-245

Exhibit 1 to Graff Emergency Reply Affirmation - Buckslip, Dated October 20, 2021 .......................................... JA-247

Reply Memorandum of Law by Plaintiffs in Further Support of Motion, Dated November 30, 2021 ..................................... JA-273

Supplemental Declaration of Andrea O'Connor, for Defendants New York City Fire Department and Daniel A. Nigro, in Opposition to Motion, Dated November 30, 2021 ............... JA-287

Exhibit K to O'Connor Supplemental Declaration - Opposing Affidavit of Tricia Singh, Sworn to November 30, 2021 .................................................. JA-289

Exhibit L to O'Connor Supplemental Declaration - Opposing Affidavit of Mario Manna, Sworn to November 30, 2021 .................................................. JA-292

Letter Regarding Corrected Exhibit C from Andrea O'Connor to Honorable Kiyo A. Matsumoto, Dated November 30, 2021 .... JA-295

Exhibit C to O'Connor Declaration *(Corrected)* - Memorandum of Agreement Between District Council 37 and the City of New York, Dated November 4, 2021 .............. JA-296

Sur-Reply Memorandum of Law by Plaintiffs in Further Support of Motion, Dated November 30, 2021 ........................ JA-303

Letter from Andrea O'Connor to Honorable Kiyo A. Matsumoto, Dated December 2, 2021 ........................ JA-311

Memorandum and Order of Honorable Kiyo A. Matsumoto, Dated December 6, 2021 ......................................................... JA-314

Letter from Austin Graff to Honorable Kiyo A. Matsumoto, Dated December 10, 2021 ....................................................... JA-341

Amended Complaint, Dated January 5, 2022 .............................. JA-343

Exhibit A to Amended Complaint - Order of Dave A. Chokshi, M.D., Commissioner of Health and Mental Hygiene to Require COVID-19 Vaccination for City Employees and Certain City Contractors, Dated October 20, 2021 (Reproduced herein at pp. JA-138–JA-142) ............................ JA-377

Case 23-663, Document 50, 08/01/2023, 3549871, Page6 of 223

**Page**

Exhibit B to Amended Complaint - Memorandum of Agreement Between District Council 37, City of New York and the Board of Education of the City School District for the City of New York, Dated October 3, 2021 (Reproduced herein at pp. JA-164–JA-170) ............................JA-377

Letter Regarding Replacing Exhibit B to Amended Complaint from Austin Graff to Honorable Kiyo A. Matsumoto, Dated March 15, 2022 ............................................................JA-378

Exhibit B to Amended Complaint *(Corrected)* - Memorandum of Agreement Between District Council 37 and the City of New York, Dated November 4, 2021 (Reproduced herein at pp. JA-297–JA-302) ............................JA-380

So-Ordered Stipulation of Dismissal of Honorable Kiyo A. Matsumoto, with Prejudice, as to Defendant Uniformed Fire Officers Association, Local 854, International Association of Firefighters, Affiliated with the AFL-CIO, Dated March 16, 2022 ..............................JA-381

So-Ordered Stipulation of Discontinuance of Honorable Kiyo A. Matsumoto, with Prejudice as to Defendant Uniformed Firefighters Association of Greater New York, Dated March 16, 2022 ..........................................JA-383

So-Ordered Stipulation of Discontinuance of Honorable Kiyo A. Matsumoto, without Prejudice as to Defendant District Council 37, AFSCME AFL-CIO, Local 2507, Dated March 16, 2022 ............................................................JA-385

So-Ordered Stipulation of Discontinuance of Honorable Kiyo A. Matsumoto, without Prejudice as to Defendant District Council 37, AFSCME AFL-CIO, Local 3621, Dated March 16, 2022 ............................................................JA-387

Notice of Motion by Defendants City of New York, New York City Fire Department and Daniel A. Nigro to Dismiss Amended Complaint, Dated April 14, 2022 ............................JA-390

Memorandum of Law by Defendants City of New York, New York City Fire Department and Daniel A. Nigro, in Support of Motion, Dated April 14, 2022 ............................JA-393

Notice of Motion by Defendants District Council 37, AFSCME, AFL-CIO and Henry Garrido to Dismiss Amended Complaint, Filed April 14, 2022 ..............................................JA-426

**Page**

Memorandum of Law by Defendants District Council 37, AFSCME, AFL-CIO and Henry Garrido in Support of Motion, Dated April 14, 2022 .............................................JA-429

Memorandum of Law by Plaintiffs in Opposition to Motions, Dated May 18, 2022 .................................................................JA-447

Reply Memorandum of Law by Defendants District Council 37, AFSCME, AFL-CIO and Henry Garrido, in Further Support of Motion, Dated June 9, 2022 ..................JA-483

Reply Memorandum of Law by Defendants City of New York, New York City Fire Department and Daniel A. Nigro, in Further Support of Motion, Dated June 13, 2022 .....................JA-498

Letter Motion to Amend/Correct/Supplement Memorandum in Opposition from Austin Graff to Honorable Kiyo A. Matsumoto, Dated September 28, 2022 ......................JA-513

Attachment to Letter Motion - Decision and Order of Honorable Lyle E. Frank, in the Matter of *Police Benevolent Association of The City of New York, Inc. v. City of New York, et al.*, Index No. 151531/2022, Dated September 23, 2022 ......................................................JA-515

Letter of Response from Andrea O'Connor to Honorable Kiyo A. Matsumoto, Dated September 29, 2022 ......................JA-519

Appendix A to Letter of Response - Decision and Order of Honorable Gina Abadi, in the Matter of *the Application of Andrew Ansbro v. Daniel Nigro, et al.*, Index No. 531749/2021, Dated September 13, 2022 ................JA-522

Second Letter Motion to Amend/Correct/Supplement Memorandum in Opposition from Austin Graff to Honorable Kiyo A. Matsumoto, Dated October 10, 2022 ..........................JA-531

Attachment to Second Letter Motion - Decision of the Office of Collective Bargaining Board of Collective Bargaining, in the Matter of *the Improper Practice Petition between The New York City Municipal Labor Committee, et al. v. The City of New York, et al.*, Docket No. BCB-4458-21, Dated September 23, 2022...............................JA-533

Letter of Response from Andrea O'Connor to Honorable Kiyo A. Matsumoto, Dated October 11, 2022 ..........................JA-555

Page

Third Letter Motion to Amend/Correct/Supplement Memorandum in Opposition from Austin Graff to Honorable Kiyo A. Matsumoto, Dated October 25, 2022 ..........................JA-557

Attachment to Third Letter Motion - Decision and Order of Honorable Ralph J. Porzio, in the Matter of *George Garvey v. The City of New York, et al.*, Index No. 85163/2022, Dated October 24, 2022 ......................JA-559

Letter of Response from Andrea O'Connor to Honorable Kiyo A. Matsumoto, Dated October 25, 2022 ..........................JA-572

Letter from Andrea O'Connor to Honorable Kiyo A. Matsumoto, Dated February 16, 2023.........................JA-574

Letter from Austin Graff to Honorable Kiyo A. Matsumoto, Dated February 17, 2023..........................................................JA-576

Exhibit 1 to Letter - Mayor's Announcement Regarding End of the Vaccine Mandate, Dated February 6, 2023............................................JA-578

Letter from Hanan B. Kolko to Honorable Kiyo A. Matsumoto, Dated February 17, 2023..........................................................JA-581

Memorandum and Order of Honorable Kiyo A. Matsumoto, Dated March 29, 2023..............................................................JA-584

Amended Memorandum and Order of Honorable Kiyo A. Matsumoto, Dated March 29, 2023............................JA-619

Judgment of The United States District Court, Eastern District of New York, Dated March 31, 2023.......................................JA-654

Notice of Appeal, Dated April 20, 2023 ......................................JA-655

Letter from Joshua Feldman to Honorable Kiyo A. Matsumoto, Dated May 18, 2023.................................................................JA-658

Amended Notice of Appeal, Dated May 19, 2023........................JA-659

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

JOHN GARLAND, *et al.*, on behalf of themselves and all other similarly situated employees of the New York City Fire Department,

Plaintiffs,

-against-

NEW YORK CITY FIRE DEPARTMENT, *et al.*,

Defendants.

---------------------------------------------------------------------X

**INDEX NO.: 21-CV-6586**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANTS' MOTIONS TO DISMISS**

THE SCHER LAW FIRM, LLP
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

## TABLE OF CONTENTS

TABLE OF CONTENTS ............ i

TABLE OF AUTHORITIES ............ iii

PRELIMINARY STATEMENT ............ 1

POINT I. STANDARD OF REVIEW FOR A MOTION TO DISMISS ............ 5

A. FRCP 12(b)(1) ............ 5

B. FRCP 12(b)(6) ............ 7

POINT II. THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' FIRST CAUSE OF ACTION SEEKING AN ORDER DECLARING THAT THE FDNY'S SUSPENSIONS WITHOUT PAY AND WITHOUT DUE PROCESS VIOLATED THE PLAINTIFFS' CONSTITUTIONAL RIGHTS ............ 8

A. New York City Charter § 487(a) ............ 9

B. N.Y. Civil Service Law ............ 11

POINT III. THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' SECOND CAUSE OF ACTION SEEKING A DECLARATION THAT THE DC37 AGREEMENT WAS PROMULGATED WITHOUT ANY CONTRACTUAL AUTHORITY ............ 14

POINT IV. THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR A PERMANENT INJUNCTION ON THE PLAINTIFFS' THIRD CAUSE OF ACTION ............ 18

POINT V. THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE FDNY DEFENDANTS, ON THE PLAINTIFFS' FOURTH CAUSE OF ACTION ............ 19

A. Factual Predicate For Cause Of Action ............ 19

B. Plaintiffs Have Stated A Plausible Claim Against The City Defendants ............ 20

POINT VI. THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE CITY DEFENDANTS, AND THE DC37 DEFENDANTS ON THE PLAINTIFFS' NINTH CAUSE OF ACTION ..... 21

A. Factual Predicate For Cause Of Action ..... 21

B. Plaintiffs Have Stated A Plausible Claim Against The City Defendants ..... 22

C. Plaintiffs Have Stated A Plausible Claim Against The DC37 Defendants ..... 23

POINT VII. THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST NIGRO AND GARRIDO ON THE PLAINTIFFS' SIXTH CAUSE OF ACTION ..... 26

POINT VIII. THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR CLASS ACTION STATUS ..... 28

POINT IX. THE COURT SHOULD GRANT LEAVE FOR THE PLAINTIFFS TO FILE A SECOND AMENDED COMPLAINT TO CORRECT ANY DEFICIENCIES IN THE AMENDED COMPLAINT ..... 29

CONCLUSION ..... 30

## TABLE OF AUTHORITIES

**Cases**

*Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir 1998) .......... 20, 22

*Broecker v. NY City Dept. of Educ.*, 2022 US Dist LEXIS 25104 (E.D.N.Y. 2022) .......... passim

*Capital District Regional Off-Track Betting Corporation v. Teamsters Joint Council No. 18, International Brotherhood of Teamsters,* 20 PERB P3020 (1987) .......... 15

*City of Rochester*, 7 PERB P3060 (1974) .......... 15

*Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau*, 45 PERB P3047 (2012) .......... 15

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) .......... passim

*Cummings v. City of NY*, 2020 US Dist LEXIS 31572, at *39 (S.D.N.Y. 2020) .......... 5

*Eaddy v. Jemiola*, 2013 US Dist LEXIS 15293 (D. Conn. 2013) .......... 24

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) .......... 18

*Garcia v Coll. of Staten Is.*, 2012 US Dist LEXIS 128485, at *7-10 (E.D.N.Y. 2012) (Matsumoto, J.) .......... 7

*Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 274 (2d Cir 1992) .......... 11

*In the Matter of Improper Practice Proceeding between District Council 37, AFSCMA, AFL-CIO, and its affiliates, Local 2507 and Local 3621,* 75 OCB 9 (N.Y.C. Office of Collective Bargaining 2005) .......... 6

*Manhattan Community Access Corp. v. Halleck*, 139 S.Ct. 1921, 1928 (2019) .......... 23

*Marciano v. De Blasio*, 2022 US Dist LEXIS 41151, at *6-7 (S.D.N.Y. 2022) .......... 3, 4, 9, 10

*Matsushita Elec. Corp. of Am. v. 212 Copiers Corp.*, 1996 US Dist LEXIS 2221, at *3 (S.D.N.Y. 1996) ..... 11

*Mayor of City of NY v. Council of City of NY*, 6 Misc.3d 1022[A], 1022A (Sup. Ct. N.Y. County 2005), *affirmed* 38 A.D.3d 89 (1st Dept 2006), *affirmed* 9 N.Y.3d 23 (2007) ..... 16

*Mayor of the City of NY v Council of the City of NY*, 9 N.Y.3d 23, 30 (2007) ..... 5, 17

*McKenzie v. Grand Cent. Partnership*, 2016 US Dist LEXIS 39361, at *5-7 (E.D.N.Y. 2016) (Matsumoto, J.) ..... 7

*McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir 1977) ..... 26

*Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 (S.D.N.Y. 2007) ..... 25

*Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir 2019) ..... passim

*Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973) ..... 15

*Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019) ..... passim

*Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir 1986) ..... 26

**Statutes**

N.Y. City Charter at § 434.a. ..... 9

N.Y. Civil Service Law § 201.4. ..... 2, 12, 20

N.Y.C. Charter § 487(a). ..... 3, 9

New York City Administrative Code at § 12-307(a)(4) ..... 17, 20, 21

**Other Authorities**

https://local2507.com/web/contract-ballot-results (visited April 20, 2022) ..... 16

https://www.dc37.net/news/newsreleases/2021/nr8_6 (visited April 20, 2022) ..... 16

Case 23-663, Document 50, 08/01/2023, 3549871, Page14 of 223

JA-452

**Rules**

**FRCP Rule 23(a)** ........................................................................................................... 28

v

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted by the Plaintiffs, eighty-seven (87) current or former employees of the New York City Fire Department ("FDNY") who have suffered damages as a result of the COVID-19 Vaccine Mandate ("Vaccine Mandate") issued by the Commissioner of the New York City Department of Health ("Commissioner of DOH") that was illegally imposed upon the FDNY employees and, as a result of the illegal implementation of the Vaccine Mandate, the Plaintiffs' constitutional rights have been violated.

The Defendants New York City Fire Department ("FDNY"), City of New York ("City"), and Daniel Nigro ("Nigro") (collectively referred to as "City Defendants") imposed the Vaccine Mandate upon the Plaintiffs and now move to dismiss the Plaintiffs' Amended Complaint, but their arguments fail to address this Court's holding in *Broecker v. NY City Dept. of Educ.*, 2022 US Dist LEXIS 25104 (E.D.N.Y. 2022) that

> … New York Civil Service Law Section 201.4 … requires the NYC DOE employer to negotiate and bargain terms and conditions of employment. Contrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards…. Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4.

*Broecker v. NY City Dept. of Educ.*, 2022 US Dist LEXIS 25104, at *25.

As the City Defendants acknowledge, both the Uniformed Fire Officers Association, Local 854 International Association of Firefighters, Affiliated with the AFL-CIO ("UFOA") and the Uniformed Firefighters Association of Greater New York ("UFA") "chose not to engage in any negotiations at all concerning the impact of the" Vaccine Mandate. **City Defendants' Memorandum of Law**, at page 4.

Unlike the New York City Department of Education ("NYCDOE"), the FDNY did not negotiate and bargain over the impact of the Vaccine Mandate with its unions, and therefore there

was no negotiated resolution with the UFOA and/or the UFA regarding the impact of the Vaccine Mandate. Accordingly, the FDNY failed to comply with the N.Y. Civil Service Law § 201.4., which requires a public employer, like the FDNY, to reach an agreement on terms and conditions of employment with its unions before imposing a new condition of employment.

In fact, the Board of Collective Bargaining strongly "encourage[d] the parties to meet expeditiously to discuss [the impact of the vaccine mandate] and attempt to resolve them through collective bargaining." **Docket Entry No. 15-9**, at page 2. Ignoring the strong encouragement by the Board of Collective Bargaining, the FDNY just unilaterally imposed the Vaccine Mandate without negotiating the impact of the Vaccine Mandate through collective bargaining with the UFOA or the UFA.

Without a negotiated resolution to the impact of the Vaccine Mandate, the Vaccine Mandate, based upon the holding in *Broecker*, could not become a condition of employment in the FDNY. Therefore the FDNY had no unilateral authority to impose the Vaccine Mandate as a condition of employment on the members of the UFOA or the UFA. *See, Broecker v. NY City Dept. of Educ.*, 2022 US Dist LEXIS 25104, at *25. *See,* N.Y. Civil Service Law § 201.4.

When the FDNY imposed the Vaccine Mandate without a negotiated agreement with the UFOA and the UFA and suspended the Plaintiffs without pay for not taking the vaccine without due process or terminated the employment of any employee of the FDNY without due process, the FDNY violated the Plaintiffs' constitutional rights to their pay and jobs. *See, Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir 2019); *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

The City Defendants even admit that "City employees that are members of UFA and UFOA are not entitled to the benefits negotiated by other unions, i.e. separation from employment with enhanced payment of accrued paid time off or extension of LWOP with health benefits…." **City Defendants' Memorandum of Law**, at page 6. The City Defendants acknowledge that the FDNY imposed the Vaccine Mandate without an agreement with the UFA and UFOA, in violation of the N.Y. Civil Service Law § 201.4. With respect to the Vaccine Mandate and UFA and UFOA

members, it did not and cannot become a condition of employment. *See, Broecker v. NY City Dept. of Educ.*, 2022 US Dist LEXIS 25104, at *25.

There is a second defect in the City Defendants' implementation of the Vaccine Mandate upon the Plaintiffs. Unlike in the New York City Police Department ("NYPD"), Nigro, the FDNY Commissioner, did not issue an Order imposing the Vaccine Mandate on FDNY employees.

In *Marciano v. De Blasio*, 2022 US Dist LEXIS 41151, at *6-7 (S.D.N.Y. 2022), the Court stated:

> on November 10, 2021, Police Commissioner Shea issued Operations Order 49, which incorporated the requirements of both Mayor de Blasio's August 31, 2021 Executive Order and the Department's Order, including the requirement that NYPD employees who are not in compliance with these order would be placed on LWOP. See ECF No. 20-4. The order also sets out a process by which NYPD employees may seek a reasonable accommodation to be exempted from the Department's Order and provides that any member of the service with a pending application may continue to report to duty so long as he or she undergoes weekly COVID-19 testing. Id. at 2.

Nigro never issued any Order. Instead, John J. Hodgens ("Hodgens"), Chief of Operations issued a Buckslip imposing the Vaccine Mandate. *See,* **Docket Entry No. 17-1.** *See,* **City Defendants' Memorandum of Law,** page 18-19. Nowhere on the Buckslip does it inform the reader that the Commissioner, Nigro, authorized or consented to the contents of the document.

The New York City Charter Section 487(a) empowers the FDNY Commissioner to "have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire department and the premises and property in the custody thereof ..." N.Y.C. Charter § 487(a).

While this Court stated that "the Commissioner was within his powers to require COVID-19 vaccination as a qualification of employment for FDNY employees", the Commissioner never imposed such a qualification, even after the Court's ruling in December 2021 (**Docket Entry No.**

**24**, at page 14) unlike what happened in the NYPD. *See, Marciano v. De Blasio*, 2022 US Dist LEXIS 41151, at *6-7.

The City Defendants do not explain what authority Hodgens possessed that superseded the N.Y. City Charter's grant of sole authority to the FDNY Commissioner relating to the management and direction of the fire department. The absence of an Order from the FDNY Commissioner means that the imposition of the Vaccine Mandate on FDNY employees violated N.Y. City Charter § 487(a).

Accordingly, with respect to the FDNY, the failure to negotiate with the UFOA and the UFA a resolution with respect to the implementation of the Vaccine Mandate **and** the failure of the FDNY Commissioner (Nigro) to issue an Order imposing the Vaccine Mandate on FDNY employees, requires this Court to deny the City Defendants' Motion to Dismiss since the Plaintiffs have stated a plausible claim for a violation of their constitutional rights in violation of 42 U.S.C. § 1983.

Finally, the Defendants District Council 37, AFSCME, AFL-CIO ("DC37") and Henry Garrido ("Garrido") (collectively referred to as "DC37 Defendants") move to dismiss this Action based upon their arguments that all DC37 did was enter into an agreement with the City ("DC37 Agreement" (**Docket Entry No. 62-1**)) and therefore is not liable for the violation of the Plaintiffs' constitutional rights.

However, the DC37 Agreement is statutorily and contractually defective in three very specific ways.

First, only the DC37's Local units are authorized to negotiate with the City on the terms and conditions of employment for the uniformed services of the FDNY, including EMTs. *See,* New York City Administrative Code at § 12-307(a)(4). There is no statutory authority for DC37, the umbrella organization, to enter into an agreement for the members of Local 2507 and Local 3621, when those Locals were not "signator[ies] or part[ies] to the DC 37 Agreement." **Docket**

**Entry No. 49**, at page 2. *See, Mayor of the City of NY v Council of the City of NY*, 9 N.Y.3d 23, 30 (2007). As a matter of statutory law, the DC37 Agreement is void.

Second, the membership of DC37 did not ratify the agreement, which was a violation of DC37's duty of fair representation and therefore it is was not a binding contract.

Third, there is no amendment process in the current collective bargaining agreements between the Locals and the FDNY. DC37 does not identify any contractual authority for the implementation of the DC37 Agreement.

Accordingly, the DC37 Agreement is void and the reliance by the FDNY and DC37, in collusion with each other, on its terms to violate the Plaintiffs' constitutional rights was in violation of 42 U.S.C. § 1983. Accordingly, DC37's Motion to Dismiss must be denied.

**POINT I. STANDARD OF REVIEW FOR A MOTION TO DISMISS**

**A. FRCP 12(b)(1)**

The DC37 Defendants argue that the Plaintiffs lack standing to directly challenge the DC37 Agreement. *See,* **DC37 Defendants' Memorandum of Law**, at page 10.

In *Cummings v. City of NY*, 2020 US Dist LEXIS 31572, at *39 (S.D.N.Y. 2020), the Court held:

> Plaintiff lacks standing to assert a breach of the contract between DOE and the Union. By becoming a union member, an individual employee "has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union." *Berlyn v. Board of Ed. of E. Meadow Union Free Sch. Dist.*, 80 A.D.2d 572, 435 N.Y.S.2d 793, 794 (2d Dep't 1981), *aff'd* 55 N.Y.2d 912, 433 N.E.2d 1278, 449 N.Y.S.2d 30 (N.Y. 1982).

The Plaintiffs in this Action are not alleging a breach of the DC37 Agreement with the FDNY. The Plaintiffs are instead alleging a conspiracy and collusion between the DC37 Defendants and the City Defendants to impede, interfere with, and infringe upon the Plaintiffs' constitutional rights based upon the DC37 Agreement, which, was entered into in violation of the N.Y. City Administrative Code.

In this Action, the Plaintiffs argue that the DC37 Agreement violated New York City Administrative Code at § 12-307(a)(4) because the Locals were not "signator[ies] or part[ies] to the DC 37 Agreement." **Docket Entry No. 49**, at page 2. As a result, the DC37 Agreement is void as a matter of law.

The Plaintiffs' standing is based upon causes of action against the City Defendants and the DC37 Defendants, pursuant to 42 U.S.C. § 1983, for purportedly agreeing to the DC37 Agreement in violation of New York City Administrative Code at § 12-307(a)(4).

The N.Y. City Administrative Code required the Locals, not the umbrella organization, to negotiate with the City regarding the implementation of the Vaccine Mandate. *See, In the Matter of Improper Practice Proceeding between District Council 37, AFSCMA, AFL-CIO, and its affiliates, Local 2507 and Local 3621*, 75 OCB 9 (N.Y.C. Office of Collective Bargaining 2005).

Since the DC37 Agreement is statutorily defective, the defective agreement violated the Plaintiffs' constitutional rights. Thus, the proper mechanism to seek relief from the City Defendants' and the DC37 Defendants' misconduct is a 42 U.S.C. § 1983 claim.

The Plaintiffs are not alleging that DC37 or the City breached the parties' collective bargaining agreement, only that the DC37 Agreement is statutorily defective, unconstitutional and because of that, the DC37 Defendants and the City Defendants colluded and conspired to violate the Plaintiffs' constitutional rights. As a result, the Plaintiffs' have standing pursuant to 42 U.S.C. § 1983.

Finally, as discussed below at Point III, the DC37 Defendants breached their duty of fair representation by failing to bring the DC37 Agreement to the members of the union for ratification and therefore the enforceability of the DC37 is in doubt.

Accordingly, the Plaintiffs have standing to challenge the DC37 Agreement. The DC37 Defendants' Motion to Dismiss must be denied.

**B. FRCP 12(b)(6)**

In *Garcia v Coll. of Staten Is.*, 2012 US Dist LEXIS 128485, at *7-10 (E.D.N.Y. 2012) (Matsumoto, J.) this Court opined:

> On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Iqbal*, 556 U.S. at 679.

In *McKenzie v. Grand Cent. Partnership*, 2016 US Dist LEXIS 39361, at *5-7 (E.D.N.Y. 2016) (Matsumoto, J.), the Court held:

> Under Federal Rule of Civil Procedure 12(b)(6), to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotations omitted); Fed. R. Civ. P. 12(b)(6). This plausibility standard is guided by "[t]wo working principles." *Id.* First, although "a court must accept as true all of the allegations contained in a complaint," that "tenet" "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

> suffice." *Id.* "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss," and "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Plaintiffs have alleged sufficient facts that on the face of the Amended Complaint, the Plaintiffs have set forth plausible claims against the Defendants. Accordingly, the Defendants' Motions to Dismiss should be denied.

**POINT II. THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' FIRST CAUSE OF ACTION SEEKING AN ORDER DECLARING THAT THE FDNY'S SUSPENSIONS WITHOUT PAY AND WITHOUT DUE PROCESS VIOLATED THE PLAINTIFFS' CONSTITUTIONAL RIGHTS**

The FDNY just assumes that the processes offered to the Plaintiffs satisfy the constitutional minima, without stating the authority the FDNY had to impose leave without pay without due process. The FDNY's whole premise that it could just impose leave without pay, violating the Plaintiffs' constitutional rights to their pay and in their right to due process is an improper starting point in the discussion. *See, Tooly v. Schwaller*, 919 F.3d at 173 ; *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 793; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 546.

The FDNY has failed to comply with the New York City Charter and N.Y. Civil Service Law in their illegal attempt to impose a vaccine mandate on FDNY employees, like the Plaintiffs. The City Defendants do not even argue a legal justification for their utter disregard for the N.Y. City Charter and the N.Y. Civil Service Law.

Since both the New York City Charter and N.Y. Civil Service Law were violated by the FDNY's imposition of the Vaccine Mandate, the Plaintiffs have stated a plausible claim for a declaration that the City Defendants' imposition of suspensions without pay without due process was a violation of the Plaintiffs' constitutional rights.

**A. New York City Charter § 487(a)**

New York City Charter Section 487(a) empowers the FDNY Commissioner to "have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire department and the premises and property in the custody thereof ..." N.Y.C. Charter § 487(a).

At the time the Vaccine Mandate was imposed, Nigro was Commissioner. *See,* **Docket Entry No. 27**, at ¶ 111.

Yet, Nigro did not issue any Order imposing the Vaccine Mandate. Instead, for some unexplained reason, Hodgens, Chief of Operations, issued a Buckslip imposing the Vaccine Mandate. *See,* **Docket Entry No. 17-1.** Nowhere in the Buckslip does it inform the reader that the Commissioner, Nigro, authorized or consented to the contents of the document. Without Nigro's authorization or consent, Hodgens' imposition of the Vaccine Mandate was outside the scope of his authority, since only Nigro and not Hodgens as Chief of Operations, has the "sole and exclusive power" to manage the fire department.

The City Defendants may argue that Hodgens had apparent authority to issue the Buckslip and it was unnecessary for Nigro to issue his own order. However, that contradicts what occurred in the NYPD where the Police Commissioner issued an order imposing the Vaccine Mandate on employees of the NYPD.[1]

In *Marciano v. De Blasio*, 2022 US Dist LEXIS 41151, at *6-7, the Court stated: "on November 10, 2021, Police Commissioner Shea issued Operations Order 49, which incorporated the requirements of both Mayor de Blasio's August 31, 2021 Executive Order and the

[1] Interestingly, the New York City Charter describes the NYPD Commissioner's powers as: "The commissioner shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department." N.Y. City Charter at § 434.a. The FDNY's Commissioner's authority under the N.Y. City Charter is much more specific and direct granting him "sole and exclusive power", which makes the City Defendants' failure to have the FDNY Commissioner execute an Order to impose the Vaccine Mandate such a blatant violation of the N.Y. City Charter, requiring a declaration from this Court that the Plaintiffs' suspensions without due process were a violation of the Plaintiffs' constitutional rights since the Vaccine Mandate was never legally imposed upon the FDNY employees.

Department's Order, including the requirement that NYPD employees who are not in compliance with these orders would be placed on LWOP."

The City handled the imposition of the Vaccine Mandate two different ways in two different agencies

In the NYPD, the NYPD Commissioner issued an Order.[2] In the FDNY, the Chief of Operations issued a Buckslip. *See*, **Docket Entry No. 17-1**. The City Defendants need to explain why the different methods were used in the two agencies. As far as the FDNY's imposition of the Vaccine Mandate, it violated the N.Y. City Charter since the FDNY Commissioner did not issue an Order imposing the Vaccine Mandate on the FDNY employees.

Without the authority in the N.Y. City Charter to impose the Vaccine Mandate on FDNY employees, when the City Defendants suspended the Plaintiffs without due process, the City Defendants violated the Plaintiffs' constitutional rights. *See, Tooly v. Schwaller*, 919 F.3d at 173; *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 793 ; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 546.

The Plaintiffs have stated a plausible claim for a declaratory judgment declaring that the Plaintiffs' suspensions violated their constitutional rights since Hodgens, the FDNY's Chief of Operations, acted outside his authority in imposing the Vaccine Mandate. Therefore, the City Defendants' Motion to dismiss should be denied.

---

[2] The Court in *Marciano v. De Blasio*, 2022 US Dist LEXIS 41151, at *27, relied heavily on the fact that "Marciano received multiple forms of notice regarding the Department's Order more than a month before the deadline to comply or to seek an accommodation, including through an Administrative Bulletin sent to members of the police force and through an order issued by Police Commissioner Shea. Further, as reflected in Commissioner Shea's order, Marciano was given the opportunity to be heard as to the application of the Order against him by seeking an accommodation through the appropriate channels." However, with respect to the FDNY, the FDNY Commissioner, Nigro did not issue a similar Order as the one issued by the NYPD Commissioner and therefore the implementation of the Vaccine Mandate through the Buckslip was in violation of the N.Y. City Charter.

**B. N.Y. Civil Service Law**

The City Defendants argue that the Court should not disturb its prior ruling in this matter that the Vaccine Mandate is a condition of employment to work for the FDNY. *See,* **City Defendants' Memorandum of Law**, at pages 8-9.

The Plaintiffs disagree that the Court is bound by its prior determination since there is new case law, from this very Court, on point, that makes this Court's prior holding no longer good law.

In *Matsushita Elec. Corp. of Am. v. 212 Copiers Corp.*, 1996 US Dist LEXIS 2221, at *3 (S.D.N.Y. 1996), the Court held: "the court's findings on a preliminary injunction motion are not law of the case."

In *Goodheart Clothing Co. v. Laura Goodman Enters.*, 962 F.2d 268, 274 (2d Cir 1992), the Court opined:

> the question posed is whether the same court that issued a preliminary injunction should revisit the issue of the Goodmans' good faith at a subsequent stage in the same litigation. Accordingly, to the extent that any form of preclusion might be considered applicable here, it would not be a rule of res judicata or collateral estoppel, but rather the somewhat more flexible law-of-the-case doctrine, under which courts "generally adhere to [their] own earlier decision on a given issue in the same litigation." *United States v. Adegbite,* 877 F.2d 174, 178 (2d Cir.), *cert. denied,* 493 U.S. 956, 110 S. Ct. 370, 107 L. Ed. 2d 356 (1989).
>
> In any event, no rule of preclusion may appropriately be applied in this case. A preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment. *See A.J. Canfield Co. v. Vess Beverages, Inc.,* 859 F.2d 36, 38-39 (7th Cir. 1988). As we stated in *Sierra Club v. United States Army Corps of Eng'rs,* 732 F.2d 253, 256 (2d Cir. 1984): "A preliminary injunction is issued to maintain the *status quo* until there can be a hearing on the merits." *See also Abdul Wali v. Coughlin,* 754 F.2d 1015, 1025 (2d Cir. 1985); *Arthur Guinness & Sons, PLC v. Sterling Publishing Co.,* 732 F.2d 1095, 1099 (2d Cir. 1984);

> *Diversified Mortgage Investors v. U.S. Life Title Ins. Co.*, 544 F.2d 571, 576 (2d Cir. 1976). It would therefore be anomalous at least in most cases, and here, to regard the initial ruling as foreclosing the subsequent, more thorough consideration of the merits that the preliminary injunction expressly envisions.

This Court in *Broecker* clarified the prerequisite necessary for the City to have the Vaccine Mandate become a condition of employment to work for the FDNY, an element that the FDNY cannot meet:

> ... New York Civil Service Law Section 201.4 ... requires the NYC DOE employer to negotiate and bargain terms and conditions of employment. Contrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards.... Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4.

*Broecker v. NY City Dept. of Educ.*, 2022 US Dist LEXIS 25104, at *25.

As the City Defendants acknowledge, both the UFOA and the UFA "chose not to engage in any negotiations at all concerning the impact of the" Vaccine Mandate. **City Defendants' Memorandum of Law**, at page 4.

Unlike the NYCDOE, the FDNY did not negotiate and bargain over the impact of the Vaccine Mandate with the UFOA or the UFA. There is no negotiated resolution with the UFOA and/or the UFA over the impact of the Vaccine Mandate. Accordingly, the FDNY failed to comply with N.Y. Civil Service Law § 201.4., which requires a public employer, like the FDNY to negotiate terms and conditions of employment before imposing the new condition of employment. *See*, N.Y. Civil Service Law § 201.4.

The DC37 Defendants argue that the Plaintiffs make a "dubious assumption that DC 37 held the power, by refusing to negotiate terms, to effectively veto a city action aimed at combatting an unprecedent[ed] public health crisis." **DC37 Defendants' Memorandum of Law**, at page 12.

It is not the Plaintiffs' position, but it is the basis for one of the holdings in *Broecker*. Without a negotiated resolution over the impact of the Vaccine Mandate, the Vaccine Mandate, based upon the holding in *Broecker*, could not become a condition of employment in the FDNY.

When the FDNY suspended without pay the Plaintiffs-members of the UFOA and/or the UFA, there was no statutory or contractual authority to do so.

Unlike when the NYCDOE placed NYCDOE employees on leave without pay based upon the arbitration awards with its unions, the FDNY did not have any agreement with the UFOA or the UFA to take the action it did with respect to the suspensions without pay and without due process.

The FDNY acted unilaterally, without negotiating a change in the term and condition of employment in violation of N.Y. Civil Service Law § 201.4. The FDNY had no unilateral authority to impose the Vaccine Mandate as a condition of employment on the members of the UFOA or the UFA since there is no negotiated agreement with the UFOA and/or the UFA.

The suspension of the Plaintiffs' employment without pay and without due process and without an agreement with the UFOA and/or the UFA was in violation of N.Y. Civil Service Law.

The City Defendants argue that the "Plaintiffs were provided with all the process owed to them in advance of their placement on LWOP and/or potential termination." **City Defendants' Memorandum of Law**, at page 17.

However, the fact that the Vaccine Mandate cannot be a term and condition of employment to work for the FDNY without the FDNY reaching an agreement with the UFOA and/or the UFA (*Broecker v. NY City Dept. of Educ.*, 2022 US Dist LEXIS 25104, at *25), the City Defendants' premise is flawed since the City Defendants did not have any legal or contractual authority to place the Plaintiffs on leave without pay in the first instance.

Accordingly, the Plaintiffs have stated a plausible claim for a declaratory judgment declaring that the Plaintiffs' suspensions without pay violated their constitutional rights. Therefore, the City Defendants' Motion to dismiss should be denied.

**POINT III. THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR DECLARATORY JUDGMENT ON THE PLAINTIFFS' SECOND CAUSE OF ACTION SEEKING A DECLARATION THAT THE DC37 AGREEMENT WAS PROMULGATED WITHOUT ANY CONTRACTUAL AUTHORITY**

The Plaintiffs allege that the DC37 Agreement with the City regarding the impact of the Vaccine Mandate (**Docket Entry No. 62-1**) "was entered into without any contractual authority." **Docket Entry No. 27**, at ¶ 184.

Neither the DC37 Defendants nor the City Defendants cite to any contractual authority for the DC37 Agreement.

Instead, the DC37 Defendants argue that they had "*statutory* authority to enter into" the DC37 Agreement, citing to N.Y. Civil Service Law § 204(1). *See,* **DC37 Defendants' Memorandum of Law**, at page 13.

However, the DC37 Defendants do not explain how they were able to enter into a significant modification and amendment to the current collective bargaining agreement between the DC37 Defendants and the FDNY without a vote of the union's membership approving such a modification.[3]

While DC37 may have had N.Y. Civil Service Law § 201 statutory authority to enter into the DC37 Agreement, the DC37 Agreement was never ratified by the union members and therefore

[3] The DC37 Defendants argue that "much of DC37's membership *favored* the Vaccine Mandate as a critical measure for protecting their health on the job." **DC37 Defendants' Memorandum of Law**, at page 11. Without a vote of the membership, how does DC37 substantiate the statement it makes regarding how DC37's membership felt about the Vaccine Mandate? If the DC37 Defendants were so confident that they were doing the right thing for their members and it had broad support, why did they not bring it before the membership for a vote?

it could not amend the current collective bargaining agreement to strip away the Plaintiffs'-union members' rights.

In *Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973), PERB held that "having negotiated and approved of [a new collective bargaining agreement], they had an affirmative duty to seek its ratification."

In *City of Rochester*, 7 PERB P3060 (1974), PERB held that "it is a violation of their duty to negotiate in good faith for negotiators who reach a tentative agreement not to seek approval of their agreement."

Further in *Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau*, 45 PERB P3047 (2012), PERB held that "when parties have agreed that a tentative agreement is to be ratified, each side is affirmatively obligated to present it to their ratifying entity and to support its approval."

DC37's failure to follow proper procedure to obtain the necessary approval from the DC37's membership makes the DC37 Agreement void, as a matter of contract law since it was never ratified by the members.

"The existence of an agreement between the parties that ratification (either by the union or the employer or both) is a condition precedent to contractual validity may be established by parol evidence, which need not take any particular form, but may be shown by a course of conduct which makes clear that the parties were fully aware of the condition and acquiesced in it." *Capital District Regional Off-Track Betting Corporation v. Teamsters Joint Council No. 18, International Brotherhood of Teamsters,* 20 PERB P3020 (1987).

As a matter of course of conduct, in September 2021 when the last collective bargaining agreement was negotiated between Local 2507 and the City, the members of Local 2507 voted on the negotiated agreement.

In August 2021, DC37 announced that DC37 Local 2507 and Local 3621 reached a tentative agreement with the City raising wages for the members of the Locals. DC37 stated in its press release that "[t]he terms of the agreement must be ratified by union membership." https://www.dc37.net/news/newsreleases/2021/nr8_6 (visited April 20, 2022). *See also,* https://local2507.com/web/contract-ballot-results (visited April 20, 2022).

There can be no dispute that prior agreements between the City and DC37 affecting Plaintiffs-DC37 members were subject to a vote of the membership. The DC37 Agreement regarding the impact of the Vaccine Mandate should have been no different.

Finally, the DC37 Defendants argue that "[t]here is no question here that DC 37 is the collective bargaining representative of the FDNY employees on whose behalf it made the DC 37 Agreement." **DC37 Defendants' Memorandum of Law**, at page 9.

However, this is wrong, as a matter of law.

The FDNY employees are represented by Local 2507 and Local 3621, two locals within the larger DC37. As the DC37 Defendants represented to this Court, Local 2507 and Local 3621 were not "signator[ies] or part[ies] to the DC 37 Agreement." **Docket Entry No. 49**, at page 2.

While DC37 is the umbrella organization, the City has statutory limitations upon who can enter into a collective bargaining agreement with the City relating to the uniformed fire service, which includes those members of DC37 in Locals 2507 and 3621.

"The local laws result in the treatment of EMTs and FADs as being covered by the single-tier negotiating process of NYCCBL § 12-307 (a) (4), with collective bargaining representation by their own unions, and not as part of the bulk Citywide negotiating process." *Mayor of City of NY v. Council of City of NY*, 6 Misc.3d 1022[A], 1022A (Sup. Ct. N.Y. County 2005), *affirmed* 38 A.D.3d 89 (1st Dept 2006), *affirmed* 9 N.Y.3d 23 (2007).

The New York City Administrative Code at § 12-307(a)(4)[4] states:

> Subject to the provisions of subdivision b of this section and subdivision c of section 12-304 of this chapter, public employers and certified or designated employee organizations shall have the duty to bargain in good faith on wages (including but not limited to wage rates, pensions, health and welfare benefits, uniform allowances and shift premiums), hours (including but not limited to overtime and time and leave benefits), working conditions and provisions for the deduction from the wages or salaries of employees in the appropriate bargaining unit who are not members of the certified or designated employee organization of an agency shop fee to the extent permitted by law, but in no event exceeding sums equal to the periodic dues uniformly required of its members by such certified or designated employee organization and for the payment of the sums so deducted to the certified or designated employee organization, subject to applicable state law, except that:
>
> … (4) all matters, including but not limited to pensions, overtime and time and leave rules which affect employees in the uniformed police, fire, sanitation and correction services, or any other police officer as defined in subdivision thirty-four of section 1.20 of the criminal procedure law who is also defined as a police officer in this code, shall be negotiated with the certified employee organizations representing the employees involved. For purposes of this paragraph only:
>
> (i) employees of the uniformed fire service shall also include persons employed at any level of position or service by the fire department of the city of New York as fire alarm dispatchers and supervisors of fire alarm dispatchers, fire protection inspectors and supervisors of fire protection inspectors, emergency medical technicians and advanced emergency medical technicians, as those terms are defined in section three thousand one of the public health law, and supervisors of emergency medical technicians or advanced emergency medical technicians …

In *Mayor of the City of NY v Council of the City of NY*, 9 N.Y.3d at 30, the Court held:

[4] The City Council amended the section effective February 8, 2022 as to section (a) only, but the amendment does not affect or change the Plaintiffs' argument. The Plaintiffs present the Administrative Code section in effect at the time of the DC37 Agreement.

> The local laws at issue here, adopted in 2001, expanded the definition of "employees in the uniformed . . . fire . . . service[]." They added to New York City Administrative Code § 12-307 (a) (4) language saying that, for purposes of that paragraph, "employees of the uniformed fire service shall also include" fire alarm dispatchers, EMTs and their supervisors. Thus, the 2001 local laws made the dispatchers and EMTs, like firefighters and police officers, exempt from section 12-307 (a) (2)'s requirement of citywide bargaining.

As a result, the DC37 Agreement, a citywide bargaining agreement (**Docket Entry No. 62-1**) violated N.Y. City Administrative Code § 12-307(a)(4) because the agreement was between DC37 and the City. *See*, **DC37 Defendants' Memorandum of Law**, at page 1 (stating "DC 37 bargaining with the City"). The DC37 Agreement cannot be enforced as to Plaintiffs-members of Local 2507 and 3621 since Local 2507 and Local 3621 were not "signator[ies] or part[ies] to the DC 37 Agreement." **Docket Entry No. 49**, at page 2.

Since DC37 did not have the legal authority to bind the members of Local 2507 and Local 3621, the DC37 Agreement is void as a matter of law.

Accordingly, the Plaintiffs have stated a plausible claim that the DC37 Agreement has serious statutory and contractual infirmities such that the Defendants' Motion to Dismiss the Second Cause of Action must be denied.

## POINT IV. THE PLAINTIFFS HAVE STATED A PLAUSIBLE CLAIM FOR A PERMANENT INJUNCTION ON THE PLAINTIFFS' THIRD CAUSE OF ACTION

Neither the City Defendants nor the DC37 Defendants move to dismiss the Plaintiffs' Third Cause of Action seeking a permanent injunction. However, the Plaintiffs address the Third Cause of Action because the Plaintiffs can state a plausible claim for a permanent injunction.

In *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), the Court held:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before

> a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

While at the earlier stages of this Action, the Court denied the Plaintiff's application for preliminary injunction **(Docket Entry No. 24)**, a permanent injunction is only issued once the parties have had an opportunity to conduct discovery and the full breadth of the Defendants' conduct has been examined through the adversarial process.

At this early stage of the litigation, without discovery, but with allegations concerning the illegality of the City Defendants' suspension of the Plaintiffs without due process (Point II above) and the DC37 Agreement's statutory and contractual infirmities (Point III above), the Plaintiffs, may, at the conclusion of discovery, have sufficient evidence to establish the elements of a permanent injunction.

At this point in the litigation, the Plaintiffs only have to plead a plausible claim and the Plaintiffs have done so. Accordingly, the Plaintiffs' Third Cause of Action should not be dismissed.

**POINT V. THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE FDNY DEFENDANTS, ON THE PLAINTIFFS' FOURTH CAUSE OF ACTION**

**A. Factual Predicate For Cause Of Action**

The City Defendants imposed the Vaccine Mandate without an Order from FDNY Commissioner Nigro, in violation of N.Y. City Charter § 487(a).

The City Defendants imposed the Vaccine Mandate without negotiating with the FDNY's unions, the UFOA and the UFA, and therefore failed to reach an agreement on the impact of the

Vaccine Mandate. *See,* **City Defendants' Memorandum of Law**, at page 4. *See, Broecker v. NY City Dept. of Educ.*, 2022 US Dist LEXIS 25104, at *25. Without an agreement on a term and condition of employment that the FDNY sought to impose upon FDNY employees, like the Plaintiffs, the FDNY failed in its statutory obligation to reach an agreement to make the Vaccine Mandate a condition of employment. *See,* N.Y. Civil Service Law § 201.4. As a result, the Vaccine Mandate is not a term and condition of employment for Plaintiffs-members of the UFOA and the UFA.

In addition, the DC37 Agreement cannot bind members of Local 2507 or Local 3621 because N.Y. City Administrative Code § 12-307(a)(4) requires the Locals, not DC37 to negotiate the terms and conditions of employment of their members. *See,* N.Y. City Administrative Code § 12-307(a)(4). Therefore, the Vaccine Mandate did not and could not be a condition of employment for FDNY employees.

If the Vaccine Mandate is not a condition of employment for FDNY employees, then, the City Defendants had no legal right or authority to suspend the Plaintiffs without pay without due process.

### B. Plaintiffs Have Stated A Plausible Claim Against The City Defendants

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir 1998).

The FDNY is a State actor who at, all times was acting under the color of state law. *See,* **Docket Entry No. 27**, at ¶ 110. Nigro was, at the time of the matters at issue in this Action, Commissioner of the FDNY. *See,* **Docket Entry No. 27**, at ¶ 111.

The FDNY implemented the Vaccine Mandate. As a result of the FDNY's implementation of the Vaccine Mandate, those Plaintiffs who refused to comply and take a vaccine were suspended without pay and without due process.

The FDNY argues that the Vaccine Mandate was a condition of employment, but the FDNY did not reach an agreement with the UFOA and the UFA to establish the Vaccine Mandate as a condition of employment to work for the FDNY. *See, Broecker v. NY City Dept. of Educ.*, 2022 US Dist LEXIS 25104, at *25.

In addition, the FDNY did not reach an agreement with Local 2507 and Local 3621 on the impact of the Vaccine Mandate. *See,* N.Y.C. Administrative Code § 12-307(a)(4).

Since the FDNY has no agreement with the UFOA, Local 2507, Local 3621, and/or the UFA to create a new condition of employment, the City Defendants' actions caused the Plaintiffs to suffer a denial of their constitutional rights and privileges.

As a result, the Plaintiffs have stated a plausible claim against the City Defendants for violating the Plaintiffs' constitutional rights, resulting in the violation of 42 U.S.C. § 1983. Accordingly, the City Defendants' Motion to Dismiss must be denied.

**POINT VI.    THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST THE CITY DEFENDANTS, AND THE DC37 DEFENDANTS ON THE PLAINTIFFS' NINTH CAUSE OF ACTION**

**A.    Factual Predicate For Cause Of Action**

The DC37 Agreement violated New York City Administrative Code at § 12-307(a)(4), since the Locals were not "signator[ies] or part[ies] to the DC 37 Agreement." **Docket Entry No. 49**, at page 2. *See,* New York City Administrative Code at § 12-307(a)(4).

Since the DC37 Agreement was illegal and the FDNY relied upon the illegal DC37 Agreement to suspend the Plaintiffs without due process, the DC37 Defendants violated the Plaintiffs constitutional rights in their pay and due process. *See, Tooly v. Schwaller*, 919 F.3d at 173; *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 793 ; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 546.

The DC37 Defendants conspired with the City and agreed to allow the FDNY to suspend the Plaintiffs without pay and ultimately terminate their employment for not complying with the Vaccine Mandate.

The FDNY, relying upon the illegal DC37 Agreement (New York City Administrative Code at § 12-307(a)(4) (**Docket Entry No. 62-1**)), argued to this Court that the Vaccine Mandate was a condition of employment for FDNY employees. *See,* **Docket Entry No. 14,** at pages 9-10.

Without DC37 conspiring with the FDNY to resolve the impasse by entering into an illegal agreement that purportedly permitted the FDNY to suspend the Plaintiffs without pay and ultimately terminate their employment, the FDNY would not have had the apparent (but not actual or legal) authority to take the actions it did against the Plaintiffs.

### B. Plaintiffs Have Stated A Plausible Claim Against The City Defendants

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d at 245.

The FDNY is a State actor who at, all times was acting under the color of state law. *See,* **Docket Entry No. 27**, at ¶ 110. Nigro was, at the time of the matters at issue in this Action, Commissioner of the FDNY. *See,* **Docket Entry No. 27**, at ¶ 111.

The FDNY implemented the Vaccine Mandate. As a result of the FDNY's implementation of the Vaccine Mandate, those Plaintiffs who refused to comply and take a vaccine were suspended without pay.

The City Defendants, relying upon the DC37 Agreement **(Docket Entry No. 62-1)** argued that the Vaccine Mandate was a condition of employment that the DC37 agreed to and therefore consented to the FDNY's conduct.

If the DC37 Agreement was illegal, improper, and violated the Plaintiffs'-members contractual rights, as argued by the Plaintiffs (Point III above), then, as a result of the FDNY's actions, the Plaintiffs suffered a denial of their State statutory rights and constitutional rights and privileges.

As a result, the Plaintiffs have stated a plausible claim against the City Defendants for violating the Plaintiffs' constitutional rights, resulting in the violation of 42 U.S.C. § 1983. Accordingly, the City Defendants' Motion to Dismiss must be denied.

### C. Plaintiffs Have Stated A Plausible Claim Against The DC37 Defendants

The DC37 Defendants argue that they are not State actors and therefore any claims pursuant to 42 U.S.C. § 1983 must be dismissed.

In *Manhattan Community Access Corp. v. Halleck*, 139 S.Ct. 1921, 1928 (2019), the Court opined:

> Under this Court's cases, a private entity can qualify as a state actor in a few limited circumstances—including, for example, (i) when the private entity performs a traditional, exclusive public function, see, *e.g., Jackson*, 419 U. S., at 352-354, 95 S. Ct. 449, 42 L. Ed. 2d 477; (ii) when the government compels the private entity to take a particular action, see, *e.g., Blum* v. *Yaretsky*, 457 U. S. 991, 1004-1005, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982); or (iii) when the government acts jointly with the private entity, see, *e.g., Lugar* v.

*Edmondson Oil Co.*, 457 U. S. 922, 941-942, 102 S. Ct. 2744, 73 L. Ed. 2d 482 (1982).

The DC37 Defendants are state actors in these circumstances because they acted jointly with the City Defendants with respect to the DC37 Agreement.

The DC37 Defendants cite to *Eaddy v. Jemiola*, 2013 US Dist LEXIS 15293 (D. Conn. 2013) for the proposition that just by negotiating a collective bargaining agreement it is not enough for a conspiracy claim against the union.

The DC37 Defendants overlook the Court's holding *Eaddy* in which the Court criticized the Plaintiff's pleading stating that "there is no allegation that the Union Defendants conspired with the City to engage in conduct *that itself* violated Plaintiffs' constitutional rights." *Eaddy v. Jemiola*, 2013 US Dist LEXIS 15293, at *11.

Unlike the plaintiff in *Eaddy*, the Plaintiffs allege that as a result of the DC37 Agreement, the Plaintiffs' constitutional rights were violated. *See,* **Docket Entry No. 27**, at ¶¶ 134 through 143.

Despite the DC37 Defendants' argument that they were adversarial to the City Defendants (**DC37 Defendants' Memorandum of Law**, at page 8), the DC37 Defendants do not explain why they agreed and were willful participants in entering into the DC37 Agreement which violated New York City Administrative Code at § 12-307(a)(4) and unilaterally permitted the FDNY to suspend the Plaintiffs without pay because the Vaccine Mandate purportedly became a condition of employment to remain employed by the FDNY. *See,* **Docket Entry No. 62-1**, at § 2.A.

This was collusion and a conspiracy between the DC37 Defendants and the City Defendants that resulted in the illegal DC37 Agreement that granted to the FDNY every possible benefit that it sought in negotiations. *See,* **Docket Entry No. 62-1**.

The DC37 Defendants argue that it was the FDNY and not the DC37 Defendants that violated the Plaintiffs' constitutional rights when the Plaintiffs were placed on unpaid leave without a hearing. **DC37 Defendants' Memorandum of Law,** at page 12.

But the DC37 Defendants ignore the fact that DC37 just rolled over and accepted that the Vaccine Mandate was going to be imposed on the FDNY's terms without challenging the fact that the Plaintiffs'-DC 37 members' constitutional rights would be violated or impaired by DC37's agreement to allow the FDNY to implement the Vaccine Mandate on the FDNY's terms. Just like the UFOA, UFA, Local 2507, and Local 3621, DC37 could have opposed the City's implementation of the Vaccine Mandate, fighting and challenging the implementation without agreeing to its impact.

But-for the illegal DC37 Agreement, the Plaintiffs-DC37 members the City Defendants would not have had the apparent authority to suspend without pay for not taking the vaccine.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 (S.D.N.Y. 2007) held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The Plaintiffs are arguing that the DC37 Defendants conspired with the City Defendants to come to an illegal agreement (the DC37 Agreement) that deprived the Plaintiffs-DC37 members of their constitutional rights to pay and due process. *See, Tooly v. Schwaller*, 919 F.3d at 173 ; *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 793; *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. at 546.

The DC37 Agreement was illegal (New York City Administrative Code at § 12-307(a)(4)) because the Locals were not "signator[ies] or part[ies] to the DC 37 Agreement." **Docket Entry No. 49**, at page 2.

While the DC37 Defendants may have breached their duty of fair representation, the Plaintiffs' complaint about the DC37 Defendants' conduct concerns the DC37 Defendants'

conspiracy with the City Defendants and the willful participation of the DC37 Defendants to enter into an agreement that provided the FDNY with the purported contractual authority to suspend Plaintiffs-DC37 members without pay and without due process in violation of their constitutional rights. *See,* **Docket Entry No. 27** at ¶¶ 134 through 143.

As a result, the Plaintiffs has stated a plausible claim against the DC37 Defendants for violation of 42 U.S.C. § 1983.

*************

The City Defendants' and the DC37 Defendants' Motions to Dismiss should be denied.

**POINT VII. THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR A VIOLATION OF 42 U.S.C. § 1983 AGAINST NIGRO AND GARRIDO ON THE PLAINTIFFS' SIXTH CAUSE OF ACTION**

The Plaintiffs allege that the individual defendants – Nigro (then-Commissioner of the FDNY (**Docket Entry No. 27**, at ¶ 111)) and Garrido (Executive Director of DC37 (**Docket Entry No. 27**, at ¶ 121)), (collectively referred to as "Individual Defendants") – were personally involved in the deprivation of the Plaintiffs' constitutional rights.

In *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir 1977), the Court held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

In *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir 1986), the Court opined:

> A defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983 in several ways. The defendant may have directly participated in the infraction, *see, e.g., Johnson v. Glick*, 481 F.2d 1028, 1033-34 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S. Ct. 462, 38 L. Ed. 2d 324 (1973) (prison guard liable for beating inmate); *Sostre v. McGinnis*, 442 F.2d 178, 205 (2d Cir. 1971) (en banc), *cert. denied*, 404 U.S. 1049,

92 S. Ct. 719, 30 L. Ed. 2d 740 (1972) (Prison warden liable for ordering that inmate be placed in solitary confinement). A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong, *see, e.g., United States ex rel. Larkins v. Oswald*, 510 F.2d 583, 589 (2d Cir. 1975). A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, *see, e.g., McCann, supra*, 698 F.2d at 125; *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir.), *cert. denied*, 449 U.S. 1016, 66 L. Ed. 2d 475, 101 S. Ct. 577 (1980); *Duchesne v. Sugarman*, 566 F.2d 817, 830-31 (2d Cir. 1977). Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event, *see, e.g., Wright v. McMann*, 460 F.2d 126, 135 (2d Cir. 1972) (warden responsible for condition of disciplinary units at prison). *Cf. Owens v. Haas*, 601 F.2d 1242, 1246 (2d Cir.), *cert. denied*, 444 U.S. 980, 100 S. Ct. 483, 62 L. Ed. 2d 407 (1979)(municipality liable for gross negligence in training its prison guards).

Each of the Individual Defendants had their own individual roles to play in the various organizations that ultimately led to the deprivation of the Plaintiffs' constitutional rights.

Nigro, as Commissioner of the FDNY had to be involved in the decision-making process that led to the implementation of the Vaccine Mandate and the illegal DC37 Agreement. While at this stage of the litigation, without conducting discovery including an examination of emails and other documentary evidence, the Plaintiffs have sufficiently plausibly plead that Nigro had a personal involvement in the deprivation of the Plaintiffs' constitutional rights. The Plaintiffs are not required to prove their case against Nigro at this stage of the litigation.

Garrido personally executed the DC37 Agreement on behalf of DC37. *See*, **Docket Entry No. 62-1**, at page 7. Garrido had to know that by entering to the DC37 Agreement, he violated New York City Administrative Code at § 12-307(a)(4) and that the Locals were not "signator[ies] or part[ies] to the DC 37 Agreement." **Docket Entry No. 49**, at page 2. As a result, the Plaintiffs can plausibly plead that Garrido had a personal involvement in the deprivation of the Plaintiffs' constitutional rights.

The Plaintiffs do not have to prove individual liability in their Amended Complaint, only that they have a plausible claim against the Individual Defendants. The Individual Defendants' Motion to Dismiss must be denied.

**POINT VIII. THE PLAINITFFS HAVE STATED A PLAUSIBLE CLAIM FOR CLASS ACTION STATUS**

The Plaintiffs are eighty-seven (87) out of the hundreds of FDNY employees who were adversely affected by the unilateral and illegal implementation by the FDNY of the Vaccine Mandate and the illegal DC37 Agreement. The Plaintiffs are eighty-seven (87) out of the hundreds of FDNY employees who refused to take the vaccine and were suspended without pay and without due process by the FDNY.

The Plaintiffs have plausibly stated claims against the Defendants. Since the Plaintiffs' claims are representative of all FDNY employees impacted by the FDNY's unilateral decision to impose an illegal Vaccine Mandate, the Plaintiffs can set forth valid claims for class action status.

FRCP Rule 23(a) states:

> Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

While the Plaintiffs do not cross-move for class action status, the City Defendants have moved to dismiss the Plaintiffs' allegations of class status. *See,* **City Defendants' Memorandum of Law**, at pages 24-25.

The Plaintiffs can plausibly plead that the class is so numerous since every FDNY employee who was suspended without pay because the employee did not take the COVID vaccine was affected by the FDNY's actions.

It is also clear that the questions of law and fact are common to the class.

Also clear is that the claims of the representative parties are typical of the claims of the class since all of the FDNY employees who refused to take the COVID vaccine are similarly situated with respect to how the illegally imposed Vaccine Mandate by the FDNY and the DC37 Agreement had on their careers.

Finally, there are no arguments made by the Defendants that the representative parties cannot or will not fairly and adequately protect the interests of the class.

Accordingly, the Plaintiffs have plausibly pled class action claims. The Court should deny the Defendants' Motions to Dismiss.

**POINT IX. THE COURT SHOULD GRANT LEAVE FOR THE PLAINTIFFS TO FILE A SECOND AMENDED COMPLAINT TO CORRECT ANY DEFICIENCIES IN THE AMENDED COMPLAINT**

The Plaintiffs request that if the Court is inclined to dismiss any of the Plaintiffs' causes of action, the Court grant the Plaintiffs an opportunity to amend the Amended Complaint to cure any defects in the pleading that the Court believes that the Plaintiff can make such that a Second Amended Complaint would survive dismissal. *See, Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 796.

**CONCLUSION**

For the reasons argued in this Memorandum of Law, the Defendants' Motions to Dismiss should be denied.

Dated: Carle Place, New York
May 18, 2022

Austin Graff
THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiffs*
One Old Country Road, Suite 385
Carle Place, New York 11514
(516) 746-5040

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN GARLAND, *et al.*

*Plaintiffs*,

-against-

NEW YORK CITY FIRE DEPARTMENT, *et al.*,

*Defendants.*

Case No. 1:21-cv-06586-KAM-CLP

**REPLY MEMORANDUM OF DC 37 DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS**

Peter D. DeChiara
Hanan B. Kolko
Melissa S. Woods
COHEN WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, N.Y. 10022
(212) 356-0216
pdechiara@cwsny.com
hkolko@cwsny.com
mwoods@cwsny.com

Attorneys for DC 37 Defendant

**TABLE OF CONTENTS**

**Page(s)**

I. PLAINTIFFS' REQUEST FOR A DECLARATORY JUDGMENT IN COUNT 2 FAILS SINCE DC 37 HAD AUTHORITY TO ENTER INTO THE DC 37 AGREEMENT ........ 1

A. The DC 37 Agreement Did Not Amend Existing Collective Bargaining Agreements ........ 1

B. The Amended Complaint Alleges No Facts Showing that the DC 37 Agreement Was Subject to Ratification ........ 2

C. DC 37 Had Authority as the Employees' Certified Bargaining Representative to Enter into the DC 37 Agreement ........ 5

II. THE SECTION 1983 CLAIMS AGAINST THE DC 37 DEFENDANTS IN COUNTS 5 AND 6 FAIL AS A MATTER OF LAW ........ 6

A. The Court Has Already Held that FDNY Did Not Violate Plaintiffs' Constitutional Rights by Placing Them on Unpaid Leave ........ 6

B. The Amended Complaint Alleges No Facts Showing that the DC 37 Defendants Acted Under Color of State Law ........ 8

C. The Amended Complaint Fails to Allege Facts Showing that the DC 37 Defendants Themselves Violated Plaintiffs' Constitutional Rights ........ 10

CONCLUSION ........ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Disabled in Action v. Trump Int'l Hotel*,
2003 WL 1751785 (S.D.N.Y. 2003) .......... 1

*Eaddy v. Jemiola*,
2013 WL 441077 (D. Conn. 2013) .......... 9, 10

*Kamanou v. Exec. Sec'y*,
2012 WL 868700 (March 14, 2012 S.D.N.Y.) .......... 2

*Kasper v. Middletown*,
352 F.Supp.2d 216 (D. Conn. 2005) .......... 9

*Local 621, S.E.I.U., AFL-CIO v. City of New York*,
2000 WL 1459844 (S.D.N.Y. 2000) .......... 4, 5

*Marcino v. DeBlasio*,
2022 WL 678779 (S.D.N.Y. 2022) .......... 8

*McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am.*,
107 F.Supp.2d 311 (S.D.N.Y. 2000) .......... 10

*SAM Party of New York v. Kosinski*,
2021 WL 6061301 (S.D.N.Y. 2021) .......... 7

*Wozniak v. UAW Local 897*,
842 F.2d 633 (2d Cir. 1988) .......... 3

**Statutes**

N.Y. Civil Serv. Law §205(5)(d) .......... 4

**Other Authorities**

NYC Administrative Code §12-307(a)(4) .......... 6, 7

NYC Charter §487(a) .......... 7, 8

NYC Charter Section 487(e) .......... 8

Defendants DC 37 and its Executive Director Henry Garrido submit this reply memorandum in further support of their motion to dismiss, and in reply to Plaintiffs' May 18, 2022 *Memorandum of Law in Opposition to the Defendants' Motions to Dismiss* ("Pltfs. Mem.").

## I. PLAINTIFFS' REQUEST FOR A DECLARATORY JUDGMENT IN COUNT 2 FAILS SINCE DC 37 HAD AUTHORITY TO ENTER INTO THE DC 37 AGREEMENT

In Count 2 of their Amended Complaint, Plaintiffs seek a declaration that the parties to the DC 37 Agreement entered into it "without any contractual authority." Am. Compl. ¶186. As we explained in our opening brief, the parties to the DC 37 Agreement had *statutory* authority to enter into it, making any purported lack of contractual authority irrelevant. *See* April 14, 2022 *Memorandum of Law of DC 37 Defendants in Support of Their Motion to Dismiss* ("DC 37 Mem.") at 13. In their opposition, Defendants advance three new reasons why they believe the DC 37 Agreement is "void," Pltfs. Mem. 5: (1) that the DC 37 Agreement purportedly amended existing collective bargaining agreements, *see* Pltfs. Mem. 5; (2) that DC 37 did not submit the DC 37 Agreement for membership ratification, *see* Pltfs. Mem. 14-16; and (3) that DC 37 Locals 2507 and 3621 did not sign the DC 37 Agreement, *see id*. 16-18. These arguments all fail.

### A. The DC 37 Agreement Did Not Amend Existing Collective Bargaining Agreements

Plaintiffs claim that the DC 37 Agreement amended existing collective bargaining agreements with FDNY and that such purported amendment was improper because "there is no amendment process in the current collective bargaining agreements." Pltfs. Mem. 5. Because Plaintiffs raise this argument for the first time in their opposition brief, the Court should not consider it. *See Disabled in Action v. Trump Int'l Hotel*, 2003 WL 1751785, at *13 (S.D.N.Y. 2003) ("A claim for relief may not be amended by the briefs in opposition to a motion to dismiss"; the court is "limited to consideration of the factual allegations in the complaint")

(citation and internal quotations omitted); *accord Kamanou v. Exec. Sec'y*, 2012 WL 868700, at *2 n.2 (S.D.N.Y. 2012) (declining to consider theories first introduced in brief opposing motion to dismiss).

If the Court nonetheless chooses to consider the argument, it should reject it. The Amended Complaint contains no facts showing that the DC 37 Agreement was an amendment to a collective bargaining agreement. In particular, Plaintiffs identify no language in any existing collective bargaining agreement that the DC 37 Agreement supposedly amended. The DC 37 Agreement was not an amendment to anything, but a stand-alone agreement, addressing one discrete topic, namely, the Vaccine Mandate.

Plaintiffs' argument would fail even if the DC 37 Agreement could somehow be construed as an amendment to a collective bargaining agreement. Plaintiffs point to nothing in any current collective bargaining agreement prohibiting amendments. They claim that the collective bargaining agreements lack an amendment process, but cite no authority for the novel proposition that parties to a contract can only amend it if the contract has an express amendment process. For all these reasons, Plaintiffs' amendment argument fails.

### B. The Amended Complaint Alleges No Facts Showing that the DC 37 Agreement Was Subject to Ratification

Next, Plaintiffs argue that the DC 37 Agreement is void because the DC 37 membership never ratified it. *See* Pltfs. Mem. 14-16. Because Plaintiffs raise this failure-to-ratify theory for the first time in their opposition brief, the Court should not consider it.

The Court should also decline to consider the argument because Plaintiffs failed to exhaust their internal union remedies before raising the argument in court. Article XIV, Section 2 of the DC 37 Constitution provides that "[a] decision not to conduct a ratification vote may be challenged by a member affected by the agreement. The aggrieved member *must* file a written

complaint with the [DC 37 appointed] Ethical Practices Officer …." (emphasis added).[1] The Amended Complaint contains no allegation that the DC 37-member Plaintiffs, *see* Am. Compl. ¶122, filed a complaint pursuant to the DC 37 Constitution contending that the DC 37 Agreement should have been submitted for membership ratification. Because these Plaintiffs failed to exhaust procedures set forth in their union constitution, they cannot raise the matter in court. *See, e.g., Wozniak v. UAW Local 897*, 842 F.2d 633, 636 (2d Cir. 1988) (plaintiff had no right to sue union when he failed to exhaust internal procedures set forth in union constitution).

If the Court nonetheless chooses to consider Plaintiffs' failure-to-ratify argument, it should reject it. Plaintiffs cite PERB cases to support their contention that ratification was required. *See* Pltfs. Mem. 15. But PERB does not oversee relations between DC 37 and FDNY; that relationship is overseen by the New York City Office of Collective Bargaining ("OCB"). *See, e.g., Dist. Council 37*, Decision No. B-9-2005, Docket No. BCB-2421-04, 75 OCB 9 (BCB March 31, 2005) (OCB resolving failure-to-bargain claim by DC 37 against FDNY)[2]; *see also* Plfs. Mem. 6 (citing OCB case law in connection with DC 37 Agreement).

Even if they were applicable, the PERB decisions that Plaintiffs cite would not support Plaintiffs' contention that DC 37 had an obligation to obtain membership ratification. Those decisions hold only that *if* parties to an agreement have agreed that it will be subject to ratification, a union's duty to bargain in good faith requires the union to seek such ratification. *See Civil Serv. Employees Ass'n, Inc.*, 45 PERB ¶3047, 2012 WL 6106652 (Nov. 14, 2012) ("*when parties have agreed that a tentative agreement is to be ratified*, each side is affirmatively

---

[1] https://www.dc37.net/wp-content/uploads/about/graphics/pdf/dc37constitution.pdf

[2] https://decisia.lexum.com/nycocb/bcb/en/item/315085/index.do?q=75+ocb+9. OCB decisions can be found under the "Research" tab of the OCB website. *See* https://www.ocb-nyc.org/.

obligated to present it to their ratifying entity and to support its approval") (emphasis added; footnote omitted); *Capital Dist. Regional Off-Track Betting Corp.*, 20 PERB ¶3020 (April 24, 1987) (referring to "*agreement between the parties* that ratification … is a condition precedent to contractual validity") (emphasis added); *City of Rochester*, 7 PERB ¶3060, 1974 WL 372786 (Sept. 27, 1974) ("employee organization negotiators must work for ratification of their agreement *if ratification is required*" and, if it is, failure to seek ratification violates the "duty to negotiate in good faith") (emphasis added). Because the DC 37 Agreement on its face nowhere indicates that it is subject to membership ratification, and because the Amended Complaint alleges no facts showing that the parties -- through their words or conduct -- made the DC 37 Agreement subject to ratification, the Court has no basis to hold that ratification was required.

Plaintiffs point to certain other agreements with the City that were subject to ratification, and assert that the DC 37 Agreement "should have been no different." Pltfs. Mem. 16. That other agreements were subject to ratification, however, does not mean that the parties made the DC 37 Agreement subject to ratification.

Further, even if one assumed that the DC 37 Agreement was subject to ratification, this Court would have no jurisdiction to void it on the grounds that DC 37 violated its duty to bargain in good faith by not submitting it for ratification.[3] Exclusive jurisdiction over such an alleged labor law violation rests with the appropriate administrative agency. *See Local 621, S.E.I.U., AFL-CIO v. City of New York*, 2000 WL 1459844, at *8 (S.D.N.Y. 2000) ("OCB has exclusive jurisdiction to hear improper practice claims"); N.Y. Civil Serv. Law §205(5)(d) (giving PERB "exclusive nondelegable jurisdiction" to remedy improper employee organization practices).

[3] Plaintiffs cite no authority to support their assertion, *see* Pltfs. Mem. 7, that a union's failure to obtain ratification constitutes a breach of the duty of fair representation (as opposed to a breach of the union's duty to bargain in good faith, *see City of Rochester*, 7 PERB ¶3060, 1974 WL 372786).

### C. DC 37 Had Authority as the Employees' Certified Bargaining Representative to Enter into the DC 37 Agreement

Next, Plaintiffs deny that DC 37 was the collective bargaining representative of the FDNY employees on whose behalf it made the DC 37 Agreement. *See* Pltfs. Mem. 16. They argue that because "DC 37 did not have the legal authority to bind the members of Local 2507 and Local 3621," and because those locals did not sign the agreement, the agreement is void. *Id.* 18.

Like the two other arguments discussed above, this argument is entirely new, having no basis in the allegations of the Amended Complaint. Accordingly, the Court should decline to consider it. Indeed, this argument -- that only the locals had authority to enter into the agreement -- is not just absent from the Amended Complaint but runs directly contrary to the Amended Complaint. The Amended Complaint asserts that it is DC 37, not the locals, that represents the FDNY employees. *See* Am. Compl. ¶120 ("*DC 37* is the sole collective bargaining agent for employees of the FDNY employed in the emergency medical services") (emphasis added). OCB decisions leave no doubt that the employees' certified representative is DC 37, not the locals. *See Dist. Council 37*, Decision No. B-9-2005, Docket No. BCB-2421-04, 75 OCB 9 (BCB March 31, 2005) at 1, 13 (defining DC 37 as the "Union" and noting that in 2003, the City's Board of Collective Bargaining "certified *the Union* as the exclusive bargaining representative of a bargaining unit of EMS employees") (emphasis added);[4] *Dist. Council 37*, Decision No. 4-2003, Docket No. RU-1246-02, 72 OCB 4 (BOC May 28, 2003), at 4

[4] https://decisia.lexum.com/nycocb/bcb/en/item/315085/index.do?q=75+ocb+9..

(determining that "*District Council 37* is the exclusive representative for the purposes of collective bargaining" of various titles of FDNY employees) (emphasis added).[5]

Plaintiffs argue that because DC 37, instead of its local affiliates, signed the DC 37 Agreement, the agreement violates New York City Administrative Code §12-307(a)(4). *See* Pltfs. Mem. 18. This argument, too, is baseless. Section 12-307(a)(4) provides that matters affecting uniformed city personnel, including FDNY emergency medical technicians and certain other FDNY titles, "shall be negotiated with the certified employee organizations *representing the employees involved*." (Emphasis added). Since DC 37 is the certified employee organization representing the FDNY employees affected by the DC 37 Agreement, the agreement does not violate Section 12-307(a)(4).

## II. THE SECTION 1983 CLAIMS AGAINST THE DC 37 DEFENDANTS IN COUNTS 5 AND 6 FAIL AS A MATTER OF LAW

### A. The Court Has Already Held that FDNY Did Not Violate Plaintiffs' Constitutional Rights by Placing Them on Unpaid Leave

Plaintiffs claim in Counts 5 and 6 that the DC 37 Agreement violated their constitutional rights by allowing FDNY to place them on unpaid leave. *See* Am. Compl. ¶233. In their opening brief, the DC 37 Defendants explained that these claims fail because the Court has already held that FDNY's actions did *not* violate their constitutional rights. *See* DC 37 Mem. 6-7.

Plaintiffs argue that because the Court's prior ruling was made in preliminary injunction proceedings, it does not constitute the law of the case. *See* Pltfs. Mem. 11-12. That may be so, but the Court should still follow its prior ruling unless Plaintiffs come forward with some reason

[5] https://decisia.lexum.com/nycocb/boc/en/item/315022/index.do?q=72+ocb+4

-- such as a change in the law or the facts -- for the Court not to follow it. *See, e.g., SAM Party of New York v. Kosinski*, 2021 WL 6061301, at *7 (S.D.N.Y. 2021) (court "reaches the same conclusions" because the factual record "remains substantially unchanged from the time of the Court's preliminary injunction decisions.") Plaintiffs in their opposition brief point to no change in the law or the facts that would warrant the Court's reconsideration of its earlier determination that FDNY did not violate Plaintiffs' constitutional rights by placing them on unpaid leave.

Plaintiffs argue that the Court should revisit its earlier ruling because, they claim, the DC 37 Agreement violates New York City Administrative Code §12-307(a)(4). *See* Pltfs. Mem. 20. We explained above that that argument is meritless. Moreover, the argument mistakenly assumes that the Court's prior ruling that FDNY did not violate Plaintiffs' constitutional rights was premised on the validity of the DC 37 Agreement. The Court's earlier ruling had nothing to do with the DC 37 Agreement. The Court's prior ruling rested on its determination that FDNY had authority "to require COVID-19 vaccination as a qualification of employment for FDNY employees." Docket Entry #24, at 14. In concluding that the Vaccine Mandate was a lawful condition of employment, the Court relied not on the DC 37 Agreement, but on Second Circuit decisional law. *See id.* (*citing We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021)).

Plaintiffs next argue that FDNY violated New York City Charter §487(a) by having FDNY's Chief of Operations, instead of FDNY's Commissioner, issue instructions regarding the Vaccine Mandate. *See* Plfs. Mem. 3-4; *see also* April 14, 2022 *City Defendants' Memorandum of Law in Support of their Motion to Dismiss Amended Complaint*, at 18. Section 487(a) gives the Commissioner "sole and exclusive power" to direct FDNY. However, the phrase "sole and exclusive power" does not mean every departmental order must come from the Commissioner.

Section 487(e) of the New York City Charter illustrates the point. That provision gives the FDNY Commissioner "sole and exclusive power" to fix the location of all fire alarms in New York City. It would be absurd to read that provision as requiring the Commissioner to personally determine the location of each of the city's thousands of fire alarms.

Plaintiffs' argument under New York City Charter §487(a) fails for two additional reasons. First, Plaintiffs nowhere explain why implementation of the City's Vaccine Mandate required *any* order from FDNY. They also fail to explain how, even if an order was required and was issued in contravention of the City's charter, that violated Plaintiffs' *constitutional* rights.

Plaintiffs cite *Marcino v. DeBlasio*, 2022 WL 678779, at *3 (S.D.N.Y. 2022), a case dismissing with prejudice a police detective's challenge to the City's Vaccine Mandate. *See* Pltfs. Mem. 3. There, the court noted that the Police Commissioner issued an order providing that Police Department employees not in compliance with the Vaccine Mandate would be placed on leave without pay. But the case nowhere says that such a departmental order was required, let alone that it had to come from the department's commissioner.[6]

**B. The Amended Complaint Alleges No Facts Showing that the DC 37 Defendants Acted Under Color of State Law**

Even if the Court reconsidered its prior ruling that FDNY did not violate Plaintiffs' constitutional rights, the Section 1983 claims against the DC 37 Defendants would still fail as a matter of law. As the DC 37 Defendants demonstrated in their opening brief, a solid body of case law holds that a union's negotiated agreement with a public-sector employer does not

[6] Plaintiffs claim that FDNY acted unilaterally, without an agreement, regarding the employees represented by UFA and UFOA, and thereby placed them on leave unlawfully. *See* Pltfs. Mem. 12-13. That argument has no bearing on the DC 37-represented employees.

constitute a Section 1983 conspiracy. *See* DC 37 Mem. 7-10 (citing cases). Plaintiffs do not, and could not, challenge that body of case law.

Plaintiffs attempt, *see* Pltfs. Mem. 24, to distinguish just one case, *Eaddy v. Jemiola*, 2013 WL 441077 (D. Conn. 2013), but even that fails. *Eaddy* is fully on point, holding that defendant union entering an agreement with a city was "not enough" to support a conspiracy-based Section 1983 claim, even though the agreement allegedly exposed the plaintiffs to the city's constitutional violations. *Id.* at *3.

Unable to challenge the body of authority holding that a negotiated labor-management agreement is not a Section 1983 conspiracy, Plaintiffs fall back on criticizing DC 37 for its performance at the bargaining table. They question why DC 37 agreed to the terms to which it agreed, *see* Ptlfs. Mem. 24; they charge that "DC 37 just rolled over and accepted" FDNY's terms, *id.* at 25; and they assert that DC 37 could have and should have refused to enter the agreement, *see id*. Such arguments might be appropriate if Plaintiffs had asserted a claim that DC 37 had breached its duty of fair representation ("DFR"). But such DFR contentions are irrelevant to, and cannot save, Plaintiffs' Section 1983 claim. *See* DC 37 Mem. 10.[7]

For purposes of Section 1983, as long as the union was negotiating as the employees' representative, its role in negotiations is deemed adverse to that of the employer, and -- regardless of how well or poorly the union negotiated -- the resulting agreement does not constitute a Section 1983 conspiracy. *See Kasper v. Middletown*, 352 F.Supp.2d 216, 236 (D. Conn. 2005) ("*When a union represents city employees in contract negotiations* … it is considered to be acting adversely to the city government and not acting under color of state

[7] As the DC 37 Defendants explained in their opening brief, any DFR claim by Plaintiffs would be time-barred (and face other fatal defenses). *See* DC 37 Mem. 10 n.3. In addition, there is no basis to conclude that DC 37 failed to properly represent Plaintiffs' interests. *See id*. 10-11.

law"); *McGovern v. Local 456, Int'l Bhd. of Teamsters, Chauffeurs & Warehousemen & Helpers of Am.*, 107 F.Supp.2d 311, 317 (S.D.N.Y. 2000) ("the Union here represents county employees, and *thus must be* considered to be an adversary of the county government") (emphasis added). To hold otherwise would create an unworkable and unprincipled standard, making application of Section 1983 depend on the court's assessment of whether the defendant union acted with sufficient vigor in negotiations with the public employer.

C. **The Amended Complaint Fails to Allege Facts Showing that the DC 37 Defendants Themselves Violated Plaintiffs' Constitutional Rights**

Finally, as the DC 37 Defendants explained in their opening brief, Plaintiffs' claims in Counts 5 and 6 also fail because the Amended Complaint contains no facts showing that the DC 37 Defendants *themselves* violated Plaintiffs' constitutional rights. *See* DC 37 Mem. 12-13; *see, e.g., Eaddy*, 2013 WL 441077, at *4 (additional reason for rejecting Section 1983 claim is that union's agreement with the city not to adopt a written performance evaluation system for the police "did not itself violate the Plaintiff's constitutional rights").

Plaintiffs assert in their opposition brief that Garrido "personally" executed the DC 37 Agreement. Pltfs. Mem. 27. The act of signing the agreement, however, did not violate anyone's constitutional rights. It was FDNY's decision as employer to place Plaintiffs on unpaid leave that gave rise to the purported due process infringement.

**CONCLUSION**

For the foregoing reasons, and those set forth in the DC 37 Defendants' opening brief, the Court should grant their motion and dismiss them from the case with prejudice.

Dated: June 9, 2022

Respectfully submitted,

Peter D. DeChiara
Hanan B. Kolko
Melissa S. Woods
COHEN WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, N.Y. 10022
(212) 356 0216
pdechiara@cwsny.com
hkolko@cwsny.com
mwoods@cwsny.com

Attorneys for DC 37 Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be served this 9th day of June 2022 by email on:

Jonathan L. Scher
Austin R. Graff
The Scher Law Firm, LLP
One Old Country Road, Suite 385
Carle Place, NY 11514
Email: jscher@scherlawfirm.com
Email: agraff@scherlawfirm.com
*Attorneys for Plaintiffs*

Andrea Mary O'Connor
New York City Law Department
100 Church Street, Room 2-104
New York, NY 10007
Email: aoconnor@law.nyc.gov
*Attorney for Defendants*
*NYC Fire Department, Daniel A Nigro, and City of New York,*

[signature]
Peter D. DeChiara

No. 21 Civ 6586 (KAM)(CP)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOHN GARLAND, et al., on behalf of themselves and all other similarly situated employees of the New York City Fire Department,

Plaintiffs,

- against -

NEW YORK CITY FIRE DEPARTMENT, et al.,

Defendants.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF FDNY DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

***HON. SYLVIA O. HINDS-RADIX***
*Corporation Counsel of the City of New York*
*Attorney for, FDNY Defendants*
*100 Church Street, Room 2-100*
*New York, N.Y. 10007*

*Of Counsel: Andrea O'Connor*
*Tel: (212) 356-4015*
*Matter No. 2021-039885*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

ARGUMENT

POINT I

PLAINTIFFS' CLAIMS ARE BARRED BY THE LAW OF THE CASE DOCTRINE .......... 2

POINT II

THE COH ORDER IS LAWFUL AND ENFORCEABLE AS TO PLAINTIFFS .......... 4

POINT III

PLAINTIFFS' DUE PROCESS CLAIMS MUST BE DISMISSED .......... 7

POINT IV

PLAINTIFFS' CONSPIRACY CLAIMS MUST BE DISMISSED .......... 8

POINT V

PLAINTIFFS' CLASS CLAIMS MUST BE DISMISSED .......... 9

CONCLUSION .......... 10

## TABLE OF AUTHORITIES

**Cases** **Pages**

Brandon v. City of New York,
705 F. Supp. 2d 261 (S.D.N.Y. 2010)....8

Ciambriello v. Cty. of Nassau,
292 F.3d 307 (2d Cir. 2002)....9

City of N.Y. v. Gordon,
155 F. Supp. 3d 411 (S.D.N.Y. 2015)....2

Clarke v. BOE, et al.,
Index No. 160787/2021 ....3

Garland v. N.Y.C. Fire Dep't,
No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142
(E.D.N.Y. Dec. 6, 2021) ....3

Giammarino v. BOE, et al.,
Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty) ....3

Goodheart Clothing Co. v. Laura Goodman Enters.,
962 F.2d 268 (2d Cir. 1992)....2

In re Initial Pub. Offering Sec. Litig.,
214 F.R.D. 117 (S.D.N.Y. 2002) .... 9-10

Kane v. de Blasio,
21 Civ. 7863 (S.D.N.Y.) (VEC)....4

Keil v. The City of New York, et al.,
21 Civ. 8773 (SDNY)(VEC)....4

Lanzer v. BOE, et al.,
Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty) ....3

Maniscalco v. BOE, et al.,
Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty) ....3

Maniscalco v. N.Y. City Dept. of Educ.,
No. 21Civ.5055 (E.D.N.Y.) (BMC)....4

Marciano v. De Blasio,
No. 21-cv-10752 (JSR), 2022 U.S. Dist. LEXIS 41151
(S.D.N.Y. Mar. 8, 2022) ....3, 5

**Cases** **Pages**

Martinez v. City of New York,
No. 11 Civ. 7461, 2012 U.S. Dist. LEXIS 173500
(S.D.N.Y. Dec. 6, 2012)........8

Matsushita Elec. Corp. of Am. v. 212 Copiers Corp.,
93 Civ. 3243 (KTD), 1996 U.S. Dist.
LEXIS 2221 (S.D.N.Y. Feb. 28, 1996)........2

O'Reilly v. Bd. of Educ.,
Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U)
(N.Y. Sup. Ct. Jan. 20, 2022)........3

Police Benevolent Association of the City of New York, Inc., et al. v. de Blasio, et al.,
Index No. 85229/20121 (N.Y. Sup., Rich. Cnty.) ........4

Romero v. BOE, et al.,
Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty) ........3

Salas v. BOE, et al.,
Index No. 160821/2021 ........3

Sanchez v. City of New York,
No. 15 Civ. 9940, 2017 U.S. Dist. LEXIS 123557
(S.D.N.Y. Aug. 4, 2017)........8

Singer v. Fulton Cty. Sheriff,
63 F.3d 110 (2d Cir. 1995)........8

In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al.,
Index No. 159738/2021 (N.Y. Sup, N.Y. Cnty) ........4, 5

In the matter of the Application of Correction Officers' Benevolent Association, Inc v. City of New York,
Index No. 161034/2021 (N.Y. Sup, N.Y. Cnty) ........4

The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al.,
Index No. 158368/2021 (N.Y. Sup., N.Y. Cnty.) ........ 4-5

Tooly v. Schwaller,
919 F.3d 165 (2d Cir. 2019)........7, 9

United States v. Tenzer,
213 F.3d 34 (2d Cir. 2000)........2

**Statutes** **Pages**

42 U.S.C. § 1983 ........ 8

Civil Service Law § 209-a(5)(a) ........ 5

NY Civ. Serv. Law § 201.4 ........ 4

NYC Admin. Code § 12-307(a)(4) ........ 8, 9

**PRELIMINARY STATEMENT**

The arguments made in Plaintiffs' Memorandum of Law in Opposition to the Defendants' Motions to Dismiss, dated May 18, 2022, (hereinafter "Plaintiffs' Opposition"), are insufficient to avoid dismissal of the Amended Complaint. As held by this Court in connection with the denial of Plaintiffs' preliminary injunction motion, the COH Order creates a lawful condition of employment for all City employees, including Plaintiffs, such that non-compliant employees can be terminated based on their failure to satisfy this condition without invoking applicable disciplinary procedures. Further this Court has already held that the applicable processes available to Plaintiffs with respect to the COH Order were negotiated in accordance with all applicable statutes and provide Plaintiffs with all constitutional due process they are owed. This is an end to Plaintiffs' due process claims.

Nevertheless, in a misguided attempt to grasp at any remaining straw, Plaintiffs switch gears to shift the focus off their due process claims and argue that the COH Order is somehow unenforceable as against them. Plaintiffs' argument on this front is that because, one, the City did not reach an agreement as to the COH Order with UFA and UFOA and, two, because former FDNY Commissioner Daniel Nigro did not issue an order "imposing" it on FDNY employees, the COH Order is null and void. Plaintiffs are entirely incorrect and the COH Order is fully enforceable as to all City employees, including Plaintiffs.

Plaintiffs then go on to argue that because the COH Order is unenforceable as to Plaintiffs, it necessarily follows that FDNY Defendants violated Plaintiffs' constitutional due process rights when taking any employment action based on Plaintiffs' non-compliance with the Order. Plaintiffs provide no support for this blanket statement; rather, they just conclude it without analysis or citation to caselaw. However, as detailed below and in FDNY Defendants' moving

papers, FDNY Defendants' actions have – at every step – comported with all due process owed Plaintiffs. This is an end to Plaintiffs' due process claims.

Finally, Plaintiffs contend FDNY Defendants and Defendant DC 37 conspired to violate Plaintiffs' constitutional rights by entering into the DC 37 Agreement. However, because Plaintiffs' underlying constitutional claim fails so does their conspiracy claim. And, even so, Plaintiffs' Opposition does nothing to cure the fatal defect in the Amended Complaint with respect to Plaintiffs' conspiracy claim, namely that it merely contains a conclusory statement of such alleged conspiracy with no underlying factual allegations to support it.

## ARGUMENT

### POINT I

### PLAINTIFFS' CLAIMS ARE BARRED BY THE LAW OF THE CASE DOCTRINE

Plaintiffs' Opposition argues that the Court is not bound by its prior decision because it was issued at the preliminary injunction stage See Plaintiffs' Opposition at 11 citing Goodheart Clothing Co. v. Laura Goodman Enters., 962 F.2d 268 (2d Cir. 1992) and Matsushita Elec. Corp. of Am. v. 212 Copiers Corp., 93 Civ. 3243 (KTD), 1996 U.S. Dist. LEXIS 2221 (S.D.N.Y. Feb. 28, 1996). As recognized by FDNY Defendants in their moving papers, the law of the case doctrine – while not binding – counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons. United States v. Tenzer, 213 F.3d 34, 39 (2d Cir. 2000). And while the doctrine is "particularly flexible" where the prior decision was made on a preliminary injunction motion, a Court can "give deference to legal conclusions" reached in connection with such motions. City of N.Y. v. Gordon, 155 F. Supp. 3d 411, 419 (S.D.N.Y. 2015). Further, "[w]hile preliminary factual determinations must be revisited against a more complete record, good sense dictates that a court interpret the same statute in the

same way throughout a litigation, unless there is an intervening change in the law . . . or unless an earlier interpretation was clearly an error." Id. (internal citations and parentheticals omitted).

Here, there has been no intervening case law issued that would preclude this Court from adhering to its prior (and correct) ruling. In fact, as detailed in FDNY Defendants' moving papers, the intervening case law **supports** this Court's prior holding. See, e.g., Marciano v. De Blasio, No. 21-cv-10752 (JSR), 2022 U.S. Dist. LEXIS 41151, at *25-26 (S.D.N.Y. Mar. 8, 2022) quoting Garland v. N.Y.C. Fire Dep't, No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 at * 14 (E.D.N.Y. Dec. 6, 2021); Maniscalco v. BOE, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty); Giammarino v. BOE, et al., Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty); Clarke v. BOE, et al., Index No. 160787/2021; Salas v. BOE, et al., Index No. 160821/2021 (collectively "Maniscalco Art. 78 Decision"); O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022); Lanzer v. BOE, et al., Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); Romero v. BOE, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty). Likewise, there is no clear error in the Court's prior decision that requires correcting. This is a point that Plaintiffs concede as evidenced by their failure to appeal the Court's prior order.

Therefore, because there is no "cogent and compelling reason" for the Court to depart from its prior holding in this case, FDNY Defendants respectfully submit that Plaintiffs' procedural due process claims are barred by the law of the case doctrine and therefore must be dismissed.

## POINT II

## THE COH ORDER IS LAWFUL AND ENFORCEABLE AS TO PLAINTIFFS

Plaintiffs' Opposition argues that the COH Order is not enforceable as to Plaintiffs for two reasons: (1) the requirement to be vaccinated is not a condition of employment for Plaintiffs who are members of the UFOA and UFA, only, because there was no "negotiated agreement" reached with those unions concerning the COH Order in violation of New York Civil Service Law § 201.4; and (2) former FDNY Commissioner Nigro did not issue an order adopting the COH Order; instead the FDNY Chief of Operations, John J. Hodgens "issued a Buckslip imposing the Vaccine Mandate" and this violates New York City Charter and/or the New York City Administrative Code See Plaintiffs' Opposition at 2-3.

Plaintiffs' arguments are wrong in fact and law. Since September 2021, there have been nearly a dozen lawsuits commenced in state and federal courts challenging the enforceability of the COH Order as to City employees, and the nearly identical order issued applicable to employees of the New York City Department of Education ("DOE Order"). See, e.g., Police Benevolent Association of the City of New York, Inc., et al. v. de Blasio, et al., Index No. 85229/20121 (N.Y. Sup., Rich. Cnty.)(City Order); In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al., Index No. 159738/2021, (N.Y. Sup, N.Y. Cnty) (City Order); In the matter of the Application of Correction Officers' Benevolent Association, Inc v. City of New York, Index No. 161034/2021 (N.Y. Sup, N.Y. Cnty) (City Order); Maniscalco v. N.Y. City Dept. of Educ., No. 21Civ.5055 (E.D.N.Y.) (BMC) (DOE Order); Kane v. de Blasio, 21 Civ. 7863 (S.D.N.Y.) (VEC) (DOE Order); Keil v. The City of New York, et al., 21 Civ. 8773 (SDNY)(VEC) (DOE Order); The New York City Municipal Labor Committee ("MLC"), et al. v. The City of New York, et al., Index No.

158368/2021 (N.Y. Sup., N.Y. Cnty.) (DOE Order); Marciano v. De Blasio, No. 21-cv-10752 (JSR) (S.D.N.Y.)(City Order). Each of these cases held the COH Order enforceable as to City, or DOE, employees including City employees who are **not** unionized and employees whose unions did not reach an agreement with the City regarding the Order.

Specifically with respect to UFA, which represents FDNY Firefighters, on October 29, 2021, the UFA union president, Andrew Ansbro sought a permanent injunction on behalf of FDNY Firefighters to enjoin the City from "implementing [the COH Order] so as to . . . [p]revent the summary discipline, in the form of forced unpaid leave and eventual termination of UFA members if they remain unvaccinated, which discipline would be arbitrary, capricious and unlawful and a violation of the members' due process rights." See Verified Petition in In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al., Index No. 159738/2021, (N.Y. Sup, N.Y. Cnty), NYSCEF Doc. No. 1. UFA also argued that the COH Order was implemented in violation of their members' collective bargaining rights. Id. In dismissing UFA's Article 78 petition, the Court held that the COH Order was valid and enforceable as to Firefighters and the implementation of the Order did not violate any contractual or statutory rights. See Decision and Order, dated December 20, 2021, in In the matter of the Application of Andrew Ansbro, as President of the Uniformed Firefighters Association v. de Blasio, et al., Index No. 159738/2021, (N.Y. Sup, N.Y. Cnty), NYSCEF Doc. No. 30.

Additionally, the UFA, who was later joined by UFOA, also filed an Improper Practice Petition with the Board of Collective Bargaining seeking, among other things, injunctive relief with respect to a claim that the City failed to bargain in good faith concerning the COH Order in violation of the Civil Service Law § 209-a(5)(a), i.e. the Taylor Law. See O'Connor Decl.,

dated November 29, 2021, Exs. F, G, I. After considering UFA and UFOA's arguments, the Board of Collective Bargaining voted to deny their request for injunctive relief and noted that there "did not appear" to be a likelihood of success in connection with their claims under the Taylor Law. See Id. at Ex. J. Therefore, it is clear that the COH Order is enforceable as to Plaintiffs.

Next, Plaintiffs argue that the COH Order is somehow unenforceable because the FDNY Chief of Operations, and not the former FDNY Commissioner, issued the October 21, 2021 Buckslip. In so doing, Plaintiffs argue that in the absence of an order from the FDNY Commissioner, the COH Order is somehow null and void as to Plaintiffs. As detailed in the above-cited case law, the COH Order is lawful and enforceable as to **all** City employees. Said another way, the COH Order is enforceable as to City employees irrespective of how employees were notified of its requirements.

Finally, to the extent Plaintiffs are in some way claiming that the policies detailed in the "FAQ on New York City Employees Vaccine Mandate," (which, in addition to the COH Order, is annexed to the Buckslip), are not applicable to them, this too is without merit. Indeed, as of November 29, 2021, 47 Plaintiffs had submitted requests pursuant to these FAQs for reasonable accommodations to the COH Order. See Nguyen Decl., dated November 29, 2021, at Dkt. No. 15-10. Plaintiffs cannot argue that the FAQs are not applicable to them while simultaneously availing themselves of the processes set forth therein. The Court should not entertain this nonsensical argument.

Thus, the COH Order is lawful and enforceable as to Plaintiffs herein.

## POINT III

## PLAINTIFFS' DUE PROCESS CLAIMS MUST BE DISMISSED

Plaintiffs' Opposition does not, in any meaningful way, oppose FDNY Defendants' arguments with respect to Plaintiffs' due process claims. Rather, Plaintiffs argue that because the COH Order is not enforceable or valid as to them, it necessarily follows that FDNY's actions taken with respect to Plaintiffs denied them their "constitutional rights and privileges." See Plaintiffs' Opposition at 25, 33, 38. Thus, Plaintiffs premise their entire constitutional due process claim on the notion that the COH Order is null and void as to Plaintiffs because (1) for Plaintiffs who are members of the UFOA and UFA, there was no "negotiated agreement" with those unions regarding the COH Order in violation of the Taylor Law and (2) former FDNY Commissioner Nigro did not issue an order adopting the COH Order in violation of the New York City Charter and/or Administrative Code.

Viewing these arguments in a most generous light, Plaintiffs contend that a purported violation of state or local law automatically equates to a constitutional procedural due process violation. Plaintiffs cite to no authority in support of this dubious argument. Perhaps that is because the Second Circuit has held the exact opposite. See Tooly v. Schwaller, 919 F.3d 165, 172 (2d Cir. 2019) ("violation of state law does not per se result in a violation of the Due Process Clause"). Thus, to the extent Plaintiffs hinge their procedural due process claim on an alleged violation of the City Charter, Administrative Code and/or state collective bargaining laws, such an attempt fails.

Finally, Plaintiffs' Opposition fails to address any of FDNY Defendants' substantive arguments made in connection with Plaintiffs' due process claims. As such, FDNY Defendants respectfully refer the Court to their moving papers for a discussion of why this claim

fails as a matter of law, and deem those claims abandoned. See, e.g., Sanchez v. City of New York, No. 15 Civ. 9940, 2017 U.S. Dist. LEXIS 123557, at *4-5 (S.D.N.Y. Aug. 4, 2017) ("At the outset, the Court notes that these plaintiffs, who are represented by counsel, filed an opposition to the motions to dismiss that makes no attempt to respond to any of defendants' legal arguments. Therefore, plaintiffs have abandoned their claims."); Martinez v. City of New York, No. 11 Civ. 7461, 2012 U.S. Dist. LEXIS 173500, at *1 (S.D.N.Y. Dec. 6, 2012) (dismissing claims as abandoned where plaintiff failed to respond to defendant's arguments for dismissal in her opposition); Brandon v. City of New York, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases).

## POINT IV

## PLAINTIFFS' CONSPIRACY CLAIMS MUST BE DISMISSED

In order to set forth a § 1983 claim for conspiracy, Plaintiffs must first prove "an actual violation of constitutional rights," and therefore a conspiracy claim "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 119 (2d Cir. 1995). As detailed above, and in FDNY Defendants' moving papers, Plaintiffs' procedural due process claims fail as a matter of law. Therefore, so does Plaintiffs' conspiracy claim.

Nevertheless, Plaintiffs premise their § 1983 conspiracy claim on an allegation that all Defendants conspired to deprive those Plaintiffs who are members of DC 37 of their constitutional due process rights by entering into the DC 37 Agreement because the agreement is violative of New York City Administrative Code § 12-307(a)(4). See Plaintiffs' Opposition at 22-26. Even accepting this unsupported allegation as true, it is fundamentally flawed because a

violation of a state or local statute does not equate to a constitutional violation. See Tooly, 919 F.3d at 172.

In any event, Plaintiffs' Opposition argues that the DC 37 Agreement must be nullified because it violates the Administrative Code § 12-307(a)(4) "because the Locals were not signator[ies] or part[ies] to the DC 37 Agreement." See Plaintiffs' Opposition at 6 (alteration in original). However, § 12-307(a)(4) only applies to "employees in the uniformed police, fire, sanitation and correction services" and is therefore inapplicable to those Plaintiffs represented by DC 37, i.e. Plaintiffs Loth, Tsang and Fejes, because they are in non-uniformed titles.

Finally, Plaintiffs allege that because the "DC 37 [] granted to the FDNY every possible benefit that it sought in negotiations," it was necessarily the product of a conspiracy. See Plaintiffs' Opposition at 24. Plaintiffs provide no citation to the Amended Complaint or to any documentary evidence to support this conclusion. While courts recognize that conspiracies "are by their very nature secretive operations" and therefore may have to be established via circumstantial, rather than direct, evidence, "diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Ciambriello v. Cty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). Here, Plaintiffs' fanciful claim that DC 37 and FDNY Defendants conspired to violate Plaintiffs' constitutional rights by entering into the DC 37 Agreement, without any factual allegations to back up this claim, is insufficient to withstand a motion to dismiss. Thus, Plaintiffs' conspiracy claims must be dismissed.

## POINT V

## PLAINTIFFS' CLASS CLAIMS MUST BE DISMISSED

Because all of Plaintiffs' individual claims for damages and declaratory relief must be dismissed, Plaintiffs' class claims must be dismissed as well. See, e.g., In re Initial Pub.

Offering Sec. Litig., 214 F.R.D. 117, 122 (S.D.N.Y. 2002)("Courts in this circuit have repeatedly held that, '[i]n order to maintain a class action, Plaintiffs must first establish that they have a valid claim . . . If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.'") (citation omitted).

## CONCLUSION

For the foregoing reasons, and for those set forth in FDNY Defendants' moving papers, FDNY Defendants respectfully request that their motion to dismiss the Amended Complaint be granted in its entirety, with prejudice, that judgment in favor of FDNY Defendants be entered, and that FDNY Defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 13, 2022

**HON. SYLVIA O. HINDS-RADIX**
Corporation Counsel of the
City of New York
Attorney for FDNY Defendants
100 Church Street, Room 2-100
New York, New York 10007
212-356-4015

By: /s/
Andrea O'Connor
Assistant Corporation Counsel

THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H. SCHER*
JONATHAN L. SCHER**

AUSTIN R. GRAFF*

* Also Admitted in District of Columbia
** Also Admitted in New Jersey

TEL: 516-746-5040

FAX: 516-746-5043

W. SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S. NAYBERG
(1950-2012)

September 28, 2022

**BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Garland, *et al.* v. New York City Fire Department, *et al.*
Docket No. 21-CV-06586-KAM-CLP

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action. The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon a new decision by the New York State Supreme Court, New York County in *Police Benevolent Association of the City of New York Inc., et al. v. City of New York*, Index Number 151531/2022 ("PBA Case"). A copy of the Decision and Order on Motion is attached for your ready reference.

In the PBA Case, the Court held that the New York City Vaccine Mandate imposed upon members of the New York City Police Department ("NYPD") was invalid because it was imposed without negotiating it as a new condition of employment to current members of the Police Benevolent Association ("PBA"). As a result, the Court ordered that "members of the PBA who were wrongfully terminated and/or put on leave without pay as a result of non-compliance with the unlawful new condition of employment … [must] be reinstated to the status they were as of the date of the wrongful action." *See,* PBA Case at page 4.

The Plaintiffs in this Action, current and former employees of the New York City Fire Department, argue that the Defendants did not negotiate with the Uniformed Fire Officers Association, Local 854 International Association of Firefighters, Affiliated with the AFL-CIO ("UFOA"), the Uniformed Firefighters Association of Greater New York ("UFA") and Locals 2507 and 3621, the Plaintiffs' unions, before imposing the vaccine mandate. *See,* **Docket Entry**

Case 23-663, Document 50, 08/01/2023, 3549871, Page76 of 223
JA-514

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
September 28, 2022
Page 2 of 2

**No. 73**, at pages 1, 4-5. As a result, the Plaintiffs argue, the vaccine mandate cannot be a condition of employment.

The Court in the PBA Case used the same argument propounded by the Plaintiffs in this Action to invalidate the New York City vaccine mandate imposed upon the members of the NYPD.

This Court should adopt the holding in the PBA Case, which is that New York City's failure to negotiate and reach an agreement with respect to the vaccine mandate with the Plaintiffs' unions, makes the vaccine mandate not a condition of employment and therefore the FDNY's wrongful terminations and/or placing FDNY employees on leave without pay, as a result of non-compliance with the vaccine mandate, was a violation of the Plaintiff's federally protected rights.

Consistent with the PBA Case, the Court should deny the Defendants' Motions to Dismiss.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

H:\Martino, Michelle\FDNY Litigation (Garland)\Litigation\Motions\Motion #002 - Motion to Dismiss FDNY\9-28-2022 letter to Court re NY County decision.doc

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:** **HON. LYLE E. FRANK** *Justice* — **PART** **11M**

---X

POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC.,ON BEHALF OF ITS MEMBERS, PATRICK J. LYNCH,

Petitioner,

- v -

CITY OF NEW YORK, ASHWIN VASAN, KEECHANT SEWELL, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, NEW YORK CITY BOARD OF HEALTH, NEW YORK CITY POLICE DEPARTMENT, NEW YORK CITY DEPARTMENT OF CITYWIDE ADMINISTRATIVE SERVICES, DAWN PINNOCK

Respondent.

---X

**INDEX NO.** 151531/2022

**MOTION DATE** 03/07/2022

**MOTION SEQ. NO.** 001

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 10, 14, 15, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85

were read on this motion to/for JUDGMENT – DECLARATORY.

Petitioners, the Police Benevolent Association of the City of New York ("PBA") and Patrick J. Lynch, its President, seek an order from this Court to (1) permanently enjoin respondents from enforcing the vaccine mandate (mandate); (2) declaring that the mandate exceeded respondents' authority; (3) vacating the vaccine mandate as applied to petitioners' members; and (4) ordering reinstatement of employment backpay, benefits and damages to the PBA members. Respondents oppose the instant petition. The petition is granted to the extent indicated below.

Petitioners allege that the mandate violates the New York City Charter and the New York City Administrative Code, the Department of Mental Health and Hygiene (DOH) Commissioner exceeded his authority when ordering the mandate, the mandate violates administrative

rulemaking requirements, and that the mandate lacks a rational basis. In the light most favorable to the non-moving party, the Court will adopt respondents' position that the mandate is not subject to rulemaking requirements as it was implemented as a new condition of employment. Accordingly, the Court need only address petitioners' contentions of the DOH Commissioners authority to enforce the mandate.

While petitioners do not concede that the specific mandate, as issued in October 2021, was appropriate, it is undisputed that the DOH has the authority to issue vaccine mandates, that is not before this Court. The issues before this Court are narrow and are whether the DOH can impose adverse employment actions to enforce those mandates and even taking it a step further, whether it is lawful for the DOH to implement conditions of employment to members of the PBA.

Petitioners contend, that within its lawful authority to mandate vaccinations, its enforcement measure is limited to monetary fines. Health Code §3.01(d); §3.11(a). Respondents contend, without any citations to relevant legislative history, case law or even DOH internal memorandum, that the statute does not in fact limit enforcement to monetary penalties, thus DOH's conduct of unilaterally creating a condition of employment is improper. Respondents do not point to any instance where the DOH sought enforcement of a lawfully ordered mandate by creating a new condition of employment as to all City employees. To say that this Court should read into the statute that enforcement of a vaccine mandate is enforceable by exclusion from the workplace, suspension, leave without pay and ultimate termination would be a gross overstatement of the DOH Commissioner's powers.

In support of its contention that the DOH Commissioner can unilaterally create employment conditions, respondents cite to holdings of recently decided federal cases and trial

court decisions. This argument too is unpersuasive. Respondents cite a multitude of cases where this Court, as well as others, have denied petitions based on vaccination being a condition of employment, however in those instances the City and the respective union collectively bargained to include the vaccination mandate as a new condition of employment, that is not the case here. [1]

As it is clear by the conduct of the City in its dealings with other municipal unions, namely the United Federation of Teachers, Local 237, Teamsters, among others, it is obvious to this Court that the unilateral imposition of a condition of employment is not something that either the DOH or the Mayor can do without collective bargaining. Should this Court give any credence to the City's argument that it can impose whatever conditions of employment it deems necessary pursuant to a DOH issued mandate that position is in clear contrast to its practice on the same issue.

To be unequivocally clear, this Court does not deny that at the time it was issued the vaccine mandate was appropriate and lawful, the Court however does not see, nor have respondents established a legal basis or lawful authority for the DOH to exclude employees from the workplace and impose any other adverse employment action as an appropriate enforcement mechanism of the vaccine mandate.

Respondents contend that the DOH Commissioners order that created a new condition of employment is "similar to the residency requirement for all non-uniformed civil service employees found in NYC Administrative Code 12-120 or in New York Public Officers Law § 3(1), the Vaccine Mandate is another example of a lawfully created condition of employment." This Court disagrees. What is missing from respondents' recitation of that legal argument is

[1] What is also not before the Court is whether disciplinary hearings are required pursuant to applicable law. The Court agrees with the other Courts that have addressed this issue that such hearings are not required. As noted, the Court finds the vaccine mandate a condition of employment, not a disciplinary issue.

statutory authority, unlike the residency requirements that are codified in the Administrative Code, the authority to impose a condition of employment by the DOH is not supported by any statute, rule or regulation cited by respondents. Accordingly, it is hereby

ORDERED that the vaccine mandate is invalid to the extent it has been used to impose a new condition of employment to current PBA members; and it is further

ORDERED that the mandate is invalid to the extent that it seeks an enforcement in any other manner than proscribed by law, namely monetary sanctions; and it is further

ORDERED that members of the PBA that were caused to be wrongfully terminated and/or put on leave without pay as a result of non-compliance with the unlawful new condition of employment discussed above are directed to be reinstated to the status they were as of the date of the wrongful action.

20220923135654LFRANK423A71EF3C934322A4C51E7552480037

9/23/2022
DATE

LYLE E. FRANK, J.S.C.

| CHECK ONE: | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | |
|---|---|---|---|---|
| APPLICATION: | [X] GRANTED | [ ] DENIED | [ ] GRANTED IN PART | [ ] OTHER |
| | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE |



THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**Andrea O'Connor**
Labor & Employment Law Division
Phone: 212-356-4015
Fax: 212-356-1148
aoconnor@law.nyc.gov

September 29, 2022

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re: Garland, et al. v. New York City Fire Department, et al.
Docket No. 21 Civ. 6586 (KAM)(CP)

Dear Judge Matsumoto:

I am an Assistant Corporation Counsel in the office of Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for Defendants New York City Fire Department and Daniel Nigro (collectively "FDNY Defendants") in the above- captioned matter. I write today in response to Plaintiffs' request to supplemental their opposition to FDNY Defendants' motion to dismiss the Amended Complaint.

In their application, Plaintiffs provide the Court with a copy of a decision issued in Police Benevolent Association of the City of New York, et. al. v. City of New York, et. al., Index No.: 151531/2022 (N.Y. Sup. N.Y. Cnty) ("PBA Decision"). The Police Benevolent Association of the City of New York ("PBA") represents uniformed police officers employed by the New York City Police Department. The PBA Decision held, among other things, that the "the vaccine mandate was appropriate and lawful," but that the mandate could not create a "condition of employment" for PBA members because the PBA failed to reach an agreement with the City in collective bargaining as to the impact of the mandate on PBA members. See PBA Decision at 2-4. The PBA Decision went on to enjoin the City from taking any adverse action against ***PBA members*** based on their non-compliance with the vaccine mandate, including placement on leave without pay ("LWOP") and termination. Id. The City filed a Notice of Appeal in connection with the PBA Decision the same date it was issued.

Plaintiffs now argue that the PBA Decision is dispositive of the federal constitutional claims in this action. Plaintiffs are incorrect. As an initial matter, the PBA

Decision runs counter to ***every other*** decision issued by state and federal courts, including this Court, which have uniformly held that the City and DOE vaccination mandates created a legally enforceable condition of employment for City employees. See Dkt. No. 24, Memorandum and Order, dated December 6, 2021 (hereinafter "December 6 Order"), at p. 14; see also Broecker v. N.Y.C. Dep't of Educ., No. 21-CV-6387(KAM)(LRM), 2022 U.S. Dist. LEXIS 25104, at *22 (E.D.N.Y. Feb. 11, 2022); O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022); Lanzer v. BOE, et al., Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); Romero v. BOE, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty); Maniscalco v. BOE, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty); Giammarino v. BOE, et al., Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty); Clarke v. BOE, et al., Index No. 160787/2021; Salas v. BOE, et al., Index No. 160821/2021; Loiacono v. BOE, et al., Index No. 161076/2021; Marciano v. De Blasio, No. 21-cv-10752 (JSR), 2022 U.S. Dist. LEXIS 41151, at *25-26 (S.D.N.Y. Mar. 8, 2022)[1]; N.Y.C. Mun. Labor Comm. v. City of N.Y., 2022 NY Slip Op 22121 (Apr. 21, 2022 N. Y. Sup. Ct.).

Notably, the PBA Decision is devoid of any case law, including any citation or discussion of the decisions listed in the paragraph above.

Also, critical to this case is the decision issued on September 21, 2022 by the Hon. Gina Abadi in New York Supreme Court, Kings County in Ansbro v. Nigro, et al., Index No. 531749/2021 ("Ansbro Decision").[2] The Petitioners in Ansbro are FDNY firefighters and the President of the Uniformed Firefighters Association ("UFA"), which is the union representing Plaintiffs herein. In Ansbro, the petitioners sought an order prohibiting the City from imposing the vaccination mandate as a "condition of employment" for FDNY firefighters. The UFA, like the PBA, did not reach an agreement via collective bargaining with the City regarding the impact of the vaccination mandate on its members.

The Ansbro Decision, which was issued two days prior to the PBA Decision, held that the vaccination mandate "create[d] a condition of employment" for firefighters and therefore

---

[1] In Marciano, the Hon. Jed S. Rakoff in the Southern District of New York held that the City vaccination mandate created a "condition of employment" for City employees and that "the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the [applicable] disciplinary procedures." Marciano v. De Blasio, No. 21-cv-10752 (JSR), 2022 U.S. Dist. LEXIS 41151, at *25-26 (S.D.N.Y. Mar. 8, 2022) quoting Garland v. N.Y.C. Fire Dep't, No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 at * 14 (E.D.N.Y. Dec. 6, 2021). Notably, the plaintiffs here and the plaintiff in Marciano (a detective employed by the New York City Police Department) are members of unions that did not reach an agreement with the City regarding the impact of the vaccination mandate. Despite that, the Court in Marciano, held that the City vaccination mandate created a condition of employment for the plaintiff such that he could be terminated for failure to comply with the order without resort to applicable disciplinary procedures contained in the Administrative Code.

[2] For the Court's convenience, a copy of this decision is annexed hereto as Appendix A.

unvaccinated firefighters who did not obtain an accommodation could be terminated and/or placed on LWOP due to their non-compliance with the mandate. See Ansbro Decision at 8-9.

Thus, to the extent the Court is inclined to consider decisions issued after the close of briefing in connection with FDNY Defendants' motion to dismiss, the decision directly on point is the Ansbro Decision. The Ansbro Decision was brought by FDNY firefighters and is in keeping with the every other decision issued by state and federal courts which have uniformly held that the City and DOE vaccination mandates created a legally enforceable condition of employment for City and DOE employees.

FDNY Defendants thank the Court for its attention to this matter.

Respectfully submitted,

Andrea O'Connor
Assistant Corporation Counsel

c:      All Counsel, By ECF

At an IAS Term, City Part 22 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at 360 Adams Street, Brooklyn, New York, on the 13th day of September, 2022.

PRESENT:

HON. GINA ABADI,
Justice.

---------------------------------------------------------------X

In the Matter of the Application of ANDREW ANSBRO, Individually and as President of the Uniformed Firefighters Association and Kevin Whalen, Individually and for Others Similarly Situated,

Petitioners,

For an Order, Pursuant to CPLR Article 78, directing Respondents to reimburse Petitioners and Firefighters similarly situated, all lost pay and benefits resulting from them having been improperly placed on leave without pay status, in violation of statutory law, including but not limited to, the New York City Administrative Code and the New York State Civil Service Law, for having failed to submit proof of their vaccination against COVID-19, and for other appropriate relief

-against-

DANIEL NIGRO, as Commissioner of the Fire Department of the City of New York, Dave A. Chokshi, as Commissioner of the New York City Department of Health and Mental Hygiene (DOHMH), Bill de Blasio, as Mayor of the City of New York and The City of New York,

Respondents.

---------------------------------------------------------------X

Index No. 531749/2021

DECISION/ORDER

| The following e-filed papers read herein: | NYSCEF Doc Nos.: |
|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits Annexed | 1-10, 11-15 |
| Opposing Affidavits (Affirmations) | |
| Affidavits/ Affirmations in Reply | 24-28 |

Upon the foregoing papers in this CPLR article 78 proceeding, petitioners Andrew Ansbro, Individually and as President of the Uniformed Firefighters Association and Kevin Whalen, Individually and for Others Similarly Situated move, by order to show cause for an order: (1) directing respondents Daniel Nigro, as Commissioner of the Fire Department of the City of New York (FDNY), Dave A. Chokshi, as Commissioner of the New York City Department of Health and Mental Hygiene (DOHMH), Bill de Blasio, as Mayor of the City of New York and The City of New York to reimburse petitioners and other FDNY firefighters similarly situated for their lost wages and other fringe benefits they lost as a result of having been placed on leave without pay (LWOP) status, without disciplinary charges and without a trial or hearing, all in contravention of applicable statutes and constitutional due process provisions, for having failed to submit proof of COVID-19 vaccination; (2) directing respondents to immediately restore firefighters placed on LWOP status for having failed to submit proof of COVID-19 vaccination to paid status in the FDNY; (3) directing respondents to no longer impose LWOP status upon FDNY firefighters in lieu of statutorily mandated processes to resolve any disciplinary violations; and 4) directing that respondents are prohibited from imposing compliance with the October 20, 2021 vaccine mandate as a "condition of employment" for FDNY firefighters employed prior to that date. Respondents cross-move for an order, pursuant to CPLR 3211 (a) (2), (a) (5) and (a) (7), dismissing petitioners' petition on grounds that the petition is barred by the doctrines of res judicata and collateral estoppel, that petitioner Ansbro lacks standing to bring this proceeding and that the petition otherwise fails to state a cause of action against respondents.

Case 23-663, Document 50, 08/01/2023, 3549871, Page86 of 223
JA-524
FILED: KINGS COUNTY CLERK 09/21/2022 03:34 PM INDEX NO. 531749/2021
NYSCEF DOC. NO. 30 RECEIVED NYSCEF: 09/21/2022

This CPLR article 78 proceeding was brought on behalf of members of the FDNY who were placed on LWOP status following their failure to present proof of vaccination against COVID-19 as required by a Vaccine Mandate Order from the DOHMH issued on October 20, 2021. The Vaccine Mandate Order (VMO) provided that all New York City employees must provide proof to their employing agency, no later than 5:00 PM on October 29, 2021, that either they were fully vaccinated against COVID-19, received a single dose vaccine or received the first dose of a two-dose vaccine. The VMO stated that any employee who failed to comply "must be excluded from the premises at which they work beginning on November 1, 2021." In conjunction with the VMO, the DOHMH issued "FAQ on New York City Employees Vaccine Mandate" (FAQ) which provided, in paragraph 51, that "[b]eginning November 1, City staff who are not in compliance with the vaccine mandate and have not applied for a reasonable accommodation will be placed on Leave Without Pay (LWOP)," and that "employees who refuse to comply will be terminated in accordance with procedures required by the Civil Service Law or applicable collective bargaining agreement."

Petitioners state that FDNY firefighters are civil servants who, after completing their probationary term, become permanent appointees in the competitive class of the classified civil service and, under Civil Service Law [CSL] § 75, "shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section" (CSL § 75 [1]). CSL § 75 (3) provides that

3

3 of 9

> "Pending the hearing and determination of charges of incompetency or misconduct, the officer or employee against whom such charges have been preferred may be suspended without pay for a period not exceeding thirty days. If such officer or employee is found guilty of the charges, the penalty or punishment may consist of a reprimand, a fine not to exceed one hundred dollars to be deducted from the salary or wages of such officer or employee, suspension without pay for a period not exceeding two months, demotion in grade and title, or dismissal from the service; provided, however, that the time during which an officer or employee is suspended without pay may be considered as part of the penalty. If he is acquitted, he shall be restored to his position with full pay for the period of suspension less the amount of any unemployment insurance benefits he may have received during such period."

Petitioners further reference Administrative Code § 15-113, which provides that the Commissioner of the FDNY

> "shall have power, in his or her discretion on conviction of a member of the force of any legal offense or neglect of duty, or violation of rules, or neglect or disobedience of orders or incapacity, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct, or conduct unbecoming an officer or member, or other breach of discipline, to punish the offending party by reprimand, forfeiture and withholding of pay for a specified time, or dismissal from the force; but not more than ten days' pay shall be forfeited and withheld for any offense."

Under Administrative Code § 15-113,

> "members of the uniformed force shall be removable only after written charges shall have been preferred against them, and after the charges shall have been publicly examined into, upon such reasonable notice of not less than forty-eight hours to the person charged, and in such manner of examination as the rules and regulations of the commissioner may prescribe. The examination into such charges and trial shall be conducted by the commissioner, a deputy commissioner or other person designated by the commissioner in writing for

Case 23-663, Document 50, 08/01/2023, 3549871, Page88 of 223
JA-526
FILED: KINGS COUNTY CLERK 09/21/2022 03:34 PM INDEX NO. 531749/2021
NYSCEF DOC. NO. 30 RECEIVED NYSCEF: 09/21/2022

> that purpose; but no decision shall be final or be enforced until approved by the commissioner."

Petitioners assert that firefighters who were involuntarily placed on LWOP status for having failed to comply with the VMO have never been charged with any disciplinary offense, nor have there been any efforts by respondents to provide a disciplinary trial or hearing to said firefighters in contravention of the foregoing statutes and the assurance in paragraph 51 of the FAQ that employees who refuse to comply with the vaccine mandate "will be terminated in accordance with the procedures required by the Civil Service Law or applicable collective bargaining agreement." Petitioners argue that respondents, in unilaterally imposing LWOP status and in failing to file disciplinary charges against those on LWOP status, and in keeping firefighters on LWOP status for more than 30 days, have not complied with the applicable statutes governing discipline.

Respondents, on the other hand, contend that FDNY firefighters are not being subjected to discipline for neglect of duty, violation of rules or other misconduct in the performance of their duties without the process owed to them under Administrative Code § 15-113 and CSL § 75. Rather, respondents maintain that COVID-19 vaccination is a newly created "condition of employment," and that those FDNY firefighters failing to comply with the VMO are no longer fit and/or qualified to continue their public employment with the City and, therefore, are not entitled to any process in advance of their placement on LWOP status and separation.

Petitioners reply that under the VMO, firefighters who applied for a reasonable accommodation no later than October 27, 2021, were able to avoid LWOP until the

5

5 of 9

reasonable accommodation request is decided, including appeals. Conversely, if the firefighter sought a reasonable accommodation after October 27, 2021, he or she was placed on LWOP immediately and subject to continuing LWOP status until his or her reasonable accommodation was decided, including appeals. Those avoiding LWOP were required to submit weekly negative Covid tests, but allowed to work in the firehouse and earn a living. Petitioners contend that the FDNY, therefore, had discretion on whether to place employees on LWOP while still allowing them to remain working in the firehouse, and that a genuine "condition of employment" cannot allow for exceptions depending upon whether the employee seeks an exception to the mandate by an arbitrary deadline date or whether the employee qualifies for said exemption.

In an article 78 proceeding, the court considers "only whether the determination was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious, or was an abuse of discretion" (*Matter of Halpert v Shah*, 107 AD3d 800, 801 [2d Dept 2013]; *see* CPLR 7803 [3]; *Matter of Ward v City of Long Beach*, 20 NY3d 1042 [2013]; *Matter of Halperin v City of New Rochelle*, 24 AD3d 768, 770 [2d Dept 2005]). "Under this standard, courts examine whether the action taken by the agency has a rational basis and will overturn that action only where it is taken without sound basis in reason or regard to the facts, or where it is arbitrary and capricious" (*Matter of Halpert*, 107 AD3d at 801-802 [citations and internal quotation marks omitted]; *see Matter of Wooley v New York State Dept. of Correctional Servs.*, 15 NY3d 275, 280 [2010]; *Matter of Peckham v Calogero*, 12 NY3d 424, 431 [2009]; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester*

*County*, 34 NY2d 222, 232 [1974]; *Matter of Deerpark Farms, LLC v Agricultural & Farmland Protection Bd. of Orange County*, 70 AD3d 1037, 1038 [2d Dept 2010]). This court finds that the FDNY's action in placing firefighters on LWOP status for refusing vaccination or failing to timely apply for a reasonable accommodation, without first undertaking disciplinary proceedings pursuant to the CSL or Administrative Code, was neither arbitrary nor capricious, was not contrary to law or procedure and was not an abuse of discretion.

Disciplinary hearings pursuant to the CSL are not required in the context of employment qualifications unrelated to job performance, misconduct, or competency (*see Felix v Dept. of Citywide Admin. Servs.*, 3 NY3d 498, 505 [2004]; *O'Connor v Bd. of Educ.*, 48 AD3d 1254, 1255 [4th Dept 2008], *appeal dismissed* 10 NY3d 928 [2008]). In this matter, the placement on LWOP was based on the firefighter's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency. Thus, the failure to be vaccinated does not implicate the disciplinary procedures advanced by petitioners (*see Matter of Felix*, 3 NY3d at 505-506; *Matter of New York State Off. of Children & Family Servs. v Lanterman*, 14 NY3d 275, 282 [2010]). Because the VMO creates a condition of employment, compliance with the statutory procedures suggested by petitioners before a firefighter is placed upon LWOP for failure to meet the condition is unnecessary (*see Broecker v New York City Dept. of Educ.*, --- F Supp 3d ---, 2022 WL 426113 at *8-9 [EDNY 2022]; *Garland v New York City Fire Dept.*, 574 F Supp 3d 120, 127-129 [EDNY 2021]). As recently stated by the Supreme Court, New

Case 23-663, Document 50, 08/01/2023, 3549871, Page91 of 223

JA-529

FILED: KINGS COUNTY CLERK 09/21/2022 03:34 PM INDEX NO. 531749/2021
NYSCEF DOC. NO. 30 RECEIVED NYSCEF: 09/21/2022

York County in a similar case involving employees of the New York City Department of Education who were terminated for failure to comply with the VMO,

> "[t]he clear purpose of the [VMO] is to prevent the spread of a deadly disease that has ravaged New York City and the world. Neither is an attempt to regulate the conduct of City employees in performing their jobs. By contrast, all of the statutes which plaintiffs point to 'prescribe[] the procedures for removal of a protected employee charged with delinquencies in the performance of his [or her] job.' Since the terminated employees' failure to be vaccinated is unrelated to the performance of their job, the [disciplinary procedures of the Civil Service Law and Administrative Code] do not apply" (*New York City Mun. Labor Comm. v City of New York*, 75 Misc 3d 411, 415-416 [Sup Ct, NY County 2022] [citations omitted]).

The court finds unavailing petitioners' argument that COVID-19 vaccination cannot be considered a condition of employment since the FDNY has the discretion to consider medical or religious accommodations to certain firefighters. While the grant or denial of an accommodation amounts to an exercise of employer discretion, city, state and federal law require an employer to accept and consider such requests. The accommodations are therefore not purely discretionary on the part of the FDNY and do not abrogate the consideration of COVID-19 vaccination as a "condition of employment" rather than an issue of discipline (*see New York City Mun. Labor Comm.*, 75 Misc 3d at 417).

Contrary to the argument of petitioners, paragraph 51 of the FAQ does not mandate application of the disciplinary procedures set forth in the CSL prior to placement of non-complying firefighters on LWOP status. First, paragraph 51 only mentions the CSL with regard to the termination of employees, not their placement on LWOP status

8

8 of 9

which is the gravamen of the instant petition. Further, paragraph 51 provides only that employees who refuse to comply with the VMO will be terminated "in accordance with the procedures ***required*** by the Civil Service Law or applicable collective bargaining agreement" (emphasis added). Insofar as failure to comply with the mandate or timely apply for an accommodation does not relate to misconduct in the performance of the employees' duties, but rather the failure to meet a condition of employment, no hearings or other procedures provided in the CSL are "required" before the employee is terminated. The court notes that paragraph 47 of the FAQ expressly states that vaccination is required for all New York City employees covered by the VMO as "a term of employment."

Accordingly, petitioners' motion (which effectively seeks an order granting their Article 78 petition) is denied, the cross motion of respondents is granted, and this proceeding is dismissed.

The foregoing constitutes the decision, order and judgment of the court.

ENTER,

J. S. C.

HON. GINA ABADI
J.S.C.

2022 SEP 21 AM 9:28

KINGS COUNTY CLERK
FILED

THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H SCHER*
JONATHAN L SCHER*+

AUSTIN R GRAFF*

* Also Admitted in District of Columbia
+ Also Admitted in New Jersey

TEL: 516-746-5040

FAX: 516-746-5043

W SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S NAYBERG
(1950-2012)

October 10, 2022

**BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Garland, *et al.* v. New York City Fire Department, *et al.*
Docket No. 21-CV-06586-KAM-CLP

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action. The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon a new decision by the Office of Collective Bargaining Board of Collective Bargaining in *In the Matter of the Improper Practice Petition between The New York City Municipal Labor Committee, et al. v. The City of New York, et al.*, Docket No. BCB-4458-21 ("OCB Case"). A copy of the Decision is attached for your ready reference.

In support of their Motion to Dismiss the City Defendants cited to the OCB Case for the proposition that the Board of Collective Bargaining denied the request by the FDNY's unions for injunctive relief because "the unions could not establish irreparable harm or a likelihood of success on the merits." **Docket Entry No. 69**, at pages 12-13, citing Docket Entry No. 15-9.

However, on September 28, 2022, the Office of Collective Bargaining Board of Collective Bargaining ("OCB") found that the FDNY's unions had in fact established that the City Defendants had "breached its duty to bargain in violation of NYCCBL § 12-306(a)(4). When an employer violates its duty to bargain in good faith, there is also a derivative violation of NYCCBL § 12-306(a)(1)." OCB Case decision, at page 15.

More particularly, the OCB determined that the City was required to negotiate with the unions on mandatory subjects of negotiations regarding the COVID vaccine mandate, which included placing members of the unions on leaves of absence without pay for not complying

Case 23-663, Document 50, 08/01/2023, 3549871, Page94 of 223

JA-532

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
October 10, 2022
Page 2 of 2

with the Vaccine Mandate and the reasonable accommodation process. *See,* OCB Case decision, at page 12-13.

In opposition to the City Defendants' Motion to Dismiss, the Plaintiffs, relying upon this Court's decision in *Broecker v. NY City Dept. of Education*, 2022 US Dist LEXIS 25014, at * 25 (E.D.N.Y. 2022), argued that N.Y. Civil Service Law § 201.4. required the City Defendants to negotiate and bargain over terms and conditions of employment before implementing the Vaccine Mandate before it became a condition of employment. The Plaintiffs argued that since the City Defendants failed to do so, the City Defendants could not unilaterally create a new condition of employment.

Since the OCB definitively held that the City Defendants failed to negotiate in good faith with the Plaintiffs' unions before implementing the Vaccine Mandate (*see,* OCB Case decision, at pages 12-13), the Vaccine Mandate did not become a condition of employment. *See, Broecker v. NY City Dept. of Education*, 2022 US Dist LEXIS 25014, at * 25.

The OCB Case strongly supports the Plaintiffs' arguments made in opposition to the City Defendants' Motion to Dismiss, making findings of fact regarding the issues of whether the City Defendants: (1) were required to negotiate over the terms and conditions of the Vaccine Mandate; and (2) whether they negotiated in good faith before imposing the Vaccine Mandate and placed the Plaintiffs on leaves of absence without pay for not complying with the Vaccine Mandate. In the OCB Case, the OCB's holdings establish that the Plaintiff's constitutional rights were violated by the City Defendants' actions.

Therefore, when the Plaintiffs were placed on administrative leave without pay for failing to comply with the Vaccine Mandate, the City Defendants' actions violated the Plaintiffs' constitutional due process rights and their constitutional rights to their pay and jobs. *See,* **Docket Entry No. 73**, at pages 1-2. Accordingly, the Plaintiffs have stated a plausible claim against the City Defendants.

Consistent with the OCB Case, this Court should deny the City Defendants' Motion to Dismiss.

Respectfully submitted,
THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

H:\Martino, Michelle\FDNY Litigation (Garland)\Litigation\Motions\Motion #002 - Motion to Dismiss FDNY\10-10-2022 letter to Court\10-10-2022 letter to Court re OCB decision doc

***MLC*, 15 OCB2d 34 (BCB 2022)**
(Docket No. BCB-4458-21)

***Summary of Decision:*** Petitioners claimed that the City violated § 12-306(a)(4) and § 12-307 of the NYCCBL by failing to bargain over policies the City unilaterally adopted as a result of the Mayor's order that all City employees be vaccinated by October 29, 2021. Petitioners argued that the City failed to provide sufficient time to negotiate issues relating to implementation of the Vaccine Mandate set forth in these policies, prior to arbitrary deadlines, in violation of the duty to bargain in good faith. The City argued that it had no obligation to bargain over the implementation of the Vaccine Mandate due to the public health emergency caused by the COVID-19 pandemic. It further argued that it had engaged in good faith impact bargaining and that there is no legal requirement that impact be bargained before the implementation of a policy. The Board finds that the City had a duty to bargain over mandatory subjects contained in its policies to implement the Vaccine Mandate and that it failed to do so. Accordingly, the petition was granted. ***(Official decision follows.)***

---

**OFFICE OF COLLECTIVE BARGAINING**
**BOARD OF COLLECTIVE BARGAINING**

**In the Matter of the Improper Practice Petition**

***-between-***

**THE NEW YORK CITY MUNICIPAL LABOR COMMITTEE, et al.,**

***Petitioners,***

***-and-***

**THE CITY OF NEW YORK, and THE DEPARTMENT OF HEALTH AND MENTAL HYGIENE,[1]**

***Respondents.***

---

[1] The petition named Dr. David Chokshi, Commissioner of the Department of Mental Health and Hygiene, as a respondent. As individuals are not proper respondents under the NYCCBL, we amend the caption *nunc pro tunc* to substitute the Department of Health and Mental Hygiene, for Chokshi. *See DC 37*, 6 OCB2d 14 at 2, n. 1 (BCB 2013) (citing NYCCBL §§ 12-303(g) (defining public employer for the purposes of the NYCCBL) and 12-304 (scope of the NYCCBL)).

**DECISION AND ORDER**

On October 25, 2021, a verified improper practice petition was filed alleging that the City of New York ("City") and the Department of Health and Mental Hygiene ("DOHMH") violated § 12-306(a)(4) and § 12-307 of the New York City Collective Bargaining Law (New York City Administrative Code, Title 12, Chapter 3) ("NYCCBL") by failing to bargain over the unilaterally adopted policies the City issued as a result of the Mayor's order that all City employees be vaccinated by October 29, 2021 ("Vaccine Mandate").[2] The petitioners are the New York City Municipal Labor Committee, United Fire Officers Association, Local 845; Captains Endowment Association; Lieutenants Benevolent Association; Uniformed Firefighters Association, Local 94, I.A.F.F., AFL-CIO; Sergeants Benevolent Association; Detectives' Endowment Association (collectively, "Petitioners").

Petitioners argue that the City set unilateral and arbitrary deadlines on terms relating to implementation of the Vaccine Mandate that failed to provide sufficient time to negotiate. Those implementation terms affect mandatory subjects of bargaining, and their unilateral implementation was in violation of the duty to bargain in good faith. The City argues that it had no obligation to bargain over the implementation of the Vaccine Mandate due to the public health emergency caused by the COVID-19 pandemic. It further argues that it engaged in good faith impact bargaining, and there is no legal requirement that impact be bargained before the implementation of a policy. The Board finds the City has a duty to bargain over mandatory subjects contained in

[2] On that same date, a petition seeking injunctive relief for the claims was filed. On November 9, 2021, the Board denied the petition because it did not appear that immediate and irreparable injury would result from the City's actions. On November 24, 2021, an amended petition was filed, adding an additional 12 unions as petitioners. As of January 10, 2022, 18 unions had reached settlements with the City and withdrawn from the petition.

the City's policies to implement the Vaccine Mandate and that it failed to do so. Accordingly, the petition is granted.

## BACKGROUND

On August 31, 2021, the Mayor issued Executive Order ("EO") No. 78, mandating that as of September 13, 2021, City employees and covered employees of City contractors be vaccinated against COVID-19 or submit to a weekly PCR test. Thereafter, on October 20, 2021, the Mayor issued EO No. 83, and announced that these employees would no longer have the option of weekly testing and would instead be required to be fully vaccinated. Specifically, employees would be required to have their first dose of a vaccine by October 29, 2021. Additionally, the Mayor announced that a $500 bonus would be paid to those currently unvaccinated employees who received their first dose by that date. On the same day EO No. 83 was announced, the City's Commissioner of Health and Mental Hygiene ("Health Commissioner") issued an order similarly requiring all City employees to be vaccinated and providing further details, including that any employee who had not provided proof of having received a first dose of a vaccine by 5:00 p.m. on October 29, 2021 would be "excluded from the premises at which they work beginning on November 1, 2021."[3] (Pet., Ex. 1 ¶ 3)

Also on October 20, 2021, the Department of Citywide Administrative Services ("DCAS") issued a revised version of its "Managing the Office in the Age of COVID-19" policy to all agencies, which included a section generally describing the Vaccine Mandate and listing resources

---

[3] This order also provided that due to staffing shortages the Vaccine Mandate would not become effective until December 1, 2021, for uniformed Department of Correction employees who are not assigned to work in health care settings.

on how and where to obtain the vaccine. (Pet., Ex. 4) On October 22, the City issued a "FAQ on New York City Employees Vaccine Mandate" ("FAQ" or "fact sheet"). (Pet., Ex. 3) This fact sheet is a detailed description of which employees must be vaccinated, how to get vaccinated, what counts as proof of vaccination, and provides information on paid leave time and other incentives for vaccination. It also provides that, as a "penalty," employees who fail to comply with the Vaccine Mandate will be placed on Leave Without Pay ("LWOP") and "will be terminated in accordance with procedures required by the Civil Service Law or applicable collective bargaining agreements."[4] (*Id.* at ¶ 51) In addition to describing the Vaccine Mandate, the FAQ also detailed the process for an employee to request a reasonable accommodation exemption to the Vaccine Mandate for medical or religious reasons and stated that any such request must be made by October 27, 2021. The FAQ states that while the request for a reasonable accommodation is being evaluated, the employee will have to submit to weekly testing. Any employee who applies for a reasonable accommodation after October 27 will be placed on LWOP while their accommodation is considered. Additionally, the FAQ stated that the only reasonable accommodation available is that the employee submits a weekly negative test result. If an employee's request for a reasonable accommodation is denied, he or she may submit an appeal via an "online review request portal" within three business days. (*Id.* at ¶ 27)

Petitioners claim that the City did not provide it with any information concerning who would decide the appeal or what standard would be used. The City, however, claims that it provided the unions with information on the panel that would hear the accommodation denial

[4] The FAQ further states that "Absent any collective bargaining agreement providing for other procedures, employees should be placed on LWOP effective November 1 and may be subject to discipline or other adverse employment action. Further guidance will be forthcoming." (Pet., Ex 3 at ¶ 52)

appeals. Additionally, although the FAQ states that additional information may be requested from the employee in order for a decision to be made on the appeal, Petitioners aver that the employee would not have the right to provide any additional information. The FAQ states that the review of all appeals would be completed before November 25, 2021. If an appeal was denied, the employee had to submit proof of a first dose of vaccination within three business days. If the employee did not do so, he or she was to be placed on LWOP.

The City did not bargain with any unions prior to announcing the Vaccine Mandate or issuing its policies concerning implementation thereof. On October 20, 2021, the same day the Vaccine Mandate was announced, OLR Commissioner Renee Campion sent letters to all affected unions stating that, although the City believed the implementation of the Vaccine Mandate was a managerial prerogative, she was available to meet to bargain the impacts of the Vaccine Mandate. Also on that date, the Chair of the Municipal Labor Committee ("MLC") sent a letter to Campion "on behalf of the MLC and its member unions" requesting that the City cease and desist from implementing the Vaccine Mandate and bargain with the MLC over the decision to order the Vaccine Mandate as well as the implementation of that decision. (Pet., Ex. 5) Campion responded that same day, stating that she did not agree that the Vaccine Mandate was a mandatory subject of bargaining, but that "[i]f the MLC wishes to bargain as a coalition of its member unions, we are available to engage in impact bargaining." (Pet., Ex. 6)

Beginning on October 25, 2021, the City met with numerous unions to discuss implementation, including a coalition of unions. There is no dispute that as of October 29, 2021, no agreements had been made, and the Vaccine Mandate went into effect. However, commencing on November 4, 2021, and continuing through November 24, 2021, the City signed agreements with numerous unions on a variety of implementation issues including the reasonable

accommodation request and appeal process, LWOP terms, and separation benefits such as continuation of health benefits up to June 30, 2022, for employees who refused to vaccinate and opted to leave City employment.[5] The current Petitioners did not reach agreement with the City on implementation terms.

## POSITIONS OF THE PARTIES

### Petitioners' Position

Petitioners assert that the City violated its duty to negotiate in good faith under NYCCBL § 12-306(a)(4) when it unilaterally adopted policies relating to the implementation of the Vaccine Mandate before it gave affected unions a meaningful opportunity to negotiate. Petitioners are not seeking to bargain over the Vaccine Mandate itself, nor do they challenge the Health Commissioner's power to issue the Vaccine Mandate. Rather, they seek to bargain "the City's unilateral and discretionary implementation of policies affecting employee reasonable accommodation applications, placement on LWOP, and appeals by an arbitrary date certain . . . which refused Petitioners the time necessary to negotiate in good faith or reach impasse over those policies *prior to these specific deadlines*." (Rep. ¶ 25) (emphasis in original). Petitioners argue

[5] The following unions withdrew from the improper practice in accordance with those agreements: District Council 37; Uniformed Sanitationmen's Association, Local 831; International Brotherhood of Teamsters, Local 237; Service Employees' International Union, Local 246; Communication Workers of America, Locals 1180, 1181, and 1182; International Union of Operating Engineers, Local 15C; International Union of Operating Engineers, Local 30; United Probation Officers Association; International Brotherhood of Electrical Workers, Local 3; Organization of Staff Analysts; Service Employees' International Union, Local 300; United Fire Alarm Dispatchers Benevolent Association; International Organization of Masters, Mates, and Pilots, AFL-CIO; District Council of New York City and Vicinity, United Brotherhood of Carpenters and Joiners of America, AFL-CIO; Uniformed Sanitation Chiefs Association; Sanitation Officers Association, Local 444; Service Employees' International Union, Local 621; International Boilermakers, Local 5.

that none of these "decrees" were made pursuant to the Vaccine Mandate itself but were instead subject to the City's discretion. While the Vaccine Mandate bars unvaccinated employees from the physical workplace, it is silent with respect to leave policies, employee pay, and reasonable accommodation appeals processes. As such, Petitioners contend that the City's bargaining obligation under the NYCCBL is not preempted by the "powers of DOHMH, nor the prohibitions of any statute, regulation, ordinance, or order . . . ." (Rep. ¶ 41)

Petitioners argue that the policies the City unilaterally adopted to implement the Vaccine Mandate involve employees' terms and conditions of employment. Employees who fail to vaccinate will be placed on LWOP which, Petitioners argue, impacts their pay, differentials, benefits, pension accruals, and the fundamental right to their employment and a fair disciplinary process. Additionally, the implementation included reasonable accommodation procedures and disciplinary outcomes for employees who choose not to comply, which require bargaining. Furthermore, Petitioners aver that the City's unilateral policies also effectuated a change in job qualifications for incumbent employees, which is a mandatory subject of bargaining.

Petitioners contend that they are not seeking to bargain a practical impact resulting from the Vaccine Mandate. Instead, Petitioners seek to bargain directly over the mandatory subjects of bargaining set forth in the procedures the City unilaterally adopted in order to implement the Vaccine Mandate. Specifically, they seek to negotiate certain terms and conditions of employment relating to those employees who did not comply with the mandate. Those terms are not set forth in the Vaccine Mandate but are contained in the policies and procedures adopted by the City, such as those set forth in the FAQ.

Petitioners contend that the City failed to provide sufficient time to negotiate the implementation of policies concerning mandatory subjects of bargaining prior to the arbitrary

deadlines it set. Petitioners note that it is well-settled that the duty to bargain requires meeting at reasonable times and conferring in good faith. Here, the City began bargaining with the first few unions on October 25—two days before the reasonable accommodation application deadline the City unilaterally set, and nine days before unvaccinated employees faced being placed on LWOP. Petitioners assert that the City's unreasonable and unnecessary time pressure for implementation of the Vaccine Mandate evidences a failure to negotiate in good faith.

As a remedy, Petitioners ask the Board to issue an order declaring that the City violated its obligation to negotiate in good faith; order the City to bargain in good faith over implementation of policies related to the Vaccine Mandate; and any other and further relief as the Board deems appropriate.

**City's Position**

The City asserts that it has no obligation to bargain over the implementation of the Vaccine Mandate due to the public health emergency caused by the COVID-19 pandemic.[6] In support of this assertion, the City maintains that the Vaccine Mandate falls within the City's managerial prerogative under NYCCBL § 12-307. In addition, it contends that the Health Commissioner has the statutory authority to require the vaccination of City workers.[7] As a result, the City maintains that the Board has consistently held that the duty to bargain over a practical impact does not arise until the Board finds a practical impact and determines whether the employer has taken adequate

---

[6] The City also argued that the MLC lacks standing as a petitioner in this matter because it is not a certified bargaining representative of any City employee and does not have the authority to bargain terms and conditions of employment, except for health benefits. We do not address this issue because its resolution has no substantive impact on the outcome in matter.

[7] Petitioners do not contest the City's decision to require vaccination, only that implementation of the Vaccine Mandate is a mandatory subject of bargaining. Therefore, the City's arguments on this point are not fully summarized here.

steps to alleviate the impact. Therefore, the City argues that any duty to bargain over the impact of the Vaccine Mandate does not arise until the Board has made a determination that a bargainable impact exists. Moreover, even when the Board has found a practical impact, the remedy has been to order bargaining to alleviate the impact—not recission or delay in implementation until an agreement or impasse is reached. Here, the City commenced bargaining over the impact of the Vaccine Mandate on October 25, 2021, with all affected unions. Indeed, the City successfully bargained these issues to conclusion with 18 different unions. Thus, the City contends that it very clearly has not refused to bargain over the Vaccine Mandate's impact.

Further, the City maintains that Petitioners' assertions that nine days' notice is an insufficient period to negotiate impact is legally and factually incorrect. As noted above, the City argues that the appropriate remedy for a finding of practical impact is an order to bargain, "while the challenged policy remains in place." (Ans. ¶ 144) It asserts that it is within the authority of the City to act in this emergency and that the reasonable nature of the Vaccine Mandate does not present a basis upon which the Vaccine Mandate should be lifted while bargaining is in process. It claims that Petitioners have shown nothing to support the assertion that nine days is insufficient for collective bargaining. To the contrary, it asserts that nine unions were able to bargain to completion just seven days after bargaining commenced, and multiple others reached agreement with the City thereafter. The City therefore contends that Petitioners' argument fails because it demonstrated good faith in offering to bargain impact, and there is no legal requirement that impact be bargained before the implementation of a challenged policy.

**DISCUSSION**

Petitioners assert that the City has violated NYCCBL § 12-306(a)(4) by failing to bargain over unilaterally adopted policies it issued in order to implement the Vaccine Mandate. NYCCBL § 12-307(a) provides that parties "shall have the duty to bargain in good faith on wages (including but not limited to wage rates, pensions, health and welfare benefits, uniform allowances and shift premiums), hours (including but not limited to overtime and time and leave benefits), [and] working conditions." Thus, NYCCBL § 12-306(c) requires that public employers and employee organizations "bargain over matters concerning wages, hours, and working conditions, and any subject with a significant or material relationship to a condition of employment." *CEU, L. 237, IBT*, 2 OCB2d 37, at 11 (BCB 2009) (citations omitted). The Board has long held that "[a]s a unilateral change in a term and condition of employment accomplishes the same result as a refusal to bargain in good faith, it is likewise an improper practice." *DC 37, L. 420*, 5 OCB2d 19, at 9 (BCB 2012) (citation omitted). In order to establish that a unilateral change has occurred in violation of the NYCCBL, the Union "must demonstrate that (i) the matter sought to be negotiated is, in fact, a mandatory subject and (ii) the existence of such a change from existing policy." *DC 37, L. 436 & 768*, 4 OCB2d 31, at 13 (BCB 2011) (internal quotation marks omitted) (quoting *DC 37*, 79 OCB 20, at 9 (BCB 2007)).

Petitioners do not argue that the Vaccine Mandate itself is a mandatory subject of bargaining. Rather, Petitioners challenge the policies and procedures that the City unilaterally promulgated to implement the Vaccine Mandate, which they argue are mandatory subjects in and of themselves. This Board has previously stated that "[w]hile the City has the right to make and implement decisions concerning its management prerogatives without bargaining, the procedures for implementing decisions that affect terms and conditions of employment . . . are mandatorily

negotiable." *DC 37, L. 3631*, 4 OCB2d 34, at 12 (BCB 2011) (citing *DC 37*, 75 OCB 13, at 11 (BCB 2005)) (finding a change in frequency of performance evaluations was a mandatory subject of bargaining). *See also Doctors Council*, 69 OCB 31 (BCB 2002) (procedures for implementation of requirements of the Conflicts of Interest Law must be bargained); *DC 37*, 77 OCB 8 (BCB 2006) (procedures for road workers' use of cell phones concerned mandatory subjects of bargaining); *DC 37*, 75 OCB 14 (BCB 2005) (procedures for notification and verification of residency were mandatorily bargainable); *DC 37*, 67 OCB 25 (BCB 2001) (procedures for drug testing policy were mandatory subjects); *City of Utica*, 32 PERB ¶ 3056 (1999) (procedures for required physical examinations must be bargained).

In a case with similar facts, PERB held that while the bargainability of a mandate from the Albany County Health Department that firefighters be tested for tuberculosis was not at issue, the procedures for testing the employees were negotiable. The ALJ found that the procedures the employer unilaterally adopted affected firefighters' "work schedules, leave time, compensation, privacy, discipline and choice of health care worker to perform the tuberculosis test," all of which were mandatory subjects of bargaining. *City of Cohoes*, 25 PERB ¶ 4506, at 4514 (ALJ 1992), *affd.*, 25 PERB ¶ 3042 (1992). Here, Petitioners argue that the City's unilaterally established policies concerning implementation of the Vaccine Mandate concern multiple mandatory subjects of bargaining, including pay and leave policies, procedures for reasonable accommodation policies, and disciplinary procedures for employees who do not comply.

First, it is undisputed that under the policies the City adopted to implement the Vaccine Mandate, employees who did not comply were placed on LWOP, and paid leave was not an option. This Board has repeatedly found that "[u]nilateral changes regarding the use of leave time are a violation of an employer's bargaining obligation." *DC 37*, 6 OCB2d 14, at 16 (BCB 2013) (new

policy for Citywide emergencies that no longer allowed for excused absences and could require employees to take LWOP constituted a unilateral change to a mandatory subject of bargaining) (citing *UFOA, L. 854 & UFA*, 67 OCB 17 (BCB 2001); *DC 37, L. 436 & 768*, 4 OCB2d 31, at 14). Moreover, LWOP affects wages, which is expressly delineated as a mandatory subject under NYCCBL § 12-307(a). Accordingly, we find that the use of paid leave for those who failed to comply is a mandatory subject of bargaining.

In addition, the record does not reflect, at the time the Vaccine Mandate was implemented, exactly how the City intended to treat those employees who failed to comply. The Vaccine Mandate required that employees be vaccinated by a certain date or not be allowed to work on City premises. However, it did not specifically require that employees who do not comply will be placed on LWOP or terminated and removed from payroll on a date certain. Thus, the City had some discretion in how it would implement this requirement of the Vaccine Mandate.

The Petitioners' assertion that there were aspects of the City's implementation that were disciplinary in nature and required bargaining was based on the statement in the FAQ that discipline may result from non-compliance. As noted earlier, the City's FAQ explicitly states that LWOP is the "penalty" for not complying with the Vaccine Mandate and that employees placed on LWOP "may be subject to discipline or other adverse employment action." (Pet., Ex. 3 at ¶¶ 51, 52) It also states that an employee who is placed on LWOP "will be terminated in accordance with procedures required by the Civil Service Law or applicable collective bargaining agreements." (Pet., Ex. 3 at ¶ 51) However, we take judicial notice of the fact that after the petition

was filed the City asserted that the Vaccine Mandate was a qualification of employment and it has maintained that position since.[8]

Petitioners are correct that this Board has found that while the decision of whether to discipline an employee is a non-mandatory subject of bargaining, "the procedures necessary for the administration of discipline are mandatorily negotiable." *DC 37*, 79 OCB 37, at 10 (BCB 2007). Thus, the "methods, means, and procedures which may be used in effectuating disciplinary action are subject to mandatory bargaining." *COBA*, 12 OCB2d 3, at 12 (BCB 2019) (quoting *DC 37*, 65 OCB 36, at 9-10 (BCB 2000)) (internal quotation marks omitted). Disciplinary penalties may also be mandatorily negotiable. *See COBA*, 12 OCB2d 3, at 12; *see also DC 37*, 15 OCB2d 11, at 22 (BCB 2022) (finding that newly-imposed disciplinary infractions for driving penalties were a mandatory subject of bargaining); *NYC Transit Auth.*, 20 PERB ¶ 3037 (1987), *affd.*, 147 A.D.2d 574 (2d Dept. 1989), *order modified*, 156 A.D.2d 689 (2d Dept. 1989) (finding that employer could not unilaterally eliminate a comprehensive schedule of penalty guidelines in favor of a policy by which disciplinary penalties were assigned on a case-by-case basis). Therefore, procedures and penalties relating to discipline against unvaccinated employees may be subject to bargaining. However, in the absence of evidence that the City initiated disciplinary proceedings against employees who chose not to vaccinate, we do not find that the City violated its duty to bargain in good faith. *See UFA, Local 94,* 15 OCB2d xx (BCB 2022) (rejecting union's assertion

---

[8] We note that in proceedings filed in various courts, the Vaccine Mandate itself, as opposed to the implementation policies at issue here, has been found to be a lawful qualification or condition of employment that does not implicate disciplinary procedures. *See Garland v. New York City Fire Dept.*, 574 F. Supp. 3d 120, 129 (E.D.N.Y. 2021) (citing *We The Patriots USA, Inc. v. Hochul,* 17 F.4th 266, 293-94 (2d Cir. 2021)); *Marciano v. DiBlasio*, 2022 WL 678779, at *10 (S.D.N.Y. Mar. 8, 2022); *New York City Mun. Labor Comm. v. City of New York*, 75 Misc. 3d 411, 415 (Sup. Ct. N.Y. Co. Apr. 21, 2022).

that placing unvaccinated employees on LWOP was subject to contractual disciplinary procedures).

Petitioners also sought to bargain over the procedures under which requests for a reasonable accommodation to the Vaccine Mandate are processed and appealed. In previous cases concerning the processing of requests for a reasonable accommodation for a disability, this Board found that while "management has the right to establish [a reasonable accommodation policy], in compliance with applicable law," as well as make initial determinations of eligibility without bargaining, "the procedures implementing the policy constitute a mandatory subject of bargaining." *DC 37, L. 2507 & 3621*, 73 OCB 7, at 17-18 (BCB 2004) (citing *Matter of City of Watertown v. State of New York Public Employment Relations Board*, 95 N.Y.2d 73 (2000)); *see also EMS Superior Officers Assoc.*, 75 OCB 15, at 11 (BCB 2005). Thus, procedures such as filing and appeal requirements have been found to be mandatorily bargainable. *See DC 37, L. 2507 & 3621*, 73 OCB 7, at 17. Petitioners have not asserted that they sought to bargain over the criteria under which a reasonable accommodation would be granted. Rather, they sought to bargain over the deadlines and appeals process for those employees whose requests for a reasonable accommodation are denied, which we find constitute mandatory subjects of bargaining.

The City's assertion that it did not violate NYCCBL § 12-306(a)(4) because it engaged in good faith impact bargaining is not dispositive. The issue in this matter is not whether the City was required to bargain over a practical impact that naturally resulted from the Vaccine Mandate. As PERB has explained, "[i]n an impact bargaining situation, the effects which are sought to be bargained simply flow from the exercise of managerial prerogative without benefit of or need for any separate decisional implementation." *County of Nassau*, 27 PERB ¶ 3054, at 3120-3121 (1994). Where the employer adopts separate policies or procedures in order to implement the

managerial prerogative, those policies or procedures are bargainable to the extent they concern mandatory subjects of bargaining. *See id.* (County's decision to drug test employees was a managerial prerogative, but procedures adopted to implement that decision were mandatorily negotiable). Where, as here, the issue is a unilateral change to mandatory subjects of bargaining, "discussions which do not result in either an agreement or impasse proceedings resolving the parties' inability to reach agreement do not constitute bargaining sufficient to legitimize a unilateral change to a mandatory subject of bargaining." *DC 37*, 4 OCB2d 19, at 35 (BCB 2011), *affd.*, *Matter of Roberts, et al. v. New York City Office of Collective Bargaining, et al.*, Index No. 106268/2011 (Sup. Ct. N.Y. Co. Apr. 30, 2012) (Torres, J.), *affd.*, 113 A.D.3d 97 (1st Dept. 2013) (citing *UFA*, 77 OCB 39, at 13-14 (BCB 2006); *DC 37, L. 1457*, 77 OCB 26, at 19-20 (BCB 2006)). No impasse or agreement has been reached between the City and Petitioners in this matter, "thus [the City's] contention that the discussions in which it participated somehow discharges its duty to bargain is groundless." *DC 37*, 4 OCB2d 19, at 35. Accordingly, we find that, under the circumstances here, the City breached its duty to bargain in violation of NYCCBL § 12-306(a)(4). When an employer violates its duty to bargain in good faith, there is also a derivative violation of NYCCBL § 12-306(a)(1).[9]

With respect to remedy, while the City has not provided a specific justification for the short span of time between the announcement of the Vaccine Mandate and the implementation of its unilaterally adopted policies, we note that in the context of the COVID-19 public health emergency, time was clearly of the essence. The public health threat posed by the COVID-19

---

[9] During these proceedings Petitioners emphasized that the nine days between the City's announcement and implementation of the Vaccine Mandate was too short to accommodate bargaining. The Board acknowledges Petitioners' frustration and notes that the short notice of implementation also constrained the Board's ability to rule on Petitioners' application for injunctive relief prior to implementation.

virus since early 2020 is well-documented. Over two years later, highly contagious mutations of the virus continue to challenge public health and health care resources worldwide. In the Health Commissioner's October 2021 order, he noted that the US Centers for Disease Control and Prevention and other health policy studies have shown that, "vaccination is an effective tool to prevent the spread of COVID-19 and the development of new variants, and benefits both vaccine recipients and those they come into contact with, including persons who for reasons of age, health, or other conditions cannot themselves be vaccinated." (Pet., Ex. 1) Further, he explained that the Vaccine Mandate was a reasonable measure to reduce the transmission of COVID-19 in the workplace and when providing City services and "will potentially save lives, protect public health, and promote public safety." (*Id.*) Over eleven months have passed since the Vaccine Mandate was issued, and the deadlines to be vaccinated as well as the need to address reasonable accommodation requests have come and gone. Given these rare and unique circumstances, we do not order the City to restore the *status quo ante*.[10] Nevertheless, to the extent issues concerning terms and conditions of employment remain in implementation of the Vaccine Mandate, we order the City to bargain with Petitioners to either agreement or impasse.

---

[10] This conclusion is consistent with the remedy requested by Petitioners that was limited to a declaration that the City violated its obligation to negotiate in good faith and an order that the City bargain in good faith over implementation of policies related to the Vaccine Mandate.

**ORDER**

Pursuant to the powers vested in the Board of Collective Bargaining by the New York City Collective Bargaining Law, it is hereby

ORDERED, that the improper practice petition, docketed as BCB-4458-21, filed by Petitioners against the City of New York and the Department of Health and Mental Hygiene, is hereby granted; and it is further

ORDERED, that the City of New York bargain in good faith over any remaining issues concerning terms and conditions of employment in implementation of the Vaccine Mandate, and it is hereby

ORDERED, that the City of New York post or distribute the Notice of Decision and Order in the manner that it customarily communicates information to employees. If posted, the notice must remain for a minimum of thirty days.

Dated: September 28, 2022
New York, New York

SUSAN J. PANEPENTO
CHAIR

ALAN R. VIANI
MEMBER

I dissent (see attached opinion) — M. DAVID ZURNDORFER
MEMBER

I dissent (see attached opinion) — CAROLE O'BLENES
MEMBER

PETER PEPPER
MEMBER

**_MLC_, 15 OCB2d 34 (BCB 2022)**

(IP) (Docket No. BCB-4458-21)

Dissent of Carole O'Blenes and David Zurndorfer

This case arose out of the unprecedented and well documented public health emergency created by the devastating impact of COVID-19. In light of the medical and scientific data establishing that "vaccination is an effective tool to prevent the spread of COVID-19" (Pet. Ex. 1), and in furtherance of his mandate to safeguard the public health and safety, the City's Commissioner of Health and Mental Hygiene established a new condition of employment for City employees in October 2021 — issuing an order that required all City employees to be vaccinated against COVID-19. The order provided that employees who had not submitted proof of having received a first dose of the vaccine by 5:00 pm on October 29, 2021 would be "excluded from the premises at which they work beginning on November 1, 2021." (Pet. Ex. 1, ¶3)

In order to prevent the spread of disease among City employees and the public they serve, the City implemented that order with the dispatch required by the emergency conditions and, in large measure, with the cooperation of the City unions. Indeed, the City has successfully concluded agreements with 28 of its unions regarding the effects of the Vaccine Mandate. The six remaining unions that have initiated this proceeding "do not contest the City's decision to require vaccination" (Maj. Op. at 8 fn. 7); nor do they "argue that the Vaccine Mandate itself is a mandatory subject of bargaining." (*Id.* at 10) Nonetheless, they filed this improper practice petition, claiming that the City violated Sections 12-306(a)(4) and 12-307 by failing to bargain over various aspects of the implementation of the Vaccine Mandate — such as ceasing to pay employees who were "excluded from the premises at which they work" by virtue of their refusal to comply with the Mandate. The Majority, disregarding the natural consequences of the Mandate and ignoring compelling authority, has agreed.

On one point, and one point alone, we agree with the Majority Opinion. Its decision does not require the City "to restore the status quo ante" with respect to the six petitioner bargaining units. (Maj. Op. at 17) Over eleven months have passed since the Commissioner's order was issued. Agreements have been reached with the vast majority of City unions. The Vaccine Mandate has been implemented with remarkable success. And employee understandings and expectations with respect to the Mandate — as well as all the procedures flowing from it — are well settled. In these circumstances, it would make no sense whatsoever to undo or require changes for these six units in any of the existing policies or procedures that have been established, with tremendous effort by the City and unions alike, as the parties have navigated the unchartered waters of this pandemic. And we agree that no such changes are required by the order.

Unfortunately, the balance of the Majority Opinion is not so attentive to realities. Perhaps most obviously flawed is its conclusion that the City was required to engage in pre-implementation bargaining before ceasing to pay employees who refused to comply with the Vaccine Mandate and

placing them on leave without pay (LWOP) before terminating them. This is wrong-headed for several reasons.

First, purely as a practical matter, how could the City have implemented the Vaccine Mandate if it were required to continue paying employees who were not working because they refused to be vaccinated? Indeed, it takes no great imagination to contemplate the additional numbers of employees who would have refused to comply with the Mandate if they had known that, by doing so, they could simply stay home indefinitely and continue to be paid. In other words, putting non-complying employees on LWOP was a necessary part of implementing the Mandate.

Second, not paying a person who fails or refuses to comply with a condition of employment is not "discipline." Failure or refusal to comply with a lawful condition of employment — such as a residency requirement — "renders an individual ineligible for continued municipal employment"; it does not invoke disciplinary procedures. *In re Felix v. N.Y.C. Dep't of Citywide Admin. Servs.*, 3 N.Y.3d 498, 505 (2004); *see also In re Beck-Nichols v. Bianco*, 20 N.Y.3d 540, 558-59 (2013); *In re O'Connor v. Bd. of Educ. of City Sch. Dist. of City of Niagara Falls*, 48 A.D.3d 1254, 1255 (4th Dept. 2008), *appeal denied*, 10 N.Y.3d 928 (2008) ("the residency policy … is a qualification of employment").

Nor can there be any argument that a different rule should apply in the context of the Vaccine Mandate. In recent months, every court that has considered the question — both State and Federal — has found that the Vaccine Mandate is a lawful condition of employment and has concluded that disciplinary procedures do not apply to terminations or placement on leave without pay for failure to comply with that condition: "The acts of not permitting petitioners to enter the building, preventing them from performing their jobs, and withholding pay are not disciplinary actions; they are designed to prevent COVID-19 exposure . . . . " *Maniscalco v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, No. 160725/2021, 2022 N.Y. Misc. LEXIS 1367, *at 7 (Sup. Ct. N.Y. Cnty. Mar. 15, 2022). *See Garland v. N.Y.C. Fire Dep't*, 574 F. Supp. 3d 120, 127 (E.D.N.Y. 2021) (termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate disciplinary procedures); *O'Reilly v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 161040/2021, 2022 WL 180957, at *2 (Sup. Ct. N.Y. Co. Jan. 20, 2022) (placing teacher who did not comply with the Vaccine Mandate on leave without pay "was not discipline under the Education Law and instead was merely a response to [the teacher's] refusal to comply with a condition of employment"); *Broecker v. N.Y.C. Dep't of Educ.*, No. 21-cv-6387 (KAM) (LRM), 2022 WL 426113, at *10 (E.D.N.Y. Feb. 11, 2022) (same); *N.Y.C. Mun. Lab. Comm. v. City of N.Y.*, 167 N.Y.S.3d 374 (Sup. Ct. N.Y. Co. Apr. 21, 2022) (accord); *Ansbro v. Nigro*, No. 531749/2021 (Sup. Ct. Kings Co. Sept. 21, 2022); *Marciano v. de Blasio*, No. 21-cv-10752 (JSR), 2022 WL 678779, at *10-11 (S.D.N.Y. Mar. 8, 2022).

Third, as evidenced by the agreements that the City reached with all but a handful of the City unions, there is no violation of Sections 12-306(a)(4) or 12-307 here because the City engaged in good faith impact bargaining. The Majority acknowledges that only impact bargaining is required when the effects sought to be bargained "simply flow" from the exercise of a managerial prerogative. (Maj. Op. at 15) As discussed above, ceasing to pay or employ a worker who does

not and cannot work because he has refused to comply with a condition of employment is a natural consequence of — or "simply flows" from — the Vaccine Mandate.

It also bears emphasis that the Majority cites *County of Nassau*, 27 PERB ¶ 3054, at 3120 (1994), which expressly recognizes that only impact bargaining is required over actions that "are so inextricably intertwined with [a managerial decision] as to make bargaining concerning implementation impracticable." Plainly, as explained above, the ability to put employees who refused to be vaccinated on leave without pay before terminating them for failure to meet a condition of employment was "inextricably intertwined" with the Mandate itself and necessary to its implementation. Any requirement of pre-implementation bargaining to impasse would have been impracticable at best.

Finally, the flaws in the Majority's decision are compounded by the inappropriate wording of the bargaining order. The Majority finds a violation of the duty to bargain only with respect to two issues: 1) paid leave for those who refused to comply with the Vaccine Mandate; and 2) the deadlines and appeals process for denials of requests for reasonable accommodation exemptions from the Vaccine Mandate. Accordingly, the bargaining order should be – and is properly read as – limited to those two issues. There is no need or justification for the Majority's vague and extraneous reference to "any remaining issues concerning terms and conditions of employment in implementation of the Vaccine Mandate," which risks creating confusion between the parties that would impede the bargaining process.

For all these reasons, we dissent.

October 6, 2022

CAROLE O'BLENES
MEMBER

M. DAVID M. ZURNDORFER
MEMBER



OFFICE OF COLLECTIVE BARGAINING

OFFICE ADDRESS
100 Gold Street
Suite 4800
New York, New York 10038

MAILING ADDRESS
Peck Slip Station
PO Box 1018
New York, New York
10038-9991

212.306.7160
www.ocb-nyc.org

IMPARTIAL MEMBERS
Susan J. Panepento, Chair
Alan R. Viani

LABOR MEMBERS
Charles G. Moerdler

CITY MEMBERS
M. David Zurndorfer
Pamela S. Silverblatt

DEPUTY CHAIRS
Monu Singh
Steven Star

**NOTICE
TO
ALL EMPLOYEES
PURSUANT TO
THE DECISION AND ORDER OF THE
BOARD OF COLLECTIVE BARGAINING
OF THE CITY OF NEW YORK
and in order to effectuate the policies of the
NEW YORK CITY
COLLECTIVE BARGAINING LAW**

We hereby notify:

That the Board of Collective Bargaining has issued 15 OCB2d 34 (BCB 2022), determining an improper practice petition between the New York City Municipal Labor Committee; United Fire Officers Association, Local 845; Captains Endowment Association; Lieutenants Benevolent Association; Uniformed Firefighters Association, Local 94, I.A.F.F., AFL-CIO; Sergeants Benevolent Association; Detectives' Endowment Association and the City of New York, and the Department of Health and Mental Hygiene

Pursuant to the powers vested in the Board of Collective Bargaining by the New York City Collective Bargaining Law, it is hereby:

ORDERED, that the improper practice petition docketed as BCB-4458-21, be, and the same hereby is, granted; and it is further

ORDERED, that the City of New York bargain in good faith over any remaining issues concerning terms and conditions of employment in implementation of the Vaccine Mandate; and it is further

ORDERED, that the City of New York post or distribute the Notice of Decision and Order in the manner that it customarily communicates information to employees. If posted, the notice must remain for a minimum of thirty days.

The City of New York
(Department)

Dated: ______________________________(Posted By)
(Title)

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

VIA O. HINDS-RADIX
oration Counsel

**Andrea O'Connor**
Labor & Employment Law Division
Phone: 212-356-4015
Fax: 212-356-1148
aoconnor@law.nyc.gov

October 11, 2022

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re: Garland, et al. v. New York City Fire Department, et al.
Docket No. 21 Civ. 6586 (KAM)(CP)

Dear Judge Matsumoto:

I am an Assistant Corporation Counsel in the office of Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for Defendants New York City Fire Department and Daniel Nigro (collectively "FDNY Defendants") in the above- captioned matter. I write today in response to Plaintiffs' second application to supplement their opposition to FDNY Defendants' motion to dismiss the Amended Complaint. FDNY Defendants respectfully request that this second application be denied.

In their second application, Plaintiffs provide the Court with a copy of a decision issued by the Office of Collective Bargaining in In the Matter of the New York City Municipal Labor Committee, et al. v. The City of New York, et al., Docket no. BCB-4458-21, dated September 28, 2022 ("OCB Decision"). The petitioners in that matter the New York City Municipal Labor Committee and six unions, including the Uniformed Firefighters Association ("UFA"), that did not reach agreements with the City regarding the impact of the City's vaccination mandate. [1] The OCB Decision found that the City violated Sections 12-306(a)(4) and 12-307 of the New York City Collective Bargaining Law by failing to bargain either to agreement or impasse with just these six unions regarding the impact of the City's vaccination

[1] The City reached agreements with more than 20 other unions regarding the impact of the City's vaccination mandate.

mandate. Notably, the OCB Decision specifically did "not order the City to restore the *status quo ante*." See OCB Decision at 16.

Plaintiffs now argue that OCB Decision is dispositive of the federal constitutional claims in this action. Plaintiffs are, once again, incorrect. Plaintiffs contend that the OCB Decision's finding that the City violated the NYCCBL's duty to bargain results in the City's vaccination mandate not becoming a condition of employment. Setting aside whether or not this is actually a valid reading of the OCB Decision, this contention is completely unsupported by the caselaw amassed in the past year which – save for one decision – have uniformly held that the City and DOE vaccination mandates created a legally enforceable condition of employment for City employees. See Dkt. No. 24, Memorandum and Order, dated December 6, 2021 (hereinafter "December 6 Order"), at p. 14; see also Broecker v. N.Y.C. Dep't of Educ., No. 21-CV-6387(KAM)(LRM), 2022 U.S. Dist. LEXIS 25104, at *22 (E.D.N.Y. Feb. 11, 2022); O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022); Lanzer v. BOE, et al., Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); Romero v. BOE, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty); Maniscalco v. BOE, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty); Giammarino v. BOE, et al., Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty); Clarke v. BOE, et al., Index No. 160787/2021; Salas v. BOE, et al., Index No. 160821/2021; Loiacono v. BOE, et al., Index No. 161076/2021; Marciano v. De Blasio, No. 21-cv-10752 (JSR), 2022 U.S. Dist. LEXIS 41151, at *25-26 (S.D.N.Y. Mar. 8, 2022); N.Y.C. Mun. Labor Comm. v. City of N.Y., 2022 NY Slip Op 22121 (Apr. 21, 2022 N. Y. Sup. Ct.). Additionally, and critical to this case is the decision issued on September 21, 2022 by the Hon. Gina Abadi in New York Supreme Court, Kings County in Ansbro v. Nigro, et al., Index No. 531749/2021 which held that vaccination mandate "create[d] a condition of employment" for firefighters and therefore unvaccinated firefighters who did not obtain an accommodation could be terminated and/or placed on LWOP due to their non-compliance with the mandate.

Finally, Plaintiffs' instant application serves to, once again, re-up the faulty proposition that a purported violation of state or local law automatically equates to a constitutional procedural due process violation. As in their Opposition to FDNY Defendants' Motion to Dismiss the Amended Complaint, Plaintiffs cite to no authority in support of this dubious argument. Perhaps that is because the Second Circuit has held the exact opposite. See Tooly v. Schwaller, 919 F.3d 165, 172 (2d Cir. 2019) ("violation of state law does not per se result in a violation of the Due Process Clause"). Thus, to the extent Plaintiffs hinge their procedural due process claim on an alleged violation of the state and/or city collective bargaining laws, such an attempt fails.

FDNY Defendants thank the Court for its attention to this matter.

Respectfully submitted,

Andrea O'Connor
Assistant Corporation Counsel

c: All Counsel, By ECF

THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H SCHER*
JONATHAN L. SCHER**

AUSTIN R GRAFF*

* Also Admitted in District of Columbia
* Also Admitted in New Jersey

TEL: 516-746-5040

FAX: 516-746-5043

W SCOTT KERSHAW
COUNSEL
MICHAEL SCHILLINGER
COUNSEL
ROLAND P. BRINT
COUNSEL
ADAM GANG
COUNSEL

ROBERT S NAYBERG
(1950-2013)

October 25, 2022

**BY ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Garland, *et al.* v. New York City Fire Department, *et al.*
Docket No. 21-CV-06586-KAM-CLP

Dear Judge Matsumoto:

This law firm represents the Plaintiffs in the above-referenced Action. The Plaintiffs request permission to supplement their opposition to the Motions to Dismiss based upon a new decision, issued yesterday, October 24, 2022, by the New York State Supreme Court, County of Richmond in *Garvey, et al. v. The City of New York, et al.*, Index Number 85163/2022 ("*Garvey* Case"). A copy of the Decision is attached for your ready reference.

The Court in the *Garvey* Case held that "the vaccination mandates for public employees and private employees is arbitrary and capricious." *Garvey* Case, page 5.

In addition, the Court in the *Garvey* Case held that the vaccine mandate violated the New York State Constitution, based upon selective enforcement, holding "there is no rational reason for vaccination mandates to distinguish City workers, athletes, performers, and other private sector employees .... Either there is a mandate for all, or there is a mandate for none." *Garvey* Case, t page 11.

The Court in the *Garvey* Case also addressed the fact that the Petitioners' union had "bargained for a process regarding exemptions *after* the enactment of this vaccination mandate" and held that as a result, there was no breach of contract claim against the City for breaching the Petitioners' union's collective bargaining agreement. *See, Garvey* Case, at page 10. Even with a negotiated, bargained for terms regarding exemptions, the Court still held the vaccine mandate arbitrary, capricious, and violative of the New York State Constitution.

Case 23-663, Document 50, 08/01/2023, 3549871, Page120 of 223

JA-558

THE SCHER LAW FIRM, LLP

Honorable Kiyo A. Matsumoto, U.S.D.J.
United States District Court, Eastern District of New York
October 25, 2022
Page 2 of 2

The *Garvey* Case strongly supports the Plaintiffs' arguments that the Defendants' Motions to Dismiss should be denied. The vaccine mandate at issue in this Action is the same vaccine mandate that the Court in the *Garvey* Case held: (1) violated the separation of powers doctrine under N.Y. Constitution Article III, § 1; (2) violated the Petitioners' equal protection rights pursuant to N.Y. Constitution Article I, § 11; (3) violated the Petitioners' substantive and procedural due process rights pursuant to N.Y. Constitution Article I, § 6; (4) that the Commissioner lacked the power and authority to permanently exclude the Petitioners from their workplace; and (5) that the October 20, 2021 public employee vaccine mandate order arbitrary and capricious. *See*, *Garvey* Case, at page 12-13.

The vaccine mandate imposed upon the Plaintiffs in this Action is no longer enforceable as a matter of law as a result of the *Garvey* case and, as the Court held in the *Garvey* Case, the fact that the vaccine mandate resulted in the Petitioners' termination from employment, the Petitioners were "reinstated to their full employment status" and "are entitled to back pay in salary from the date of termination." *Garvey* Case, at page 13.

As a result, this Court should deny the Defendants' Motions to Dismiss. The *Garvey* Case stands for the proposition that what the City and the FDNY did to the Plaintiffs was arbitrary, capricious, and in violation of the N.Y. Constitution. As a result, the Plaintiffs' federally protected rights to their pay and their job were violated.

Accordingly, the Plaintiffs have stated a plausible claim against the City Defendants.

Respectfully submitted,
THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

H:\Martino, Michelle\FDNY Litigation (Garland)\Litigation\Motions\Motion #002 - Motion to Dismiss FDNY\10-25-2022 letter re Garvey\10-25-2022 letter to Court re Garvey decision doc

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RICHMOND

---

GEORGE GARVEY, ADAM BIANCO, ANTHONY FIGUEROA, CURTIS CUTLER, DALE NICHOLLS, DANNY HULKOWER, FRANK CALAMANCO, JAMES GERMANO, KOLA SMITH, MANDEL BAILEY, MITCHUM GREENE, PATRICIA BUCCELLATO, RALPH MARTINEZ, RUSSELL PIAZZA, SEAN ABELL, TOMMY LIBRETTI,

Petitioners,

Index #: 85163/2022

For A Judgment Pursuant To Article 78 of the CPLR

**DECISION & ORDER**

-against-

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE, NEW YORK CITY DEPARTMENT OF SANITATION, DAVID CHOKSHI, in his official capacity as the Commissioner of the Department of Health and Mental Hygiene, and ERIC ADAMS, in his official capacity as Mayor

Respondents.

---

Upon all of the papers filed in support of the applications and the papers filed in opposition thereto, and after hearing oral arguments, it is

**ORDERED** that Motion #002 brought by Respondents for a judgment pursuant to CPLR 3211(a)(7) to dismiss the Petition on the grounds that the Petitioner failed to state a claim is hereby denied.

**ORDERED** that the Petition is hereby granted as set forth below.

## BACKGROUND & PROCEDURAL HISTORY

On October 20, 2021, the Health Commissioner of the City of New York, David Chokshi, (hereinafter "Commissioner Chokshi" and/or "DOHMH") issued an Order of the Commissioner of the Department of Health and Mental Hygiene (hereinafter "public employee vaccination mandate"). The vaccination mandate required all City employees to show proof of at least one dose of vaccination against Covid-19 by 5:00PM on October 29, 2021. Petitioners are former-Department of Sanitation (hereinafter "DSNY") employees that were terminated in February 2022 for failure to comply with vaccination requirements. On December 13, 2021, the Commissioner extended the vaccination mandate to employees in the private sector (hereinafter "private employee vaccination mandate"). On March 24, 2022, Mayor Adams enacted Executive Order No. 62, which provided blanket exemptions from the private employers' vaccine mandate for athletes, performers, and other artists (hereinafter "private exemption order" or "Mayor's exemption").

Petitioners' central argument is that Mayor Adams' Executive Order No. 62, the private exemption order, rendered the public employee vaccination mandate arbitrary and capricious or unconstitutional. Furthermore, the Petitioners all claim, and provided laboratory documentation, that they have natural immunity to Covid-19 from prior infection(s). Respondents' central argument is that the private employers' exemption order and the public employee vaccination mandates were "created separately, and exist independently, of each other."

## MOTION TO DISMISS

Upon a motion to dismiss a complaint pursuant to CPLR §3211, a court must take the allegations in the complaint as true and resolve all inferences in favor of the plaintiff." *Morris v. Gianelli*, 71 AD3d 965, 967 [2d Dept. 2010]. A motion to dismiss should be granted where the Complaint fails to "contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *Matlin Patterson ATA Holdings LLC v. Fed. Express Corp.*, 87 AD3d 836, 839 (1st Dept. 2011).

CPLR §3211(a)(7) provides that "A party may move for judgment dismissing one or more causes of action asserted against him on the ground that…the pleading fails to state a cause of action." The Court will consider "whether the pleading states a cause of action, and if from its four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law a motion for dismissal will fail." *Guggenheimer v. Ginzburg*, 43 NY2d 268, 275

(1977). Dismissal pursuant to CPLR 3211(a)(7) is warranted if the evidentiary proof disproves an essential allegation of the complaint, even if the allegations of the complaint, standing alone, could withstand a motion to dismiss for failure to state a cause of action. *Korinsky v. Rose,* 120 AD3d 1307, 1308 (2d Dept. 2014). Courts have repeatedly granted motions to dismiss where the factual allegations in the claim were merely conclusory and speculative in nature and not supported by any specific facts." *See Residents for a More Beautiful Port Washington, Inc. v. Town of North Hempstead,* 153 AD2d 727 [2d Dept. 1989]; *Stoianoff v. Gahona,* 248 AD2d 525 [2d Dept. 1998].

Respondents argue that the Petitioner's claims are time-barred by the applicable statute of limitations. Under CPLR Article 78, there is a four-month statute of limitations to bring a claim. Though the Respondents were terminated in February 2022, the statute of limitations would normally expire in June 2022. Typically, a termination decision becomes final and binding when a petitioner receives notice of their termination. *John v. New York City Dept. of Educ.*, 18 NY3d 457, 465-466 [2012]. However, the Court notes two very important dates that change the expiration of the statute of limitations. First, is the private exemption order issued by Mayor Adams in March 2022. Second, in June 2022, the Petitioners received letters from the Department of Sanitation, essentially being offered their jobs back if they were willing to comply with the vaccination mandate.

There are "two requirements for fixing the time when agency action becomes final and binding. First, the agency must have reached a definitive position on the issue…and second, the injury inflicted may not be prevented or significantly ameliorated by further administrative action or by steps available to the complaining party." *Block 3066, Inc. v City of NY,* 89 AD3d 655, 656 [2d Dept 2011]. Clearly, the action by the Department of Sanitation in sending letters to the terminated employees means that the agency did *not* reach a definitive position on the issue. Furthermore, the issuance of a blanket exemption for certain professions by the Mayor's Executive Order No. 62 on March 24, 2022, which is a partial basis for this Action, opened the door to this litigation. Therefore, the Court finds this Article 78 filed timely, in light of the actions taken by the DSNY and the Mayor's Executive Order.

**ARTICLE 78**

Judicial review of the acts of an administrative agency under article 78 is limited to questions expressly identified by statute (*see* CPLR §7803; *Matter of Featherstone v. Franco*, 95 NY2d 550, 554 [2000]). CPLR §7803 states:

> The only questions that may be raised in a proceeding under this article are:
> 1. whether the body or officer failed to perform a duty enjoined upon it by law; or
> 2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or
> 3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or
> 4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.
> 5. A proceeding to review the final determination or order of the state review officer pursuant to subdivision three of section forty-four hundred four of the education law shall be brought pursuant to article four of this chapter and such subdivision; provided, however, that the provisions of this article shall not apply to any proceeding commenced on or after the effective date of this subdivision.

Under CPLR Article 78, the Petitioners must establish that the agency determination or decision is so "lacking in reason for its promulgation that it is essentially arbitrary." *NY State Ass'n. of Counties v. Axelrod,* 78 NY2d 158, 166 (1991). The standard of review is "whether the regulation has a rational basis, and is not unreasonable, arbitrary, or capricious." *Matter of Consolation Nursing Home, Inc., v. Commr. Of New York State Dept. of Health,* 85 NY2d 326, 331-332 [1995]. The reviewing court "must be certain that an agency has considered all the important aspects of the issue and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *O'Rourke v. City of NY,* 64 Misc. 3d 1203 [A] [Sup. Ct. Kings County 2019]. The Court "may not substitute its own judgment of the evidence…but should review the whole record to determine whether there exists a rational basis to support the findings upon which the …determination is predicated." *Purdy v. Kreisberg,* 47 NY2d 354, 358 (1979). "Public health agencies, in particular, are entitled to a high degree of

judicial deference when acting in their area of their particular expertise." *C.F. v. NYC Dept. Of Health & Mental Hygiene,* 191 AD3d 52, 69 [2d Dept. 2020].

In reviewing alleged arbitrary and capricious administrative determinations, a reviewing court's function is limited to "whether the record contains sufficient evidence to support the rationality of the…determination." *Atlas Henrietta LLC v. Town of Henrietta Zoning Bd. Of Appeals,* 46 Misc. 3d 325, 332 [Sup. Ct. 2013] *aff'd,* 120 AD3d 1606 [2014]. Furthermore, "capricious action in a legal sense is established when an administrative agency on identical facts decides differently." *Italian Sons & Daughters, Inc. v. Common Council of Buffalo,* 453 NYS2d 962 [4th Dept. 1982].

The Mayor, in issuing Executive Order No. 62, made a different decision for similarly situated people based on identical facts. There is nothing in the record to support the rationality of keeping a vaccination mandate for public employees, while vacating the mandate for private sector employees or creating a carveout for certain professions, like athletes, artists, and performers. This is clearly an arbitrary and capricious action because we are dealing with identical unvaccinated people being treated differently by the same administrative agency. See *Italian Sons & Daughters, Inc. v. Common Council of Buffalo,* 453 NYS2d 962 [4th Dept. 1982].

Though not raised in the initial filing, this Court considered the fact that all but one of the Petitioners applied for exemptions from the mandate. They received generalized and vague denials. During that time their exemptions were being processed, they remained unvaccinated. There was no reason that they could not continue to submit to testing and continue to fulfill their duties as public employees. There was no reason why the City of New York could not continue with a vaccinate or test policy, like the Mayor's Executive Order that was issued in August 2021.[1]

The Court finds that in light of the foregoing, the vaccination mandates for public employees and private employees is arbitrary and capricious. There was nothing demonstrated in the record as to why there was a vaccination mandate issued for only public employees in October 2021. This Court notes that Covid-19 rates were averaging under 1,500 per day in October 2021, significantly lower than today's average Covid-19 rates.[2] There was nothing demonstrated in the record as to why the private sector mandate was issued months later in December 2021. There was

[1] See Mayor's Executive Order No. 78 issued on August 31, 2021. eo-78.pdf (nyc.gov), last accessed October 24, 2022.

[2] Tracking Coronavirus in New York, New York Coronavirus Map and Case Count - The New York Times (nytimes.com), last accessed October 24, 2022.

nothing demonstrated in the record as to why exemptions were issued for certain professions in March 2022 under Executive Order No. 62. There was nothing demonstrated in the record as to why employees were kept at full duty during the months-long pendency of their exemption appeals. There was nothing demonstrated in the record as to why a titer was not an acceptable alternative to vaccination, other than a single CDC study entitled "New CDC Study: Vaccination Offers Higher Protection than Previous Covid-19 Infection" which was issued on August 6, 2021.[3]

Though vaccination should be encouraged, public employees should not have been terminated for their noncompliance. Over 79% of the population in New York City are vaccinated. These unvaccinated employees were kept at full duty while their exemptions were pending. Based upon the Petitioners' vague denials of their exemptions, the fact they were kept at full duty for several months while their exemptions were pending, the Mayor's Executive Order granting exemptions to certain classes of people, and the lifting of the private sector mandate, this Court finds the Commissioner's Orders of October 20, 2021, and December 13, 2021, as well as the Mayor's Executive Order No. 62 to be arbitrary and capricious.

**THE SEPARATION OF POWERS DOCTRINE**

The New York City Charter empowers the DOHMH and the Board of Health with "jurisdiction to regulate all matters affecting health in the City of New York," which includes supervising the "control of communicable and chronic diseases and conditions hazardous to life and health" and providing "programs for the prevention and control of disease." NY City Charter §§ 556, 556(c)(2), 556(d)(5), and 558(c). The Charter empowers the City Council to "adopt local laws...for the preservation of the public health, comfort, peace and prosperity of the city and its inhabitants." *NY City Charter* 28[a]. The Charter restricts the Board of Health's rulemaking to the publication of a health code. *Matter of New York Statewide Coalition of Hispanic Chambers of Commerce v. New York City Dept. of Health & Mental Hygiene*, 23 NY3d 681 [2014].

Furthermore, Section 17-109 of the Administrative Code empowers DOHMH to "add necessary additional provisions to the health code to most effectively prevent the spread of communicable disease..." Finally, Section 3.01(d) of the New York City Health Code provides, in part, that upon the declaration of a public health emergency, the DOHMH Commissioner "may

[3] New CDC Study: Vaccination Offers Higher Protection than Previous COVID-19 Infection, U.S. Centers for Disease Control, August 6, 2021 https://www.cdc.gov/media/releases/2021/s0806-vaccination-protection.html, last accessed 10/24/2022.

establish procedures to be followed, issue necessary orders and take such actions as may be necessary for the health or safety of the City and its residents. Such procedures, orders or actions may include, but are not limited to…exercising any other power of the Board of Health to prevent, mitigate, control or abate an emergency, provided that such exercise of authority or power shall be effective only until the next meeting of the Board…" and at that meeting the Board can continue or rescind the Commissioner's exercise of authority.

"The concept of the separation of powers is the bedrock of the system of government." *Matter of NYC CLASH, Inc. v. New York State Off. Of Parks, Recreation, and Historic Preserv.*, 27 NY3d 178, 183 [2016]. An administrative agency usurps the authority of the legislative branch when it promulgates a rule that the legislature did not delegate it the authority to make in the first instance. *Id.* at 178; *Greater New York Taxi Ass'n v. NYC Taxi and Limousine Comm'n.*, 25 NY3d 600, 609 [2015]. "Separation of powers challenges often involve the question of whether a regulatory body has exceeded the scope of its delegated powers and encroached upon the legislative domain of policy making." *Garcia v. NY City Dept. of Health & Mental Hygiene*, 31 NY3d 601, 608 [2018].

To determine whether an administrative agency "has usurped the power of the Legislature, courts must consider whether the agency: (1) operated outside of its proper sphere of authority by balancing competing social concerns in reliance solely on its own ideas of sound public policy; (2) engaged in typical, 'interstitial' rulemaking or 'wrote on a clean slate, creating its own comprehensive set of rules without benefit of legislative guidance'; (3) 'acted in an area in which the Legislature has repeatedly tried- and failed- to reach agreement in the face of substantial public debate and vigorous lobbying by a variety of interested factions'; and (4) applied its 'special expertise or technical competence' to develop the challenged regulations." *See Matter of Acevedo v. NYS Dept. of Motor Vehs.*, 132 AD3d 112, 119 [3d Dept. 2015] *citing Boreali v. Axelrod*, 71 NY2d 1 at 12-14 [1987].

Applying the *Boreali* factors here, it appears that the Respondents are promulgating a rule on City employees. The Respondents instituted a policy for vaccination for all workers within New York City, by separate orders for public and private workers, however, as of November 1, 2022, the mandate is being lifted for only private sector employees. Though the Board of Health has the power to regulate vaccinations and adopt measures to reduce the spread of infectious diseases per Administrative Code 17-109, the Board of Health does not have the authority to

unilaterally and indefinitely change the terms of employment for any agency. Therefore, this Court finds that the DOHMH has acted outside its proper sphere of authority.

As to the second *Boreali* prong, the Commissioner has, in effect, "wrote on a clean slate." Terms of employment for City employees, such as residency requirements, are codified. There has never been a vaccination requirement for employees. They are not vaccinated for seasonal flu, and to this Court's understanding, they've never been required to provide other proof of vaccination. As to the third prong, the legislature has made no attempts to legislate Covid-19 vaccination. Finally, as to the fourth prong, the Health Commissioner, and the Board of Health, certainly used their expertise to develop this Order.

This Court does not have a basis to disagree with *temporary* vaccination orders during a public health emergency, however, ordering and enforcing that vaccination policy on only a portion of the populace for an indefinite period of time, is akin to legislating. It appears that in issuing this indefinite order, usurping the power of the legislature, the Health Commissioner has acted beyond his authority. *See Boreali v. Axelrod,* 71 NY2d 1 [1987] and *See also Goldenstein, et al v. NYC Dept. of Health, et al,* Index No. 85057/2022, wherein this Court used a similar analysis in invalidating the "toddler mask mandate."

**<u>THE AUTHORITY OF THE HEALTH COMMISSIONER</u>**

The Health Commissioner's Order of October 13, 2021, states that "any City employee who has not provided the proof described in Paragraph 2 must be excluded from the premises at which they work beginning on November 1, 2021."[4] The Petitioners claim that the Respondents do not have the power or authority to exclude the Petitioners from entering their workplace and that the Commissioner exceeded the scope of his authority. This Court agrees that the Commissioner cannot enact a term of employment on City employees and has exceeded his scope of authority based upon the separation of powers discussion above.

The Respondents, in arguing that the Commissioner can set a condition of employment, heavily rely on a recent case in the Appellate Division, Second Department, *CF v. NYC Dept. of Health & Mental Hygiene,* 191 AD3d 52 [2d Dept. 2020]. In the *CF* matter, the DOHMH issued a mandatory vaccination requirement on residents arising out of a severe measles outbreak in

[4] Supplemental Order of the Commissioner of Health and Mental Hygiene to Require Covid-19 Vaccination for City Employees and Employees of Certain City Contractors. covid-19-vaccination-requirement-contractors-supplemental.pdf (nyc.gov) last accessed 10/21/2022

Brooklyn, New York. The Court in that matter found that the decisions of public health officials to declare mandatory vaccine requirements are not arbitrary, capricious, or an abuse of discretion, *CF v. NYC Dept. of Health & Mental Hygiene,* 191 AD3d 52, 64-65 [2d Dept. 2020]. However, this Court notes that in Brooklyn, failure to comply with the measles vaccination requirement resulted in fines for each day of noncompliance. Furthermore, the Second Department Appellate Division reserved on whether the fines imposed upon violation were excessive. The Court specifically stated that "in the event that fines are imposed upon any person for violation of the Board's resolution, such person is free to argue in an appropriate proceeding that the fine is so disproportionate that it is an abuse of discretion, as well as to argue that the fine is so grossly disproportionate to the gravity of the offense as to be constitutionally excessive." *Id.* Finally, upon this Court's own research, only three people were fined for noncompliance.[5] This Court notes that the DOHMH order requiring mandatory vaccination requirements in certain areas of Brooklyn were *temporary* and believes that termination in the instant proceeding is excessive.

The respondents further cite to a series of cases that permit vaccination mandates as a "condition of employment." However, none of these cases address the authority of the Health Commissioner to enact a term of employment under the Health Code to City employees. Nor, does the Order give authority to City agencies to terminate employees. *See Police Benevolent Association of the City of New York, Inc. on behalf f its Members, Patrick J. Lynch v. City of New York, at al,* Index 151531/2022. In another matter, healthcare workers were terminated for failure to comply with a "condition of employment" as they refused Covid-19 vaccination. See *We the Patriots USA v. Hochul*, 17 F.4th 266, 287 [2d Cir. 2021]. There is a key difference in the instant case. DSNY workers have *never* been required to be vaccinated as a condition of employment, while healthcare workers have *always* been required to be vaccinated against infectious diseases. *Id.* Members of the DSNY cannot be equated to healthcare workers.

Respondents argue that the "nature of petitioner's job as DSNY employees necessarily entails contact with NYC civilians- *hundreds of thousands of whom are unvaccinated.*" This argument is patently incorrect. The Petitioners work primarily outdoors and have limited interaction with the public. Those "hundreds of thousands of whom are unvaccinated" are

[5] ABC News, New York City issues fines of $1000 to 3 people who refused to be vaccinated against measles, New York City issues fines of $1,000 to 3 people who refused to be vaccinated against measles - ABC News (go.com) last accessed 10/21/2022.

responsible for their own health. They choose for themselves whether to be vaccinated or whether to risk infection. City employees should also have the right to make their own choice regarding their own health.

The Petitioners are members of a union that collectively bargained for a contract with the City of New York. The contract, in effect from January 20, 2019, until December 27, 2022, makes absolutely no mention of any vaccination as a condition of or prerequisite to employment.[6] How can a "condition of employment" be created during the term of employment? This Court believes that a new "condition of employment" cannot be imposed upon these employees when the "condition" did not exist when they accepted contracted employment. The Court is aware that the Petitioners' union bargained for a process regarding exemptions *after* the enactment of this vaccination mandate. Based upon this bargaining, the Court is not finding a breach of contract and notes that the Petitioners have other avenues for relief regarding the collective bargaining process and their rights as labor employees.

Finally, states of emergency are meant to be *temporary*. The question presented is whether the Health Commissioner has the authority to enact a permanent condition of employment during a state of emergency. This Court finds that the Commissioner does not have that authority and has acted beyond the scope of his authority under the Public Health Law and in violation of separation of powers. The Petitioners herein should not have been terminated for their failure to comply with the Commissioner's Order during a *temporary* state of emergency.

**<u>THE NY CONSTITUTION</u>**

Under the NY Constitution Article 1, §11, "No person shall be denied the equal protection of the laws of this state or any subdivision thereof." The purpose of this clause is to keep "governmental decisionmakers from treating differently persons who are in all relevant aspects alike." *Nicholas v. Tucker, 114 F3d 17, 20 [2d Cir. 1997].* Where government action draws a distinction between classes of people, "the classification must be reasonable and must be based upon some ground of difference that rationally explains the different treatment." *People v. Liberta,* 64 NY2d 152, 163 [1984]. Under the NY Constitution Article I, §7, no person may be deprived of life, liberty, or property without due process of the law.

[6] Executed Contract: Sanitation Workers. Plaintiff's Exhibit 5. https://iapps.courts.state.ny.us/nyscef/ViewDocument?docIndex=spsCWGtfYfFBQD_PLUS_KiHyuYA==, last accessed 10/21/2022.

This Court finds that based upon the analysis above, the Commissioner's Order of October 20, 2021, violated the Petitioners' equal protection rights as the mandate is arbitrary and capricious. The City employees were treated entirely differently from private sector employees, and both City employees and private sector employees were treated entirely differently from athletes, artists, and performers. All unvaccinated people, living or working in the City of New York are similarly situated. Granting exemptions for certain classes and selectively lifting of vaccination orders, while maintaining others, is simply the definition of disparate treatment. Furthermore, selective enforcement of these orders is also disparate treatment.[7]

There is no doubt that vaccination mandates were enacted in the furtherance of a legitimate governmental purpose. *See McMinn v. Town of Oyster Bay*, 66 NY2d 544, 549 [1985]. However, there must be a reasonable relation between the end sought to be achieved and the means used to achieve that end. *Id.* Though City employees are often held to a higher standard than employees in the private sector, there is no rational reason for vaccination mandates to distinguish City workers, athletes, performers, and other private sector employees. "All persons…shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed." *Engquist v. Oregon Dept. of Agr.*, 553 US 591 [2008]. Either there is a mandate for all, or there is a mandate for none.

## CONCLUSION

It is clear that the Health Commissioner has the authority to issue public health mandates. No one is refuting that authority. However, the Health Commissioner cannot create a new condition of employment for City employees. The Health Commissioner cannot prohibit an employee from reporting to work. The Health Commissioner cannot terminate employees. The Mayor cannot exempt certain employees from these orders. Executive Order No. 62 renders all of these vaccine mandates arbitrary and capricious.

Being vaccinated does not prevent an individual from contracting or transmitting Covid-19. As of the day of this Decision, CDC guidelines regarding quarantine and isolation are the same for vaccinated and unvaccinated individuals. The Petitioners should not have been terminated for

[7] It is worth noting by this Court, that neither party addressed the enforcement of the private sector vaccine mandate. It's unclear to this Court whether anyone was actually terminated under the private sector vaccine mandate or whether any businesses were fined. However, it is clear that enforcement of the private sector mandate is lacking: "Adams administration is not inspecting companies for vaccine mandate compliance," New York 1, City not inspecting businesses vaccine mandate compliance (ny1.com), last accessed 10/24/2022.

choosing not to protect themselves. We have learned through the course of the pandemic that the vaccine against Covid-19 is not absolute. Breakthrough cases occur, even for those who have been vaccinated and boosted. President Joseph Biden has said that the pandemic is over.[8] The State of New York ended the Covid-19 state of emergency over a month ago.[9]

As this Court stated in its decision in the *Rivicci* matter, this is not a commentary on the efficacy of vaccination, but about how we are treating our first responders, the ones who worked day-to-day through the height of the pandemic. *See Rivicci v. NYC Fire Dept.*, Index No. 85131/2022. They worked without protective gear. They were infected with Covid-19, creating natural immunity. They continued working full duty while their exemption requests were pending. They were terminated and are willing to come back to work for the City that cast them aside.

The vaccination mandate for City employees was not just about safety and public health; it was about compliance. If it was about safety and public health, unvaccinated workers would have been placed on leave the moment the order was issued. If it was about safety and public health, the Health Commissioner would have issued city-wide mandates for vaccination for all residents. In a City with a nearly 80% vaccination rate, we shouldn't be penalizing the people who showed up to work, at great risk to themselves and their families, while we were locked down.

If it was about safety and public health, no one would be exempt. It is time for the City of New York to do what is right and what is just.

Accordingly, it is hereby

**ORDERED** that the Petition is granted.

**ORDERED** that a declaratory judgment is granted in that the Commissioner of Health and Mental Hygiene's order dated October 20, 2021, violates the separation of powers doctrine under NY Constitution Article III, §1.

**ORDERED** that a declaratory judgment is granted in that the Commissioner of Health and Mental Hygiene's order dated October 20, 2021, violates the Petitioners' equal protection rights pursuant to NY Constitution Article I, §11.

---

[8] Biden says Covid-19 pandemic is "over" in US. Biden says COVID-19 pandemic is "over" in U.S. - CBS News, last accessed 10/24/2022.

[9] New York state ends covid emergency; Hochul encourages new booster shot, New York state ends Covid emergency; Hochul encourages new booster shot - syracuse.com, last accessed 10/24/2022.

**ORDERED** that a declaratory judgment is granted in that the Commissioner of Health and Mental Hygiene's order dated October 20, 2021, violates the Petitioners' substantive and procedural due process rights pursuant to NY Constitution Article I, §6.

**ORDERED** that a declaratory judgment is granted in that this Court finds that the Commissioner lacks the power and authority to permanently exclude the Petitioners from their workplace.

**ORDERED** that this Court finds the Commissioner of Health and Mental Hygiene's order dated October 20, 2021, arbitrary and capricious pursuant to CPLR §7803.

**ORDERED** that this Court finds the Commissioner of Health and Mental Hygiene's order dated December 13, 2021, arbitrary and capricious pursuant to CPLR §7803.

**ORDERED** that this Court finds the Mayor's Executive Order No. 62 arbitrary and capricious pursuant to CPLR §7803.

**ORDERED** that the Petitioners' claim for breach of contract is denied.

**ORDERED** that the terminated Petitioners are hereby reinstated to their full employment status, effective October 25, 2022, at 6:00AM.

**ORDERED** that the Petitioners are entitled to back pay in salary from the date of termination.

**ORDERED** that the Petitioners are directed to submit a proposed judgment regarding back pay consistent with this decision on or before November 10, 2022.

This constitutes the Decision and Order of the Court.

Date: October 24, 2022

ENTER

Ralph J Porzio
HON. RALPH J. PORZIO
J.S.C.



THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**Andrea O'Connor**
Labor & Employment Law Division
Phone: 212-356-4015
Fax: 212-356-1148
aoconnor@law.nyc.gov

October 25, 2022

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re: Garland, et al. v. New York City Fire Department, et al.
Docket No. 21 Civ. 6586 (KAM)(CP)

Dear Judge Matsumoto:

I am an Assistant Corporation Counsel in the office of Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for Defendants New York City Fire Department and Daniel Nigro (collectively "FDNY Defendants") in the above- captioned matter. I write today in response to Plaintiffs' third application to supplement their opposition to FDNY Defendants' motion to dismiss the Amended Complaint. FDNY Defendants respectfully request that this third application be denied.

In their third application, Plaintiffs provide the Court with a copy of a decision issued by Judge Frank Porzio in Garvey, et al. v. City of New York, et al., Index No. 85163/2022, dated October 24, 2022 ("Garvey Decision"). The petitioners in Garvey are 16 former employees of the New York City Department of Sanitation that were terminated in February 2022 for failure to comply with the City's vaccination mandate. In their Article 78 petition, the petitioners argued that the City's vaccination mandate is arbitrary and capricious and/or unconstitutional under the New York State Constitution. In granting the Petition, the Court held, among other things, that the vaccination mandate was arbitrary capricious and violated the New York State Constitution. The City filed a Notice of Appeal the same day the Garvey Decision was issued.

Plaintiffs now argue that the Garvey Decision is dispositive of the federal constitutional claims in this action because the "vaccine mandate imposed upon the Plaintiffs in this Action is no longer enforceable as a matter of law as a result of the Garvey case." Dkt. No.

81. Plaintiffs are, once again, incorrect. The Garvey Decision does not enjoin the continued enforcement of the City's vaccination mandate.

Further, the Garvey Decision runs counter to ***every other*** decision, save one, issued by state and federal courts, including this Court, which have uniformly held that the City and DOE vaccination mandates are legally enforceable and create a condition of employment for City employees. See N.Y.C. Mun. Labor Comm. v. City of N.Y., 2022 NY Slip Op 22121 (Apr. 21, 2022 N. Y. Sup. Ct.); see also Garland v. N.Y.C. Fire Dep't, No. 21 CV 6586 (KAM)(CLP), 2021 U.S. Dist. LEXIS 233142 at * 14 (E.D.N.Y. Dec. 6, 2021) Broecker v. N.Y.C. Dep't of Educ., No. 21-CV-6387(KAM)(LRM), 2022 U.S. Dist. LEXIS 25104, at *22 (E.D.N.Y. Feb. 11, 2022); O'Reilly v. Bd. of Educ., Index No. 161040/2021, 2022 N.Y. Slip. Op. 30173(U), ¶ 3 (N.Y. Sup. Ct. Jan. 20, 2022); Lanzer v. BOE, et al., Index No. 160017/2021 (N.Y. Sup., N.Y. Cnty); Romero v. BOE, et al., Index No. 160353/2021 (N.Y. Sup., N.Y. Cnty); Maniscalco v. BOE, et al., Index No. 160725/2021 (N.Y. Sup., N.Y. Cnty); Giammarino v. BOE, et al., Index No. 160829/2021 (N.Y. Sup., N.Y. Cnty); Clarke v. BOE, et al., Index No. 160787/2021; Salas v. BOE, et al., Index No. 160821/2021; Loiacono v. BOE, et al., Index No. 161076/2021; Marciano v. De Blasio, No. 21-cv-10752 (JSR), 2022 U.S. Dist. LEXIS 41151, at *25-26 (S.D.N.Y. Mar. 8, 2022). Additionally, and critical to this case is the decision issued on September 21, 2022 by the Hon. Gina Abadi in New York Supreme Court, Kings County in Ansbro v. Nigro, et al., Index No. 531749/2021 which held that vaccination mandate "create[d] a condition of employment" for firefighters and therefore unvaccinated firefighters who did not obtain an accommodation could be terminated and/or placed on LWOP due to their non-compliance with the mandate.

Finally, Plaintiffs' instant application serves to, once again, re-up the faulty proposition that a purported violation of state law automatically equates to a federal constitutional procedural due process violation. As in their Opposition to FDNY Defendants' Motion to Dismiss the Amended Complaint, Plaintiffs cite to no authority in support of this dubious argument. Perhaps that is because the Second Circuit has held the exact opposite. See Tooly v. Schwaller, 919 F.3d 165, 172 (2d Cir. 2019) ("violation of state law does not per se result in a violation of the Due Process Clause"). Thus, to the extent Plaintiffs hinge their procedural due process claim on an alleged violation of the state law, such an attempt fails.

Given that this is Plaintiffs third request to re-open briefing, FDNY Defendants respectfully request that the Court deny this application with prejudice. FDNY Defendants thank the Court for its attention to this matter.

Respectfully submitted,

[signature]

Andrea O'Connor
Assistant Corporation Counsel

c: All Counsel, By ECF



THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**HON. SYLVIA O. HINDS-RADIX**
*Corporation Counsel*

**Andrea O'Connor**
Labor & Employment Law Division
Phone: 212-356-4015
Fax: 212-356-1148
aoconnor@law.nyc.gov

February 16, 2023

**VIA ECF**
Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re: Garland, et al. v. New York City Fire Department, et al.
Docket No. 21 Civ. 6586 (KAM)(CP)

Dear Judge Matsumoto:

am an Assistant Corporation Counsel in the office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for Defendants New York City Fire Department and Daniel Nigro (collectively "FDNY Defendants") in the above- captioned matter. I write today in response to the Court's order directing the parties to address which issues, if any, have been mooted in light of the City of New York making vaccination optional, rather than required, for current and prospective City employees.

While this change will not eliminate all live issues, it does mean that Plaintiffs who are former City employees are eligible to either apply for reinstatement or apply to new positions within the City. Former City employees, however, who were terminated for failure to show proof of vaccination will not be automatically reinstated to their prior positions with back pay. In that regard, Plaintiffs' claims relating to their placement on leave without pay and any subsequent termination remain live.

However, because vaccination is now optional for current and new City employees, to the extent Plaintiffs' Amended Complaint seeks injunctive relief to enjoin the enforcement of the City's vaccination requirement, such relief is moot. Similarly, any request for declaratory or injunctive relief in connection with a facial challenge to the DOE's vaccination mandate is moot as well. *See Brach v. Newsom*, 38 F.4th 6, 11 (9th Cir. 2022) (when "there is no longer any state order for the court to declare unconstitutional or to enjoin," then "[i]t could not be clearer that this case is moot"); *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021) ("with the offending [rule] wiped away, there is nothing harming" the plaintiff).

Nor can Plaintiffs credibly invoke the voluntary cessation exception. They have repeatedly sought relief from this Court, and FDNY Defendants have consistently responded by litigating the issues. It is hard to imagine better proof that the change in course is "unrelated to the litigation." 15 Moore's Federal Practice Civil § 101.99(2)(a) (2022) (collecting cases). The facts bear out that the discontinuance of the employee vaccination requirement is due to changed circumstances, not this litigation. For example, 96% of the City workforce, 99% of DOE's workforce, and more than 80% of all New Yorkers have been vaccinated, and more tools are available to counter the virus than ever before. The Second Circuit has recognized that changes in pandemic-related measures like this are not subject to the voluntary cessation exception. *See, e.g., Geller v. Hochul*, No. 21-2514, 2023 U.S. App. LEXIS 1077, at *2-3 (2d Cir. Jan. 18, 2023) (summary order) (holding challenge to pandemic-related restrictions on public gatherings moot as restrictions had been lifted); *Weisshaus v. Hochul*, No. 21-64, 2022 U.S. App. LEXIS 32794, at *2-4 (2d Cir. Nov. 29, 2022) (same, as to pandemic-related traveling requirements). Further, the mere possibility that the City could someday adopt other hypothetical vaccination requirements in the face of different threats does not create a live controversy. *See Boston Bit Labs*, 11 F.4th at 10 (noting that the government's continued power to regulate "cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot").

FDNY Defendants thank the Court for its attention to this matter.

Respectfully submitted,

Andrea O'Connor
Assistant Corporation Counsel

cc:   All Counsel via ECF

THE SCHER LAW FIRM, LLP

ONE OLD COUNTRY ROAD, SUITE 385
CARLE PLACE, NY 11514

MARTIN H. SCHER*
JONATHAN L. SCHER*+

AUSTIN R. GRAFF*

* Also Admitted in District of Columbia
+ Also Admitted in New Jersey

TEL: 516-746-5040

FAX: 516-746-5043

W SCOTT KERSHAW
COUNSEL

MICHAEL SCHILLINGER
COUNSEL

ROLAND P. BRINT
COUNSEL

ADAM GANG
COUNSEL

ROBERT S. NAYBERG
(1950-2012)

February 17, 2023

**By ECF**
Honorable Kiyo A. Matsumoto, U.S.D.J.
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Garland, *et al.* v. New York City Fire Department, *et al.*
Docket No. 21-CV-06586-KAM-CLP

Dear Judge Matsumoto:

This law firm represents all of the Plaintiffs, in the above-referenced Action. This letter shall serve as the Plaintiffs' response to the Court's Order seeking the parties' views relating to which issues in this Action have been mooted and which issues subsist in light of the City's discontinuance of its vaccine mandate for municipal workers.

First, it is important for the Court to know that even though the COVID-19 vaccine is no longer mandated for municipal employees, the City has made clear that those former employees who lost their jobs because the former employees refused to be vaccinated must re-apply for their positions with the New York City Fire Department ("FDNY"). *See,* **Exhibit 1,** a copy of the Mayor's announcement regarding the end of the vaccine mandate.

It is the Plaintiffs belief, based upon information in their possession that former employees of the FDNY who refused to be vaccinated and were terminated, if they want to re-apply, the City is requiring them to waive claims for back pay and waive claims relating to N.Y. Civil Service Law. As a result, the FDNY is making those who seek to re-apply give up valuable rights to obtain their job that they should never have lost in the first place because the FDNY's and the City's actions violated their rights to due process and in their pay.

In addition, the Mayor has said in interviews that he may have to reinstate the mandate. *See,* NYC mayor says COVID mandates may need to return, blasts people who say 'I want to do whatever I want' | Fox News (visited February 17, 2023). If the threat of a new vaccine mandate is a possibility, then, the Plaintiffs' request for a permanent injunction remains a viable claim.

Second, all of the Plaintiffs' other causes of action remain viable after the City's announcement. The Plaintiffs argue that their due process rights and their right to their pay were violated when the FDNY suspended them without pay and without any due process and ultimately terminated some of the Plaintiffs from their employment. As a result, the Plaintiffs lost wages, lost health insurance benefits, lost pension benefits, lost seniority (those that were fired), and other emoluments they were entitled to as an employee of the FDNY. The Plaintiffs have claims for back pay and damages as a result of the violations of their Fourteenth Amendment rights. The City's decision to end the vaccine mandate does not compensate the Plaintiffs for their losses.

It is the Plaintiffs' view that the City's decision to end the vaccine mandate has no effect on the Plaintiffs' claims asserted in this Action because the City is not: (a) paying the Plaintiffs their back pay, (b) restoring their pension benefits; (c) re-instating their health insurance benefits; (d) restoring their seniority; (e) re-instating their tenure; or (f) restoring the Plaintiffs to their former positions.

Thank you for your courtesies in this matter.

Respectfully submitted,

THE SCHER LAW FIRM, LLP

Austin Graff

cc: Counsel of Record (by ECF)

Case 23-663, Document 50, 08/01/2023, 3549871, Page140 of 223
JA-578

# EXHIBIT 1

Skip Main Navigation

Menu

The Official Website of the City of New York

Text Size

Select Language

Powered by Google Translate

Search Search Search

## Secondary Navigation

MayorBiographyNewsOfficials

# With Over 96 Percent of City Workers Fully Vaccinated, Mayor Adams Announces COVID-19 Vaccination Will Become Optional for City Workers

February 6, 2023

*Over 331,000 City Workers Now Fully Vaccinated, Keeping New Yorkers Safe, City Operations Running Throughout Pandemic*

*City Will No Longer Require Vaccination for DOE Visitors*

**NEW YORK –** New York City Mayor Eric Adams today announced that — with more than 96 percent of city workers fully vaccinated against COVID-19 — the city will make vaccination optional for current and prospective city workers effective February 10, 2023, following the expected ratification at the next Board of Health meeting. The COVID-19 vaccine mandate for city workers has helped keep New Yorkers safe and New York City operations running throughout the pandemic. With the vast majority of city workers and New Yorkers vaccinated, and more tools readily available to protect people from serious illness, the vaccine requirement for the primary series of shots has served its purpose, driving rates of vaccination up among the city's workforce during a critical period in the pandemic.

"City workers stepped up tremendously throughout the pandemic," said **Mayor Adams**. "From our health care frontline workers and first responders who saved lives, to the city employees who kept our streets clean, our schools open, and our streets safe, we owe city workers a debt of gratitude for their service during New York City's darkest days. With more than 96 percent of city workers and more than 80 percent of New Yorkers having received their primary COVID-19 series and more tools readily available to keep us healthy, this is the right moment for this decision. I continue to urge every New Yorker to get vaccinated, get boosted, and take the necessary steps to protect themselves and those around them from COVID-19."

"As we near our third year with COVID-19, we continue to evaluate existing measures and adjust them as needed," said **Deputy Mayor for Health and Human Services Anne Williams-Isom**. "The city's vaccine requirement is one such measure and has yielded significant results with 96 percent of city workers vaccinated with the primary series. More broadly, across the city, over 80 percent of New Yorkers have had their initial two shots. In this context, we can adjust our guidance but continue to strongly encourage every New Yorker to take the steps that we know help keep us and our loved ones safe and healthy — getting vaccinated, getting boosted, wearing a mask when appropriate, getting tested when appropriate, staying home if sick, and maintaining good hand hygiene."

"It's clear these mandates saved lives and were absolutely necessary to meet the moment. We're grateful that we can now, as we leave the emergency phase of the pandemic, modify more of the rules that have gotten us to this point," said **New York City Department of Health and Mental Hygiene Commissioner Dr. Ashwin Vasan**. "We cannot overstate our appreciation for the millions of New Yorkers who made the necessary sacrifices to keep our city safe and save lives."

Beginning February 10, 2023, the city will make the COVID-19 vaccination requirement optional for city employees, in addition to New York City Department of Education (DOE) employees. At this point, the city has fully processed and issued decisions for all pending reasonable accommodation appeals. While the approximately 1,780 former employees terminated for failing to submit proof of vaccination will not be able to automatically return to their previous positions, they will be able to apply for positions with their former agencies through existing city rules and regulations and hiring processes. The city will also end the vaccination requirements for nonpublic school, early child care, and daycare staff.

As part of this change, beginning February 10, 2023, visitors to Department of Education (DOE) school buildings will no longer be required to provide proof of at least one dose of the COVID-19 vaccine. This will allow students' families and loved ones to attend school activities, celebrations, and events.

The necessary amendments to the city's vaccination policy for current city employees and DOE visitors are expected to be made at the next Board of Health meeting on February 9, 2023.

## Media Contact

pressoffice@cityhall.nyc.gov
(212) 788-2958

COHEN WEISS AND SIMON LLP

Hanan B. Kolko
Partner
o 212-356-0214
c 516-241-6674
f 646-473-8214
HKolko@cwsny.com
www.cwsny.com

900 Third Avenue, Suite 2100 • New York, NY 10022-4869

February 17, 2023

**Via ECF**
Hon. Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East, Rm. S905
Brooklyn, NY 11201

Re: Garland, et al. v. NYC Fire Department, et al.
Docket No. 21 CV 06587 (KAM)(CLP)

Dear Judge Matsumoto:

We represent defendants AFSCME District Council 37 ("DC37"), Henry Garrido, AFSCME Local 2507, and AFSCME Local 3621 ("DC37 Defendants"). On behalf of the DC37 Defendants, we write in response to the Court's order directing the parties to address which issues in this case, if any, have been rendered moot by the City of New York's decision to no longer require its current and future employees to have been vaccinated for COVID. We address here whether the claims against DC37 Defendants are moot.

In counts five and six, plaintiffs seek money damages against some or all of the DC37 defendants. Amended Complaint, ¶239, Prayer for Relief, ¶¶ 5, 6. Because plaintiffs seek money damages against some or all DC37 defendants in counts five and six, the claims asserted in those counts are not moot as to DC37 defendants.

In count two, plaintiffs seek only "a declaratory judgment … that the agreement between DC37 and the NYCDOE was entered into without any contractual authority …and, therefore, the NYCDOE's suspension of Plaintiffs … violated [their] fourteenth Amendment rights to due process and their pay." Prayer for Relief, ¶2.

Plaintiffs allege that the agreement, Exhibit B to the Amended Complaint, provided that "on and after December 1m 2021, NYC may unilaterally separate DC37 members from their employment with the FDNY if the members have not obtained a COVID-19 vaccine." Amended Complaint, ¶133. The agreement provides a process applicable to DC37-represented FDNY employees who sought a religious and/or medical exemption from the DOE's "mandatory vaccination policy," and addressed the status of employees who did not comply with the policy. Amended Complaint, Exhibit B. By its terms, the agreement required employees seeking an



exemption from the policy to follow a set process and adhere to specific deadlines. Under the agreement, employees who received an exemption had certain rights, and employees who were denied an exemption and/or who did not seek an exemption had certain more limited rights. However, the agreement is tied entirely to the now rescinded vaccination requirement – it set up a process that applied only to adjudicating employee and FDNY rights and obligations vis-à-vis the City's now rescinded mandatory vaccination policy. See, generally, Exhibit B.

"A case is moot when the issues presented are no longer live." *Tann v. Bennett*, 807 F.3d 51, 52 (2d Cir. 2015). Where a challenged government policy has expired, or is no longer in effect, a claim seeking non-monetary relief as to that policy is moot. *Hawaii v. Trump*, 138 S. Ct. 377 (Mem.) (2017).

A defendant who argues that a claim against it is moot because it stopped doing what plaintiffs challenge "bears a heavy burden" of showing that the "allegedly wrongful behavior could not reasonably be expected to recur." *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007). Claims arising out of rescinded COVID-related policies are moot where a court cannot grant any relief on the claim, and a claim for attorneys' fees does not rescue such a claim from dismissal as moot. *Clark v. Governor of New Jersey*, 53 F. 4th 769, 776-777 (3d Cir. 2022). Such a claim will be found moot unless plaintiffs establish that "the same precise situation – the pandemic such as it presented itself in 2020 and 2021 – [is likely to] … occur again." Id. In *Connecticut Citizens Defense League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021), the Second Circuit rejected as "speculative" the likelihood that the state would reimpose restrictions on fingerprinting needed to obtain a gun permit "in view of the mitigation measures that have become available to combat the spread of COVID, and the providential infrequency of pandemics." Id. Thus, mere speculation that the rescinded policy will be reimposed will not, absent more, rescue a claim challenging the rescinded policy from being dismissed as moot.

Here, the second claim attacks the validity of an agreement that addresses only how employees seek exemptions to the now-rescinded vaccine mandate policy and the rights of employees who did not comply with that policy. As the policy giving rise to count four has been "wiped away," count two's claim for declaratory relief is moot. *Boston Bit Labs, Inc. v. Baker*, 11 F.4th 3, 9 (1st Cir. 2021). And, plaintiffs cannot show that the policy is likely to be reimposed, in light of the availability of additional measures to deal with COVID and the fact that almost 100% of the City's workforce is vaccinated. Finally, the mere fact that the City may retain authority to reimpose a vaccine mandate does not change the result. *Boston Bit Labs,* 11 F.4th at 10 ("That the Governor has the power to issue executive orders cannot itself be enough to skirt mootness, because then no suit against the government would ever be moot. And we know some are.").

In sum: counts five and six are not moot, as they seek money damages, while count two is moot, as it seeks only a declaration as to an agreement that dealt only with a rescinded policy.

Respectfully submitted,

*/s/ Hanan B. Kolko*

Hanan B. Kolko

cc: All Counsel, via ECF

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

John GARLAND, et al.,

*Plaintiff*,

v.

CITY OF NEW YORK, et al.,

*Defendants*.

------------------------------------X

**MEMORANDUM & ORDER**

21-cv-6586(KAM)(CLP)

**KIYO A. MATSUMOTO, United States District Judge:**

Named Plaintiffs, employees of the New York City Fire Department ("FDNY")[1], commenced this action on November 24, 2021, against the City of New York, then-FDNY Commissioner Daniel A. Nigro, and unnamed John and Jane Does (collectively, "City Defendants"). (ECF No. 1, Complaint ("Compl.").) Defendants were responsible for implementing and enforcing the City's COVID-19 vaccination mandate ("Vaccine Mandate") covering all City employees, as detailed in an October 20, 2021 order issued by the Commissioner of Health ("COH Order") requiring all City employees to provide documentation of at least a first dose of a COVID-19 vaccine by October 29, 2021 or be "excluded from the premises at which they work[ed] beginning on November 1, 2021." (ECF No. 15-1, Exhibit A ("Ex. A") at 3.) The day after the COH Order was

---

[1] Named Plaintiffs include FDNY officers, firefighters, and employees of the Emergency Medical Service ("EMS"). (ECF No. 27, Amended Complaint ("Amended Compl.") at ¶¶ 1-86, 108-09.)

issued, on October 21, 2021, the FDNY issued a memorandum notifying FDNY employees about the Vaccine Mandate, the COH Order, and the procedures for FDNY employees to obtain a religious or medical accommodation ("October Memorandum").   The Vaccine Mandate was revoked by the City on February 10, 2023 and is no longer in effect.[2]

At the time the original complaint was filed on November 24, 2021, Plaintiffs had not received at least one dose of the COVID-19 vaccine, and had been suspended without pay, at least temporarily, by FDNY.[3]   (ECF No. 1, Compl. at ¶¶ 62-63, 65.) Plaintiffs sought preliminary injunctive relief and asserted that the implementation of the Vaccine Mandate and subsequent consequences violated their procedural due process rights by violating (a) their statutory rights to a specific removal process under N.Y.C. Admin. Code § 15-113 and (b) their contractual rights to a specific removal process under their applicable collective bargaining agreements ("CBA").   (*Id.* at ¶¶ 67-71, 99-109.) Plaintiffs also asserted claims under 42 U.S.C. § 1983 against

---

[2] *See* N.Y.C. Board of Health, Order Rescinding Orders Requiring COVID-19 Vaccination in Child Care and Early Intervention Programs, for Nonpublic School Staff, and for Individuals Working in Certain Child Care Programs (2023); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).").

[3] The original complaint stated that nine Plaintiffs had been "returned to pay status," but did not state if those Plaintiffs had received at least one dose of the COVID-19 vaccine.   (ECF No. 1, Compl. at ¶ 65.)   Since then, at least 27 Plaintiffs have become vaccinated and "have returned to active duty" at FDNY. (ECF No. 27, Amended Compl. at ¶ 105.)

City Defendants for violating Plaintiffs' procedural due process rights, and a claim against Defendant Nigro for his alleged participation in these violations. (*Id.* at ¶ 110-15.)

On November 24, 2021, Plaintiffs moved for a preliminary injunction to restore them to pay status and prohibit City Defendants from "disciplining" them further. (ECF No. 5, Motion for Preliminary Injunction.) After providing the parties with an opportunity to present evidence and submissions before, during, and after a show cause hearing, the Court denied Plaintiffs' motion for injunctive relief in a Memorandum and Order ("December 2021 Order") dated December 6, 2021. (ECF No. 24, Order Denying Preliminary Injunction ("December 2021 Order").)

Plaintiffs filed an amended complaint ("Amended Complaint"), adding Defendants District Council 37, AFSCME AFL-CIO ("DC37"), a union that represents FDNY's emergency medical services ("EMS") employees, and Harry Garrido, DC37's Executive Director

(collectively, "DC37 Defendants").[4] (ECF No. 27, Amended Complaint ("Amended Compl.") at ¶¶ 92-93, 120-21.)

Presently before the Court are City Defendants' motion to dismiss and DC37 Defendants' motion to dismiss. For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

The Court first reviews the factual and procedural background of the Court's December 2021 Order denying Plaintiffs' motion for a preliminary injunction. (ECF No. 24, December 2021 Order, at 3-6.) The Court also reviews the operative Amended Complaint, accepting as true for purposes of Defendants' motions the factual allegations in the complaint and drawing all reasonable inferences in Plaintiffs' favor. *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d. Cir. 2015) (internal quotation marks omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the

[4] The Court granted leave to Plaintiffs to file an amended complaint, *inter alia*, to add necessary parties. (ECF No. 24, December 2021 Order at 8; 12/14/2021 Order.) The Amended Complaint added the Uniformed Firefighters Association of Greater New York; Uniformed Fire Officers Association, Local 854 International Association of Firefighters, affiliated with the AFL-CIO; and two local affiliates of the DC37 union, District Council 37 AFSCME AFL-CIO Local 2507 and District Council 37 AFSCME AFL-CIO Local 3621. (ECF No. 24, December 2021 Order at 7; ECF No. 27, Amended Compl.) Plaintiffs stipulated to dismissals without prejudice of their claims against each of these defendants. (ECF Nos. 63-66.)

allegations contained in [an amended] complaint is inapplicable to legal conclusions.”).

**I. December 2021 Order**

In the Court’s December 2021 Order, the Court determined that because Plaintiffs requested a mandatory injunction—one that “alters the status quo by commanding a positive act”—they were required to establish a “clear” or “substantial” likelihood of success on the merits of their claims. (ECF No. 24, December 2021 Order, at 6 (citing *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citation omitted)).) The Court found that Plaintiffs failed to do so and denied injunctive relief.[5] (*Id.* at 10.)

First, as to Plaintiffs’ procedural due process claims, although Plaintiffs had a protected property interest in their pay and continued employment, the Court found that Plaintiffs had been

[5] The evidentiary record before the Court regarding Plaintiffs’ motion for injunctive relief included the following: an affidavit by Plaintiffs’ attorney Austin Graff (ECF No. 5-1); affidavits by four individual Plaintiffs who had not received at least one dose of the COVID-19 vaccine (ECF Nos. 5-2, 5-3, 5-4, 5-5); the COH Order (ECF No. 15-1); an arbitration award between the Department of Education (“DOE”) and an union of DOE employees regarding an exemption process for the Vaccine Mandate based on religious and medical requests (ECF No. 15-2); an agreement between DC37 and FDNY regarding exemption processes for the Vaccine Mandate and termination processes based on non-compliance (“DC37 Agreement”) (ECF No. 15-3; ECF No. 21-1); filings from an Article 78 proceeding initiated by an FDNY union challenging the Vaccine Mandate (ECF Nos. 15-4, 15-5); filings from an Office of Collective Bargaining (“OCB”) proceeding initiated by an FDNY union challenging the Vaccine Mandate (ECF Nos. 15-6, 15-7, 15-8); the OCB decision denying injunctive relief to the FDNY union (ECF No. 15-9); affidavits from three human resources officials at FDNY (ECF Nos. 15-10, 20-1, 20-2); and the FDNY’s October Memorandum regarding the procedures for FDNY employees to provide proof of vaccination or to obtain a religious or medical exemption (ECF No. 17-1).

provided constitutionally adequate process before being deprived of their property interests. (*Id.* at 10.) Quoting the Second Circuit's holding in *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008), the Court noted that "there is no due process violation where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." (ECF No. 24, December 2021 Order at 14-15.) The Due Process Clause would be implicated only if Plaintiffs could establish that "the grievance procedures in a collective bargaining agreement [were] an inadequate remedy," which Plaintiffs had not done. (*Id.* at 15 (quoting *Adams*, 517 F.3d at 128).)

During the show cause hearing for the preliminary injunction, the three EMS Plaintiffs who belonged to the DC37 union challenged the agreement that DC37 had negotiated with the City regarding the leave and separation procedures for City employees who did not comply with the Vaccine Mandate ("DC37 Agreement").[6] (*Id.* at 5-

[6] The DC 37 Agreement established, in relevant part: (1) the processes by which an employee could request an exemption or accommodation based on religious and/or medical grounds, and appeal an adverse determination on their request before an independent arbitration panel (while remaining on payroll and maintaining health benefits pending their request or appeal, as long as the request was made prior to 11:59 P.M. on October 27, 2021); (2) options to either voluntarily separate from service with certain compensation benefits, or elect extended LWOP status while maintaining health benefits until June 30, 2022; and (3) that as of December 1, 2021, the FDNY could seek to unilaterally separate employees who had not provided proof of vaccination, had not obtained or requested an accommodation, and had not opted for either separation option. (*See* ECF No. 21-1, Exhibit C.) The DC 37 Agreement further provided that employees who opted to extend their LWOP to June 30, 2022, could return to their positions upon demonstrating compliance with the Vaccine Mandate. (*Id.*)

6.) The Court's December 2021 Order noted that, generally, "a union member has no standing to enforce the collective bargaining agreement between their employer and union against the employer directly," but that even if the EMS Plaintiffs *had* standing, they could not show a clear or substantial likelihood of success on the merits of their procedural due process claims. (*Id.* at 8-9 (citation omitted).)

Overall, the Court concluded that "the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate." (*Id.* at 16.) The Court found the following:

> Plaintiffs received ample pre-deprivation notice, via the [October Memorandum] from Hodgens, the Chief of Operations of the FDNY, of: (1) the [COH] Order, (2) the requirement to submit proof of vaccination by October 29, 2021, (3) their ability to seek reasonable accommodation by October 27, 2021; and (4) their placement on [leave without pay] status if they failed to comply with the Order and did not submit an accommodation request by the October 27 deadline.

(*Id.* at 16-17.) Moreover, the Court found that Plaintiffs were provided with an opportunity to be heard before a final decision. (*Id.* at 17.) The opportunity to respond need not be a formal hearing. *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991). Indeed, any FDNY employees who challenged whether the Vaccine Mandate should apply to them not only "had the opportunity to seek a religious or medical accommodation," they also "remain[ed] on pay status pending the decision on their

request or appeal, so long as their accommodation requests were submitted prior to October 27, 2021." (ECF No. 24, December 2021 Order at 17.) This Court found that the only reason that the vast majority of named Plaintiffs had been suspended without pay was because they requested an accommodation too late. (*Id.* at 17.) Therefore, Plaintiffs could not claim that they were deprived of due process simply by "not having availed themselves of the pre-deprivation opportunity to be heard." (*Id.* at 18.)

The Court also concluded that there were sufficient post-deprivation procedures to establish constitutionally adequate process. (*Id.*) Any FDNY employee granted an accommodation would be restored to payroll and provided back pay, and there was an appeal process for any employee whose reasonable accommodation request was denied. (*Id.*) The Court further found that FDNY employees also had other avenues to challenge the Vaccine Mandate and the COH Order, including through an Article 78 Proceeding in New York State Supreme Court. (*Id.* at 20 (citing *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy.")).)

Second, because "[f]ederal constitutional standards rather than state statutes define the requirements of procedural due process," the Court found that it did not need to consider whether state or municipal procedural law, such as N.Y.C. Admin. Code §

15-113, was correctly followed or applied. (ECF No. 24, December 2021 Order, at 10-11 (quoting *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987)).) Nevertheless, the Court concluded that § 15-113 was irrelevant to determining adequate process for FDNY employees because (1) the Second Circuit had held that the Vaccine Mandate was a condition of employment (albeit in the healthcare context); and (2) "the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency [did] not implicate the disciplinary procedures set forth section 15-113." (*Id.* at 11, 13-14.)

Accordingly, the Court denied Plaintiffs' motion for a preliminary injunction.

**II. The Operative Amended Complaint**

Following the Court's denial of Plaintiffs' preliminary injunction motion, Plaintiffs filed an Amended Complaint on January 5, 2022, adding the DC37 Defendants. (ECF No. 27, Am. Compl.) In the operative Amended Complaint, Plaintiffs assert primarily the same causes of action as in the original complaint, adding only (1) a request for the Court to issue a declaratory judgment that the DC37 Agreement "was entered into without any contractual authority" and therefore the Plaintiffs' suspension without pay violated their due process rights, and (2) a § 1983 conspiracy claim based on the DC37 Agreement between FDNY and DC37.

(*Id.* at ¶¶ 186, 238.) Plaintiffs' Amended Complaint also adds several allegations related to the DC37 Agreement, including that (1) "[p]ursuant to the Taylor Law (N.Y. Civil Service Law § 200, *et. seq*.), [the City] was required to bargain with its unions [about] the impact of the Vaccine Mandate . . ."; (2) "DC37 entered into an agreement with [the City] regarding the impact of the Vaccine Mandate, which provides that on or after December 1, 2021, [the City] may unilaterally separate DC37 members from their employment with the FDNY if the members have not obtained a COVID-19 vaccine"; and (3) the DC37 Agreement "authorized [the City] to suspend without pay the members of DC37 who did not take a COVID vaccine." (*Id.* at ¶¶ 129, 133-43.)

The Amended Complaint also includes new factual allegations related to the reasonable accommodation and appeals process. (*Id.* at ¶¶ 144-50.) The Amended Complaint alleges that as "part of [the City's] implementation of the Vaccine Mandate," the City "offered those FDNY employees who have either a medical or religious reasons for not taking a vaccine an opportunity to seek a reasonable accommodation to exempt the employee from the Vaccine Mandate." (*Id.* at ¶ 144.) Plaintiffs allege in the Amended Complaint that seventy-seven out of the eighty-six total Plaintiffs have requested a medical or religious accommodation to be exempt from the Vaccine Mandate; seventy-one Plaintiffs have been denied and six were awaiting an initial determination; thirty-

seven Plaintiffs have appealed the denial of their request for a reasonable accommodation; and one Plaintiff's appeal has been denied, while thirty-six are awaiting a decision. (*Id.*)

Finally, the Amended Complaint contains two exhibits: the COH Order, Exhibit A, and the DC37 Agreement, Exhibit B.[7] (ECF No. 27-1, Ex. A; ECF No. 27-2, Exhibit B.) Given that the Amended Complaint discusses the FDNY's reasonable accommodation policy at relative length, the Court also determines that the FDNY's October Memorandum regarding the procedures for FDNY employees to obtain a religious or medical accommodation—which was submitted by Plaintiffs to the Court prior to the show cause hearing—is "integral" to the Amended Complaint. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (a court may "consider [a document] where the [amended] complaint relies heavily upon its terms and effect, thereby rendering the document integral to the [amended] complaint" (internal quotation marks omitted)). "Even where a document is deemed 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* at 231 (internal quotation marks omitted). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the

[7] Although Plaintiffs submitted the DC37 Agreement as Exhibit B in the Amended Complaint, Plaintiffs later filed a letter stating that they incorrectly filed the wrong agreement and attaching a corrected Exhibit B. (ECF No. 27-2, Exhibit B; ECF No. 62, Letter; ECF No. 62-1, Corrected Exhibit B.)

document . . . [because of] a concern that a plaintiff may lack notice that the material will be considered." *Id.* (internal quotation marks omitted).

Here, Plaintiffs' Amended Complaint alleges that there was a process for seeking reasonable accommodations from the Vaccine Mandate and discusses the number of Plaintiffs at various stages of the process; FDNY employees were notified of that process as provided in the FDNY's October Memorandum. Indeed, Plaintiffs' opposition to Defendants' motions to dismiss relies heavily on the FDNY's October Memorandum and argues that it was improperly imposed, thus causing a procedural due process violation. *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (documents are "integral" where plaintiff had to rely on their content "to explain what the actual unlawful course of conduct was on which the [d]efendants embarked"); (ECF No. 73, Plaintiffs' Mem. at 9-10.) The Court finds that the October Memorandum is integral to the Amended Complaint because Plaintiffs' allegations and opposition to Defendants' motions to dismiss rely on and relate to the document, thus establishing that Plaintiffs do not challenge its authenticity, accuracy or relevance. (ECF No. 73, Plaintiffs' Mem. at 2-4, 8-10.) Additionally, Plaintiffs submitted the October Memorandum to the Court before the show cause hearing on Plaintiffs' motion for a preliminary injunction, and it was discussed extensively at the

hearing and in the Court's December 2021 Order denying the motion for a preliminary injunction.  (ECF Nos. 17-1, 24.)  Accordingly, the Court concludes that the FDNY's October Memorandum is "integral" to the Amended Complaint.

**III. Defendants' Motions to Dismiss**

On June 13, 2022, City Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (ECF No. 68, City Defendants' Motion; ECF No. 69, City Defendants' Memorandum in Support; ECF No. 75, City Defendants' Reply.)  On June 14, 2022, DC37 Defendants also moved to dismiss under Rule 12(b)(6) for failure to state a claim. (ECF No. 71, DC37 Defendants' Motion; ECF No. 72, DC37 Defendants' Memorandum in Support; ECF No. 74, DC37 Defendants' Reply.)

On September 28, 2022, Plaintiffs filed for leave to provide supplemental briefing or amend their memorandum in opposition brief to Defendants' motions to dismiss regarding a recent New York Supreme Court decision about the Vaccine Mandate.  (ECF No. 77, Motion to Amend.)  City Defendants opposed.  (ECF No. 78, Response.)  On October 3, 2022, the Court denied Plaintiffs' motion, explaining that the Court would review all relevant case law in rendering its decision.  (10/03/2022 Order.)  On October 10, 2022, Plaintiffs filed a second motion to amend or supplement their briefing regarding an Office of Collective Bargaining ("OCB") decision about the Vaccine Mandate.  (ECF No. 79, Second

Motion.) The Court again denied Plaintiffs' motion, for the same reasons. (10/13/2022 Order.) On October 25, 2022, Plaintiffs filed a third motion to amend or supplement their briefing, regarding another New York Supreme Court decision about the Vaccine Mandate. (ECF No. 82, Third Motion.) The Court again denied Plaintiffs' motion. (10/26/2022 Order.)

On February 13, 2023, in light of the City's announcement that it had discontinued the Vaccine Mandate for City employees on February 10, 2023, the parties were ordered to advise the Court of their respective views as to which issues in the instant action, if any, were mooted, and which issues subsisted. (02/13/2023 Order.) The parties responded, all acknowledging that some live issues remained, given that employees who had been suspended or terminated for failure to show proof of vaccination would not be automatically reinstated to their prior positions with back pay. (ECF Nos. 84; 85; 86.)

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

conduct alleged." *Id.* When considering a motion to dismiss under Rule 12(b)(6), a district court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Pollok v. Chen*, 806 F. App'x 40, 44 (2d Cir. 2020) (summary order) (citation omitted).

In considering a 12(b)(6) motion, the court may refer to "documents attached to [the complaint] or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken." *Grant v. Cnty. of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) (summary order); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (clarifying that "*reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice of possession is not enough." (emphasis in original)). "[A] district court may [also] rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[.]" *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

## DISCUSSION

### I. Declaratory Judgment and Injunctive Relief

In Plaintiffs' Amended Complaint, the first and second "causes of action" request a declaratory judgment, presumably under the Declaratory Judgment Act ("DJA"), and the "third cause of action" requests injunctive relief. (ECF No. 27, Amended

Compl.) The DJA "provides a remedy, not a cause of action." *KM Enters., Inc. v. McDonald*, No. 11-CV-5098 (ADS) (ETB), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013). "Similarly to declaratory relief, a request for injunctive relief is not a separate cause of action." *Id.* at *20 (alteration and internal quotation marks omitted); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y.2010) ("Declaratory judgments and injunctions are remedies, not causes of action.") Because Plaintiffs' first, second, and third "causes of action" request remedies, rather than plead a separate claim, the first, second, and third "causes of action" are dismissed for failure to state a claim.

**II. Procedural Due Process Claims**

A procedural due process claim requires a plaintiff to establish that (1) he or she possesses a protected liberty or property interest, and (2) was deprived of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). Pre-deprivation processes "need not be elaborate," and the Constitution "mandates only that such process include, at a minimum, notice and the

opportunity to respond." *O'Connor*, 426 F.3d at 198 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).

Defendants argue that the law of the case doctrine precludes re-litigation of Plaintiffs' procedural due process claims, in light of the Court's comprehensive December 2021 Order denying a preliminary injunction. (ECF No. 69, City Defendants' Memorandum in Support, at 8-12.) The law of the case doctrine holds that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case,' unless 'cogent' and 'compelling' reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (emphasis added) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). The Court notes, however, that the "preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment." *Goodheart Clothing Co., Inc. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 274 (2d Cir. 1992). The Court also acknowledges that "[a] party . . . is not required to prove [their] case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary

injunction are not binding at a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted).

The Court need not decide here whether the law of the case doctrine applies to prevent this Court's reconsideration of the factual and legal issues discussed in its December 2021 Order denying Plaintiffs' motion for a preliminary injunction. *Cf. Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021) (the law-of-the-case doctrine is "discretionary and does not limit a court's power to reconsider its own decision prior to final judgment" (quoting V*irgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))). As discussed below, however, the Court finds that (1) the Amended Complaint's factual allegations, which are mostly conclusory, add little to Plaintiffs' prior allegations; and (2) the legal analysis for the preliminary injunction in the December 2021 Order sufficiently overlaps with the issues—based on the current factual allegations and the asserted claims—before the Court on the instant motions to dismiss such that the Court reviews its prior analysis in assessing Plaintiffs' current claims. For the reasons set forth below, the Court concludes that Plaintiffs' Amended Complaint fails to state plausible procedural due process claims.

**a. Repeated and Conclusory Factual Allegations**

First, Plaintiffs' Amended Complaint, although filed after the Court's December 2021 Order denying the Plaintiffs' motion for

a preliminary injunction, adds very few new facts to the complaint before the Court in its December 2021 Order denying a preliminary injunction. The Amended Complaint adds additional Plaintiffs and the DC37 Defendants, and provides updates as to each Plaintiff's vaccination status and the status of seventy-seven of the Plaintiffs' reasonable accommodation requests. (ECF No. 27, Amended Compl. at ¶¶ 92-93, 144-50.) Unlike the original complaint, however, the Amended Complaint acknowledges that "[a]s part of [the City's] implementation of the Vaccine Mandate," the City "offered those FDNY employees who have either a medical or religious reasons for not taking a vaccine an opportunity to seek a reasonable accommodation to exempt the employee from the Vaccine Mandate." (*Id.* at ¶ 144.) As noted previously, the Court also determines that the FDNY's October Memorandum describing accommodation procedures is "integral" to the Amended Complaint. *Nicosia*, 834 F.3d at 230.

The Amended Complaint also includes ostensibly new factual allegations regarding the DC37 Agreement to support Plaintiffs' claim that the DC37 Agreement violated Plaintiffs' due process rights. (*Id.* at §§ 129, 133-43.) Plaintiffs' allegations concerning the DC37 Defendants and the DC37 Agreement, however, are all legal conclusions devoid of specific facts: e.g., "DC37 conspired with [the City] by entering into an agreement . . . that violated the DC37 members-Plaintiffs' constitutional rights."

(*Id.* at ¶ 138.) Courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted). Indeed, the only non-conclusory allegations in the Amended Complaint concerning the DC37 Agreement are the following: (1) "DC37 entered into an agreement . . . regarding the impact of the Vaccine Mandate, which provides that on or after December 1, 2021, [the City] may unilaterally separate DC37 members from their employment with the FDNY if the members have not obtained a COVID-19 vaccine"; and (2) "DC37's Agreement with [the City] authorized [the City] to suspend without pay the members of DC37 who did not take a COVID vaccine." (ECF No. 27, Amended Compl. at ¶¶ 133, 134.)

Therefore, the factual allegations currently before the Court, although less than the full evidentiary record before the Court in its December 2021 Order denying the motion for a preliminary injunction, contain no new, non-conclusory factual allegations that would upend the Court's prior legal analysis.

**a. Repeated Claims**

Second, Plaintiffs' Amended Complaint asserts primarily the same causes of action as the original complaint and which this Court considered in the December 2021 Order. In addition to the "causes of action" for declaratory judgments and injunctive relief, discussed above, Plaintiffs now assert a § 1983 claim

against Defendants for violating their procedural due process rights; a § 1983 conspiracy claim against Defendants for conspiring to violate their procedural due process rights; and a § 1983 claim against individual Defendants Nigro, Garrido, and John and Janes Does based on "direct participation and aiding and abetting" the City's violation of Plaintiffs' due process rights. (ECF No. 27, Amended Compl. at ¶¶ 197-245.) The only new claim in the Amended Complaint is the § 1983 conspiracy claim. The underlying constitutional violation alleged in each cause of action is that Defendants violated Plaintiffs' due process rights by suspending Plaintiffs without pay if they refused to comply with the Vaccine Mandate. (*Id.*) Therefore, Plaintiffs' instant claims raise issues identical issues to the claims addressed and decided by the Court in denying the preliminary injunction. (ECF No. 24, December 2021 Order at 10-20.)

Furthermore, because Plaintiffs sought both a prohibitory and mandatory injunction in their motion for a preliminary injunction, the Court previously reviewed Plaintiffs' legal arguments under the higher pleading standard for a mandatory injunction. The Court found that Plaintiffs failed to satisfy the standard for a mandatory injunction by demonstrating a "clear" or "substantial" likelihood of success on the merits of their procedural due process claims, rather than merely a likelihood of success. (*See* ECF No. 5-8, Plaintiffs' Preliminary Injunction Memorandum at 4); *see also*

*Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (plaintiffs seeking a mandatory injunction must meet higher standard and must show a "clear" or "substantial" likelihood of success on the merits); *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (where the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits.").

Having reviewed Plaintiffs' procedural due process allegations at length—and now examining any well-pleaded factual allegations in the Amended Complaint, exhibits, and incorporated or integral documents—the Court concludes on the merits that "the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate," and, therefore, Plaintiffs' Amended Complaint fails to state a claim and must be dismissed. (ECF No. 24, December 2021 Order, at 16). Plaintiffs received ample pre-deprivation notice of procedures regarding the Vaccine Mandate, via the FDNY's October Memorandum informing FDNY employees about (1) the COH order; (2) the requirement to submit proof of vaccination by October 29, 2021; (3) the ability to seek reasonable accommodation and be exempted from the Vaccine Mandate by October 27, 2021; and (4) the placement of non-compliant employees on [leave without pay] status if they failed to comply

with the COH Order and did not submit an accommodation request by the October 27 deadline. (ECF No. 17-1, October 21, 2021 Memorandum ("Oct. Mem.") at 4, 15; ECF No. 27, Amended Compl. at ¶ 144.)

Further, accepting all well-pleaded factual allegations as true for purposes of Defendants' motions to dismiss, Plaintiffs were provided with an opportunity to be heard prior to a final decision. The opportunity to respond need not be a formal hearing. *Ezekwo,* 940 F.2d at 786. Here, as acknowledged in the Amended Complaint, any FDNY employee who challenged whether the Vaccine Mandate should apply to them had the opportunity to seek a religious or medical accommodation through an exemption to the Vaccine Mandate. (ECF No. 27, Amended Compl. at ¶ 144.) Indeed, the COH Order itself stated, in plain language, that it should not be "construed to prohibit any reasonable accommodation otherwise required by law." (ECF 27. 125-1, Ex. A.) And any FDNY employees who submitted reasonable accommodation requests before the October 27, 2021 deadline were *not* suspended without pay: only employees who sought reasonable accommodation after October 27, 2021 were placed on leave without pay while awaiting a reasonable accommodation decision. (ECF No. 17-1, Oct. Mem. at 4, 16-17, 24-25.) In addition to the above process, DC37 Plaintiffs had access to additional time to seek an accommodation beyond the October 27

deadline—through November 5, 2021—as a result of the DC37 Agreement. (ECF No. 62-1, Corrected Exhibit B, at 2.)

The Court finds that the post-deprivation procedures were constitutionally adequate. The City required that any denial of a reasonable accommodation request "must provide written information to the employee whose request has been denied and include a link to . . . [the City's] online appeals request portal." (ECF No. 17-4, Oct. Mem. at 25.) Any employee who was denied a reasonable accommodation could file an appeal within three days. (*Id.*) If an appeal was denied, the employee was required to submit proof of the first dose of a COVID-19 vaccine within three business days and, if required, of the second dose within 45 days. (*Id.*) If the employee refused to be vaccinated within the given timeframe after the appeal was denied, the employee would remain on LWOP status. (*Id.*) Finally, Plaintiffs had other post-deprivation avenues, such as an Article 78 proceeding, to address the COH Order and subsequent consequences. *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881 ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy."). Accordingly, the Court concludes, on the merits, that Defendants provided constitutionally sufficient pre-deprivation and post-

deprivation process, and that Plaintiffs fail to state a procedural due process claim.

**a. Intervening Law**

Moreover, although the Court decides the instant motions to dismiss on the basis of Plaintiffs' Amended Complaint and attached and integral exhibits, the Court notes that there has been no change in intervening law since the Court's December 2021 Order finding that Plaintiffs procedural due process rights were not violated, despite a substantial amount of litigation concerning the Vaccine Mandate.[8] *See, e.g.*, *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436 (E.D.N.Y. Mar. 8, 2022) (plaintiff received

[8] The Court's procedural due process findings are not based on the process required by state or municipal statutes. Moreover, there has not been a substantial change in intervening law concerning this Court's finding that the Vaccine Mandate was a condition of employment. *See Andre-Rodney v. Hochul*, No. 21-cv-1053 (BKS)(CFH), 2022 WL 3027094 (N.D.N.Y. Aug. 1, 2022) (vaccine was condition of employment for healthcare workers); *D'Cunha v. Northwell Health Sys.*, No. 22-cv-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023) (same); *Commey*, 2022 WL 3286548 (finding vaccination to be condition of employment for porter); *Kane*, 2022 WL 3701183 (vaccine was condition of employment); *Marciano*, 589 F. Supp. 3d at 436 (same). Although—as Plaintiffs noted in their third request to supplement their memorandum of law in opposition to Defendants' motions to dismiss (ECF No. 81)—one New York Supreme Court judge has found that the Vaccine Mandate was not a condition of employment, nearly all other New York state courts to address the issue have found that the Vaccine Mandate was a condition of employment. *Compare Garvey v. City of New York*, 77 Misc. 3d 585 (N.Y. Sup. Ct., Richmond Cnty., Oct. 24, 2022) (finding mandate was not a condition of employment), *with Clarke v. Bd. of Educ. of City School*, No. 160787/21, 2023 WL 2124546 (N.Y. App. Div. 1st Dep't, Feb. 21, 2023) (finding mandate was a condition of employment); *N.Y.C. Mun. Labor Comm. v. City of N.Y.*, 2022 NY Slip Op. 22121 (Apr. 21, 2022 N. Y. Sup. Ct.) (same); *O'Reilly v. Bd. of Educ. of City School District of City of New York*, No. 16104/21, 2023 WL 2124731, at *1 (N.Y. 1st Dep't, Feb. 21, 2023) (same). Plaintiffs argued in their first and second requests to amend their briefing that another New York Supreme Court judge and the OCB have found that although the Vaccine Mandate *could* be a condition of employment, it was improperly imposed under municipal law. (ECF Nos. 77, 79.) As discussed extensively below, however, the Court bases its procedural due process finding on constitutional standards, not on state or municipal standards.

constitutionally sufficient minimum process for NYPD vaccine policy); *Kane v. de Blasio*, No. 21-cv-7863 (NRB), 2022 WL 3701183, at *12 (S.D.N.Y. Aug. 26, 2022)(constitutionally sufficient minimum process was provided for DOE workers); *cf. Donohue v. Hochul*, No. 21-CV-8463 (JPO), 2022 WL 673636, at *7 (S.D.N.Y. Mar. 7, 2022) (public-school mask mandate did not implicate procedural due process concerns); *Commey v. Adams*, No. 22-CV-0018 (RA), 2022 WL 3286548, at *6 (S.D.N.Y. Aug. 11, 2022) (no procedural due process concerns because mandate was legislative in nature); *Collins v. City Univ. of New York*, No. 21-cv-9544 (NRB), 2023 WL 1818547, at *10 (S.D.N.Y. Feb. 8, 2023) (same); *Mongielo v. Hochul*, No. 22-CV-116-LJV, 2023 WL 2307887, at *17 (W.D.N.Y. Mar. 1, 2023) (same).

**III. Plaintiffs' Opposition to the Motion to Dismiss**

In their opposition to Defendants' motions to dismiss, Plaintiffs' central argument is that, contrary to the findings in the Court's December 2021 Order, the Vaccine Mandate was not a condition of employment, and thus Defendants' COH Order suspending Plaintiffs without pay violated Plaintiffs' procedural due process rights.[9] (ECF No. 73, Plaintiffs' Mem. at 12-13, 19-21.) In

[9] Plaintiffs also argue that Defendants violated New York City Charter Section 487(a) when the FDNY issued the October Memorandum concerning the City's newly imposed Vaccine Mandate. (ECF No. 73, Plaintiffs' Mem. at 9.) New Yokr City Charter Section 487(a) provides that the FDNY Commissioner "shall have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire department and the premises and property in the custody thereof." N.Y.C. Charter § 487(a). Plaintiffs argue, circularly, that because the Chief of Operations of the FDNY John

their opposition, Plaintiffs assert several arguments in support
of their claim that the Vaccine Mandate was not a condition of
employment: they first contend that because City Defendants failed
to negotiate and bargain with FDNY unions concerning the new
condition of employment, which Plaintiffs contend is required
under New York Civil Service Law Section 201.4, the Vaccine Mandate
was invalidly imposed. (*Id.* at 12.) Plaintiffs also argue that,
even though the FDNY *did* bargain and negotiate with DC37 concerning
the Vaccine Mandate, the resulting DC37 Agreement was never
ratified by DC37's union members. (*Id.* at 14-16.) Plaintiffs
assert that under New York City Admin. Code Section 12-307(a)(4),
the DC37 Agreement could not amend the existing procedures of
DC37's collective bargaining agreement without ratification by its
members. (*Id.* at 14-16.) They contend that the DC37 Agreement
was invalid, meaning that the Vaccine Mandate could not become a
condition of employment as to the DC37 member-Plaintiffs. (*Id.*)
In other words, Plaintiffs premise their due process claims on the

---

Hodgens, rather than FDNY Commissioner Nigro, circulated the FDNY's October
Memorandum alerting FDNY employees as to City's newly imposed Vaccine Mandate,
the Vaccine Mandate was issued in violation of § 487(a) and was invalid. (ECF
No. 73, Plaintiffs' Mem. at 9-10.) Plaintiffs confuse the Vaccine Mandate (the
City's vaccine requirement); the COH Order (the order from the Commissioner of
Health imposing the Vaccine Mandate); and the FDNY's October Memorandum (the
memorandum informing FDNY employees about the Vaccine Mandate. (*See* ECF NO.
17-1.) Plaintiffs' argument is frivolous on its face, as the logical inference
that Plaintiffs urge the Court to draw is that the FDNY Commissioner's name
must be on every memorandum issued to FDNY employees or the memorandum will
violate § 487(a). (*Id.*; ECF No. 73, Plaintiffs' Mem. at 9.) In any case,
because the Court looks to "federal constitutional standards rather than state
[or local] statutes" to define the requirements of procedural due process, as
discussed above, Plaintiffs' argument is meritless. *Robison*, 821 F.2d at 923.

assertion that (1) Defendants failed to follow state and municipal procedural requirements in imposing the Vaccine Mandate; (2) the Vaccine Mandate therefore was not a condition of employment; (3) if the Vaccine Mandate is not a condition of employment, the COH Order is invalid; and thus (4) Defendants' suspension of Plaintiffs without pay violated Plaintiffs' procedural due process. (*Id.* at 12-16.)

As the Court has repeatedly stated, however, "the Court looks to federal constitutional standards rather than state statutes to define the requirements of procedural due process." (ECF No. 24, December 2021 Order, at 10-11 (citing *Robison*, 821 F.2d at 923).) Courts repeatedly have held that state statutes do not determine constitutional due process requirements. *See, e.g.*, *Loudermill*, 470 U.S. at 541 ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute."); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires." (internal quotation marks omitted)); *cf. Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) ("[C]ases from both the Supreme Court and our Court make clear that the federal procedural due process

guarantee does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law.”). Indeed, the Second Circuit recently reiterated that a district court failed to properly assess whether a defendant’s conduct violated the procedural guarantees of the Due Process Clause where the court examined the due process claim exclusively by assessing a defendant’s failure to comply with state law. *See Tooly v. Schwaller*, 919 F.3d 165, 172-73 (2d Cir. 2019) (“[V]iolation of state law does not *per se* result in a violation of the Due Process Clause”).

Thus, to the extent that Plaintiffs base their procedural due process claims solely on alleged violations of state and municipal law, as noted above, their claims fail. *See McDarby v. Dinkins*, 907 F.2d 1334, 1337–38 (2d Cir. 1990) (“When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations.”); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.1987) (“State procedural requirements do not establish federal constitutional rights. At most, any violation of state procedural requirements would create liability under state law.” (citations omitted)). Plaintiffs provide no facts or law supporting a contrary argument, and Plaintiffs cannot add news facts at this stage. As discussed above, Plaintiffs conclusorily argue that

they were suspended without due process. (ECF No. 73, Plaintiffs' Mem. at 20 ("If the Vaccine Mandate is not a condition of employment for FDNY employees, then, the City Defendants had no legal right or authority to suspend the Plaintiffs without pay without due process.").) The allegations in the Amended Complaint—establishing that Defendants provided notice and an opportunity to seek accommodations via exemptions—satisfy due process. Accordingly, because the Court has found that there was constitutionally sufficient process, Plaintiffs' procedural due process claims—the § 1983 claim against all Defendants and the § 1983 claim for "direct participation and aiding and abetting" against individual Defendants—are dismissed for failure to state a claim.

**IV. Other Causes of Action**

**a. Section 1983 Conspiracy**

Having dismissed Plaintiffs' claim that Defendants violated their due process rights, the Court also finds that Plaintiffs' allegations are insufficient to state a plausible § 1983 conspiracy claim against Defendants. "To state a § 1983 conspiracy claim, a plaintiff must allege (1) an agreement between two or more state actors, (2) 'to act in concert to inflict unconstitutional injury,' and (3) 'an overt act done in furtherance of that goal causing damages.'" *Barnes v. Abdullah*, No. 11-CV-8168, 2013 WL 3816586, at *9 (S.D.N.Y. July 22, 2013) (quoting *Ciambriello*, 292 F.3d at

324-25); *Sibiski v. Cuomo*, No. 08-CV-3376, 2010 WL 3984706, at *6 (E.D.N.Y. Sept. 15, 2010) (citing same). Notably, "[v]ague and conclusory allegations that defendants have engaged in a conspiracy to violate plaintiff's constitutional rights must be dismissed." *Poole v. New York*, No. 11-CV-921, 2012 WL 727206, at *6 (E.D.N.Y. Mar. 6, 2012); *see also Krug v. McNally*, 368 F. App'x 269, 270 (2d Cir. 2010) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (alteration in original) (internal quotation marks omitted)). Plaintiff "must allege . . . overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Elmasri v. England*, 111 F. Supp. 2d 212, 218 (E.D.N.Y. 2000) (internal quotation marks omitted.)

Plaintiffs fail to state a § 1983 conspiracy claim. As detailed above, Plaintiffs fail to state an underlying procedural due process claim. Therefore, Plaintiffs' § 1983 conspiracy claim fails as a matter of law. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (a § 1983 conspiracy claim "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right"); *see also AK*

*Tournament Play, Inc. v. Town of Wallkill*, No. 09-CV-10579, 2011 WL 197216, at *4 (S.D.N.Y. Jan. 19, 2011) ("Plaintiffs' § 1983 conspiracy claims against all Defendants must be dismissed because Plaintiffs have failed to allege any violation of any cognizable constitutional right."), *aff'd*, 444 F. App'x 475 (2d Cir. 2011) (summary order); *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. Mar. 24, 2011) ("[A] § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation.").

Additionally, Plaintiffs do not proffer any nonconclusory facts regarding the nature of the conspiracy, Defendants' membership in the conspiracy, or the overt steps taken by any of the Defendants in furtherance of that conspiracy. Apart from "diffuse and expansive allegations" that are not "amplified by specific instances of misconduct," *Krug*, 368 F. App'x at 270 (internal quotation marks omitted), the Amended Complaint is bereft of any facts sufficient to give rise to a plausible § 1983 conspiracy claim. In fact, the Amended Complaint merely refers to a conspiracy based on Plaintiffs' vague and conclusory assertions that "[DC37 Defendants] conspired with [City Defendants] by entering into an agreement with [the City] that violated the DC3 7 members-Plaintiffs' constitutional rights" and "[a]s a result of the conspiracy between [DC37 Defendants] and [City Defendants], the DC37 members-Plaintiffs' constitutional rights have been

violated." (ECF No. 27, Amended Compl. ¶¶ 134-143, 216-239.) Plaintiffs' bald allegations, however, do not give rise to a plausible inference that Defendants acted in concert to violate Plaintiffs' constitutional rights. The allegations "constitute the type of vague, conclusory, and general allegations that, standing alone, are routinely found lacking under Rule 12(b)(6)." *Orr ex rel. Orr v. Miller Place Union Free Sch. Dist.*, No. 07-CV-787, 2008 WL 2716787, at *5 (E.D.N.Y. July 9, 2008) (internal quotation marks omitted). Accordingly, Plaintiffs' § 1983 conspiracy claim is dismissed for failure to state a claim.

**a. Class Claim**

Because Plaintiffs fail to state a claim, their class allegations also fail. *Cf. Xuedan Wang v. Hearst Corp.*, No. 12-CV-793 (HB), 2013 WL 105784, at *3 (S.D.N.Y. Jan. 9, 2013) (noting that where court dismissed a claim under Rule 12(c), motion to strike class allegations could be granted as to that claim.)

**V. Leave to Amend**

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires." Therefore, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). A court may, however, dismiss claims without leave to amend where the proposed amendments would be futile. *See Ruotolo*

*v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 381 U.S. 178, 182 (1962)). An amendment to the complaint is futile if the "proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002), abrogated on other grounds by *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019). Leave to amend may also be denied where previous amendments have not cured the complaint's deficiencies. *Ruotolo*, 514 F.3d at 184 (citing *Foman*, 381 U.S. at 182); *see also DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim." (collecting cases)).

Here, after extensive briefing, evidentiary submissions, and a show cause hearing, the Court allowed Plaintiffs an opportunity to amend their complaint. (ECF No. 24, December 2021 Order at 8; ECF No. 27, Amended Compl.) Despite the Court's detailed analysis of Plaintiffs' factual allegations and claims in its December 2021 Order, Plaintiffs have again failed to allege facts supporting their claims. Under these circumstances, and because further amendments to the complaint would not cure the deficiencies discussed in this opinion, any amendment would be futile. Therefore, Plaintiffs' complaint is dismissed with prejudice. *See, e.g.*, *Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277

F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (stating that the district court did not abuse its discretion in not *sua sponte* granting leave to amend following dismissal of the complaint where plaintiff "had already amended its complaint once, and any amendment would have been futile").

**CONCLUSION**

For the reasons set forth above, City Defendants' Motion to Dismiss and DC37 Defendants' Motion to Dismiss are GRANTED in their entirety and leave to amend is DENIED. The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED.**

Dated: March 29, 2023
Brooklyn, New York

Hon. Kiyo A. Matsumoto
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X

John GARLAND, et al.,

*Plaintiff*,

v.

CITY OF NEW YORK, et al.,

*Defendants*.

-----------------------------------X

**MEMORANDUM & ORDER**

21-cv-6586(KAM)(CLP)

**KIYO A. MATSUMOTO, United States District Judge:**

Named Plaintiffs, employees of the New York City Fire Department ("FDNY")[1], commenced this action on November 24, 2021, against the City of New York, then-FDNY Commissioner Daniel A. Nigro, and unnamed John and Jane Does (collectively, "City Defendants"). (ECF No. 1, Complaint ("Compl.").) Defendants were responsible for implementing and enforcing the City's COVID-19 vaccination mandate ("Vaccine Mandate") covering all City employees, as detailed in an October 20, 2021 order issued by the Commissioner of Health ("COH Order") requiring all City employees to provide documentation of at least a first dose of a COVID-19 vaccine by October 29, 2021 or be "excluded from the premises at which they work[ed] beginning on November 1, 2021." (ECF No. 15-1, Exhibit A ("Ex. A") at 3.) The day after the COH Order was

[1] Named Plaintiffs include FDNY officers, firefighters, and employees of the Emergency Medical Service ("EMS"). (ECF No. 27, Amended Complaint ("Amended Compl.") at ¶¶ 1-86, 108-09.)

issued, on October 21, 2021, the FDNY issued a memorandum notifying FDNY employees about the Vaccine Mandate, the COH Order, and the procedures for FDNY employees to obtain a religious or medical accommodation ("October Memorandum"). The Vaccine Mandate was revoked by the City on February 10, 2023 and is no longer in effect.[2]

At the time the original complaint was filed on November 24, 2021, Plaintiffs had not received at least one dose of the COVID-19 vaccine, and had been suspended without pay, at least temporarily, by FDNY.[3] (ECF No. 1, Compl. at ¶¶ 62-63, 65.) Plaintiffs sought preliminary injunctive relief and asserted that the implementation of the Vaccine Mandate and subsequent consequences violated their procedural due process rights by violating (a) their statutory rights to a specific removal process under N.Y.C. Admin. Code § 15-113 and (b) their contractual rights to a specific removal process under their applicable collective bargaining agreements ("CBA"). (*Id.* at ¶¶ 67-71, 99-109.) Plaintiffs also asserted claims under 42 U.S.C. § 1983 against

---

[2] *See* N.Y.C. Board of Health, Order Rescinding Orders Requiring COVID-19 Vaccination in Child Care and Early Intervention Programs, for Nonpublic School Staff, and for Individuals Working in Certain Child Care Programs (2023); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).").

[3] The original complaint stated that nine Plaintiffs had been "returned to pay status," but did not state if those Plaintiffs had received at least one dose of the COVID-19 vaccine. (ECF No. 1, Compl. at ¶ 65.) Since then, at least 27 Plaintiffs have become vaccinated and "have returned to active duty" at FDNY. (ECF No. 27, Amended Compl. at ¶ 105.)

City Defendants for violating Plaintiffs' procedural due process rights, and a claim against Defendant Nigro for his alleged participation in these violations. (*Id.* at ¶ 110-15.)

On November 24, 2021, Plaintiffs moved for a preliminary injunction to restore them to pay status and prohibit City Defendants from "disciplining" them further. (ECF No. 5, Motion for Preliminary Injunction.)  After providing the parties with an opportunity to present evidence and submissions before, during, and after a show cause hearing, the Court denied Plaintiffs' motion for injunctive relief in a Memorandum and Order ("December 2021 Order") dated December 6, 2021.  (ECF No. 24, Order Denying Preliminary Injunction ("December 2021 Order").)

Plaintiffs filed an amended complaint ("Amended Complaint"), adding Defendants District Council 37, AFSCME AFL-CIO ("DC37"), a union that represents FDNY's emergency medical services ("EMS") employees, and Harry Garrido, DC37's Executive Director

(collectively, "DC37 Defendants").[4] (ECF No. 27, Amended Complaint ("Amended Compl.") at ¶¶ 92-93, 120-21.)

Presently before the Court are City Defendants' motion to dismiss and DC37 Defendants' motion to dismiss. For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

The Court first reviews the factual and procedural background of the Court's December 2021 Order denying Plaintiffs' motion for a preliminary injunction. (ECF No. 24, December 2021 Order, at 3-6.) The Court also reviews the operative Amended Complaint, accepting as true for purposes of Defendants' motions the factual allegations in the complaint and drawing all reasonable inferences in Plaintiffs' favor. *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d. Cir. 2015) (internal quotation marks omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[4] The Court granted leave to Plaintiffs to file an amended complaint, *inter alia*, to add necessary parties. (ECF No. 24, December 2021 Order at 8; 12/14/2021 Order.) The Amended Complaint added the Uniformed Firefighters Association of Greater New York; Uniformed Fire Officers Association, Local 854 International Association of Firefighters, affiliated with the AFL-CIO; and two local affiliates of the DC37 union, District Council 37 AFSCME AFL-CIO Local 2507 and District Council 37 AFSCME AFL-CIO Local 3621. (ECF No. 24, December 2021 Order at 7; ECF No. 27, Amended Compl.) Plaintiffs stipulated to dismissals without prejudice of their claims against District Council 37 AFSCME AFL-CIO Local 2507 and District Council 37 AFSCME AFL-CIO Local 3621, and to dismissals with prejudice of their claims against the Uniformed Firefighters Association of Greater New York and the Uniformed Fire Officers Association, Local 854 International Association of Firefighters. (ECF Nos. 63-66.)

(2009) ("[T]he tenet that a court must accept as true all of the allegations contained in [an amended] complaint is inapplicable to legal conclusions.").

**I. December 2021 Order**

In the Court's December 2021 Order, the Court determined that because Plaintiffs requested a mandatory injunction—one that "alters the status quo by commanding a positive act"—they were required to establish a "clear" or "substantial" likelihood of success on the merits of their claims. (ECF No. 24, December 2021 Order, at 6 (citing *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citation omitted)).) The Court found that Plaintiffs failed to do so and denied injunctive relief.[5] (*Id.* at 10.)

First, as to Plaintiffs' procedural due process claims, although Plaintiffs had a protected property interest in their pay

[5] The evidentiary record before the Court regarding Plaintiffs' motion for injunctive relief included the following: an affidavit by Plaintiffs' attorney Austin Graff (ECF No. 5-1); affidavits by four individual Plaintiffs who had not received at least one dose of the COVID-19 vaccine (ECF Nos. 5-2, 5-3, 5-4, 5-5); the COH Order (ECF No. 15-1); an arbitration award between the Department of Education ("DOE") and an union of DOE employees regarding an exemption process for the Vaccine Mandate based on religious and medical requests (ECF No. 15-2); an agreement between DC37 and FDNY regarding exemption processes for the Vaccine Mandate and termination processes based on non-compliance ("DC37 Agreement") (ECF No. 15-3; ECF No. 21-1); filings from an Article 78 proceeding initiated by an FDNY union challenging the Vaccine Mandate (ECF Nos. 15-4, 15-5); filings from an Office of Collective Bargaining ("OCB") proceeding initiated by an FDNY union challenging the Vaccine Mandate (ECF Nos. 15-6, 15-7, 15-8); the OCB decision denying injunctive relief to the FDNY union (ECF No. 15-9); affidavits from three human resources officials at FDNY (ECF Nos. 15-10, 20-1, 20-2); and the FDNY's October Memorandum regarding the procedures for FDNY employees to provide proof of vaccination or to obtain a religious or medical exemption (ECF No. 17-1).

and continued employment, the Court found that Plaintiffs had been provided constitutionally adequate process before being deprived of their property interests. (*Id.* at 10.) Quoting the Second Circuit's holding in *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008), the Court noted that "there is no due process violation where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." (ECF No. 24, December 2021 Order at 14-15.) The Due Process Clause would be implicated only if Plaintiffs could establish that "the grievance procedures in a collective bargaining agreement [were] an inadequate remedy," which Plaintiffs had not done. (*Id.* at 15 (quoting *Adams*, 517 F.3d at 128).)

During the show cause hearing for the preliminary injunction, the three EMS Plaintiffs who belonged to the DC37 union challenged the agreement that DC37 had negotiated with the City regarding the leave and separation procedures for City employees who did not comply with the Vaccine Mandate ("DC37 Agreement").[6] (*Id.* at 5-

[6] The DC 37 Agreement established, in relevant part: (1) the processes by which an employee could request an exemption or accommodation based on religious and/or medical grounds, and appeal an adverse determination on their request before an independent arbitration panel (while remaining on payroll and maintaining health benefits pending their request or appeal, as long as the request was made prior to 11:59 P.M. on October 27, 2021); (2) options to either voluntarily separate from service with certain compensation benefits, or elect extended LWOP status while maintaining health benefits until June 30, 2022; and (3) that as of December 1, 2021, the FDNY could seek to unilaterally separate employees who had not provided proof of vaccination, had not obtained or requested an accommodation, and had not opted for either separation option. (*See* ECF No. 21-1, Exhibit C.) The DC 37 Agreement further provided that

6.) The Court's December 2021 Order noted that, generally, "a union member has no standing to enforce the collective bargaining agreement between their employer and union against the employer directly," but that even if the EMS Plaintiffs *had* standing, they could not show a clear or substantial likelihood of success on the merits of their procedural due process claims. (*Id.* at 8-9 (citation omitted).)

Overall, the Court concluded that "the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate." (*Id.* at 16.) The Court found the following:

> Plaintiffs received ample pre-deprivation notice, via the [October Memorandum] from Hodgens, the Chief of Operations of the FDNY, of: (1) the [COH] Order, (2) the requirement to submit proof of vaccination by October 29, 2021, (3) their ability to seek reasonable accommodation by October 27, 2021; and (4) their placement on [leave without pay] status if they failed to comply with the Order and did not submit an accommodation request by the October 27 deadline.

(*Id.* at 16-17.) Moreover, the Court found that Plaintiffs were provided with an opportunity to be heard before a final decision. (*Id.* at 17.) The opportunity to respond need not be a formal hearing. *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991). Indeed, any FDNY employees who challenged whether the Vaccine Mandate should apply to them not only "had the

employees who opted to extend their LWOP to June 30, 2022, could return to their positions upon demonstrating compliance with the Vaccine Mandate. (*Id.*)

opportunity to seek a religious or medical accommodation," they also "remain[ed] on pay status pending the decision on their request or appeal, so long as their accommodation requests were submitted prior to October 27, 2021." (ECF No. 24, December 2021 Order at 17.) This Court found that the only reason that the vast majority of named Plaintiffs had been suspended without pay was because they requested an accommodation too late. (*Id.* at 17.) Therefore, Plaintiffs could not claim that they were deprived of due process simply by "not having availed themselves of the pre-deprivation opportunity to be heard." (*Id.* at 18.)

The Court also concluded that there were sufficient post-deprivation procedures to establish constitutionally adequate process. (*Id.*) Any FDNY employee granted an accommodation would be restored to payroll and provided back pay, and there was an appeal process for any employee whose reasonable accommodation request was denied. (*Id.*) The Court further found that FDNY employees also had other avenues to challenge the Vaccine Mandate and the COH Order, including through an Article 78 Proceeding in New York State Supreme Court. (*Id.* at 20 (citing *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy.")).)

Second, because "[f]ederal constitutional standards rather than state statutes define the requirements of procedural due

process," the Court found that it did not need to consider whether state or municipal procedural law, such as N.Y.C. Admin. Code § 15-113, was correctly followed or applied. (ECF No. 24, December 2021 Order, at 10-11 (quoting *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987)).) Nevertheless, the Court concluded that § 15-113 was irrelevant to determining adequate process for FDNY employees because (1) the Second Circuit had held that the Vaccine Mandate was a condition of employment (albeit in the healthcare context); and (2) "the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency [did] not implicate the disciplinary procedures set forth section 15-113." (*Id.* at 11, 13-14.)

Accordingly, the Court denied Plaintiffs' motion for a preliminary injunction.

**II. The Operative Amended Complaint**

Following the Court's denial of Plaintiffs' preliminary injunction motion, Plaintiffs filed an Amended Complaint on January 5, 2022, adding the DC37 Defendants. (ECF No. 27, Am. Compl.) In the operative Amended Complaint, Plaintiffs assert primarily the same causes of action as in the original complaint, adding only (1) a request for the Court to issue a declaratory judgment that the DC37 Agreement "was entered into without any contractual authority" and therefore the Plaintiffs' suspension

without pay violated their due process rights, and (2) a § 1983 conspiracy claim based on the DC37 Agreement between FDNY and DC37. (*Id.* at ¶¶ 186, 238.) Plaintiffs' Amended Complaint also adds several allegations related to the DC37 Agreement, including that (1) "[p]ursuant to the Taylor Law (N.Y. Civil Service Law § 200, *et. seq*.), [the City] was required to bargain with its unions [about] the impact of the Vaccine Mandate . . ."; (2) "DC37 entered into an agreement with [the City] regarding the impact of the Vaccine Mandate, which provides that on or after December 1, 2021, [the City] may unilaterally separate DC37 members from their employment with the FDNY if the members have not obtained a COVID-19 vaccine"; and (3) the DC37 Agreement "authorized [the City] to suspend without pay the members of DC37 who did not take a COVID vaccine." (*Id.* at ¶¶ 129, 133-43.)

The Amended Complaint also includes new factual allegations related to the reasonable accommodation and appeals process. (*Id.* at ¶¶ 144-50.) The Amended Complaint alleges that as "part of [the City's] implementation of the Vaccine Mandate," the City "offered those FDNY employees who have either a medical or religious reasons for not taking a vaccine an opportunity to seek a reasonable accommodation to exempt the employee from the Vaccine Mandate." (*Id.* at ¶ 144.) Plaintiffs allege in the Amended Complaint that seventy-seven out of the eighty-six total Plaintiffs have requested a medical or religious accommodation to

be exempt from the Vaccine Mandate; seventy-one Plaintiffs have been denied and six were awaiting an initial determination; thirty-seven Plaintiffs have appealed the denial of their request for a reasonable accommodation; and one Plaintiff's appeal has been denied, while thirty-six are awaiting a decision. (*Id.*)

Finally, the Amended Complaint contains two exhibits: the COH Order, Exhibit A, and the DC37 Agreement, Exhibit B.[7] (ECF No. 27-1, Ex. A; ECF No. 27-2, Exhibit B.) Given that the Amended Complaint discusses the FDNY's reasonable accommodation policy at relative length, the Court also determines that the FDNY's October Memorandum regarding the procedures for FDNY employees to obtain a religious or medical accommodation—which was submitted by Plaintiffs to the Court prior to the show cause hearing—is "integral" to the Amended Complaint. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (a court may "consider [a document] where the [amended] complaint relies heavily upon its terms and effect, thereby rendering the document integral to the [amended] complaint" (internal quotation marks omitted)). "Even where a document is deemed 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* at 231 (internal

[7] Although Plaintiffs submitted the DC37 Agreement as Exhibit B in the Amended Complaint, Plaintiffs later filed a letter stating that they incorrectly filed the wrong agreement and attaching a corrected Exhibit B. (ECF No. 27-2, Exhibit B; ECF No. 62, Letter; ECF No. 62-1, Corrected Exhibit B.)

quotation marks omitted).  "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document . . . [because of] a concern that a plaintiff may lack notice that the material will be considered."  *Id.* (internal quotation marks omitted).

Here, Plaintiffs' Amended Complaint alleges that there was a process for seeking reasonable accommodations from the Vaccine Mandate and discusses the number of Plaintiffs at various stages of the process; FDNY employees were notified of that process as provided in the FDNY's October Memorandum.  Indeed, Plaintiffs' opposition to Defendants' motions to dismiss relies heavily on the FDNY's October Memorandum and argues that it was improperly imposed, thus causing a procedural due process violation.  *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (documents are "integral" where plaintiff had to rely on their content "to explain what the actual unlawful course of conduct was on which the [d]efendants embarked"); (ECF No. 73, Plaintiffs' Mem. at 9-10.)  The Court finds that the October Memorandum is integral to the Amended Complaint because Plaintiffs' allegations and opposition to Defendants' motions to dismiss rely on and relate to the document, thus establishing that Plaintiffs do not challenge its authenticity, accuracy or relevance.  (ECF No. 73, Plaintiffs' Mem. at 2-4, 8-10.) Additionally, Plaintiffs submitted the October Memorandum to the

Court before the show cause hearing on Plaintiffs' motion for a preliminary injunction, and it was discussed extensively at the hearing and in the Court's December 2021 Order denying the motion for a preliminary injunction. (ECF Nos. 17-1, 24.) Accordingly, the Court concludes that the FDNY's October Memorandum is "integral" to the Amended Complaint.

**III. Defendants' Motions to Dismiss**

On June 13, 2022, City Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 68, City Defendants' Motion; ECF No. 69, City Defendants' Memorandum in Support; ECF No. 75, City Defendants' Reply.) On June 14, 2022, DC37 Defendants also moved to dismiss under Rule 12(b)(6) for failure to state a claim. (ECF No. 71, DC37 Defendants' Motion; ECF No. 72, DC37 Defendants' Memorandum in Support; ECF No. 74, DC37 Defendants' Reply.)

On September 28, 2022, Plaintiffs filed for leave to provide supplemental briefing or amend their memorandum in opposition brief to Defendants' motions to dismiss regarding a recent New York Supreme Court decision about the Vaccine Mandate. (ECF No. 77, Motion to Amend.) City Defendants opposed. (ECF No. 78, Response.) On October 3, 2022, the Court denied Plaintiffs' motion, explaining that the Court would review all relevant case law in rendering its decision. (10/03/2022 Order.) On October 10, 2022, Plaintiffs filed a second motion to amend or supplement

their briefing regarding an Office of Collective Bargaining ("OCB") decision about the Vaccine Mandate. (ECF No. 79, Second Motion.) The Court again denied Plaintiffs' motion, for the same reasons. (10/13/2022 Order.) On October 25, 2022, Plaintiffs filed a third motion to amend or supplement their briefing, regarding another New York Supreme Court decision about the Vaccine Mandate. (ECF No. 82, Third Motion.) The Court again denied Plaintiffs' motion. (10/26/2022 Order.)

On February 13, 2023, in light of the City's announcement that it had discontinued the Vaccine Mandate for City employees on February 10, 2023, the parties were ordered to advise the Court of their respective views as to which issues in the instant action, if any, were mooted, and which issues subsisted. (02/13/2023 Order.) The parties responded, all acknowledging that some live issues remained, given that employees who had been suspended or terminated for failure to show proof of vaccination would not be automatically reinstated to their prior positions with back pay. (ECF Nos. 84; 85; 86.)

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id.* When considering a motion to dismiss under Rule 12(b)(6), a district court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Pollok v. Chen*, 806 F. App'x 40, 44 (2d Cir. 2020) (summary order) (citation omitted).

In considering a 12(b)(6) motion, the court may refer to "documents attached to [the complaint] or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken." *Grant v. Cnty. of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) (summary order); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (clarifying that "*reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice of possession is not enough." (emphasis in original)). "[A] district court may [also] rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[.]" *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

## DISCUSSION

### I. Declaratory Judgment and Injunctive Relief

In Plaintiffs' Amended Complaint, the first and second "causes of action" request a declaratory judgment, presumably

under the Declaratory Judgment Act ("DJA"), and the "third cause of action" requests injunctive relief. (ECF No. 27, Amended Compl.) The DJA "provides a remedy, not a cause of action." *KM Enters., Inc. v. McDonald*, No. 11-CV-5098 (ADS) (ETB), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013). "Similarly to declaratory relief, a request for injunctive relief is not a separate cause of action." *Id.* at *20 (alteration and internal quotation marks omitted); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y.2010) ("Declaratory judgments and injunctions are remedies, not causes of action.") Because Plaintiffs' first, second, and third "causes of action" request remedies, rather than plead a separate claim, the first, second, and third "causes of action" are dismissed for failure to state a claim.

**II. Procedural Due Process Claims**

A procedural due process claim requires a plaintiff to establish that (1) he or she possesses a protected liberty or property interest, and (2) was deprived of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). Pre-deprivation processes "need not be elaborate," and the Constitution "mandates only that such process include, at a minimum, notice and the

opportunity to respond." *O'Connor*, 426 F.3d at 198 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).

Defendants argue that the law of the case doctrine precludes re-litigation of Plaintiffs' procedural due process claims, in light of the Court's comprehensive December 2021 Order denying a preliminary injunction. (ECF No. 69, City Defendants' Memorandum in Support, at 8-12.) The law of the case doctrine holds that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case,' unless 'cogent' and 'compelling' reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (emphasis added) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). The Court notes, however, that the "preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment." *Goodheart Clothing Co., Inc. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 274 (2d Cir. 1992). The Court also acknowledges that "[a] party . . . is not required to prove [their] case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary

injunction are not binding at a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted).

The Court need not decide here whether the law of the case doctrine applies to prevent this Court's reconsideration of the factual and legal issues discussed in its December 2021 Order denying Plaintiffs' motion for a preliminary injunction. *Cf. Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021) (the law-of-the-case doctrine is "discretionary and does not limit a court's power to reconsider its own decision prior to final judgment" (quoting V*irgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))). As discussed below, however, the Court finds that (1) the Amended Complaint's factual allegations, which are mostly conclusory, add little to Plaintiffs' prior allegations; and (2) the legal analysis for the preliminary injunction in the December 2021 Order sufficiently overlaps with the issues—based on the current factual allegations and the asserted claims—before the Court on the instant motions to dismiss such that the Court reviews its prior analysis in assessing Plaintiffs' current claims. For the reasons set forth below, the Court concludes that Plaintiffs' Amended Complaint fails to state plausible procedural due process claims.

**a. Repeated and Conclusory Factual Allegations**

First, Plaintiffs' Amended Complaint, although filed after the Court's December 2021 Order denying the Plaintiffs' motion for

a preliminary injunction, adds very few new facts to the complaint before the Court in its December 2021 Order denying a preliminary injunction. The Amended Complaint adds additional Plaintiffs and the DC37 Defendants, and provides updates as to each Plaintiff's vaccination status and the status of seventy-seven of the Plaintiffs' reasonable accommodation requests. (ECF No. 27, Amended Compl. at ¶¶ 92-93, 144-50.) Unlike the original complaint, however, the Amended Complaint acknowledges that "[a]s part of [the City's] implementation of the Vaccine Mandate," the City "offered those FDNY employees who have either a medical or religious reasons for not taking a vaccine an opportunity to seek a reasonable accommodation to exempt the employee from the Vaccine Mandate." (*Id.* at ¶ 144.) As noted previously, the Court also determines that the FDNY's October Memorandum describing accommodation procedures is "integral" to the Amended Complaint. *Nicosia*, 834 F.3d at 230.

The Amended Complaint also includes ostensibly new factual allegations regarding the DC37 Agreement to support Plaintiffs' claim that the DC37 Agreement violated Plaintiffs' due process rights. (*Id.* at §§ 129, 133-43.) Plaintiffs' allegations concerning the DC37 Defendants and the DC37 Agreement, however, are all legal conclusions devoid of specific facts: e.g., "DC37 conspired with [the City] by entering into an agreement . . . that violated the DC37 members-Plaintiffs' constitutional rights."

(*Id.* at ¶ 138.) Courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted). Indeed, the only non-conclusory allegations in the Amended Complaint concerning the DC37 Agreement are the following: (1) "DC37 entered into an agreement . . . regarding the impact of the Vaccine Mandate, which provides that on or after December 1, 2021, [the City] may unilaterally separate DC37 members from their employment with the FDNY if the members have not obtained a COVID-19 vaccine"; and (2) "DC37's Agreement with [the City] authorized [the City] to suspend without pay the members of DC37 who did not take a COVID vaccine." (ECF No. 27, Amended Compl. at ¶¶ 133, 134.)

Therefore, the factual allegations currently before the Court, although less than the full evidentiary record before the Court in its December 2021 Order denying the motion for a preliminary injunction, contain no new, non-conclusory factual allegations that would upend the Court's prior legal analysis.

**a. Repeated Claims**

Second, Plaintiffs' Amended Complaint asserts primarily the same causes of action as the original complaint and which this Court considered in the December 2021 Order. In addition to the "causes of action" for declaratory judgments and injunctive relief, discussed above, Plaintiffs now assert a § 1983 claim

against Defendants for violating their procedural due process rights; a § 1983 conspiracy claim against Defendants for conspiring to violate their procedural due process rights; and a § 1983 claim against individual Defendants Nigro, Garrido, and John and Janes Does based on "direct participation and aiding and abetting" the City's violation of Plaintiffs' due process rights. (ECF No. 27, Amended Compl. at ¶¶ 197-245.) The only new claim in the Amended Complaint is the § 1983 conspiracy claim. The underlying constitutional violation alleged in each cause of action is that Defendants violated Plaintiffs' due process rights by suspending Plaintiffs without pay if they refused to comply with the Vaccine Mandate. (*Id.*) Therefore, Plaintiffs' instant claims raise issues identical issues to the claims addressed and decided by the Court in denying the preliminary injunction. (ECF No. 24, December 2021 Order at 10-20.)

Furthermore, because Plaintiffs sought both a prohibitory and mandatory injunction in their motion for a preliminary injunction, the Court previously reviewed Plaintiffs' legal arguments under the higher pleading standard for a mandatory injunction. The Court found that Plaintiffs failed to satisfy the standard for a mandatory injunction by demonstrating a "clear" or "substantial" likelihood of success on the merits of their procedural due process claims, rather than merely a likelihood of success. (*See* ECF No. 5-8, Plaintiffs' Preliminary Injunction Memorandum at 4); *see also*

*Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (plaintiffs seeking a mandatory injunction must meet higher standard and must show a "clear" or "substantial" likelihood of success on the merits); *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (where the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits.").

Having reviewed Plaintiffs' procedural due process allegations at length—and now examining any well-pleaded factual allegations in the Amended Complaint, exhibits, and incorporated or integral documents—the Court concludes on the merits that "the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate," and, therefore, Plaintiffs' Amended Complaint fails to state a claim and must be dismissed. (ECF No. 24, December 2021 Order, at 16). Plaintiffs received ample pre-deprivation notice of procedures regarding the Vaccine Mandate, via the FDNY's October Memorandum informing FDNY employees about (1) the COH order; (2) the requirement to submit proof of vaccination by October 29, 2021; (3) the ability to seek reasonable accommodation and be exempted from the Vaccine Mandate by October 27, 2021; and (4) the placement of non-compliant employees on [leave without pay] status if they failed to comply

with the COH Order and did not submit an accommodation request by the October 27 deadline. (ECF No. 17-1, October 21, 2021 Memorandum ("Oct. Mem.") at 4, 15; ECF No. 27, Amended Compl. at ¶ 144.)

Further, accepting all well-pleaded factual allegations as true for purposes of Defendants' motions to dismiss, Plaintiffs were provided with an opportunity to be heard prior to a final decision. The opportunity to respond need not be a formal hearing. *Ezekwo,* 940 F.2d at 786. Here, as acknowledged in the Amended Complaint, any FDNY employee who challenged whether the Vaccine Mandate should apply to them had the opportunity to seek a religious or medical accommodation through an exemption to the Vaccine Mandate. (ECF No. 27, Amended Compl. at ¶ 144.) Indeed, the COH Order itself stated, in plain language, that it should not be "construed to prohibit any reasonable accommodation otherwise required by law." (ECF 27. 125-1, Ex. A.) And any FDNY employees who submitted reasonable accommodation requests before the October 27, 2021 deadline were *not* suspended without pay: only employees who sought reasonable accommodation after October 27, 2021 were placed on leave without pay while awaiting a reasonable accommodation decision. (ECF No. 17-1, Oct. Mem. at 4, 16-17, 24-25.) In addition to the above process, DC37 Plaintiffs had access to additional time to seek an accommodation beyond the October 27

deadline—through November 5, 2021—as a result of the DC37 Agreement.  (ECF No. 62-1, Corrected Exhibit B, at 2.)

The Court finds that the post-deprivation procedures were constitutionally adequate.  The City required that any denial of a reasonable accommodation request "must provide written information to the employee whose request has been denied and include a link to . . . [the City's] online appeals request portal."  (ECF No. 17-4, Oct. Mem. at 25.)  Any employee who was denied a reasonable accommodation could file an appeal within three days.  (*Id.*)  If an appeal was denied, the employee was required to submit proof of the first dose of a COVID-19 vaccine within three business days and, if required, of the second dose within 45 days.  (*Id.*)  If the employee refused to be vaccinated within the given timeframe after the appeal was denied, the employee would remain on LWOP status.  (*Id.*)  Finally, Plaintiffs had other post-deprivation avenues, such as an Article 78 proceeding, to address the COH Order and subsequent consequences.  *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881 ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy.").  Accordingly, the Court concludes, on the merits, that Defendants provided constitutionally sufficient pre-deprivation and post-

deprivation process, and that Plaintiffs fail to state a procedural due process claim.

**a. Intervening Law**

Moreover, although the Court decides the instant motions to dismiss on the basis of Plaintiffs' Amended Complaint and attached and integral exhibits, the Court notes that there has been no change in intervening law since the Court's December 2021 Order finding that Plaintiffs procedural due process rights were not violated, despite a substantial amount of litigation concerning the Vaccine Mandate.[8] *See, e.g.*, *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436 (E.D.N.Y. Mar. 8, 2022) (plaintiff received

[8] The Court's procedural due process findings are not based on the process required by state or municipal statutes. Moreover, there has not been a substantial change in intervening law concerning this Court's finding that the Vaccine Mandate was a condition of employment. *See Andre-Rodney v. Hochul*, No. 21-cv-1053 (BKS)(CFH), 2022 WL 3027094 (N.D.N.Y. Aug. 1, 2022) (vaccine was condition of employment for healthcare workers); *D'Cunha v. Northwell Health Sys.*, No. 22-cv-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023) (same); *Commey*, 2022 WL 3286548 (finding vaccination to be condition of employment for porter); *Kane*, 2022 WL 3701183 (vaccine was condition of employment); *Marciano*, 589 F. Supp. 3d at 436 (same). Although—as Plaintiffs noted in their third request to supplement their memorandum of law in opposition to Defendants' motions to dismiss (ECF No. 81)—one New York Supreme Court judge has found that the Vaccine Mandate was not a condition of employment, nearly all other New York state courts to address the issue have found that the Vaccine Mandate was a condition of employment. *Compare Garvey v. City of New York*, 77 Misc. 3d 585 (N.Y. Sup. Ct., Richmond Cnty., Oct. 24, 2022) (finding mandate was not a condition of employment), *with Clarke v. Bd. of Educ. of City School*, No. 160787/21, 2023 WL 2124546 (N.Y. App. Div. 1st Dep't, Feb. 21, 2023) (finding mandate was a condition of employment); *N.Y.C. Mun. Labor Comm. v. City of N.Y.*, 2022 NY Slip Op. 22121 (Apr. 21, 2022 N. Y. Sup. Ct.) (same); *O'Reilly v. Bd. of Educ. of City School District of City of New York*, No. 16104/21, 2023 WL 2124731, at *1 (N.Y. 1st Dep't, Feb. 21, 2023) (same). Plaintiffs argued in their first and second requests to amend their briefing that another New York Supreme Court judge and the OCB have found that although the Vaccine Mandate *could* be a condition of employment, it was improperly imposed under municipal law. (ECF Nos. 77, 79.) As discussed extensively below, however, the Court bases its procedural due process finding on constitutional standards, not on state or municipal standards.

constitutionally sufficient minimum process for NYPD vaccine policy); *Kane v. de Blasio*, No. 21-cv-7863 (NRB), 2022 WL 3701183, at *12 (S.D.N.Y. Aug. 26, 2022)(constitutionally sufficient minimum process was provided for DOE workers); *cf. Donohue v. Hochul*, No. 21-CV-8463 (JPO), 2022 WL 673636, at *7 (S.D.N.Y. Mar. 7, 2022) (public-school mask mandate did not implicate procedural due process concerns); *Commey v. Adams*, No. 22-CV-0018 (RA), 2022 WL 3286548, at *6 (S.D.N.Y. Aug. 11, 2022) (no procedural due process concerns because mandate was legislative in nature); *Collins v. City Univ. of New York*, No. 21-cv-9544 (NRB), 2023 WL 1818547, at *10 (S.D.N.Y. Feb. 8, 2023) (same); *Mongielo v. Hochul*, No. 22-CV-116-LJV, 2023 WL 2307887, at *17 (W.D.N.Y. Mar. 1, 2023) (same).

**III. Plaintiffs' Opposition to the Motion to Dismiss**

In their opposition to Defendants' motions to dismiss, Plaintiffs' central argument is that, contrary to the findings in the Court's December 2021 Order, the Vaccine Mandate was not a condition of employment, and thus Defendants' COH Order suspending Plaintiffs without pay violated Plaintiffs' procedural due process rights.[9] (ECF No. 73, Plaintiffs' Mem. at 12-13, 19-21.) In

---

[9] Plaintiffs also argue that Defendants violated New York City Charter Section 487(a) when the FDNY issued the October Memorandum concerning the City's newly imposed Vaccine Mandate. (ECF No. 73, Plaintiffs' Mem. at 9.) New Yokr City Charter Section 487(a) provides that the FDNY Commissioner "shall have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire department and the premises and property in the custody thereof." N.Y.C. Charter § 487(a). Plaintiffs argue, circularly, that because the Chief of Operations of the FDNY John

their opposition, Plaintiffs assert several arguments in support of their claim that the Vaccine Mandate was not a condition of employment: they first contend that because City Defendants failed to negotiate and bargain with FDNY unions concerning the new condition of employment, which Plaintiffs contend is required under New York Civil Service Law Section 201.4, the Vaccine Mandate was invalidly imposed. (*Id.* at 12.)   Plaintiffs also argue that, even though the FDNY *did* bargain and negotiate with DC37 concerning the Vaccine Mandate, the resulting DC37 Agreement was never ratified by DC37's union members.   (*Id.* at 14-16.)   Plaintiffs assert that under New York City Admin. Code Section 12-307(a)(4), the DC37 Agreement could not amend the existing procedures of DC37's collective bargaining agreement without ratification by its members.   (*Id.* at 14-16.)   They contend that the DC37 Agreement was invalid, meaning that the Vaccine Mandate could not become a condition of employment as to the DC37 member-Plaintiffs.   (*Id.*) In other words, Plaintiffs premise their due process claims on the

---

Hodgens, rather than FDNY Commissioner Nigro, circulated the FDNY's October Memorandum alerting FDNY employees as to City's newly imposed Vaccine Mandate, the Vaccine Mandate was issued in violation of § 487(a) and was invalid. (ECF No. 73, Plaintiffs' Mem. at 9-10.)  Plaintiffs confuse the Vaccine Mandate (the City's vaccine requirement); the COH Order (the order from the Commissioner of Health imposing the Vaccine Mandate); and the FDNY's October Memorandum (the memorandum informing FDNY employees about the Vaccine Mandate.  (*See* ECF NO. 17-1.)  Plaintiffs' argument is frivolous on its face, as the logical inference that Plaintiffs urge the Court to draw is that the FDNY Commissioner's name must be on every memorandum issued to FDNY employees or the memorandum will violate § 487(a).  (*Id.*; ECF No. 73, Plaintiffs' Mem. at 9.)  In any case, because the Court looks to "federal constitutional standards rather than state [or local] statutes" to define the requirements of procedural due process, as discussed above, Plaintiffs' argument is meritless.  *Robison*, 821 F.2d at 923.

assertion that (1) Defendants failed to follow state and municipal procedural requirements in imposing the Vaccine Mandate; (2) the Vaccine Mandate therefore was not a condition of employment; (3) if the Vaccine Mandate is not a condition of employment, the COH Order is invalid; and thus (4) Defendants' suspension of Plaintiffs without pay violated Plaintiffs' procedural due process. (*Id.* at 12-16.)

As the Court has repeatedly stated, however, "the Court looks to federal constitutional standards rather than state statutes to define the requirements of procedural due process." (ECF No. 24, December 2021 Order, at 10-11 (citing *Robison*, 821 F.2d at 923).) Courts repeatedly have held that state statutes do not determine constitutional due process requirements. *See, e.g.*, *Loudermill*, 470 U.S. at 541 ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute."); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires." (internal quotation marks omitted)); *cf. Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) ("[C]ases from both the Supreme Court and our Court make clear that the federal procedural due process

guarantee does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law.”). Indeed, the Second Circuit recently reiterated that a district court failed to properly assess whether a defendant’s conduct violated the procedural guarantees of the Due Process Clause where the court examined the due process claim exclusively by assessing a defendant’s failure to comply with state law. *See Tooly v. Schwaller*, 919 F.3d 165, 172-73 (2d Cir. 2019) (“[V]iolation of state law does not *per se* result in a violation of the Due Process Clause”).

Thus, to the extent that Plaintiffs base their procedural due process claims solely on alleged violations of state and municipal law, as noted above, their claims fail. *See McDarby v. Dinkins*, 907 F.2d 1334, 1337–38 (2d Cir. 1990) (“When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations.”); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.1987) (“State procedural requirements do not establish federal constitutional rights. At most, any violation of state procedural requirements would create liability under state law.” (citations omitted)). Plaintiffs provide no facts or law supporting a contrary argument, and Plaintiffs cannot add news facts at this stage. As discussed above, Plaintiffs conclusorily argue that

they were suspended without due process. (ECF No. 73, Plaintiffs' Mem. at 20 ("If the Vaccine Mandate is not a condition of employment for FDNY employees, then, the City Defendants had no legal right or authority to suspend the Plaintiffs without pay without due process.").) The allegations in the Amended Complaint—establishing that Defendants provided notice and an opportunity to seek accommodations via exemptions—satisfy due process. Accordingly, because the Court has found that there was constitutionally sufficient process, Plaintiffs' procedural due process claims—the § 1983 claim against all Defendants and the § 1983 claim for "direct participation and aiding and abetting" against individual Defendants—are dismissed for failure to state a claim.

**IV. Other Causes of Action**

**a. Section 1983 Conspiracy**

Having dismissed Plaintiffs' claim that Defendants violated their due process rights, the Court also finds that Plaintiffs' allegations are insufficient to state a plausible § 1983 conspiracy claim against Defendants. "To state a § 1983 conspiracy claim, a plaintiff must allege (1) an agreement between two or more state actors, (2) 'to act in concert to inflict unconstitutional injury,' and (3) 'an overt act done in furtherance of that goal causing damages.'" *Barnes v. Abdullah*, No. 11-CV-8168, 2013 WL 3816586, at *9 (S.D.N.Y. July 22, 2013) (quoting *Ciambriello*, 292 F.3d at

324-25); *Sibiski v. Cuomo*, No. 08-CV-3376, 2010 WL 3984706, at *6 (E.D.N.Y. Sept. 15, 2010) (citing same). Notably, "[v]ague and conclusory allegations that defendants have engaged in a conspiracy to violate plaintiff's constitutional rights must be dismissed." *Poole v. New York*, No. 11-CV-921, 2012 WL 727206, at *6 (E.D.N.Y. Mar. 6, 2012); *see also Krug v. McNally*, 368 F. App'x 269, 270 (2d Cir. 2010) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (alteration in original) (internal quotation marks omitted)). Plaintiff "must allege . . . overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Elmasri v. England*, 111 F. Supp. 2d 212, 218 (E.D.N.Y. 2000) (internal quotation marks omitted.)

Plaintiffs fail to state a § 1983 conspiracy claim. As detailed above, Plaintiffs fail to state an underlying procedural due process claim. Therefore, Plaintiffs' § 1983 conspiracy claim fails as a matter of law. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (a § 1983 conspiracy claim "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right"); *see also AK*

*Tournament Play, Inc. v. Town of Wallkill*, No. 09-CV-10579, 2011 WL 197216, at *4 (S.D.N.Y. Jan. 19, 2011) ("Plaintiffs' § 1983 conspiracy claims against all Defendants must be dismissed because Plaintiffs have failed to allege any violation of any cognizable constitutional right."), *aff'd*, 444 F. App'x 475 (2d Cir. 2011) (summary order); *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. Mar. 24, 2011) ("[A] § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation.").

Additionally, Plaintiffs do not proffer any nonconclusory facts regarding the nature of the conspiracy, Defendants' membership in the conspiracy, or the overt steps taken by any of the Defendants in furtherance of that conspiracy. Apart from "diffuse and expansive allegations" that are not "amplified by specific instances of misconduct," *Krug*, 368 F. App'x at 270 (internal quotation marks omitted), the Amended Complaint is bereft of any facts sufficient to give rise to a plausible § 1983 conspiracy claim. In fact, the Amended Complaint merely refers to a conspiracy based on Plaintiffs' vague and conclusory assertions that "[DC37 Defendants] conspired with [City Defendants] by entering into an agreement with [the City] that violated the DC3 7 members-Plaintiffs' constitutional rights" and "[a]s a result of the conspiracy between [DC37 Defendants] and [City Defendants], the DC37 members-Plaintiffs' constitutional rights have been

violated." (ECF No. 27, Amended Compl. ¶¶ 134-143, 216-239.) Plaintiffs' bald allegations, however, do not give rise to a plausible inference that Defendants acted in concert to violate Plaintiffs' constitutional rights. The allegations "constitute the type of vague, conclusory, and general allegations that, standing alone, are routinely found lacking under Rule 12(b)(6)." *Orr ex rel. Orr v. Miller Place Union Free Sch. Dist.*, No. 07–CV–787, 2008 WL 2716787, at *5 (E.D.N.Y. July 9, 2008) (internal quotation marks omitted). Accordingly, Plaintiffs' § 1983 conspiracy claim is dismissed for failure to state a claim.

**a. Class Claim**

Because Plaintiffs fail to state a claim, their class allegations also fail. *Cf. Xuedan Wang v. Hearst Corp.*, No. 12-CV-793 (HB), 2013 WL 105784, at *3 (S.D.N.Y. Jan. 9, 2013) (noting that where court dismissed a claim under Rule 12(c), motion to strike class allegations could be granted as to that claim.)

**V. Leave to Amend**

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires." Therefore, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). A court may, however, dismiss claims without leave to amend where the proposed amendments would be futile. *See Ruotolo*

*v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 381 U.S. 178, 182 (1962)). An amendment to the complaint is futile if the "proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002), abrogated on other grounds by *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019). Leave to amend may also be denied where previous amendments have not cured the complaint's deficiencies. *Ruotolo*, 514 F.3d at 184 (citing *Foman*, 381 U.S. at 182); *see also DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim." (collecting cases)).

Here, after extensive briefing, evidentiary submissions, and a show cause hearing, the Court allowed Plaintiffs an opportunity to amend their complaint. (ECF No. 24, December 2021 Order at 8; ECF No. 27, Amended Compl.) Despite the Court's detailed analysis of Plaintiffs' factual allegations and claims in its December 2021 Order, Plaintiffs have again failed to allege facts supporting their claims. Under these circumstances, and because further amendments to the complaint would not cure the deficiencies discussed in this opinion, any amendment would be futile. Therefore, Plaintiffs' complaint is dismissed with prejudice. *See, e.g.*, *Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277

F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (stating that the district court did not abuse its discretion in not *sua sponte* granting leave to amend following dismissal of the complaint where plaintiff "had already amended its complaint once, and any amendment would have been futile").

**CONCLUSION**

For the reasons set forth above, City Defendants' Motion to Dismiss and DC37 Defendants' Motion to Dismiss are GRANTED in their entirety and leave to amend is DENIED. The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED.**

Dated: March 29, 2023
Brooklyn, New York

Hon. Kiyo A. Matsumoto
United States District Judge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
John GARLAND, et al.,

Plaintiff,

v.

CITY OF NEW YORK, et al.,

Defendants.
---------------------------------------------------------------X

JUDGMENT
21-cv-6586(KAM)(CLP)

A Memorandum and Order of Honorable Kiyo A. Matsumoto, United States District Judge, having been filed on March 29, 2023, granting City Defendants' Motion to Dismiss and DC37 Defendants' Motion to Dismiss in their entirety; and denying leave to amend; it is

ORDERED and ADJUDGED that City Defendants' Motion to Dismiss and DC37 Defendants' Motion to Dismiss are granted in their entirety; and that leave to amend is denied.

Dated: Brooklyn, New York
March 31, 2023

Brenna B. Mahoney
Clerk of Court

By: _/s/Jalitza Poveda_
Deputy Clerk

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

JOHN GARLAND, VINCENT A. BOTTALICO, TIMOTHY A. HEATON, JOSEPH BEVILACQUA, JOSEPH CICERO, JOSEPH COLUMBIA, ANDREW COSTELLO, JAMES DANIEL DALY III, VINCENT DEFONTE, KENNETH DEFOREST, SALVATORE DEPAOLA, BRIAN DOYLE, NATHAN EVANS, CHRISTOPHER FILOCAMO, KEVIN GARVEY, CHARLES GUARNEIRI, DANIEL J. OSHEA, MARGOT LOTH, MICHAEL LYNCH, DENNIS O'KEEFFE, BRIAN PATRICK SMITH, KURT PFLUMM, CHRISTOPHER RAIMONDI, PAUL SCHWEIT, JOSEPH T. JOHNSON, DAVID BUTTON, PAUL PARR, MARK SINCLAIR, DANIEL BAUDILLE, JOHN DREHER, THOMAS OLSEN, GIUSEPPE ROBERT PENORO, MATTHEW CONNOR, NICHOLAS MULLIGAN, RANDALL SANTANA, ANTHONY PERRONE, SCOTT ETTINGER, ANTHONY MASTROPIETRO, RASHAAD TAYLOR, ANTHONY RUGGIERO, JOSEPH MURDOCCA, KEITH KLEIN, PAUL VASQUENZ, MARK HENESY, RYAN K. HALL, JUDE PIERRE, MICHELLE SANTIAGO, ROBERT DITRANI, BRIAN T. DENZLER, MICHAEL MCGOFF, OWEN FAY, JOSEPH M. PALMIERI, STEPHEN INGUAGIATO, GEORGE J. MURPHY, JOSEPH DEPAOLA, STEPHEN BUTTAFUCCO, MICHAEL SAMOLIS, AINSLEY ATWELL, JOHN COSTELLO, MATTHEW SINCLAIR, GLENN CLAPP, MATT KOVAL, JOHN ARMORE, ROSARIO CURTO, DANIEL STROH, DANIEL YOUNG, FELICIA J. TSANG, KEVIN ERKMAN, JOHN TWOMLEY, CRAIG LEAHY, TIM RIVICCI, MICHAEL FADDA, ANTHONY C. CARDAZONE, DAVID SUMMERFIELD, BRENDAN MCGEOUGH, BRANDON PHILLIPS, CHRISTOPHER INFANTE, BERNADETTE MEJIA, JARED DYCHKOWSKI, THOMAS FEJES, JASON CHARLES, WILLIAM JOHN SAEZ, PHILLIP J. DARCEY, RODNEY COLON, SEAN FITZGERALD, ROBERT YULI, on behalf

**INDEX NO. 21-cv-6586**

**NOTICE OF APPEAL**

of themselves and all other similarly situated employees of the New York City Fire Department,

Plaintiffs,

-against-

NEW YORK CITY FIRE DEPARTMENT, DANIEL A. NIGRO, in his official and individual capacities, CITY OF NEW YORK, UNIFORMED FIRE OFFICERS ASSOCIATION, LOCAL 854 INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFFILIATED WITH THE AFL-CIO, UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK, DISTRICT COUNCIL 37, AFSCME AFL-CIO, HENRY GARRIDO, in his official and individual capacities, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 2507, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 3621, JOHN DOE #1-10, in their official and individual capacities; and JANE DOE #1-10 in their official and individual capacities,

Defendants.

-------------------------------------------------------------------X

**PLEASE TAKE NOTICE** that all of the Plaintiffs hereby appeal to the United States Court of Appeals for the Second Circuit from the *Judgment* entered in this action on March 31, 2023, following the *Memorandum & Order* of the Honorable Kiyo A. Matsumoto, dated March 29, 2023 and entered March 29, 2023, granting the Defendants' Motions to Dismiss in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and from each and every part of said judgment.

**PLEASE TAKE FURTHER NOTICE** that all of the Plaintiffs hereby appeal to the United States Court of Appeals for the Second Circuit from the *Memorandum And Order* of the Honorable Kiyo A. Matsumoto, dated December 6, 2021 and entered December 6, 2021, denying the Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction and from each and every part of said Memorandum and Order.

Dated: Garden City, New York
April 20, 2023

THE SCHER LAW FIRM, LLP

By: *Austin Graff*

AUSTIN GRAFF
*Attorneys for the Plaintiffs*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040

90 Merrick Avenue, 9th Floor
East Meadow, NY 11554
Phone: 516.296.7000 • Fax: 516.296.7111
www.certilmanbalin.com

Joshua Feldman
Associate
Direct Dial 516.296.7081
jfeldman@certilmanbalin.com

May 18, 2023

***VIA ECF***

Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District New York
225 Cadman Plaza East, Room S905
Brooklyn, New York 11201

Re: ***Garland et al v. New York City Fire Department et al.***
***Docket No. 21-cv-6586 (KAM)(CP)***

Dear Judge Matsumoto:

This office represents the Uniformed Firefighters Association of Greater New York ("UFA"), a former Defendant in the above-captioned matter. I write to call the Court's attention to an apparent error contained in its March 29, 2023 Memorandum and Order (ECF No. 87) (the "March 29, 2023 Order"). Specifically, in the March 29, 2023 Order, the Court noted that "Plaintiffs stipulated to dismissals *without* prejudice of their claims against" the UFA. *See* March 29, 2023 Order, ECF No. 87, at p. 4 FN 4 (italics added). Per the stipulation between Plaintiffs and the UFA so-ordered by the Court on March 16, 2022 (ECF No. 64) (the "Stipulation"), Plaintiff actually discontinued the instant action against the UFA *with* prejudice. *See* Stipulation, ECF No. 64.

The UFA respectfully requests that the Court exercise its power pursuant to, *inter alia*, FRCP 60(a) to amend its March 29, 2023 Order to reflect that Plaintiffs discontinued their action against the UFA with prejudice.

The UFA thanks the Court for its time and consideration of this matter.

Respectfully submitted,

/s/ Joshua Feldman
Joshua Feldman

cc: All Counsel of Record (via ECF)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

JOHN GARLAND, VINCENT A. BOTTALICO, TIMOTHY A. HEATON, JOSEPH BEVILACQUA, JOSEPH CICERO, JOSEPH COLUMBIA, ANDREW COSTELLO, JAMES DANIEL DALY III, VINCENT DEFONTE, KENNETH DEFOREST, SALVATORE DEPAOLA, BRIAN DOYLE, NATHAN EVANS, CHRISTOPHER FILOCAMO, KEVIN GARVEY, CHARLES GUARNEIRI, DANIEL J. OSHEA, MARGOT LOTH, MICHAEL LYNCH, DENNIS O'KEEFFE, BRIAN PATRICK SMITH, KURT PFLUMM, CHRISTOPHER RAIMONDI, PAUL SCHWEIT, JOSEPH T. JOHNSON, DAVID BUTTON, PAUL PARR, MARK SINCLAIR, DANIEL BAUDILLE, JOHN DREHER, THOMAS OLSEN, GIUSEPPE ROBERT PENORO, MATTHEW CONNOR, NICHOLAS MULLIGAN, RANDALL SANTANA, ANTHONY PERRONE, SCOTT ETTINGER, ANTHONY MASTROPIETRO, RASHAAD TAYLOR, ANTHONY RUGGIERO, JOSEPH MURDOCCA, KEITH KLEIN, PAUL VASQUENZ, MARK HENESY, RYAN K. HALL, JUDE PIERRE, MICHELLE SANTIAGO, ROBERT DITRANI, BRIAN T. DENZLER, MICHAEL MCGOFF, OWEN FAY, JOSEPH M. PALMIERI, STEPHEN INGUAGIATO, GEORGE J. MURPHY, JOSEPH DEPAOLA, STEPHEN BUTTAFUCCO, MICHAEL SAMOLIS, AINSLEY ATWELL, JOHN COSTELLO, MATTHEW SINCLAIR, GLENN CLAPP, MATT KOVAL, JOHN ARMORE, ROSARIO CURTO, DANIEL STROH, DANIEL YOUNG, FELICIA J. TSANG, KEVIN ERKMAN, JOHN TWOMLEY, CRAIG LEAHY, TIM RIVICCI, MICHAEL FADDA, ANTHONY C. CARDAZONE, DAVID SUMMERFIELD, BRENDAN MCGEOUGH, BRANDON PHILLIPS, CHRISTOPHER INFANTE, BERNADETTE MEJIA, JARED DYCHKOWSKI, THOMAS FEJES, JASON CHARLES, WILLIAM JOHN SAEZ, PHILLIP J. DARCEY, RODNEY COLON, SEAN FITZGERALD, ROBERT YULI, on behalf

**INDEX NO. 21-cv-6586**

**AMENDED NOTICE OF APPEAL**

of themselves and all other similarly situated employees of the New York City Fire Department,

Plaintiffs,

-against-

NEW YORK CITY FIRE DEPARTMENT, DANIEL A. NIGRO, in his official and individual capacities, CITY OF NEW YORK, UNIFORMED FIRE OFFICERS ASSOCIATION, LOCAL 854 INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFFILIATED WITH THE AFL-CIO, UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK, DISTRICT COUNCIL 37, AFSCME AFL-CIO, HENRY GARRIDO, in his official and individual capacities, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 2507, DISTRICT COUNCIL 37, AFSCME AFL-CIO, LOCAL 3621, JOHN DOE #1-10, in their official and individual capacities; and JANE DOE #1-10 in their official and individual capacities,

Defendants.

-------------------------------------------------------------------X

**PLEASE TAKE NOTICE** that all of the Plaintiffs hereby appeal to the United States Court of Appeals for the Second Circuit from the *Judgment* entered in this action on March 31, 2023, following the *Memorandum & Order* of the Honorable Kiyo A. Matsumoto, dated March 29, 2023 and entered March 29, 2023 and replaced on May 19, 2023, granting the Defendants' Motions to Dismiss in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and from each and every part of said judgment.

**PLEASE TAKE FURTHER NOTICE** that all of the Plaintiffs hereby appeal to the United States Court of Appeals for the Second Circuit from the *Memorandum And Order* of the Honorable Kiyo A. Matsumoto, dated December 6, 2021 and entered December 6, 2021, denying the Plaintiffs' Motion for a Temporary Restraining Order and a Preliminary Injunction and from each and every part of said Memorandum and Order.

Dated: Garden City, New York
May 19, 2023

THE SCHER LAW FIRM, LLP

By: *Austin Graff*

AUSTIN GRAFF
*Attorneys for the Plaintiffs*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040