# 23-663

## In the
## United States Court of Appeals
### For the Second Circuit

JOHN GARLAND, VINCENT BOTTALICO, TIMOTHY A. HEATON,
JOSEPH BEVILACQUA, JOSEPH CICERO, JOSEPH COLUMBIA,
ANDREW COSTELLO, JAMES DANIEL DALY, III, VINCENT DEFONTE,
KENNETH DEFOREST, SALVATORE DEPAOLA, BRIAN F. DOYLE,
NATHAN EVANS, CHRISTOPHER FILOCAMO,

*Plaintiffs-Appellants,*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK (BROOKLYN)
*(See inside cover for continuation of caption)*

## BRIEF AND SPECIAL APPENDIX
## FOR PLAINTIFFS-APPELLANTS

THE SCHER LAW FIRM, LLP
*Attorneys for Plaintiffs-Appellants*
600 Old Country Road, Suite 440
Garden City, New York 11530
(516) 746-5040

19689

––––––––––––––––––––––––––

KEVIN GARVEY, CHARLES GUARNEIRI, DANIEL J. OSHEA, MARGOT LOTH, MICHAEL LYNCH, DENNIS O'KEEFFE, BRIAN PATRICK SMITH, KURT PFLUMM, CHRISTOPHER RAIMONDI, PAUL SCHWEIT, JOSEPH T. JOHNSON, DAVID BUTTON, PAUL PARR, MARK SINCLAIR, DANIEL BAUDILLE, JOHN DREHER, THOMAS OLSEN, GIUSEPPE ROBERT PENORO, MATTHEW CONNOR, NICHOLAS MULLGAN, RANDALL SANTANA, ANTHONY PERRONE, SCOTT ETTINGER, ANTHONY MASTROPIETRO, RASHAAD TAYLOR, ANTHONY RUGGIERO, JOSEPH MURDOCCA, KEITH KLEIN, PAUL VASQUENZ, MARK HENESY, RYAN K. HALL, JUDE PIERRE, MICHELLE SANTIAGO, ROBERT DITRANI, BRIAN T. DENZLER, MICHAEL MCGOFF, CHRISTOPHER INFANTE, GEORGE J. MURPHY, THOMAS FEJES, JOHN COSTELLO, BRANDON PHILLIPS, JOSEPH DEPAOLA, BRENDAN MCGEOUGH, JASON CHARLES, ANTHONY C. CARDAZONE, OWEN FAY, MICHAEL FADDA, JOSEPH M. PALMIERI, JARED DYCHKOWSKI, JOHN TWOMLEY, MATT KOVAL, GLENN CLAPP, ROBERT YULI, MATTHEW SINCLAIR, TIM RIVICCI, JOHN ARMORE, MICHAEL SAMOLIS, FELICIA J. TSANG, WILLIAM JOHN SAEZ, ROSARIO CURTO, DAVID SUMMERFIELD, KEVIN ERKMAN, BERNADETTE MEJIA, DANIEL YOUNG, SEAN FITZGERALD, CRAIG LEAHY, DANIEL STROH, STEPHEN INGUAGIATO, STEPHEN BUTTAFUCCO, PHILLIP J. DARCEY, AINSLEY ATWELL and RODNEY COLON,

*Plaintiffs-Appellants,*

– v. –

NEW YORK CITY FIRE DEPARTMENT, DANIEL A. NIGRO, JOHN DOE #1-10, JANE DOE #1-10, CITY OF NEW YORK, HENRY GARRIDO, DISTRICT COUNCIL 37, AFSCME AFLCIO, LOCAL 2507, DISTRICT COUNCIL 37, AFSCME AFLCIO, LOCAL 3621 AND DISTRICT COUNCIL 37, AFSCME AFL-CIO,

*Defendants-Appellees,*

– and –

UNIFORMED FIRE OFFICERS ASSOCIATION, LOCAL 854 INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFFILIATED WITH THE AFL-CIO AND UNIFORMED FIREFIGHTERS ASSOCIATION OF GREATER NEW YORK,

*Defendants.*

––––––––––––––––––––––––––

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................i

TABLE OF AUTHORITIES ........................................................iv

JURISDICTIONAL STATEMENT .................................................1

ISSUES PRESENTED FOR REVIEW ...........................................2

STATEMENT OF THE CASE.......................................................3

STATEMENT OF THE FACTS ....................................................5

    A.    FDNY Issued A Memorandum Imposing The
           Vaccine Mandate ........................................................8

    B.    FDNY Suspended The Appellants Without Pay For
           Not Taking The COVID-19 Vaccine .................................9

SUMMARY OF ARGUMENT ....................................................12

ARGUMENT ........................................................................14

POINT I.     STANDARD OF REVIEW OF A MOTION TO DISMISS ............14

POINT II.   THE FDNY MUST REACH A RESOLUTION WITH ITS
            PUBLIC EMPLOYEES' UNIONS BEFORE IT CAN CREATE
            A CONDITION OF EMPLOYMENT ................................15

POINT IV.  THE APPELLANTS STATED A CLAIM FOR DECLATORY
            JUDGMENT IN THEIR FIRST AND SECOND CAUSES OF
            ACTION ............................................................25

    A.    Justiciable Controversy Exists ......................................26

    B.    The Appellants Do Not Rely Upon The Declaratory
           Judgment Act For Subject Matter Jurisdiction....................27

POINT V. THE FDNY DID NOT PROVIDE THE APPELLANTS WITH CONSTITUTIONALLY SUFFICENT DUE PROCESS BEFORE IT PLACED THE APPELLANTS ON LEAVE WITHOUT PAY AND/OR TERMINATED THEM FROM EMPLOYMENT ................................................................31

A. Appellants' Constitutionally Protected Property Interest In Their Pay Was Violated By The FDNY ...........................34

B. Appellants' Constitutionally Protected Due Process Rights Was Violated By The FDNY ....................................39

C. Private Interests Affected By Official Action Was Enormous ...........................................................................44

D. The Risk Of An Erroneous Deprivation Of Such Interest Through The Procedures Used, And The Probable Value, If Any, Of Additional Or Substitute Procedural Safeguards ......................................................45

E. The Government's Interest, Including The Function Involved And The Fiscal And Administrative Burdens That The Additional Or Substitute Procedural Requirement Would Entail ...............................47

POINT VI. THE APPELLANTS HAVE STATED A CAUSE OF ACTION FOR 42 U.S.C. § 1983 CONSPIRACY ..............................49

A. Personal Involvement ........................................................50

B. State Actor ........................................................................52

POINT VII. THE APPELLANTS' CLASS CLAIMS SHOULD BE REINSTATED ....................................................................54

POINT VIII. IF THE AMENDED COMPLAINT WAS INSUFFICENT TO SURVIVE THE MOTIONS TO DISMISS, THE DISTRICT COURT SHOULD HAVE GRANTED LEAVE TO AMEND ........56

POINT IX.  IF THIS COURT REVERSES THE DISTRICT COURT, REINSTATES THE ACTION, AND REMANDS THE MATTER TO THE DISTRICT COURT, THIS COURT SHOULD DIRECT THAT A DIFFERENT JUDGE BE ASSIGNED ........................................................................57

CONCLUSION ........................................................................................60

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS ................................................................61

# TABLE OF AUTHORITIES

## Cases

*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937) .............................26

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) ......................................................46

*Broecker v. NY City Dept. of Educ.*, 585 F.Supp.3d 299, 315-316
   (E.D.N.Y. 2022) (Matsumoto, J.)..............................................................22

*BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618
   (5th Cir 2021) ...........................................................................................45

*Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 244-245 (2d Cir 2012) .........28

*City of Rochester*, 7 PERB P3060 (1974)................................................................53

*Civil Service Employees Association, Inc., Local 1000,
   AFSCME, AFL-CIO, The Certified Union By Nassau Local 830
   v. County of Nassau*, 45 PERB P3047 (2012) ........................................53

*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) ................... 39, 41

*Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)...........................................................52

*Evans v Newman*, 71 A.D.2d 240, 243 (3d Dept 1979)..........................................19

*Garland v. City of NY*, 2023 US Dist LEXIS 54100
   (E.D.N.Y. Mar. 29, 2023) ....................................................................1, 3

*Garland v. NY City Fire Dept.*, 574 F.Supp.3d 120
   (E.D.N.Y. 2021) ........................................................................................3

*Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir 1995).....................................................42

*Hellenic Am. Neighborhood Action Comm. v. City of NY*,
   101 F.3d 877, 880 (2d Cir 1996) ............................................................46

*In the Matter of Suffolk County Court Employees Association*
  *Inc. v. New York State Unified Court System,* 6 PERB ¶ 4513
  (2023) ................................................................................... 20, 36, 37

*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854
  (2d Cir 2021) ...........................................................................14

*Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir 2020) ....................................48
*Magtoles v. United Staffing Registry, Inc.*, 2021 US Dist LEXIS
  248070 (E.D.N.Y. Dec. 30, 2021) .......................................................58

*Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ................................47

*Manhattan Community Access Corp. v. Halleck*, 139 S Ct 1921,
  1928 (2019)...............................................................................52

*Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)....................... 13, 41, 43, 44, 45, 48

*Matter of D'Angelo v. Scoppetta*, 19 N.Y.3d 663, 668 (2012)................................41

*McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir 1977)......................................50

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
  571 U.S. 191, 197 (2014) ...............................................................29

*Norton v. Town of Islip*, 678 F.App'x 17, 22 (2d Cir 2017)....................................28

*Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir 1999) .........................................49

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75
  (2d Cir. 1998)...........................................................................47

*Pescatore v. PAN AM*, 97 F.3d 1, 21 (2d Cir 1996)................................................57

*Rivera-Powell v. NY City Bd. of Elections*, 470 F.3d 458, 465
  (2d Cir 2006) ...........................................................................42

*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d 41, 44
  (2d Cir 2001) ....................................................................... 4, 6, 24, 29

*The New York City Municipal Labor Committee v. The City of
New York*, 15 OCB2d 34 (2022)............................................................... 20, 36, 37

*Tiernan v. Walsh*, 294 N.Y. 299, 304 (1945) ........................................................40

*Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019).................................... passim

*Uniformed Firefighters Association of Greater New York, Local
94, IAFF, AFL-CIOO, et al v. City of New York, et al.,*
16 O.C.B.2d 7 (2023) ........................................................................................21

*Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074
(1973).................................................................................................................52

*White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-1062
(2d Cir 1993) .....................................................................................................42

## Statutes

28 U.S.C. § 1291 ......................................................................................................1

28 U.S.C. § 2201(a) ...............................................................................................12

N.Y. Civil Service Law § 201.4 ...................................................................... 23, 33

N.Y. Civil Service Law § 201.4(b) ........................................................................19

N.Y. Civil Service Law § 209.4. ............................................................................23

N.Y.C. Charter § 487(a). .........................................................................................9

## Other Authorities

*https://wp-advocatz-
uploads.s3.amazonaws.com/uploads/2022/06/EricEichenholtz_
Transcript.pdf* .......................................................................................................47

https://www.reuters.com/lifestyle/sports/nyc-mayor-adams-lift-
vaccine-mandate-pro-athletes-performers-2022-03-24 (visited July 13, 2023)......48

**Rules**

FRCP Rule 23(a) .................................................................................55

**Regulations**

N.Y.C. Administrative Code 12-306(a)(4) ............................................23

New York City Administrative Code § 15-113 .......................................6, 11, 37, 38

## JURISDICTIONAL STATEMENT

This is an appeal from the final judgment entered in the Eastern District of New York dismissing the Appellants' civil action that sought declaratory judgment relief, damages, and injunctive relief for violation of the Appellants' constitutional rights, including their due process rights and property rights to their pay. The Appellants asserted their claims pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act (28 U.S.C. § 2201(a)). The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

The Clerk of the Eastern District of New York entered the District Court's Order on March 29, 2023 (Matsumoto, J.) (*Garland v. City of NY*, 2023 US Dist LEXIS 54100 (E.D.N.Y. Mar. 29, 2023)) (JA-584-JA-618), which was replaced on May 19, 2023 (JA-619-JA-653) and entered the Clerk's Judgment on March 31, 2023 (JA-654). The Appellants filed their Notice of Appeal on April 20, 2023 (JA-655-JA-657) and an Amended Notice of Appeal (reflecting the replaced decision) on May 24, 2023 (JA-659-JA-661).

This Court has jurisdiction to hear the appeal since the appeal is from a final order granting the Appellees' Federal Rule of Civil Procedure ("FRCP") 12(b)(6) Motions to Dismiss to dismiss the Appellants' Amended Complaint. *See,* 28 U.S.C. § 1291.

1

## ISSUES PRESENTED FOR REVIEW

ISSUE #1:  Can the City of New York and the New York City Fire Department (collectively referred to as "FDNY") unilaterally create a new condition of employment pursuant to the N.Y. Civil Service Law, without entering into an agreement with its public employees' unions?

ISSUE #2:  Did the Appellants state a claim for declaratory judgment with respect to their First and Second Causes of Action in the Amended Complaint seeking declarations regarding violations of the Appellants' constitutional and statutory rights?

ISSUE #3:  Did the Appellants receive the constitutionally sufficient minimum procedural due process, when the FDNY unilaterally imposed upon the Appellants and two out of the three public employees' unions representing employees of the FDNY, the process and procedures for the implementation of the COVID-19 vaccine mandate?

ISSUE #4:  Did the Appellants state a cause of action for Section 1983 conspiracy?

ISSUE #5:  Should the Appellants' class claims be reinstated?

ISSUE #6:  Should the District Court have granted the Appellants leave to amend the Amended Complaint to cure any deficiencies?

ISSUE #7:  If this Court reverses the District Court's decision to dismiss the Appellants' Action, and remands the case to the District Court, should this Court direct that the case be reassigned to a different judge on remand?

## STATEMENT OF THE CASE

The Appellants are appealing the Memorandum and Order of the Hon. Kiyo A. Matsumoto, U.S.D.J. dismissing this Action pursuant to FRCP Rule 12(b)(6). JA-619-JA-653.  (*Garland v. City of NY*, 2023 US Dist LEXIS 54100 (E.D.N.Y. Mar. 29, 2023)).[1]

In addition, the Appellants are appealing the Memorandum and Order of the Hon. Kiyo A. Matsumoto, U.S.D.J. denying the Appellants a preliminary injunction that sought to enjoin the FDNY from suspending the Appellants from their employment without pay and without due process for not taking the COVID-19 vaccine. JA-314-JA-340 (*Garland v. NY City Fire Dept.*, 574 F.Supp.3d 120 (E.D.N.Y. 2021).

---

[1] On May 19, 2023, the District Court replaced its original decision with a revised decision that corrects the fact that the Appellants stipulated to dismiss, with prejudice, their claims against the Uniformed Firefighters Association of Greater New York ("UFA") and the Uniformed Fire Officers Association, Local 854 International Association of Firefighters, affiliated with the AFL-CIO ("UFOA"). *Compare,* JA-587, at footnote 4 *with* JA-622, at footnote 4.  When referring to the Court's Decision and Order dismissing the Action, the Appellants will quote from or refer to the Decision and Order, as revised.  JA-619-JA-653.

*********

The Appellants are current and former employees of the FDNY who refused to take the COVID-19 vaccine after the promulgation by the New York City Commissioner of Health of the COVID-19 Vaccine Mandate Order ("Vaccine Mandate Order"). The Appellants are challenging the implementation of the Vaccine Mandate Order, arguing that the implementation of the Vaccine Mandate Order by the FDNY violated the Appellants' constitutional rights to due process (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d 41, 44 (2d Cir 2001)) and their property rights in their pay (*Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019)). In addition, the Appellants allege that there was a conspiracy by the Appellees to violate their constitutional rights.

The FDNY imposed upon the Appellants and two out of the FDNY's public employees' unions (UFA and UFOA), the process and procedure it used to implement the Vaccine Mandate Order.

The UFA and the UFOA, two out of three of FDNY's public employee unions, "either did not come to agreement with the City or chose not to engage in any negotiations at all concerning the impact of the City Order, and instead,

unsuccessfully challenged the vaccination mandate at the Board of Collective Bargaining and in the Courts." JA-404.[2]

This case is about how the FDNY imposed the Vaccine Mandate Order, without the consent and approval of its unions, ignoring State law (N.Y. Civil Service Law § 201.4.) and procedure (DC37 Agreement was not approved by DC37's membership) in an effort to force, impose, and break the will of the Appellants who did not comply with the Vaccine Mandate Order. The FDNY's illegal imposition of the Vaccine Mandate Order on members of the UFOA and the UFA violated the Appellants' constitutional rights and the Appellants have been damaged as a result. In addition, the conspiracy between the FDNY and the DC37 Appellees, also violated the Appellants' constitutional rights and the Appellants have been damaged as a result of the conspiracy.

## STATEMENT OF THE FACTS

On October 20, 2021, the New York City Commissioner of Health issued the Vaccine Mandate Order requiring "all New York city employees to show proof of at least one dose of vaccination against COVID-19 by 5:00 p.m. by October 29, 2021." JA-401.

---

[2] The third public employee union, the Appellees District Council 37, AFSCME, AFL-CIO ("DC37") and Henry Garrido ("Garrido") (collectively referred to as "DC37 Appellees") entered into an agreement with the FDNY (JA-297-JA-302) ("DC37 Agreement"), but the agreement was not ratified by DC37's members.

The Appellants are current or former employees of the FDNY who refused to comply with the Vaccine Mandate Order, and as a result, were suspended without pay without due process and some were ultimately terminated from their employment with the FDNY without due process.

The FDNY unilaterally imposed the process and procedure when it chose to implement the Vaccine Mandate Order. The FDNY failed to negotiate with the UFA and the UFOA (JA-404) that could have resulted in the creation of an agreed-to new condition of employment for the members of the UFA and UFOA.

The FDNY's process and procedure it unilaterally imposed to implement the Vaccine Mandate Order violated the Appellants' due process rights (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44) and property interests in their pay (*Tooly v. Schwaller*, 919 F.3d at 173) by suspending the Appellants without pay, without charges and specifications of misconduct and without a hearing pursuant to New York City Administrative Code § 15-113. Some of the Appellants were ultimately terminated without charges and specifications of misconduct and without a hearing pursuant to New York City Administrative Code § 15-113.

The New York City Administrative Code § 15-113 states:

> Officers and members of the uniformed force shall be removable only after written charges shall have been preferred against them, and after the charges shall have been publicly examined into, upon such reasonable notice

6

> of not less than forty-eight hours to the person charged,
> and in such manner of examination as the rules and
> regulations of the commissioner may prescribe. The
> examination into such charges and trial shall be conducted
> by the commissioner, a deputy commissioner or other
> person designated by the commissioner in writing for that
> purpose; but no decision shall be final or be enforced until
> approved by the commissioner.

Whether the employee was a member of the UFA, the UFOA, or DC37, the FDNY failed to comply with the Administrative Code section because no Appellant who was suspended without pay because of their COVID-19 vaccination status, received written charges or received a hearing, nor did any Appellant who was suspended without pay or terminated because of their COVID-19 vaccination status receive a hearing before they were terminated.

Finally, it is important to note that this appeal does not challenge the Vaccine Mandate Order. This appeal is a challenge to the process by which the FDNY implemented the Vaccine Mandate Order and the fact that FDNY did not enter into any agreement with the UFA or the UFOA prior to implementing the Vaccine Mandate Order. In addition, this appeal challenges the fact that the DC37 Agreement was not ratified by DC37's members and therefore it could not create a new condition of employment.

The FDNY's unilateral imposition of the process and procedures used to implement the Vaccine Mandate Order violated the Appellants' constitutional rights.

### A. FDNY Issued A Memorandum Imposing The Vaccine Mandate

On October 21, 2021, John J. Hodgens ("Hodgens"), FDNY's Chief of Operations issued a memorandum requiring all FDNY employees to submit proof of COVID-19 vaccination by October 29, 2021 at 5pm. JA-250 ("Hodgens' Memorandum").

Hodgens' Memorandum stated that members of the FDNY "may be considered for exemption from the COVID-19 vaccine mandate under limited circumstances on the basis of a sincerely held religious belief or a medical contraindication." JA-250.

Hodgens' Memorandum stated that "[r]equests for exemptions must be submitted … by 10/27 in order for the employee to not be placed on unpaid leave status on 11/1." JA-250.

Hodgens, however, was not authorized by the New York City Charter to issue the Hodgens' Memorandum imposing the Vaccine Mandate Order.

The New York City Charter Section 487(a) empowers the FDNY Commissioner to "have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire

department and the premises and property in the custody thereof …"  N.Y.C. Charter § 487(a).

No where in the Hodgens' Memorandum did the Respondent Daniel A. Nigro ("Nigro"), the Commissioner of the FDNY authorize Hodgens to issue the Hodgens' Memorandum.

Since only Nigro had the legal authority to manage and discipline the employees of the FDNY, the memorandum was issued without any legal authority. Despite the lack of legal authority, the FDNY enforced Hodgens' Memorandum's terms.[3]

### B.    FDNY Suspended The Appellants Without Pay For Not Taking The COVID-19 Vaccine

Relying upon the Hodgens' Memorandum, on November 1, 2021, the FDNY suspended without pay all employees of the FDNY who did not comply with the Vaccine Mandate or apply for an accommodation.

---

[3] The District Court described the Appellants' argument: "frivolous on its face, as the logical inference that Plaintiffs urge the Court to draw is that the FDNY Commissioner's name must be on every memorandum issued to FDNY employees or the memorandum will violate § 487(a). (*Id.*; ECF No. 73, Plaintiffs' Mem. at 9.) In any case, because the Court looks to "federal constitutional standards rather than state [or local] statutes" to define the requirements of procedural due process, as discussed above, Plaintiffs' argument is meritless. *Robison*, 821 F.2d at 923."  JA-644-JA-645, at footnote 9.  The Appellants disagree that the argument is frivolous. The fact that Nigro did not send the Memorandum is just another procedural defect in the FDNY's implementation of the Vaccine Mandate Order.

On November 24, 2021, the Appellants moved, by Order to Show Cause, seeking a Temporary Restraining Order and a Preliminary Injunction before the District Court seeking to prevent the FDNY from: (1) withholding pay from the Appellants for failing to take a COVID-19 vaccine; and (2) disciplining the Appellants, including but not limited to terminating the Appellants without proffering charges and specifications and granting the Appellants a hearing on the charges. JA-56-JA-60.

The FDNY argued that the Vaccine Mandate Order was a "requirement of employment". JA-106. In addition, the FDNY argued that the FDNY employees who did not comply with the Vaccine Mandate Order "are no longer fit and/or qualified to continue their public employment with the City." JA-125. The FDNY further argued that it "cannot permit unvaccinated employees, absent exemption or accommodation required by law, to perform their job functions when they lack the fitness to do so under the" Vaccine Mandate Order. JA-126. As a result, the FDNY argued, the Appellants were not entitled to due process.

The District Court denied the Appellants' Motion, holding that the Vaccine Mandate Order was a qualification of employment and that Nigro "was within his powers to require COVID-19 vaccination as a qualification of employment for FDNY employees. Appellants failed to satisfy this condition of employment, rendering themselves no longer qualified to serve as FDNY employees." JA-327.

As a result, the District Court held, "termination based on a failure to satisfy a qualification of employment does not trigger the proffer of charges and pre-deprivation hearing requirements of section 15-113, Appellants' argument that Defendants violated their statutory rights is of no avail."  JA-327.

As a result, the Appellants continued to be suspended without pay without due process for not taking the vaccine.

**SUMMARY OF ARGUMENT**

1.      Pursuant to N.Y. Civil Service Law, the FDNY cannot unilaterally create a condition of employment.  The FDNY must negotiate with its public employees' unions and reach an agreement before a condition of employment can be imposed upon the members of the unions.  The UFA and the UFOA did not reach an agreement with the FDNY, and as a result, the FDNY could not unilaterally impose the process and procedure by which it implemented the Vaccine Mandate Order upon member of those unions.  When the FDNY suspended the Appellants-members of the UFA and the UFOA without pay and without due process and ultimately terminated some of the Appellants without due process, the FDNY violated N.Y. Civil Service Law.

2.      The Declaratory Judgment Act authorizes and permits parties to seek declaratory judgment relief from the federal court as a cause of action. 28 U.S.C. § 2201(a).  The Appellants have stated plausible claims for declaratory judgment relief in their First and Second Causes of Action in the Amended Complaint.

3.      Since the procedure and the process by which the FDNY implemented the Vaccine Mandate Order violated the N.Y. Civil Service Law, the FDNY did not provide the Appellants with the constitutionally

sufficient minimum procedural due process before the Appellants were suspended without pay and/or terminated from their employment with the FDNY. In addition, the FDNY cannot meet the standard set forth in *Mathews v. Eldridge,* 424 U.S. 319 (1976). The Appellants have stated a plausible claim that the FDNY violated the Appellants constitutional rights in violation of 42 U.S.C. § 1983.

4. The Appellants stated a cause of action for 42 U.S.C. § 1983 conspiracy. The FDNY, its then-Commissioner, Nigro (collectively referred to as "FDNY Appellees") conspired with the DC37 Appellees by entering into the DC37 Agreement, which violated the Appellants' constitutional rights.

5. The Appellants' class claims should be reinstated because the claims sufficiently establish that a class action is an appropriate method of litigating the Appellants' claims.

6. To the extent the Appellants' Amended Complaint was insufficient to overcome the Appellees' Motion to Dismiss, the Appellants should have been granted leave to amend the Amended Complaint.

7.    If this Court reverses the District Court's decision to dismiss this Action and remands the matter to the District Court, this Court should direct that the case be re-assigned to a different judge.

## ARGUMENT

**POINT I.        STANDARD OF REVIEW OF A MOTION TO DISMISS**

In *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir 2021) (internal quotation marks omitted), this Court opined: "[i]n order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

The District Court, instead of examining the Appellants' allegations and causes of action on the lower standard of a Motion to Dismiss, examined the Appellants' allegations as it did when denying the Appellants' Motion for Preliminary Injunction.

> [T]he Court previously reviewed Plaintiffs' legal arguments under the higher pleading standard for a mandatory injunction. The Court found that Plaintiffs failed to satisfy the standard for a mandatory injunction by demonstrating a "clear" or "substantial" likelihood of success on the merits of their procedural due process claims, rather than merely a likelihood of success…
>
> Having reviewed Plaintiffs' procedural due process allegations at length—and now examining any well-pleaded factual allegations in the Amended Complaint, exhibits, and incorporated or integral documents—the Court concludes on the merits that "the pre-deprivation and post-deprivation processes afforded to Plaintiffs were

14

> constitutionally adequate," and, therefore, Plaintiffs'
> Amended Complaint fails to state a claim and must be
> dismissed

JA-604-605 (internal citations and quotations omitted).

The District Court placed a higher burden on the Appellants in the Motions to Dismiss than a plausibility standard. The District Court's clear or substantial likelihood of success on the merits' standard was an erroneous standard.

The Appellees did not file Motions for Summary Judgment, but Motions to Dismiss and the Appellants have plausibly pled sufficient allegations to set forth causes of action against each of the Appellees. The lower standard of plausibility and not a higher standard of likelihood of success should be applied to the allegations set forth in the Appellants' Amended Complaint.

Accordingly, when the District Court used the wrong standard to determine the Defendants' Motions to Dismiss, the District erred and this Court should now reverse.

**POINT II.          THE FDNY MUST REACH A RESOLUTION WITH ITS PUBLIC EMPLOYEES' UNIONS BEFORE IT CAN CREATE A CONDITION OF EMPLOYMENT**

The FDNY argued that the Vaccine Mandate Order: (a) was a qualification for employment (JA-105); (b) established that unvaccinated employee "are no longer

permitted to perform work for the City (JA-106); (c) was a lawful employment requirement (JA-106); and (d) was a condition of employment (JA-126).

In the District Court, the FDNY shifted its nomenclature to fit the Vaccine Mandate Order into a legal theory that permitted the FDNY to have *carte blanche* suspension and termination authority over employees who did not comply with the Vaccine Mandate Order.

Moreover, whether it was a qualification, being imposed by the FDNY, which created an unfitness for duty issue, or whether it was a condition of employment, the FDNY could not unilaterally impose the procedures and process by which the FDNY implemented the Vaccine Mandate Order against non-compliant employees, such as the Appellants.

"The obligation under the Taylor Law to bargain as to all terms and conditions of employment is a strong and sweeping policy of the State." *Bd. of Educ. of City Sch. Dist. v NY State Pub. Empl. Relations Bd.*, 75 N.Y.2d at 667 (internal quotation marks omitted).

The FDNY failed to bargain with two out of three bargaining units to create a new condition of employment.[4]

---

[4] The FDNY argued that "City employees that are members of UFA and UFOA are not entitled to the benefits negotiated by other unions, i.e. separation from employment with enhanced payment of accrued paid time off or extension of LWOP with health benefits, but did receive the below-described reasonable accommodation procedures available to all City employees." JA-406. This

Under New York labor law, there is only one statutory method for the FDNY to create a new condition of employment for its employees. The condition of employment must be created as part of a negotiated settlement with the FDNY's public employees' union. If no agreement is reached at the bargaining table and an impasse is declared, the resolution of the impasse is through binding arbitration. *See,* N.Y. Civil Service Law § 209.4(c). But in no event can the FDNY impose a new condition of employment upon the employees of the FDNY without going through the collective bargaining process.

N.Y. Civil Service Law § 201.4. states:

> 4. The term "terms and conditions of employment" means:
>
> (a) salaries, wages, hours and other terms and conditions of employment provided, however, that such term shall not include any benefits provided by or to be provided by a public retirement system, or payments to a fund or insurer to provide an income for retirees, or payment to retirees or their beneficiaries. No such retirement benefits shall be negotiated pursuant to this article, and any benefits so negotiated shall be void.

---

statement acknowledges that the FDNY unilaterally imposed the procedures and process it chose to implement the Vaccine Mandate Order on UFA and UFOA members, denying them accommodations and options that other City employees received when the City employees' unions negotiated with the City and reached an agreement on the procedures for implementing the Vaccine Mandate Order.

(b)    in addition, the terms and conditions of
employment for firefighters shall include
discipline and disciplinary procedures
including alternatives to any statutory
disciplinary system, provided, however, that
any right of firefighters under the terms of
any state law to elect coverage under either a
statutory disciplinary system or a disciplinary
system established by collective negotiations
shall not be impaired, unless any such state
law authorizes exclusivity of a negotiated
disciplinary system and provided further that
no provision contained in the town law,
general city law, second class cities law,
general municipal law, municipal home rule
law, county law, or other state, local, special
law or charter provision, or any special police
act or other special act created by local law or
charter or otherwise created, or this chapter
shall prevent or impair the right to collective
bargaining for or modification of disciplinary
procedures.

The FDNY's unilaterally imposed process and procedure for the
implementation of the Vaccine Mandate Order were mandatory subjects of
negotiations and the failure to negotiate a settlement with the UFA and the UFOA
made the imposition of the process and procedure a violation of N.Y. Civil Service
Law.

The FDNY did not enter into an agreement with the UFA or the UFOA. In
fact, the FDNY recognized that the UFA and the UFOA "either did not come to
agreement with the City or chose not to engage in any negotiations at all concerning

18

the impact of the City Order, and instead, unsuccessfully challenged the vaccination

mandate at the Board of Collective Bargaining and in the Courts." JA-404.

"Pursuant to article 14 [of the Civil Service Law (Taylor Law)], an employer

is required to negotiate terms and conditions of employment." *Evans v Newman*, 71

A.D.2d 240, 243 (3d Dept 1979).

With respect to firefighters, N.Y. Civil Service Law § 201.4(b) required the

FDNY to negotiate with the UFA and the UFOA regarding the "discipline and

disciplinary procedures" to be imposed upon employees of the FDNY for not

complying with Vaccine Mandate Order.

While the FDNY argues that its suspension without pay without due process,

and in some cases, termination without due process, was not discipline because it

unilaterally created a new condition of employment, the FDNY failed to, in fact,

lawfully create a condition of employment under New York law.

When examining whether the COVID-19 vaccine mandate issued by the New

York State Unified Court System ("UCS") was a mandatory subject of negotiations

between the UCS and its public employees' unions, New York State Public

Employment Relations Board ("PERB") held:

> However, while I find that UCS was not required to
> bargain over its decisions to require employees in the
> bargaining units to vaccinate or test for COVID-19, the
> Policies were implemented using procedures which were
> the result of many other decisions, decisions which are not
> themselves a necessary consequence of UCS' decisions to

19

require vaccination or testing. In adopting the Policies,
UCS unilaterally implemented extensive procedures that
implicate various terms and conditions of employment,
including leave time, compensation, discipline, job
security, and medical privacy, all of which must be
bargained …. Therefore, I find that UCS had a duty to
negotiate with the charging parties over the chosen
procedures used to implement the Policies, to the extent
that they implicate terms and conditions of employment.

*In the Matter of Suffolk County Court Employees Association Inc. v. New York State
Unified Court System,* 6 PERB ¶ 4513 (2023).

PERB ordered UCS to bargain with its public employees' unions, reinstate the

employees who were on leave or terminated as a result of non-compliance with the

vaccine mandate, and expunge all records of disciplinary action taken against the

non-compliant employees. *See, In the Matter of Suffolk County Court Employees

Association Inc. v. New York State Unified Court System,* 6 PERB ¶ 4513.

In *The New York City Municipal Labor Committee v. The City of New York*,

15 OCB2d 34 (2022), the New York City Office of Collective Bargaining held that

the City committed an improper practice because it did not bargain over the policies

the City unilaterally implemented to enforce the Vaccine Mandate Order.

Similarly, before the Office of Collective Bargaining between the UFA and

the FDNY, the Office of Collective Bargaining stated that "the City has

acknowledged its willingness to negotiate the impact of the vaccine mandate for City

workers. The Board strongly encourages the parties to meet expeditiously to discuss

these issues and attempt to resolve them through collective bargaining."  JA-238-JA-239.

The final decision issued by the Office of Collective Bargaining, cited by the FDNY in opposition to the Appellants' Motion for a Preliminary Injunction (JA-238-JA-239) stated:

> The Unions assert that the Vaccine Mandate has an impact on various mandatory subjects of bargaining. We note that the majority of these claims are duplicative of those addressed in *MLC*, 15 OCB2d 34 (BCB 2022) ("*MLC*"). In that case, the petitioners, which included the UFA and UFOA, did not challenge the Vaccine Mandate itself but asserted that the policies and procedures the City separately promulgated in order to implement the Vaccine Mandate concerned mandatory subjects of bargaining and constituted a unilateral change. The Board found that those policies constituted a change that affected issues of leave, wages, and procedures for a reasonable accommodation process, all of which were mandatory subjects of bargaining, and it ordered bargaining over these topics. Thus, the UFA's scope of bargaining claims regarding LWOP and its effects on other contractual economic benefits and the reasonable accommodation process have already been addressed, and the Board has ordered bargaining on those matters.

*Uniformed Firefighters Association of Greater New York, Local 94, IAFF, AFL-CIOO, et al v. City of New York, et al.*, 16 O.C.B.2d 7 (2023).

21

In *Broecker v. NY City Dept. of Educ.*, 585 F.Supp.3d 299, 315-316 (E.D.N.Y. 2022) (Matsumoto, J.)[5] the same District Judge that dismissed the Appellants' Amended Complaint in this Action acknowledged that the New York City Department of Education could create a condition of employment but only through negotiating with its unions.[6]

> The Court also finds unavailing Plaintiffs' further argument that Defendant NYC DOE created a condition of employment in contravention of New York Civil Service Law Section 201.4, which requires the NYC DOE employer to negotiate and bargain terms and conditions of employment. Contrary to Plaintiffs' argument, after reaching an impasse, the NYC DOE and the Defendant unions did negotiate and bargain over the impact of the COH Order, which ultimately resulted in the Arbitration Awards. The Arbitration Awards provide, *inter alia*, that the NYC DOE may "seek to unilaterally separate" employees who have not elected to voluntarily separate or to extend their LWOP status after December 1, 2021, and that "except for the express provisions contained, herein, all parties retain all legal rights at all times." (*See* ECF No. 19-1, O'Connor Decl., Ex. A, UFT Arbitration Award at III.C; ECF No. 19-2, O'Connor Decl. at Ex. B, CSA Arbitration Award at III.C.) Based on the foregoing, the Court finds that the NYC DOE and the Defendant unions complied with New York Civil Service Law Section 201.4.

---

[5] *Broecker* is the subject of an appeal before this Court under Case Number 23-655.

[6] Despite the same Court's holding in *Broecker*, the District Court in this Action did not examine this issue in response to the Appellees' Motions to Dismiss, despite the issue having been directly argued by the Appellants in opposition to the Motions to Dismiss. JA-453-JA-457.

Since the FDNY did not reach an agreement with the UFA and the UFOA regarding the procedures and process the FDNY used to implement the Vaccine Mandate Order in accordance with N.Y. Civil Service Law § 201.4., the procedures used by the FDNY to implement the Vaccine Mandate Order, including suspending without pay without due process those Appellants who did not comply with the Vaccine Mandate Order, and terminating without due process those that did not comply with the Vaccine Mandate Order, means that the FDNY violated the N.Y. Civil Service Law and the N.Y.C. Administrative Code § 12-306(a)(4).

The FDNY had a legal obligation to comply with N.Y. Civil Service Law and N.Y.C. Administrative Code § 12-306(a)(4) and obtain an agreement with the UFA and the UFOA regarding the processes and procedures the FDNY used to implement the Vaccine Mandate Order.

Because the FDNY did not reach an agreement with UFA and the UFOA, the Vaccine Mandate Order did not become a new condition of employment for FDNY employees. *See,* N.Y. Civil Service Law § 201.4; N.Y. Civil Service Law § 209.4.

As a result, since the Vaccine Mandate Order never became a condition of employment upon UFA and UFOA members, the FDNY's decisions to suspend the Appellants-members of the UFA and the UFOA without pay, without due process, and terminate their employment without due process, for non-compliance with the

Vaccine Mandate Order, violated the Appellants' constitutional rights. *See, Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44; *Tooly v. Schwaller*, 919 F.3d at 173.

The Appellants have sufficiently stated a plausible claim for declaratory relief that the FDNY violated the Appellants' constitutional rights because the FDNY suspended the Appellants without pay and terminated some, without due process, while never lawfully created a condition of employment. JA-366, at ¶¶ 173-181. This Court should reverse the District Court's decision to dismiss this Action.

*******************

Despite the District Court's ruling (JA-327) the FDNY did not lawfully create a condition of employment. Therefore, the FDNY violated the Appellants' constitutional right to due process (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44) and their property right to their pay (*Tooly v. Schwaller*, 919 F.3d at 173) when the Appellants were suspended without pay and without due process and then terminated without due process.

The Appellants have plausibly stated a cause of action against the FDNY for violation of the Appellants' constitutional rights in violation of 42 U.S.C. § 1983.

This Court should reverse the District Court's decision to dismiss the Appellants' Amended Complaint.

**POINT IV.**      **THE APPELLANTS STATED A CLAIM FOR DECLATORY JUDGMENT IN THEIR FIRST AND SECOND CAUSES OF ACTION**

The first two causes of action in the Appellants' Amended Complaint seek declaratory judgment relief. JA-366-JA-367, at ¶¶ 173-187.

The District Court held:

> In Plaintiffs' Amended Complaint, the first and second "causes of action" request a declaratory judgment, presumably under the Declaratory Judgment Act ("DJA") …. The DJA "provides a remedy, not a cause of action." *KM Enters. Inc. v. McDonald*, No. 11-CV-5098 (ADS) (ETB), 2012 U.S. Dist. LEXIS 138599, 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013). "Similarly to declaratory relief, a request for injunctive relief is not a separate cause of action." 2012 U.S. Dist. LEXIS 138599, [WL] at *20 (alteration and internal quotation marks omitted); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y.2010) ("Declaratory judgments and injunctions are remedies, not causes of action.") Because Plaintiffs' first [and] second … "causes of action" request remedies, rather than plead a separate claim, the first [and] second … "causes of action" are dismissed for failure to state a claim.

JA-633-JA-634.

The District Court erred and this Court must reverse and re-instate the Appellants' first two causes of action.

## A. Justiciable Controversy Exists

In *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-241 (1937) (internal citations omitted) the Court held that the Declaratory Judgment Act grants subject matter jurisdiction to federal courts to determine an actual controversy between the parties.

In fact, in *Aetna Life Ins. Co.*, the United States Supreme Court stated: "the complaint presented a controversy to which the judicial power extends and that authority to hear and determine it has been conferred upon the District Court by the Declaratory Judgment Act." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. at 244.

The District Court erred because it summarily dismissed the causes of action without determining whether the Amended Complaint "presented a controversy to which the judicial power extends", whether there was a real and substantial controversy, or whether there is a concrete case of an admitted and definitive determination of the legal rights of the parties.

In this case, the Appellants allege that their Fourteenth Amendment rights to due process and their property right in their pay were violated. JA-368, at ¶¶ 191-194.

The FDNY opposes that argument and argues that it did not violate the Appellants' Fourteenth Amendment rights to due process or violate the Appellants' property right in their pay without due process.

Further, the FDNY and DC37 argued that the DC37 Agreement was a valid contract between the parties regarding the procedures relating to implementation of the Vaccine Mandate Order.

Since the Appellants filed the Amended Complaint there has been a justiciable controversy between the Appellants and the Appellees relating to the issues addressed in the Appellants' first two causes of action.

As a result, the District Court erred and this Court should now reverse. The Appellants' first two causes of action should be reinstated.

### B. The Appellants Do Not Rely Upon The Declaratory Judgment Act For Subject Matter Jurisdiction

The Appellants do not rest subject matter jurisdiction in the federal court on the Declaratory Judgment Act, but upon 42 U.S.C. § 1983. *See,* JA-356, at ¶¶ 99 and 100. The Appellants are not seeking to extend federal court jurisdiction by seeking declaratory judgment relief in the Amended Complaint. The Appellants are requesting Orders resolving the legal rights of the parties in the Appellants' first two causes action.

In *Chevron Corp. v. Camacho Naranjo*, 667 F.3d 232, 244-245 (2d Cir 2012), (internal quotation marks and citations omitted) this Court opined: "The DJA gives a district court the discretion to declare the legal rights and other legal relations of any interested party seeking such declaration. But that discretion does not extend to the declaration of rights that do not exist under law. Like a preliminary injunction, a declaratory judgment relies on a valid legal predicate."

In this case, the Appellants' arguments relating to the unilateral implementation of the Vaccine Mandate Order and the DC37 Agreement serve as legal predicate for the Court to determine the rights of the Appellants vis-a-vis the Appellees as alleged in the first two causes of action.

The Appellants are not seeking to extend the federal court's jurisdiction over any issues or matters that are not integral to the Appellants' allegations asserted pursuant to 42 U.S.C. § 1983. The District Court erred for summarily dismissing the causes of action.

In *Norton v. Town of Islip*, 678 F.App'x 17, 22 (2d Cir 2017), this Court opined that "because no other federal claims survived the pleading stage, the District Court did not have subject matter jurisdiction to hear Norton's argument for declaratory relief and it properly dismissed those claims."

In this Action, the District Court did not dismiss the first two causes of action because there were no federal claims that survived. Instead, the District Court summarily dismissed the Appellants' first two causes of action without considering that the Appellants were seeking judicial determinations that were inter-related and intertwined with the Appellants' causes of action based upon 42 U.S.C. § 1983 and the violations of the Appellants' constitutional rights.

In *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014) (internal citations and quotation marks omitted), the Court opined that: "federal courts, when determining declaratory judgment jurisdiction, often look to the character of the threatened action. That is to say, they ask whether a coercive action brought by the declaratory judgment defendant … would necessarily present a federal question."

In this Action, the FDNY's unilateral actions with respect to its implementation of the Vaccine Mandate Order necessarily present a federal question relating to how the FDNY implemented the Vaccine Mandate Order against the non-compliant Appellants, since the FDNY's implementation of the Vaccine Mandate Order violated the Appellants' constitutional rights to due process (*Shaffer v. Schenectady City Sch. Dist.*, 245 F.3d at 44) and their property rights in their pay (*Tooly v. Schwaller*, 919 F.3d at 173).

For example, the First Cause of Action seeks an Order declaring that the Appellants' Fourteenth Amendment rights were violated when the FDNY did not provide the Appellants due process rights before suspending the Appellants without pay or terminating their employment, without due process, violating the Appellants' property rights in their pay (*Tooly v. Schwaller*, 919 F.3d at 173). JA-366, at ¶¶ 174-181. Federal question jurisdiction is intertwined with the declaration of rights sought by the Appellants.

Additionally, the Second Cause of Action declaring the DC37 Agreement was not entered into with contractual authority and therefore the FDNY's suspension and termination of DC37 members violated those members' due process rights and property rights in their pay. JA-367, at ¶¶ 182-187. Federal question jurisdiction is intertwined with the declarations of rights sought by the Appellants.

Finally, the Appellees did not argue that the Court lacked jurisdiction to hear and determine the Appellants' first two causes of action. Instead, the District Court, *sua sponte* and erroneously dismissed the Appellants' first two causes of action without considering the issues addressed in the causes of action.

Accordingly, this Court should reverse the District Court's determination and reinstate the Appellants' first two causes of action.

**POINT V.**     **THE FDNY DID NOT PROVIDE THE APPELLANTS WITH CONSTITUTIONALLY SUFFICENT DUE PROCESS BEFORE IT PLACED THE APPELLANTS ON LEAVE WITHOUT PAY AND/OR TERMINATED THEM FROM EMPLOYMENT**

The District Court examined whether the procedures unilaterally implemented by the FDNY set forth the minimum due process to be constitutionally sufficient. JA-634-JA-635.

However, the District Court admittedly and intentionally ignored the fact that the procedures and process adopted by the FDNY to implement the Vaccine Mandate Order were all procedurally illegal and could not have lawfully served as the procedures for the implementation of the Vaccine Mandate Order, since they were arrived at in violation of New York State law. JA-647.

The District Court, citing to *Tooly v. Schwaller*, 919 F.3d at 172-173 stated: "the Second Circuit recently reiterated that a district court failed to properly assess whether a defendant's conduct violated the procedural guarantees of the Due Process Clause where the court examined the due process claim exclusively by assessing a defendant's failure to comply with state law." JA-647.

But in the portion of the *Tooly* decision where the District Court cited to, it does not bar a District Court from examining State law due process guaranties to determine whether the government entity infringed upon the individual's due process rights.

31

In fact, in the cited section in *Tooly*, the Court was addressing whether qualified immunity should apply, not whether a government agency provided the plaintiff with due process. In the section of the *Tooly* decision, the Court stated "a state statute does not serve as "clearly established law" for purposes of qualified immunity. Since a violation of state law does not *per se* result in a violation of the Due Process Clause, it cannot *per se* defeat qualified immunity." *Tooly v. Schwaller*, 919 F.3d at 172.

The District Court intentionally ignored State law and the City Administrative Code that provide the Appellants as employees of the FDNY due process rights and protections against suspensions without pay without due process and terminations without due process.

Instead, the District Court stated that

> Thus, to the extent that Plaintiffs base their procedural due process claims solely on alleged violations of state and municipal law, as noted above, their claims fail. *See McDarby v. Dinkins*, 907 F.2d 1334, 1337-38 (2d Cir. 1990) ("When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations."); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.1987) ("State procedural requirements do not establish federal constitutional rights. At most, any violation of state procedural requirements would create liability under state law." (citations omitted)). Plaintiffs provide no facts or law supporting a contrary argument, and Plaintiffs cannot add

news facts at this stage. As discussed above, Plaintiffs conclusorily argue that they were suspended without due process. (ECF No. 73, Plaintiffs' Mem. at 20 ("If the Vaccine Mandate is not a condition of employment for FDNY employees, then, the City Defendants had no legal right or authority to suspend the Plaintiffs without pay without due process.").) The allegations in the Amended Complaint—establishing that Defendants provided notice and an opportunity to seek accommodations via exemptions—satisfy due process. Accordingly, because the Court has found that there was constitutionally sufficient process, Plaintiffs' procedural due process claims—the § 1983 claim against all Defendants and the § 1983 claim for "direct participation and aiding and abetting" against individual Defendants—are dismissed for failure to state a claim.

JA-647-JA-648.

The District Court, by ignoring the unlawful process through which the FDNY implemented the Vaccine Mandate Order (without reaching an agreement on the terms and conditions pursuant to N.Y. Civil Service Law § 201.4), the District Court erred.

The District Court should not have ignored the fact that the FDNY failed to negotiate and reach an agreement or had binding arbitration before it changed the terms and conditions of the members of the UFA and UFOA.

The FDNY does not identify any statutory, administrative, or case law authority that permitted the FDNY to suspend without pay the Appellants if the Appellants did not apply for accommodations or their accommodation request was

denied. JA-250. The FDNY had no legal authority to suspend the Appellants without pay without violating the Appellants' property right in their pay.

The District Court should have held that the Appellants had stated plausible claims that the FDNY violated the Appellants' due process rights and property right in their pay when the FDNY suspended the Appellants without pay and without due process and ultimately terminated some of the Appellants without due process. The District Court erred when it determined that the FDNY provided the Appellants with the minimum due process.

### A. Appellants' Constitutionally Protected Property Interest In Their Pay Was Violated By The FDNY

When the FDNY suspended the Appellants without pay, without due process, for failing to comply with the Vaccine Mandate Order, the Appellants were deprived of a constitutionally protected property interest.

> [A]n employee who is placed on *unpaid* leave has been deprived of a protected property interest, but "an employee who is on leave and receiving his normal salary" has not. *O'Connor*, 426 F.3d at 199. And this remains so even though the employee is required to draw upon leave accruals, such as sick leave, to maintain that salary." As long as the employee is receiving a paycheck equivalent to his normal salary, that the employee is drawing down his sick leave is a bookkeeping entry with no pecuniary effect." *Id.* at 200. Such an employee has only been deprived of a property interest triggering due process when "he suffers a financial loss because of that leave's unavailability," *e.g.*, when the employee runs out of leave accruals while still on leave. *Id* at 199.

34

*Tooly v. Schwaller*, 919 F.3d at 173.

In *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x 788, 793 (2d Cir. 2019) *cert. denied*, *Waronker v Hempstead Union Free Sch. Dist.*, 140 S.Ct 2669 (2020) the Court held:

> In this case, Waronker's property-based procedural due process claim rests on the Board's decision to place him on a paid administrative leave of absence. Under this Circuit's precedents, however, an employee who is suspended is not deprived of a protected property interest "[so] long as the employee is receiving a paycheck equivalent to his normal salary." *Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019) (internal quotation marks omitted). Thus, while "an employee who is placed on unpaid leave has been deprived of a protected property interest," an employee who is placed on paid leave "has only been deprived of a property interest triggering due process when he suffers a financial loss." *Id.* (emphasis omitted) (internal quotation marks omitted). Waronker does not assert, either in his complaint or on appeal, that he was paid less than his full salary while on administrative leave. His suspension therefore does not provide an adequate basis for his procedural due process claim.

The Appellants were suspended without pay and were not provided any due process before their pay was taken away from them. JA-250. Accordingly, the Appellants were deprived of their protected property interest in their pay.

The only argument the FDNY made that it argued relieves it from violating the Appellants' constitutionally protected property rights in their pay is that the

Vaccine Mandate Order was a condition of employment (JA-126) or a qualification of employment (JA-105).

The FDNY argued that the Vaccine Mandate Order was a condition of employment and the FDNY did not discipline the Appellants for failing to comply with the Vaccine Mandate Order, but suspended and terminated the Appellants because the Appellants failed to comply with a condition of employment or a qualification for employment. As a result, the FDNY argued, it had the legal authority to suspend without pay and ultimately terminate the Appellants. JA-105-JA-106.

The District Court determined that the Vaccine Mandate Order was a condition of employment even though a condition of employment can only be created in public employment in New York through negotiations and an agreement with public employee unions. JA-326-JA-327. *See,* N.Y. Civil Service Law § 201.4.; *The New York City Municipal Labor Committee v. The City of New York*, 15 OCB2d 34 (2022); *In the Matter of Suffolk County Court Employees Association Inc. v. New York State Unified Court System,* 6 PERB ¶ 4513 (2023).

The only way for the FDNY to have created a condition of employment for UFA's members and UFOA's members was through an agreement with the UFA and the UFOA at the bargaining table or through binding arbitration, which did not happen. JA-404. N.Y. Civil Service Law § 209.4(c), *In the Matter of Suffolk County*

*Court Employees Association Inc. v. New York State Unified Court System,* 6 PERB

¶ 4513 (2023); *The New York City Municipal Labor Committee v. The City of New*

*York*, 15 OCB2d 34 (2022).

> The New York City Administrative Code § 15-113 states:
>
>> Officers and members of the uniformed force shall be removable only after written charges shall have been preferred against them, and after the charges shall have been publicly examined into, upon such reasonable notice of not less than forty-eight hours to the person charged, and in such manner of examination as the rules and regulations of the commissioner may prescribe. The examination into such charges and trial shall be conducted by the commissioner, a deputy commissioner or other person designated by the commissioner in writing for that purpose; but no decision shall be final or be enforced until approved by the commissioner.

While the Appellants acknowledge Nigro's power as Commissioner to ultimately decide the penalty for the FDNY employees' offense (N.Y.C. Administrative Code § 15-113), the Appellants, FDNY officers, and members of the uniformed force, are entitled to a hearing before a suspension without pay can be imposed.

In fact, Nigro is limited in the forms of discipline he can impose to "reprimand, forfeiture and withholding of pay for a specified time, or dismissal from the force; but not more than ten days' pay shall be forfeited and withheld for any offense." N.Y.C. Administrative Code § 15-113.

Many of the Appellants had their pay withheld for weeks and months without a hearing and without a "conviction of a member of the force of any legal offense or neglect of duty, or violation of rules, or neglect or disobedience of orders or incapacity, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct, or conduct unbecoming an officer or member, or other breach of discipline…." N.Y.C. Administrative Code § 15-113. JA-75, at ¶¶ 10 and 11. JA-77, at ¶ 2. JA-72, at ¶ 2.

The Appellants did not receive constitutionally adequate process in the course of the deprivation of their property rights to their pay.

The FDNY trampled upon the constitutional rights of its employees that failed to take the COVID-19 vaccine. The FDNY put undue financial duress and stress on its employees when, during the COVID crisis, the same government officials were praising the FDNY employees for their hard work and dedication to the public during the heights of the COVID pandemic.

Within a few months of praising these same employees, the FDNY and the government officials used the employees' pay as a weapon to make these hard-working men and women kowtow to a vaccine mandate without any consideration for the employees' constitutional right to their pay. *See, Tooly v. Schwaller*, 919 F.3d at 173; *Waronker v. Hempstead Union Free Sch. Dist.*, 788 F.App'x at 793.

The District Court erroneously dismissed the Appellants' Action. The Appellants have stated a plausible claim for a deprivation of their property right in their pay. The Appellants have stated a plausible claim that the FDNY violated the Appellants' constitutional rights in violation of 42 U.S.C. § 1983.

This Court should reverse the District Court's determination dismissing this Action.

**B.    Appellants' Constitutionally Protected Due Process Rights Was Violated By The FDNY**

The Appellants were suspended without any due process. The FDNY unilaterally removed the Appellants from their positions without notice, charges, or a hearing. The FDNY disciplined the Appellants without providing the Appellants their procedural due process rights.

The Appellants had their constitutional rights violated by the FDNY. The Appellants were entitled to certain minimum processes to protect their rights.

"The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

The FDNY violated the Appellants' constitutional rights to due process by suspending them from their FDNY job without any charges or an opportunity for a hearing.

The New York City Administrative Code § 15-113 states:

> Officers and members of the uniformed force shall be removable only after written charges shall have been preferred against them, and after the charges shall have been publicly examined into, upon such reasonable notice of not less than forty-eight hours to the person charged, and in such manner of examination as the rules and regulations of the commissioner may prescribe. The examination into such charges and trial shall be conducted by the commissioner, a deputy commissioner or other person designated by the commissioner in writing for that purpose; but no decision shall be final or be enforced until approved by the commissioner.

The FDNY failed to comply with the Administrative Code section because no Appellants received written charges nor had any Appellant been granted a hearing before they were suspended.

Accordingly, the Motion Court erred when it dismissed this Action. The FDNY committed unconstitutional conduct.

In *Tiernan v. Walsh*, 294 N.Y. 299, 304 (1945), the Court, interpreting a prior incarnation of N.Y.C. Administrative Code § 15-113, held:

> We read the Code provision last quoted above as affording a hearing to a member of the Fire Department before a penalty may be imposed. Although the section does not in express terms provide for a hearing, provision is made that the punishment or penalty for any offense may be imposed

40

only "on conviction" of a member of the force. The use of
the phrase "on conviction", we think, imports a trial or
hearing as a necessary incident to a disciplinary
proceeding.

In *Matter of D'Angelo v. Scoppetta*, 19 N.Y.3d 663, 668 (2012), the Court

stated that the FDNY did "not dispute that Administrative Code § 15-113 requires a

hearing before its members are subject to punishment by reprimand."

The constitutional and statutory protections that an FDNY officer and

members of the uniformed force possess were ignored, trampled upon, and violated

by the FDNY when the Appellants were suspended from their positions without due

process because they failed to take a COVID-19 vaccine.

The FDNY showed no regard for the Appellants' due process rights. The

FDNY suspended all of the Appellants without providing the Appellants the

minimum level of due process as required by the United States Supreme Court in

*Cleveland Bd. of Educ.*, namely "oral or written notice of the charges against him,

an explanation of the employer's evidence, and an opportunity to present his side of

the story." *Cleveland Bd. of Educ.v. Loudermill*, 470 U.S. at 546.

"Procedural due process imposes constraints on governmental decisions

which deprive individuals of "liberty" or "property" interests within the meaning of

the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v.*

*Eldridge*, 424 U.S. 319, 332 (1976).

"In order to succeed on a claim of deprivation of procedural due process, a plaintiff must establish that state action deprived him of a protected property or liberty interest." *White Plains Towing Corp. v. Patterson*, 991 F.2d 1049, 1061-1062 (2d Cir 1993).

"The two threshold questions in any § 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes and, if so, what process was due before the plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir 1995).

The Appellees do not dispute that the Appellants were deprived of protected property interests in their pay by the FDNY, as a State actor, when it suspended the Appellants without pay.

The question, therefore, is whether the FDNY provided the Appellants with due process prior to the FDNY's suspension of the Appellants without pay. The Appellants have plausibly pled that the FDNY did not provide the Appellants with constitutionally sufficient due process.

To determine the proper test for whether the FDNY provided the Appellants with the constitutionally sufficient procedural due process, this Court in *Rivera-Powell v. NY City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir 2006) (internal citation omitted and internal quotation marks omitted) held:

> When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy. In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. Under those circumstances, the availability of post-deprivation procedures will not, *ipso facto*, satisfy due process.

In this situation, the FDNY implemented the Vaccine Mandate Order through a unilaterally imposed procedure and the DC37 Agreement. The deprivation of the Appellants' constitutional rights was not done by a random, unauthorized employee of the FDNY, but it was done by a decision made by the FDNY, more specifically, Hodgens, imposing the Vaccine Mandate. JA-250.

As a result, post-deprivation procedures, like a N.Y. CPLR article 78 proceeding will not satisfy due process. Instead, the Court must look to *Mathews v. Eldridge*, 424 U.S. at 334-335 (internal citations and quotation marks omitted), in which the Court opined:

> [d]ue process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. [D]ue process is flexible and calls for such procedural protections as the particular situation demands. Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected. More precisely, our prior decisions indicate that identification of

the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

The FDNY cannot meet the three distinct factors standard set forth in *Mathews*.

### C.    Private Interests Affected By Official Action Was Enormous

The Appellants' private interests that were affected by the FDNY's decision to suspend the Appellants without pay was enormous.

The Appellants, who were long-term employees of the FDNY were suspended without pay.

The FDNY stole the Appellants' only source of income, only source of health insurance, their livelihood, and destroyed them economically.

In the District Court, several Appellants offered Affidavits to the District Court describing the personal interests and detriment suffered when the FDNY suspended them without pay. JA-64-JA-78.  Yet, the District Court ignored the private interests implicated by the FDNY's suspension without pay of the Appellants without due process.

"[T]he Mandate threatens to substantially burden the liberty interests of reluctant individual recipients put to a choice between their job(s) and their jab(s)." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir 2021).

"[T]he degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decisionmaking process." *Mathews v. Eldridge*, 424 U.S. at 341.

The private interests of the Appellants cannot be understated. The deprivation of the Appellants' constitutional property right in their pay was abrogated by the FDNY's implementation of the Vaccine Mandate Order.

The private interest element in the *Matthews* test weighs heavily in the Appellants' favor.

### D. The Risk Of An Erroneous Deprivation Of Such Interest Through The Procedures Used, And The Probable Value, If Any, Of Additional Or Substitute Procedural Safeguards

The Hodgens Memorandum was issued on October 21, 2021 (JA-250). Accommodation requests were due on October 27, 2021 (JA-251). The Appellants had little or no time to obtain documentation and other evidence to support the accommodation requests.

The Appellants did not have an opportunity to be heard at a meaningful time and in a meaningful manner. Six days between being told they had to apply and the

deadline to apply is not an opportunity to be heard sufficient to meet the constitutional minimum of due process. *See, Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (internal quotation marks and citation omitted) (holding "A fundamental requirement of due process is the opportunity to be heard. It is an opportunity which must be granted at a meaningful time and in a meaningful manner.").

There was a better alternative. There could have been a slower process that allowed a real review of the Appellants' accommodation requests and a determination by independent, third parties whether the Appellants had medical or religious reasons for not complying with the Mandate to avoid the risk of erroneous deprivation.

The FDNY was relying upon a CPLR article 78 process to correct any erroneous denials. However, as this Court held in *Hellenic Am. Neighborhood Action Comm. v. City of NY*, 101 F.3d 877, 880 (2d Cir 1996), "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process."

The Appellants' deprivation of their due process rights occurred as a result of state procedure and not random acts. The availability of a CPLR article 78 procedure does not satisfy due process in this situation.

The whole accommodation regime was a masquerade because no due process was granted. *See, https://wp-advocatz-uploads.s3.amazonaws.com/uploads/2022/06/EricEichenholtz_Transcript.pdf,* deposition transcript of Eric Eichenholtz, dated May 24, 2022, at page 32, line 8 through page 33, line 5 (visited on July 17, 2023)[7] (testifying that out of roughly 3,200 accommodation requests that were processed by the Citywide Panel that reviewed accommodation requests to the City, roughly 100 were granted, with 80 to 85 percent of the appeals being religious reasonable accommodation requests).

E.    **The Government's Interest, Including The Function Involved And The Fiscal And Administrative Burdens That The Additional Or Substitute Procedural Requirement Would Entail**

There can be no question that the FDNY had a substantial interest in protecting the public against COVID-19.

However, no other fire department in New York, with the same substantial interest as the FDNY had in protecting the public suspended unvaccinated employees without pay and terminated unvaccinated employees.

The FDNY does not explain why the FDNY's interest was different from any other fire department in New York when it came to the protection of the public that

---

[7] The Appellants ask the Court to take judicial notice of this document. *See, Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

compelled the suspension without pay and the termination of unvaccinated FDNY employees.

As in the case of *Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir 2020), where the government's initial interest may have initially outweighed the individual's liberty interest, the prolonged suspensions without pay violated due process.

Here, while in the Fall of 2021 the FDNY's interest to keep the public safe from COVID was substantial, by February 2022 (when the first set of terminations began) and Appellants were required to be vaccinated in order to return or they lost their job, the Appellants' private interests outweighed the FDNY's interest to require the vaccine as a method to keep employees and the public safe from COVID because it was no longer a compelling interest.

In fact, on March 24, 2022, the Mayor lifted the vaccine mandate for professional athletes and performers in New York City. *See,* https://www.reuters.com/lifestyle/sports/nyc-mayor-adams-lift-vaccine-mandate-pro-athletes-performers-2022-03-24 (visited July 13, 2023). This reflects the shift, alluded to in *Lopez*.

By the time the FDNY terminated employees in February 2022 the Appellants' private interests outweighed the government interest. Accordingly, the FDNY loses on the third element of the *Mathews* standard.

\*\*\*\*\*\*\*\*\*\*\*

48

The question is whether the Appellants' sacred constitutional rights outweighed the governments' substantial interests in protecting employees and the public against COVID.

Whatever the answer is to that question (which should not be decided on a Motion to Dismiss), the Appellants have pled a plausible claim for a violation of the Appellants' constitutional right to due process and their property interest in their pay. Accordingly, this Court should reverse the District Court's decision and remand this matter to a different Judge of the District Court.

## POINT VI. THE APPELLANTS HAVE STATED A CAUSE OF ACTION FOR 42 U.S.C. § 1983 CONSPIRACY

The DC37 Agreement was a conspiracy between the FDNY Appellees and the DC37 Appellees.

The Appellants have sufficiently pled a plausible cause of action that the FDNY Appellees conspired with the DC37 Appellees to violate the Appellants' constitutional rights in violation of 42 U.S.C. § 1983. The District Court's decision to dismiss the Appellants' 42 U.S.C. § 1983 conspiracy cause of action was in error and this Court should now reverse and remand the case.

In *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir 1999), this Court stated: "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert

to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

The DC37 Agreement (JA-297-JA-302) was an agreement between a state actor and a private entity to act in concert to inflict an unconstitutional injury upon the Appellants, and an overt act done in furtherance of that goal causing damages to the Appellants (loss of pay and termination).

The Appellants have stated a plausible claim for 42 U.S.C. § 1983 conspiracy. The District Court erroneously dismissed the Appellants' conspiracy cause of action. This Court should now reverse.

### A.    Personal Involvement

In *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir 1977), this Court held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."

Each of the FDNY Appellees and the DC37 Appellees had their own individual roles to play, that but-for a conspiracy between them, the Appellants' constitutional rights would not have been infringed and the Appellants would not have suffered deprivations of their rights.

The DC37 Agreement states:

> Any unvaccinated employee who has not requested an exemption pursuant to Section I, or who has requested an exemption which has been denied, may be placed by the agency on leave without pay effective November 1, 2021

> through November 30, 2021 except as provided under the terms of Section I above. Such leave may be unilaterally imposed by the agency and may be extended at the request of the employee consistent with Section III(B), below. Placement on leave without pay for these reasons shall not be considered a disciplinary action for any purpose.

JA-300, at Section II.A.

In addition, the DC37 Agreement states:

> Beginning December 1, 2021, the agency will seek to unilaterally separate employees who have not opted into SCP.8f8tion under Sections III(A) and ID(B). Except for the express provisions contained herein, all parties retain all legal rights at all times relevant herein.

JA-302, at Section III.D.

These two provisions, agreed to by the DC37 Appellees, permit and authorize the FDNY to: (1) suspend members of DC37 without pay, without due process for not becoming vaccinated; and (2) terminate members of DC37 without due process.

The language in the DC37 Agreement is clear and unambiguous; the DC37 Appellees and the FDNY Appellees agreed to violate the Appellants' due process rights and their property rights in their pay.

This is direct, documentary evidence of the collusion and conspiracy between the DC37 Appellees and the FDNY Appellees to violate the Appellants' constitutional rights.

### B. State Actor

In *Manhattan Community Access Corp. v. Halleck*, 139 S Ct 1921, 1928 (2019), the Court opined: "a private entity can qualify as a state actor … when the government acts jointly with the private entity"

In *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980), the Court opined:

> to act "under color of" state law for § 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting "under color" of law for purposes of § 1983 actions.

The FDNY and DC37 entered into the DC37 Agreement. JA-297-JA-302.

The DC37 Agreement was the only negotiated agreement between the FDNY and any of the FDNY's unions. However, the members of DC37 did not vote or ratify the DC37 Agreement. The failure of DC37 to have its members ratify the agreement makes the DC37 Agreement procedurally defective and a violation of its duty of fair representation to seek and obtain ratification from the members for the amendments to the collective bargaining agreement.

In *Union Springs Cent. School Sch. Teachers' Assn,* 6 PERB P3074 (1973), PERB held that "having negotiated and approved of [a new collective bargaining agreement], they had an affirmative duty to seek its ratification."

In *City of Rochester*, 7 PERB P3060 (1974), PERB held that "it is a violation of their duty to negotiate in good faith for negotiators who reach a tentative agreement not to seek approval of their agreement."

In *Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, The Certified Union By Nassau Local 830 v. County of Nassau*, 45 PERB P3047 (2012), PERB held that "when parties have agreed that a tentative agreement is to be ratified, each side is affirmatively obligated to present it to their ratifying entity and to support its approval."

DC37's failure to obtain its members' approval to the amendments to the collective bargaining agreement is evidence of the conspiracy between the FDNY Appellees and the DC37 Appellees.

As the Court in *Rodriguez-Rivera v. City of NY*, 2007 US Dist LEXIS 19793, at *7 held: "[t]he UFT could be liable to Plaintiff under Section 1983 if the union or its representatives conspired with a state official to deprive her of a constitutional right."

The DC37 Agreement allowed the FDNY to suspend without pay and without due process and terminate the Appellants-DC37 members without due process. JA-297-JA-302.

In fact, it was the individual Appellee Garrido who personally executed the DC37 Agreement on behalf of DC37 (JA-302) and it was the act of executing the DC37 Agreement that makes him personally liable to the Appellants for conspiring with the FDNY to violate the Appellants' constitutional rights in violation of 42 U.S.C. § 1983. JA-302.

The DC37 Appellees were willful participants in entering into the DC37 Agreement that permitted the FDNY to suspend the Appellants without pay without due process (JA-300, at Section II.A.) and ultimately terminate their employment without due process. JA-302, at Section III.D.

Accordingly, the Appellants have stated a plausible claim against the DC37 Appellees for conspiracy to violate the Appellants' constitutional rights. This Court should reverse the District Court's decision to dismiss the Appellants' claims against the DC37 Appellees.

## POINT VII.    THE APPELLANTS' CLASS CLAIMS SHOULD BE REINSTATED

The Appellants are ninety-plus of the thousands of FDNY employees who were adversely affected by the FDNY's unilateral implementation of the Vaccine Mandate Order or the DC37 Agreement. The Appellants are ninety-plus of the hundreds, if not thousands, of FDNY employees who refused to take the vaccine or were fired by the FDNY.

As discussed at length in this Brief, the Appellants have plausibly stated claims against the Appellees.  Since the Appellants' claims are representative of all FDNY employees impacted by the FDNY's unilateral implementation of the Vaccine Mandate Order or the DC37 Agreement, the Appellants have set forth valid claims for class action status.

FRCP Rule 23(a) states:

> Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1)   the class is so numerous that joinder of all members is impracticable;
> (2)   there are questions of law or fact common to the class;
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)   the representative parties will fairly and adequately protect the interests of the class.

The Appellants can plausibly plead that the class is so numerous since, the estimation is that thousands were suspended without pay and hundreds of FDNY employees were fired for not taking the COVID vaccine.

It is also clear that the questions of law and fact are common to the class.

Also clear is that the claims of the representative parties are typical of the claims of the class, since all of the FDNY employees who refused to take the COVID vaccine are similarly situated with respect to the impact the FDNY's unilateral

implementation of the Vaccine Mandate Order and the DC37 Agreement had on their employment with the FDNY.

Finally, there were no arguments made by the Appellees to the District Court that the representative parties cannot or will not fairly and adequately protect the interests of the class.

Accordingly, the Appellants plausibly pled class action claims. The District Court erred when it dismissed the Appellants' class action claims. This Court should now reverse.

**POINT VIII.    IF THE AMENDED COMPLAINT WAS INSUFFICENT TO SURVIVE THE MOTIONS TO DISMISS, THE DISTRICT COURT SHOULD HAVE GRANTED LEAVE TO AMEND**

In response to the Appellees' Motion to Dismiss, the Appellants sought leave to amend the Amended Complaint to cure any defects in the Amended Complaint before the Court dismissed the Action. JA-481.

The District Court denied the Appellants' request stating that it would be futile. JA-651-JA-653.

As shown throughout this Brief, the Appellants state plausible claims against the Appellees. However, if this Court determines that there are deficiencies in the Amended Complaint, the Appellants request leave to amend the Amended Complaint.

POINT IX.        IF THIS COURT REVERSES THE DISTRICT COURT,
                 REINSTATES THE ACTION, AND REMANDS THE
                 MATTER TO THE DISTRICT COURT, THIS COURT
                 SHOULD DIRECT THAT A DIFFERENT JUDGE BE
                 ASSIGNED

The Appellants believe the District Court Judge was not impartial, had a bias

against them; and therefore requests that if and when this Court remands the case, it

remand it to a different Judge.

In *Pescatore v. PAN AM*, 97 F.3d 1, 21 (2d Cir 1996) (internal quotation marks,

citations, ellipses and brackets omitted), this Court held:

> This Court has the power to remand the case to a different
> judge: Federal appellate courts' ability to assign a case to
> a different judge on remand rests on the appellate courts'
> statutory power to require such further proceedings to be
> had as may be just under the circumstances. To reassign a
> case on remand, we need not find actual bias or prejudice,
> but only that the facts might reasonably cause an objective
> observer to question the judge's impartiality.

In its decision to grant the Appellees' Motions to Dismiss, the District Court's

decision deviated from its own precedent in a different case.

One example of the District Court Judge's lack of impartiality comes from the

District Court's dismissal of the Appellants' two causes of action seeking declaratory

judgment relief. JA-633-JA-634.

The basis for the District Court's decision to dismiss the two causes of action

was that the Declaratory Judgment Act provides a remedy, but not a cause of action.

JA-634. However, the District Court did not analyze whether the requested relief of

declaratory judgment stated a plausible claim, but, instead, the District Court summarily dismissed the claims without any analysis.  JA-533-JA-634.

Yet in *Magtoles v. United Staffing Registry, Inc.*, 2021 US Dist LEXIS 248070 (E.D.N.Y. Dec. 30, 2021), the same Judge of the District Court denied a Motion to Dismiss filed by defendant seeking to dismiss a cause of action for declaratory judgment.

In *Magtoles,* the District Court Judge, in denying the defendant's Motion to Dismiss, stated "the court concludes that a sufficient controversy exists between the parties to warrant issuance of a declaratory judgment." *Magtoles v. United Staffing Registry, Inc.*, 2021 US Dist LEXIS 248070, at *30.

In this Action, the District Court Judge did not undertake a similar analysis, but instead, summarily dismissed the causes of action.  The District Court Judge did not reconcile the *Magtoles* determination with the District Court Judge's determination in this Action.

A second example of the District Court's Judge's lack of impartiality is the District Court's utter failure to consider the statutory and procedural infirmities in the FDNY's unilateral implementation of the Vaccine Mandate Order and the DC37 Agreement and how those irregularities violated the Appellants' due process rights and property right in their pay.

The Appellants' Memorandum of Law in opposition to the Appellees' Motions to Dismiss addressed, at length (JA-453-JA-457), the legal infirmities underpinning the FDNY's whole legal basis for the Vaccine Mandate Order being a condition of employment.

The District Court Judge overlooked and ignored the Appellants' arguments and allegations and reached a conclusion that was not supported by the Joint Appendix.

Since the decision on the Motions to Dismiss took more than eight months between the date the Motions were fully submitted and the District Court issuing its decision, the fact that the District Court Judge dismissed the Appellants' declaratory judgment causes of action based upon an error of law and without analyzing the causes of action, while at the same time ignored lengthy arguments in the Appellants' opposition brief and clear and precise allegations in the Amended Complaint, can only leave an objective observer to believe that the District Court Judge was not impartial in reviewing and determining the Appellees' Motions to Dismiss.

Accordingly, the Appellants seek, on remand, that this Court assign this matter to a different Judge of the Eastern District of New York.

## CONCLUSION

For the reasons argued in this brief, the Appellants respectfully request that the Court vacate the District Court's Decision and Order, remanding this matter to the District Court and to a different District Court Judge than the one previously assigned.

Dated:      Garden City, New York
            August 1, 2023

                              Respectfully submitted,

                               /s/Austin Graff
                              Austin Graff
                              The Scher Law Firm, LLP
                              Attorneys for the Appellants
                              600 Old Country Road, Suite 440
                              Garden City, NY 11530
                              Tel. # (516) 746-5040

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.     I certify that this brief complies with the type-volume limitation of
       Fed.R.App.P.32(a)(7)(B)and Local Rule 28.1.1 because:

       This brief contains 12,763 words.

2.     This brief complies with the typeface requirements of
       Fed.R.App.P.32(a)(5) and the type style requirements of
       Fed.R.App.P.32(a)(6) because:

       This brief has been prepared in a proportionally spaced typeface using
       Microsoft Office Word, in Times New Roman, 14pt Font.

Dated:     August 1, 2023

**SPECIAL APPENDIX**

i

# Table of Contents

**Page**

Judgment of The United States District Court,
Eastern District of New York, Dated March 31, 2023..............SPA-1

Amended Memorandum and Order of Honorable
Kiyo A. Matsumoto, Dated March 29, 2023............................ JA-2

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated March 29, 2023..............................................................JA-37

Memorandum and Order of Honorable Kiyo A. Matsumoto,
Dated December 6, 2021...........................................................JA-72

SPA-1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
John GARLAND, et al.,

                       Plaintiff,                JUDGMENT

          v.                                    21-cv-6586(KAM)(CLP)

CITY OF NEW YORK, et al.,

                       Defendants.
------------------------------------------------------------X

      A Memorandum and Order of Honorable Kiyo A. Matsumoto, United States District

Judge, having been filed on March 29, 2023, granting City Defendants' Motion to Dismiss and

DC37 Defendants' Motion to Dismiss in their entirety; and denying leave to amend; it is

      ORDERED and ADJUDGED that City Defendants' Motion to Dismiss and DC37

Defendants' Motion to Dismiss are granted in their entirety; and that leave to amend is denied.

Dated: Brooklyn, New York                Brenna B. Mahoney
       March 31, 2023                  Clerk of Court

                                By:    */s/Jalitza Poveda*
                                       Deputy Clerk

SPA-2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

John GARLAND, et al.,

        *Plaintiff*,

      v.

CITY OF NEW YORK, et al.,

        *Defendants*.

------------------------------------X

<u>**MEMORANDUM & ORDER**</u>

21-cv-6586(KAM)(CLP)

**KIYO A. MATSUMOTO, United States District Judge:**

    Named Plaintiffs, employees of the New York City Fire Department ("FDNY")[1], commenced this action on November 24, 2021, against the City of New York, then-FDNY Commissioner Daniel A. Nigro, and unnamed John and Jane Does (collectively, "City Defendants"). (ECF No. 1, Complaint ("Compl.").) Defendants were responsible for implementing and enforcing the City's COVID-19 vaccination mandate ("Vaccine Mandate") covering all City employees, as detailed in an October 20, 2021 order issued by the Commissioner of Health ("COH Order") requiring all City employees to provide documentation of at least a first dose of a COVID-19 vaccine by October 29, 2021 or be "excluded from the premises at which they work[ed] beginning on November 1, 2021." (ECF No. 15-1, Exhibit A ("Ex. A") at 3.) The day after the COH Order was

---

[1] Named Plaintiffs include FDNY officers, firefighters, and employees of the Emergency Medical Service ("EMS"). (ECF No. 27, Amended Complaint ("Amended Compl.") at ¶¶ 1-86, 108-09.)

1

SPA-3

issued, on October 21, 2021, the FDNY issued a memorandum notifying FDNY employees about the Vaccine Mandate, the COH Order, and the procedures for FDNY employees to obtain a religious or medical accommodation ("October Memorandum").  The Vaccine Mandate was revoked by the City on February 10, 2023 and is no longer in effect.[2]

At the time the original complaint was filed on November 24, 2021, Plaintiffs had not received at least one dose of the COVID-19 vaccine, and had been suspended without pay, at least temporarily, by FDNY.[3]  (ECF No. 1, Compl. at ¶¶ 62-63, 65.) Plaintiffs sought preliminary injunctive relief and asserted that the implementation of the Vaccine Mandate and subsequent consequences violated their procedural due process rights by violating (a) their statutory rights to a specific removal process under N.Y.C. Admin. Code § 15-113 and (b) their contractual rights to a specific removal process under their applicable collective bargaining agreements ("CBA").  (*Id.* at ¶¶ 67-71, 99-109.) Plaintiffs also asserted claims under 42 U.S.C. § 1983 against

---

[2] *See* N.Y.C. Board of Health, Order Rescinding Orders Requiring COVID-19 Vaccination in Child Care and Early Intervention Programs, for Nonpublic School Staff, and for Individuals Working in Certain Child Care Programs (2023); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).").

[3] The original complaint stated that nine Plaintiffs had been "returned to pay status," but did not state if those Plaintiffs had received at least one dose of the COVID-19 vaccine.  (ECF No. 1, Compl. at ¶ 65.)  Since then, at least 27 Plaintiffs have become vaccinated and "have returned to active duty" at FDNY. (ECF No. 27, Amended Compl. at ¶ 105.)

2

SPA-4

City Defendants for violating Plaintiffs' procedural due process rights, and a claim against Defendant Nigro for his alleged participation in these violations. (*Id.* at ¶ 110-15.)

On November 24, 2021, Plaintiffs moved for a preliminary injunction to restore them to pay status and prohibit City Defendants from "disciplining" them further. (ECF No. 5, Motion for Preliminary Injunction.) After providing the parties with an opportunity to present evidence and submissions before, during, and after a show cause hearing, the Court denied Plaintiffs' motion for injunctive relief in a Memorandum and Order ("December 2021 Order") dated December 6, 2021. (ECF No. 24, Order Denying Preliminary Injunction ("December 2021 Order").)

Plaintiffs filed an amended complaint ("Amended Complaint"), adding Defendants District Council 37, AFSCME AFL-CIO ("DC37"), a union that represents FDNY's emergency medical services ("EMS") employees, and Harry Garrido, DC37's Executive Director

SPA-5

(collectively, "DC37 Defendants").[4]   (ECF No. 27, Amended Complaint ("Amended Compl.") at ¶¶ 92-93, 120-21.)

Presently before the Court are City Defendants' motion to dismiss and DC37 Defendants' motion to dismiss. For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

<u>BACKGROUND</u>

The Court first reviews the factual and procedural background of the Court's December 2021 Order denying Plaintiffs' motion for a preliminary injunction. (ECF No. 24, December 2021 Order, at 3-6.)   The Court also reviews the operative Amended Complaint, accepting as true for purposes of Defendants' motions the factual allegations in the complaint and drawing all reasonable inferences in Plaintiffs' favor. *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021).   The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d. Cir. 2015) (internal quotation marks omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[4] The Court granted leave to Plaintiffs to file an amended complaint, *inter alia*, to add necessary parties. (ECF No. 24, December 2021 Order at 8; 12/14/2021 Order.)   The Amended Complaint added the Uniformed Firefighters Association of Greater New York; Uniformed Fire Officers Association, Local 854 International Association of Firefighters, affiliated with the AFL-CIO; and two local affiliates of the DC37 union, District Council 37 AFSCME AFL-CIO Local 2507 and District Council 37 AFSCME AFL-CIO Local 3621.   (ECF No. 24, December 2021 Order at 7; ECF No. 27, Amended Compl.)   Plaintiffs stipulated to dismissals without prejudice of their claims against District Council 37 AFSCME AFL-CIO Local 2507 and District Council 37 AFSCME AFL-CIO Local 3621, and to dismissals with prejudice of their claims against the Uniformed Firefighters Association of Greater New York and the Uniformed Fire Officers Association, Local 854 International Association of Firefighters.   (ECF Nos. 63-66.)

4

SPA-6

(2009) ("[T]he tenet that a court must accept as true all of the allegations contained in [an amended] complaint is inapplicable to legal conclusions.").

## I.   December 2021 Order

In the Court's December 2021 Order, the Court determined that because Plaintiffs requested a mandatory injunction—one that "alters the status quo by commanding a positive act"—they were required to establish a "clear" or "substantial" likelihood of success on the merits of their claims.  (ECF No. 24, December 2021 Order, at 6 (citing *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citation omitted)).)  The Court found that Plaintiffs failed to do so and denied injunctive relief.[5] (*Id.* at 10.)

First, as to Plaintiffs' procedural due process claims, although Plaintiffs had a protected property interest in their pay

---

[5] The evidentiary record before the Court regarding Plaintiffs' motion for injunctive relief included the following: an affidavit by Plaintiffs' attorney Austin Graff (ECF No. 5-1); affidavits by four individual Plaintiffs who had not received at least one dose of the COVID-19 vaccine (ECF Nos. 5-2, 5-3, 5-4, 5-5); the COH Order (ECF No. 15-1); an arbitration award between the Department of Education ("DOE") and an union of DOE employees regarding an exemption process for the Vaccine Mandate based on religious and medical requests (ECF No. 15-2); an agreement between DC37 and FDNY regarding exemption processes for the Vaccine Mandate and termination processes based on non-compliance ("DC37 Agreement") (ECF No. 15-3; ECF No. 21-1); filings from an Article 78 proceeding initiated by an FDNY union challenging the Vaccine Mandate (ECF Nos. 15-4, 15-5); filings from an Office of Collective Bargaining ("OCB") proceeding initiated by an FDNY union challenging the Vaccine Mandate (ECF Nos. 15-6, 15-7, 15-8); the OCB decision denying injunctive relief to the FDNY union (ECF No. 15-9); affidavits from three human resources officials at FDNY (ECF Nos. 15-10, 20-1, 20-2); and the FDNY's October Memorandum regarding the procedures for FDNY employees to provide proof of vaccination or to obtain a religious or medical exemption (ECF No. 17-1).

5

SPA-7

and continued employment, the Court found that Plaintiffs had been provided constitutionally adequate process before being deprived of their property interests. (*Id.* at 10.) Quoting the Second Circuit's holding in *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008), the Court noted that "there is no due process violation where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." (ECF No. 24, December 2021 Order at 14-15.) The Due Process Clause would be implicated only if Plaintiffs could establish that "the grievance procedures in a collective bargaining agreement [were] an inadequate remedy," which Plaintiffs had not done. (*Id.* at 15 (quoting *Adams*, 517 F.3d at 128).)

During the show cause hearing for the preliminary injunction, the three EMS Plaintiffs who belonged to the DC37 union challenged the agreement that DC37 had negotiated with the City regarding the leave and separation procedures for City employees who did not comply with the Vaccine Mandate ("DC37 Agreement").[6]  (*Id.* at 5-

---

[6] The DC 37 Agreement established, in relevant part: (1) the processes by which an employee could request an exemption or accommodation based on religious and/or medical grounds, and appeal an adverse determination on their request before an independent arbitration panel (while remaining on payroll and maintaining health benefits pending their request or appeal, as long as the request was made prior to 11:59 P.M. on October 27, 2021); (2) options to either voluntarily separate from service with certain compensation benefits, or elect extended LWOP status while maintaining health benefits until June 30, 2022; and (3) that as of December 1, 2021, the FDNY could seek to unilaterally separate employees who had not provided proof of vaccination, had not obtained or requested an accommodation, and had not opted for either separation option. (*See* ECF No. 21-1, Exhibit C.)  The DC 37 Agreement further provided that

SPA-8

6.)   The Court's December 2021 Order noted that, generally, "a union member has no standing to enforce the collective bargaining agreement between their employer and union against the employer directly," but that even if the EMS Plaintiffs *had* standing, they could not show a clear or substantial likelihood of success on the merits of their procedural due process claims.   (*Id.* at 8-9 (citation omitted).)

Overall, the Court concluded that "the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate."   (*Id.* at 16.)   The Court found the following:

> Plaintiffs received ample pre-deprivation notice, via the [October Memorandum] from Hodgens, the Chief of Operations of the FDNY, of: (1) the [COH] Order, (2) the requirement to submit proof of vaccination by October 29, 2021, (3) their ability to seek reasonable accommodation by October 27, 2021; and (4) their placement on [leave without pay] status if they failed to comply with the Order and did not submit an accommodation request by the October 27 deadline.

(*Id.* at 16-17.)   Moreover, the Court found that Plaintiffs were provided with an opportunity to be heard before a final decision. (*Id.* at 17.)   The opportunity to respond need not be a formal hearing.   *Ezekwo v. N.Y.C. Health & Hosps. Corp.,* 940 F.2d 775, 786 (2d Cir. 1991).   Indeed, any FDNY employees who challenged whether the Vaccine Mandate should apply to them not only "had the

_____

employees who opted to extend their LWOP to June 30, 2022, could return to their positions upon demonstrating compliance with the Vaccine Mandate. (*Id.*)

7

SPA-9

opportunity to seek a religious or medical accommodation," they also "remain[ed] on pay status pending the decision on their request or appeal, so long as their accommodation requests were submitted prior to October 27, 2021." (ECF No. 24, December 2021 Order at 17.) This Court found that the only reason that the vast majority of named Plaintiffs had been suspended without pay was because they requested an accommodation too late. (*Id.* at 17.) Therefore, Plaintiffs could not claim that they were deprived of due process simply by "not having availed themselves of the pre-deprivation opportunity to be heard." (*Id.* at 18.)

The Court also concluded that there were sufficient post-deprivation procedures to establish constitutionally adequate process. (*Id.*) Any FDNY employee granted an accommodation would be restored to payroll and provided back pay, and there was an appeal process for any employee whose reasonable accommodation request was denied. (*Id.*) The Court further found that FDNY employees also had other avenues to challenge the Vaccine Mandate and the COH Order, including through an Article 78 Proceeding in New York State Supreme Court. (*Id.* at 20 (citing *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy.")).)

Second, because "[f]ederal constitutional standards rather than state statutes define the requirements of procedural due

SPA-10

process," the Court found that it did not need to consider whether state or municipal procedural law, such as N.Y.C. Admin. Code § 15-113, was correctly followed or applied. (ECF No. 24, December 2021 Order, at 10-11 (quoting *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987)).) Nevertheless, the Court concluded that § 15-113 was irrelevant to determining adequate process for FDNY employees because (1) the Second Circuit had held that the Vaccine Mandate was a condition of employment (albeit in the healthcare context); and (2) "the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency [did] not implicate the disciplinary procedures set forth section 15-113." (*Id.* at 11, 13-14.)

Accordingly, the Court denied Plaintiffs' motion for a preliminary injunction.

## II. The Operative Amended Complaint

Following the Court's denial of Plaintiffs' preliminary injunction motion, Plaintiffs filed an Amended Complaint on January 5, 2022, adding the DC37 Defendants. (ECF No. 27, Am. Compl.) In the operative Amended Complaint, Plaintiffs assert primarily the same causes of action as in the original complaint, adding only (1) a request for the Court to issue a declaratory judgment that the DC37 Agreement "was entered into without any contractual authority" and therefore the Plaintiffs' suspension

9

SPA-11

without pay violated their due process rights, and (2) a § 1983 conspiracy claim based on the DC37 Agreement between FDNY and DC37. (*Id.* at ¶¶ 186, 238.)  Plaintiffs' Amended Complaint also adds several allegations related to the DC37 Agreement, including that (1) "[p]ursuant to the Taylor Law (N.Y. Civil Service Law § 200, *et. seq.*), [the City] was required to bargain with its unions [about] the impact of the Vaccine Mandate . . ."; (2) "DC37 entered into an agreement with [the City] regarding the impact of the Vaccine Mandate, which provides that on or after December 1, 2021, [the City] may unilaterally separate DC37 members from their employment with the FDNY if the members have not obtained a COVID-19 vaccine"; and (3) the DC37 Agreement "authorized [the City] to suspend without pay the members of DC37 who did not take a COVID vaccine." (*Id.* at ¶¶ 129, 133-43.)

The Amended Complaint also includes new factual allegations related to the reasonable accommodation and appeals process. (*Id.* at ¶¶ 144-50.)  The Amended Complaint alleges that as "part of [the City's] implementation of the Vaccine Mandate," the City "offered those FDNY employees who have either a medical or religious reasons for not taking a vaccine an opportunity to seek a reasonable accommodation to exempt the employee from the Vaccine Mandate." (*Id.* at ¶ 144.)  Plaintiffs allege in the Amended Complaint that seventy-seven out of the eighty-six total Plaintiffs have requested a medical or religious accommodation to

SPA-12

be exempt from the Vaccine Mandate; seventy-one Plaintiffs have been denied and six were awaiting an initial determination; thirty-seven Plaintiffs have appealed the denial of their request for a reasonable accommodation; and one Plaintiff's appeal has been denied, while thirty-six are awaiting a decision. (*Id.*)

Finally, the Amended Complaint contains two exhibits: the COH Order, Exhibit A, and the DC37 Agreement, Exhibit B.[7] (ECF No. 27-1, Ex. A; ECF No. 27-2, Exhibit B.) Given that the Amended Complaint discusses the FDNY's reasonable accommodation policy at relative length, the Court also determines that the FDNY's October Memorandum regarding the procedures for FDNY employees to obtain a religious or medical accommodation—which was submitted by Plaintiffs to the Court prior to the show cause hearing—is "integral" to the Amended Complaint. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (a court may "consider [a document] where the [amended] complaint relies heavily upon its terms and effect, thereby rendering the document integral to the [amended] complaint" (internal quotation marks omitted)). "Even where a document is deemed 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* at 231 (internal

---

[7] Although Plaintiffs submitted the DC37 Agreement as Exhibit B in the Amended Complaint, Plaintiffs later filed a letter stating that they incorrectly filed the wrong agreement and attaching a corrected Exhibit B. (ECF No. 27-2, Exhibit B; ECF No. 62, Letter; ECF No. 62-1, Corrected Exhibit B.)

quotation marks omitted). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document . . . [because of] a concern that a plaintiff may lack notice that the material will be considered." *Id.* (internal quotation marks omitted).

Here, Plaintiffs' Amended Complaint alleges that there was a process for seeking reasonable accommodations from the Vaccine Mandate and discusses the number of Plaintiffs at various stages of the process; FDNY employees were notified of that process as provided in the FDNY's October Memorandum. Indeed, Plaintiffs' opposition to Defendants' motions to dismiss relies heavily on the FDNY's October Memorandum and argues that it was improperly imposed, thus causing a procedural due process violation. *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (documents are "integral" where plaintiff had to rely on their content "to explain what the actual unlawful course of conduct was on which the [d]efendants embarked"); (ECF No. 73, Plaintiffs' Mem. at 9-10.) The Court finds that the October Memorandum is integral to the Amended Complaint because Plaintiffs' allegations and opposition to Defendants' motions to dismiss rely on and relate to the document, thus establishing that Plaintiffs do not challenge its authenticity, accuracy or relevance. (ECF No. 73, Plaintiffs' Mem. at 2-4, 8-10.) Additionally, Plaintiffs submitted the October Memorandum to the

SPA-14

Court before the show cause hearing on Plaintiffs' motion for a preliminary injunction, and it was discussed extensively at the hearing and in the Court's December 2021 Order denying the motion for a preliminary injunction.  (ECF Nos. 17-1, 24.)  Accordingly, the Court concludes that the FDNY's October Memorandum is "integral" to the Amended Complaint.

**III. Defendants' Motions to Dismiss**

On June 13, 2022, City Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  (ECF No. 68, City Defendants' Motion; ECF No. 69, City Defendants' Memorandum in Support; ECF No. 75, City Defendants' Reply.)  On June 14, 2022, DC37 Defendants also moved to dismiss under Rule 12(b)(6) for failure to state a claim. (ECF No. 71, DC37 Defendants' Motion; ECF No. 72, DC37 Defendants' Memorandum in Support; ECF No. 74, DC37 Defendants' Reply.)

On September 28, 2022, Plaintiffs filed for leave to provide supplemental briefing or amend their memorandum in opposition brief to Defendants' motions to dismiss regarding a recent New York Supreme Court decision about the Vaccine Mandate.  (ECF No. 77, Motion to Amend.)  City Defendants opposed.  (ECF No. 78, Response.)  On October 3, 2022, the Court denied Plaintiffs' motion, explaining that the Court would review all relevant case law in rendering its decision.  (10/03/2022 Order.)  On October 10, 2022, Plaintiffs filed a second motion to amend or supplement

13

SPA-15

their briefing regarding an Office of Collective Bargaining ("OCB") decision about the Vaccine Mandate.  (ECF No. 79, Second Motion.)  The Court again denied Plaintiffs' motion, for the same reasons.  (10/13/2022 Order.)  On October 25, 2022, Plaintiffs filed a third motion to amend or supplement their briefing, regarding another New York Supreme Court decision about the Vaccine Mandate.  (ECF No. 82, Third Motion.)  The Court again denied Plaintiffs' motion.  (10/26/2022 Order.)

On February 13, 2023, in light of the City's announcement that it had discontinued the Vaccine Mandate for City employees on February 10, 2023, the parties were ordered to advise the Court of their respective views as to which issues in the instant action, if any, were mooted, and which issues subsisted.  (02/13/2023 Order.)  The parties responded, all acknowledging that some live issues remained, given that employees who had been suspended or terminated for failure to show proof of vaccination would not be automatically reinstated to their prior positions with back pay.  (ECF Nos. 84; 85; 86.)

**LEGAL STANDARD**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  "A claim has facial plausibility when

SPA-16

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id*. When considering a motion to dismiss under Rule 12(b)(6), a district court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Pollok v. Chen*, 806 F. App'x 40, 44 (2d Cir. 2020) (summary order) (citation omitted).

In considering a 12(b)(6) motion, the court may refer to "documents attached to [the complaint] or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken." *Grant v. Cnty. of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) (summary order); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (clarifying that "*reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice of possession is not enough." (emphasis in original)). "[A] district court may [also] rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[.]" *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

## DISCUSSION

### I.  Declaratory Judgment and Injunctive Relief

In Plaintiffs' Amended Complaint, the first and second "causes of action" request a declaratory judgment, presumably

15

SPA-17

under the Declaratory Judgment Act ("DJA"), and the "third cause of action" requests injunctive relief.  (ECF No. 27, Amended Compl.)  The DJA "provides a remedy, not a cause of action."  *KM Enters., Inc. v. McDonald*, No. 11-CV-5098 (ADS) (ETB), 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013).  "Similarly to declaratory relief, a request for injunctive relief is not a separate cause of action."  *Id.* at *20 (alteration and internal quotation marks omitted); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y.2010) ("Declaratory judgments and injunctions are remedies, not causes of action.")  Because Plaintiffs' first, second, and third "causes of action" request remedies, rather than plead a separate claim, the first, second, and third "causes of action" are dismissed for failure to state a claim.

## II.  Procedural Due Process Claims

A procedural due process claim requires a plaintiff to establish that (1) he or she possesses a protected liberty or property interest, and (2) was deprived of that interest without constitutionally adequate process.  *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).  Pre-deprivation processes "need not be elaborate," and the Constitution "mandates only that such process include, at a minimum, notice and the

SPA-18

opportunity to respond." *O'Connor*, 426 F.3d at 198 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).

Defendants argue that the law of the case doctrine precludes re-litigation of Plaintiffs' procedural due process claims, in light of the Court's comprehensive December 2021 Order denying a preliminary injunction. (ECF No. 69, City Defendants' Memorandum in Support, at 8-12.) The law of the case doctrine holds that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case,' unless 'cogent' and 'compelling' reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (emphasis added) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). The Court notes, however, that the "preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment." *Goodheart Clothing Co., Inc. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 274 (2d Cir. 1992). The Court also acknowledges that "[a] party . . . is not required to prove [their] case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary

17

SPA-19

injunction are not binding at a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted).

The Court need not decide here whether the law of the case doctrine applies to prevent this Court's reconsideration of the factual and legal issues discussed in its December 2021 Order denying Plaintiffs' motion for a preliminary injunction. *Cf. Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021) (the law-of-the-case doctrine is "discretionary and does not limit a court's power to reconsider its own decision prior to final judgment" (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))). As discussed below, however, the Court finds that (1) the Amended Complaint's factual allegations, which are mostly conclusory, add little to Plaintiffs' prior allegations; and (2) the legal analysis for the preliminary injunction in the December 2021 Order sufficiently overlaps with the issues—based on the current factual allegations and the asserted claims—before the Court on the instant motions to dismiss such that the Court reviews its prior analysis in assessing Plaintiffs' current claims. For the reasons set forth below, the Court concludes that Plaintiffs' Amended Complaint fails to state plausible procedural due process claims.

### a. Repeated and Conclusory Factual Allegations

First, Plaintiffs' Amended Complaint, although filed after the Court's December 2021 Order denying the Plaintiffs' motion for

18

SPA-20

a preliminary injunction, adds very few new facts to the complaint before the Court in its December 2021 Order denying a preliminary injunction.  The Amended Complaint adds additional Plaintiffs and the DC37 Defendants, and provides updates as to each Plaintiff's vaccination status and the status of seventy-seven of the Plaintiffs' reasonable accommodation requests.  (ECF No. 27, Amended Compl. at ¶¶ 92-93, 144-50.)  Unlike the original complaint, however, the Amended Complaint acknowledges that "[a]s part of [the City's] implementation of the Vaccine Mandate," the City "offered those FDNY employees who have either a medical or religious reasons for not taking a vaccine an opportunity to seek a reasonable accommodation to exempt the employee from the Vaccine Mandate." (*Id.* at ¶ 144.)  As noted previously, the Court also determines that the FDNY's October Memorandum describing accommodation procedures is "integral" to the Amended Complaint. *Nicosia*, 834 F.3d at 230.

The Amended Complaint also includes ostensibly new factual allegations regarding the DC37 Agreement to support Plaintiffs' claim that the DC37 Agreement violated Plaintiffs' due process rights.  (*Id.* at §§ 129, 133-43.)  Plaintiffs' allegations concerning the DC37 Defendants and the DC37 Agreement, however, are all legal conclusions devoid of specific facts: e.g., "DC37 conspired with [the City] by entering into an agreement . . . that violated the DC37 members-Plaintiffs' constitutional rights."

19

(*Id.* at ¶ 138.)   Courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted).   Indeed, the only non-conclusory allegations in the Amended Complaint concerning the DC37 Agreement are the following: (1) "DC37 entered into an agreement . . . regarding the impact of the Vaccine Mandate, which provides that on or after December 1, 2021, [the City] may unilaterally separate DC37 members from their employment with the FDNY if the members have not obtained a COVID-19 vaccine"; and (2) "DC37's Agreement with [the City] authorized [the City] to suspend without pay the members of DC37 who did not take a COVID vaccine."   (ECF No. 27, Amended Compl. at ¶¶ 133, 134.)

Therefore, the factual allegations currently before the Court, although less than the full evidentiary record before the Court in its December 2021 Order denying the motion for a preliminary injunction, contain no new, non-conclusory factual allegations that would upend the Court's prior legal analysis.

### a. Repeated Claims

Second, Plaintiffs' Amended Complaint asserts primarily the same causes of action as the original complaint and which this Court considered in the December 2021 Order.   In addition to the "causes of action" for declaratory judgments and injunctive relief, discussed above, Plaintiffs now assert a § 1983 claim

SPA-22

against Defendants for violating their procedural due process rights; a § 1983 conspiracy claim against Defendants for conspiring to violate their procedural due process rights; and a § 1983 claim against individual Defendants Nigro, Garrido, and John and Janes Does based on "direct participation and aiding and abetting" the City's violation of Plaintiffs' due process rights. (ECF No. 27, Amended Compl. at ¶¶ 197-245.)  The only new claim in the Amended Complaint is the § 1983 conspiracy claim.  The underlying constitutional violation alleged in each cause of action is that Defendants violated Plaintiffs' due process rights by suspending Plaintiffs without pay if they refused to comply with the Vaccine Mandate. (*Id.*)  Therefore, Plaintiffs' instant claims raise issues identical issues to the claims addressed and decided by the Court in denying the preliminary injunction. (ECF No. 24, December 2021 Order at 10-20.)

Furthermore, because Plaintiffs sought both a prohibitory and mandatory injunction in their motion for a preliminary injunction, the Court previously reviewed Plaintiffs' legal arguments under the higher pleading standard for a mandatory injunction.  The Court found that Plaintiffs failed to satisfy the standard for a mandatory injunction by demonstrating a "clear" or "substantial" likelihood of success on the merits of their procedural due process claims, rather than merely a likelihood of success. (*See* ECF No. 5-8, Plaintiffs' Preliminary Injunction Memorandum at 4); *see also*

21

SPA-23

*Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (plaintiffs seeking a mandatory injunction must meet higher standard and must show a "clear" or "substantial" likelihood of success on the merits); *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (where the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits.").

Having reviewed Plaintiffs' procedural due process allegations at length—and now examining any well-pleaded factual allegations in the Amended Complaint, exhibits, and incorporated or integral documents—the Court concludes on the merits that "the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate," and, therefore, Plaintiffs' Amended Complaint fails to state a claim and must be dismissed. (ECF No. 24, December 2021 Order, at 16). Plaintiffs received ample pre-deprivation notice of procedures regarding the Vaccine Mandate, via the FDNY's October Memorandum informing FDNY employees about (1) the COH order; (2) the requirement to submit proof of vaccination by October 29, 2021; (3) the ability to seek reasonable accommodation and be exempted from the Vaccine Mandate by October 27, 2021; and (4) the placement of non-compliant employees on [leave without pay] status if they failed to comply

22

SPA-24

with the COH Order and did not submit an accommodation request by the October 27 deadline.  (ECF No. 17-1, October 21, 2021 Memorandum ("Oct. Mem.") at 4, 15; ECF No. 27, Amended Compl. at ¶ 144.)

Further, accepting all well-pleaded factual allegations as true for purposes of Defendants' motions to dismiss, Plaintiffs were provided with an opportunity to be heard prior to a final decision.  The opportunity to respond need not be a formal hearing. *Ezekwo*, 940 F.2d at 786.  Here, as acknowledged in the Amended Complaint, any FDNY employee who challenged whether the Vaccine Mandate should apply to them had the opportunity to seek a religious or medical accommodation through an exemption to the Vaccine Mandate.  (ECF No. 27, Amended Compl. at ¶ 144.)  Indeed, the COH Order itself stated, in plain language, that it should not be "construed to prohibit any reasonable accommodation otherwise required by law." (ECF 27. 125-1, Ex. A.)  And any FDNY employees who submitted reasonable accommodation requests before the October 27, 2021 deadline were *not* suspended without pay: only employees who sought reasonable accommodation after October 27, 2021 were placed on leave without pay while awaiting a reasonable accommodation decision. (ECF No. 17-1, Oct. Mem. at 4, 16-17, 24-25.)  In addition to the above process, DC37 Plaintiffs had access to additional time to seek an accommodation beyond the October 27

SPA-25

deadline—through November 5, 2021—as a result of the DC37 Agreement. (ECF No. 62-1, Corrected Exhibit B, at 2.)

The Court finds that the post-deprivation procedures were constitutionally adequate. The City required that any denial of a reasonable accommodation request "must provide written information to the employee whose request has been denied and include a link to . . . [the City's] online appeals request portal." (ECF No. 17-4, Oct. Mem. at 25.) Any employee who was denied a reasonable accommodation could file an appeal within three days. (*Id.*) If an appeal was denied, the employee was required to submit proof of the first dose of a COVID-19 vaccine within three business days and, if required, of the second dose within 45 days. (*Id.*) If the employee refused to be vaccinated within the given timeframe after the appeal was denied, the employee would remain on LWOP status. (*Id.*) Finally, Plaintiffs had other post-deprivation avenues, such as an Article 78 proceeding, to address the COH Order and subsequent consequences. *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881 ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy."). Accordingly, the Court concludes, on the merits, that Defendants provided constitutionally sufficient pre-deprivation and post-

deprivation process, and that Plaintiffs fail to state a procedural
due process claim.

### a. Intervening Law

Moreover, although the Court decides the instant motions to
dismiss on the basis of Plaintiffs' Amended Complaint and attached
and integral exhibits, the Court notes that there has been no
change in intervening law since the Court's December 2021 Order
finding that Plaintiffs procedural due process rights were not
violated, despite a substantial amount of litigation concerning
the Vaccine Mandate.[8]   *See, e.g.*, *Marciano v. de Blasio*, 589 F.
Supp. 3d 423, 436 (E.D.N.Y. Mar. 8, 2022) (plaintiff received

---

[8] The Court's procedural due process findings are not based on the process
required by state or municipal statutes.  Moreover, there has not been a
substantial change in intervening law concerning this Court's finding that the
Vaccine Mandate was a condition of employment.  *See Andre-Rodney v. Hochul*, No.
21-cv-1053 (BKS)(CFH), 2022 WL 3027094 (N.D.N.Y. Aug. 1, 2022) (vaccine was
condition of employment for healthcare workers); *D'Cunha v. Northwell Health
Sys.*, No. 22-cv-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023) (same);
*Commey*, 2022 WL 3286548 (finding vaccination to be condition of employment for
porter); *Kane*, 2022 WL 3701183 (vaccine was condition of employment); *Marciano*,
589 F. Supp. 3d at 436 (same).  Although—as Plaintiffs noted in their third
request to supplement their memorandum of law in opposition to Defendants'
motions to dismiss (ECF No. 81)—one New York Supreme Court judge has found that
the Vaccine Mandate was not a condition of employment, nearly all other New
York state courts to address the issue have found that the Vaccine Mandate was
a condition of employment.  *Compare Garvey v. City of New York*, 77 Misc. 3d 585
(N.Y. Sup. Ct., Richmond Cnty., Oct. 24, 2022) (finding mandate was not a
condition of employment), *with Clarke v. Bd. of Educ. of City School*, No.
160787/21, 2023 WL 2124546 (N.Y. App. Div. 1st Dep't, Feb. 21, 2023) (finding
mandate was a condition of employment); *N.Y.C. Mun. Labor Comm. v. City of N.Y.*,
2022 NY Slip Op. 22121 (Apr. 21, 2022 N. Y. Sup. Ct.) (same); *O'Reilly v. Bd.
of Educ. of City School District of City of New York*, No. 16104/21, 2023 WL
2124731, at *1 (N.Y. 1st Dep't, Feb. 21, 2023) (same).  Plaintiffs argued in
their first and second requests to amend their briefing that another New York
Supreme Court judge and the OCB have found that although the Vaccine Mandate
*could* be a condition of employment, it was improperly imposed under municipal
law.  (ECF Nos. 77, 79.)  As discussed extensively below, however, the Court
bases its procedural due process finding on constitutional standards, not on
state or municipal standards.

SPA-27

constitutionally sufficient minimum process for NYPD vaccine policy); *Kane v. de Blasio*, No. 21-cv-7863 (NRB), 2022 WL 3701183, at *12 (S.D.N.Y. Aug. 26, 2022)(constitutionally sufficient minimum process was provided for DOE workers); *cf. Donohue v. Hochul*, No. 21-CV-8463 (JPO), 2022 WL 673636, at *7 (S.D.N.Y. Mar. 7, 2022) (public-school mask mandate did not implicate procedural due process concerns); *Commey v. Adams*, No. 22-CV-0018 (RA), 2022 WL 3286548, at *6 (S.D.N.Y. Aug. 11, 2022) (no procedural due process concerns because mandate was legislative in nature); *Collins v. City Univ. of New York*, No. 21-cv-9544 (NRB), 2023 WL 1818547, at *10 (S.D.N.Y. Feb. 8, 2023) (same); *Mongielo v. Hochul*, No. 22-CV-116-LJV, 2023 WL 2307887, at *17 (W.D.N.Y. Mar. 1, 2023) (same).

**III. Plaintiffs' Opposition to the Motion to Dismiss**

In their opposition to Defendants' motions to dismiss, Plaintiffs' central argument is that, contrary to the findings in the Court's December 2021 Order, the Vaccine Mandate was not a condition of employment, and thus Defendants' COH Order suspending Plaintiffs without pay violated Plaintiffs' procedural due process rights.[9]  (ECF No. 73, Plaintiffs' Mem. at 12-13, 19-21.)   In

---

[9] Plaintiffs also argue that Defendants violated New York City Charter Section 487(a) when the FDNY issued the October Memorandum concerning the City's newly imposed Vaccine Mandate.  (ECF No. 73, Plaintiffs' Mem. at 9.)  New Yokr City Charter Section 487(a) provides that the FDNY Commissioner "shall have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire department and the premises and property in the custody thereof."  N.Y.C. Charter § 487(a).  Plaintiffs argue, circularly, that because the Chief of Operations of the FDNY John

**SPA-28**

their opposition, Plaintiffs assert several arguments in support of their claim that the Vaccine Mandate was not a condition of employment: they first contend that because City Defendants failed to negotiate and bargain with FDNY unions concerning the new condition of employment, which Plaintiffs contend is required under New York Civil Service Law Section 201.4, the Vaccine Mandate was invalidly imposed. (*Id.* at 12.)  Plaintiffs also argue that, even though the FDNY *did* bargain and negotiate with DC37 concerning the Vaccine Mandate, the resulting DC37 Agreement was never ratified by DC37's union members. (*Id.* at 14-16.)  Plaintiffs assert that under New York City Admin. Code Section 12-307(a)(4), the DC37 Agreement could not amend the existing procedures of DC37's collective bargaining agreement without ratification by its members. (*Id.* at 14-16.)  They contend that the DC37 Agreement was invalid, meaning that the Vaccine Mandate could not become a condition of employment as to the DC37 member-Plaintiffs. (*Id.*) In other words, Plaintiffs premise their due process claims on the

---

Hodgens, rather than FDNY Commissioner Nigro, circulated the FDNY's October Memorandum alerting FDNY employees as to City's newly imposed Vaccine Mandate, the Vaccine Mandate was issued in violation of § 487(a) and was invalid. (ECF No. 73, Plaintiffs' Mem. at 9-10.)  Plaintiffs confuse the Vaccine Mandate (the City's vaccine requirement); the COH Order (the order from the Commissioner of Health imposing the Vaccine Mandate); and the FDNY's October Memorandum (the memorandum informing FDNY employees about the Vaccine Mandate. (*See* ECF NO. 17-1.)  Plaintiffs' argument is frivolous on its face, as the logical inference that Plaintiffs urge the Court to draw is that the FDNY Commissioner's name must be on every memorandum issued to FDNY employees or the memorandum will violate § 487(a). (*Id.*; ECF No. 73, Plaintiffs' Mem. at 9.)  In any case, because the Court looks to "federal constitutional standards rather than state [or local] statutes" to define the requirements of procedural due process, as discussed above, Plaintiffs' argument is meritless. *Robison*, 821 F.2d at 923.

**SPA-29**

assertion that (1) Defendants failed to follow state and municipal procedural requirements in imposing the Vaccine Mandate; (2) the Vaccine Mandate therefore was not a condition of employment; (3) if the Vaccine Mandate is not a condition of employment, the COH Order is invalid; and thus (4) Defendants' suspension of Plaintiffs without pay violated Plaintiffs' procedural due process. (*Id.* at 12–16.)

As the Court has repeatedly stated, however, "the Court looks to federal constitutional standards rather than state statutes to define the requirements of procedural due process." (ECF No. 24, December 2021 Order, at 10–11 (citing *Robison*, 821 F.2d at 923).) Courts repeatedly have held that state statutes do not determine constitutional due process requirements. *See, e.g.*, *Loudermill*, 470 U.S. at 541 ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute."); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires." (internal quotation marks omitted)); *cf. Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) ("[C]ases from both the Supreme Court and our Court make clear that the federal procedural due process

28

SPA-30

guarantee does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law."). Indeed, the Second Circuit recently reiterated that a district court failed to properly assess whether a defendant's conduct violated the procedural guarantees of the Due Process Clause where the court examined the due process claim exclusively by assessing a defendant's failure to comply with state law. *See Tooly v. Schwaller*, 919 F.3d 165, 172-73 (2d Cir. 2019) ("[V]iolation of state law does not *per se* result in a violation of the Due Process Clause").

Thus, to the extent that Plaintiffs base their procedural due process claims solely on alleged violations of state and municipal law, as noted above, their claims fail. *See McDarby v. Dinkins*, 907 F.2d 1334, 1337-38 (2d Cir. 1990) ("When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations."); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.1987) ("State procedural requirements do not establish federal constitutional rights. At most, any violation of state procedural requirements would create liability under state law." (citations omitted)). Plaintiffs provide no facts or law supporting a contrary argument, and Plaintiffs cannot add news facts at this stage. As discussed above, Plaintiffs conclusorily argue that

SPA-31

they were suspended without due process.  (ECF No. 73, Plaintiffs' Mem. at 20 ("If the Vaccine Mandate is not a condition of employment for FDNY employees, then, the City Defendants had no legal right or authority to suspend the Plaintiffs without pay without due process.").)  The allegations in the Amended Complaint—establishing that Defendants provided notice and an opportunity to seek accommodations via exemptions—satisfy due process. Accordingly, because the Court has found that there was constitutionally sufficient process, Plaintiffs' procedural due process claims—the § 1983 claim against all Defendants and the § 1983 claim for "direct participation and aiding and abetting" against individual Defendants—are dismissed for failure to state a claim.

**IV.  Other Causes of Action**

   **a. Section 1983 Conspiracy**

Having dismissed Plaintiffs' claim that Defendants violated their due process rights, the Court also finds that Plaintiffs' allegations are insufficient to state a plausible § 1983 conspiracy claim against Defendants.  "To state a § 1983 conspiracy claim, a plaintiff must allege (1) an agreement between two or more state actors, (2) 'to act in concert to inflict unconstitutional injury,' and (3) 'an overt act done in furtherance of that goal causing damages.'"  *Barnes v. Abdullah*, No. 11-CV-8168, 2013 WL 3816586, at *9 (S.D.N.Y. July 22, 2013) (quoting *Ciambriello*, 292 F.3d at

324–25); *Sibiski v. Cuomo*, No. 08-CV-3376, 2010 WL 3984706, at *6 (E.D.N.Y. Sept. 15, 2010) (citing same). Notably, "[v]ague and conclusory allegations that defendants have engaged in a conspiracy to violate plaintiff's constitutional rights must be dismissed." *Poole v. New York*, No. 11-CV-921, 2012 WL 727206, at *6 (E.D.N.Y. Mar. 6, 2012); *see also Krug v. McNally*, 368 F. App'x 269, 270 (2d Cir. 2010) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (alteration in original) (internal quotation marks omitted)). Plaintiff "must allege . . . overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Elmasri v. England*, 111 F. Supp. 2d 212, 218 (E.D.N.Y. 2000) (internal quotation marks omitted.)

Plaintiffs fail to state a § 1983 conspiracy claim. As detailed above, Plaintiffs fail to state an underlying procedural due process claim. Therefore, Plaintiffs' § 1983 conspiracy claim fails as a matter of law. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (a § 1983 conspiracy claim "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right"); *see also AK*

SPA-33

*Tournament Play, Inc. v. Town of Wallkill*, No. 09-CV-10579, 2011 WL 197216, at *4 (S.D.N.Y. Jan. 19, 2011) ("Plaintiffs' § 1983 conspiracy claims against all Defendants must be dismissed because Plaintiffs have failed to allege any violation of any cognizable constitutional right."), *aff'd*, 444 F. App'x 475 (2d Cir. 2011) (summary order); *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. Mar. 24, 2011) ("[A] § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation.").

Additionally, Plaintiffs do not proffer any nonconclusory facts regarding the nature of the conspiracy, Defendants' membership in the conspiracy, or the overt steps taken by any of the Defendants in furtherance of that conspiracy. Apart from "diffuse and expansive allegations" that are not "amplified by specific instances of misconduct," *Krug*, 368 F. App'x at 270 (internal quotation marks omitted), the Amended Complaint is bereft of any facts sufficient to give rise to a plausible § 1983 conspiracy claim. In fact, the Amended Complaint merely refers to a conspiracy based on Plaintiffs' vague and conclusory assertions that "[DC37 Defendants] conspired with [City Defendants] by entering into an agreement with [the City] that violated the DC37 members-Plaintiffs' constitutional rights" and "[a]s a result of the conspiracy between [DC37 Defendants] and [City Defendants], the DC37 members-Plaintiffs' constitutional rights have been

SPA-34

violated." (ECF No. 27, Amended Compl. ¶¶ 134-143, 216-239.) Plaintiffs' bald allegations, however, do not give rise to a plausible inference that Defendants acted in concert to violate Plaintiffs' constitutional rights. The allegations "constitute the type of vague, conclusory, and general allegations that, standing alone, are routinely found lacking under Rule 12(b)(6)." *Orr ex rel. Orr v. Miller Place Union Free Sch. Dist.*, No. 07-CV-787, 2008 WL 2716787, at *5 (E.D.N.Y. July 9, 2008) (internal quotation marks omitted). Accordingly, Plaintiffs' § 1983 conspiracy claim is dismissed for failure to state a claim.

### a. Class Claim

Because Plaintiffs fail to state a claim, their class allegations also fail. *Cf. Xuedan Wang v. Hearst Corp.*, No. 12-CV-793 (HB), 2013 WL 105784, at *3 (S.D.N.Y. Jan. 9, 2013) (noting that where court dismissed a claim under Rule 12(c), motion to strike class allegations could be granted as to that claim.)

### V.   Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires." Therefore, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). A court may, however, dismiss claims without leave to amend where the proposed amendments would be futile. *See Ruotolo*

33

SPA-35

*v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 381 U.S. 178, 182 (1962)).  An amendment to the complaint is futile if the "proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."  *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002), abrogated on other grounds by *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019).  Leave to amend may also be denied where previous amendments have not cured the complaint's deficiencies.  *Ruotolo*, 514 F.3d at 184 (citing *Foman*, 381 U.S. at 182); *see also DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim." (collecting cases)).

Here, after extensive briefing, evidentiary submissions, and a show cause hearing, the Court allowed Plaintiffs an opportunity to amend their complaint.  (ECF No. 24, December 2021 Order at 8; ECF No. 27, Amended Compl.)  Despite the Court's detailed analysis of Plaintiffs' factual allegations and claims in its December 2021 Order, Plaintiffs have again failed to allege facts supporting their claims.  Under these circumstances, and because further amendments to the complaint would not cure the deficiencies discussed in this opinion, any amendment would be futile.  Therefore, Plaintiffs' complaint is dismissed with prejudice.  *See, e.g., Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277

34

SPA-36

F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (stating that the district court did not abuse its discretion in not *sua sponte* granting leave to amend following dismissal of the complaint where plaintiff "had already amended its complaint once, and any amendment would have been futile").

## CONCLUSION

For the reasons set forth above, City Defendants' Motion to Dismiss and DC37 Defendants' Motion to Dismiss are GRANTED in their entirety and leave to amend is DENIED.  The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case.


**SO ORDERED.**

Dated:     March 29, 2023
           Brooklyn, New York


                              _____
                              Hon. Kiyo A. Matsumoto
                              United States District Judge

SPA-37

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

John GARLAND, et al.,

          *Plaintiff*,

      v.

CITY OF NEW YORK, et al.,

          *Defendants*.

------------------------------------X

**MEMORANDUM & ORDER**

21-cv-6586(KAM)(CLP)

**KIYO A. MATSUMOTO, United States District Judge:**

    Named Plaintiffs, employees of the New York City Fire Department ("FDNY")[1], commenced this action on November 24, 2021, against the City of New York, then-FDNY Commissioner Daniel A. Nigro, and unnamed John and Jane Does (collectively, "City Defendants"). (ECF No. 1, Complaint ("Compl.").) Defendants were responsible for implementing and enforcing the City's COVID-19 vaccination mandate ("Vaccine Mandate") covering all City employees, as detailed in an October 20, 2021 order issued by the Commissioner of Health ("COH Order") requiring all City employees to provide documentation of at least a first dose of a COVID-19 vaccine by October 29, 2021 or be "excluded from the premises at which they work[ed] beginning on November 1, 2021." (ECF No. 15-1, Exhibit A ("Ex. A") at 3.)   The day after the COH Order was

---

[1] Named Plaintiffs include FDNY officers, firefighters, and employees of the Emergency Medical Service ("EMS").   (ECF No. 27, Amended Complaint ("Amended Compl.") at ¶¶ 1-86, 108-09.)

1

SPA-38

issued, on October 21, 2021, the FDNY issued a memorandum notifying FDNY employees about the Vaccine Mandate, the COH Order, and the procedures for FDNY employees to obtain a religious or medical accommodation ("October Memorandum").  The Vaccine Mandate was revoked by the City on February 10, 2023 and is no longer in effect.[2]

At the time the original complaint was filed on November 24, 2021, Plaintiffs had not received at least one dose of the COVID-19 vaccine, and had been suspended without pay, at least temporarily, by FDNY.[3]  (ECF No. 1, Compl. at ¶¶ 62-63, 65.) Plaintiffs sought preliminary injunctive relief and asserted that the implementation of the Vaccine Mandate and subsequent consequences violated their procedural due process rights by violating (a) their statutory rights to a specific removal process under N.Y.C. Admin. Code § 15-113 and (b) their contractual rights to a specific removal process under their applicable collective bargaining agreements ("CBA").  (*Id.* at ¶¶ 67-71, 99-109.) Plaintiffs also asserted claims under 42 U.S.C. § 1983 against

---

[2] *See* N.Y.C. Board of Health, Order Rescinding Orders Requiring COVID-19 Vaccination in Child Care and Early Intervention Programs, for Nonpublic School Staff, and for Individuals Working in Certain Child Care Programs (2023); *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6).").

[3] The original complaint stated that nine Plaintiffs had been "returned to pay status," but did not state if those Plaintiffs had received at least one dose of the COVID-19 vaccine.  (ECF No. 1, Compl. at ¶ 65.)  Since then, at least 27 Plaintiffs have become vaccinated and "have returned to active duty" at FDNY. (ECF No. 27, Amended Compl. at ¶ 105.)

SPA-39

City Defendants for violating Plaintiffs' procedural due process rights, and a claim against Defendant Nigro for his alleged participation in these violations.  (*Id.* at ¶ 110-15.)

On November 24, 2021, Plaintiffs moved for a preliminary injunction to restore them to pay status and prohibit City Defendants from "disciplining" them further. (ECF No. 5, Motion for Preliminary Injunction.)  After providing the parties with an opportunity to present evidence and submissions before, during, and after a show cause hearing, the Court denied Plaintiffs' motion for injunctive relief in a Memorandum and Order ("December 2021 Order") dated December 6, 2021.  (ECF No. 24, Order Denying Preliminary Injunction ("December 2021 Order").)

Plaintiffs filed an amended complaint ("Amended Complaint"), adding Defendants District Council 37, AFSCME AFL-CIO ("DC37"), a union that represents FDNY's emergency medical services ("EMS") employees, and Harry Garrido, DC37's Executive Director

3

SPA-40

(collectively, "DC37 Defendants").[4]  (ECF No. 27, Amended Complaint ("Amended Compl.") at ¶¶ 92-93, 120-21.)

Presently before the Court are City Defendants' motion to dismiss and DC37 Defendants' motion to dismiss. For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

The Court first reviews the factual and procedural background of the Court's December 2021 Order denying Plaintiffs' motion for a preliminary injunction. (ECF No. 24, December 2021 Order, at 3-6.)  The Court also reviews the operative Amended Complaint, accepting as true for purposes of Defendants' motions the factual allegations in the complaint and drawing all reasonable inferences in Plaintiffs' favor. *Melendez v. City of New York*, 16 F.4th 992, 1010 (2d Cir. 2021). The Court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Drimal v. Tai*, 786 F.3d 219, 223 (2d. Cir. 2015) (internal quotation marks omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the

---

[4] The Court granted leave to Plaintiffs to file an amended complaint, *inter alia*, to add necessary parties.  (ECF No. 24, December 2021 Order at 8; 12/14/2021 Order.)  The Amended Complaint added the Uniformed Firefighters Association of Greater New York; Uniformed Fire Officers Association, Local 854 International Association of Firefighters, affiliated with the AFL-CIO; and two local affiliates of the DC37 union, District Council 37 AFSCME AFL-CIO Local 2507 and District Council 37 AFSCME AFL-CIO Local 3621.  (ECF No. 24, December 2021 Order at 7; ECF No. 27, Amended Compl.) Plaintiffs stipulated to dismissals without prejudice of their claims against each of these defendants.  (ECF Nos. 63-66.)

SPA-41

allegations contained in [an amended] complaint is inapplicable to legal conclusions.").

### I.   December 2021 Order

In the Court's December 2021 Order, the Court determined that because Plaintiffs requested a mandatory injunction—one that "alters the status quo by commanding a positive act"—they were required to establish a "clear" or "substantial" likelihood of success on the merits of their claims.  (ECF No. 24, December 2021 Order, at 6 (citing *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citation omitted)).)  The Court found that Plaintiffs failed to do so and denied injunctive relief.[5] (*Id.* at 10.)

First, as to Plaintiffs' procedural due process claims, although Plaintiffs had a protected property interest in their pay and continued employment, the Court found that Plaintiffs had been

---

[5] The evidentiary record before the Court regarding Plaintiffs' motion for injunctive relief included the following: an affidavit by Plaintiffs' attorney Austin Graff (ECF No. 5-1); affidavits by four individual Plaintiffs who had not received at least one dose of the COVID-19 vaccine (ECF Nos. 5-2, 5-3, 5-4, 5-5); the COH Order (ECF No. 15-1); an arbitration award between the Department of Education ("DOE") and an union of DOE employees regarding an exemption process for the Vaccine Mandate based on religious and medical requests (ECF No. 15-2); an agreement between DC37 and FDNY regarding exemption processes for the Vaccine Mandate and termination processes based on non-compliance ("DC37 Agreement") (ECF No. 15-3; ECF No. 21-1); filings from an Article 78 proceeding initiated by an FDNY union challenging the Vaccine Mandate (ECF Nos. 15-4, 15-5); filings from an Office of Collective Bargaining ("OCB") proceeding initiated by an FDNY union challenging the Vaccine Mandate (ECF Nos. 15-6, 15-7, 15-8); the OCB decision denying injunctive relief to the FDNY union (ECF No. 15-9); affidavits from three human resources officials at FDNY (ECF Nos. 15-10, 20-1, 20-2); and the FDNY's October Memorandum regarding the procedures for FDNY employees to provide proof of vaccination or to obtain a religious or medical exemption (ECF No. 17-1).

SPA-42

provided constitutionally adequate process before being deprived of their property interests.  (*Id.* at 10.)  Quoting the Second Circuit's holding in *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008), the Court noted that "there is no due process violation where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." (ECF No. 24, December 2021 Order at 14-15.)  The Due Process Clause would be implicated only if Plaintiffs could establish that "the grievance procedures in a collective bargaining agreement [were] an inadequate remedy," which Plaintiffs had not done.  (*Id.* at 15 (quoting *Adams*, 517 F.3d at 128).)

During the show cause hearing for the preliminary injunction, the three EMS Plaintiffs who belonged to the DC37 union challenged the agreement that DC37 had negotiated with the City regarding the leave and separation procedures for City employees who did not comply with the Vaccine Mandate ("DC37 Agreement").[6]  (*Id.* at 5-

---

[6] The DC 37 Agreement established, in relevant part: (1) the processes by which an employee could request an exemption or accommodation based on religious and/or medical grounds, and appeal an adverse determination on their request before an independent arbitration panel (while remaining on payroll and maintaining health benefits pending their request or appeal, as long as the request was made prior to 11:59 P.M. on October 27, 2021); (2) options to either voluntarily separate from service with certain compensation benefits, or elect extended LWOP status while maintaining health benefits until June 30, 2022; and (3) that as of December 1, 2021, the FDNY could seek to unilaterally separate employees who had not provided proof of vaccination, had not obtained or requested an accommodation, and had not opted for either separation option. (*See* ECF No. 21-1, Exhibit C.)  The DC 37 Agreement further provided that employees who opted to extend their LWOP to June 30, 2022, could return to their positions upon demonstrating compliance with the Vaccine Mandate. (*Id.*)

SPA-43

6.)   The Court's December 2021 Order noted that, generally, "a union member has no standing to enforce the collective bargaining agreement between their employer and union against the employer directly," but that even if the EMS Plaintiffs *had* standing, they could not show a clear or substantial likelihood of success on the merits of their procedural due process claims.  (*Id.* at 8-9 (citation omitted).)

Overall, the Court concluded that "the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate."  (*Id.* at 16.)  The Court found the following:

> Plaintiffs received ample pre-deprivation notice, via the [October Memorandum] from Hodgens, the Chief of Operations of the FDNY, of: (1) the [COH] Order, (2) the requirement to submit proof of vaccination by October 29, 2021, (3) their ability to seek reasonable accommodation by October 27, 2021; and (4) their placement on [leave without pay] status if they failed to comply with the Order and did not submit an accommodation request by the October 27 deadline.

(*Id.* at 16-17.)  Moreover, the Court found that Plaintiffs were provided with an opportunity to be heard before a final decision.  (*Id.* at 17.)  The opportunity to respond need not be a formal hearing.  *Ezekwo v. N.Y.C. Health & Hosps. Corp.,* 940 F.2d 775, 786 (2d Cir. 1991).  Indeed, any FDNY employees who challenged whether the Vaccine Mandate should apply to them not only "had the opportunity to seek a religious or medical accommodation," they also "remain[ed] on pay status pending the decision on their

7

SPA-44

request or appeal, so long as their accommodation requests were submitted prior to October 27, 2021." (ECF No. 24, December 2021 Order at 17.)  This Court found that the only reason that the vast majority of named Plaintiffs had been suspended without pay was because they requested an accommodation too late. (*Id.* at 17.) Therefore, Plaintiffs could not claim that they were deprived of due process simply by "not having availed themselves of the pre-deprivation opportunity to be heard." (*Id.* at 18.)

The Court also concluded that there were sufficient post-deprivation procedures to establish constitutionally adequate process. (*Id.*)  Any FDNY employee granted an accommodation would be restored to payroll and provided back pay, and there was an appeal process for any employee whose reasonable accommodation request was denied. (*Id.*)  The Court further found that FDNY employees also had other avenues to challenge the Vaccine Mandate and the COH Order, including through an Article 78 Proceeding in New York State Supreme Court. (*Id.* at 20 (citing *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy.")).)

Second, because "[f]ederal constitutional standards rather than state statutes define the requirements of procedural due process," the Court found that it did not need to consider whether state or municipal procedural law, such as N.Y.C. Admin. Code §

8

15-113, was correctly followed or applied.  (ECF No. 24, December 2021 Order, at 10-11 (quoting *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987)).)  Nevertheless, the Court concluded that § 15-113 was irrelevant to determining adequate process for FDNY employees because (1) the Second Circuit had held that the Vaccine Mandate was a condition of employment (albeit in the healthcare context); and (2) "the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency [did] not implicate the disciplinary procedures set forth section 15-113." (*Id.* at 11, 13-14.)

Accordingly, the Court denied Plaintiffs' motion for a preliminary injunction.

## II.  The Operative Amended Complaint

Following the Court's denial of Plaintiffs' preliminary injunction motion, Plaintiffs filed an Amended Complaint on January 5, 2022, adding the DC37 Defendants.  (ECF No. 27, Am. Compl.)  In the operative Amended Complaint, Plaintiffs assert primarily the same causes of action as in the original complaint, adding only (1) a request for the Court to issue a declaratory judgment that the DC37 Agreement "was entered into without any contractual authority" and therefore the Plaintiffs' suspension without pay violated their due process rights, and (2) a § 1983 conspiracy claim based on the DC37 Agreement between FDNY and DC37.

(*Id.* at ¶¶ 186, 238.) Plaintiffs' Amended Complaint also adds several allegations related to the DC37 Agreement, including that (1) "[p]ursuant to the Taylor Law (N.Y. Civil Service Law § 200, *et. seq.*), [the City] was required to bargain with its unions [about] the impact of the Vaccine Mandate . . ."; (2) "DC37 entered into an agreement with [the City] regarding the impact of the Vaccine Mandate, which provides that on or after December 1, 2021, [the City] may unilaterally separate DC37 members from their employment with the FDNY if the members have not obtained a COVID-19 vaccine"; and (3) the DC37 Agreement "authorized [the City] to suspend without pay the members of DC37 who did not take a COVID vaccine." (*Id.* at ¶¶ 129, 133-43.)

The Amended Complaint also includes new factual allegations related to the reasonable accommodation and appeals process. (*Id.* at ¶¶ 144-50.) The Amended Complaint alleges that as "part of [the City's] implementation of the Vaccine Mandate," the City "offered those FDNY employees who have either a medical or religious reasons for not taking a vaccine an opportunity to seek a reasonable accommodation to exempt the employee from the Vaccine Mandate." (*Id.* at ¶ 144.) Plaintiffs allege in the Amended Complaint that seventy-seven out of the eighty-six total Plaintiffs have requested a medical or religious accommodation to be exempt from the Vaccine Mandate; seventy-one Plaintiffs have been denied and six were awaiting an initial determination; thirty-

seven Plaintiffs have appealed the denial of their request for a reasonable accommodation; and one Plaintiff's appeal has been denied, while thirty-six are awaiting a decision. (*Id.*)

Finally, the Amended Complaint contains two exhibits: the COH Order, Exhibit A, and the DC37 Agreement, Exhibit B.[7] (ECF No. 27-1, Ex. A; ECF No. 27-2, Exhibit B.)  Given that the Amended Complaint discusses the FDNY's reasonable accommodation policy at relative length, the Court also determines that the FDNY's October Memorandum regarding the procedures for FDNY employees to obtain a religious or medical accommodation—which was submitted by Plaintiffs to the Court prior to the show cause hearing—is "integral" to the Amended Complaint. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (a court may "consider [a document] where the [amended] complaint relies heavily upon its terms and effect, thereby rendering the document integral to the [amended] complaint" (internal quotation marks omitted)).  "Even where a document is deemed 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Id.* at 231 (internal quotation marks omitted).  "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the

---

[7] Although Plaintiffs submitted the DC37 Agreement as Exhibit B in the Amended Complaint, Plaintiffs later filed a letter stating that they incorrectly filed the wrong agreement and attaching a corrected Exhibit B.  (ECF No. 27-2, Exhibit B; ECF No. 62, Letter; ECF No. 62-1, Corrected Exhibit B.)

SPA-48

document . . . [because of] a concern that a plaintiff may lack notice that the material will be considered." *Id.* (internal quotation marks omitted).

Here, Plaintiffs' Amended Complaint alleges that there was a process for seeking reasonable accommodations from the Vaccine Mandate and discusses the number of Plaintiffs at various stages of the process; FDNY employees were notified of that process as provided in the FDNY's October Memorandum. Indeed, Plaintiffs' opposition to Defendants' motions to dismiss relies heavily on the FDNY's October Memorandum and argues that it was improperly imposed, thus causing a procedural due process violation. *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (documents are "integral" where plaintiff had to rely on their content "to explain what the actual unlawful course of conduct was on which the [d]efendants embarked"); (ECF No. 73, Plaintiffs' Mem. at 9-10.) The Court finds that the October Memorandum is integral to the Amended Complaint because Plaintiffs' allegations and opposition to Defendants' motions to dismiss rely on and relate to the document, thus establishing that Plaintiffs do not challenge its authenticity, accuracy or relevance. (ECF No. 73, Plaintiffs' Mem. at 2-4, 8-10.) Additionally, Plaintiffs submitted the October Memorandum to the Court before the show cause hearing on Plaintiffs' motion for a preliminary injunction, and it was discussed extensively at the

12

hearing and in the Court's December 2021 Order denying the motion for a preliminary injunction. (ECF Nos. 17-1, 24.) Accordingly, the Court concludes that the FDNY's October Memorandum is "integral" to the Amended Complaint.

### III. Defendants' Motions to Dismiss

On June 13, 2022, City Defendants moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (ECF No. 68, City Defendants' Motion; ECF No. 69, City Defendants' Memorandum in Support; ECF No. 75, City Defendants' Reply.) On June 14, 2022, DC37 Defendants also moved to dismiss under Rule 12(b)(6) for failure to state a claim. (ECF No. 71, DC37 Defendants' Motion; ECF No. 72, DC37 Defendants' Memorandum in Support; ECF No. 74, DC37 Defendants' Reply.)

On September 28, 2022, Plaintiffs filed for leave to provide supplemental briefing or amend their memorandum in opposition brief to Defendants' motions to dismiss regarding a recent New York Supreme Court decision about the Vaccine Mandate. (ECF No. 77, Motion to Amend.) City Defendants opposed. (ECF No. 78, Response.) On October 3, 2022, the Court denied Plaintiffs' motion, explaining that the Court would review all relevant case law in rendering its decision. (10/03/2022 Order.) On October 10, 2022, Plaintiffs filed a second motion to amend or supplement their briefing regarding an Office of Collective Bargaining ("OCB") decision about the Vaccine Mandate. (ECF No. 79, Second

**SPA-50**

Motion.)  The Court again denied Plaintiffs' motion, for the same reasons.  (10/13/2022 Order.)   On October 25, 2022, Plaintiffs filed a third motion to amend or supplement their briefing, regarding another New York Supreme Court decision about the Vaccine Mandate.  (ECF No. 82, Third Motion.)   The Court again denied Plaintiffs' motion.  (10/26/2022 Order.)

On February 13, 2023, in light of the City's announcement that it had discontinued the Vaccine Mandate for City employees on February 10, 2023, the parties were ordered to advise the Court of their respective views as to which issues in the instant action, if any, were mooted, and which issues subsisted.  (02/13/2023 Order.)  The parties responded, all acknowledging that some live issues remained, given that employees who had been suspended or terminated for failure to show proof of vaccination would not be automatically reinstated to their prior positions with back pay. (ECF Nos. 84; 85; 86.)

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

14

conduct alleged." *Id*. When considering a motion to dismiss under Rule 12(b)(6), a district court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Pollok v. Chen*, 806 F. App'x 40, 44 (2d Cir. 2020) (summary order) (citation omitted).

In considering a 12(b)(6) motion, the court may refer to "documents attached to [the complaint] or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken." *Grant v. Cnty. of Erie*, 542 F. App'x 21, 23 (2d Cir. 2013) (summary order); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (clarifying that "*reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice of possession is not enough." (emphasis in original)). "[A] district court may [also] rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)[.]" *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

<u>**DISCUSSION**</u>

## I.   Declaratory Judgment and Injunctive Relief

In Plaintiffs' Amended Complaint, the first and second "causes of action" request a declaratory judgment, presumably under the Declaratory Judgment Act ("DJA"), and the "third cause of action" requests injunctive relief. (ECF No. 27, Amended

15

SPA-52

Compl.)  The DJA "provides a remedy, not a cause of action." *KM Enters., Inc. v. McDonald*, No. 11-CV-5098 (ADS) (ETB), 2012 WL 4472010, at \*19 (E.D.N.Y. Sept. 25, 2012), *aff'd*, 518 F. App'x 12 (2d Cir. 2013).  "Similarly to declaratory relief, a request for injunctive relief is not a separate cause of action." *Id.* at \*20 (alteration and internal quotation marks omitted); *see also Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406-07 (S.D.N.Y.2010) ("Declaratory judgments and injunctions are remedies, not causes of action.")  Because Plaintiffs' first, second, and third "causes of action" request remedies, rather than plead a separate claim, the first, second, and third "causes of action" are dismissed for failure to state a claim.

## II.  Procedural Due Process Claims

A procedural due process claim requires a plaintiff to establish that (1) he or she possesses a protected liberty or property interest, and (2) was deprived of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).  Pre-deprivation processes "need not be elaborate," and the Constitution "mandates only that such process include, at a minimum, notice and the

SPA-53

opportunity to respond." *O'Connor*, 426 F.3d at 198 (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545 (1985).

Defendants argue that the law of the case doctrine precludes re-litigation of Plaintiffs' procedural due process claims, in light of the Court's comprehensive December 2021 Order denying a preliminary injunction. (ECF No. 69, City Defendants' Memorandum in Support, at 8-12.) The law of the case doctrine holds that "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages of the same case,' unless 'cogent' and 'compelling' reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (emphasis added) (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)). The Court notes, however, that the "preliminary determination of likelihood of success on the merits in a ruling on a motion for preliminary injunction is ordinarily tentative, pending a trial or motion for summary judgment." *Goodheart Clothing Co., Inc. v. Laura Goodman Enters., Inc.*, 962 F.2d 268, 274 (2d Cir. 1992). The Court also acknowledges that "[a] party . . . is not required to prove [their] case in full at a preliminary-injunction hearing, and the findings of fact and conclusions of law made by a court granting a preliminary

17

SPA-54

injunction are not binding at a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted).

The Court need not decide here whether the law of the case doctrine applies to prevent this Court's reconsideration of the factual and legal issues discussed in its December 2021 Order denying Plaintiffs' motion for a preliminary injunction. *Cf. Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021) (the law-of-the-case doctrine is "discretionary and does not limit a court's power to reconsider its own decision prior to final judgment" (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992))). As discussed below, however, the Court finds that (1) the Amended Complaint's factual allegations, which are mostly conclusory, add little to Plaintiffs' prior allegations; and (2) the legal analysis for the preliminary injunction in the December 2021 Order sufficiently overlaps with the issues—based on the current factual allegations and the asserted claims—before the Court on the instant motions to dismiss such that the Court reviews its prior analysis in assessing Plaintiffs' current claims. For the reasons set forth below, the Court concludes that Plaintiffs' Amended Complaint fails to state plausible procedural due process claims.

### a. Repeated and Conclusory Factual Allegations

First, Plaintiffs' Amended Complaint, although filed after the Court's December 2021 Order denying the Plaintiffs' motion for

SPA-55

a preliminary injunction, adds very few new facts to the complaint before the Court in its December 2021 Order denying a preliminary injunction. The Amended Complaint adds additional Plaintiffs and the DC37 Defendants, and provides updates as to each Plaintiff's vaccination status and the status of seventy-seven of the Plaintiffs' reasonable accommodation requests. (ECF No. 27, Amended Compl. at ¶¶ 92-93, 144-50.) Unlike the original complaint, however, the Amended Complaint acknowledges that "[a]s part of [the City's] implementation of the Vaccine Mandate," the City "offered those FDNY employees who have either a medical or religious reasons for not taking a vaccine an opportunity to seek a reasonable accommodation to exempt the employee from the Vaccine Mandate." (*Id.* at ¶ 144.) As noted previously, the Court also determines that the FDNY's October Memorandum describing accommodation procedures is "integral" to the Amended Complaint. *Nicosia*, 834 F.3d at 230.

The Amended Complaint also includes ostensibly new factual allegations regarding the DC37 Agreement to support Plaintiffs' claim that the DC37 Agreement violated Plaintiffs' due process rights. (*Id.* at §§ 129, 133-43.) Plaintiffs' allegations concerning the DC37 Defendants and the DC37 Agreement, however, are all legal conclusions devoid of specific facts: e.g., "DC37 conspired with [the City] by entering into an agreement . . . that violated the DC37 members-Plaintiffs' constitutional rights."

SPA-56

(*Id.* at ¶ 138.)   Courts are "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks omitted).   Indeed, the only non-conclusory allegations in the Amended Complaint concerning the DC37 Agreement are the following: (1) "DC37 entered into an agreement . . . regarding the impact of the Vaccine Mandate, which provides that on or after December 1, 2021, [the City] may unilaterally separate DC37 members from their employment with the FDNY if the members have not obtained a COVID-19 vaccine"; and (2) "DC37's Agreement with [the City] authorized [the City] to suspend without pay the members of DC37 who did not take a COVID vaccine."   (ECF No. 27, Amended Compl. at ¶¶ 133, 134.)

Therefore, the factual allegations currently before the Court, although less than the full evidentiary record before the Court in its December 2021 Order denying the motion for a preliminary injunction, contain no new, non-conclusory factual allegations that would upend the Court's prior legal analysis.

a. Repeated Claims

Second, Plaintiffs' Amended Complaint asserts primarily the same causes of action as the original complaint and which this Court considered in the December 2021 Order.   In addition to the "causes of action" for declaratory judgments and injunctive relief, discussed above, Plaintiffs now assert a § 1983 claim

SPA-57

against Defendants for violating their procedural due process
rights; a § 1983 conspiracy claim against Defendants for conspiring
to violate their procedural due process rights; and a § 1983 claim
against individual Defendants Nigro, Garrido, and John and Janes
Does based on "direct participation and aiding and abetting" the
City's violation of Plaintiffs' due process rights. (ECF No. 27,
Amended Compl. at ¶¶ 197-245.)  The only new claim in the Amended
Complaint is the § 1983 conspiracy claim.  The underlying
constitutional violation alleged in each cause of action is that
Defendants violated Plaintiffs' due process rights by suspending
Plaintiffs without pay if they refused to comply with the Vaccine
Mandate. (*Id.*)  Therefore, Plaintiffs' instant claims raise issues
identical issues to the claims addressed and decided by the Court
in denying the preliminary injunction. (ECF No. 24, December 2021
Order at 10-20.)

    Furthermore, because Plaintiffs sought both a prohibitory and
mandatory injunction in their motion for a preliminary injunction,
the Court previously reviewed Plaintiffs' legal arguments under
the higher pleading standard for a mandatory injunction.  The Court
found that Plaintiffs failed to satisfy the standard for a
mandatory injunction by demonstrating a "clear" or "substantial"
likelihood of success on the merits of their procedural due process
claims, rather than merely a likelihood of success. (*See* ECF No.
5-8, Plaintiffs' Preliminary Injunction Memorandum at 4); *see also*

SPA-58

*Tom Doherty Assocs. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (plaintiffs seeking a mandatory injunction must meet higher standard and must show a "clear" or "substantial" likelihood of success on the merits); *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (where the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits.").

Having reviewed Plaintiffs' procedural due process allegations at length—and now examining any well-pleaded factual allegations in the Amended Complaint, exhibits, and incorporated or integral documents—the Court concludes on the merits that "the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate," and, therefore, Plaintiffs' Amended Complaint fails to state a claim and must be dismissed. (ECF No. 24, December 2021 Order, at 16). Plaintiffs received ample pre-deprivation notice of procedures regarding the Vaccine Mandate, via the FDNY's October Memorandum informing FDNY employees about (1) the COH order; (2) the requirement to submit proof of vaccination by October 29, 2021; (3) the ability to seek reasonable accommodation and be exempted from the Vaccine Mandate by October 27, 2021; and (4) the placement of non-compliant employees on [leave without pay] status if they failed to comply

22

**SPA-59**

with the COH Order and did not submit an accommodation request by the October 27 deadline.  (ECF No. 17-1, October 21, 2021 Memorandum ("Oct. Mem.") at 4, 15; ECF No. 27, Amended Compl. at ¶ 144.)

Further, accepting all well-pleaded factual allegations as true for purposes of Defendants' motions to dismiss, Plaintiffs were provided with an opportunity to be heard prior to a final decision.  The opportunity to respond need not be a formal hearing. *Ezekwo*, 940 F.2d at 786.  Here, as acknowledged in the Amended Complaint, any FDNY employee who challenged whether the Vaccine Mandate should apply to them had the opportunity to seek a religious or medical accommodation through an exemption to the Vaccine Mandate.  (ECF No. 27, Amended Compl. at ¶ 144.)  Indeed, the COH Order itself stated, in plain language, that it should not be "construed to prohibit any reasonable accommodation otherwise required by law."  (ECF 27. 125-1, Ex. A.)  And any FDNY employees who submitted reasonable accommodation requests before the October 27, 2021 deadline were *not* suspended without pay: only employees who sought reasonable accommodation after October 27, 2021 were placed on leave without pay while awaiting a reasonable accommodation decision.  (ECF No. 17-1, Oct. Mem. at 4, 16-17, 24-25.)  In addition to the above process, DC37 Plaintiffs had access to additional time to seek an accommodation beyond the October 27

SPA-60

deadline—through November 5, 2021—as a result of the DC37 Agreement. (ECF No. 62-1, Corrected Exhibit B, at 2.)

The Court finds that the post-deprivation procedures were constitutionally adequate. The City required that any denial of a reasonable accommodation request "must provide written information to the employee whose request has been denied and include a link to . . . [the City's] online appeals request portal." (ECF No. 17-4, Oct. Mem. at 25.) Any employee who was denied a reasonable accommodation could file an appeal within three days. (*Id.*) If an appeal was denied, the employee was required to submit proof of the first dose of a COVID-19 vaccine within three business days and, if required, of the second dose within 45 days. (*Id.*) If the employee refused to be vaccinated within the given timeframe after the appeal was denied, the employee would remain on LWOP status. (*Id.*) Finally, Plaintiffs had other post-deprivation avenues, such as an Article 78 proceeding, to address the COH Order and subsequent consequences. *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881 ("[A]n Article 78 proceeding is a perfectly adequate post-deprivation remedy."). Accordingly, the Court concludes, on the merits, that Defendants provided constitutionally sufficient pre-deprivation and post-

deprivation process, and that Plaintiffs fail to state a procedural due process claim.

### a. Intervening Law

Moreover, although the Court decides the instant motions to dismiss on the basis of Plaintiffs' Amended Complaint and attached and integral exhibits, the Court notes that there has been no change in intervening law since the Court's December 2021 Order finding that Plaintiffs procedural due process rights were not violated, despite a substantial amount of litigation concerning the Vaccine Mandate.[8]  *See, e.g.,* *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 436 (E.D.N.Y. Mar. 8, 2022) (plaintiff received

---

[8] The Court's procedural due process findings are not based on the process required by state or municipal statutes.  Moreover, there has not been a substantial change in intervening law concerning this Court's finding that the Vaccine Mandate was a condition of employment.  *See Andre-Rodney v. Hochul*, No. 21-cv-1053 (BKS)(CFH), 2022 WL 3027094 (N.D.N.Y. Aug. 1, 2022) (vaccine was condition of employment for healthcare workers); *D'Cunha v. Northwell Health Sys.*, No. 22-cv-0988 (MKV), 2023 WL 2266520 (S.D.N.Y. Feb. 28, 2023) (same); *Commey*, 2022 WL 3286548 (finding vaccination to be condition of employment for porter); *Kane*, 2022 WL 3701183 (vaccine was condition of employment); *Marciano*, 589 F. Supp. 3d at 436 (same).  Although—as Plaintiffs noted in their third request to supplement their memorandum of law in opposition to Defendants' motions to dismiss (ECF No. 81)—one New York Supreme Court judge has found that the Vaccine Mandate was not a condition of employment, nearly all other New York state courts to address the issue have found that the Vaccine Mandate was a condition of employment.  *Compare Garvey v. City of New York*, 77 Misc. 3d 585 (N.Y. Sup. Ct., Richmond Cnty., Oct. 24, 2022) (finding mandate was not a condition of employment), *with Clarke v. Bd. of Educ. of City School*, No. 160787/21, 2023 WL 2124546 (N.Y. App. Div. 1st Dep't, Feb. 21, 2023) (finding mandate was a condition of employment); *N.Y.C. Mun. Labor Comm. v. City of N.Y.*, 2022 NY Slip Op. 22121 (Apr. 21, 2022 N. Y. Sup. Ct.) (same); *O'Reilly v. Bd. of Educ. of City School District of City of New York*, No. 16104/21, 2023 WL 2124731, at *1 (N.Y. 1st Dep't, Feb. 21, 2023) (same).  Plaintiffs argued in their first and second requests to amend their briefing that another New York Supreme Court judge and the OCB have found that although the Vaccine Mandate *could* be a condition of employment, it was improperly imposed under municipal law.  (ECF Nos. 77, 79.)  As discussed extensively below, however, the Court bases its procedural due process finding on constitutional standards, not on state or municipal standards.

SPA-62

constitutionally sufficient minimum process for NYPD vaccine policy); *Kane v. de Blasio*, No. 21-cv-7863 (NRB), 2022 WL 3701183, at *12 (S.D.N.Y. Aug. 26, 2022)(constitutionally sufficient minimum process was provided for DOE workers); *cf. Donohue v. Hochul*, No. 21-CV-8463 (JPO), 2022 WL 673636, at *7 (S.D.N.Y. Mar. 7, 2022) (public-school mask mandate did not implicate procedural due process concerns); *Commey v. Adams*, No. 22-CV-0018 (RA), 2022 WL 3286548, at *6 (S.D.N.Y. Aug. 11, 2022) (no procedural due process concerns because mandate was legislative in nature); *Collins v. City Univ. of New York*, No. 21-cv-9544 (NRB), 2023 WL 1818547, at *10 (S.D.N.Y. Feb. 8, 2023) (same); *Mongielo v. Hochul*, No. 22-CV-116-LJV, 2023 WL 2307887, at *17 (W.D.N.Y. Mar. 1, 2023) (same).

**III. Plaintiffs' Opposition to the Motion to Dismiss**

In their opposition to Defendants' motions to dismiss, Plaintiffs' central argument is that, contrary to the findings in the Court's December 2021 Order, the Vaccine Mandate was not a condition of employment, and thus Defendants' COH Order suspending Plaintiffs without pay violated Plaintiffs' procedural due process rights.[9]   (ECF No. 73, Plaintiffs' Mem. at 12-13, 19-21.)   In

---

[9] Plaintiffs also argue that Defendants violated New York City Charter Section 487(a) when the FDNY issued the October Memorandum concerning the City's newly imposed Vaccine Mandate.  (ECF No. 73, Plaintiffs' Mem. at 9.)  New Yokr City Charter Section 487(a) provides that the FDNY Commissioner "shall have sole and exclusive power and perform all duties for the government, discipline, management, maintenance and direction of the fire department and the premises and property in the custody thereof."  N.Y.C. Charter § 487(a).  Plaintiffs argue, circularly, that because the Chief of Operations of the FDNY John

SPA-63

their opposition, Plaintiffs assert several arguments in support of their claim that the Vaccine Mandate was not a condition of employment: they first contend that because City Defendants failed to negotiate and bargain with FDNY unions concerning the new condition of employment, which Plaintiffs contend is required under New York Civil Service Law Section 201.4, the Vaccine Mandate was invalidly imposed. (*Id.* at 12.)  Plaintiffs also argue that, even though the FDNY *did* bargain and negotiate with DC37 concerning the Vaccine Mandate, the resulting DC37 Agreement was never ratified by DC37's union members. (*Id.* at 14-16.)  Plaintiffs assert that under New York City Admin. Code Section 12-307(a)(4), the DC37 Agreement could not amend the existing procedures of DC37's collective bargaining agreement without ratification by its members. (*Id.* at 14-16.)  They contend that the DC37 Agreement was invalid, meaning that the Vaccine Mandate could not become a condition of employment as to the DC37 member-Plaintiffs. (*Id.*)  In other words, Plaintiffs premise their due process claims on the

---

Hodgens, rather than FDNY Commissioner Nigro, circulated the FDNY's October Memorandum alerting FDNY employees as to City's newly imposed Vaccine Mandate, the Vaccine Mandate was issued in violation of § 487(a) and was invalid. (ECF No. 73, Plaintiffs' Mem. at 9-10.)  Plaintiffs confuse the Vaccine Mandate (the City's vaccine requirement); the COH Order (the order from the Commissioner of Health imposing the Vaccine Mandate); and the FDNY's October Memorandum (the memorandum informing FDNY employees about the Vaccine Mandate. (*See* ECF NO. 17-1.)  Plaintiffs' argument is frivolous on its face, as the logical inference that Plaintiffs urge the Court to draw is that the FDNY Commissioner's name must be on every memorandum issued to FDNY employees or the memorandum will violate § 487(a). (*Id.*; ECF No. 73, Plaintiffs' Mem. at 9.)  In any case, because the Court looks to "federal constitutional standards rather than state [or local] statutes" to define the requirements of procedural due process, as discussed above, Plaintiffs' argument is meritless. *Robison*, 821 F.2d at 923.

27

SPA-64

assertion that (1) Defendants failed to follow state and municipal procedural requirements in imposing the Vaccine Mandate; (2) the Vaccine Mandate therefore was not a condition of employment; (3) if the Vaccine Mandate is not a condition of employment, the COH Order is invalid; and thus (4) Defendants' suspension of Plaintiffs without pay violated Plaintiffs' procedural due process. (*Id.* at 12–16.)

As the Court has repeatedly stated, however, "the Court looks to federal constitutional standards rather than state statutes to define the requirements of procedural due process." (ECF No. 24, December 2021 Order, at 10–11 (citing *Robison*, 821 F.2d at 923).) Courts repeatedly have held that state statutes do not determine constitutional due process requirements. *See, e.g.*, *Loudermill*, 470 U.S. at 541 ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute."); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires." (internal quotation marks omitted)); *cf. Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 192 (2d Cir. 2020) ("[C]ases from both the Supreme Court and our Court make clear that the federal procedural due process

28

SPA-65

guarantee does *not* require state officials to inform individuals of all the procedural guarantees they enjoy under state law."). Indeed, the Second Circuit recently reiterated that a district court failed to properly assess whether a defendant's conduct violated the procedural guarantees of the Due Process Clause where the court examined the due process claim exclusively by assessing a defendant's failure to comply with state law. *See Tooly v. Schwaller*, 919 F.3d 165, 172-73 (2d Cir. 2019) ("[V]iolation of state law does not *per se* result in a violation of the Due Process Clause").

Thus, to the extent that Plaintiffs base their procedural due process claims solely on alleged violations of state and municipal law, as noted above, their claims fail. *See McDarby v. Dinkins*, 907 F.2d 1334, 1337-38 (2d Cir. 1990) ("When the minimal due process requirements of notice and hearing have been met, a claim that an agency's policies or regulations have not been adhered to does not sustain an action for redress of procedural due process violations."); *Bolden v. Alston*, 810 F.2d 353, 358 (2d Cir.1987) ("State procedural requirements do not establish federal constitutional rights. At most, any violation of state procedural requirements would create liability under state law." (citations omitted)). Plaintiffs provide no facts or law supporting a contrary argument, and Plaintiffs cannot add news facts at this stage. As discussed above, Plaintiffs conclusorily argue that

29

they were suspended without due process.  (ECF No. 73, Plaintiffs'
Mem. at 20 ("If the Vaccine Mandate is not a condition of
employment for FDNY employees, then, the City Defendants had no
legal right or authority to suspend the Plaintiffs without pay
without due process.").)  The allegations in the Amended Complaint—
establishing that Defendants provided notice and an opportunity to
seek accommodations via exemptions—satisfy due process.
Accordingly, because the Court has found that there was
constitutionally sufficient process, Plaintiffs' procedural due
process claims—the § 1983 claim against all Defendants and the §
1983 claim for "direct participation and aiding and abetting"
against individual Defendants—are dismissed for failure to state
a claim.

**IV.  Other Causes of Action**

   **a. Section 1983 Conspiracy**

Having dismissed Plaintiffs' claim that Defendants violated
their due process rights, the Court also finds that Plaintiffs'
allegations are insufficient to state a plausible § 1983 conspiracy
claim against Defendants.  "To state a § 1983 conspiracy claim, a
plaintiff must allege (1) an agreement between two or more state
actors, (2) 'to act in concert to inflict unconstitutional injury,'
and (3) 'an overt act done in furtherance of that goal causing
damages.'"  *Barnes v. Abdullah*, No. 11-CV-8168, 2013 WL 3816586,
at *9 (S.D.N.Y. July 22, 2013) (quoting *Ciambriello*, 292 F.3d at

SPA-67

324-25); *Sibiski v. Cuomo*, No. 08-CV-3376, 2010 WL 3984706, at *6 (E.D.N.Y. Sept. 15, 2010) (citing same). Notably, "[v]ague and conclusory allegations that defendants have engaged in a conspiracy to violate plaintiff's constitutional rights must be dismissed." *Poole v. New York*, No. 11-CV-921, 2012 WL 727206, at *6 (E.D.N.Y. Mar. 6, 2012); *see also Krug v. McNally*, 368 F. App'x 269, 270 (2d Cir. 2010) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (alteration in original) (internal quotation marks omitted)). Plaintiff "must allege . . . overt acts which defendants engaged in which were reasonably related to the promotion of the alleged conspiracy." *Elmasri v. England*, 111 F. Supp. 2d 212, 218 (E.D.N.Y. 2000) (internal quotation marks omitted.)

Plaintiffs fail to state a § 1983 conspiracy claim. As detailed above, Plaintiffs fail to state an underlying procedural due process claim. Therefore, Plaintiffs' § 1983 conspiracy claim fails as a matter of law. *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (a § 1983 conspiracy claim "will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right"); *see also AK*

SPA-68

*Tournament Play, Inc. v. Town of Wallkill*, No. 09-CV-10579, 2011 WL 197216, at *4 (S.D.N.Y. Jan. 19, 2011) ("Plaintiffs' § 1983 conspiracy claims against all Defendants must be dismissed because Plaintiffs have failed to allege any violation of any cognizable constitutional right."), *aff'd*, 444 F. App'x 475 (2d Cir. 2011) (summary order); *Mitchell v. Cnty. of Nassau*, 786 F. Supp. 2d 545, 564 (E.D.N.Y. Mar. 24, 2011) ("[A] § 1983 conspiracy claim fails as a matter of law where there is no underlying constitutional violation.").

Additionally, Plaintiffs do not proffer any nonconclusory facts regarding the nature of the conspiracy, Defendants' membership in the conspiracy, or the overt steps taken by any of the Defendants in furtherance of that conspiracy. Apart from "diffuse and expansive allegations" that are not "amplified by specific instances of misconduct," *Krug*, 368 F. App'x at 270 (internal quotation marks omitted), the Amended Complaint is bereft of any facts sufficient to give rise to a plausible § 1983 conspiracy claim. In fact, the Amended Complaint merely refers to a conspiracy based on Plaintiffs' vague and conclusory assertions that "[DC37 Defendants] conspired with [City Defendants] by entering into an agreement with [the City] that violated the DC3 7 members-Plaintiffs' constitutional rights" and "[a]s a result of the conspiracy between [DC37 Defendants] and [City Defendants], the DC37 members-Plaintiffs' constitutional rights have been

32

SPA-69

violated." (ECF No. 27, Amended Compl. ¶¶ 134-143, 216-239.) Plaintiffs' bald allegations, however, do not give rise to a plausible inference that Defendants acted in concert to violate Plaintiffs' constitutional rights. The allegations "constitute the type of vague, conclusory, and general allegations that, standing alone, are routinely found lacking under Rule 12(b)(6)." *Orr ex rel. Orr v. Miller Place Union Free Sch. Dist.*, No. 07-CV-787, 2008 WL 2716787, at *5 (E.D.N.Y. July 9, 2008) (internal quotation marks omitted). Accordingly, Plaintiffs' § 1983 conspiracy claim is dismissed for failure to state a claim.

### a. Class Claim

Because Plaintiffs fail to state a claim, their class allegations also fail. *Cf. Xuedan Wang v. Hearst Corp.*, No. 12-CV-793 (HB), 2013 WL 105784, at *3 (S.D.N.Y. Jan. 9, 2013) (noting that where court dismissed a claim under Rule 12(c), motion to strike class allegations could be granted as to that claim.)

### V.   Leave to Amend

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint "shall be freely given when justice so requires." Therefore, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (citations omitted). A court may, however, dismiss claims without leave to amend where the proposed amendments would be futile. *See Ruotolo*

33

SPA-70

*v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (citing *Foman v. Davis*, 381 U.S. 178, 182 (1962)).  An amendment to the complaint is futile if the "proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. Of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002), abrogated on other grounds by *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019).  Leave to amend may also be denied where previous amendments have not cured the complaint's deficiencies.  *Ruotolo*, 514 F.3d at 184 (citing *Foman*, 381 U.S. at 182); *see also DeJesus v. Sears, Roebuck & Co., Inc.*, 87 F.3d 65, 72 (2d Cir. 1996) (noting that the Second Circuit has "upheld decisions to dismiss a complaint without leave to replead when a party has been given ample prior opportunity to allege a claim." (collecting cases)).

Here, after extensive briefing, evidentiary submissions, and a show cause hearing, the Court allowed Plaintiffs an opportunity to amend their complaint.  (ECF No. 24, December 2021 Order at 8; ECF No. 27, Amended Compl.)  Despite the Court's detailed analysis of Plaintiffs' factual allegations and claims in its December 2021 Order, Plaintiffs have again failed to allege facts supporting their claims.  Under these circumstances, and because further amendments to the complaint would not cure the deficiencies discussed in this opinion, any amendment would be futile.  Therefore, Plaintiffs' complaint is dismissed with prejudice.  *See, e.g., Ariel (UK) Ltd. v. Reuters Grp., PLC*, 277

34

SPA-71

F. App'x 43, 45-46 (2d Cir. 2008) (summary order) (stating that the district court did not abuse its discretion in not *sua sponte* granting leave to amend following dismissal of the complaint where plaintiff "had already amended its complaint once, and any amendment would have been futile").

**CONCLUSION**

For the reasons set forth above, City Defendants' Motion to Dismiss and DC37 Defendants' Motion to Dismiss are GRANTED in their entirety and leave to amend is DENIED.  The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case.


**SO ORDERED.**

Dated:      March 29, 2023
            Brooklyn, New York

                                    _____
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge

SPA-72

```
UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK
-----------------------------------X
John GARLAND,
et al,

              Plaintiffs,

          - against -

NEW YORK CITY FIRE DEPARTMENT, DANIEL A.
NIGRO, in his official and individual
capacities, JOHN DOE #1-10, in their
official and individual capacities; and
JANE DOE #1-10 in their official and
individual capacities,

              Defendants.
-----------------------------------X
```

<u>MEMORANDUM AND ORDER</u>
21-cv-6586 (KAM)(CLP)

**MATSUMOTO, United States District Judge:**

Named Plaintiffs are employees of the New York City Fire Department ("FDNY")[1] who have not received at least one dose of a COVID-19 vaccine.[2]  Plaintiffs filed this action on November 24, 2021, on their behalf and on behalf of those who are similarly situated (together, "Plaintiffs").  (ECF No. 1, Compl.)  Defendants are the FDNY, Daniel A. Nigro, the Commissioner of the FDNY, and unnamed John and Jane Does ("Defendants").

Defendants are responsible for implementing the order issued by David A. Chokshi, the Commissioner of the New York City

---

[1] Named Plaintiffs include FDNY officers, firefighters, and employees of the Emergency Medical Service ("EMT").  (Compl. ¶ 62.)
[2] Defendants' counsel represented to the Court at the November 30, 2021 show cause hearing that 9 or 10 of the named Plaintiffs have been restored to pay status upon providing proof of vaccination to the FDNY.  Plaintiffs' counsel is directed to advise the Court whether these 9 or 10 Plaintiffs have indeed been vaccinated and, if so, why their claims should not be dismissed as moot.

1

SPA-73

Department of Health and Mental Hygiene ("DOHMH"), dated October 20, 2021 (the "Order"), requiring that all City employees show documentation of having received one dose any COVID-19 vaccine by 5:00 P.M. on October 29, 2021. (ECF No. 14, Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for TRO/PI ("Defs. Opp."), at 8.)  Pursuant to the Order, any City employee who failed to provide the requisite proof of vaccination by October 29, was "excluded from the premises at which they work beginning on November 1, 2021." (ECF No. 15-1, Exhibit A to the Declaration of Andrea O'Connor ("O'Connor Decl."), at 3.)  The Order also provided that it did not "prohibit any reasonable accommodation otherwise required by law." (*Id.* at 5.)

Plaintiffs assert four claims in their Complaint.  First, Plaintiffs claim that the Order violates their procedural due process rights because they have property interests in their continued employment and pay. (Compl. ¶¶ 67–71.)  Second, they assert that the Order violates their statutory and contractual rights, as Plaintiffs are entitled to certain process prior to removal pursuant to N.Y.C. Admin. Code § 15-113, or the applicable collective bargaining agreement ("CBA").[3] (Compl. ¶ 103; ECF No. 5-8, Memorandum of Law in Support of Plaintiffs' Motion for TRO/PI

---

[3] Though the Complaint alleges that Plaintiffs have a contractual right to charges and a hearing, Plaintiffs do not make the same argument in their memorandum of law. (*See* Compl. ¶ 77.)  Therefore, the Court does not consider this allegation as part of its preliminary injunction analysis.

SPA-74

("Pls. Mem."), at 9-11.)  Third, Plaintiffs assert a § 1983 claim, arguing that Defendants, acting under color state of law, violated their procedural due process rights.  (Compl. ¶¶ 99-109.)  Fourth, Plaintiffs allege direct participation in, and aiding and abetting violations under 42 U.S.C. § 1983 against Defendant Nigro.  (Compl. ¶¶ 110-15.)

Plaintiffs seek a mandatory injunction restoring them to pay status and a prohibitory injunction against Defendants from disciplining Plaintiffs without first proffering charges and providing a pre-deprivation hearing, during which the person against whom the charges are brought can defend themselves before a neutral hearing officer.

For the reasons stated below, Plaintiffs' motion for injunctive relief is respectfully DENIED.

## BACKGROUND

I.    **Factual Background**

On October 20, 2021, the Commissioner of the DOHMH issued the Order, requiring all New York City employees to show documentation of receiving at least one dose of any COVID-19 vaccine by 5:00 P.M. on October 29, 2021. (Defs. Opp. at 1.)  Pursuant to the Order, any City employee who failed to provide the requisite proof of vaccination was "excluded from the premises at which they work beginning on November 1, 2021."  (Exhibit A to O'Connor Decl. at 3.)

SPA-75

All FDNY personnel were informed of the Order via a notice sent on October 21, 2021 from John J. Hodgens, the Chief of Operations of the FDNY (*see* ECF No. 17-1, Exhibit 1 to Plaintiffs' Reply Memorandum of Law ("Pls. Reply"), at 4).[4]  The October 21 notice advised that any FDNY employee who wishes to seek an exemption from the vaccine mandate based on a sincerely held religious belief or medical contraindication must submit a request to the Equal Employment Office by October 27, 2021, and that employees who fail to comply with the Order and do not submit an exemption request by the October 27 deadline would be placed on leave without pay ("LWOP") status on November 1, 2021.

Plaintiffs filed the Complaint in this action on November 24, 2021, just shy of a month after the October 29, 2021, deadline to demonstrate compliance with the vaccine mandate in the Order. (Compl.)

## II.   Procedural Background

Plaintiffs filed their class action Complaint on November 24, 2021, on their behalf and on behalf of all persons similarly situated.  (Compl.)  That same day, Plaintiffs moved for a temporary

---

[4] Plaintiffs contend in their reply brief, and Plaintiffs' counsel argued at the show cause hearing, that although the FDNY provided official notice of the Order on October 21, 2021, "some of the Plaintiffs did not receive it until much later because they do not work every day."  (Pls. Reply at 2 n.1.)  However, upon further inquiry by the Court, counsel for Plaintiffs failed to proffer any evidence detailing how many Plaintiffs were affected by the alleged delay and the circumstances surrounding the delay.  The Court declines to find that there was a delay in notice of the Order based on counsel's mere say-so.

4

SPA-76

restraining order and a preliminary injunction. (ECF No. 5, Proposed Order to Show Cause.)  The Court, also on November 24, 2021, issued an Order to Show Cause, ordering: (1) personal service on all named Defendants to be made on or before 9:00 A.M., Friday, November 26, 2021; (2) Defendants to respond to the Order to Show Cause via ECF by Monday, November 29, 2021, at 5:00 P.M.; and (3) counsel for named Plaintiffs and Defendants to appear for a hearing before the Court on Tuesday, November 30, 2021, at 3:00 P.M. (ECF No. 9, Order to Show Cause.)

Named Defendants filed papers in opposition to Plaintiffs' motion for injunctive relief on November 29, 2021, including a memorandum of law, the Declaration of Andrea O'Connor, and attached exhibits.  (Defs. Opp.; ECF No. 15, O'Connor Decl.) Defendants noted that all Plaintiffs, except one, have exemption requests pending, and nine Plaintiffs received the vaccine and have been restored to payroll.  (Defs. Opp. at 4.)

Counsel for the parties appeared before the Court on November 30, 2021, for a show cause hearing, but they did not present witness testimony.  During the show cause hearing, Plaintiffs requested, and the Court granted, supplemental briefing on the issue of whether those Plaintiffs whose bargaining agent is District Council 37 ("DC 37"), have standing to challenge the agreement negotiated between the City and their union, DC 37, with respect to the leave and separation procedures for City employees

5

SPA-77

who did not comply with the Order ("DC 37 Agreement").[5]

### LEGAL STANDARD

A party seeking a preliminary injunction must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

Where, as here, the injunctive relief sought is a mandatory injunction, or an injunction that "alters the status quo by commanding a positive act," the movant must meet the higher standard of "mak[ing] a clear or substantial showing of a likelihood of success on the merits." *D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006) (citation omitted) (internal quotation marks omitted). Here, Plaintiffs, having been on LWOP for over a month due to their failure to seek an exemption by October 27, 2021, or comply with the Order by October 29, seek a

---

[5] The DC 37 Agreement established, in relevant part: (1) the processes by which an employee may request an exemption or accommodation based on religious and/or medical grounds, and appeal an adverse determination on their request before an independent arbitration panel (while remaining on payroll and maintaining health benefits pending their request or appeal, as long as the request was made prior to 11:59 P.M. on October 27, 2021); (2) options to either voluntarily separate from service with certain compensation benefits, or elect extended LWOP status while maintaining health benefits until June 30, 2022; and (3) that as of December 1, 2021, the FDNY may seek to unilaterally separate employees who have not provided proof of vaccination, have not obtained or requested an accommodation, and have not opted for either separation option. (*See* ECF No. 21-1, Exhibit C to O'Connor Decl.)  The DC 37 Agreement further provides that employees who opt to extend their LWOP to June 30, 2022, may return to their positions upon demonstrating compliance with Order.  (*Id.*)

SPA-78

mandatory injunction, asking the Court to alter the status quo by restoring them to FDNY payroll.[6]  Accordingly, Plaintiffs must meet the higher standard for a mandatory injunction by showing a "clear" or "substantial" likelihood of success on the merits.  *See Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995); *Doninger v. Niehoff*, 527 F.3d 41, 47 (2d Cir. 2008).

## DISCUSSION[7]

### I.   Necessary Parties

As a threshold matter, Plaintiffs named as Defendants only the FDNY, Commissioner Nigro, and unnamed Jane and John Does. Plaintiffs thus have failed to name necessary parties whose joinder is required under Fed. R. Civ. P. 19, namely, the City of New York, the Uniformed Firefighters Association ("UFA"), the Uniformed Fire Officers Association ("UFOA"), and District Council 37 ("DC 37"), as explained *infra*.

"Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue

---

[6] Plaintiffs state in their reply that "[p]rior to November 12, 2021, the Plaintiffs had received full pay." (Pls. Reply at 3.)  Defendants' counsel represented to the Court during the show cause hearing that Plaintiffs were indeed placed on LWOP status starting November 1 and that Plaintiffs continued to receive pay until November 12 due to the 2-week lag in pay for City employees.
[7] Plaintiffs' only potential reference to their Section 1983 claims in their memorandum of law is as follows: "The Plaintiffs have a high likelihood of success on the merits of their 42 U.S.C. 1983 causes of action . . . and therefore should be granted the relief they request." (Pls. Mem. at 9.)  Plaintiffs do not cite to any case law in support of this argument, and the Court will not address these allegations as part of its preliminary injunction analysis.

**SPA-79**

or be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002). As such, the City of New York should have been named instead of the FDNY. Plaintiffs do not contest this point. (*See* Pls. Reply at 5 ("The Plaintiffs will file an Amended Complaint naming the City as a defendant.").)

In addition, given the allegation that the UFA and the UFOA have breached their duty of fair representation by allegedly refusing to process Plaintiffs' grievances, (*see* Pls. Mem. at 7), and to the extent Plaintiff members of DC 37 ("DC 37 Plaintiffs") are challenging the DC 37 Agreement, the UFA, the UFOA, and DC 37 are also necessary parties to this action. *See* Fed. R. C. P. 19 (a)(1)(B) ("A person . . . must be joined as a party if . . . that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest.").

## II. Standing as to DC 37 Plaintiffs

On December 1, 2021, Plaintiffs filed a letter briefing the Court on the issue of whether DC 37 Plaintiffs have standing to challenge the DC 37 Agreement. (ECF No. 22, Plaintiffs' Sur-Reply ("Pls. Sur-Reply").) Defendants, in turn, submitted a letter in response on December 2, 2021.

Generally, a union member has no standing to enforce the collective bargaining agreement between their employer and union

SPA-80

against the employer directly. *See Cummings v. City of N.Y.*, No. 19-cv-7723(CM), 2020 WL 882335, at *14 (E.D.N.Y. Feb. 24, 2020) ("By becoming a union member, an individual employee 'has no individual rights under a collective bargaining agreement which he can enforce against his employer except through the union.'") (citation omitted).

Plaintiffs argue that in *Kane v. De Blasio*, No. 21-2678, 2021 WL 5549403 (2d Cir. Nov. 22, 2021), the Second Circuit "briefly addressed" a standing argument made by Defendants that the Circuit Court, in fact, declined to address. (Pls. Reply at 1.) Notably, the passage cited by Plaintiffs begins with, "[n]or do we address certain arguments made by Defendants." *Id.* at *8 n.15. Nevertheless, Plaintiffs misread the cited footnote from *Kane*. In *Kane*, the plaintiffs challenged, on substantive Free Exercise grounds, not on procedural due process grounds, an arbitration award that purported to prescribe the procedure for seeking a religious accommodation. *Id.* at *8. The plaintiffs in *Kane* did not challenge, as DC 37 Plaintiffs do here, procedures specifically negotiated and agreed to by their union. And indeed, DC 37 Plaintiffs do not challenge the procedures on substantive grounds. Therefore, *Kane* is inapposite.

Even assuming that Plaintiffs do have standing and can appropriately challenge the DC 37 Agreement, Plaintiffs have not met the requisite showing for preliminary injunction.

9

### III. Preliminary Injunction

#### A. Likelihood of Success on the Merits

The Court finds that Plaintiffs failed to establish a "clear" or "substantial" likelihood of success on the merits on any of their claims. *See Tom Doherty Assocs., Inc.*, 60 F.3d at 33-34; *Doninger*, 527 F.3d at 47 (2d Cir. 2008).

A procedural due process claim requires the plaintiff to establish (1) possession by the plaintiff of a protected liberty or property interest, and (2) deprivation of that interest without constitutionally adequate process. *See O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002). The Court does not disagree that Plaintiffs, as public employees under the FDNY, have protected property interests in their pay and continued employment. Having found that Plaintiffs have protected property interests, the Court next looks to whether the process they have been afforded is constitutionally adequate.

Plaintiffs argue that Plaintiffs' procedural due process rights were violated because the FDNY failed to proffer charges and provide a pre-deprivation hearing in accordance with the procedures set forth in New York City Administrative Code § 15-113. (*See* Pls. Mem. 7–8.) As an initial matter, to determine whether process is adequate, the Court looks to "[f]ederal constitutional standards rather than state statutes [to] define the requirements of

10

procedural due process." *Robison v. Via*, 821 F.2d 913, 923 (2d Cir. 1987). *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) ("In short, once it is determined that the Due Process Clause applies, the question remains what process is due. . . . The answer to that question is not to be found in the [state] statute.") (internal citation and quotation marks omitted); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990) ("[T]he fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action . . . does not settle what protection the federal due process clause requires.") (internal quotation marks and citation omitted). Thus, at issue is not whether state procedural law was correctly followed or applied, but whether the process provided satisfies the requirements imposed by the Constitution.

In addition, the Court need not consider whether section 15-113 of the New York City Administrative Code was correctly followed because under New York law, the termination of a public employee based on the employee's failure to satisfy a qualification of employment unrelated to job performance, misconduct, or competency does not implicate the disciplinary procedures set forth section 15-113. *See, e.g.*, *O'Connor v. Bd. of Educ. of City Sch. Dist. of City of Niagara Falls*, 852 N.Y.S.2d 537, 538 (4th Dep't 2008) (holding that petitioners, who were terminated for failing to comply with the residency policy in their employment agreements,

11

SPA-83

were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 3020, 3020-a because "[t]hose sections of the Education Law are inapplicable inasmuch as they address issues relating to a teacher's competency and the applicable disciplinary procedures and penalties attendant thereto, while the residency policy 'is a consideration unrelated to job performance, misconduct or competency . . . a qualification of employment . . . [that respondent] may impose it if chooses to do so without running afoul of the Constitution or general laws of the State.") (citation omitted), *appeal denied*, 892 N.E.2d 396 (2008); *Beck-Nichols v. Bianco*, 20 N.Y.3d 540, 558–59 (2013) (noting that "a residency requirement defines eligibility for employment . . . unrelated to job performance, misconduct or competency" and thus concluding that the plaintiffs were not entitled to a hearing pursuant to N.Y. Educ. Law §§ 2509(2), 3020, and 3020-a); *Felix v. N.Y.C. Dept. of Citywide Admin. Servs.*, 3 N.Y.3d 498, 505 (2004) ("the act of failing to maintain one's residence within the municipality is separate and distinct from an act of misconduct by a municipal employee in the performance of his or her work. Failure to maintain residence renders an individual ineligible for continued municipal employment . . . while an act of misconduct invokes Civil Service Law § 75 disciplinary procedures . . . .").[8]

_____

[8] To the extent Defendants argue that the FDNY need not provide Plaintiffs with process that comports with the Constitution because vaccination is a qualification of employment for City employees, (*see* Defs. Opp. at 25 ("Thus,

12

Like the state statutory provisions that were considered in *O'Connor*, *Beck-Nichols*, and *Felix*, section 15-113 of the New York City Administrative Code is related to discipline of FDNY members based on their job performance, misconduct, or competency. Discipline of Plaintiffs for job performance, misconduct, or competency is not at issue here. *See* N.Y.C. Admin. Code § 15-114 ("The commissioner shall have power, in his or her discretion on conviction of a member of the force of any legal offense or neglect of duty, or violation of rules, or neglect or disobedience of orders or incapacity, or absence without leave, or any conduct injurious to the public peace or welfare, or immoral conduct, or conduct unbecoming an officer or member, or other breach of discipline, to punish the offending party . . . ."). Therefore, section 15-114 is not implicated when an FDNY officer is terminated based on his or her failure to satisfy a qualification of employment.

As Defendants correctly point out, the Second Circuit has held that "[v]accination is a condition of employment in the

---

it is clear that a public employer may lawfully, and summarily, separate employees from service without process due to the employee's legal ineligibility to maintain their employment.")), the Court need not reach this issue, as Plaintiffs were provided constitutionally adequate process, as discussed below. The Court, nevertheless, notes that the New York Court of Appeals, separate and apart from its finding that termination based on an employee's failure to satisfy a qualification of employment does not invoke disciplinary procedures set forth in state statutes, analyzed whether the process that was actually provided comported with state and federal due process requirements. *See, e.g.*, *Beck-Nichols*, 20 N.Y.3d at 558–59 (holding that the notice-and-hearing procedures provided to petitioners "easily comply with due process."); *Felix*, 3 N.Y.3d at 506 ("We next address the question whether the procedure itself comported with state and federal due process requirements.").

13

SPA-85

healthcare field." *We The Patriots USA, Inc. v. Hochul*, Nos. 21-2179, 2102566, 2021 WL 5121983, at *18 (2d Cir. 2021). Given the state of public health emergency that our nation finds itself in due to the Coronavirus, the more transmissible Delta and Omicron variants, and the nature of Plaintiffs' job as firefighters and EMT employees, interacting with members of the public on an emergency basis, and living in close quarters during their shifts, the Commissioner was within his powers to require COVID-19 vaccination as a qualification of employment for FDNY employees.

Plaintiffs failed to satisfy this condition of employment, rendering themselves no longer qualified to serve as FDNY employees. *See We The Patriots USA, Inc.*, 2021 WL 5121983, at *18 ("Although individuals who object to receiving the vaccines on religious grounds have a hard choice to make, they do have a choice. Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers."). Because termination based on a failure to satisfy a qualification of employment does not trigger the proffer of charges and pre-deprivation hearing requirements of section 15-113, Plaintiffs' argument that Defendants violated their statutory rights is of no avail.

Turning to the issue of whether Plaintiffs' due process rights under the Constitution were violated, the Second Circuit has "held on several occasions that there is no due process violation

14

SPA-86

where, as here, pre-deprivation notice is provided and the deprivation at issue can be fully remedied through the grievance procedures provided for in a collective bargaining agreement." *Adams v. Suozzi*, 517 F.3d 124, 128 (2d Cir. 2008). *See also Narumanchi v. Bd. of Trustees of Conn. State Univ.*, 850 F.2d 70, 71–72 (2d Cir. 1988) (affirming the district court's dismissal of the plaintiff's procedural due process and its finding that, notwithstanding the plaintiff's decision not to avail himself of the "the grievance procedures established in the collective bargaining agreement between his union and his employer," such procedures "provided whatever process [plaintiff] was due as a matter of federal law."). "The Due Process Clause is implicated only when plaintiffs can establish that the grievance procedures in a collective bargaining agreement are an inadequate remedy." *Adams*, 517 F.3d at 129.

Plaintiffs have not asserted any reasonable basis for the Court to find that the grievance and arbitration procedures set forth in their CBAs are inadequate.[9] Plaintiffs had the option to challenge the enforcement of the Order through the grievance and

---

[9] Plaintiffs have failed to provide sufficient evidence in support of their allegation that their unions have refused to process their grievances. For example, the Court does not read Exhibit 2 to Garland Affidavit (ECF No. 5-2), an email communication from Andrew Ansbro, the President of the UFA, to Plaintiff Garland, as stating that the UFA will not file a grievance on Garland's behalf. Rather, the email, which states that the placement of FDNY employees on LWOP status based on their vaccination status "is the basis for [the UFA's] lawsuits against the City" and that "[the UFA] will continue to fight" evinces the UFA's willingness to represent Plaintiffs' interests against the City.

15

SPA-87

arbitration procedures provided in their CBAs, and their failure to do so "precludes consideration of the fairness of those proceedings in practice." *Narumanchi*, 850 F.2d at 72. Therefore, there is no due process violation for which relief may be granted where Plaintiffs failed to avail themselves of the grievance and arbitration procedures.

In any case, the Court finds that the process given to Plaintiffs satisfied the constitutional minimum.[10] Based on the record before the Court, the Court considers that both the pre-deprivation and post-deprivation processes afforded to Plaintiffs were constitutionally adequate. *See Loudermill*, 470 U.S. at 547 n.12 ("[T]he existence of post-termination procedures is relevant to the necessary scope of pretermination procedures."). Pre-deprivation processes "need not be elaborate," and the Constitution "mandates only that such process include, at a minimum, notice and the opportunity to respond." *See O'Connor*, 426 F.3d at 198 (citing *Loudermill*, 470 U.S. at 545). Here, Plaintiffs received ample pre-deprivation notice, via the October 2021 notice from Hodgens, the Chief of Operations of the FDNY, of: (1) the Order, (2) the requirement to submit proof of vaccination by October 29, 2021, (3)

---

[10] Plaintiffs argue, and the Court agrees, that the deprivation of Plaintiffs' right to continued employment and pay occurred when Plaintiffs failed to timely apply for a religious or medical exemption and were placed on LWOP status. *See Tooly v. Schwaller*, 919 F.3d 165, 173 (2d Cir. 2019) ("Under this Circuit's precedents, an employee who is placed on *unpaid* leave has been deprived of a protected property interest . . . ."). As such, the Court considers what process was given to Plaintiffs both prior and subsequent to their placement on LWOP status.

16

SPA-88

their ability to seek reasonable accommodation by October 27, 2021,[11] and (4) their placement on LWOP status if they failed to comply with the Order and did not submit accommodation request by the October 27 deadline.

An employee's right to be provided with an opportunity to address concerns before a final decision is made can be "accomplished through informal procedures; no formal hearing [is] required." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 786 (2d Cir. 1991). Pursuant to the Order, any FDNY employees who believed that the Order should not apply to them had the opportunity to seek a religious or medical accommodation, and they would continue to remain on pay status pending the decision on their request or appeal, so long as their accommodation requests were submitted prior to October 27, 2021.[12] Therefore, the Court finds that there was sufficient pre-deprivation notice and opportunity to respond.

Forty-seven of forty-eight named Plaintiffs have requested an accommodation, but because they failed to meet the October 27 deadline, they were placed on LWOP status pending the determination on their accommodation requests. (*See* Defs. Opp. at

---

[11] The Order itself also stated, in plain language, that it should not be "construed to prohibit any reasonable accommodation otherwise required by law." (Exhibit A to O'Connor Decl. at 5.)

[12] Defendants' counsel represented to the Court during the show cause hearing that any FDNY member who has a pending accommodation request that was submitted by the October 27 deadline remains on active duty and is subjected to weekly PCR testing.

SPA-89

26—27.)  Plaintiffs, not having availed themselves of the pre-deprivation opportunity to be heard, cannot now claim that they were deprived of their constitutional right to due process.  *See Capul v. City of N.Y.*, No. 19-cv-4313(KPF), 2020 WL 2748274, at *13 (S.D.N.Y. May 27, 2020) ("Plaintiffs are not entitled to circumvent established due process protections and then claim they were never afforded such protections."), *aff'd* 832 F. App'x. 766 (2d Cir. 2021).[13]

The Court also finds that the post-deprivation procedures afforded by Defendants satisfy the constitutional minimum.  Any employee who is denied a reasonable accommodation may file an appeal and any supporting materials within three days.[14]  (ECF No. 15-10, Declaration of Don Nguyen ¶ 12.)  If an appeal results in the grant of an accommodation, the employee would be restored to payroll and provided with back pay for the time they were on LWOP status.  (*Id.* ¶ 13.)  Alternatively, if an appeal is denied, the employee must submit proof of the first dose of a COVID-19 vaccine within three business days and, if required, of the second dose within 45 days

---

[13] Similarly, Plaintiff Taylor, who has not any sought any accommodation, cannot choose not to pursue the available post-deprivation procedures, and then rely on his choice to allege a lack of due process.  Whether or not Plaintiffs found the process available to their liking has no bearing on whether that process is constitutionally sound.

[14] Although Defendants' counsel represented to the Court at the show cause hearing that Plaintiffs would have seven, not three, days to appeal, the Court, based on its review of the documents in the record to date, including the "FAQ on New York City Employees Vaccine Mandate" that was provided to FDNY employees along with the October 21, 2021 notice from the FDNY Chief of Operations, (see ECF No. 17-1 at 10—26), assumes that the time allotted to seek any appeals is three days.

thereafter.  (*Id.* ¶ 14.)  If the employee refuses to be vaccinated within the given timeframe after their appeal is denied, they would remain on LWOP status.  (*Id.*)

In the case of DC 37 Plaintiffs, they were provided the same notice that the other Plaintiffs had, by the October 21, 2021 notice from the Chief of Operations of the FDNY.  DC 37 Plaintiffs, unlike the other Plaintiffs, had the benefit of additional time to seek an accommodation beyond the October 27 deadline, as a result of the DC 37 Agreement.  (Exhibit C to O'Connor Decl.)  Pursuant to the DC 37 Agreement, executed on November 4, 2021, FDNY employees with DC 37 membership who submitted their initial reasonable accommodation requests by the end of the day, or 11:59 P.M., on November 2, remain on active duty and on payroll, subject to weekly COVID-19 testing, pending the initial determination of their requests or appeal.[15]  (*Id.*)  Those DC 37 Plaintiffs who submitted accommodation requests after November 2, but by the end of day, or 11:59 P.M. on November 5, remain on active duty and on payroll, subject to weekly COVID-19 testing, pending the initial determination of their requests, but may be placed on LWOP pending appeal.  (*Id.*)  DC 37 employees who submitted their request after November 5 were placed on LWOP starting November 1, and remain on

---

[15] To the extent such employees filed their accommodation requests after October 27 and were placed on LWOP on November 1, they were restored to active duty and payroll the day after execution of the DC 37 Agreement, or on November 5, and will remain working and on payroll, subject to weekly COVID-19 testing, pending the initial determination or appeal.  (*See* Exhibit C to O'Connor Decl.)

LWOP pending the determination of their accommodation requests. (*Id.*)  The DC Agreement also notified its members that as of December 1, 2021, the FDNY may unliterally seek to separate employees who have not provided proof of vaccination, have not obtained or requested an accommodation, and have not opted for any separation option.  (*Id.*)

Finally, Plaintiffs, in addition to seeking an accommodation, had and continue to have, other avenues to challenge and address the actions taken against them as a result of the Order— the grievance and arbitration procedures set forth in their respective CBAs and an Article 78 proceeding in New York State Supreme Court.  The Second Circuit has advised that the Article 78 proceeding can provide a sufficient post-deprivation remedy.  *See Hellenic Am. Neighborhood Action Comm. v. City of N.Y.*, 101 F.3d 877, 881 (2d Cir. 1996) ("an Article 78 proceeding is a perfectly adequate post-deprivation remedy.").  *See also Mobyed v. N.Y.C. Transit*, No. 07-cv-3292(ARR), 2011 WL 2847416, at *2 (E.D.N.Y. July 15, 2011) ("If a plaintiff chooses not to avail himself of the available post-deprivation procedures under a CBA, he cannot then rely on his choice to allege a lack of due process.").

**B. Irreparable Harm**

The Court next considers to whether Plaintiffs have shown that they will likely suffer irreparable harm if not for the injunctive relief they seek. At the outset, the Court cannot accept Plaintiffs' argument that where a deprivation of a constitutional

20

SPA-92

right is alleged, no further showing of irreparable harm is necessary, though Plaintiffs are correct that "a *presumption* of irreparable injury . . . flows from a violation of constitutional rights." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 636 (2d Cir. 2020) (emphasis added). Where the movant alleges but fails to make a strong showing of constitutional harm that cannot be compensated through monetary damages, granting a preliminary injunction is inappropriate. *See A.H. by and through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) ("In cases alleging constitutional injury, a strong showing of a constitutional deprivation that results in *noncompensable damages* ordinarily warrants a finding of irreparable harm.") (emphasis added). *See also KM Enters., Inc. v. McDonald*, No. 11-cv-5098(ADS), 2012 WL 540955, at *3 (E.D.N.Y. Feb. 16, 2012) ("[E]ven if a constitutional claim was asserted, merely asserting a constitutional injury is insufficient to automatically trigger a finding of irreparable harm. . . . In other words, the Plaintiff must still convincingly show that a violation carries noncompensable damages in addition to money damages."). The Second Circuit has noted that "[i]rreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue." *JSG Trading Corp. v. Tray-Wrap, Inc.*, 917 F.2d 75, 79 (2d Cir. 1990).

The Court does not dispute that a loss of income is a

21

SPA-93

real, tangible harm.  Even so, to demonstrate an entitlement to injunctive relief, Plaintiffs must identify a harm for which available legal remedies and monetary damages would be inadequate. As noted decades ago by the United States Supreme Court, the type of harm Plaintiffs allege, loss of employment and pay, are definitionally reparable.  See *Sampson v. Murray*, 415 U.S. 61, 89-92 (1974) (holding that injuries generally associated with discharge from employment—loss of reputation, loss of income and difficulty in finding other employment—do not constitute "irreparable harm").  *See also Piercy v. Fed. Rsrv. Bank of N.Y.*, Nos. 02-cv-5005, 02-cv-9291(DC), 2003 WL 115230, at *3 (S.D.N.Y. Jan. 13, 2003) ("Plaintiffs wrongfully discharged from employment generally may be made whole by monetary damages and reinstatement after a full trial on the merits.").  That loss of employment and pay constitute harm that may be remedied through money damages is demonstrated by the FDNY EEO Office's accommodation procedure, which provides that any FDNY employee granted a reasonable accommodation will be provided back pay for the time they were on LWOP status.  As such, Plaintiffs have failed to make a sufficient showing of irreparable harm.

Additionally, the Court notes that Plaintiffs' claimed need for injunctive relief is belied by their own delay in seeking that relief.  "[A]n unreasonable delay in seeking a preliminary injunction may preclude a finding of irreparable harm because 'the

SPA-94

failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief.'" *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-cv-407(NG), 2020 WL 5899879, at *9 (Feb. 28, 2020) (citing *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995)). *See also Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985) ("Lack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief because it goes primarily to the issue of irreparable harm"). "Indeed, in this Circuit, preliminary injunctions have been denied on account of even relatively short delays." *Alcon Vision*, 2020 WL 5899879, at *9. Plaintiffs were given notice of the Commissioner's Order on October 21, 2021, requiring that all FDNY employees show proof of at least one dose of COVID-19 vaccination by 5 P.M. on October 29, 2021, and providing detailed information including procedures and dates for seeking exemptions. The Court declines to give credit to Plaintiffs' counsel's unsubstantiated representation that some Plaintiffs did not find out about the Order until days later (and counsel does not clarify exactly how many days later), because even if that were true, Plaintiffs still fail to explain why they waited until November 23 to seek relief.

Finally, as to the 47 Plaintiffs who have requested for an accommodation, the harm they allege is speculative, as it is not yet certain whether their requests will be granted and they will

23

SPA-95

be restored to pay status.  *See Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) ("[I]rreparable harm must be shown to be actual and imminent, not remote or speculative.")

### C.   Balance of the Equities and D. The Public Interest

The Court finds that both the balance of equities and the public interest in protecting the public health disfavor the injunctive relief requested by Plaintiffs.  The Court also recognizes the heroic efforts that the FDNY has made throughout our City's history to protect the public.  In balancing the equities and the public interest, the Court notes that available scientific and medical data support vaccinations as effective tools to prevent the spread of COVID-19 and the development and transmission of new variants.  As Defendants note in their memorandum of law in opposition, according to the DOHMH, between January 17 and August 7, 2021, people who were unvaccinated or not fully vaccinated accounted for 96.1% of COVID-19 cases, 96.9% of hospitalizations, and 97.3% of COVID-19 deaths in New York City. (Defs. Opp. at 5—6.)

The Court is sympathetic to the hardships Plaintiffs have experienced. As noted above, loss of income and possible employment undoubtedly presents great challenges to the Plaintiffs, and these challenges remain so long as Plaintiffs continue to refuse to comply with the Order.  The role of the Court, however, is to "balance the competing claims of injury on each party of either granting or

24

SPA-96

withholding the requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 9.  On balance, the equities at stake and the importance of safeguarding the public health and safety weigh in favor of denying the preliminary injunction.

Firefighters and EMT employees interact frequently with members of the public who are in a medical emergency or other vulnerable positions.  Based on the available scientific and medical evidence, there is a significant, if not compelling, governmental interest in preventing the transmission of the Coronavirus and variants to members of the public with whom FDNY employees come into contact with.  The FDNY thus requires its employees to receive the COVID-19 vaccine as an employment qualification during a rapidly changing global pandemic.  Additionally, given the close proximity with which firefighters interact with one another while on duty, in their fire stations and fire houses, the City has a significant interest in ensuring that firefighters have the ability to carry out their task of protecting the public by preventing the transmission of the Coronavirus among its employees.

The Court recognizes the sacrifices firefighters and EMT employees have made to protect the public, especially over the course of the COVID-19 pandemic.  Our nation is indebted to their efforts and sacrifices.  However, the Court has the difficult task

SPA-97

of balancing the needs of the vast majority against the concerns of a few, and here, the public health and safety concerns far outweigh the concerns of Plaintiffs.

All of us have been navigating unchartered waters over the course of the pandemic, including health and government officials, who have been tirelessly pursuing and implementing the best means to provide for the health and safety of all. Ultimately, "it is up to local government, 'not the courts, to balance the competing public health and business interests[,]'" and here, the New York City government and the FDNY have done so in issuing and enforcing the vaccination requirement for employees of the FDNY. *Maniscalco v. N.Y.C. Dep't of Educ.*, No. 21-cv-5055(BMC), 2021 WL 4344267, at *4 (E.D.N.Y. Sept. 23, 2021)

26

SPA-98

## CONCLUSION

Accordingly, Plaintiffs' motion for a temporary restraining order and a preliminary injunction is DENIED.

**SO ORDERED.**

_____/s/_____
Kiyo A. Matsumoto
United States District Judge

Dated:  Brooklyn, New York
        December 6, 2021

27